# 26-162

## United States Court of Appeals
## for the Second Circuit

————————————

MELANIE HAMMER,
Plaintiff-Appellant,
- against –

TOWN OF BEDFORD NEW YORK, DEPARTMENT OF
BUILDING BEDFORD NEW YORK, ZONING BOARD
OF APPEALS BEDFORD NEW YORK, BUILDING
INSPECTOR TOWN OF BEDFORD NEW YORK
(ALBERT CIRACO), ATTORNEY FOR THE TOWN OF
BEDFORD NEW YORK (ERIC GORDON, ESQ. &
ROBERT ZITT, ESQ.),
Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the Southern District of New York
7:25-cv-02618-CS

————————————

**BRIEF FOR PLAINTIFF-APPELLANT**
Melanie Hammer
Plaintiff-Appellant, Pro Se
360 Court Street, Suite 3
Brooklyn, New York 11231
(718) 757-7677
**melanie@hammer-esq.com**

1

# CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP §26.1, Plaintiff-Appellant Melanie Hammer states that she is an individual proceeding pro se. She is not a corporation, has no parent corporation, and no publicly held corporation owns 10% or more of any ownership interest in her.

Accordingly, no corporate disclosure statement is required.

# Table of Contents

*QUESTIONS PRESENTED* ...................................................................................**6**

*JURISDICTIONAL STATEMENT* ........................................................**7**

*STATEMENT OF FACTS*.......................................................................... **15**

    **I.**    **The Property and Historical Documentation of Residential Use** ................................. **15**

    **II.**    **April 2023 Enforcement and ZBA Proceedings** ........................................ **17**

    **III.**    **Town Attorney's Authorship of Resolution After Becoming Named Party** .................... **19**

    **IV.**    **Contradictory FOIL Responses and Late Evidence Production**................................... **20**

*ARGUMENT*..................................................................................................**27**

    **I.**    **The District Court Abused Its Discretion In Denying Rule 60(B) Relief** ....................... **27**

    **II.**    **Collateral Estoppel Does Not Bar Litigation of Appellant's Federal Claims**.................. **40**

    **III.**    **The District Court Improperly Resolved Disputed Factual Issues Against Appellant**..... **47**

    **IV.**    **Due Process Requires A Meaningful Opportunity To Be Heard Before A Neutral Decisionmaker** ..........................................................................................................**59**

    **V.**    **Absolute Immunity Does Not Protect The Town Attorney's Administrative, Investigative, And Policy-Coordination Conduct** ........................................................................**64**

    **VI.**    **The District Court Erred In Dismissing The Monell Claim**......................................... **73**

*CONCLUSION*...............................................................................................**75**

*CERTIFICATE OF COMPLIANCE* ..............................................**77**

*CERTIFICATE OF SERVICE* ........................................................... **78**

# TABLE OF AUTHORITIES

## STATUTES

28 USCS § 1291 ----------------------------------------------------------------------------- 7
28 USCS § 1331 ----------------------------------------------------------------------------- 7
42 U.S.C. § 1983 --------------------------------------------------------------------------- 7

## RULES

Federal Rule of Appellate Procedure 32(a)(5) ------------------------------------------77
Federal Rule of Appellate Procedure 32(a)(6) ------------------------------------------77
Federal Rule of Civil Procedure 60(b)(3) -------------------------------------------- 6
Federal Rule of Civil Procedure 60(b)(2) -------------------------------------------- 6
Federal Rule of Civil Procedure 60(b)(6) -------------------------------------------- 6
USCS Ct App 2nd Cir, Local R 32.1 ----------------------------------------------------77

## CASES

Algonquin Power Income Fund v. Christine Falls of N.Y., Inc., 362 F. App'x151 (2d Cir. 2010) ---------------------- 46
Allen v. Adami, 39 N,Y.2d 276 (1978) ------------------------------------------------ 54
Appellant's favor. Lynch v. City of New York, 952 F.3d 67, 74 (2d Cir. 2020)------------------------------------------ 40
Atkinson v. Wilt, 94 A.D.3d 1218 (3d Dep't 2012) ----------------------------------- 54
BT Holdings, LLC v Village of Chester, 189 AD3d 754, 759 ------------------------------------------------------ 51
Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ---------------------------------------------------- 48
Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778 -------------------------------------------------- 23
Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778 (2d Cir. 2007) ---------------------------------------------- 23
Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985) ------------------------------------------------------23, 59
DeWeerth v. Baldinger, 38 F.3d 1266------------------------------------------------ 22
DiBlasio v. Novello, 344 F.3d 292, 297–98 (2d Cir. 2003)------------------------------------------------------ 66
DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104 (2d Cir. 2010) ---------------------------------------------- 48
Eaton v. N.Y.C. Conciliation & Appeals Bd., 56 N.Y.2d 340 (1982)------------------------------------------- 54
Goldberg v. Kelly, 397 U.S. 254 (1970). ------------------------------------------ 60
Gonzalez v. Crosby, 545 U.S. 524 (2005)------------------------------------------ 40
Guggenheim Capital, LLC v. Birnbaum (In re Birnbaum), 513 B.R. 788 (2014) ----------------------------------- 46
Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494 (2d Cir. 2001) ------------------------------------------50, 62
Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976)------------------------------------------------------ 66
Ins. Co. of N. Am. v. Public Serv. Mut. Ins. Co., 609 F.3d 122 (2010) ------------------------------------- 28
Interoceanica Corp. V. Sound Pilots, 107 F.3d 86 (1997) ------------------------------------------------- 41
Johnson v. Watkins, 101 F.3d 792 (1996) ------------------------------------------------- 46
Kalina v. Fletcher, 522 U.S. 118, 122, 127–31 (1997). ---------------------------------------------- 72
Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455-56 (1985) --------------------------------------------- 41
Klapprott v. United States, 335 U.S. 601 (1949)------------------------------------------------ 40
Lawson v. Abrams, 863 F.2d 260, 263 (2d Cir. 1988)------------------------------------------------ 67
Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988)------------------------------------------ 36
Lorusso v. Borer, 260 F. App'x. 355 (2d Cir. 2008)------------------------------------------------ 28
Mandala v. NTT Data, Inc., 88 F.4th 353 (2d Cir. 2023) ------------------------------------------------- 38
Matarese v. Le Fevre, 801 F.2d 98 (2d Cir. 1986) ------------------------------------------------- 38
Matter of Hammer v. Town of Bedford, N.Y., 242 A.D.3d 747 (2d Dep't 2025.) ------------------------------ 15

4

Matter of Tall Trees Constr. Corp. v. Zoning Bd. of Appeals of Town of Huntington, 97 N.Y.2d 86, 91 (2001). ----- 54

Metromedia Co. v. Fugazy, 983 F.2d 350 (1992) ------------------------------------------------------------------- 41

Mirlis v. Greer, 952 F.3d 36 (2020) ------------------------------------------------------------------------------ 28

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)------------------------------------------------------------- 73

Natale v. Town of Ridgefield, 170 F.3d 258 (2d Cir. 1999) ------------------------------------------------------ 62

Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986------------------------------------------------------------- 35

Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)-------------------------------------------------------------- 35

New York law. Allen v. McCurry, 449 U.S. 90, 96 (1980) ----------------------------------------------------- 40

Norton v. Town of Islip, 97 F. Supp. 3d 241, 263 (E.D.N.Y. 2015)---------------------------------------------- 64

Paddington Partners v. Bouchard, 34 F.3d 1132 (2d Cir. 1994) -------------------------------------------------- 28

PAJ Ventures, LP v. Zoning Hearing Bd. of Moore Twp., 225 A.3d 891 (2020) --------------------------------- 52

Parklane Hosiery Co. v. Shore, 439 U.S. 322 -------------------------------------------------------------------- 23

Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S. Ct. 645 (1979)--------------------------------------------- 23

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) ------------------------------------------------------------ 73

Progressive Credit Union v. City of N.Y., 889 F.3d 40, 51 (2d Cir. 2018)---------------------------------------- 43

Purdy v. Zeldes, 337 F.3d 253 (2003), ----------------------------------------------------------------------------- 41

Reese v. Bahash, 574 F. App'x 21 (2d Cir. 2014)----------------------------------------------------------------- 28

Ryan v. N.Y. Tel. Co., 62 N.Y.2d 494, 500-01 (1984)------------------------------------------------------------ 41

Sacher v. Vill. of Old Brookville, 967 F. Supp. 2d 663, 669 (E.D.N.Y. 2013). ---------------------------------- 40

Sowich v. Zoning Hearing Bd., 245 A.3d 1188 (2021) ----------------------------------------------------------- 52

St. Louis v. Praprotnik, 485 U.S. 112 (1988) --------------------------------------------------------------------- 74

Stagecoach Trails MHC, L.L.C. v. City of Benson, 232 Ariz. 562 (2013)---------------------------------------- 52

Stevens v. Miller, 676 F.3d 62-------------------------------------------------------------------------------------- 22

Stevens v. Miller, 676 F.3d 62 (2d Cir. 2012) -------------------------------------------------------------------- 22

Stokes v. Wayne Cnty., 794 F. Supp. 3d 168 (2025)------------------------------------------------------------- 28

Syracuse Aggregate Corp. v. Weise, 51 N.Y.2d 278 (1980)------------------------------------------------------ 52

Town of Orangetown v. Magee, 88 N.Y.2d 41, 643 N.Y.S.2d 21 (1996) ---------------------------------------- 53

Underhill Land, LLC, 2025 WL 2793756, at 6 ------------------------------------------------------------------ 43

United States v. Int'l Bhd. of Teamsters, 247 F.3d 370 (2001)---------------------------------------------------- 28

Victorinox AG v. B&F Sys., 709 F. App'x 44 (2d Cir. 2017) ---------------------------------------------------- 28

Waronker v. Hempstead Union Free Sch. Dist., 788 F. App'x 788, 793 (2d Cir. 2019) -------------------------- 43

Whelan v Cuomo, 220 AD3d 979, 980------------------------------------------------------------------------------ 51

Withrow v. Larkin, 421 U.S. 35, 46 (1975) ----------------------------------------------------------------------- 60

Ying Jing Gan v. City of New York, 996 F.2d 522, 531–32 (2d Cir. 1993) --------------------------------------- 67

Zahrey v. Coffey, 221 F.3d 342, 347–49 (2d Cir. 2000) --------------------------------------------------------- 70

## BEDFORD TOWN CODE

Bedford Town Code § 125-11(C)(4)--------------------------------------------------------------------------------56

Bedford Town Code § 125-12 Lots ----------------------------------------------------------------------------- 17, 51

Bedford Town Code §125.79-1A --------------------------------------------------------------------------------14

## VIDEO

https://mediahttp.iqm2.com/BedfordNY/1665_480.mp4. --------------------------------------------------------15

**QUESTIONS PRESENTED**

1. Whether the District Court erred in dismissing Plaintiff-Appellant's complaint pursuant to Rule 12(b)(6) by failing to draw all reasonable inferences in Plaintiff-Appellant's favor and instead impermissibly construing disputed allegations and incorporated exhibits in favor of Defendants.

2. Whether the District Court abused its discretion in denying relief under Rule 60(b)(2) by finding that Plaintiff-Appellant *should have known* about a dispositive 1987 land survey, where Defendants did not dispute that the 1987 survey *had not previously been produced*, and where the survey conclusively established the central disputed fact underlying the judgment.

3. Whether the District Court abused its discretion in denying relief under Rule 60(b)(3) where Plaintiff-Appellant produced evidence that the Town repeatedly represented in administrative and judicial proceedings that the residential use of the structure was unlawful while failing to disclose a dispositive 1987 survey establishing the opposite.

4. Whether the District Court abused its discretion in denying relief under Rule 60(b)(6) where extraordinary circumstances existed because newly discovered evidence fundamentally altered the factual basis of the judgment, undermined the prior determinations upon which the court relied, and established Plaintiff-Appellant's claimed property rights, such that enforcing the judgment would result in manifest injustice.

5. Whether the District Court abused its discretion in denying relief under Rule 60(b)(6) by crediting Defendants' assertions over Plaintiff-Appellant's plausibly pleaded allegations and newly discovered documentary evidence, notwithstanding the heightened obligation of government actors to deal candidly with the courts, where denying relief would result in manifest injustice.

6

JURISDICTIONAL STATEMENT

This appeal arises from a final judgment dismissing the First Amended Complaint under Rule 12(b)(6) and a subsequent order denying relief under Rule 60(b). The district court had subject-matter jurisdiction under 28 USCS §1331 as Plaintiff-Appellant's claims arise under 42 USCS §1983 and the Constitution of the United States.

This Court has appellate jurisdiction under 28 USCS §1291, as both the judgment of dismissal (SPA-1 to SPA 58) and the order denying Federal Rule of Civil Procedure 60(b) relief (SPA-59to SPA 92) are final decisions of the district court. The appeal is timely under Federal Rule of Appellate Procedure Rule 4. This Court assigned a July 7, 2026, due date.

**STATEMENT OF THE CASE**

This is a civil-rights action under 42U.S.C.§1983. Plaintiff-Appellant Melanie Hammer, a property owner proceeding pro se, sued the Town of Bedford, New York, together with its Department of Building "DOB", its Zoning Board of Appeals "ZBA", its Building Inspector (Albert Ciraco), and the attorneys for the Town (Eric Gordon and Robert Zitt (collectively, "the Town").

7

Named Defendants Gordon & Zitt, *represented themselves* as well as all other named defendants in state court proceedings.

The First Amended Complaint (FAC) alleges that the Town deprived Appellant of constitutionally protected property rights in the continued residential use of her property through a coordinated course of permit denials, zoning enforcement, code-enforcement prosecutions, and town resolutions to pursue litigation against her. (FAC, A-1 to A-132, A-84). This conduct spanned from the 4/27/2023, issuance of the Notice of Violation (NOV) until the present. (A-1 to A-132, A-333 to 470, A-505 to A-548). The legality of *a separate,* standalone structure, "the cottage," on the property is uncontested in affirmed court filings; the Town states:

> "This pre-existing non-conforming cottage was in use as a residence prior to the implementation of Zoning Code 125.79-1A, which was adopted on July 25, 1989, and restricted cottages to R2A and R4A Zoning Districts" (A-532, see A-531, A-530).

At the heart of the case is Appellant's contention that the residential use of the structure at issue, "the apartment" was lawful and grandfathered, in that, like "the cottage," it predates the 1989 zoning provision the Town invoked against it, and that the Town nonetheless denied her permits and pursued enforcement on the knowingly false premise that the residential use of the "apartment" was unlawful. (A-1 to A-132, A-333, A-533, A-534, A-335 to A-470).

8

Appellant further alleges that the Town's own records, including a 1987 survey/map identifying the structure as a "residence" (A-534/A-506), were intentionally withheld during all underlying proceedings and produced only after the dispositive briefing had closed. The Town's FOIL responses falsely denied the existence of "residential" records (A-387) that its files in fact contained. (A-530 to A-548). Appellant alleges that a map, which is dispositive of the underlying claims, was first produced in 2/12/2026 after Appellant's Rule 60(b) motion to vacate was filed on 1/23/2026. (A-333).

The Hon. J. Seibel dismissed the FAC under Rule 12(b)(6) by Order dated 1/13/2026. (SPA-1 to SPA-58). Appellant then moved for relief from the judgment under Rule 60(b),(2),(3), and (6), (A-333 to A-470) submitting newly produced internal emails that proved municipal coordination (A-373/A-521-A-524), a dispositive 1987 survey (A-534/A-506), that she contends were unavailable when the 12(b) motion was briefed and that, she argues, directly contradict the defendants court filings regarding the legality of the use of the structure as a residence (A-387-A390, A-528 to A-532). The Town provided this 1987 map for the first time on 2/12/2026 (A-534), almost two years after their original incomplete production of FOIL #2025-00057 on 2/28/2024.

The district court denied that motion by order dated 4/14/2026. (SPA-59-SPA-92). The district court agreed that:

"she did not receive the most legible version of the survey/map until after judgment…" (SPA-78)

But the decision explained that the appellant:

"…could have discovered that the survey dated back to 1987 had she exercised due diligence." (SPA-79).

Appellant also contends that she was overly diligent, and the Court noted that:

"repeated applications become vexatious with the Appellant's pursuit of these documents". (A-563#64).

The herein appeal challenges:

Both the Rule 12(b) and Rule 60(b)(2),(3)&(6) rulings present several federal questions not addressed in the underlying state court cases, including:

1. Whether Appellant held a constitutionally protected property interest in continued residential use of her property/structure.

2. Whether a municipality may extinguish such a vested property right by implication as opposed to express law;

3. Whether property rights are derived from the constitution or from a municipal grant, and

4. Whether it was an error to dismiss the complaint at the pleading stage, and to deny Rule 60(b) relief, where dispositive documents surfaced after briefing closed, which Appellant alleged are outcome-determinative.

10

Appellant contends that the district court erred as a matter of law and resolved disputed factual questions against her, contrary to the standard governing a Rule 12(b) motion to dismiss, and that it abused its discretion in denying relief from the judgment under Rule 60(b) when dispositive documents surfaced which she contends were intentionally concealed and where she submitted proof of material misrepresentation made to multiple courts (A-335-471, A505-548). Appellant contends that it was a legal error to rely on prior state court rulings on the arbitrariness of the permit denial as collaterally estopping her constitutional property deprivation 42 USC §1983 action, particularly where she plausibly alleged prior court proceedings rested on material misrepresentation, did not review conduct postdating the 2/9/2024 decision alleged in (A-12-76), and where defendants concealed dispositive documents.

This is not a routine zoning dispute; it concerns the constitutionality of the Town's code-enforcement prosecutions and the municipal course of conduct underlying them, which targeted appellant alone.

PROCEDURAL HISTORY

On 3/27/2025, Plaintiff-Appellant Melanie Hammer, "Hammer," filed a 42USCS§1983 action in the SDNY. On 6/6/2025, Hammer filed the operative FAC, entered 6/10/2025. (A 1-133, A 133-145 incorporated by reference).

Defendants moved to dismiss under Rule 12(b) on 7/11/2025. (A146-272). Briefing closed on 8/14/2025. (SPA1-58).

On 8/18/2025, four days after the briefing closed, the Town produced 800 pages of internal emails in response to a request dated 6/11/2025. (A-369). The production was heavily redacted without explanation, omitted referenced attachments, and was produced late under FOIL disclosure rules. (A-373). Plaintiff moved to reopen briefing, based on these redacted emails that Hammer asserted were proof of Town municipal coordination, and ex parte/undisclosed emails probative of procedural and substantive due process violations. She argued the delay was intentional (A-505-548); the district court declined to re-open. (A-561-563-#51-64).

Plaintiff's first FOIL request for DOB files was made 2/14/2024 under 2024-00057. In response, defendants produced several *post*-1989 documents referring to the structure as "residential". (A-536, A-538-544).

12

Directly contradicting their first response, pursuant to 1/12/2026, FOIL 2025-00484, which sought records classifying the structure as residential (A-387), the Town responded that there is nothing in the building department listing the structure as "residential." (A-387/A-535).

Hammer sought clarification on the Town's position regarding the structure's character, i.e. residential, commercial, or storage, so that she could resume renting the apartment following dismissal of the NOV and the dismissal of the §1983 action. Hammer forwarded the documents that the Town produced pursuant to FOIL 2024-00057 production, which characterized the structure as a "one-story frame *residence* over garage". (post 1989 code enactment)  (A-513-519).

To clarify, Appellant made a third FOIL, request #2026-00011, this time for "non-residential" documents (A-533). Prior to this incorrect second FOIL response, *Plaintiff had no reason to believe the Town had provided an incomplete DOB file in the first 2024-00057 FOIL production* or after *certifying complete production* in justice court in 2024 (See A-390). Instead, Hammer sought clarity on the Town's classification of the structure at issue, since their second FOIL response denied "residential" records they had produced in their first FOIL production. (A-387).

On 1/13/2026, one day after this no "residential" records FOIL response, the court granted the motion to dismiss pursuant to Rule 12(b), relying in part on collateral estoppel, prosecutorial immunity, and failure to assert a protected property interest. (SPA-1-58).

On 1/23/2026, Plaintiff filed a notice of appeal and a Rule 60(b) motion seeking relief from judgment based on newly produced evidence. (A-333-A-470).

On 2/13/2026, after the Rule 60(b) motion was filed, the Town produced, for the first time, a legible copy of a (pre-code) 1987 survey identifying the structure as "1 Story Frame *Residence* Over Garage". (A- 482). This 1987 map predates the 1989 enactment of Bedford Town Code §125.79-1A, upon which defendants relied to deny permits and to assert residential use was *illegal.*

*Hammer contends that Attorney Gerald Smith (the first attorney who is not a named party) identified the incomplete FOIL and compelled the Town to produce concealed documents as an officer of the court.*

On 4/8/2026, (after Rule 60(b) briefing was closed on 3/9/2026), the Town Board adopted a FOIL Appeal Resolution[1] acknowledging that surveys in the

---

[1] This FOIL *appeal* was the fourth attempt by Hammer to get the complete DOB file and clarification on the DOBs assessment of the character of the structure

14

Building Department file identify "1 Story Frame *Residence* Over Garage",

directly contradicting the 1/12/2026 FOIL response. (A-534, A-533).

On April 14, 2026, the district court denied the Rule 60(b) motion. (SPA-59-

SPA92). This appeal followed.

Plaintiff pursued state remedies first. On 11/2/2023, Hammer appealed the

Building Inspector's interpretation supporting permit denial to the ZBA. The ZBA

voted to affirm the permit denial by "implication." (A-133/video). On 11/30/2023,

Plaintiff filed an Article 78 petition in Westchester County Supreme Court. On

11/9/2024, Judge George E. Fufidio denied the petition. (A-227). The Appellate

Division, Second Department, affirmed that discovery was properly denied, but did

not address the merits. *Matter of Hammer v. Town of Bedford, N.Y.*, 242 A.D.3d

747 (2d Dep't 2025). Leave to appeal to the New York Court of Appeals was

pending at the time of the district court's Rule 12(b) and 60(b) decisions. (Appeal

2025-735).

## STATEMENT OF FACTS

I.      The Property and Historical Documentation of Residential Use

Plaintiff owns approximately 11.69 acres at 146 Goldens Bridge Road,

Katonah, in the Town of Bedford, located in the Residential One-Acre "R-1A"

Zoning District. (A-4). The property contains three structures: a principal residence, a pre-existing "cottage," and a detached garage with a residential apartment on its second floor (the Structure). (A-5).

The Town's Building Department has documented the Structure's residential character for nearly four decades. A 1987 land survey identifies the Structure as "1 Story Frame *Residence* Over Garage". (A-534). This date predates the Town's adoption of Zoning Code Section BTC §125-79.1A, the "Cottages" provision, enacted on July 25, 1989. (SPA-112).

A 1988 application for Certificate of Compliance recites that the buildings on the lot are used as "one-family *residence*". (A-539).

On June 20, 2012, New York State Electrical Inspection Services issued a Certificate of Compliance documenting an inspection of the electrical system at the premises described as a *"Residential"* occupancy for the second floor of the Structure, bearing a DOB-approved permit number from 2012. (A-536).

16

On 7/11/2014, the Town Building Inspector issued a Certificate of Compliance authorizing *occupancy* of the finished recreation room over the garage, which had already been built. (A-389).[2] (See A-3 -4).

II.     April 2023 Enforcement and ZBA Proceedings

On 4/27/2023, Town Code Enforcement personnel inspected the Structure and issued Notices of Violation (NOV) requiring the removal of the filed, permitted electrical and existing plumbing systems *or* retroactive permits. (A-5).

On 6/1/2023, Building Inspector Ciraco orally denied these permits. (A-6 ¶ 25). He cited BTC §125-12 "Lots", the provision originally referenced in the NOV. ("lots theory").

On 9/22/2023, the Building Inspector issued a written Letter of Building Permit denial pursuant to BTC §125-79.1A. (A-6 ¶28). ( "cottage implication theory"). Asserting that the residential use of the structure was *prohibited by implication* to BTC §125-79.1A, therefore retroactive permits could not be issued for electrical and plumbing for residential use. (A-133 and A-134). A residential electrical permit was already on file with the town and approved under permit

---

[2] The district court correctly identified an error made by Hammer in her 60(b) Reply. Hammer mistakenly referred to the first-floor CO for the "one-story residence over garage," for garage use only (A-537), rather than to the second-floor CO, which has been repeatedly referred to by the parties and the court. (A-389) and which is uncontested. (SPA-85 footnote 12).

number 22796. (A-536). Inspector Ciraco demanded removal and would not grant approval of the permits. (A-144).

On November 1, 2023, one day before the Zoning Appeal, Town Attorney Gordon emailed a Confidential Memorandum concerning the appeal to the ZBA's administrator and Chair, copying the Building Inspector and Director of Planning. (A-521-A-524). Gordon's cover email asked that the memorandum be forwarded to Board members and kept "confidential". (A-521). The memorandum was not disclosed to Plaintiff before the hearing and was not made part of the public hearing record. It was produced only later, in substantially redacted form, after federal briefing closed. (A545-A548).

At the 11/2/2023 ZBA hearing, the ZBA voted to deny retroactive permits for approved/permitted electrical and pre-existing plumbing. The Board's stated rationale rested on the "cottage implication theory," reasoning that because §125-79.1A *allows* special use permits for *cottages* in *R-2A and R-4A* districts, cottages are prohibited in other districts by *negative implication*. ("implication" video, A-133). The Town asserted that since the code empowers the Town to issue special use permits for cottages in R2A and R4A zones, residential use of Hammer's structure was illegal in the R1A zone, and thus permits could not be issued.

18

The Town argued that the apartment was illegal without these permits, although the NOV was twice dismissed (A-136, A-140), the Town voted to pursue an injunction against Hammer. (A-84)

### III. Town Attorney's Authorship of Resolution After Becoming Named Party

On 11/30/2023, Plaintiff filed an Article 78 Petition and served a Notice of Claim naming Town Attorney Gordon as a defendant. (A-8¶39).

On the same day, Gordon drafted the proposed written resolution purporting to memorialize the ZBA's 11/2/2023 affirmation of the Building Inspector's denial of the permits. (A-524).

Gordon's firm annexed his newly reasoned resolution (A-10 ¶ 52 & ¶55) to his Answer in the Article 78 action. Hammer filed this action to determine the arbitrariness of the 11/2/2023 ZBA vote and "cottage implication" denial. The resolution purported to affirm the DOB permit denial based in part on "cottage implication" under BTC §125.79-1A, but also relied on the previously disregarded "lot conformity theory" under BTC §125-12.

On 12/1/2023, ZBA Secretary Kowalski emailed the ZBA Chair and members, attaching documents authored by Gordon's firm with Gordon's initials,

19

stating: Eric would like you to review the draft resolution for Hammer and get back to him and me with any changes by Tuesday (12/5) morning. (A-548).

On 12/7/2023, the ZBA convened a public meeting and adopted the resolution Gordon had drafted. (A-10/11 ¶46-52). The written resolution's rationale shifted from the by "implication theory" voiced at the November 2 hearing to add the "lot conformity theory". (A-10-A11 ¶¶ 48-55). Importantly, this "lot theory" was not the basis for the retroactive permit denial by the Building Inspector and thus, since the ZBA is not a court of first impression, was not properly before the ZBA for consideration. (See A-134). Hammer was excluded from the 12/7/2023 hearing. (A-9¶¶46,47).

On 12/27/2023, Gordon personally executed the sworn verification of the Verified Answer filed for the Article 78 Respondents, representing to the court that the residential use of the Structure was "illegal and prohibited". (A-528). Gordon continued as one of the counsels for himself and other Respondents through the Appellate Division, where he personally made oral argument (A-13¶ 69.

IV. Contradictory FOIL Responses and Late Evidence Production

On 12/21/2025, Plaintiff submitted a FOIL request to the Town for any records reflecting "the structure as non-residential, accessory, storage, agricultural, or use other than residential". (A-509).

On 1/12/2026, the Town responded: There is nothing listing the structure as "residential" in the building department. (A-511). The response asserted that only a permit/certificate of occupancy for the second floor as a recreation room existed[3].

On 1/13/2026, the day after this FOIL response, the district court granted the motion to dismiss. (SPA-1-58).

On 2/12/2026, after the Rule 60(b) motion was filed, the Town produced, for *the first time*, a *complete and legible copy* of the *1987 survey* identifying the Structure as "1 Story Frame *Residence* Over Garage" (A-510) attached to the FOIL request (A-510). The court notes:

> "…she did not receive the most legible version of the survey/map until after judgment was entered". (SPA 79).

On April 8, 2026, the Town Board adopted a Resolution Determining FOIL Appeal stating:

> "While certain surveys in the Building Department's files identify a "1 Story Frame Residence Over Garage", those surveys were prepared by third parties. The Town Board's acknowledgment that surveys in its own Building

---

[3] Recreation room certificate of occupancy is a *residential* rather than commercial, agricultural, or accessory storage use.

21

Department file identify the Structure as '1 Story Frame Residence Over Garage'. (SPA-98).

This directly contradicts its January 12, 2026, FOIL. (A-387).

## STANDARD OF REVIEW

This Court reviews Rule 12(b)(6) dismissals de novo, accepting well-pleaded factual allegations as true and drawing all reasonable inferences in plaintiff's favor, but need not accept legal conclusions. The complaint must state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The district court's denial of a motion for relief from judgment under Rule 60(b) is reviewed for abuse of discretion. *DeWeerth v. Baldinger*, 38 F.3d 1266 (2d Cir. 1994).

However, if the denial rests on an error of law, this Court reviews the legal determination de novo. *Stevens v. Miller*, 676 F.3d 62 (2d Cir. 2012).

The application of collateral estoppel at the motion-to-dismiss stage presents a mixed question of law and fact reviewed de novo. When collateral estoppel is raised as an affirmative defense at the motion-to-dismiss stage, the district court must determine whether the defendant meets their burden in asserting this defense by sufficient proof that (1) the issue was actually litigated in the prior proceeding,

(2) the issue was necessarily decided, (3) the party had a full and fair opportunity to litigate, and (4) whether the judgment was final. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S. Ct. 645 (1979).

The determination of whether a property owner has a vested property right under New York law is a question of law reviewed de novo. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778 (2d Cir. 2007).

Whether a protected property or liberty interest exists and whether due process was satisfied are legal questions reviewed de novo on appeal. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

## SUMMARY OF ARGUMENT

I.      The District Court Abused Its Discretion in Denying Rule 60(b) Relief.

Plaintiff produced newly discovered and previously unavailable evidence establishing that the Town concealed and misrepresented critical facts underlying both the state and federal proceedings. That evidence includes: (1) a dispositive 1987 survey identifying the structure as a "1 Story Frame Residence Structure Over Garage," predating the July 25, 1989,[4] enactment of BTC §125.79-1(A); and

---

[4] The pre-ordinance residential status of the structure is therefore "grandfathered" under Bedford Town Code 125-11 (SPA-11).

23

(2) more than 800 pages of internal municipal emails proving coordination among Town actors and withheld until after briefing closed.

This evidence warranted relief under Rule 60(b)*(2) because it was newly discovered* and conclusively established the central disputed fact underlying the judgment: legal grandfathered for residential use.

Relief was also warranted under Rule 60(b)*(3) based on misrepresentations.* The Town repeatedly represented to administrative tribunals and courts that the residential use of the structure was *unlawful* while failing to disclose the dispositive 1987 survey establishing the opposite. The Town further issued contradictory FOIL responses, first denying that any "residential" records existed, then passed a resolution admitting residential records were contained in their file. (A- 511 & SPA-117).

Finally, relief was independently warranted under Rule 60(b)(6). The *cumulative irregularities*—including late production of dispositive documents, redactions without a privilege log, contradictory FOIL responses, documented misrepresentations to multiple courts (A-528, A531, A-532)  failure to produce responsive records in the 2024 FOIL production (A-535), coordinated municipal conduct demonstrated by hundreds of internal emails (A-369 and example A-373), and Town resolutions specifically targeting Hammer and authorizing litigation

24

against her (A-84)—constitute *extraordinary circumstances warranting relief to prevent manifest injustice.*

Defendants, as governmental actors, owe a heightened duty of candor to the courts and should not benefit from material misrepresentations affecting constitutionally protected property rights.

II.     The District Court Erred in Applying Collateral Estoppel.

The district court improperly applied collateral estoppel based on an Article 78 proceeding that addressed only whether the ZBA acted arbitrarily and capriciously under state law in denying permits by implication. It did not actually and necessarily decide Plaintiff-Appellant's federal constitutional claims, including property interest, procedural due process, municipal policy, neutrality of the adjudicative process, or substantive due process.

Moreover, Plaintiff-Appellant lacked a full and fair opportunity to litigate because material evidence was withheld, and discovery was unavailable. In addition, leave to appeal to the New York Court of Appeals remained pending when the district court rendered its decision, and the court erred in treating the prior proceeding as finally adjudicated.

III.     The District Court Inverted Rule 12(b)(6) Standards.

25

Rather than drawing all reasonable inferences in Plaintiff-Appellant's favor, the district court resolved disputed factual issues against her despite plausible allegations supported by documentary evidence (SPA1-SPA58). The complaint alleged, and the Town's own records confirm, that the structure was a preexisting residential dwelling entitled to lawful nonconforming status.

The court therefore erred in concluding Plaintiff-Appellant lacked a constitutionally protected property interest.

The court further erred by treating a 2014 Certificate of Compliance for a recreation room as extinguishing the prior residential use. Under New York law, abandonment of a nonconforming use requires proof of intent to abandon, and the burden rests with the municipality. The court improperly resolved that factual issue against Plaintiff-Appellant at the pleading stage. (SPA-76 ¶2). *See Toys "R" Us v. Silva*, 89 N.Y.2d 411 (1996). And shifted the burden.

The court likewise erred in dismissing Plaintiff-Appellant's due process claim. The Complaint alleged, and later-produced emails confirmed, that Town Attorney Gordon circulated a confidential memorandum to ZBA members before the hearing and later drafted the resolution adopted by the Board after becoming a named defendant. Such undisclosed ex parte communications and conflicted participation violate the neutrality due process requires. See Withrow v. Larkin,

421 U.S. 35 (1975); Gibson v. Berryhill, 411 U.S. 564 (1973). Article 78 review cannot cure a predetermined and concealed adjudicative process. *Zinermon v. Burch*, 494 U.S. 113 (1990).

The Complaint also plausibly alleged substantive due process violations. The Town deprived Plaintiff-Appellant of property rights based upon factual assertions contradicted by its own records. Persistence in a position known to be false constitutes arbitrary and conscience-shocking governmental conduct. See Cunney v. Bd. of Trs. of Grand View, 660 F.3d 612 (2d Cir. 2011).

IV.     Blanket Prosecutorial Immunity Does Not Apply

Absolute prosecutorial immunity does not shield the Town Attorney's administrative and policy-coordination functions which they used as acts in furtherance of enforcement.

V.     Monell Coordination is Plausibly Pled

The FAC plausibly alleged coordinated action among the Town Attorney, the Building Department, and the ZBA, sufficient to support municipal liability and to survive a motion to dismiss.

ARGUMENT

I.     The District Court Abused Its Discretion In Denying Rule 60(B) Relief

27

To prevail on a motion to vacate under Rule 60(b) the movant must satisfied the following four-part test: (1) the newly discovered evidence must pertain to facts that existed at the time of the trial or dispositive proceeding; (2) the movant must have been justifiably ignorant of the evidence despite exercising due diligence; (3) the evidence must be admissible and of such significance that it likely would have changed the outcome of the case; and (4) the evidence must not be merely cumulative or impeaching. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d at 370, *Reese v. Bahash*, 574 F. App'x 21 (2d Cir. 2014), *Stokes v. Wayne Cnty.*, 794 F. Supp. 3d 168 (2025), *Victorinox AG v. B&F Sys.*, 709 F. App'x 44 (2d Cir. 2017), *Mirlis v. Greer*, 952 F.3d 36 (2020), *Ins. Co. of N. Am. v. Public Serv. Mut. Ins. Co.*, 609 F.3d 122 (2010) *Lorusso v. Borer*, 260 F. App'x 355 (2d Cir. 2008), Rule 60.

## A.    Rule 60(b)(2) Newly Discovered Evidence

Plaintiff-Appellant has met the burden required under the first prong of the Teamsters Test: The newly discovered evidence must pertain to facts that existed at the time of the trial or dispositive proceeding. *Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994).

The district court stated:

"Plaintiff cannot meet her high burden on a Rule 60(b) motion to show that the evidence is newly discovered. Plaintiff *seems to suggest* she received these records in response to a FOIL request… " (J. Seibel SPA 69).

The court errs in failing to credit the Plaintiff's plausibly pleaded facts, while also confirming that Hammer pleaded them. Here, the Plaintiff produced proof of the new production on 2/12/2026, which she annexed to her motion. (A-369, A-533 & A-534).

Here, Plaintiff creditably plead that the newly discovered evidence consists of: (1) new legible 1987 map (A-533 & A-534, provided 2/12/2026), (2) internal municipal emails (A-371-373 provided 8/18/2026), (3) currently still withheld email attachments, and (4) a FOIL denial (A-535, 1/12/26), materials that were exclusively within Defendants' possession and control and that could not have been obtained through reasonable diligence.

Defendants do not dispute the late disclosure of these documents or the timeline the newly discovered evidence.  Defendant's opposition is carefully worded: "*In many instances*, the documents that Plaintiffs assert were newly discovered were in the Plaintiff's possession…" quoted from Defendant's opposition to motion to vacate. (A-490).  The Defendants do not insert any facts in this declaration regarding which documents were or were not newly provided to the Appellant, instead they attach four documents to the declaration a map with a

29

label and date obscured and stamped received "Aug 30, 2000", the same map with a handwritten number stamped received "Aug 30, 2000", and Plaintiff's architect's drawing that were prepared in 2023. (A-476 to A-480). None of these documents establishes the fact that the structure is grandfathered as a legal dwelling. Only the A-534, which Hammer proved was produced 2/12/2026, with FOIL response A-532, proves grandfather status.

The court erred as a matter of law in resolving the factual dispute regarding which documents were *new* against the Plaintiff, even though the defendant themselves did not refute it. The court further erred in finding this document to be cumulative when, in fact, it was dispositive.

## B. Diligence

The Second prong of this test requires the movant must have been justifiably ignorant of the evidence despite exercising due diligence. Plaintiff-Appellant produced proof of diligence in the pursuit of these documents. Additionally, the materials were requested in a FOIL#2024-00057 request on 2/14/2024 by Hammer's then attorney, and again in an enforcement proceeding in justice court in 2024 (see A-60 ¶ 267), and during the Article 78 proceeding and in court filings (A-60 ¶267). Yet the 1987 map was excluded in prior FOIL productions, depriving

Appellant of the opportunity to incorporate it into the opposition briefing. (A-559-SPA-563 # 51-61).

J. Seibel's own docket report reflects Appellant's diligence:

> "This is the fourth application Plaintiff has made regarding the material she sought via FOIL, and at some point repeated applications become vexatious, especially when they disregard the reasoning for the denial of earlier ones." (A-563#64).

The Town's severely delayed production cannot be attributed to any lack of diligence by Appellant. Rather, it is the direct result of the Town's intentional withholding of materials that it was legally mandated to disclose under the 2024-00057 FOIL request, 2024 Brady and CPL §245.20 obligations, and FOIL 2025-00484. (A-60 ¶267, A-387).

The court drew factual conclusions against the Plaintiff, although the Town conceded that Plaintiff in fact sought documents in 2024 and seemingly defensively asserted:

> "The first document Plaintiff *cites* is a document attached at Exhibit J to her motion, which is a letter to a State Court Justice dated January 23, 2024, requesting limited discovery related to a pending matter. The letter did not constitute a FOIL request to the Town, and the Town was therefore under no obligation to respond absent a Court order…" (A-491¶2).

> In footnote 1, the Town explains the late FOIL response (conceding newly discovered evidence):

"Plaintiff's June 11, 2025, FOIL request required the Town to search for *every document in its possession*, including emails, relating to Plaintiff, or Plaintiff's property, since April 2023". (A-491 footnote 1).

But the Town did not provide the 1987 Map until January 12, 2026, although it was undisputedly in their possession in 2023 and they admitted they searched for "every document in their possession".

C.      The District Court's Reliance on *Malandris* is Legally Inapposite

The District Court's reliance on *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152 (10th Cir. 1983) is entirely misplaced. In *Malandris*, the court denied relief because the moving party failed to seek discovery during the routine pre-trial process and instead waited until after an adverse jury verdict.

The facts here stand in stark contrast. Appellant did not sit on their rights; instead, Appellant was repeatedly denied discovery despite making exhaustive/continuous requests to the courts and via FOIL before the dismissal decision was rendered. Diligence does not require clairvoyance.

Appellant exhausted every available procedural vehicle to obtain these documents prior to dismissal; the diligence standard has been fully satisfied. *Malandris* is wholly inapplicable. The court noted:

32

"…at some point repeated applications become vexatious…" (SPA-563#64).

It was also an error of law for the court to apply the standard of *United States v. All Right, Title & Int. In Prop. & Premises Known As 710 Main St.*, 753 F. Supp. 121, 127 (S.D.N.Y. 1990) which the court cited as:

> "(denying rule 60(b)(2) motion because *government* failed to show it could not have found evidence earlier had it exercised due diligence where evidence had been in *possession of municipality as public* document since before case was filed).(SPA-70¶2)

In that case the court held the government to a strict standard, emphasizing that the *federal government cannot claim "excusable neglect" or a lack of tools when failing to access standard municipal records*. It is an error of law and an abuse of discretion to apply this heightened standard in favor of government withholding of documents from a citizen.

    D.    The evidence must be admissible and of such significance that it likely would have changed the outcome of the case.

The third prong has been met. The issue of the legality of the residential use of the structure is dispositive of the defendant's litigation position throughout the underlying proceedings and issuance of the NOV.  If, as now is proven, the Town withheld proof of grandfathered residential use and:

(1) Issued a NOV,

(2) Demanded and denied permits,

(3) Instigated two duplicative enforcement proceedings,

(4) Actively concealed documents,

(5) Opposed discovery in civil litigation,

(6) Certified complete discovery in the justice court,

(7) Passed town resolutions to seek injunctions against a private landowner,

(8) Made misrepresentation to the Second Department in legal filings, and

(9) Did not correct course once the 1987 Map was produced,

With these actions, the government deprived appellant of the use and enjoyment of her private property, which was constitutionally impermissible. The Defendants acted under color of law to deprive the Plaintiff of her constitutionally protected property rights, under 42USC§1983.

Under Rule 60(b)(2) such evidence, which directly contradicts the Town's litigation positions and supports Appellant's claims, would likely produce a different result, or at very least, these documents presented further proof of the

34

allegation of coordination and municipal policy plausibly pleaded in the (A-16-19) and thus it was an error of law to dismiss at this stage. The district court's failure to grant relief on this ground constitutes an abuse of discretion. Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).

    E.    Not Cumulative

It was an abuse of discretion for the district court to determine that the evidence was cumulative.

> "Indeed, there can be no dispute that in 2023, well before Plaintiff filed her complaint in this case, she had in her possession at least two versions of that survey/map from which she could easily have pieced together that the document dated back to 1987". SPA-78¶3.

The district court decision then points to documents A-475-480, annexed to the Defendant-Appellee's 60(b) opposition (1) (A-475) is a map in which the structure's label is illegible and the date is obscured. And (2) A-479 is the Plaintiff's architect's 2023 map.

It was an error of law and an abuse of discretion for the Court *not* to remark on the Town's *intentional withholding of evidence and assert that Hammer was*

35

*not diligent in piecing together the prior incomplete (certified as complete FOIL)*

*disclosures.*

> "Therefore, *even though she did not receive the most legible version of the survey/map until after judgment was entered*, it does not constitute 'newly discovered evidence.'"(SPA-79).

B.      Rule 60(b)(3) Fraud on the Court and Misrepresentation

Relief under Rule 60(b)(3) for fraud or misrepresentation requires clear and convincing evidence that there was an intentional misrepresentation, omission, concealment, or other form of fraudulent conduct, the misrepresentation was made with knowledge of its falsity or with reckless disregard for its truth, and the misrepresentation was material and substantially interfered with the opposing party's fair opportunity to present its case. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). That standard is met here with documentary evidence.

The Town's categorical denial on January 12, 2026, that *any* records existed classifying the structure as *"residential",* coupled with its subsequent production of the 1987 survey and the April 8, 2026, Town Board acknowledgment that surveys in the Building Department file identify the structure as a *"residence"* constitutes substantial misrepresentation that substantially interfered with Appellant's fair presentation of its case. (A-528-544, A373-470). Since the

documents Hammer offers as evidence are official Town resolutions, signed and affirmed court filings, legal FOIL responses, and an official town FOIL appeal resolution adopted by the Town, there is no doubt that the evidence is clear and convincing.

The timing is critical. On 1/12/2026, the FOIL response occurred after the briefing on Rule 12(b)(6) concluded. The categorical denial-that no such records existed-was contradicted by the Town's own file identifying the structure precisely as Appellant claimed. The Town's later acknowledgment that such surveys existed in the Building Department file *demonstrates that the January denial was not merely incomplete but affirmatively misleading*. (4/8/2026, FOIL Appeal Resolution). (A-505-A548)

The Town's affirmative misrepresentation forced Appellant to oppose 12(b) dismissal without access to material evidence, and therefore, the district court rendered judgment on an incomplete record. This is exactly what Rule 60(b) relief was intended to prevent.

E.     Rule 60(b)(6) Extraordinary Circumstances

Relief under Rule 60(b)(6) for extraordinary circumstances is available when the moving party demonstrates circumstances that are truly extraordinary and that would render it manifestly unjust to leave the judgment undisturbed. *Matarese v.*

37

*Le Fevre*, 801 F.2d 98 (2d Cir. 1986). Courts have recognized that extraordinary circumstances may include fraud, misconduct, or procedural irregularities that undermine the integrity of the judicial process itself. *Mandala v. NTT Data, Inc., 88 F.4th 353* (2d Cir. 2023), *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).

The cumulative effect of the procedural irregularities in this case, considered together, constitutes extraordinary circumstances warranting relief.

First, the late production of 800 pages of emails after Rule 12(b)(6) briefing closed deprived Appellant of the opportunity to incorporate this evidence into opposition briefing.

Second, the produced materials were heavily redacted without explanation.

Third, the produced materials omitted referenced attachments, further compromising the completeness of the record.

Fourth, the contradictory FOIL positions-categorical denial followed by production and acknowledgment-demonstrate a pattern of withholding and misrepresentation.

Fifth, the late-produced materials include pre-hearing influence materials that were concealed from Appellant and the court.

38

The cumulative effect of these created a situation in which the judgment rests on a compromised record. The district court erred in failing to recognize these documents and misrepresentations as extraordinary. The court's finding that these documents were cumulative was an abuse of discretion.

The district court erred in conflating Rule 60(b) (2) and Rule 60(b)(3):

> "… she has not shown that they are new, and there is every reason to *believe* they are not. In arguing that the Town falsely stated in a January 12, 2026, FOIL response that "[t]here is nothing listing the [S]tructure as 'residential' in the building department," (SPA-68¶2)

The 1987 map was produced on 2/12/2026, *after the briefing*. It was the date on the map that was pivotal to the proof of the defendant's misrepresentations (below).

> "These provisions address different issues and are supported by different categories of evidence in this motion. Plaintiff's request for relief under Rule 60(b)(3) is based on Defendants' repeated misrepresentations regarding the legality of the residential use of the structure. Exhibits 1 through 15 contradict those representations. The mischaracterization of the residential status of the structure is the basis for Plaintiff's Rule 60(b)(3) argument and undermines collateral estoppel principles.
> By contrast, Plaintiff's request for relief under Rule 60(b)(2) is based on newly discovered evidence, including internal Town emails and related documents that were produced late. These communications bear on *Monell* and Prosecutorial Immunity directly." (A-518-A519).

Plaintiff argues in the alternative that the combination of proof of misrepresentations, coupled with intentionally withheld documents in the Town's exclusive control, was the basis for an alternative theory under which the court

39

could have provided Rule 60(b)(6) relief. Here, "extraordinary circumstances" render enforcement of the judgment inequitable. *Gonzalez v. Crosby*, 545 U.S. 524 (2005). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988). The Second Circuit likewise holds that Rule 60(b)(6) applies where a judgment rests on a materially distorted factual foundation. *Klapprott v. United States*, 335 U.S. 601 (1949), *Mandala v. NTT Data, Inc.,* 88 F.4th 353, 359 (2d Cir. 2023).

II. Collateral Estoppel Does Not Bar Litigation of Appellant's Federal Claims

This Court reviews the dismissal de novo, accepting the well-pleaded allegations of the Amended Complaint as true and drawing all reasonable inferences in Appellant's favor. *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020). The preclusive effect of the state-court judgment is governed by state law; *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *Sacher v. Vill. of Old Brookville*, 967 F. Supp. 2d 663, 669 (E.D.N.Y. 2013). Under Second Circuit authority, the doctrine of collateral estoppel prevents a party from relitigating an issue of fact or law that was previously litigated and decided, provided certain conditions are met. These conditions include: (1) the *identical issue* was raised in a prior proceeding; (2) the issue was *actually litigated* and decided in the prior proceeding; (3) the party had a *full and fair opportunity* to litigate the issue; and (4) the resolution of the issue was

40

necessary to support a *valid and final judgment on the merits*. *Purdy v. Zeldes*, 337

F.3d 253 (2003). *Interoceanica Corp. v. Sound Pilots*, 107 F.3d 86 (1997),

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (1992).

> A.     The Issues Presented Here Were Neither Identical To, Nor Actually
> and Necessarily Decided In, the Article 78 Proceeding

Under New York law, collateral estoppel applies only where (1) the identical

issue was actually and necessarily decided in the prior proceeding and is decisive

of the present one, and (2) the party against whom preclusion is invoked had a full

and fair opportunity to litigate it. Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455-

56 (1985); Ryan v. N.Y. Tel. Co., 62 N.Y.2d 494, 500-01 (1984). The party

invoking preclusion bears the burden of demonstrating that the identical issue was

necessarily decided. *Kaufman,* 65 N.Y.2d at 456, an issue is not "identical" merely

because it arises from the same transaction. Id. at 456-57.

The District Court acknowledged that FAC pled the issues were not actually

and necessarily decided, but rejected the argument by collapsing the distinction

between the state and federal issues:

> "Plaintiff argues issue preclusion does not apply because her claims were not
> actually and necessarily decided in a prior proceeding. But while the same
> claims were not decided, the issues that underlie them were. . . . It does not
> matter that the Article 78 court did not determine whether the denial violated
> her constitutional rights. It decided the issue of whether the ZBA acted

41

arbitrarily, and that issue is a necessary *component* of her constitutional claim now before me." (SPA-23)

That reasoning is error. The court's own opinion concedes the dispositive point: "the Article 78 court did not determine whether the denial violated her constitutional rights." (Id.) A "necessary component" of a federal claim is not the same as the federal issue itself. Preclusion requires identity of the issue actually decided, not identity of one ingredient of the federal cause of action. *Kaufman*, 65 N.Y.2d at 456-57. Additionally, the article 78 reviewed only the 11/2/2023 ZBA decision, not the conduct spanning from 4/27/2023 to the 2/12/2026 (concealed map).

> (i) Deferential State Administrative Review Did Not Decide The Distinct Federal Questions.

In the Article 78 proceeding, the court reviewed a question of state administrative law: Whether the ZBA's denial of Appellant's variance application and construction permit by *implication* under BTC §125.79-1A *was arbitrary and capricious*. The decision itself confirms this narrow compass.

> "Petitioner essentially alleges that the ZBA acted arbitrarily and capriciously in denying her variance application . . . .The ZBA's decision to deny her application . . . was not irrational." (SPA-23).

That deferential, rationality-based review did not, and could not, decide the distinct federal questions presented here: Whether Appellant possessed a constitutionally protected property interest in the continued residential use of the structure; Whether the Town afforded her the process the Fourteenth Amendment requires; And whether the Town's decision-making process was constitutionally neutral. The complaint also plausibly pled,

> "The case before this court is broader and the 11/2/2023 decision is merely one overt act in furtherance of a concerted policy to deprive the plaintiff of her constitutionally protected property rights. This civil rights action has never been reviewed. (A-8¶40).

While state law defines the underlying substantive interest, federal constitutional law determines whether that interest amounts to a legitimate claim of entitlement protected by the Due Process Clause. *Progressive Credit Union v. City of N.Y.*, 889 F.3d 40, 51 (2d Cir. 2018); see *Waronker v. Hempstead Union Free Sch. Dist.,* 788 F. App'x 788, 793 (2d Cir. 2019). That second step is a federal constitutional question that an Article 78 arbitrariness review does not reach. The District Court relied on *Underhill Land*, LLC, 2025 WL 2793756, at 6, but *Underhill* holds at most that the rationality sub-element may be precluded; it does not hold that arbitrary-and-capricious review answers the antecedent property-interest question or the takings question, neither of which was before the Article 78 court.

43

(ii)     The Town Code interpretation was not necessary to the

judgment, as the District Court itself recognized.

Even where issues overlap, a point that is not essential to the prior judgment

has no preclusive effect. *Kaufman*, 65 N.Y.2d at 456-57. The District Court's own

opinion supplies the admission that defeats preclusion on the Town Code

interpretation. In its probable-cause analysis, the court expressly stated that the

Town Code interpretation issue

> "is not necessarily precluded by Judge Fufidio's and the Appellate Division's
> findings that the Town's interpretation of the Town Code was reasonable."
> (SPA-45.)

The court likewise disclaimed reliance on the negative-implication canon,

explaining that:

> "…the correctness, or not, of Ciraco's and the ZBA's interpretation does not
> drive the outcome here." (SPA-3 n.1.)

 If the interpretation issue is "not necessarily precluded" and did not "drive

the outcome," then the rationality finding cannot bear the sweeping preclusive

weight the court assigned it elsewhere in barring the constitutional claims.

(iii)   Conduct post-dating the February 9, 2024, judgment could not

have been decided.

44

Collateral estoppel reaches only issues that were *litigated and decided*; it cannot, as a matter of logic, reach conduct *post*-dating the prior judgment. *Kaufman*, 65 N.Y.2d at 455. Justice Fufidio's decision was issued on 2/9/2024. Yet the FAC pleads a course of conduct extending well beyond that date—including the criminal summonses arraigned on 6/11/2024, and 9/17/024 four months and seven months after the 2/9/2024, decision was rendered. The 10/1/2024, Town Board resolution to commence litigation (eight months later); the Brady non-disclosures; and the newly discovered misrepresentations to the court. At the time of the Article 78 decision, there had been no enforcement actions, no resolution to commence litigation, and no evidence of later discovered misrepresentation to courts. None of this conduct was before the Article 78 court, and none could have been "actually and necessarily decided" by a judgment that predated it. The District Court did not address this temporal limit, and its application of preclusion to claims rooted in conduct occurring after February 2024 cannot stand.

B.     Absence of Full and Fair Opportunity

Collateral estoppel further requires that the party to be bound had a full and fair opportunity to litigate the issue in the prior proceeding. The "full and fair opportunity to litigate" requirement is a critical element of collateral estoppel. Courts assess whether the party opposing preclusion was fully able to raise the

45

same factual or legal issues in the prior litigation. This analysis considers the realities of the prior litigation, including whether any circumstances may have practically deterred or discouraged the party from fully litigating the issue.

*Guggenheim Capital, LLC v. Birnbaum (In re Birnbaum),* 513 B.R. 788 (2014), *Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.*, 362 F. App'x 151 (2d Cir. (2010), *Johnson v. Watkins*, 101 F.3d 792 (1996).  For example, the Second Circuit has declined to apply collateral estoppel where a party was deprived of a fair opportunity to litigate due to judicial bias or procedural irregularities that undermined the fairness of the prior proceeding. *Guggenheim*, 513 B.R. 788 (2014).

The District Court compounded the error by invoking judicial notice of exhibits in the Article 78 docket to find a full and fair opportunity. (SPA- 24 n.15.) Judicial notice may establish that filings exist; it cannot resolve the disputed significance of what those filings show, much less what they omit. With respect to the documents, the court conceded that the Appellant attached as proof to her Rule 60(b) pleadings and listed 11 items spanning pages SPA67- 69.  She stated:

> "As for the other documents, she has not shown that they are new, and there is every reason to believe they are not." (SPA-68).

This statement once again shows the court making a factual finding against the Plaintiff-Appellant at the pleadings stage, which is an error of law under *Iqbal*.

Since Appellant has plausibly pleaded and proved through, the late production of 800 emails, it was error for the court to determine that the article 78 was fully and fairly decided.

A litigant confronted with a concealed and internally inconsistent municipal record did not receive the full and fair opportunity that preclusion presupposes. Where a party challenges preclusion on the ground that the prior proceeding denied a full and fair opportunity to litigate, the disputed circumstances present factual questions that cannot be resolved on the face of the pleadings.

C.     The resolution of the issue was necessary to support a *valid and final* judgment on the merits.

The judgment on which the court relied was neither valid nor final. In the instant case, the court was presented with multiple legal filings and statements made by the defendants that were plainly untrue. The state court relied on these misrepresentations. A judgment based on misrepresentations cannot be valid.

The decision was not final, leave for appeal was pending and thus not final at the time of the court's decision. Therefore, the court erred on this prong of collateral estoppel as well.

III.     The District Court Improperly Resolved Disputed Factual Issues Against Appellant

47

A motion to dismiss under Rule 12(b)(6) tests only the legal sufficiency of the complaint. The court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor; it may not resolve disputed factual issues, weigh competing evidence, or draw inferences against the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). On such a motion, the court's consideration is confined to the complaint, documents attached to or incorporated in it, and matters of which judicial notice may be taken. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. (2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002).

*The district court departed from these principles by resolving disputed factual issues against Plaintiff-Appellant. Court filings and FOIL productions and official resolutions prove the Defendants' characterization of the structure as non-residential and treated that contested characterization as conclusively established, notwithstanding the FAC's contrary allegations and the official documents supporting them.*

Taken as true, they establish at a minimum, a plausible claim that the residential use was lawful. Whether Plaintiff-Appellant possessed a vested, pre-existing residential property interest, whether the structure history grandfathered a lawful residential use, and whether the Defendants improperly recharacterized that use were disputed factual questions central to the constitutional claims. *Rather*

48

*than accept the well-pleaded allegations as true, the district court resolved those questions adversely to Plaintiff-Appellant on the pleadings alone-precisely what Rule 12(b)(6) forbids.*

The error is especially consequential because Plaintiff plausibly alleges that the dispositive records were in the defendant's control and were not produced or produced too late to be used. The proper course is to permit the claim to proceed, not to resolve the disputed facts against a plaintiff at the pleading stage. The dismissal should be reversed.

IV.    THE DISTRICT COURT ERRED IN CONCLUDING APPELLANT LACKED A PROTECTED PROPERTY INTEREST

A.    The Entitlement Doctrine Governs New Permits, Not Vested Rights in Existing Uses.

The district court's entitlement analysis rested on a false premise, that Plaintiff did not have a protected property interest. After Rule 60(b) pleadings, I submit, entitlement to continued residential use and thus the permits are proven.

The court's analysis asks whether a party has a legitimate claim of entitlement to a benefit sought, typically a new permit or approval, and holds that

49

where the regulator has discretion to grant or withhold that benefit, there is ordinarily no protected entitlement to it. *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494 (2d Cir. 2001).

It was a legal error for the Court to apply that rule because it necessarily assumed that the plaintiff did not have a vested property interest; it assumed that this permit was a discretionary entitlement. The question properly before the court *should have been* whether an owner has a protected interest in *continuing a use* that was lawful when undertaken.

The district made an error of law in stating:

"Plaintiff did not have a constitutionally protected property interest in the zoning classification of her property, because "under New York law . . . , a landowner has no vested interest in the existing classification of his property." (SPA-13).

The district court applied the discretion-defeats-entitlement rule to foreclose the claim entirely. But Plaintiff-Appellant does not seek a new permit or approval. She asserts the right to continue residential use as pleaded (A-28¶135) and then presents proof that the residential use was lawful and grandfathered for decades. (A-534).

Thus, the question is not whether the Building Inspector may deny a future permit, but whether Plaintiff-Appellant holds a vested or grandfathered interest in the existing use.

50

Here, Plaintiff-Appellant was never seeking a *special-use cottage permit*; instead, she sought retroactive construction permits for an already-built apartment in an *attempt to comply with the (dismissed) NOV* issued on 4/27/2023, premised on a "lot theory" under BTC §125-12. The defendants denied those permits on the ground that the apartment was a "cottage" and residential use was prohibited by "implication" (the cottage "implication theory" Under BTC §125-79-1A), and then took a further inference to determine that since special use permits *could be granted* in R2A and R4A zones, then an existing cottage *was prohibited in R1A* and thus they could not issue retroactive construction permits. The District Court's reliance on *Penn Central* and *S. Nassau Bldg. Corp* is misplaced:

"Where evidentiary material is submitted and considered on a motion to dismiss a complaint" for failure to state a cause of action, "the question becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one, and unless it has been shown that a material fact as claimed by the plaintiff to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate" (*BT Holdings, LLC v Village of Chester*, 189 AD3d 754, 759 (2012. See *Whelan v Cuomo*, 220 AD3d 979, 980).

At the Rule 60(b) motion to vacate stage, the question before the court changed. To determine whether it was lawful for the building inspector to prohibit

51

these permits based on his discretion when there is an entitlement to a continued vested residential use.

This right cannot be retroactively extinguished unless the use is abandoned, constitutes a nuisance, or is extinguished through eminent domain. *PAJ Ventures, LP v. Zoning Hearing Bd. of Moore Twp*., 225 A.3d 891 (2020), *Sowich v. Zoning Hearing Bd.*, 245 A.3d 1188 (2021), *Stagecoach Trails MHC, L.L.C. v. City of Benson*, 232 Ariz. 562 (2013),

*Abandonment would have to be proven by the Town* but is directly contradicted by the Town also demanding demolition of an apartment *they conceded still exists*. This is compounded by the Town also affirmatively concealing documents.

B.    New York Law Protects Vested Rights and Pre-Existing Nonconforming Uses

A pre-existing nonconforming use that lawfully existed before the enactment of a zoning restriction and was continuously maintained may continue notwithstanding the later restriction; a zoning ordinance cannot prohibit a use to which the property was lawfully devoted when the ordinance was enacted. *Syracuse Aggregate Corp. v. Weise*, 51 N.Y.2d 278 (1980). Separately, a vested right may arise where, in reliance on a lawful authorization, the owner has made

52

substantial improvements such that municipal interference would work a serious loss. *Town of Orangetown v. Magee*, 88 N.Y.2d 41, 643 N.Y.S.2d 21 (1996)

The A-28¶134 pleads facts within these doctrines, especially in light of the new 1987 map. The Rule 60(b) Motion to Vacate under 60(b) and its Reply present the court with dispositive proof that the residential use of the Structure predated 1989. Court filings prove the *defendants relied on this date*.

> "This pre-existing non-conforming cottage was in use as a residence prior to the implementation of Zoning Code 125.79-1A, which was adopted on July 25, 1989, and restricted cottages to R2A and R4A Zoning Districts" (A-532. See A-531, A-530).

Thus, the defendants concede that if the residential use predated the restriction, it is lawful. New York law protects its continuation, and the Town could not extinguish it.

C. The Permit Denial Rested on an Impermissible Reading of the Code

The denial also rested on a misreading of the Town Code that cannot be squared with settled principles of zoning interpretation. The Town denied the application on the ground that a cottage is not permitted in the R-1A district pursuant to BTC §125.79-1A. But BTC §125.79-1A does not prohibit cottages in R-1A zones. By its terms, it *authorizes* the Planning Board to *grant* a special *permit for a cottage* in the *R-2A and R-4A districts and limits those more restricted and less dense districts to a single cottage.*

The Code is silent as to cottages in R-1A, which, by definition, allows a residence on each acre; here, the plaintiff has nearly 12 acres and only 3 residences.

The Town converted that silence into a prohibition by negative implication, while also ignoring the express R1A zoning. New York law does not permit that move. Zoning ordinances are in derogation of the common law and are strictly construed against the municipality, so that any ambiguity is resolved in favor of the property owner. *Allen v. Adami*, 39 N,Y.2d 276 (1978); *Atkinson v. Wilt*, 94 A.D.3d 1218 (3d Dep't 2012).

Where statutory language is clear and unambiguous, courts must enforce its plain meaning and not read unstated legislative intent into the text. *Matter of Tall Trees Constr. Corp. v. Zoning Bd. of Appeals of Town of Huntington*, 97 N.Y.2d 86, 91 (2001).., 56 N.Y.2d 340 (1982). See also Defendant authored treaties attached. (A-106).

The Town's reading offends both principles: it treats the Code's silence as an unambiguous prohibition while resolving the asserted ambiguity against the owner, and it reads a provision restricting the lower-density districts as if it silently imposed a broader bar on the denser (less restrictive) R-1A district-an irrational

54

construction that inverts the structure of the ordinance, which excludes R1A to allow for subdivision.

Thus, residential use was not prohibited by the Code; it remained lawful and consistent with the R1A zone. Hammer has a protected property interest in continuing this vested use. The Bedford Town code has no section that requires cottage permits for detached cottages in the R1A zoning district. This is undisputed.

V.      THE DISTRICT COURT ERRED IN TREATING THE 2014 RECREATION-ROOM CERTIFICATE AS A CESSATION OF RESIDENTIAL USE

The district court treated the 2014 Certificate of Compliance for a recreation room as extinguishing Plaintiff-Appellant's claim of a pre-existing residential use. As the court stated:

> "Finally, even if the documents were newly discovered, and even if Plaintiff were correct that they show that the use of the space above the garage as an apartment was a pre-Town Code, permit-era, lawful non-conforming use that was grandfathered in because it was 'recognized' by the Town, (P's Reply at 7, 10-13; see P's Mem. at 13-14), it appears that that use ceased to be legal in 2014, as set forth in Part III.B below." (SPA-73¶2).

55

The court's Part III.B analysis rests entirely on BTC §125-11(C)(4), which provides that a pre-existing, non-conforming use loses that status if the use "ceases for a period of more than six months or is changed to a conforming use." (SPA-84.)

From the single fact that a July 11, 2014, Certificate of Compliance authorized a "finished recreation room over garage," the court concluded that the structure "changed from a non-conforming use to a conforming use," and that Plaintiff-Appellant therefore "was not permitted to revert the use to a residential one." (Id.) That conclusion is legally and factually unsupportable, and the court's own language reflects its uncertainty: it held only that the change "appears" to have occurred, that Plaintiff-Appellant "appears" to have been barred from reverting, and that her theory does "not seem" plausible. (Id. at 26-27.) Tentative characterizations of a disputed record cannot supply the certainty required to dismiss a claim under *Iqbal or Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The court committed a legal error in crediting one document over all others and then drawing a legal conclusion in favor of the defendant, contrary to Rule 12(b).

First, the issuance of a recreation-room certificate does not establish, as a matter of law, that residential use of the dwelling ceased. A recreation room and a

56

residential dwelling unit are not necessarily distinct uses; authorizing the former does not prove the abandonment of the latter.

BTC §125-11(C)(4) is triggered only where the non-conforming use "ceases for a period of more than six months" or is affirmatively "changed to a conforming use." The 2014 certificate documents neither. It does not state that residential use stopped, and it cannot bear the weight of a finding that residential use was discontinued for six months or permanently converted away. This CO does not authorize commercial, or storage use distinct from residential use.

Second, the court inverted the governing burden. Abandonment of a non-conforming use is not established by a change in how a space is labeled or by the issuance of a permit for an accessory use; it requires proof of an intent to abandon, and the burden of that proof rests on the Town. *Toys "R" Us v. Silva*, 89 N.Y.2d 411 (1996). The district court required no such showing. It presumed extinguishment from the bare existence of the 2014 certificate, relieving the Town of its burden under *Toys "R" Us v. Silva* and *placing on Plaintiff-Appellant the obligation to disprove an abandonment the Town never proved*. Toys "R" Us v. Silva, 89 N.Y.2d 411, 420-21 (1996).

Third, the court's conclusion cannot be reconciled with the undisputed present condition of the property. The Town's enforcement action is premised on

57

the existence of a residential apartment in the structure today. A use that is presently in existence—and that forms the basis of the Town's own prosecution—cannot simultaneously have been permanently abandoned or extinguished in 2014. At most, the record presents a disputed question as to whether residential use was ever interrupted at all—precisely the kind of factual dispute that cannot be resolved against the pleader. Ash*croft v. Iqbal*, 556 U.S. 662, 678 (2009*), Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

On a motion to dismiss, the court was required to accept Appellant's well-pleaded allegations as true and to draw all reasonable inferences in her favor. *Id*. Whether the 2014 certificate marked a cessation of residential use or instead reflected the configuration of an existing residential space at a particular moment is a contested factual question. The Complaint alleges continuous residential use documented in the Town's own records, and the 2014 certificate, read in the light most favorable to Plaintiff-Appellant, does not show a discontinued use, it supports the continued residential use.

In resolving that dispute against Plaintiff-Appellant, the court committed four interrelated errors.

First, it disregarded all but one of the relevant documents before it, crediting a single document that the Town argued defeated residential use while ignoring the

records—including maps and surveys on file with the Town identifying the Structure as a "residence"—that supported it.

Second, it treated the recreation-room certificate as affirmative proof of a non-residential use, when the certificate establishes no such thing.

Third, it read the pleadings in Defendants' favor, contrary to the standard required under *Iqbal*.

And fourth, it inverted the burden of proof established in *Toys "R" Us v. Silva*, shifting onto Plaintiff-Appellant the obligation to disprove an intent to abandon residential use—when the burden of proving abandonment rests on the Town.

IV.    Due Process Requires A Meaningful Opportunity To Be Heard Before A Neutral Decisionmaker

When a protected property interest is implicated, the Due Process Clause of the Fourteenth Amendment guarantees notice and a meaningful opportunity to be heard. Math*ews v. Eldridge*, 424 U.S. 319 (1976); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). That opportunity must be afforded at a meaningful time and in a meaningful manner, and before a neutral and impartial decisionmaker. "A fair trial in a fair tribunal is a basic requirement of due process," and that requirement applies to administrative and quasi-judicial adjudicators no

59

less than to courts. *Withrow v. Larkin*, 421 U.S. 35, 46 (1975), *Goldberg v. Kelly*, 397 U.S. 254 (1970).

Plaintiff-Appellant does not dispute that a municipal attorney may, in the ordinary course, advise a ZBA on legal questions. The district court rested its rejection of the neutrality claim on precisely that proposition, reasoning that

> "Gordon was not counsel to a party appearing before the ZBA; rather, as Town Attorney, Gordon was the ZBA's attorney and legal advisor," and that communications between a board and its own counsel are therefore not ex parte. (SPA-74¶2).

But that framing answers a narrower objection than the one Plaintiff-Appellant raises. The defect is not that the Board consulted a lawyer. It is that the lawyer who authored the Board's adjudicative determination had, by that point, become a named adverse party to Plaintiff-Appellant and then drafted the very decision already under article 78 review. (A-517).

The sequence is documented. And has been explained in the "Town Attorney's Authorship of Resolution After Becoming Named Party" section of this document. (Page 17).

The district court itself characterized Gordon as appearing "as Town Counsel *on behalf of the Town of Bedford*" at the November 2, 2023, ZBA hearing (SPA-3¶2), and acknowledged Plaintiff-Appellant's plead that "Gordon became an interested party by virtue of her suing him, and thus that his communications with

60

the ZBA were improper after that point." (SPA-47¶3). A board's own neutral legal advisor and a named adverse litigant are not the same actor. Once Gordon became a party, he was no longer a disinterested advisor to the tribunal; he was a person with a personal stake in the outcome, an outcome that could affect his firm's employment with the Town and drafting the tribunal's decision against the litigant who had named him, was improper. Due process does not permit the participation of one with such a stake in the decision's rendering. *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973). The standard is objective, asking whether the situation presents "such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow*, 421 U.S. at 47. An attorney authoring the determination under review, for a board adjudicating a matter in which he is personally named, presents precisely that risk.

The issue was pleaded and supported by documentary evidence. In rejecting it, the district court did not find the facts insufficient; it dismissed the contention as "preposterous" (SPA-74¶2) and resolved the neutrality question against Plaintiff-Appellant at the pleading stage, notwithstanding the documents establishing the timeline above. That was error under the governing standard, which required the court to accept her well-pleaded allegations as true and draw all reasonable inferences in her favor. And thus, warranted granting the RULE60(b) motion.

61

The district court was not required to conclude that Plaintiff-Appellant would ultimately prevail on this claim. It was required only to credit her well-pleaded allegations and the documents supporting them, and to draw reasonable inferences in her favor. By instead resolving the neutrality question against her at the pleading stage—on a record from which the most probative materials had been withheld, and portions of which remain redacted—the court committed legal error.

V.    The First Amended Complaint States A Substantive Due Process Claim

Separate from the procedural defects addressed above, the FAC states a substantive due process claim. Substantive due process protects against governmental conduct affecting a protected property interest that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, rather than merely incorrect or erroneous. *Natale v. Town of Ridgefield*, 170 F.3d 258 (2d Cir. 1999); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494 (2d Cir. 2001). The standard is demanding, but it is satisfied where a municipality wields its enforcement and permitting power against a factual premise it *knows to be false and persists in doing so after the falsity is exposed*. *Cunney v. Bd. of Trs. of Grand View*, 660 F.3d 612 (2d Cir. 2011).

62

The arbitrariness here does not rest on a mistaken judgment. The Town denied permits and prosecuted Plaintiff-Appellant on the asserted ground that the residential use of the Structure was unlawful and post-dated the 1989 cottage restriction, while its own files documented that use as predating the restriction. A municipality that deprives an owner of property rights on a factual premise its own records refute does not act on a rational basis; it acts arbitrarily in the constitutional sense.

The Town's conduct after the 1987 map was produced confirms that it was deliberate rather than mistaken. In a related enforcement action, it certified that discovery was complete, while records and internal emails remained undisclosed. When Plaintiff-Appellant sought the records by DOB File via FOIL2024-00057 in 2/12/2024, and FOIL requested "residential" records on 12/21/2025, the Town responded on 1/12/2026, that there is nothing listing the structure as "residential".

A municipality acting in good faith corrects course when its own records contradict its position; the Town instead reaffirmed the false position after being confronted with the truth. Persistence in a position after its falsity is exposed is the antithesis of an honest mistake.

63

V.    Absolute Immunity Does Not Protect The Town Attorney's Administrative, Investigative, And Policy-Coordination Conduct

The district court erred in dismissing the claims against the Town Attorney on absolute prosecutorial immunity. Immunity turns on a functional analysis of the challenged conduct, not the actor's title, and does not reach the administrative, investigative, and policy-coordination conduct on which Plaintiff-Appellant's claims principally rest. The FAC pleads a course of conduct that infected the pursuit of Plaintiff from April 27, 2023, through February 12, 2026, document contradictions and denials.

The intertwining of prosecutions with administrative actions forecloses a blanket immunity at the pleading stage:

> "To state a claim for malicious prosecution under §1983, a plaintiff must plausibly allege … (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Norton v. Town of Islip, 97 F. Supp. 3d 241, 263 (E.D.N.Y. 2015), reconsideration denied, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), aff'd, 678 F. App'x 17 (2d Cir. 2017). (SPA-65)

A.    Plaintiff plausibly pleaded each element:

(1) Initiation or continuation of a criminal proceeding — two duplicative unsupported and dismissed prosecutions in town court (A-5¶17) and a subsequent

64

town resolution to "initiate litigation" against Plaintiff despite the anticipated dismissal of the second prosecution (A-14¶73);

(2) Termination in Plaintiff's favor, two dismissed enforcement actions. (A-13-A14 ¶¶70–73);

(3) Lack of probable cause — Town Attorney Gordon admitted on video (A-133) that he knew Code §125-12 would be dismissed on 11/2/2023 before serving the summons. (A-5 ¶17; A-54¶242); and

(4) Actual malice — an ethically conflicted and interested prosecutor and ongoing pursuit of charges, including affirmative false statements/concealment of lawful residential use (A-335-470 and A-528-A548).

> "Plaintiff argues that emails produced via FOIL after the completion of briefing on the motion to dismiss demonstrate that the Town Attorneys acted in an administrative and investigative capacity, because these emails show, among other things, that Defendant Gordon drafted the ZBA's resolution and that he and Defendant Zitt "participat[ed] in shaping the factual and procedural framework of zoning proceedings before any criminal prosecution commenced." (SPA-63).

Hammer also plausibly plead the enforcement actions were dismissed in Appellant's favor, (A-3-14¶¶70–73) and the decisions of J. Menken (A-139) and J. Kimmel (A-135) were exhibited by Defendant. Defendant requested a 50-h hearing on May 9, 2024 (A-100), three days after serving Appellant with a summons, and

65

again on September 18, 2024 (A-104) after refiling the second duplicative complaint in late August.

B.      Absolute Immunity Reaches Only Advocacy Functions, Determined by a Functional Test

Absolute prosecutorial immunity extends only to conduct "intimately associated with the judicial phase of the criminal process," such as initiating a prosecution and presenting the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). Immunity turns on a functional analysis of the act, not the official's title or the label attached to the conduct. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 273 (1993). A government attorney acting in an administrative or investigative capacity receives only qualified immunity. *Id*. at 273–74*; Van de Kamp v. Goldstein,* 555 U.S. 335, 342–44 (2009). A prosecutor "may not shield his investigative work with the aegis of absolute immunity merely because" it can later be described as trial preparation. *Buckley*, 509 U.S. at 276. The party claiming absolute immunity bears the burden of justifying it by the function in question. *Id* at 269.

The Second Circuit applies this functional approach. *See DiBlasio v. Novello*, 344 F.3d 292, 297–98 (2d Cir. 2003) (key inquiry is "the degree to which the specific conduct at issue is intimately associated with the judicial phase of the

66

criminal process," focusing on "the timing of the conduct"); *Lawson v. Abrams*, 863 F.2d 260, 263 (2d Cir. 1988) (immunity "depends on the nature of the acts allegedly performed rather than on the office itself"); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 531–32 (2d Cir. 1993) (administrative or investigative activities "merit less protection than prosecutorial advocacy"). The inquiry asks what the official was doing, not whether he acted with good or bad motive.

C. The Conduct on Which Plaintiff-Appellant's Claims Principally Rest Was Not Prosecutorial Advocacy

The core conduct was not advocacy in the judicial phase of a criminal case. It was administrative coordination with a quasi-judicial ZBA, participation in its adjudication, and investigative control over evidence — including an attempt to seek an administrative warrant and concealment of material evidence. This was all coordinated by the town attorney in connection with the enforcement of the NOV. Thus, these prosecutions are infected by this course of conduct and the functions receive, at most, qualified immunity. J. Seibel concedes this point in her honr's decision, which notes that the functions Hammer alleges are not prosecutorial, they are overt acts in furtherance of the enforcement actions Plaintiff:

> "does not seriously contend that such a hearing is a criminal proceeding or that drafting a resolution denying a variance application constitutes initiating a criminal proceeding,"

Thus, Plaintiff has alleged that the town attorneys' conduct is not covered by prosecutorial immunity. And at a minimum, the court should not have resolved these questions of fact at the pleading stage.

1. Pre-Hearing Communications with the Quasi-Judicial Decisionmaker

The court's characterization of the Town Attorney's role shifted between decisions. Its 1/13/2026, Opinion found that at the 11/2/2023, ZBA hearing:

> "Defendant Gordon appeared as Town Counsel on behalf of the Town of Bedford" (SPA-3¶2),

But in its Rule 60(b) decision the court recharacterized him as:

> "the ZBA's attorney and legal advisor," not "counsel to a party appearing before the ZBA" (SPA-74¶2).

That recharacterization is inconsistent with the earlier finding and contradicted by the record; in any event, the court's own inconsistency shows the issue could not be resolved at the pleading stage.

On the eve of the November 2, 2023, hearing, the Town Attorney circulated a "Confidential Memorandum" to the Board's administrator and Chair, asking that it be forwarded to Board members and kept confidential. (A-545). This is administrative coordination, not advocacy.

Plaintiff plausibly alleges a course of malicious prosecution: a conflicted prosecutor instigating multiple prosecutions without probable cause and, when unsuccessful, passing an administrative resolution to seek an injunction and initiate litigation. Two justice-court dismissals for lack of evidence and a video establishing Gordon's knowledge that Code §125-12 (prosecuted twice) would likely" be dismissed", suffice to proceed to discovery. And now all this conducted must be viewed in light of contradictory and incomplete FOIL disclosures.

2.  Authoring the Quasi-Judicial Tribunal's Adjudicative Determination

This is not advocacy under any functional understanding. Drafting the determination that a quasi-judicial body will adopt is participation in the tribunal's decision-making, not advocacy before a court. *Imbler* expressly reserved the question of immunity where a prosecutor "functions as an administrator rather than as an officer of the court," noting that "drawing a proper line between these functions may present difficult questions." *Imbler*, 424 U.S. at 431 n.33. Authoring the very determination under Article 78 review, after that review commenced, falls on the administrative side of the line. The Town Attorney also continued as counsel for Respondents throughout the Article 78 proceeding and the appeal to the Second Department (A-13-A-14), and personally verified Respondents' Answer attesting that the residential use was unlawful (A-535) confirming the resolution-drafting was part of an ongoing adverse role, not neutral legal advice.

3.  Investigative Conduct: Pursuit of an Administrative Search Warrant

At the September 17, 2024, proceeding, counsel announced: "So we would either request Ms. Hammer's consent for that inspection, or we would be pursuing an administrative search warrant." (A-126,#12-25). Seeking a warrant to gather evidence is a quintessential investigative function. A prosecutor acting "as [a] detective[] searching for clues and corroboration" receives only qualified immunity and "may not shield his investigative work" by recasting it as trial preparation. *Buckley*, 509 U.S. at 273–74, 276. The inquiry turns on that function, not the actor's motive.

4.  Administrative Control Over Discovery: Withholding of Municipal Records

Appellant alleges the Town Attorney certified discovery complete while withholding internal communications and building-department records, 1989 map.

The point is function, not a freestanding violation: deciding what evidence to gather, disclose, or withhold is an investigative and administrative function separate from presenting a case. See *Zahrey v. Coffey*, 221 F.3d 342, 347–49 (2d Cir. 2000). Control over discovery and certification of its completeness are administrative acts, not advocacy, and draw no absolute immunity.

5.  Coordination of a Multi-Forum Enforcement Strategy

70

On October 1, 2024, the Bedford Town Board adopted a "Resolution Authorizing Commencement of Litigation Against Melanie Hammer". (A- 84). The resolution acknowledged that the Town Justice Court "would not have the ability to issue injunctive relief to require the removal of the … apartment," and authorized the Town Attorney's firm to commence a civil action in Supreme Court, Westchester County, for that relief. (A-84). The criminal prosecutions were thus one component of an administrative, policy-driven enforcement strategy: the Town conceded the criminal forum could not grant the relief sought yet pursued criminal prosecutions while authorizing civil litigation to obtain it. Coordinating enforcement across administrative (ZBA), criminal, and civil forums is policy-coordination conduct, not advocacy intimately associated with any single criminal proceeding. *Cf. Van de Kamp*, 555 U.S. at 342–44.

6. Viewed as a Whole, the Alleged Course of Conduct Is Administrative and Policy-Driven

The First Amended Complaint alleges a coordinated course of conduct: the September 22, 2023 building-permit denial; the November 1, 2023, confidential memorandum to ZBA members; the November 2, 2023 ZBA hearing; Appellant's November 29, 2023, naming of the Town Attorney in the Article 78 petition and

71

Notice of Claim; the December 1, 2023 authorship of the ZBA resolution and the Board's December 7, 2023 adoption; the criminal prosecutions and dismissals; the pursuit of an administrative search warrant; and the October 1, 2024 authorization of parallel civil litigation. Viewed functionally, this pattern is administrative and policy-coordination conduct extending well beyond the prosecutor's role in any single judicial proceeding. *Buckley*, 509 U.S. at 273.

> D. The Immunity Inquiry Could Not Be Resolved Against Plaintiff-Appellant at the Pleading Stage

The district court erred in resolving the functional immunity inquiry against Appellant on a motion to dismiss. The court must accept the complaint's allegations as true and may not weigh evidence or draw inferences against the plaintiff. *Kalina v. Fletcher,* 522 U.S. 118, 122, 127–31 (1997). The defendant bears the burden of establishing that the function is one for which absolute immunity is justified, *Buckley*, 509 U.S. at 269, and where the complaint alleges conduct spanning administrative coordination (pre-hearing communications, authorship of the adjudicative resolution), investigative activity (pursuit of a search warrant, control over evidence), and policy coordination (multi-forum enforcement), whether that conduct is absolutely or only qualifiedly immune cannot be determined without factual development. The court instead narrowed the

FAC to challenge only "prosecutorial functions" and resolved the function question against Appellant at the pleading stage. That was reversable error.

## VI.     The District Court Erred In Dismissing The Monell Claim

The district court's dismissal of the municipal-liability claim was legal error. Accepting the well-pleaded allegations as true, the FAC states a claim under *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978), that the deprivation of Plaintiff-Appellant's property rights was caused by official municipal policy.

A municipality is liable under Monell where the constitutional injury is inflicted by its policy or custom. Municipal policy is not limited to rules of general application; a single decision by officials vested with final authority over the matter constitutes official policy and may give rise to liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Whether a given official or body holds final policymaking authority is a question of state law. *Jett v. Dall. Indep. Sch. Dist*., 491 U.S. 701 (1989).

The First Amended Complaint pleads that the deprivation was effected through *formally adopted municipal resolutions*- (1) the ZBA's resolution denying Plaintiff-Appellant's application, and (2) the Town Board's resolution authorizing affirmative litigation against her. Each was the act of a body vested under state law

73

with final authority over the matter it decided: the ZBA over the zoning determination, and the Town Board over the Town's decision to litigate. Under *Pembaur*, those resolutions are themselves official policy, not evidence from which a policy must be inferred, and the injuries Plaintiff-Appellant alleges flow directly from them. That alone establishes a Monell claim.

The municipal-liability claim is independently supported by ratification. Where a municipality's authorized policymakers approve a subordinate's action and the basis for it, their ratification renders the action municipal policy. *St. Louis v. Praprotnik*, 485 U.S. 112 (1988). The Town Board-the Town's governing body-*adopted the resolution* the Town Attorney drafted, and later, on administrative appeal, reaffirmed the position underlying the enforcement even after being confronted with the Town's own records identifying the Structure as a residence. The Board's deliberate adoption and subsequent reaffirmation of that course are themselves acts of municipal policy.

Cumulatively, the FAC alleges a coordinated practice among the Town Attorney, the Building Department, and the ZBA, All prior arguments are incorporated herein. (See also, section VIII and VIII D of this brief). At the pleading stage, the question was not whether Plaintiff-Appellant had proved municipal liability, but whether she had plausibly alleged it.

CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests that this Court:

REVERSE the district court's January 13, 2026, Opinion and Order granting Defendants' motion to dismiss (SPA-1);

REVERSE the District court's April 14, 2026, order denying Plaintiff-Appellant's motion for relief from judgment under RULE60(b) (A-59);

REMAND the case to the district court for further proceedings on the merits on a complete and accurate factual record, including discovery regarding the historical residential use of the structure, the Town's municipal records and their characterization of the structure's use, and the fairness and neutrality of the ZBA proceedings; in camera review of heavily redacted FOIL documents and withheld communications to determine privilege and materiality; and reconsideration of all legal issues presented in this appeal; and

GRANT such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: June 29, 2026

75

Melanie Hammer, Esq.
Attorney for the Plaintiff-Appellant,
admitted Pro Hoc Vice/Pro Se
360 Court Street, Suite 3
Brooklyn, NY 11231
718-757-7677
Melanie@hammer-esq.com

CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(g) and Second Circuit Local Rule 32.1(a)(4), I certify that this brief complies with the type-volume limitation of USCS Ct App 2nd Cir, Local R 32.1. This brief contains 13987 words, excluding the parts of the brief exempted by FRAP 32(f).

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman size 14.

Dated: June 29, 2026

Melanie Hammer, Esq.
Plaintiff-Appellant

CERTIFICATE OF SERVICE

I, Melanie Hammer, hereby certify that on June 29, 2026,  I served a true and correct copy of the foregoing APPELLANT'S OPENING BRIEF and APPENDIX upon all counsel of record via email at the following addresses:

gsmith@silvermanandassociatesny.com

For Defendants-Appellees:

Gerald S. Smith, Esq.

Silverman and Associates

445 Hamilton Ave, Suite 1102

White Plains, NY 10601

gsmith@silvermanandassociatesny.com

I further certify that I have filed the foregoing brief with the Clerk of the United States Court of Appeals for the Second Circuit via e-file on June 29, 2026

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 29, 2026, at Westchester, NY

Melanie Hammer, Esq.

Atty for Plaintiff-Appellant/Pro Hac Vice