# 26-162

## United States Court of Appeals
## for the Second Circuit

————————————

MELANIE HAMMER,
Plaintiff-Appellant,
- against –

TOWN OF BEDFORD NEW YORK, DEPARTMENT OF
BUILDING BEDFORD NEW YORK, ZONING BOARD
OF APPEALS BEDFORD NEW YORK, BUILDING
INSPECTOR TOWN OF BEDFORD NEW YORK
(ALBERT CIRACO), ATTORNEY FOR THE TOWN OF
BEDFORD NEW YORK (ERIC GORDON, ESQ. &
ROBERT ZITT, ESQ.),
Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the Southern District of New York
7:25-cv-02618-CS

————————————————————

## APPENDIX VOLUME I

————————————————————

Melanie Hammer
Plaintiff-Appellant, Pro Se
360 Court Street, Suite 3
Brooklyn, New York 11231
(718) 757-7677
**melanie@hammer-esq.com**

# INDEX TO APPENDIX
## VOLUME 1

ECF 41  First Amended Complaint ................................................................. A-1

ECF 41-1  Order of Recusal (Judge Prisco)................................................. A-80

ECF 41-1  Order of Recusal (Judge Williams)............................................ A-81

ECF 41-1  Order to Transfer and Reassign to Judge Prisco ....................... A-82

ECF 41-1  Order to Transfer and Reassign to Judge Fididio....................... A-83

ECF 41-2  Town Resolution Authorizing Litigation Against Hammer............ A-84

ECF 41-3  Court Will Not Disclose Conflicts Email..................................... A-88

ECF 41-2  Transfer and Reassign to Judge Williams................................... A-89

ECF 41-8  Grievance Against Gordon Transfer 5/22/2024 & 7/30/2024 .......... A-93

ECF 41-10  Summons for Building Code Violation Served 5/6/2024 .............. A-98

ECF 41-11  Notice of 50-h Examination 5/9/2024 ...................................... A-100

ECF 41-12  Notice of 50-h Served 9/18/2024 ............................................ A-103

ECF 41-13  Keane & Beane Treatise Citing Ambiguities in the Law Must Be Strictly Construed Against the Government...................................................... A-106

ECF 41-14  Transcript of Duplicative Enforcement Proceedings 9/17/2026 – Town May Seek a Search Warrant in a Code Violation Case ............................... A-118

ECF 1-1  Link to ZBA "Implication" Decision Video ..................................... A-133

ECF 1-2  Letter of Building Department Denial "cottage theory" .................... A-134

ECF 1-3  J. Kimmel Order Dismissing the First Summons.............................. A-136

ECF 1-4  Delayed ZBA Appeal Transcript and Link to Video ......................... A-138

ECF 1-5  J. Menken Order Dismissing Duplicative Summons ......................... A-140

ECF 1-6  Original Notice of Violation "Lot Theory".................................... A-142

ECF 1-7  Proof of Lot Conformity Under "Lot Theory".................................. A-145

ECF 45  Town's Declaration in Support of 12(b) Motion................................ A-146

ECF 45-2  Decision of J. Fifidio to Deny Art. 78 "Legal Cannon Theory" ....... A-227

ECF 46  Defendant's Memo. of Law in Support of 12(b) Motion ..................... A-242

IN THE UNITED STATES DISTRICT COURT
for the Southern District of New York

_____

MELANIE HAMMER
 Plaintiff(s)/Petitioner(s)
 v.

| | |
|---|---|
| Town of Bedford New York,<br>Department of Building Bedford New York,<br>Zoning Board of Appeals Bedford New York,<br>Building Inspector Town of Bedford New York,<br>(Albert Ciraco),<br>Attorney for The Town of Bedford New York<br>(Eric Gordon, Esq. and Robert Zitt, Esq.), | Case No.25CV2618<br>FIRST AMENDED<br>COMPLAINT FOR A<br>VIOLATION OF CIVIL RIGHTS<br>Request for a Jury Trial |

_____

PARTIES:

**Plaintiff:**
Melanie Hammer, Esq. pro se)
146 Goldens Bridge rd
Katonah, NY 10536
Melanie@hammeresq.com
718-757-7677

**Defendants:**

1. Town of Bedford New York hereafter "Town"
321 Bedford Rd.
Bedford Hills, NY 10507
914-666-453
OFFICIAL CAPACIT

2. Department of Buildings Bedford New York hereafter "DOB"
425 Cherry Street
Bedford Hills, NY 10507
914-666-8040
OFFICIAL CAPACITY

3. Zoning Board of Appeals Bedford New York, hereafter "ZBA"
425 Cherry Street
Bedford Hills, NY 10507
914-666-8040
OFFICIAL CAPACITY

4. Building Inspector Town of Bedford
Alberto Ciraco
425 Cherry Street
Bedford Hills, NY 10507
PERSONALLY AND OFFICAL CAPACITY

A-2

5. Attorney for the Town of Beford NY
Eric Gordon, Esq, & Robert Zitt, Esq.
445 Hamilton Ave #1500
White Plains NY 10601
PERSONALLY AND OFFICAL CAPACITY


6. Attorney for the Town of Beford NY
Robert Zitt, Esq.
445 Hamilton Ave #1500
White Plains NY 10601
PERSONALLY AND OFFICAL CAPACITY

Known collectively as "Defendants Known collectively as "Defendants

2

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), as this is a civil rights action brought under 42 U.S.C. § 1983 for violations of the United States Constitution.

2. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) because the events or omissions giving rise to these claims occurred in Westchester County, New York, which lies within this District.

3. Defendants are state and local government officials and entities who acted under color of state law and within the jurisdictional boundaries of this Court. **The U.S. Supreme Court held that local governments (municipalities) can be sued directly under 42 U.S.C. § 1983 when the alleged constitutional violation was caused by an official policy, custom, or practice of the municipality.** **Monell v. Department of Social Services**, 436 U.S. 658 (1978). IN the instant case the policy is published and there was an official resolution by the Town Board on this matter, described further below.

## UNCONTESTED FACTS

4. The subject property is 11.69 acres, located in Bedford, New York.

5. The property is zoned Residential One Acre ("R1A"), which, by definition, permits one residential structure per acre or "minimum lot size." This zoning designation is uncontested.

3

**6.** There have never been any community complaints regarding the safety of a nuisance involving the subject property.

7. The Town has never alleged a dangerous condition or community interest denying permits for this location.

8. The property contains three structures: a. A pre-existing, legal, non-conforming cottage (not at issue), b. A main residence, c. A detached garage/barn on its own acre, which is the subject of this dispute.

9. The garage/barn has a valid Certificate of Occupancy for a recreation room on its second floor and is on file since at least the year **2000 on the official property map filed with the Department of Buildings as a "residence structure".**

10.  **The apartment has an electrical permit on file with the Building Department.**

11.  **Water was pre-existing in the apartment, and it is legal to have water in the apartment.**

12. At some point, the recreation room was converted into an Accessory Dwelling Unit ("ADU") through the remodeling of a kitchen and bathroom.

13. There is no evidence in the record indicating proof that this remodel was made by the Plaintiff.

14. The Plaintiff retroactive remodeling permits were denied by "implication" to 125-79-1A COTTAGES, ECF doc 1-1 video link.

15.  Bedford Town Code 125-12 LOTS is not a valid basis to deny the permits at issue.

16. Bedford Town Code 125-12 LOTS charges were brought twice in Justice court and dismissed.

4

17. Town Attorney Eric Gordon admitted on video ECF 1-1 that he knew that 125-12 would be dismissed on 11/2/2023 *before* the two subsequent summonses were prosecuted by the town in justice court. **These charges were therefore as a matter of law, brought without probable cause.**

## PROCEDURAL HISTORY

18. On April 27, 2023, a Notice of Violation (ECF Doc. 1-6) was issued to Plaintiff by a Building Inspector employed by the Town of Bedford Building Department.

19. The Notice was issued in response to a complaint made by Plaintiff's former tenants, Jeanine Scarpino and her husband, Brent Hampson, who are politically connected individuals.

20. Ms. Scarpino is the daughter of the Honorable Anthony Scarpino Jr., a former Westchester Supreme Court Justice and Westchester County District Attorney (circa 2009–2016). Mr. Hampson contacted the Bedford Building Department to complain about the cost of his own electric heating bill, which was monitored through a separate legal NYSEG electric meter.

21. In response to this tenant complaint, the Building Department dispatched an inspector to Plaintiff's property.

22. On April 27, 2023, a Notice of Violation was issued alleging, *inter alia,* that Plaintiff had remodeled a bathroom without obtaining a permit.

23. Plaintiff promptly attempted to comply with the Town's directives by seeking retroactive construction permits.

5

24. In good faith, Plaintiff submitted applications for retroactive permits on June 1, July 6, and September 27, 2023, including the required architectural drawings. (See Exhibits K, L, and O; ECF Docs. 1-14 & 1-15.)

25. On June 1, 2023, Building Inspector Albert Ciraco **orally** denied the application, **refusing to issue a written denial**. He cited **Bedford Town Code § 125-12 (LOTS)**, the provision originally referenced in the Notice of Violation.

26. Because **no written** denial was provided, **Plaintiff could not appeal to the Zoning Board of Appeals.** Plaintiff refiled the application with the Zoning Board on July 6, 2023, with no response.

27. On September 7, 2023, having still received **no written denial**, Plaintiff submitted a **third application** for the same retroactive permits.

28. On **September 22, 2023, the Building Department finally issued a written denial**. This time, however, the denial was based on **Bedford Town Code § 125-79.1A** (COTTAGES)—a provision **not cited in the original Notice of Violation**, which had charged a violation under § 125-12 (LOTS). (See ECF Doc. 1-6.)

29. The Building Department's shift in rationale effectively concedes that **§ 125-12 did not provide a lawful basis** for the earlier permit denial.

30. The **written permit denial** dated September 22, 2023, stated that the **"garage apartment" on Plaintiff's property was considered a "cottage."** ECF doc. 1-2.

31. The denial further stated that "cottages" are not permitted in "Residential One-Acre Zoning Districts" (R1A). ECF doc. 1-2.

32. The denial was expressly based on Bedford Town Code § 125-79.1A. ECF doc. 1-2.

6

33. However, **§ 125-79.1A applies only to Residential Two-Acre (R2A) and Residential Four-Acre (R4A)** zoning districts. It makes no mention of R1A zones and is facially **inapplicable to Plaintiff's property**. Further this denial is an de facto re-zoning making plaintiff's R1A useless and effectively re-zoning her to be a R12A. Meaning rather than having approximately 11 developable lots on. Her 11.69 the permit denial makes it impossible for her to have more than one dwelling and a grandfathered cottage. The neighboring properties are one acre lots and abutted by an actual subdivision.

34. The denial also directed Plaintiff to apply for a "use variance," which is appropriate only when seeking to change the use of a property (e.g., from residential to commercial). Plaintiff was not seeking any such change in use, but rather a retroactive construction permit for a residential bathroom remodel. The Town's reference to a "use variance" appears either to be an error or **a deliberate attempt to impose a higher and inappropriate standard to block Plaintiff's appeal** of the admittedly unlawful violation originally based on § 125-12. ECF doc. 1-2.

35. On November 2, 2023, (five months later) the Zoning Board finally agreed to hear the appeal.

36. **At the November 2, 2023, ZBA meeting there was a completed hearing and the board voted**

    a. **to uphold the building inspector's interpretation of BTC 125-79-1A as applying an R2A and R4A code to R1A zoning districts by "implication" and**

7

    b.  **affirmed the interpretation that the "apartment" was a "cottage".** ECF doc. 1-2.

37. At this meeting the **Building Inspector Albert Ciraco appeared on behalf of the Department of Buildings, Eric Gordon appeared as Town Counsel on behalf of the Town of Bedford New York and The Zoning Board** appeared on behalf of themselves.

38. During the **November 2, 2023, hearing, ZBA members Meredith Black and Town Attorney Eric Gordon admitted—on video—that although there was no specific code violation, they were denying the permit "by implication"** based on the classifying of the "apartment" as a "cottage." To make this implication (See ECF Doc. 1-1, video of 11/2/2023 meeting.) and **by applying the R2A and R4A code** section to the **R1A property.**

39. On 11/30/2023, The Plaintiff filed an article 78 proceeding seeking review of the Zoning Board of Appeals decision which upheld the Building Inspectors interpretation of BTC 125-79-1A as a valid basis for permit denial.

40. As this Honorable Court is aware, **Article 78 proceeding are extremely narrow and limited to reviewing only the issue of whether the ZBA acted arbitrarily and capriciously in upholding the building inspector's interpretation of 126-79-1A on 11/2/2023** and whether the **procedure violated due process**. The case before this court is broader and the 11/2/2023 decision is merely on**e overt act in furtherance of a concerted policy** to deprive the plaintiff of her constitutionally protected property rights, this civil right action has never been reviewed.

8

41. On 11/30/2023 said an article 78 Petition was assigned to the Honorable Maurice Williams under Order of the Honorable Anne E. Minihan see index number 71446/2023 NYSCEEF doc 18.  ECF DOC 39-4

42. On 11/30/2023 the **Hon. Judge Maurice Williams filed a Judicial recusal based on a professional relationship with staff and Keane & Beane** Named defendants ECF DOC 39-5.

43. On 12/7/2023 this case was reassigned to the Honorable Robert J. Prisco.

44.  On the same date, **Hon. Robert J. Prisco filed a second recusal (filed before his assignment)** on this case **for conflict**. He was conflicted out because he was presiding over a trial where an associate at the Keane & Beane was being tried for (I believe) Conspiracy to Murder before his Honor. S ECF DOC 39-6.[1]

45. Also on December 7, 2023, the case was assigned to **the Hon. Judge Fufidio** ECF doc. 39-7[2].

46. AFTER THE FILING OF THE ARTICLE 78 AND EVEN AFTER THE TWO JUDICAL RECUSALS AND FINAL ASSIGNMENT OF THE THIRD JUDGE FIFIDIO AT 8PM ON December 7, 2023, *seven days after Plaintiff filed the Article 78 Petition,* the Defendant Zoning Board of Appeals (ZBA) **HELD A SECOND HEARING AT WHICH PLAINTIFF WAS NOT PERMITTED TO PARTICIPATE OR BE HEARD.** (See ECF Doc. 1-16.) Plaintiff was deliberately

---

[1] The underlying assumption in this recusal is that since Keane & Beane is only a 27-member law firm, even though the named parties in this case are not part of the criminal trial, that the intimate size of the firm would give the appearance of impropriety.

[2] **The Hon. Judge Fufidio notably stepped aside for his fellow Honorable Judge (Anthony Scarpino Jr./potential witness and father of witnesses) at the Westchester Supreme Court to run on the Democratic Ticket for District Attorney. Honorable Anthony Scarpino Jr.'s daughter was the catalyst for this case.**

9

excluded from this proceeding in an email from Town Attorney Eric Gordon. (See ECF Doc. 1-18.)

47. **At this second hearing EX PARTE HEARING**, the ZBA, the Building Inspector for the Town of Bedford, and Town Attorney Robert Zitt (appearing on behalf of the Town) attempted to **retroactively** *change the stated reason for the permit denial previously **issued on after the fully voted rendered decision was complete on November 2, 2023***. The issue was not re-opened, and **plaintiff was not given opportunity to respond**.

48. **This new and changed basis for the permit denial** exceeded the scope of the ZBA's purview as an appellate review board not a court of first impression.

49. This conduct evidences the **Defendants' awareness that the original November 2, 2023, vote was arbitrary and capricious**, thereby validating the basis of Plaintiff's Article 78 Petition.

50. Given the **timing** and nature of this second hearing, it is apparent that it had **been held in anticipation of the *previously* filed article 78 litigation**. Plaintiff submits that this constitutes an **implicit admission of wrongdoing** and a further violation of Plaintiff's due process rights.

51. During this second, ex parte meeting, held after the official ZBA vote, Defendants, including the ZBA, the Building Inspector, and Town Attorney Robert Zitt, **acted in concert to revise the rationale for the permit denial. This unauthorized post-hoc justification demonstrates a coordinated policy or practice by the Town of Bedford and the named Defendants, further evidencing municipal liability.**

10

52. On December 8, 2023, the Town of Bedford, through Town Counsel, the ZBA, and the Building Inspector, **jointly filed this revised resolution or *policy* with the Town Clerk of Bedford. (See Attachment 2 to this document in ECF doc. 39-2.)**

53. This filing was made **32 days after the ZBA vote**—well beyond the five-business-day **deadline mandated by New York State Town Law § 267-a (5).**

54. The delayed filing served to **frustrate Plaintiff's ability to properly pursue the Article 78 proceeding**, which requires the timely filed ZBA decision to be included as Attachment 1 under statutory procedure. It is like having a trial verdict and then waiting until the defendant is out of the room and rehearing the case to change the verdict from innocent to guilty.

55. The Defendant's attached the second ex parte hearing resolution to their motion and disregarding the Plaintiff appeal of the 11/2/2023 hearing and disingenuously referring to the intentionally altered ex parte decision of 12/7/2023.

56. On February **9, 2025, following multiple adjournments requested by the Town and other delays, the court issued an unusually harsh and facially biased decision after refusing to hear evidence, take testimony and refusing to make rulings on the record.**

57. That **February 9, 2025, decision explicitly relied, in part, on the December 7, 2023, hearing**, in error. Again, this hearing could not have been the basis of the appeal that had been filed eight days before the hearing.

58. Had the court reviewed the evidentiary record, including administrative orders of his administrative judge and recusals from his fellow judges, that predated the second

11

hearing, **the court could not have fairly or lawfully relied on the December 7, 2023, hearing in adjudicating the matter.**

59. As the court is aware, Article 78 review is strictly limited in scope to evaluating whether the administrative agency acted arbitrarily and capriciously *based on the record before it* ***at the time of its decision***. **The reviewing court is not permitted to rely on post-decision justifications** or substitute its own reasoning to uphold an agency's action.

60. Accordingly, the second hearing held on December 7, 2023—which was neither part of the original record nor the basis of Plaintiff's Petition—could not lawfully serve as a basis for the Article 78 court's decision or play any role therein.

61. On March 18, 2024, Plaintiff filed a notice of appeal with the Appellate Division, Second Department, in connection with the appeal of the February 9, 2024, decision, under Docket No. 2024-02143.

62. The defendant's received notice that my appellate **brief** was filed via NYSCEF on 4/23/2024. See EFC doc.39-9.

63. On May 6, 2024, Robert Gordon Issued a Summons for Justice Court in retaliation for the Appeal filed approximately two weeks earlier.

64. On May 9, 2024, Plaintiff also received a request for a 50H hearing (indicating that the defendants had been previously aware of the Notice of Claim naming Eric Gordon Personally in the 42 USC 1983 action.

65. On May 31, 2024, Town Attorney Robert Zitt filed a request for an extension of time to file a responsive brief in the Appellate Division, Second Department, under Docket No. 2024-02143 (NYSCEF Doc. 10).

12

66. On June 11, 2024, Plaintiff filed an opposition to the extension request, citing personal hardship.

67. That same day, June 11, 2024, Eric Gordon, Attorney for the Town of Bedford, filed a summons in Bedford Justice Court, formally charging and arraignment the Plaintiff with the six alleged violations originally cited in the Notice of Violation.

68. On July 30, 2024, Plaintiff file a grievance against Robert Zitt and Eric Gordon with the Appellate Division 9th Department.

69. On August 21, 2024, Town Attorney Eric Gordon finally filed the Town's responsive appellate brief in the Second Department under Docket No. 2024-02143.

70. On August 29, 2024, the Justice Court summons was dismissed by the Honorable Judge Jodi Kimmel for facial insufficiency and failure to proceed within the required speedy trial period under CPL 30.30.

71. On September 9, 2024, Plaintiff filed another Notice of Claim on the Secretary of State adding additional violations Eric Gordon and other defendants, including this dismissed malicious prosecution. See proof of service of notice of claim 9/9/2024 ECF doc 1-20

72. **In response to the Plaintiff's Notice of Claim, on September 17, 2024, and despite full knowledge that the original charges had been dismissed on both speedy trial and evidentiary grounds, Town Attorney Robert Zitt, acting on behalf of the Town of Bedford and replacing Eric Gordon[3], <u>reinitiated prosecution by refiling</u>**

---

[3] Who was obviously aware that a grievance filed 7/30/2024 for bringing the first prosecution after being personally named in the Notice of Claim and therefore was replaced by his colleague Robert Zitt who was not yet named in the Notice of Claim.

13

**the same charges in a second summons in Bedford Justice Court,** based on the **original Building Department violations.**

73. On October 1, 2024**, the Town of Bedford held a public vote (without notice to the plaintiff) and passed a formal resolution to pursue litigation against the Plaintiff—despite the anticipated dismissal of the second prosecution**. The language of the resolution acknowledged the likely failure of the criminal charges ("even if successful"), evidencing that the resolution itself constitutes an express and official municipal policy. (See resolution ECF 39-2.) Rember they are resolving to sue me over a bathroom remodel following a dismissal of the charges in Justice court.

74. **On November 12, 2024**, the second prosecution was also dismissed, this time by the Honorable Judge Menken, for facial insufficiency. It had been refiled after a finding that the CPL 30.30 speedy trial period had already expired prior to the first dismissal on August 29, 2024, and because they were still unable to put forth prima facie showing of evidence.

75. On November 12, 2024, Robert Zitt Attorney for the Town of Bedford New York filed a notice of appeal from the second malicious prosecution.[4]

76. On December 10, 2024, Plaintiff filed a third Notice of Claim against the above-named defendants. The claim included:

    1.  A course of malicious conduct,

    2.  Two unlawful prosecutions and Brady violation, and

---

The second prosecution was malicious as a matter of law because it was brought in direct violation of **CPL § 40.20**, after the expiration of the **CPL § 30.30** speedy trial period (as previously determined by judicial ruling), and without probable cause. This lack of probable cause is evidenced by (i) a video-recorded admission by Town Attorney Eric Gordon and (ii) a prior judicial determination that the Town had failed to state a prima facie case.

14

3. the Town's express resolution to pursue retaliatory litigation without any evidentiary basis, as conclusively demonstrated by two Justice Court dismissals.

77. On January 21, 2025, the Appellate Division, Second Department, finally heard oral argument in the appellate matter that had been filed nearly a year earlier. Docket No. 2024-02143 remains pending, having been fully briefed and argued. The case is to be decided de novo so that the court can review the correct hearing dated 11/2/2024 and not the fake cover-up meeting disingenuously provided by the defendants to the court in the underlying article 78.

78. On March 27, 2025, Plaintiff filed the federal complaint with the Pro Se Department of the United States District Court for the Southern District **Manhattan Division** of New York, located at 500 Pearl Street, New York, NY.

79. On April 1, 2025, the case was initially assigned to Chief Judge Laura Taylor Swain, as indicated in the Notice of Case Assignment. ECF Docket Report no.4

80. That same day, April 1, 2025, the case was reassigned **sua sponte**, as reflected in the ECF Docket Report No. 4, dated April 1, 2025.

81. On April 3 and April 4, 2025, Plaintiff filed and served the Summons and Complaint on each of the above-named Defendants after obtaining a conformed copy of the complaint in person at the Manhattan Division of the SDNY, located at 500 Pearl Street, New York, NY.

82. On April 3, 2025, the case was reassigned to the Honorable Judge Cathy Seibel located in **White Plains Division** United States District Court Southern District of New York 300 Quarropas Street White Plains, NY 10601. To the date of this writing

15

the defendants have not filed any responsive pleadings.  Plaintiff is filing amended complaint after pre-motion conference dated 5/30/2025. **Plaintiff incorporates all exhibits filed as exhibits to the first complaint to the complaint herein**.

## MUNICIPAL LIABILITY UNDER *MONELL* v. DEPARTMENT OF SOCIAL SERVICES, 436 U.S. 658 (1978)

83. All of the defendants named in the caption engaged in a coordinated and sustained course of conduct intended to deprive Plaintiff of her lawful property and zoning rights, specifically the right to rent an accessory dwelling unit (ADU) on her 11.69-acre R1A-zoned property, as permitted under §125-12 and related provisions of the Bedford Town Code. This course of conduct reflects the existence of a municipal policy or custom within the meaning of *Monell*.

84. This action arises from a continuing and unlawful pattern of official conduct directed at the Plaintiff by Town officials, undertaken under color of law and driven by improper political motives, which has denied Plaintiff the use and enjoyment of her property and violated her constitutional rights under the First, Fifth, and Fourteenth Amendments.

85. **The coordinated acts described herein began on or about April 27, 2023, and continue to the present. These actions are not isolated but reflect a consistent pattern sufficient to establish an official policy, custom, or practice attributable to the Town of Bedford under *Monell*, 436 U.S. at 690–91. Especially because the Defendants actually filed resolutions on the matter ECF Doc. 39-2**

16

86. Under *Monell*, municipal liability may arise under 42 U.S.C. § 1983 when a constitutional violation is caused by (1) an officially adopted policy, (2) a persistent and widespread practice of municipal officials, or (3) a decision by a municipal policymaker. Liability may also arise where a municipality ratifies the unconstitutional conduct of its employees.

87. **In this case, multiple formal actions—including resolutions adopted by the Town Board—constitute express policy decisions that directly caused or contributed to the constitutional violations at issue. Additional informal customs and practices are evidenced by the coordinated actions of Town officials, as detailed below.**

88. The unlawful and retaliatory conduct intensified following Plaintiff's service of a Notice of Claim and filing of the Appeal. Since that time, procedural misconduct in the Bedford Justice Court, including *Brady* violations and the refusal to disclose redacted witness information, supports the inference that Town officials acted with knowledge of and deliberate indifference to Plaintiff's constitutional rights.

89. **Shortly after receiving the notice of Plaintiffs intent to file a civil rights action the defendant Town Counsel (named personally) initiated two prosecutions against the Plaintiff in town Justice Court. Also, after learning of the impending civil rights case, the Bedford Town Board passed a formal resolution on or about October 1, 2024, authorizing civil litigation against Plaintiff. This resolution was introduced by the Town Attorney and based on a Notice of Violation originally issued by the Building Inspector.**

90. The resolution expressly acknowledges the Town's continued efforts in a stated and written policy to prosecute Plaintiff, stating in relevant part:

17

"WHEREAS, the Town **has been attempting to prosecute violatio**ns against Mr. Hammer in the Town Justice Court regarding the illegal apartment. However, **even if ultimately successful** with respect to these violations, the Town Justice Court would not have the ability to issue injunctive relief to require the removal of the illegal residential apartment…" ECF 39-2

89. This resolution is direct evidence of an official policy to bypass the statutory enforcement scheme established by New York State for building and zoning infractions. Instead of pursuing lawful remedies—limited fines or, in some cases, brief incarceration—the Town sought extraordinary injunctive relief without the requisite legal basis or evidence of harm.

90. Under New York law, zoning and building violations are penalized by fines and, where applicable, short-term incarceration (up to 15 days per violation). These are the exclusive remedies unless an ongoing public nuisance or danger is shown—none of which has been alleged here. These remedies are sufficient, in that, continued violations cause increased fines and periods of potential incarceration.

91. **Despite alleging six separate violations, the Town has produced no evidence— either before the Justice Court or elsewhere—sufficient to establish even a *prima facie* case.**

92. **Two successive prosecutions were dismissed for failure to state a valid claim and for violations of CPL § 30.30 (speedy trial), further reinforcing the retaliatory nature of the enforcement.**

93. At no point have Defendants identified any safety concern, community complaint, or actual zoning infraction. The absence of such evidence further supports the inference that this enforcement campaign was politically and personally motivated.

18

94. **Taken together, the retaliatory course of conduct by all the named defendants when taken together, and especially in light of, passing the resolutions and undertaking to prosecute the defendant twice in Justice Court for the same offense—especially after Plaintiff lawfully exercised her rights by filing her appeal on or around 4/23/2024 (ECF doc 39-9), establishes a de facto and express municipal policy. This policy was aimed at suppressing Plaintiff's property rights and retaliating against her through improper legal means.**

95. Accordingly, the Town of Bedford and its officials are liable under *Monell* and 42 U.S.C. § 1983 for engaging in an official policy and practice of retaliation, selective enforcement, and abuse of process in violation of Plaintiff's constitutional rights.

## COMPLIANCE WITH NEW YORK'S GENERAL MUNICIPAL LAW

96. On or around February 16, 2024, Plaintiff served notice of her intent to bring a civil rights action. On September 9, 2024, the Town of Bedford, along with Robert Eric Gordon, Esq., were served with an official Notice of Claim at the Secretary of State's Office in Albany, NY.

97. On the same date, Eric Gordon, Esq. was also served at Keane & Beane, PC, 445 Hamilton Ave., White Plains, NY.

98. Also on September 9, 2024, Albert Ciraco and the Building Department were served at the Building Department, 325 Cherry Street, Bedford Hills, NY.

99. On December 13, 2024, the Town of Bedford and Robert Zitt, Esq. were served with an additional Notice of Claim at the Secretary of State's Office in Albany, NY on 12/10/2024.

100.    On the same date, Robert Zitt, Esq. was personally served at Keane & Beane, PC.

19

**RELEVANT LOCAL CODES AND LAW**

101.    **Bedford Town Code §125-12 – Lots:** "Every *building hereafter erected* shall be located on a lot, as herein defined. There shall be not more than one main building and its accessory buildings *on each minimum size lot*, except for nonresidential buildings in districts where such uses are permitted. *On one undivided parcel of land* in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted; provided, however, that, in each such instance, all main and accessory buildings must conform to all lot requirements established hereunder the same as if such buildings were placed on two separate and independent parcels of land." **(This is the "phantom subdivision" section on which the town relies and allows homeowners to *theoretically* divide undivided parcels of land *based on the number of possible lots* given their zoning district.  Here theoretically 11 minimum lots on the 11.69 land zoned R1A).** This is done in the usual course of business in this town for newly erected structure, here it is being used unlawfully as a basis for permit denial.

102.    **Bedford Town Code §125-79A – Accessory Apartments:** "*It is the intention of this section to permit the creation*, subject to the standards listed below, **of accessory apartments in the Town for the purposes of maintaining a supply of small rental** or owner-occupied housing units designed to meet the needs of persons, both young and old, of moderate income and to permit the efficient use of the Town's housing

20

stock by providing economic support for owners of larger structures and incentives for maintenance of these structures."

103.  **Bedford Town Code §125-79.1A – Cottages in R2A and R4A Zones:** "In the **R-2A and R-4A** Districts, the Planning Board *may grant* a special permit to create a cottage in an existing accessory building..."

104.  **New York State Town Law §267-a (5): (a)** "Each order, requirement, decision, interpretation or determination of the administrative official charged with the enforcement of the zoning local law or ordinance *shall be filed in the office of such administrative official, within five business days* from the day it is rendered and shall be a public record."

105.  **(b)** "*An appeal shall be taken within sixty days after the filing of any order*, requirement, decision, interpretation or determination of the administrative official, by filing with such administrative official and with the board of appeals a notice of appeal, specifying the grounds thereof and the relief sought."

### JOINT AND CONCERTED ACTION LIABILITY UNDER 42 U.S.C. § 1983

106.  Plaintiff alleges that each of the defendants named herein engaged—either directly or indirectly, individually or in concert—in a deliberate and coordinated course of conduct under color of state law designed to retaliate against, punish, and deprive Plaintiff of clearly established constitutional rights, including the right to due process, equal protection, and freedom from malicious prosecution and retaliatory

21

enforcement. This conduct arises from and relates to Plaintiff's lawful exercise of zoning rights and access to legal remedies, including the filing of an Article 78 petition, appeal, the filing of the notice of claim for the herein complaint and related protected activity.

107.    It is well established under federal law that:

108.    *"A defendant who does not personally violate a plaintiff's constitutional rights may still be held liable under § 1983 if he or she 'acted jointly with others in the planning or execution of a scheme to deprive a person of their constitutional rights.'* *"See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Gordon v. County of Rockland*, 110 F.3d 886, 888 (2d Cir. 1997) [5]

109.    "A single act in furtherance of a broader unlawful agreement, pattern, or policy may give rise to liability for all participants, where that act was taken with knowledge of and in support of the overall objective." United States v. Cherry, 217 F.3d 811 (10th Cir. 2000)

110.    Here, the coordinated acts by Town officials—including the Building Inspector, Zoning Board of Appeals, and Town Attorneys Robert Zitt and Eric Gordon—reflect not isolated decisions, but a **deliberate policy, custom, and practice** of targeting Plaintiff through unlawful means, including:

111.    Fabricated or inferring code violations.

112.    Re-filing previously dismissed summonses.

---

[5] n Marshall v. Marshall, 523 F. Supp. 3d 802, *the court outlined the elements of a civil conspiracy under 42 USCS 1983, requiring proof that defendants acted jointly in concert, performed an overt act, and furthered a conspiracy that resulted in the deprivation of a constitutional right. The court emphasized that circumstantial evidence must reasonably infer a mutual understanding among the conspirators. The plaintiff alleged sufficient facts to establish a § 1983 violation, including claims that defendants conspired with a state officer to cause an unconstitutional eviction and deprivation of property*

22

113.    Withholding exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

114.    Conducting unlawful ex parte hearings and misinforming the court about the basis of the appeal.

115.    Retaliating for Plaintiff's filing of protected legal claims.

116.    Adopting formal municipal resolutions aimed at achieving illegal enforcement objectives outside statutory zoning remedies.

117.    Failing to provide relevant case law which completely undermined their case from an article authored by a member of their firm.

118.    This scheme persisted even after two Justice Court dismissals and included reassertion of the same unsubstantiated charges—acts which violated both **CPL §30.30 and §40.20**, and which were carried out with knowledge of their prior dismissal.

119.    Accordingly, all defendants are jointly and severally liable under 42 U.S.C. § 1983 for their roles—whether direct, supervisory, or contributory—in this coordinated plan. Even those who committed only a single act bear responsibility for the foreseeable constitutional harms caused by their participation in the larger scheme, in accordance with the standards set forth in *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), and its progeny.

**LEGAL BASES FOR RELIEF UNDER 42 U.S.C. § 1983**

**COUNT ONE: DEPRIVATION OF PROPERTY RIGHTS UNDER 42 U.S.C. § 1983 (VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS**

23

**CLAUSE AND THE FIFTH AMENDMENT TAKINGS CLAUSE)
(ILLEGAL <u>ISSUANCE OF NOTICE</u> OF VIOLATION UNDER BEDFORD
TOWN CODE § 125-12) AS THE FIRST OVERT ACT IN FURTHERANCE.**

*120.*    The defendants (Albert Ciraco, Building Inspector for The Town of Bedford, New York, acting on behalf of the Department of Building, and for The Town of Bedford New York) acted in concert to unlawfully deprive the plaintiff of property rights secured by The Fourteenth and Fifth Amendments by **issuing a Notice of Violation in Contravention of Bedford Town Code §125-12 ("lots") on April 27, 2023.**

*121.*    As a matter of law, the apartment at issue does not violate this provision. This non-conclusory statement is supported by the fact that the Bedford Town Justice Court dismissed the related enforcement actions on two separate occasions, August 29, 2024, and November 12, 2024. This section explicitly does not apply to pre-existing structures. **This is statute was not the basis of the somewhat related limited article 78 review of a different code section**.

**Parties and Legal Basis**

122.    Plaintiff brings this cause of action under 42 U.S.C. § 1983 for deprivation of constitutionally protected property rights under the **Fourteenth Amendment** (due process) and the **Fifth Amendment** (Takings Clause), committed under color of state law.

123.    At all relevant times, Defendant **Albert Ciraco**, **Building Inspector for Building Department,** for the **Town of Bedford, New York**, acted in his official capacity and under color of law on behalf of the **Town's Department of Building and Town of**

24

**Bedford New York**, and *i*n concert with all the herein named defendants. in the first act in furtherance of the course of conduct described in the herein complain and following counts, which was **designed to deprive the Plaintiff of property right, free speech, due process and other constitution protections described herein**.

124.    Defendant Ciraco, acted in concert with other named Defendants, by unlawfully issuing a **Notice of Violation** on **April 27, 2023**, citing Plaintiff for an alleged zoning violation under **Bedford Town Code § 125-12,** *inter alia*. This action lacked both legal basis and factual foundation.

125.    **TIME:** On April 27, 2023, between the hours of 10:00 AM and 5:00 PM, at 146 Goldens Bridge Road, in the County of Westchester, New York, Albert Ciraco, Building Inspector for the Town of Bedford, New York, acting on behalf of the Department of Building for Bedford, Town of Bedford New York,  acted in concert with the other named defendants herein and engaged in the following conduct in **furtherance of the course of conduct described herein**, acting under color of law.

126.    **EVENTS:** Said Defendants acted in concert to issue an illegal notice of violation/summons. *Said notice of violation is without basis or probable cause as a matter of law, in that, said notice was twice* **dismissed in Bedford Justice Court on 8/24/2024 and 11/12/2024 for lack of evidentiary support/probable cause, The above-named defendants did not have enough evidence to draft a facially sufficient complaint even on second attempt.** Said defendants violated the Bedford Town Zoning Ordinance, Residential One Acre "R1A" Zoning District, Bedford Town Code §125-12 (Lots), See Count (7) of the Notice of Violation (EFC doc 1-6),

25

by issuing said notice of violation when Plaintiff was incompliance with these code sections.

127.    (Note that the somewhat related article 78 proceeding in Westchester Supreme Court was limited to review in determining whether the of the Zoning Boards of Appeals acted arbitrarily and capriciously in *upholding the building inspector's interpretation of BTC 125-79-1a (as opposed to, here, issuing a summons under BTC 125-12)* as a basis for permit denial based on the 11/2/2024 hearing.  **This code section is distinct as it applies to the *issuance* of the *notice of violation* in violations of law under *BTC 125-12* and that summons was illegal as a matter of law as determined by the Honorable Judge Kimmel and the Honorable Judge Minkin in the Bedford Justice Court on 8/24/2024 and 11/12/2024 respectively).**

128.    **LAW:** Bedford Town Code §125-12 states: "Every building **hereafter erected** shall be located on a lot, as herein defined. There shall be no more than one main building and its accessory buildings on each *minimum size lot*, except for nonresidential buildings in districts where such uses are permitted. *On one undivided parcel* of land in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted." *(Emphasis added)*

129.    **Defendants have not and cannot produce evidence that the structure in question is *newly erected*.  In fact, it is uncontested that the structure in question is *pre-existing* and has been on file with the department of building for decades.**

130.    **Contrary to the concerted acts by the Defendants' actions, Bedford Town Code §125-12 supports, rather than prohibits, the existence of the apartment at**

26

**issue**, as it is located on its own acre, (as proven and not a conclusory statement by exhibits) consistent with the minimum lot size requirement. See ECF DOC 1-7 EXHIBITS E and F[6], which show that the apartment is situated on a separate, legally recognized acre/lot. **Furthermore, §125-12 applies to new structures, specifically "hereafter erected" buildings**. It is uncontested that the structure in question is not new, but pre-existing, meaning this **Notice of Violation was legally invalid on its face. However, this proof is *unnecessary* since the violation has been dismissed *twice dismissed in justice court* as described above.**

131.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143 only through April 3, 2025); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

**COUNT TWO: VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS – <u>ARBITRARY DENIAL</u> OF BUILDING PERMIT IN VIOLATION OF R1A ZONING (42 U.S.C. § 1983 – AGAINST DEFENDANT ALBERT CIRACO, THE TOWN OF BEDFORD BUILDING DEPARTMENT, AND THE TOWN OF**

---

[6] ECF doc 1-7 shows the one-acre area for this pre-existing structure at issue. Note that this structure has been on file at least since 2000 with the Bedford Department of Buildings. Please also note that the structure is noted to be a "residential structure" on this map dated and stamped 2000. Meaning the permits for remodel were illegally denied.

27

BEDFORD) AS THE SECOND ACT IN FURTHERANCE OF THE
CONSTITUTIONAL VIOLATIONS HEREIN.

132.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

133.    On or about **June 1, 2023**, at 325 Cherry Street Bedford Ny in the County of Westchester New York, Plaintiff submitted a construction permit (ECF Doc 1-15) application for improvements on her 11.69-acre residential property located within a Residential One-Acre (R1A) zoning district in the Town of Bedford, New York.

134.    **Despite Plaintiff's undisputed zoning designation of R1A and her clear entitlement under Bedford Town Code, Defendant Albert Ciraco, acting under color of state law in his official capacity as Building Inspector for the Town of Bedford and on behalf of the Bedford Department of Buildings, unlawfully denied the permit.**

135.    The permit denial was not based on any legitimate zoning or safety concern, but instead on a misapplication of **Bedford Town Code §125-12, a section that governs subdivision standards for newly erected structures, not remodels and continued residential use on pre-existing structures**

136.    In doing so, Defendant Ciraco knowingly relied on an inapplicable and misinterpreted code provision to unlawfully deny Plaintiff the use of her property. **Defendant admitted, in the presence of a Deputy Building Inspector, that BTC §125-12 "was not the best choice" and that Plaintiff's property was in an R1A district.** Nevertheless, he denied the permit and refused to issue a written decision, demonstrating awareness that the denial lacked legal basis.

28

137.    **The refusal to issue a written denial further deprived Plaintiff of procedural due process by obstructing her ability to challenge the denial through lawful administrative or judicial means.**

138.    Defendants' actions were arbitrary and capricious, lacked any rational basis, and served no legitimate governmental interest, in violation of Plaintiff's substantive and procedural due process rights under the Fourteenth Amendment.

139.    This second step by defendant Ciraco in furtherance of the scheme to deny plaintiff her property rights, inter alia, when viewed with the totality of the actions by all of the defendants named herein shows practices, and policies of the Town of Bedford, and the actions taken by him, and the Building Department reflect a de facto municipal policy of denying permits for political or retaliatory reasons, or based on pretextual interpretations of the zoning code, in violation of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

140.    Plaintiff has suffered the following damages as a result of Defendants' unlawful actions: a. Payment of unnecessary and excessive permit application fees; b. Zoning Board of Appeals application fees. Loss of rental income in the amount of $2,400 per month for 22 months, totaling $52,800 to date; d. Time and labor expended in addressing and litigating the unlawful denial, valued at $550 per hour for approximately 230 hours, totaling $126,500 as of the April 3, filing of unamended complaint; e. Diminution in market value of Plaintiff's property estimated at $2,000,000, due to the effective and unlawful rezoning of the parcel from "R1A" to a more restrictive use akin to "R12A."

29

141. **This claim is distinct from the Article 78 proceeding referenced in Westchester Supreme Court Index No. 71446-2023 and Second Department Docket No. 2024-02143, which challenged a subsequent Zoning Board decision on different grounds. The claim asserted herein arises from the initial permit denial on June 1, 2023, based on an earlier misreading of BTC §125-12.**

142. **COUNT THREE: VIOLATION OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS — UNLAWFUL <u>REFUSAL TO ISSUE WRITTEN PERMIT DENIAL</u> TO OBSTRUCT TIMELY ZONING APPEAL (42 U.S.C. § 1983) THIRD OVERT ACT IN FURTHERANCE.**

143. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

144. On or about **June 1, 2023**, Defendant Albert Ciraco, acting in his official capacity as Building Inspector for the Town of Bedford, New York, and on behalf of the Department of Building and the Town of Bedford, unlawfully refused to issue a written denial of Plaintiff's construction permit applications.

145. This refusal occurred at the Bedford Department of Buildings, located at 425 Cherry Street, Bedford Hills, New York, during business hours between 9:00 AM and 5:00 PM, and was made under color of state law.

146. Defendant Ciraco denied the permits based on an erroneous interpretation of Bedford Town Code (BTC) §125-12, despite knowing that the property was lawfully zoned as R1A and that §125-12 ("LOTS") was inapplicable. Despite multiple requests, **Ciraco refused to provide the Plaintiff with a <u>written</u> denial**, thereby obstructing her ability to file a timely zoning appeal under applicable law.

147. **New York Town Law §267-a (5) requires that:**

30

**"Each order, requirement, <u>decision, interpretation, or determination</u> of the <u>administrative official charged with the enforcement</u> of the zoning local law or ordinance <u>shall be filed in the office of such administrative official within five business</u> days from the day it is rendered and shall be a public record."**

148.    Defendants' refusal to issue or file a written denial was unlawful, arbitrary, and made with deliberate indifference to Plaintiff's procedural due process rights under the Fifth and Fourteenth Amendments. Such conduct deprived Plaintiff of timely access to zoning appeal procedures, effectively foreclosing a statutorily guaranteed remedy**. And in this case causing a five-month delay to even get to the Zoning Appeal Board.**

149.    This act was undertaken in furtherance of the broader course of retaliatory and obstructive conduct described herein, involving all named Defendants, and constituted part of a coordinated effort to deprive Plaintiff of constitutionally protected property rights.

150.    Evidence of the Defendants' knowing violation of the law includes but is not limited to:

151.    (a) Emails from Town officials confirming the refusal to issue a written denial (see ECF Doc 1, Exhibits I & J).

152.    (b) Video evidence from the November 2, 2023, Zoning Board of Appeals meeting, during which Town Attorney Eric Gordon admitted that related charges would "likely be dismissed in Town Court" (see ECF Doc 1-1).

153.    (c) The fact that the written denial was eventually date-stamped on September 22, 2023, approximately 5 months after the oral denial—clear evidence of intentional delay in violation of Town Law §267-a (5).

31

154.    As a direct and proximate result of Defendants' unconstitutional actions, Plaintiff suffered:

155.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

**COUNT FOUR: VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS — ARBITRARY AND UNLAWFUL DENIAL OF CONSTRUCTION PERMITS BASED ON A CODE SECTION INAPPLICABLE TO R1A ZONING (42 U.S.C. § 1983)**

156.    Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

157.    On or about **September 22, 2023**, **Defendants Albert Ciraco, in his capacity as Building Inspector for the Town of Bedford, the Department of Building, the Town of Bedford, and Town Attorney Eric Gordon**, both in his official and individual capacities, unlawfully denied Plaintiff's application for construction permits at her property located within a Residential One-Acre (R1A) zoning district, in another overt act in furtherance of the herein described scheme.

32

158.    The denial occurred at the Bedford Department of Buildings, located at 425 Cherry Street, Bedford Hills, NY, within Westchester County, while Defendants were acting under color of law and within the scope of their official duties.

159.    **The denial was based on an erroneous and inapplicable interpretation of Bedford Town Code § 125-79.1(A)—a provision that, on its face, applies only to properties within R2A and R4A zoning districts. Plaintiff's property is undisputedly located in an R1A district. This statutory language is explicit, and there is no legal basis for applying §125-79.1(A) to the Plaintiff's property**.

160.    Despite the facial inapplicability of §125-79.1(A), Defendants asserted that the **permit denial was justified by "implication"** of the statute. However, municipal officials cannot "imply" zoning restrictions or fabricate violations where none exist. Such actions exceed their statutory authority and violate the Fifth and Fourteenth Amendments' guarantees of Due Process, and the Sixth Amendment's guarantee of notice of alleged legal violations.

161.    **In issuing this denial, Defendants acted arbitrarily, capriciously, and with deliberate indifference to the Plaintiff's constitutional rights. They imposed a restriction that has no basis in the Town Code and constructed a pretextual denial to obstruct Plaintiff's legal right to develop her property consistent with R1A zoning.**

162.    Defendants' knowledge of the statute's inapplicability is evidenced by their own admissions on video (see EXHIBIT H) and the language **of BTC §125-79.1(A) itself, which clearly limits its scope to R2A and R4A districts:**

33

163.    *"In the R-2A and R-4A Districts, the Planning Board may grant a special permit to create a cottage in an existing accessory building…"*.

164.    **This permit denial is distinct from and not precluded by the related Article 78 proceeding, which was limited in scope to reviewing administrative process and discretion, not constitutional claims or factual determinations.** The Article 78 court **did not conduct discovery, receive testimony, or address the facial legality of the Defendants' statutory interpretation. As such:**

165.    (a) Issue preclusion does not apply because the administrative findings did not resolve constitutional questions.

166.    (b) Plaintiff's constitutional claims were not and could not have been fully litigated in the Article 78 context.

167.    (c) damages or redress are generally not available through an article 78 proceeding and not awards have been made here.

168.    **Under well-settled federal law, federal courts retain jurisdiction over constitutional tort claims under 42 U.S.C. § 1983, even where there has been a parallel or prior Article 78 determination. See *Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000); *Patterson v. Coughlin*, 761 F.2d 886 (2d Cir. 1985).**

169.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 &

34

Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and

(e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A." (e) Devaluation of the property by approximately $2,000,000 due to the improper denial of construction permits and the unlawful actions of the Defendants.

**COUNT FIVE: VIOLATION OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS — DELIBERATE DELAY IN INITIATING JUDICIAL PROCEEDINGS IN RETALIATION FOR PROTECTED CONDUCT** (42 U.S.C. § 1983)

170.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

171.    Between approximately **April 27, 2023, and June 11, 2024**, **Defendant Eric Gordon**, the **Town Attorney for the Town of Bedford, New York**, acting under color of law and in coordination with **Albert Ciraco**, **the Department of Building**, and the **Town of Bedford**, **intentionally delayed** the filing of a summons related to a Notice of Violation in Bedford Town Justice Court. This prolonged delay—spanning over **fourteen (14) months**—deprived Plaintiff of her right to **timely judicial review** and constitutes a violation of her **procedural due process rights** under the **Fifth and Fourteenth Amendments** to the United States Constitution.  IN fact, Plaintiff requested that the summons be served and consented to electronic service of the same prior to filing the article 78 or being granted the ZBA hearing to appeal the decision. **The defendants knew that the summons would be dismissed in Justice Court and therefore refused to issue the same to intentionally deny the Plaintiff the right to due process in the form of judicial review by the justice court.**  The

35

summons was in fact dismissed on its face twice in summons court for lack of evidence, therefore, this delay factually caused the Plaintiff to suffer damages. Had this summons been issued promptly, there would have been no need for an appeal to the Zoning Board, since the apartment in question would no longer have a violation pending.

172.    Defendants did not file the criminal summons until **June 11, 2024**, despite having issued the Notice of Violation on or about **April 27, 2023**. This delay was not justified by law or administrative necessity. Rather, the decision to file was made only **after Plaintiff served a formal Notice of Claim**, in which **Eric Gordon was personally named** as a party, strongly suggesting a retaliatory motive for the sudden initiation of judicial action.

173.    Once filed, the criminal case was **dismissed twice by the Bedford Town Justice Court**, including on grounds that **BTC §125-12**—the statute used to justify the initial violation—**does not apply to Plaintiff's property** or to the conduct at issue. The same charges were re-filed on **September 17, 2024**, again improperly, before being dismissed again. The baseless and retaliatory nature of these proceedings, and the delayed judicial oversight, resulted in prolonged restrictions on Plaintiff's ability to rent her lawful residential unit.

174.    Defendants' **unjustified delay** in filing the summons caused tangible and serious harm to Plaintiff, including:

175.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property,

36

calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal

time and effort at a rate of $550 per hour, totaling approximately 230 hours,

amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 &

Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and

(e) Devaluation of the property by approximately $2,000,000 by effectively and

illegally rezoning the property from an "R1A" to an "R12A."

**COUNT SIX: VIOLATION OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS — ARBITRARY AND UNLAWFUL INTERPRETATION OF ZONING CODE BY ZONING BOARD OF APPEALS** (42 U.S.C. § 1983) ANOTHER OVERT ACT IN FURTHERANCE.

176.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

herein.

177.    On or about **November 2, 2023,** at approximately 8:00 PM, during a public

hearing at 321 Bedford Road, Bedford Hills, NY**,** the **Zoning Board of Appeals of**

**the Town of Bedford**, in coordination with **Eric Gordon** (Town Attorney), **Albert**

**Ciraco** (Building Inspector), and the **Department of Building,** affirmed an unlawful

interpretation of Bedford Town Code (BTC) §125-79.1A to deny Plaintiff's

construction permit application. This interpretation was made not based on law, but

on inference and implication, violating the Plaintiff's clearly established

constitutional rights under the Due Process Clauses of the Fifth and Fourteenth

Amendments to the United States Constitution.

178.    **The Defendants acted** arbitrarily and capriciously **by construing BTC §125-**

**79.1A,** a provision that expressly applies only to R-2A and R-4A zones**, as a legal**

37

**basis to deny Plaintiff's permit application for property located in a** Residential 1-Acre (R1A) zone**.** The denial was not supported by the text of the ordinance, any published interpretation, or lawful precedent. **Rather, the Board and its agents** fabricated a prohibition by negative inference**, ignoring the plain language of relevant and applicable code sections, including** BTC §§125-12 and 125-79.

179.    Defendants, acting under color of state law, thereby **deprived Plaintiff of a protected property interest**—specifically, the right to obtain a construction permit **and use her property in accordance with the law—without any rational basis or lawful procedure**.

180.    BTC §125-79 clearly articulates the legislative intent to encourage the development of accessory apartments to promote affordable housing and preserve the town's housing stock. It states, in relevant part:

> "**It is the intention of this section to permit the creation**, subject to the standards listed below, **of accessory apartments** in the Town for the purposes of maintaining a supply of small rental or owner-occupied housing units… and to permit the efficient use of the Town's housing stock…"

*181*.    **Despite this express legislative policy and the inapplicability of BTC §125-79.1A to R1A districts, the Defendants** knowingly and willfully denied the Plaintiff's permits**, falsely asserting a violation by implication.** At the public meeting, video evidence (ECF doc 1-1/EXHIBIT H) captures the Defendants' admission that the denial was based not on any statute or enforceable regulation, but on a speculative inference. Such action constitutes **an abuse of power and is unconstitutional as a matter of law**.

38

182.    This denial, rendered in violation of Plaintiff's constitutional rights, resulted in tangible harm, including loss of lawful use of property**,** lost rental income**,** procedural delay**,** and irreparable reputational harm**,** for which Defendants are liable under **42 U.S.C. § 1983.**

183.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A." **Article 78 Petition - Does Not Preclude Federal Constitutional Review**

184.    It is important to note that the **Article 78 petition** filed by the Plaintiff does not preclude the **federal constitutional claims** presented here under **42 U.S.C. § 1983**. An **article 78** proceeding is **limited to a procedural review of agency decisions** and does not encompass a full examination of **constitutional violations**, particularly in cases involving **due process violations** under the **Fifth and Fourteenth Amendments**.

185.    The Article 78 review was restricted to the **propriety of the administrative action** and did not afford Plaintiff the opportunity to fully present or adjudicate the **broader constitutional issues** that are at the core of this case. As such, **federal**

39

**courts retain jurisdiction** to hear constitutional claims **regardless of the outcome of the Article 78 proceeding**. These federal claims involve **broader questions of constitutional law**—specifically the **due process rights of the Plaintiff**, the **arbitrary denial of property rights**, and the **unconstitutional interpretation of zoning laws**—issues that were not and could not have been fully addressed in the **Article 78 petition**.

186.    Furthermore, the **Article 78 proceeding** did not provide Plaintiff with a **full and fair opportunity to be heard**, as there was **no testimony**, **no hearing**, and **no discovery**. These **constitutional claims** involve **fundamental rights** that were not fully litigated in the Article 78 proceeding, and as such, **do not fall under the scope of issue preclusion**. Federal courts, therefore, are the appropriate venue to resolve these constitutional questions.

187.    **Additionally, much of the conduct described in this complaint needs to be taken together and addressed as the totality of the circumstance which show a pattern of retaliatory politically motivated actions against the Plaintiff. It would therefore be a great injustice to preclude this part of the defendants' scheme,**

188.    **COUNT SEVEN: <u>UNLAWFUL DEPRIVATION OF VESTED PROPERTY RIGHTS AND REGULATORY TAKING</u> IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS (OVERT ACT IN FURTHERANCE)** (42 U.S.C. § 1983)

189.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

40

190.    On or about **November 2, 2023**, at approximately 8:00 PM, during a public meeting at 321 Bedford Road, Bedford Hills, NY, **the Zoning Board of Appeals of the Town of Bedford, together with Eric Gordon (Town Attorney**), **Albert Ciraco (Building Inspector), The Zoning Board of Appeals and the Department of Building**s, affirmed the denial of Plaintiff's construction permit **(**see EXHIBIT B), effectively stripping Plaintiff of her vested property rights under the R1A zoning designation.

191.    Through their actions at the Zoning Board of Appeals meeting, Defendants unlawfully invalidated/stole Plaintiff's R1A zoning designation as though it were a more restrictive zone, akin to R12A. This re-interpretation was done without legal authority**,** without any formal legislative process, and without due process protections afforded to the Plaintiff. The Defendants, in misapplying Bedford Town Code §125-79.1A, which does not apply to R1A zones**,** denied the Plaintiff the lawful right to develop residential housing on a one-acre parcel, as clearly guaranteed under the R1A classification.

192.    **Defendant stated that plaintiff was "lucky she had one pre-existing cottage" and indicated that development "can't be done" thereby taking and depriving the Plaintiff of her legal R1A zoning rights. See proof, ECF 1-1 video of ZBA meeting.**

193.    By misinterpreting zoning codes **and** imposing a new restriction by inference, Defendants engaged in **an unlawful de facto rezoning** of the Plaintiff's property. This is a **regulatory taking**, occurring without **just compensation** and without **due process of law**, in direct violation of the **Takings Clause of the 5th**

41

**Amendment** and the **Due Process Clause of the 14th Amendment** of the **United States Constitution**.

194.    The 5th Amendment prohibits the government from taking private property for public use without just compensation. The 14th Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of law. Here, no existing code**,** ordinance, or statute prohibits the Plaintiff's proposed residential use. The denial of the permit, based solely on **i**mplication and a misapplication of law—was arbitrary **and** capricious. As a result, the Plaintiff was effectively stripped of her vested property rights **under** R1A zoning without either compensation or the **lawful process** required by the Constitution.

195.    This conduct constitutes a regulatory taking, as it interfered with Plaintiff's legitimate property rights and deprived Plaintiff of the full economic use and enjoyment of her property. As such, Defendants have violated Plaintiff's constitutional rights under the 5th and 14th Amendments, and Plaintiff is entitled to just compensation and redress for the unlawful deprivation of property rights.

196.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and

42

(e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

197.    T**his issue was not the subject of the Article 78 proceeding which only addressed whether the ZBA's permit denial based on 125-79-1a was arbitrary and capricious. This issue of de factor re-zoning and constitutional deprivation of rights has never been properly adjudicated and is properly before this Court which has jurisdiction over constitutional issues.**

**COUNT EIGHT: VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A SPEEDY TRIAL BY <u>UNREASONABLY DELAYING THE SCHEDULING OF HER ZONING APPEAL</u> (VIOLATION OF DUE PROCESS AND SPEEDY TRIAL RIGHTS UNDER THE 5TH, 6TH, AND 14TH AMENDMENTS) (OVERT ACT IN FURTHERANCE)**

198.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

199.    **TIME FRAME**: On **June 1, 2023,** and again on **July 6, 2023,** Plaintiff timely filed a written ZBA appeal challenging a Notice of Violation dated April 27, 2023. Despite this, the **Defendants failed to schedule or hear the appeal for more than five (5) months—well beyond the statutory deadline**. The appeal was not heard until **November 2, 2023,** constituting a clear constitutional violation for which the Plaintiff suffered direct damages.

200.    **LOCATION:** The events occurred at 325 Cherry Street, Bedford Hills, New York, in the County of Westchester.

201.    **EVENT:** Despite Plaintiff's timely submission of her appeal, the Defendants, acting under color of law through the Town of Bedford Zoning Board of Appeals,

43

**deliberately delayed the hearing of Plaintiff's appeal for more than five months, far beyond the sixty (60) days permitted under New York State Town Law §267-a(5)(b). This extended delay not only violated Plaintiff's constitutional rights to due process under the 5th and 14th Amendments, but also her right to a speedy resolution of the appeal under the 6th Amendment to the United States Constitution**.

202.    **LAW:**

   a.  **New York State Town Law §267-a(5)(b)** requires that "**An appeal shall be taken within sixty days** after the filing of any order, requirement, decision, interpretation, or determination of the administrative official… The administrative official from whom the appeal is taken shall **forthwith transmit** to the board of appeals all the papers constituting the record upon which the action appealed from was taken."

   b.  **Town Law §267-a (7)** further mandates that zoning boards **issue timely decisions** on appeals. The purpose of these procedural safeguards is to ensure that citizens have the **right to challenge governmental actions** in a timely manner, and to prevent the indefinite deprivation of that right.

   c.  The failure to follow these statutory timelines constitutes a violation of **due process rights** and can result in substantial **economic harm** to the Plaintiff, as occurred in this case.

   d.  The **five-month delay** rendered the **appeals process effectively meaningless** and deprived Plaintiff of her **lawful right to judicial review** within a reasonable, legally mandated timeframe.

44

203.    **CONSTITUTIONAL VIOLATION**: The Defendants' delay in hearing the zoning appeal violated Plaintiff's 5th, 6th, and 14th Amendment rights, as this delay not only deprived Plaintiff of timely access to judicial review but also inflicted financial harm by preventing Plaintiff from timely addressing the zoning violations in question.

204.    **DAMAGES:** As a result of the Defendants' coordinated unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

205.    **COUNT NINE: FAILURE TO TIMELY FILE ZONING BOARD DECISION IN VIOLATION OF NEW YORK TOWN LAW § 267-a (9)** (VIOLATION OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS; ACTIONABLE UNDER 42 U.S.C. § 1983)

206.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

207.    The Defendants violated Plaintiff's due process rights under the 5th and 14th Amendments to the United States Constitution by failing to timely file the Zoning

45

Board of Appeals (ZBA) decision, in direct contravention of New York State Town Law §267-a (9). This failure interfered with Plaintiff's right to judicial review and constitutes a per se due process violation for which Plaintiff is entitled to direct monetary damages.

208.     TIME AND LOCATION: On or about **November 2, 2023, the Zoning Board of Appeals (ZBA) for the Town of Bedford held a hearing and rendered a decision.** Despite this, the Town of Bedford, the Building Inspector, the Building Department, and the Town Attorney Eric Gordon, collectively failed to file the ZBA decision in accordance with state and local law. **The decision was not filed in the Town Clerk's Office, located at 321 Bedford Road, Bedford Hills, New York, within the statutorily mandated five (5) business days.** The decision was ultimately filed on December 8, 2023, more than 30 days late.

209.     EVENT: The Defendants, acting under color of law, knowingly and deliberately **failed to file the ZBA decision** from the November 2, 2023, meeting in a timely manner. **New York State Town Law §267-a (9)** mandates that: "The decision of the board of appeals on the appeal shall be filed in the office of the town clerk **within five business days** after the day such decision is rendered, and a copy thereof mailed to the applicant."

210.     **The decision should have been filed no later than November 7, 2023.** Instead, it was **not filed until December 8, 2023**, as evidenced by ECF Doc. 1- EXHIBIT W, the stamped and dated ZBA decision.

211.     IMPAIRMENT OF RIGHTS: **The deliberate delay in filing the decision significantly impaired Plaintiff's ability to pursue judicial review via an Article**

46

**78 proceeding and/or a Section 1983 civil rights action**, both of which are subject to **strict filing deadlines**. In fact, Plaintiff was forced to initiate the Article 78 proceeding based solely on the video record of the ZBA meeting, as no written decision was available at the time of filing. **This delay is exactly what New York Town Law §267-a seeks to prevent.**

212.    Moreover, **the written decision that was ultimately filed did not accurately reflect the ruling rendered on November 2, 2023, as shown in the meeting transcript and video. This constitutes a knowing and intentional attempt by Defendants to undermine Plaintiff's legal rights and obstruct judicial review, as demonstrated by the 11/2/2023 ZBA meeting.**

213.    LAW: New York State Town Law §267-a (9) is not a mere procedural formality—it exists to safeguard procedural due process rights and protect citizens' ability to timely challenge government actions. The delay here was not an oversight; rather, Defendants intentionally withheld the filing in order to:

214.    Frustrate judicial oversight.

215.    Delay or block Plaintiff's right to bring an article 78 petition.

216.    Undermine Plaintiff's ability to file a federal civil rights action under 42 U.S.C. §1983.

217.    Such actions violate Plaintiff's rights under the 5th and 14th Amendments of the U.S. Constitution. The intentional failure to file the decision in a timely **manner deprived Plaintiff of fair notice, a meaningful opportunity to be heard, and access to judicial relief—all essential elements of procedural due process.**

47

218.    PROOF: **The ZBA decision was stamped as filed on December 8, 2023, well beyond the legally mandated deadline. See EXHIBIT W.**

219.    DAMAGES**:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

———

**CAUSE OF ACTION IV**

**42 U.S.C. § 1983 – MALICIOUS PROSECUTION AND RETALIATION IN VIOLATION OF THE FIRST AMENDMENT (OVERT ACT IN FURTHERANCE)**
(AGAINST DEFENDANT ERIC GORDON AND THE TOWN OF BEDFORD)

220.    Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

221.    This cause of action arises under the First and Fourth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

222.    Defendant Eric Gordon, acting under color of state law and in his official capacity as Town Attorney for the Town of Bedford, engaged in retaliatory and malicious conduct by initiating and pursuing a baseless quasi-criminal enforcement

48

proceeding against Plaintiff for the purpose of punishing her for the exercise of protected First Amendment rights, including her right to petition the government and access the courts.

223. On or about April 27, 2023, the Town of Bedford issued Plaintiff a Notice of Violation. **However, no enforcement action was taken for more than a year. Then, on or around May 6, 2024**, **Defendant Gordon caused a summons served upon Plaintiff to compel her appearance in Justice Court for alleged violations punishable by imprisonment of up to six consecutive 15-day terms**, pursuant to local ordinances. (See ECF Doc. 39-10 proof that this **summons was issued on or around 5/6/2024)**

224. This sudden enforcement action was taken **just days after Plaintiff filed first attempted filing of her appellate brief** in the Appellate Division, Second Department **on April 23, 2024,** in connection with her article 78 proceeding challenging unlawful zoning enforcement. (See ECF Doc. 39-9, NYSCEF proof of filing notification to Eric Gordon and Robert Zitt on 4/23/2024.) **This appeal specifically accused Mr. Gordon of failing to provide relevant case law to the court.**

225. **The timing and sequence of events prove that the prosecution was <u>not</u> motivated by legitimate enforcement interests but rather by retaliatory animus toward Plaintiff's protected legal challenge and her stated intent to pursue a civil rights action.**

226. Further demonstrating retaliatory motive, **on May 9, 2024, Defendants issued a** Notice of 50-H Hearing, **proving their knowledge of Plaintiff intent to bring a 42**

49

**USC 1983 action in which Eric Gordon himself was personally named**. **Despite this knowledge that Eric Cordon himself was named in a 1983 action, he acted as Town Attorney and personally arraigned Plaintiff in Bedford Justice Court on July 11, 2024.**

227. The abrupt and simultaneous commencement of quasi-criminal prosecution and discovery demands **constitute a pattern of retaliatory conduct designed to deter Plaintiff's pursuit of constitutionally protected redress.**

228. The summons and prosecution were commenced w**ithout probable cause**, as a matter of law, in that, (1) as the alleged violations had not been actively enforced or adjudicated for over a year (2) **proof of malice**, as shown by the retaliatory timing and absence of any intervening facts that would justify belated prosecution (3) **In retaliation for the exercise of Plaintiff's First Amendment rights**, including her appeal of administrative actions and her initiation of federal civil rights claims.

229. **Eric Gordon knew that there was no probable cause to support this violation summons especially count 6 which he admitted on video on 11/2/2024 would "likely be dismissed" in justice court**. He brought this charge despite knowledge that there was no probable cause. See ECF doc 1-1 **video of 11/2/2024 ZBA meeting** link.

230. The Case was arraigned on June 11, 2024, and **dismissed for lack of even *prima facie* showing of evidence** and speedy trial violations on August 29, 2024, by the Honorable Judge Jodi Kimmel. **Further proof that there was no probable cause to bring this prosecution in Justice Court.**

50

231.    TIME AND LOCATION: On or about **June 11, 2024**, at 321 Cherry Street, Bedford Hills, New York, in the County of Westchester, Defendant Eric Gordon, Esq., acting as Town Attorney for the Town of Bedford, initiated a criminal prosecution against the Plaintiff in Bedford Justice Court (Docket No. 24-050200).

232.    EVENT: **This prosecution was filed by Mr. Gordon after he became aware that Plaintiff intended to file a civil rights action under 42 U.S.C. §1983, naming him personally** for violations arising from the facts alleged in Counts 1 through 9 of this Complaint. Mr. Gordon had actual knowledge of his potential personal liability as early as March 22, 2024.

233.    LAW: Defendant Eric Gordon's actions violate the Fourteenth Amendment to the United States Constitution, which protects individuals from **unlawful prosecution without probable cause. And the First Amendment of the Constitution which protects the right to assert claims free of governmental retaliation.** Additionally, Defendant's conduct violates:

234.    **New York Rules of Professional Conduct Rule 3.8(a),** which prohibits prosecutors from initiating charges that are not supported by probable cause.

235.    **Disciplinary Rule 7-105(A),** which forbids attorneys from initiating or threatening criminal prosecution to gain an advantage in a civil matter.

236.    **Prosecutorial Immunity Does Not Apply:** Eric Gordon is not entitled to absolute prosecutorial immunity because his conduct went beyond the scope of traditional prosecutorial functions. Specifically, the initiation of the prosecution was not based on an independent exercise of prosecutorial judgment, but was retaliatory, administrative in nature, and motivated by extrajudicial

51

considerations—namely, the Plaintiff's protected activity under the Constitution and her filing of a Notice of Claim. **This prosecution was not based on probable cause as a matter of law and Eric Gordon admitted the same on video ECF 1-1.**

237.    Courts have held that **absolute immunity does not extend** to actions taken outside the role of an advocate, such as **when a municipal attorney engages** in investigative, administrative, or **retaliatory conduct**. See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.").

238.    Furthermore, when a prosecutor instigates or furthers a prosecution based on retaliatory motives, and without probable cause, qualified immunity may also be unavailable, particularly when the right to be free from retaliatory prosecution is clearly established. See Hartman v. Moore, 547 U.S. 250 (2006); Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018).

239.    DAMAGES: As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

52

240.  **COUNT ELEVEN: MALICIOUS PROSECUTION IN VIOLATION OF THE FIRST & FOURTEENTH AMENDMENT (AGAINST ROBERT ZITT, ESQ., ACTING IN CONCERT WITH THE ZONING BOARD OF APPEALS, ERIC GORDON, THE TOWN OF BEDFORD, BUILDING INSPECTOR, AND THE DEPARTMENT OF BUILDINGS) (OVERT ACT IN FURTHERANCE) 42 USC 1983.**

241.  Defendant Robert Zitt, Esq., acting under color of law, **maliciously filed a second criminal prosecution against Plaintiff in Bedford Justice Court, in concert with the other Defendants in another act in furtherance of the conduct and scheme described herein, in violation of the First and Fourteenth Amendment and Plaintiff's civil rights.** This second prosecution was filed despite Defendant Robert Zitt, Esq. **knowing that the first summons for the exact charges was dismissed for lack of evidentiary support**, and that the charges were not even sufficient to draft a complaint. This occurred **after his firm was named as a defendant in a civil rights action, after knowledge that a member of his firm admitted on video that the charge of BTC 125-12 would be dismissed, and after he became aware that the Plaintiff filed a grievance again him and Eric Gordon personally on 7/30/24** [7] and therefore, without probable cause, and in **retaliation** for Plaintiff asserting her **constitutional right to file a civil rights  action, appeal, and aggrievance complaint. This constitutes a malicious prosecution. It is entirely inappropriate for a prosecutor who in currently named in a grievance complaint to file charges justice court that carry potential jail time**.

---

[7] see ECF 39-8 proof of complaint 7/30/2024 grievance complaint for the prior malicious prosecution inter alia.

53

242.    TIME AND LOCATION: On or about **September 17, 2024,** at approximately 9:30 a.m., at Bedford Justice Court, located at 321 Cherry Street, Bedford Hills, New York, Defendant Robert Zitt, Esq., acting as Town Attorney, filed a second criminal prosecution against Plaintiff. This second prosecution charged the exact same charges as the first dismissed prosecution, therefore, **Robert Zitt, had actual knowledge, as a matter of law, by way of a Judicial Decision dated 8/29/2024 EFC Doc. 1-3) that, this case lacked probable cause.  He knew the same charges were dismissed for failure to make prima facie showing of evidentiary support and that the case was adjudicated to have violated the CPL 30.30 statutory speedy trial protections.  He knew or should have known that it is unlawful to bring two prosecutions for the same charges under CPL 40.20.**

243.    This second prosecution was **initiated after the first malicious prosecution** brought on June 11, 2024, by the same law firm, Keane & Beane, P.C., and **dismissed** by Judge Jodi Kimmel on August 29, 2024.

244.    The second prosecution was also **ultimately dismissed on November 12, 2024, by the Honorable Judge Menken. (See EXHIBIT 1C.)** proving that this second **prosecution also lacked probable cause as a matter of law**.

245.    EVENT / CONDUCT: Defendant Robert Zitt, Esq., acting in concert with Eric Gordon, Esq., and all other named defendants in this matter, **maliciously initiated a second prosecution for the same exact violations, despite the prior case's dismissal.  In retaliation for Plaintiffs constitutionally protected first amendment right to Speech in the form of appealing lawsuits and filing notices of claim and filing grievances against him personally.**

54

246. WHEREFORE, this second action: Lacked probable cause as a matter of law, was filed in retaliation for Plaintiff's ongoing legal efforts, including the anticipated or filed 42 U.S.C. §1983 civil rights claim (assertion of constitutional rights).

247. **Was a continuation of a pattern of harassment and retaliation against Plaintiff, beginning on April 27, 2023, and continuing through the date of filing.**

248. The collective actions of all of the above-named defendants violated New York **Criminal Procedure Law §40.20, which prohibits successive prosecutions for the same offense (Double Jeopardy protections).**

249. This prosecution was also filed in violation of New York Rules of Professional Conduct Rule 3.8(a) and Disciplinary Rule 7-105(A), which expressly forbid prosecutors or attorneys from bringing criminal charges without probable cause or solely to obtain an advantage in a civil matter.

250. Further, the law firm **Keane & Beane, P.C.,** where Defendant Eric Gordon is a partner, **was again responsible for prosecuting the matter, raising serious ethical concerns and demonstrating coordinated retaliatory conduct by municipal legal authorities and all named defendants.**

251. PATTERN OF MALICIOUS CONDUCT:

**This second malicious prosecution demonstrates a deliberate and ongoing campaign by Defendants to chill Plaintiff's constitutional rights, obstruct judicial review, and retaliate for the filing or threat of filing civil rights litigation.**

252. By filing duplicative and baseless charges, **Defendants attempted to abuse the criminal justice system to intimidate and burden** Plaintiff, causing severe

55

emotional, financial, and reputational harm and in an attempt to prevent her legally protect right to bring the herein action.

253.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

**COUNT TWELVE: VIOLATION OF SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL DUE PROCESS FOURTHEENTH AMNEDMENT (AGAINST ROBERT ZITT, ESQ., IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES ACTING IN CONCERT WITH ALL NAMED DEFENDANTS)**

254.    Defendant Robert Zitt, Esq.**,** acting under color of state law, willfully violated the Plaintiff's Sixth Amendment right to a speedy trial **by initiating a second criminal prosecution _after_ the statutory** speedy trial period **had expired under** New York Criminal Procedure Law § 30.30**.**

255.    *Defendant Zitt acted with **actual knowledge** that the **speedy trial period** had lapsed, as evidenced by a prior **judicial determination** explicitly dismissing the earlier prosecution on (among other things) **speedy trial grounds**.* Despite this binding decision, Defendant Zitt reinitiated prosecution **without new evidence or legal basis**, thereby **subjecting the** Plaintiff **to renewed and baseless criminal**

56

**proceedings in violation of clearly established constitutional law**. This conduct constituted a **knowing and intentional malicious prosecution** as a matter of law. This was designed as an **act in furtherance of the coordinated efforts of all the defendants named herein to deprive the Plaintiff of her constitutionally protected rights to** free speech and was a direct retaliation.to litigation filed by the Plaintiff and caused significant legal and personal harm.

256.    TIME AND LOCATION: On **September 17, 2024**, at approximately 9:30 a.m.**, at** Bedford Justice Court**,** located at 321 Cherry Street, Bedford Hills, New York**, Defendant Robert Zitt, Esq**., **acting as Town Attorney, on behalf of the Town of Bedford New York, file and Department of Building complaint based on a notice of violation issued by Albert Ciraco, the Building Inspector, thereby** initiated a **second criminal prosecution** against **Plaintiff.** This occurred **despite the expiration of** Plaintiff's statutory and constitutional right **to a speedy trial under** New York Criminal Procedure Law §30.30**,** which ran on or about July 11, 2024—approximately **two** months earlier**.**

257.    **CONDUCT:** Defendant Robert Zitt**,** in his capacity as Town Attorney and under color of state law, filed a second malicious prosecution despite the clear expiration of the speedy trial period applicable to the original charges. The renewed charges were based on the same exact violations previously dismissed on August 29, 2024.

258.    The second set of charges were identical to the first and filed after the CPL §30.30 speedy trial clock had already run.

57

259.    Defendant admitted on the record in open court that he intended to seek **a** search warrant**,** further indicating the absence of probable cause support and an abuse of power**.**

260.    The repeated filing of charges for petty code violations—with no factual basis or supporting documentation—is legally baseless and nearly unprecedented in local justice courts. Especially if filed by members of a **Firm** that has been served with a **notice of claim**.[8]

261.    **LAW:** The Sixth Amendment to the United States Constitution guarantees the right to a speedy and public trial**.** This constitutional right is implemented in New York by Criminal Procedure Law §30.30**,** which imposes specific time limits within which the prosecution must be ready for trial.

262.    By initiating a second prosecution after the statutory speedy trial period had lapsed, Defendant violated Plaintiff's constitutional and statutory rights. Such actions amount to prosecutorial misconduct**,** abuse of process, and a violation of civil rights under 42 U.S.C. §1983**.**

263.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and

---

[8] See the court reporters' minutes from ECF doc. 39-14

58

(e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

**COUNT THIRTEEN: BRADY VIOLATION / DUE PROCESS VIOLATION - 5TH AND 14TH AMENDMENTS, 373 U.S. 83 (1963) (AGAINST DEFENDANT ROBERT ZITT, ESQ. ACTING IN FURTHERANCE OF ALL OF THE DEFENDANTS' COURSE OF MALICIOUS CONDUCT) ACTIONABLE UNDER 42 USC 1983**

264.    TIME AND LOCATION: **From September 17, 2024, through the present,** at 321 Cherry Street, Bedford Hills, New York**, in** Westchester County**, Defendant Robert Zitt, Esq.**, while acting under color of law as **Town Attorney**,  for the **Town of Bedford New York, while prosecuting a Building Department** violations**, issued by the Department of Buildings** committed ongoing violations of Plaintiff's due process rights in the herein described overt act in furtherance of the conduct described in this complaint..

265.    **CONDUCT: Defendant Robert Zitt, Esq.** willfully refused to disclose **material exculpatory evidence** ("Brady material") requested by Plaintiff. This refusal violates the holding in **Brady v. Maryland**, 373 U.S. 83 (1963), which mandates that **prosecutors must disclose evidence favorable to the accused** when it is material to guilt or punishment, regardless of the prosecution's intent.

266.    Intentionally withheld Brady material includes, but is not limited to:

a.  A portion of an **email chain** involving a politically connected tenant and the **Town's Department of Buildings**, which was the catalyst for initiating the prosecutions.

59

b.  A **redacted email address or name** critical to Plaintiff's defense that the prosecution was politically motivated and not grounded in any violation of law.

c.  Additional **Town communications** and **internal emails** relevant to the defense strategy and proof of a concerted effort by the named defendants.

267.  Despite multiple requests, this material has never been produced, thereby obstructing **Plaintiff's ability to mount a defense** and denying her **constitutional right to due process**.

268.  In addition, after failing to produce **Brady material**, **Defendant Zitt** undertook the nearly **unprecedented step** of filing a **Notice of Appeal** of the already twice-dismissed charges, further evidencing a **pattern of malicious intent** and **abuse of process**. This course of conduct was another act in furtherance of all of the above-named **agenda** and **constitutional violations** outlined herein.

269.  And caused all the damages described elsewhere in this complaint.

**COUNT FOURTEEN: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT AND PROFESSIONAL RULE 3.8 – SPECIAL RESPONSIBILITIES OF A PROSECUTOR (AGAINST DEFENDANT ROBERT ZITT, ESQ. IN FURTHERANCE OF THE COURSE OF MALICIOUS CONDUCT FOR ALL NAMED DEFENDANTS IN THE HEREIN CAPTION)**

270.  **TIME AND LOCATION:** Between **June 11, 2024, and November 18, 2024**, at approximately 9:30 AM, at 321 Cherry Street, Bedford Hills, New York, in Westchester County.

60

271.    **CONDUCT:** Defendant **Robert Zitt, Esq**., acting as **Town Attorney** for the **Town of Bedford,** prosecuted a **Building Department Violation, Issued by the Building Inspector, for The Department of Buildings.** and therefore, under color of law, engaged in conduct that constitutes both malicious prosecution and an ethical violation of Rule 3.8 of the New York Rules of Professional Conduct, which imposes heightened responsibilities on prosecutors.

272.    Specifically, **Defendant Zitt knowingly initiated a second prosecution for charges that had previously been dismissed by the court on August 29, 2024, due to lack of evidence. Despite this, Zitt re-filed the same charges on September 17, 2024, attempting to circumvent CPL §§ 30.30 and 40.20, which bar re-prosecution of dismissed charges and double jeopardy violations.**

273.    Mr. Zitt's conduct demonstrates a knowing disregard for the legal standard of probable cause, and an intent to pursue baseless prosecution in retaliation, rather than to seek justice, in direct violation of his obligations under Rule 3.8.

274.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

61

**COUNT FIFTEEN: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT AND <u>DISCIPLINARY RULE 7-105(A) (IMPROPER USE OF CRIMINAL CHARGES TO GAIN ADVANTAGE IN CIVIL MATTERS)</u> (AGAINST ALL NAMED DEFENDANTS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)**

275.    . DEFENDANTS, acting under color of state law and in concert with one another, engaged in malicious prosecution in violation of the Plaintiff's rights under the Fourth Amendment to the United States Constitution. Specifically, Defendants initiated and pursued criminal charges against the Plaintiff without probable cause and with the improper motive of gaining leverage in related civil or administrative matters.

276.    This **conduct also constitutes a violation of** Disciplinary Rule 7-105(A) **(now reflected in** Rule 3.4(e) **of the** New York Rules of Professional Conduct**), which prohibits attorneys from presenting, participating in, or threatening criminal charges solely to obtain an advantage in a civil dispute**.

277.    TIME: On or about **September 17, 2024**, at approximately 9:30 AM, at 321 Cherry Street, Bedford Hills, New York, in Westchester County.

278.    CONDUCT: Defendant Robert Zitt, Esq., while acting under color of law as Town Attorney**, filed a** second prosecution **against** Plaintiff **that was not only barred under** CPL § 40.20 **(Double Jeopardy), but also violated ethical standards under** Disciplinary Rule 7-105(A)**,** which prohibits lawyers from initiating or threatening criminal prosecution solely to obtain an advantage in a civil matter.

279.    This second prosecution was **filed in** direct response **to** Plaintiff's civil litigation **against Zitt's law firm colleagues and the** Town of Bedford**.** This retaliatory prosecution was **not supported by probable cause** and lacked any

62

evidentiary foundation, serving no legitimate purpose other than to **intimidate** and **harass Plaintiff** amid ongoing civil proceedings.

280.    . This second prosecution constitutes **another overt act in furtherance of the unlawful course of conduct** by all of the **Defendants** to deprive the Plaintiff of her constitutional rights and to retaliate against her for her protected activities, including the filing of civil rights claims. The Defendants acted in concert and coordination in furtherance of this malicious and retaliatory agenda.

281.    **All named** Defendants **acted in concert and coordination in furtherance of this unlawful course of conduct.** The criminal charges were not supported by probable cause, were initiated in bad faith, and were ultimately dismissed in the Plaintiff's favor.

282.    As a direct result of the Defendants' actions, the **Plaintiff suffered** constitutional harm**,** reputational damage**,** legal costs**, and** emotional distress**, and is entitled to** compensatory and punitive damages**, as well as** declaratory and injunctive relief**.**

283.    . DAMAGES: As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

63

284.    . Robert Ziit, **filed of an appeal following two dismissed prosecution, absent probable cause and without evidence, constitutes additional proof of** bad faith, retaliatory intent**, and** malicious prosecution**, compounding the underlying constitutional violation and furthering the evidence of the coordinated efforts of all the defendants named in the herein-action.**

**COUNT SIXTEEN: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIRST & FOURTEENTH AMENDMENT (<u>FAILURE TO APPOINT A SPECIAL PROSECUTOR DESPITE CLEAR CONFLICTS OF INTEREST</u>) (AGAINST ALL NAMED DEFENDANTS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)**

285.   ALL of the named DEFENDANTS, acting under color of law and in concert with all other Defendants named in the caption of this action, engaged in malicious prosecution in violation of the Plaintiff's rights under the Fourth Amendment to the United States Constitution. This was yet another overt act in furtherance of the concerted scheme or effort by the named defendants/ local government to deprive plaintiff of the constitutional rights described in the herein complaint.

286. **Despite the existence of clear and documented** conflicts of interest**—stemming from** prior notice of claim**,** adversarial positions**, and** retaliatory motives**—Defendants failed and refused to seek or appoint a neutral** special prosecutor**, as required under the law and** ethical rules **governing prosecutorial conduct. All other paragraphs are incorporated herein to show the dates and times of the filing of the appeal and notice of claim directly proceeding the filing of the two baseless (as a matter of law) prosecutions.**

64

287. This conduct constitutes a knowing and willful violation of the New York Rules of Professional Conduct, specifically:

- Rule 1.7(a)(2), which prohibits representation when a reasonable lawyer would conclude that there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own interests.
- Rule 1.0(f), defining "differing interests" to include every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest.

288. The refusal to appoint a special prosecutor, despite known conflicts, allowed biased officials to initiate and maintain a baseless criminal proceeding against the Plaintiff. This prosecution lacked probable cause and was driven by retaliatory and improper purposes, including an attempt to suppress the Plaintiff's exercise of constitutional rights and to gain leverage in related civil and zoning matters.

289. The Plaintiff suffered damages as a direct result of this malicious prosecution, including reputational harm, legal costs, emotional distress, and deprivation of constitutional protections. Plaintiff seeks compensatory and punitive damages, as well as appropriate injunctive and declaratory relief.

290. All named Defendants acted in concert and coordination in furtherance of this unlawful course of conduct. The criminal charges were not supported by probable cause, were initiated in bad faith, and were ultimately dismissed in the Plaintiff's favor.

65

**291. TIME AND LOCATION** Between June 11, 2024**,** and November 18, 2024, at approximately **9:30 a.m.**, at the **Bedford Justice Court**, located at **321 Cherry Street, Bedford Hills, New York**, in **Westchester County**.

**292. CONDUCT:** During this period, Robert Zitt, Esq.**, and** Eric Gordon, Esq.**,** while acting in their official capacity **as** Town Counsel **for the** Town of Bedford New York under **color of law**, failed to appoint a **neutral or special prosecutor** to **handle** Building Department **violations, issued by the** Building Inspector **for the** Town of Bedford New York the underlying prosecution, despite the existence of clear and disqualifying conflicts of interest.

293. Specifically, the **defendants had knowledge of potential 42 USC 1983 actions, pending Appeal, and grievance complaints pending against Eric Gordon and Robert Zitt.** Despite these conflicts[9], Mr. **Zitt and Mr. Gordon** proceeded to initiate and maintain a **criminal prosecution against Plaintiff**, without recusal or appointment of an independent authority, in direct violation of **ethical duties** and in furtherance of the **malicious scheme and course of conducted signed to chill Plaintiff constitutional right to bring these cases.**

294. This prosecution was in furtherance of the course of conduct furthered by all defenda**ts** named in this above-captioned case and described through this complaint.

---

[9] It is not possible that the defendants were unaware of these conflicts. They had filed a request for a 50H hearing on 5/9/2024 **ECF doc 39-11**. NYSCEF shows proof an email notification regarding the filing of the appeal was send to both Eric Gordon and Robert Zitt on 4/23/24 see **ECF 39-9**. The malicious prosecutions were initiate on 5/6/2024 see date on **39-10** SUMMONS.

66

**295. Although per se** ethical rule violations **by the defendants may not on their own be enough to support a malicious prosecution, when these actions are taken together in the context of this complaint, it is** strong evidence **of the same. It should be noted again that the point of a complaint is** not **to prove allegations beyond a reasonable doubt; it is merely to give the defendant notice as to the claims at issue.**

**296.** DAMAGES: **As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."**

**COUNT SEVENTEEN: <u>CONSPIRACY AND UNLAWFUL COURSE OF CONDUCT BY ALL DEFENDANTS</u>**
**(FIFTH AND FOURTEENTH AMENDMENTS – DUE PROCESS AND TAKINGS CLAUSE)**
**(SIXTH AMENDMENT – RIGHT TO FAIR AND IMPARTIAL PROCEEDINGS)**
**(UNDER COLOR OF LAW AND IN VIOLATION OF STATE LAW AND RULES OF PROFESSIONAL CONDUCT)**

**297. DEFENDANTS**, acting under color of law **and** in concert with one another, engaged in a sustained and unlawful course of conduct with the collective intent to deprive the Plaintiff of her constitutionally protected property rights, subject her to harassment, and degrade her standing and dignity as a property owner and citizen.

67

298. This coordinated conduct resulted in the violation of the Plaintiff's rights **under:**
The Fifth and Fourteenth Amendments, including deprivation of property without
due process and without just compensation, in violation of the Takings Clause**.** The
Sixth Amendment, by denying Plaintiff her right to fair, impartial, and timely judicial
proceedings. Relevant state laws **and** ethical obligations, including provisions of
the New York Rules of Professional Conduct related to conflicts of interest, misuse
of authority, and prosecutorial misconduct.

299. The Defendants' individual and collective actions were not isolated but formed an
intentional pattern of retaliatory**,** discriminatory**,** and abusive behavior aimed at
obstructing the Plaintiff's lawful use and enjoyment of her property.

300. As a direct result of this concerted misconduct, Plaintiff suffered significant harm,
including deprivation of property rights, reputational damage, emotional distress, and
ongoing legal and financial burdens. Plaintiff seeks **c**ompensatory and punitive
damages**,** declaratory relief**,** and such other remedies as this Court deems just and
proper.

301. **TIME AND LOCATION:** From April 27, 2023**,** through the present, at various
locations and times as outlined in this Complaint, within Westchester County**,** New
York**.**

302. **CONDUCT:** All named Defendants engaged in a deliberate and unlawful course of
conduct intended to harass, intimidate, and deprive Plaintiff **o**f her lawful property
rights, including rights associated with R1A zoning**.** This conduct included:
The intentional denial of permits. The filing and refiling of baseless prosecutions**.** All
other acts described in the herein complaint.

68

**303.** All of said actions were carried out under color of law and designed to coerce and demean Plaintiff**.** The actions by the **Town of Bedford, Building Department, Building Inspector, Town Counsels Robert Zitt** and **Eric Gordon** representing the **Town of Bedford New York** were **motivated by** political bias **and** retaliatory intent**, and aimed at discouraging** Plaintiff **from asserting her constitutionally protected rights** and **designed to strip plaintiff of her property rights. This pattern of behavior constitutes an unconstitutional deprivation of property rights in violation of the Fifth and Fourteenth, First, Sixth and Fourth Amendments**.

**304.** The Article 78 proceeding and subsequent Appeal exemplify this course of conduct. Specifically: Two unusual judicial recusals occurred. Decisions were made off the record, A hearing was precluded. The final written decision was not **only** legally erroneous but also unduly harsh**,** hostile, and unprofessional in tone.

**305.** Further, the cumulative actions of the **Defendants** effectively **"rezoned" Plaintiff's property** from **R1A** to **R12A**—a change unsupported by any local ordinance, public hearing, or legal authority—amounting to a **de facto governmental taking**.

**306. LEGAL VIOLATIONS:** This illegal course of conduct violated:

- **Town of Bedford Codes**.
- **New York State Town Law** and **Zoning Ordinance**.
- **U.S. Constitution**:
    - **Fifth Amendment** – Protection against governmental takings without just compensation.
    - **Fourteenth Amendment** – Right to due process.

69

- o **Sixth Amendment** – Right to fair proceedings.

- **Rules of Professional Conduct**:

  - o **Rule 1.7(a)(2)** – Conflict of Interest: Current Clients.

  - o **Rule 1.0(f)** – Differing Interests.

  - o **Disciplinary Rule 7-105(A)** – Prohibition on using criminal proceedings to gain advantage in civil matters.

  - o

**307. DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

**COUNT EIGHTEEN: <u>MALICIOUS PROSECUTION</u> AND DEPRIVATION OF DUE PROCESS UNDER COLOR OF LAW FAILURE TO PROVIDE LEGAL <u>PRECEDENT TO THE COURT</u>**
**(VIOLATION OF 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT DUE PROCESS; <u>ETHICAL RULE 3.3 – CANDOR TOWARD THE TRIBUNAL</u>)**

**308. TIME AND LOCATION:** Between **November 29, 2023**, and the present, at all relevant times and locations as set forth in this Complaint, including proceedings before the **Supreme Court**, **County of Westchester**, and the **Appellate Division, Second Department**, in **Westchester County, New York**. **Defendants** acted in

70

concert to withhold and intentionally not disclose legal precedent, to wit, **WESTCHESTER MUNICIPAL PLANNING FEDERATION 2017 LAND USE LAW INSTITUTE "ZONING CODE INTERPRETATIONS" by Keane & Beane PC (May 17, 2017)**, which is directly on point in this case and contains binding case law that all the named defendants have acted in concert to conceal and not disclose. This treatise has been disappeared from the internet after said conduct has been indicated by the **Plaintiff**.

309. **CONDUCT: Robert Zitt, Esq.** and **Eric Gordon, Esq.**, acting in their official capacities as **Town Counsel,** for the **Town of Bedford allegedly acting to enforce Bedford Building Department** code violation **Issued by the Building Inspector** and thereby under color of state law, knowingly and intentionally failed to disclose controlling legal precedent directly relevant to **Plaintiff's case**—legal precedent authored by their own law firm, which contradicted the legal arguments advanced in their submissions to the court. **This legal precedent proves that the if there is any ambiguity in the zoning law, the inference is always favoring the property owner and disfavors the municipality. Defendant firm teaches a Continuing legal Education class on the subject and argued in the alternative to the Courts in this case.**

310. Despite possessing clear knowledge of this controlling authority, the **Defendants**:

- Omitted this precedent in pleadings and oral argument.

- Submitted written legal memoranda to both the trial court **and** Appellate Division that knowingly misrepresented the state of the law.

71

- Continued to pursue malicious prosecutions, despite actual knowledge that the law did not support such actions.

- This conduct constitutes a violation of **New York Rules of Professional Conduct Rule 3.3** (**Candor Toward the Tribunal**), which mandates that attorneys must not knowingly make false statements of law to a court or fail to disclose directly adverse authority not otherwise presented by opposing counsel.

311. As **officers of the court** who were acting as **Town Counsel** on behalf of the **Department of Building, The Town of Bedford and The Building Inspector**, attorneys Mr., **Zitt** and Mr. **Gordon** had a heightened duty to uphold the integrity of the judicial process, not to manipulate it to serve unlawful objectives or to harass and intimidate a litigant.

312. By knowingly presenting false representations of the law, failing to disclose directly adverse precedent, and pursuing baseless prosecutions to harass **Plaintiff**, **Defendants Zitt** and **Gordon**:

a. Violated **Plaintiff's** constitutional rights to due process and a fair adjudicative process, guaranteed by the **Fourteenth Amendment**.

b. Abused their roles as public officials acting under **color of state law**, thereby triggering liability under **42 U.S.C. § 1983**.

c. Deprived **Plaintiff** of liberty and property interests without due process, and in a manner that shocks the conscience and undermines fundamental fairness.

72

313. **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A.

## CONCLUSION:

314. In summary, the Defendants violated state and local laws and acted in concert to exceed the lawful bounds of their authority. While holding official governmental positions, they improperly assumed legislative powers by inventing legal standards and "inferring" criminal charges not grounded in any statute, ordinance, or written law. They issued violations, denied permits, and initiated two separate criminal prosecutions—each ultimately dismissed—all while acting **under color of law.**

315. The Defendants are not a legislative body and do not have the authority to create law by implication or inference. On video, they admitted to inferring a quasi-criminal charge not found in the relevant municipal code. Their conduct constitutes not only **malicious prosecution**, but also an **abuse of their governmental positions** and a concerted effort by all defendants to **deprive the Plaintiff of her property rights** without legal basis or due process.

73

**316.** Furthermore, the Defendants violated their ethical obligations, including **Rule 3.3 (Candor Toward the Tribunal)**, as well as their **Brady obligations** by failing to disclose legal precedent adverse to their arguments—precedent authored by their own law firm. Brady v. Maryland, 373 U.S. 83 (1963). Holding that suppression by the prosecution of evidence favorable to an accused who has requested it violates due process.

**317.** This unlawful and unethical course of conduct amounts to a constitutional violation of Plaintiff's rights under the **Fifth and Fourteenth Amendments** and actionable misconduct under **42 U.S.C. § 1983**.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

318. **Transfer Venue:** Order that this matter be heard in the **Southern District of New York, Manhattan Division**, in light of multiple judicial recusals in Westchester County and the close ties of opposing counsel to numerous municipalities in that district. Plaintiff's professional practice is located at **360 Court Street, Brooklyn, NY**, further supporting the appropriateness of venue in New York County.

319.**Issuance of a Writ of Mandamus** Compel Defendants to allow the lawful registration of Plaintiff's apartment with the Bedford Building Department, in accordance with governing laws and regulations.

74

320. **Issuance of a Writ of Prohibition** Enjoin Defendants from any further **retaliatory or punitive actions** against the Plaintiff arising from this lawsuit, including but not limited to:

    a. Unlawful denial of permits

    b. Arbitrary increases in property or school taxes

    c. Additional prosecutions or enforcement actions

321. **Award Compensatory Damages:**

    a. **Architectural fees**: $2,500

    b. **Lost rental income**: $2,400/month, currently totaling approximately **$52,800**, to be updated at time of judgment

    c. **Legal time and effort**: $550/hour for 230 hours = **$126,875**, excluding time spent on this motion and related re-filings after April 3, 2025.

    d. **Filing fees associate with all of the related action**

    e. **Service of process fees**

    f. **Transcript fees**

    g. **And any other relief for which receipts can be shown**

322. **Award Punitive Damages**

    a. $100,000 to deter future abuse of authority and ensure accountability

323. **OR IN THE ALTERNATIVE:**

75

**324. 2,000,000** for the unlawful devaluation of Plaintiff's property from R1A zoning to a de facto R12A designation, resulting in the loss of approximately **four buildable lots** valued at $500,000 each

**325. In the alternative, Damages for Loss of Use**

 If rental use is ultimately prohibited, Plaintiff requests damages in the amount of **$28,800 per year**, compounded biennially to reflect typical rent increases, over a projected period of **20 years**. And/or,

**326.Additional Relief**

Any further relief that the Court may deem just, proper, and equitable under the circumstances.

WHEREFORE, Petitioner respectfully requests that the Court Grant Plaintiff motion in its'entirety and grant any further relief that the court may deem just and proper.

**/s/ Melanie Hammer**
MELANIE HAMMER, ESQ.
360 Court Street, Suite 3
Brooklyn, NY 11231
melanie@hammer-esq.com
718-757-7677

Katonah, NY 7/5/2025

76

**Verification and Declaration Pursuant to 28 U.S.C. § 1746**

I, the undersigned Plaintiff, declare under penalty of perjury that the factual allegations contained in the foregoing complaint are true and correct **to the best of my knowledge, information, and belief**, the sources of which include:

- My personal observations and conduct I personally witnessed by the Defendants.

- My review of relevant documents, records, and correspondence.

- My review and understanding of applicable law, including the United States Constitution, New York State statutes, local ordinances, and administrative codes.

Executed on this 22 day of May 2025.

/s/ Melanie Hammer
MELANIE HAMMER, ESQ.

360 Court Street, Suite 3
Brooklyn, NY 11231
melanie@hammer-esq.com
718-757-7677

77

A-77

**CERTIFICATION**

Pursuant to **Rule 11 of the Federal Rules of Civil Procedure**, Plaintiff certifies that to the best of her knowledge, information, and belief:

1.  This Complaint is not being presented for any improper purpose, such as to harass or cause unnecessary delay or cost.

2.  The legal contentions herein are warranted by existing law or by a good-faith argument for extension or modification of the law.

3.  The factual assertions have evidentiary support or will likely have such support after discovery; and

4.  This filing complies with all applicable rules of procedure.

/s/ Melanie Hammer
MELANIE HAMMER, ESQ.
360 Court Street, Suite 3
Brooklyn, NY 11231
melanie@hammer-esq.com
718-757-7677

Katonah, NY 6/5/2025

78

A-78

5.

**NOTICE OF PRO SE STATUS**

I further agree to promptly inform the Clerk's Office of any changes to my contact

address. I understand that failure to maintain a current address may result in dismissal of

this action.

> /s/ Melanie Hammer
> MELANIE HAMMER, ESQ.
> 360 Court Street, Suite 3
> Brooklyn, NY 11231
> melanie@hammer-esq.com
> 718-757-7677

> Katonah, NY 6/5/2025

79

FILED: WESTCHESTER COUNTY CLERK 12/07/2023 05:45 PM    INDEX NO. 71446/2023

NYSCEF DOC. NO. 24    RECEIVED NYSCEF: 12/07/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------x
MELANIE HAMMER,

                                              **ORDER OF RECUSAL**
                                              **INDEX NO.: 71446/2023**

                      Petitioner,

        -against-

TOWN OF BEDFORD NEW YORK,
ZONING BOARD OF APPEALS BEDFORD NEW YORK
DEPARTMENT OF BUILDING BEDFORD NEW YORK/
BUILDING INSPECTOR TOWN OF BEDFORD NEW YORK,
ATTORNEY FOR THE TOWN OF BEDFORD NEW YORK ,

                        Respondents.
------------------------------------------------------------------x
ROBERT J. PRISCO, J.

       A Verified Petition and Notice of Petition, with supporting papers having been filed on November 29, 2023, and this Court having determined that to avoid the appearance of any impropriety, a recusal from this matter is appropriate, therefore, it is hereby,

       **ORDERED**, that pursuant to 22 NYCRR § 100.3 (E) (1), the undersigned hereby recuses himself from the above-mentioned matter; and it is further

       **ORDERED**, that the Verified Petition, Notice of Petition, and all supporting papers shall be returned to the Chief Clerk's Office to be reassigned.

Dated:  White Plains, New York
        December 7, 2023

                                        HONORABLE ROBERT J. PRISCO
                                        **Acting Supreme Court Justice**

Case 7:25-cv-02618-CS    Document 41-1    Filed 06/10/25    Page 2 of 4

FILED: WESTCHESTER COUNTY CLERK 12/07/2023 09:46 AM
INDEX NO. 71446/2023

NYSCEF DOC. NO. 23
RECEIVED NYSCEF: 12/07/2023

SUPRME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------x

MELANIE HAMMER,

                     Petitioner,

       -against-

TOWN OF BEDFORD, NEW YORK, ZOING
BOARD OF APPEALS BEDFORD, NEW YORK,
DEPARTMENT OF BUILDING BEDFORD, NEW
YORK, BUILDING INSPECTOR TOWN OF
BEDFORD NEW YORK, ATTORNEY FOR TOWN
OF BEDFORD, NEW YORK,

                     Respondents.
-------------------------------------------------------------------x

Williams, A.J.S.C.

**ORDER OF RECUSAL**

Index No.: 71446/23

The above-captioned Article 78 proceeding was assigned to me on November 30, 2023.

The Court has been notified that the Respondents are represented by Keane & Beane,

P.C., the firm which represented a member of my staff for several years.   In an effort to avoid

any potential appearance of impropriety and to preserve the integrity of the judicial system, I

hereby recuse myself from presiding over these proceedings.

This matter is referred back for re-arraignment.

Dated: White Plains, New York
       December 6, 2023

SO ORDERED:

             Hon. Maurice Dean Williams
             Acting Supreme Court Justice

1 of 1

Case 7:25-cv-02618-CS    Document 41-1    Filed 06/10/25    Page 3 of 4

**FILED: WESTCHESTER COUNTY CLERK 12/08/2023 09:34 AM** INDEX NO. 71446/2023

NYSCEF DOC. NO. 25 RECEIVED NYSCEF: 12/08/2023

9-ADMJ-12-7-23

The HON. ANNE E. MINIHAN pursuant to the authority vested in her as Administrative Judge of the Ninth Judicial District,

D O E S  H E R E B Y:

TRANSFER AND REASSIGN the following matter presently pending before the Hon. Maurice Dean Williams, Supreme Court, Westchester County to the **HON. ROBERT J. PRISCO,** Acting Supreme Court Justice, Westchester County, until disposition:

**Melanie Hammer v. Town of Bedford New York, Zoning Board of Appeals Bedford New York, et al.**
**Westchester Index No. 71446/2023**

This assignment is in addition to his other duties and assignments.

Dated: White Plains, New York
December 7, 2023

HON. ANNE E. MINIHAN, J.S.C.
Administrative Judge
Ninth Judicial District

Hon. Robert J. Prisco
Meredith Gabay, Esq.
Claudia Santolo
Lisa D'Angelo

1 of 1

FILED: WESTCHESTER COUNTY CLERK 12/08/2023 01:32 PM    INDEX NO. 71446/2023
NYSCEF DOC. NO. 28                                        RECEIVED NYSCEF: 12/08/2023

9-ADMJ-12-8-23

The HON. ANNE E. MINIHAN pursuant to the authority vested in her as Administrative Judge of the Ninth Judicial District,

DOES HEREBY:

TRANSFER AND REASSIGN the following matter presently pending before the Hon. Robert J. Prisco, Supreme Court, Westchester County to the **HON. GEORGE E. FUFIDIO,** Acting Supreme Court Justice, Westchester County, until disposition:

> **Melanie Hammer v. Town of Bedford New York, Zoning Board of Appeals Bedford New York, et al.**
> **Westchester Index No. 71446/2023**

This assignment is in addition to his other duties and assignments.

Dated: White Plains, New York
    December 8, 2023

_____
HON. ANNE E. MINIHAN, J.S.C.
Administrative Judge
Ninth Judicial District

Hon. George R. Fufidio
Michael Rubin, Esq.
Margaret Reynolds
Adeline Dailey
Lisa D'Angelo



**TOWN OF BEDFORD**

Resolution No. _____ of 2024

**RESOLUTION AUTHORIZING COMMENCEMENT
OF LITIGATION AGAINST MELANIE HAMMER,
AS OWNER OF PROPERTY AT
146 GOLDENS BRIDGE ROAD, KATONAH, NEW YORK**

**WHEREAS**, Melanie Hammer ("Ms. Hammer") is the owner of real property situated at 146 Goldens Bridge Road, Katonah, New York, as more fully described on the Town of Bedford Tax Map as Section 49.7, Block, 1, Lot 3 (the "Property"). The Property is a single lot which consists of approximately 11.69 acres and is situated in the Town of Bedford's R-1A (one acre) Zoning District. Existing on the Property is a principal residence which Ms. Hammer occupies, alongside a pre-existing non-conforming standalone cottage. Also existing on the Property is a standalone accessory garage structure; and

**WHEREAS**, on July 11, 2024, a Certificate of Compliance was issued for the Property, permitting a "finished recreation room over [a] garage" with respect to the second floor of the standalone garage structure thereon; and

**WHEREAS**, several years later, on April 19, 2023, the Building Department was contacted by an individual who identified themselves as a "tenant living in [an] apartment over garage" at the Property, who was concerned the apartment on the second floor of the garage on the Property was "not legal"; and

**WHEREAS**, on April 27, 2023, with the current tenant's permission, Town Code Enforcement personnel conducted a site visit and inspection of the Property, observing that the recreation room had been converted into a residential apartment. Specifically, the recreation room on the second floor of the standalone garage had been improved with the creation of two bedrooms, installation of a kitchen area with a sink, stove and refrigerator, and the installation of a full bathroom with a toilet, sink, and shower, none of which had existed when the Certificate of Occupancy was issued in July 2014; and

**WHEREAS**, on April 27, 2023, as a result of these observations, the Building Department issued Ms. Hammer Notices of Violation concerning the Property due to Ms. Hammer's failure to obtain permits for the conversion of the second floor of the standalone garage structure to a residential apartment. Ms. Hammer was advised to either (a) remove the unlawful residential apartment use, including any electrical and plumbing improvements made therein, or (b) legalize the improvements and use of the structure by, among other things, submitting a building permit application for administrative review; and

**WHEREAS**, following the issuance of the Notice of Violation(s), Ms. Hammer contacted administrative officials within the Town of Bedford and its Building Department to ascertain what steps were necessary to submit applications to correct the violations. On July 10, 2023, Ms. Hammer filed an application to revert the second floor of the garage structure from its unlawful residential use back to the recreation room. At some point, Ms. Hammer changed her mind about removing the illegal residential use and submitted another application to the Building Department on September 7, 2023, to legalize the residential apartment use atop the garage; and

**WHEREAS**, on September 22, 2023, the Building Inspector denied Ms. Hammer's application, thereby rejecting the attempt to legalize the residential apartment on the second floor of the garage structure that had been unlawfully improved through the installation of the bathroom, kitchen and living fixtures made therein. The Building Inspector determined, among other things, that the proposed residential use was a "Cottage", and that such use was not a permitted use in the R-1A zoning district in which the Property was situated. Accordingly, Ms. Hammer was notified that she would require a use variance from the Town's ZBA. Ms. Hammer was also advised to proceed to the ZBA if she disagreed with the Building Inspector's interpretation of the Zoning Code and determination therefrom.

**WHEREAS**, on October 4, 2023, Ms. Hammer applied to the ZBA seeking, inter alia, (a) dismissal of the notice of violation issued for the unlawful apartment; (b) a "request for variance for a customary home occupation/permit"; (c) a request for an interpretation/reversal of the Building Inspector's determination and denial; and (d) a use variance. The ZBA opened and closed the public hearing on Ms. Hammer's appeal and application on November 2, 2023. The ZBA after hearing extensive argument from Ms. Hammer and discussing the appeal and application in detail, voted to deny Ms. Hammer's application and appeal and set forth the various reasons for the denial on the record.

**WHEREAS**, on December 7, 2023, the ZBA adopted Resolution #11-23, denying Ms. Hammer's appeal and application in writing and clarifying the reasons for the denial; and

**WHEREAS**, ZBA Resolution #11-23 affirmed the Building Inspector's denial of Ms. Hammer's building permit application to convert the recreation room over the standalone garage into a "Cottage", which the ZBA found was not permitted under the provisions of the Zoning Code relied upon by Ms. Hammer in her appeal and application to the ZBA. The ZBA also denied Ms. Hammer's request for a use variance to legalize the conversion of the second

floor recreation room over the garage into a "Cottage" on the grounds that she had not submitted evidence to satisfy the provisions of Zoning Code § 129.C(2)(a).

WHEREAS, on November 30, 2023, Ms. Hammer commenced an Article 78 proceeding by the filing of a Verified Petition. The Article 78 Petition sought, inter alia, (1) an order compelling the Town Respondents to allow her to legally file an application for the residence at issue; (2) an order compelling the Town Respondents to dismiss the Justice Court violations levied against her; (3) an order directing the Town Respondents to pay damages in the amount of $14,400.00 to the Ms. Hammer for lost rental income; (4) an order directing the Town Respondents to pay Ms. Hammer damages for additional lost rent in the amount of $2,400.00 per month; (5) an order for attorneys' in the amount of $22,000.00 for the work Ms. Hammer had done on her own case billed at $550.00 per hour for forty (40) hours; (6) an order for future attorneys' fees billed at $550.00 per hour for future work; (7) an order directing Town Respondents to pay $100,000.00 in punitive damages; (8) an order directing payment of $2,000,000.00 for unlawfully devaluing Ms. Hammer's property; (9) a writ of prohibition preventing Town Respondents from "rezoning [Ms. Hammer's] property in the future"; and (10) a writ of prohibition to stop Town Respondents "continuing to act" punitively, arbitrarily, or capriciously in this and future applications made by Ms. Hammer; and

WHEREAS, following several recusals by different judges for various reasons, the proceeding was assigned to the Honorable George E. Fufidio, A.J.S.C. Judge Fufidio filed and entered his Decision and Order on February 9, 2024, denying and dismissing Ms. Hammer's Article 78 Petition in its entirety. Initially, the Decision and Order stated the ensuing litigation had "complicated what, at its core, [] is a relatively basic petition to nullify the Town of Bedford ZBA's decision" to deny Ms. Hammer's request to continue the unlawful use of the apartment at the second floor of the standalone garage structure. Judge Fufidio then directly addressed and rejected each Ms. Hammer's arguments wherein she attempted to establish a legal right to utilize the second floor of the standalone garage as a residential apartment. Judge Fufidio also addressed Ms. Hammer's requests/motions concerning a potential judicial conflict of interest, seeking a change of venue, oral argument and an order of discovery.

WHEREAS, Ms. Hammer filed a Notice of Appeal with respect to the Decision and Order on February 26, 2024 with the Appellate Division, Second Department. The appeal is fully submitted and remains pending.

WHEREAS, the filing of the appeal with the Appellate Division, Second Department, does not stay the Westchester County Court's Decision and Order upholding the ZBA's and Building Inspector's determinations. As a result, there is a valid judicial finding that Ms. Hammer is in violation of the Town of Bedford Zoning Code.

WHEREAS, the Town has been attempting to prosecute violations against Mr. Hammer in the Town Justice Court regarding the illegal apartment. However, even if ultimately successful with respect to these violations, the Town Justice Court would not have

the ability to issue injunctive relief to require the removal of the illegal residential apartment; and

**WHEREAS**, Ms. Hammer has refused to acknowledge her legal obligations as stated by the Building Inspector and confirmed by the ZBA and the Westchester County Court, that she was not permitted to improve the space over standalone garage without a building permit and that she is not allowed to use this space for residential purposes; and

**WHEREAS**, it is determined that commencing litigation against Ms. Hammer in Westchester County Court is necessary to address and resolve existing zoning violations on the Property.

**NOW THEREFORE BE IT RESOLVED**, the Town Board of the Town of Bedford hereby authorizes Keane & Beane, P.C. to commence legal action and/or assert claims against Ms. Melanie Hammer, as the owner of the property at 146 Goldens Bridge Road, Katonah, New York, before the Supreme Court, Westchester County, in order to obtain a judicial declaration, assert other claims and/or seek injunctive relief requiring Ms. Hammer to remedy the violations on the Property and remove the improvement to the Property undertaken without building permits; and (ii) to take all actions necessary to effectuate the terms of this Resolution.

FILED: WESTCHESTER COUNTY CLERK 01/26/2024 01:27 PM          INDEX NO. 71446/2023

NYSCEF DOC. NO. 69          Case 7:25-cv-02618-CS     Document 41-3     Filed 06/10/25     Page 1 of 1          RECEIVED NYSCEF: 01/26/2024

**From: Michael P. Rubin mrubin@nycour**

From: Michael P. Rubin mrubin@nycourts.gov
Subject: RE: 71446/2023 Melanie Hammer v. Town of Bedford New York et al
Date: Jan 26, 2024 at 11:57:01 AM
To: melanie hammer melanie@hammer-esq.com, rzitt@kblaw.com

Dear Ms. Hammer:

As concerns your latest letter to the Court, please be advised that we intend to have a decision to you by the end of next week. In our estimation, we still do not need to have the parties appear in Court for any reason and once we have decided the case we will have it uploaded to the NYSCEF system where you will be able to access it.

First, concerning the "admissibility" of the video evidence you have included as an exhibit to your petition, because the Court does not anticipate ever conducting a hearing or trial in this matter, the admissibility of any evidence you wish to present will likely be a moot issue. The Court will list the documents and exhibits it has relied upon in rendering a decision and give a reason, if necessary, for not considering any exhibits.

Likewise, as I'm sure you are aware, the standard for deciding a case such as this is an objective one. That is, as long as there is a rational basis underpinning the zoning board decision that you are appealing to the courts, the courts are without authority to disturb the ruling even if it would have decided the original issue contrarily.

Next, the Court is denying leave for discovery. That will be included in the decision so that the issue is preserved on appeal should you need to appeal it.

Finally, the Court will not be giving you an affirmative indication that there is or is not a conflict of interest simply because your tenants are related to a former judge and District Attorney. As you know, Judges are presumed to be impartial; it is a central tenet to the justice system as a whole. Judiciary Law section 14 lists the scenarios in which a judge is disqualified from hearing a case, none of which apply in this case. Further, since you have not moved for disqualification, the Court will not weigh in on whether or not it should be disqualified. In the event that you take this as an invitation to file such a motion, that too will be decided in the decision the Court anticipates will be in your hands by the end of next week. However, the Court cannot give you a date certain for a decision on this matter.

Hopefully this addresses your concerns,

Very Truly Yours,

Michael P. Rubin
Principal Court Attorney to the
Hon. George E. Fufidio
111 Dr. Martin Luther King, Jr. Blvd.

Case 7:25-cv-02618-CS    Document 41-4    Filed 06/10/25    Page 1 of 1

**FILED: WESTCHESTER COUNTY CLERK 11/30/2023 04:03 PM** INDEX NO. 71446/2023
NYSCEF DOC. NO. 18 RECEIVED NYSCEF: 11/30/2023

9-ADMJ-11-30-23

The HON. ANNE E. MINIHAN pursuant to the authority vested in her as Administrative Judge of the Ninth Judicial District,

DOES HEREBY:

TRANSFER AND REASSIGN the following matter presently pending in Supreme Court, Westchester County to the **HON. MAURICE DEAN WILLIAMS**, Acting Supreme Court Justice, Westchester County, until disposition:

**Melanie Hammer v. Town of Bedford New York, Zoning Board of Appeals Bedford New York, et al.**
**Westchester Index No. 71446/2023**

This assignment is in addition to his other duties and assignments.

Dated: White Plains, New York
November 30, 2023

HON. ANNE E. MINIHAN, J.S.C.
Administrative Judge
Ninth Judicial District

Hon. Maurice Dean Williams
Iris Cross Bugliosi
Linda LeDoux
Adeline Dailey
Lisa D'Angelo

1 of 1

A-89

FILED: WESTCHESTER COUNTY CLERK 12/07/2023 09:46 AM INDEX NO. 71446/2023
NYSCEF DOC. NO. 23                                                    RECEIVED NYSCEF: 12/07/2023

SUPRME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
----------------------------------------------------------------------x

MELANIE HAMMER,

                                  Petitioner,                          **ORDER OF RECUSAL**

                  -against-

TOWN OF BEDFORD, NEW YORK, ZOING                              Index No.: 71446/23
BOARD OF APPEALS BEDFORD, NEW YORK,
DEPARTMENT OF BUILDING BEDFORD, NEW
YORK, BUILDING INSPECTOR TOWN OF
BEDFORD NEW YORK, ATTORNEY FOR TOWN
OF BEDFORD, NEW YORK,

                                  Respondents.
----------------------------------------------------------------------x

Williams, A.J.S.C.

The above-captioned Article 78 proceeding was assigned to me on November 30, 2023.

The Court has been notified that the Respondents are represented by Keane & Beane,

P.C., the firm which represented a member of my staff for several years.   In an effort to avoid

any potential appearance of impropriety and to preserve the integrity of the judicial system, I

hereby recuse myself from presiding over these proceedings.

This matter is referred back for re-arraignment.

Dated: White Plains, New York                    SO ORDERED:
       December 6, 2023

                                                 Hon. Maurice Dean Williams
                                                 Acting Supreme Court Justice

1 of 1

FILED: WESTCHESTER COUNTY CLERK 12/07/2023 05:45 PM     INDEX NO. 71446/2023

NYSCEF DOC. NO. 24                                      RECEIVED NYSCEF: 12/07/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------x
MELANIE HAMMER,

                                                    ORDER OF RECUSAL
                                                    INDEX NO.: 71446/2023

                            Petitioner,

        -against-

TOWN OF BEDFORD NEW YORK,
ZONING BOARD OF APPEALS BEDFORD NEW YORK
DEPARTMENT OF BUILDING BEDFORD NEW YORK/
BUILDING INSPECTOR TOWN OF BEDFORD NEW YORK,
ATTORNEY FOR THE TOWN OF BEDFORD NEW YORK ,

                            Respondents.
-----------------------------------------------------------------x
ROBERT J. PRISCO, J.

        A Verified Petition and Notice of Petition, with supporting papers having been filed on
November 29, 2023, and this Court having determined that to avoid the appearance of any
impropriety, a recusal from this matter is appropriate, therefore, it is hereby,

        ORDERED, that pursuant to 22 NYCRR § 100.3 (E) (1), the undersigned hereby recuses
himself from the above-mentioned matter; and it is further

        ORDERED, that the Verified Petition, Notice of Petition, and all supporting papers shall
be returned to the Chief Clerk's Office to be reassigned.

Dated: White Plains, New York
        December 7, 2023

                                            HONORABLE ROBERT J. PRISCO
                                            Acting Supreme Court Justice

1 of 1

FILED: WESTCHESTER COUNTY CLERK 12/08/2023 01:32 PM          INDEX NO. 71446/2023
NYSCEF DOC. NO. 28                                           RECEIVED NYSCEF: 12/08/2023

9-ADMJ-12-8-23

The HON. ANNE E. MINIHAN pursuant to the authority vested in her as Administrative Judge of the Ninth Judicial District,

D O E S  H E R E B Y:

TRANSFER AND REASSIGN the following matter presently pending before the Hon. Robert J. Prisco, Supreme Court, Westchester County to the **HON. GEORGE E. FUFIDIO**, Acting Supreme Court Justice, Westchester County, until disposition:

**Melanie Hammer v. Town of Bedford New York, Zoning Board of Appeals Bedford New York, et al.**
**Westchester Index No. 71446/2023**

This assignment is in addition to his other duties and assignments.

Dated: White Plains, New York
     December 8, 2023

HON. ANNE E. MINIHAN, J.S.C.
Administrative Judge
Ninth Judicial District

Hon. George R. Fufidio
Michael Rubin, Esq.
Margaret Reynolds
Adeline Dailey
Lisa D'Angelo

**From:** **Melanie Hammer** melanie@hammer-esq.com 📎
**Subject:** Complaint against Eric Gordon Esq, Robert Pitt, Esq. and Keane & Beane P.C.
**Date:** July 30, 2024 at 12:02 PM
**To:** ad2-grv2@nycourts.gov



To Whom It May Concern,

I hope this email finds you well. With the herein documents I am filing a complaint against Eric Gordon Esq, Robert Zitt, Esq. and Keane & Beane P.C. This firm has intimated a prosecution against me in retaliation to a 1983 action and a Civil Appeal which I first attempted to file 5/2/2024 (see the email attached). I am also attaching:
1. Two Grievance Forms,
2. The Explanation of Grievance Letter,
3. Proof of initial appellate filing on 5/2/3034 (this was returned for correction, but the email date is important to show retaliation.
4. Proof of Eric Gordon filed a Building Department Complaint in retaliation on 5/6/24 (this case carries potential jail time).
5. Proof that Eric Gordon brought charges that he could not substantiate. The complaint does not allege *any* facts and is an abuse of authority.
6. The motion to dismiss in the Interest of Justice which outlines the legal and constitutional defects and misconduct of the prosecutor, Eric Gordon.
7. Email proof that Eric Gordon NOW intends to withdraw and *re-file* this malicious and retaliatory prosecution in anticipation of my motion being granted.
8. Proof of Misconduct by Mr. Zitt in the underlying 440 action.

I thank You in advance for reviewing the information I have provided. Please let me know if you require anything further.

| | |
|---|---|
| **ethics complaint.pdf** | ⬇ |
| **Grievance Committee Complaint From 2.pdf** | ⬇ |
| **Grievance Committee Complaint From.pdf** | ⬇ |
| **Bedford Building Department Violation.pdf** | ⬇ |
| **BEDFORD AFF IN SUPPORT OF MOTION TO DISMISS INTEREST ...** | ⬇ |
| **Zitt email intent to withdraw.rtfd** | ⬇ |

Goo





# People of the State of New York v. Melanie Hammer

Ms. Hammer,

As you know, Keane & Beane, P.C., represents the Town of Bedford s/h/a "People of the State of New York" in the pending Justice Court matter. Please be advised that the Town will be withdrawing its current accusatory instrument with the intention of filing a subsequent Information and Summons based, in part, upon your failure to remove the improvements that were made to the garage without obtaining the appropriate approvals.

Additionally, as the violations at the property still remain unaddressed, kindly advise whether you will allow the Building Department to conduct an inspection to ensure that the property is unoccupied. As you are aware, it is the Town's position that any occupancy of the subject property beyond that which the Certificate of Occupancy permits (i.e. a recreation room atop the garage) is a violation of local code. Given that the property has been previously converted to a dwelling unit with electrical and plumbing improvements, and has been occupied in violation of the Town Code, any current occupancy would pose a threat to the life, safety and well-being of an occupant without the necessary inspections.

Moving forward, kindly address any correspondence to me concerning this matter.



# NOTICE TO APPEAR



STATE OF NEW YORK: COUNTY OF WESTCHESTER
JUSTICE COURT:  TOWN OF BEDFORD
x------------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,

    -against-

    MELANIE HAMMER                           Defendant.
x------------------------------------------------------------------------x

YOU ARE HEREBY DIRECTED TO APPEAR BEFORE THE PRESIDING JUSTICE OF THE TOWN COURT OF THE
TOWN OF BEDFORD ON JUNE,11ᵗʰ 2024

9:30 AM

**AT**

321 BEDFORD ROAD, BEDFORD HILLS, NY 10507

SBL: 49.7-1-3

Be it known that the complainant herein Angel Oya, of the Town of Bedford Building Department accuses the
defendant(s) named above of the following offence(s) committed at the location 146 Goldens Bridge Rd in the Town of
Bedford , New York 10506 on April 27th, 2023.

### COUNT ONE

Violation of the Code of the Town of Bedford *Chapter 59. Fire Prevention and Building Code,
Uniform § 59-8. Building permit required.*

### COUNTS TWO AND THREE

Two Violations of the Code of the Town of Bedford - *Chapter 89: Plumbing*

### COUNT FOUR

Violation of the Code of the Town of Bedford *Chapter 52: Electrical Inspections*

### COUNT FIVE

Violation of the *International Fire Code Section 915.1. Carbon Monoxide detectors required.*

### COUNT SIX

Violation of the Code of the Town of Bedford Chapter § 125-12 *Lots.*
A.

Every building hereafter erected shall be located on a lot, as herein defined. There shall be not more than one main building and its accessory buildings on each minimum size lot, except for nonresidential buildings in districts where such uses are permitted. On one undivided parcel of land in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted; provided, however, that, in each such instance, all main and accessory buildings must conform to all lot requirements established hereunder the same as if such buildings were placed on two separate and independent parcels of land.

### COUNT SEVEN

Violation of the Code of the Town of Bedford Chapter 125-125(B) Building without a permit – No building or structure shall be erected, constructed, enlarge, altered, structurally altered, moved or excavation made therefor or work begun thereon until a building permit therefor has been issued by the Building Inspector.

permits.

All of the above is contrary to the provisions of the statute in such case made and provided for.

The above allegation of fact are made by the complainant herein on direct knowledge (and upon information and belief), with the sources of complainant information and the grounds for his belief being:

Angel Oya

Code Enforcement Officer

NOTICE: PURSUANT TO THE PENAL LAW, SECTION 210.45, IT IS A CRIME PUNISHABLE AS A CLASS A MISDEMEANOR TO KNOWINGLY MAKE A FALSE STATEMENT HEREIN.

05/06/2024.

_____
Dated

_____
Signed

```
----------------------------------------------------------------X
```
In the Matter of the Claim of

MELANIE HAMMER,

                                   Plaintiff,

                -against-                                    **NOTICE OF 50-H**
                                                            **EXAMINATION**

TOWN OF BEDFORD,

                                   Defendant.
```
----------------------------------------------------------------X
```

TO:    Melanie Hammer, Esq. (pro se)
       146 Goldens Bridge Rd.
       Katonah, NY 10536

**PLEASE TAKE NOTICE**, that pursuant to Section 50-h of the General Municipal Law and Section 3813 of Education Law, you are hereby required to appear before **SILVERMAN & ASSOCIATES**, attorneys for the Defendant, Town Of Bedford, on **June 28 2024 at 10:00 a.m.** to be orally examined under oath relative to the claim against the Respondent. Please be advised that the Respondent will conduct such examination remotely.

**PLEASE TAKE FURTHER NOTICE**, that Respondent demands within one week prior to the examination, that the following items be furnished to the undersigned:

1.    Any documents relevant to the allegations contained in the Notice of Claim;

2.    The names an.. addresses of any witnesses to the events alleged in the Notice of Claim;

3.    Any and all documents, invoices, tax records, billing records, reports and/or narratives pertaining to the Claimant's alleged damages.

Application for adjournment should be made at least five days prior to the date set for the examination.

Dated: White Plains, New York

May 9, 2024

Sincerely,

**SILVERMAN & ASSOCIATES**

By: _____

Lewis R. Silverman
Attorneys for Respondent
445 Hamilton Ave, Suite 1102
White Plains, NY 10601
(914) 574-4510

TO:

**Melanie Hammer, Esq. (pro se)**
**146 Goldens Bridge Rd.**
**Katonah, NY 10536**

2

A-101

## AFFIRMATION OF SERVICE

I, HERMAN CASTRO, affirm the following under the penalties of perjury:

1.  I am not a party to this action, am over 18 years of age and reside in Bronx County, New York

2.  On May 9, 2024, I served the within 50-H NOTICE upon:

Melanie Hammer, Esq. (pro se)

146 Goldens Bridge Rd.
Katonah, NY 10536

Via First Class Mail and Certified Mail

Dated: May 9, 2024

Herman Castro

A-102

```
-----------------------------------------------------------X
```

**In the Matter of the Claim of**

MELANIE HAMMER,

                              Plaintiff,

                                                          **NOTICE OF 50-H**
          -against-                                       **EXAMINATION**

TOWN OF BEDFORD (a.k.a. Town of Bedford New York),
ERIC GORDON, TOWN ATTORNEY,

                              Defendants/Respondents.
```
-----------------------------------------------------------X
```

TO:    Melanie Hammer, Esq. (pro se)
       146 Goldens Bridge Rd.
       Katonah, NY 10536

**PLEASE TAKE NOTICE**, that pursuant to Section 50-h of the General Municipal Law, you are hereby required to appear before **SILVERMAN & ASSOCIATES**, attorneys for the Respondent, Town of Bedford, on **October 18, 2024 at 10:00 a.m.** to be orally examined under oath relative to the claim against the Respondent. Please be advised that the Respondent will conduct such examination remotely.

**PLEASE TAKE FURTHER NOTICE**, that Respondent demands within one week prior to the examination, that the following items be furnished to the undersigned:

1.    Any documents relevant to the allegations contained in the Notice of Claim;

2.    The names and addresses of any witnesses to the events alleged in the Notice of Claim;

3.    Any and all documents, invoices, tax records, billing records, reports and/or narratives pertaining to the Claimant's alleged damages.

Application for adjournment should be made at least five days prior to the date set for the examination.

Dated: White Plains, New York
         September 18, 2024

Sincerely,

**SILVERMAN & ASSOCIATES**

By: _____
     Lewis R. Silverman
     Attorneys for Respondent
     Town of Bedford
     445 Hamilton Ave, Suite 1102
     White Plains, NY 10601
     (914) 574-4510

TO:

**Melanie Hammer, Esq. (pro se)**
**146 Goldens Bridge Rd.**
**Katonah, NY 10536**

2

A-104

### AFFIRMATION OF SERVICE

I, LISBETH ORTIZ, affirm the following under the penalties of perjury:

1. I am not a party to this action, am over 18 years of age and reside in Westchester County, New York

2. On September 18, 2024, I served the within 50-H NOTICE upon:

Melanie Hammer, Esq. (pro se)
146 Goldens Bridge Rd.
Katonah, NY 10536

Via First Class Mail and Certified Mail

Dated: September 18, 2024

_____
Lisbeth Ortiz



**KEANE&BEANE**P.C.

ATTORNEYS AT LAW

WESTCHESTER MUNICIPAL PLANNING FEDERATION

2017 LAND USE LAW INSTITUTE

ZONING CODE INTERPRETATIONS

May 17, 2017

Prepared by:

Richard L. O'Rourke, Esq.
Drew Victoria Gamils, Esq.
Keane and Beane, P.C.
445 Hamilton Avenue, 15th Floor
White Plains, New York 10601
(914) 946-4777
Rorourke@kblaw.com
Dgamils@kblaw.com
http://www.kblaw.com/

-1-

A-106

**Westchester Municipal Planning Federation Legal Night**
**Zoning Code Interpretations**

I.      **INTRODUCTION**

A.      **Permitted Action by Zoning Board of Appeals Under New York State Law**

   a.   Under municipal zoning codes, applicants may appeal a Building Inspector's interpretation of any provision of the zoning code or make a request for a variance to seek relief from said provision.

      i.   The zoning board of appeals has the authority to "reverse or affirm, wholly or partly, or may modify the order, requirement, decision, interpretation or determination appealed from and shall make such order, requirement, decision, interpretation or determination as in its opinion ought to have been made in the matter by the administrative official charged with the enforcement of such ordinance or local law and to that end shall have all the powers of the administrative official from whose order, requirement, decision, interpretation or determination the appeal is taken." NY Gen. City Law § 81-b(2); NY State Town Law § 267-b(1); NY Village Law § 7-712(b)(1).

      ii.  Unless otherwise provided by local law or ordinance, the jurisdiction of the zoning board of appeals (ZBA) is appellate only. The authority of the ZBA is limited to hearing and deciding appeals based on a review of any order, requirement, decision, interpretation, or determination, made by the Building Inspector or Code Enforcement Officer.

B.      **Zoning Board of Appeals Procedure to Provide an Interpretation**

   a.   Before the planning board can provide an interpretation of a zoning provision, the Building Inspector or Code Enforcement Officer must make a determination or provide an interpretation on the issue.

      i.   For example, the Building Inspector must determine whether or not a certain use is permitted in a specific zoning district.

   •   *Meier v. Village of Champlain Zoning Bd. of Appeals*, 11 N.Y.S. 3d 743 (3d Dep't 2015).

   The property owner owned a residence in the Village of Champlain where he kept several chickens. Pursuant to the Village of Champlain Zoning Code, his home was located in a residential district. The Zoning Enforcement Officer for the Village notified the property owner that he was not allowed to keep chickens at his residence because such a use was considered agricultural and not permitted in the residential zoning district. In response, the property owner filed an appeal, seeking an interpretation of the Village Zoning Code and an appeal from the Zoning Enforcement Officer's decision. The Zoning Board denied the application and affirmed the Zoning Enforcement Officer's interpretation.

   b.   The Building Inspector's determination may be reviewed by the ZBA if challenged by the applicant or by neighbors within 60 days of the filing of the order or decision

-2-

**Westchester Municipal Planning Federation Legal Night**
**Zoning Code Interpretations**

appealed from. NY Gen. City Law § 81-a(5)(b); NY Town § 267-a(5)(b); Village Law § 7-712-a(5)(b). Any person aggrieved by any decision of the ZBA may appeal to the Supreme Court for review by a proceeding under article seventy-eight. Such proceeding must be instituted within 30 days after the filing of a decision of the ZBA in the office of the town clerk. NY Gen. City Law § 81-c(1); NY Town § 267-c(1); Village Law § 7-712-c(1).

   c.  All other proceedings related to the action appealed from must stop while an appeal is pending. However, such proceedings may continue if the Building Inspector or Code Enforcement Officer certifies to the board of appeals that a stay on such proceedings would cause imminent peril to life or property. NY Gen. City Law § 81-a(6); NY Town § 267-a(6); Village Law § 7-712-a(6).

## II.   STANDARD OF REVIEW

### A.   Role of the Zoning Board of Appeals

   a.  In an interpretation case, the role of the ZBA is to decide whether to uphold or overturn the Building Inspector's determination. The ZBA must find evidence in the record to support a decision to overturn or affirm the Building Inspector's determination.

### B.   Review of the Building Inspector's Determination

   a.  The ZBA is required to use the "de novo standard" when reviewing the Building Inspector's or Code Enforcement Officer's original determination, rather than the arbitrary and capricious standard. The ZBA has the authority and responsibility to interpret the provisions of the Zoning Code and make any determination in its opinion as ought to have been made by the Building Inspector. Comparatively, judicial review of an administrative determination is limited to whether the administrative action is arbitrary and capricious or lacks a rational basis. This point will be further discussed later in the presentation.

   b.  The ZBA may uphold the Building Inspector's determination and his interpretation of the Zoning Code after review of the Building Inspector's reasoning and other evidence in the record.

   c.  The ZBA may not simply rely on the Building Inspector's determination, but must review the record and evidence presented before making a final determination.

   d.  The ZBA is under no obligation to accept or give deference to the Building Inspector's determination. Under New York State Law the ZBA is required to make whatever determination the Building Inspector should have made in the first place. NY Gen. City Law § 81-b(2); NY State Town Law § 267-b(1); NY Village Law § 7-712(b)(1).

-3-

### Westchester Municipal Planning Federation Legal Night
### Zoning Code Interpretations

- *Concetta T. Cerame Irrevocable Family Trust v. Town of Perinton Zoning Bd. of Appeals*, 776 N.Y.S. 2d 660 (4th Dep't 2004).

Landowners applied to the Town of Perinton (Town) for a permit to build a 2,500–foot berm and noise barrier where their property adjoins an interstate highway. The Town's Commissioner of Public Works denied the application on the ground that additional information was required from landowners. The landowners appealed the Commissioner's decision to the ZBA. In its final determination the ZBA found that the Commissioner's decision was not arbitrary and capricious and affirmed the Commissioner's decision. The court concluded that the ZBA applied the wrong standard of review. The role of the ZBA is to provide an interpretation or determination "as in its opinion ought to have been made." This standard is set forth in the Town law. The role of the ZBA is not to review whether the Building Inspector's original determination was arbitrary and capricious.

- *Sand Land Corp. v. Zoning Bd. of Appeals of Town of Southampton*, 28 N.Y.S.3d 405( 2d Dep't 2016).

Sand Land filed an application with the Town's Chief Building Inspector requesting a "pre-existing certificate of occupancy" for certain uses of the property. The Town's Chief Building Inspector found that Sand Land was entitled to a preexisting certificate and issued a certificate of occupancy. The neighbors appealed to the Town's Zoning Board of Appeals. The ZBA reviewed the evidence presented and vacated portions of the Chief Building Inspector's determination and certificate of occupancy. The ZBA was authorized to consider the Chief Building Inspector's determination de novo and make such a "determination as in its opinion ought to have been made in the matter" based on review of the record and evidence presented during the appeal. The ZBA does not have to give deference to the Building Inspector's determination.

C.    **The ZBA's reasoning for its final determination must be documented in a final decision.**

   a.    The ZBA must clearly explain its reasoning behind its final determination in a written decision. The written decision must demonstrate that the ZBA's final determination has a rational basis and is supported by substantial evidence. The court will review and scrutinizes the written decision to determine whether the ZBA's final decision was arbitrary and capricious. The ZBA's interpretation will be upheld if challenged in court if it has a rational basis supported by evidence in the record.

- *Greene v. Johnson*, 503 N.Y.S.2d 656 (2d Dep't 1986).

The Building Inspector of the Town of Blooming Grove denied the landowner's application for a permit to perform certain alterations upon several dwellings providing that the proposed construction constituted an enlargement or extension of a nonconforming use. The landowner sought review of the Building Inspector's determination and if that determination was upheld, a variance. The Zoning Board of Appeals of the Town of Blooming Grove denied the variance application on the basis that

-4-

**Westchester Municipal Planning Federation Legal Night**
**Zoning Code Interpretations**

the requisite hardship was not established. However, the ZBA did not issue any decision upholding or denying the Building Inspector's initial interpretation denying the permit application. The court was unable to complete any judicial review because the ZBA failed to provide any findings of facts with regard to the issue of whether the construction proposed was an enlargement or extension of a nonconforming use. The court directed the ZBA to review the evidence and issue such findings of fact.

- *In Emmanuel Brethren Assembly v. Village of Hempstead Board of Zoning Appeals*, 34 Misc.3d 1208(A) (Sup. Ct. Nassau Co. 2011)(unreported).

The board of appeals refused to render a decision and findings of fact and, instead, relied on the transcripts of four nights of hearings which, according to the board, constituted the basis for the board's decision at the final meeting. The court related that generally in the absence of a written decision and a proper statement of findings of fact, "the court is unable to intelligently exercise its review function." Consequently, the denial of the variance application was determined to be arbitrary and capricious.

## III.   MAKING AN INTERPRETATION

### A.   Review of the Zoning Code

a.  Consider the intent of the law. Review old minutes and documents where the provision was discussed or contemplated. Review applications where the provision was at issue or applied. However, it must be noted that the intent of the law cannot override the clear provisions and language of the law, particularly when you are proscribing property rights.

- *Alfie's Fish and Chips of Houston Tex. v. Zoning Bd. of Appeals of City of Saratoga Springs*, 318 N.Y.S.2d 107 (3d Dep't 1971)

The city zoning ordinance provided that every amendment and every map incorporated must be entered in the minutes of city council and published and posted. One of the maps incorporated into the ordinance showed a tract as being zoned within a business district. The record indicated that the zoning district had never been amended. The city was not entitled to revoke property owners building permit on grounds that the tract was zoned for residential and not business because the City did not follow the code to properly rezone the parcel. The intention of the city council cannot override the clear provisions of the ordinance itself, especially since the zoning ordinance is to be strictly construed against the city, not the property owner.

b.  Consider whether a proposed use is compatible with other uses allowed in the zoning district at issue.

-5-

Westchester Municipal Planning Federation Legal Night
Zoning Code Interpretations

B.     Interpretation of Statutory Terms

 a. A zoning ordinance must be read as a whole. The ZBA must consider all relevant provisions of the Zoning Code.

  i. "A statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent." N.Y. Statutes § 98[a]

 • *Matter of Saratoga County Economic Opportunity Council, Inc. v. Village of Ballston Spa Zoning Board of Appeals*, 977 N.Y.S.2d 419 (3d Dep't 2013)

The landowner was a not-for-profit organization that provided a variety of programs and services, many federally funded, in Saratoga County. The landowner wanted to purchase property located in the Central Business District Zone of the Village of Ballston Spa. The landowner applied to the Village Code Enforcement Officer for an interpretation of whether the services it planned to provide at that property were permitted by the Village zoning ordinance as a vital human service. The Building Inspector determined that the proposed uses were not permitted uses in the business district. The ZBA affirmed the Building Inspector's determination. The Town Zoning Code provided that "any change of use on the ground floor of a structure located within the Central Business District Zone shall be used only for retail space with the exception of 1. vital human services; 2. offices by special permit; 3. churches and houses of religious worship; 4. libraries; 5. museums; 6. hotels; 7. banks and financial institutions; and 8. parking garages. Vital human resources is defined as "any health related services such as doctors, dentists, physical therapists, hair and skin care and other necessary human services." A statute such as a zoning ordinance must be construed as a whole, reading all of its parts together. All of which should be harmonized to ascertain legislative intent and given its plain meaning, avoiding a construction that renders superfluous any language in the ordinance. Neither "health related services," which is unambiguous, nor "other necessary human services," which is somewhat vague, is defined in the legislation. The court reviewed the plain meaning of those terms. The court overturned the ZBA's determination and found that the proposed uses qualified as a vital human service in that the use was health related and a necessary human service comparable to that offered by medical professionals, under the plain meaning and common understanding of those terms.

 • *Matter of McLiesh v. Town of Western*, 891 N.Y.S.2d 825 (4th Dep't 2009)

The Zoning Board of Appeals for the Town of Western denied an application for an area variance to construct a detached garage on residential property. The court determined that the ZBA's interpretation of the Town of Western Zoning Ordinance had no rational basis and was arbitrary and capricious. A zoning ordinance must be interpreted as to give effect to all of its provisions, and an interpretation that nullifies any provision of a zoning ordinance is irrational and unreasonable. In this case, the ZBA applied the wrong section of the zoning ordinance in denying the application for area variance to construct a detached garage on residential property. The ZBA's interpretation of one section of the

-6-

**Westchester Municipal Planning Federation Legal Night**
**Zoning Code Interpretations**

zoning ordinance nullified the existence of another section and was therefore arbitrary and capricious.

- *Matter of Robert E. Havell Revocable Trust v. Zoning Bd. of App. of Vil. Of Monroe*, 8 N.Y.S. 3d 353 (2d Dep't 2015)

The Assistant Building Inspector of the Village of Monroe advised a property owner that the proposed use of his parcel for automotive tire sales and service was a conditional use. The property owner appealed to the ZBA. The ZBA denied the application for interpretation and determined that the proposed use of the property for tire sales and service was a conditional use rather than a use permitted as of right. Under the Village Zoning Code, permitted uses and conditional uses are set forth in accompanying zoning schedules. The uses listed in column A of the applicable schedules "are permitted by right," while the uses listed in column C "are permitted only on approval of the planning board. In the GB Zoning District in which the property was located tire sales were listed as both a permitted use and a conditional use. Section 200–3 of the Code the Village of Monroe provided that "[i]n the event of conflict in the terminology of any section or part thereof of this chapter, the more restrictive provisions shall control" (Code of the Village of Monroe § 200–3[B] ). Construing the Zoning Code with its schedules as a whole, that tire sales and related services were conditional uses in the GB Zoning District. The court affirmed the ZBA's determination.

b.  The expression of one thing implies the exclusion of another.

  i.  "Where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded." N.Y. Statues §240.

- *Eaton v. New York City Conciliation and Appeals Board*, 56 N.Y.2d 340 (1982)

In this case the issue was whether residential apartments owned and operated by a religious institution and rented to the general public were exempt from rent stabilization laws. The Emergency Tenant Protection Act of 1974 provided that apartments previously vacancy decontrolled were to be restored to rent stabilization. However, the law provides an exemption for housing accommodations owned or operated by a hospital, convent, monastery, asylum, public institution or college or school dormitory or any institution operated exclusively for charitable or educational purposes on a non-profit basis." Where the statutory language is clear and unambiguous, the court should construe the statute to give effect to the plain meaning of the words used. Under the language of the statute rent stabilization housing, accommodations owned or operated by any institution exclusively for charitable or educational purposes on a nonprofit basis were clearly exempt. There was no language in the statute which would permit an interpretation providing a similar exemption for institutions operated for religious purposes nor is there statutory language which would suggest this legislative intent. The statute in this case clearly described the particular situations to which it applied. Where a statute describes the particular situations to which it is to apply an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or

-7-

## Westchester Municipal Planning Federation Legal Night
## Zoning Code Interpretations

excluded. If the Legislature intended to extend the exemption to religious institutions, it would have chosen to do so through appropriately worded legislation. In view of the Legislature's failure to include religious institutions generally within the exemption provisions of the statute an "irrefutable inference" arises that housing accommodations owned or operated by religious institutions are outside the scope of this statute.

* *Biggs v. Zoning Bd. Of Appeals of Town of Pierrepont, N.Y.,* 30 N.Y.S. 3d 797, 800 (S. Ct. St. Lawrence Cty 2016).

Mr. and Mrs. Frederick Biggs (the "Biggs"), challenged the determination of the Zoning Board of Appeals of the Town of Pierrepont, New York. The Biggs filed a complaint with the Town of Pierrepont to protest the neighbor's use of his property to process logs into firewood with a mechanical wood processor; the firewood was then trucked off the property for sale. The Biggs argued that the use occurring on the neighbor's property were commercial uses which violated the Town Zoning Code and were not permitted. The Town Code Enforcement Officer did not find any code violations and denied the complaint. The Biggs appealed to the ZBA. The ZBA reviewed the evidence and agreed with the Town Enforcement Officer to find that there were two activities being conducted on the neighbor's property- top soil screening and firewood processing. Because these uses were not specifically defined in the Zoning Code, the ZBA interpreted the firewood processing activity as a "Forestry" use which was permitted in the residential district. The Zoning Code of the Town of Pierrepont defined "Forestry" as "the commercial operation of timber tracks, tree farms, forest nurseries, including the gathering and/or harvesting of forest products."

Biggs filed an Article 78 proceeding against the Town arguing that the firewood processing activity should have been interpreted by the ZBA as a "Natural Resource Based Industry" which is only permitted in the Open Country-Side Zoning District or the Agriculture Zoning District. The Zoning Code of the Town of Pierrepont defined "Natural Resource Based Industry" as "manufacturing and industrial activities which depend upon the use of natural resources of the County as raw materials." The court found that by distinguishing and separately defining "forestry" and "Natural Resource Based Industry" the local zoning regulations made clear that the scope and duration of "Forestry" is inherently limited by the finite forest resources available on a particular property, while "Natural Resource Based Industries" are not so limited. Thus, the court read all the provisions of the zoning code to avoid a construction rendering any language superfluous with regards to the definition of "Forestry and "Natural Resource Based Industry"

Zoning Board of Appeals of the Town of Pierrepont unreasonably determined that the landowner's firewood processing was classifiable as forestry, which was permitted use in rural-residential (R-R) district, rather than as natural resources based industry, which was prohibited use in R–R district. The only difference between the classifications was the source of the natural resources used as raw materials, with forestry depending on natural resources of subject property, but natural resource based industry depending on natural resources imported from outside subject property, specifically from county, so production

Westchester Municipal Planning Federation Legal Night
Zoning Code Interpretations

of firewood by use of mechanical wood processor from logs transported onto subject property from other locations was excluded from definition of forestry.

c.   When there is an interpretation of a statutory term, zoning codes must be construed according to the ordinary definitions of the words used in a specific provision. It is appropriate to apply dictionary definitions when making your determination. Words in a statute are to be given their usual and commonly understood meaning, unless it is clear from the statute that a different meaning is intended. N.Y. Statutes § 232,

*Witkowich v. Zoning Board of Appeals of Town of Yorktown*, 19 N.Y. S.3d 327 (2d Dep't 2015)

A zoning code must be construed according to the words used in their ordinary meaning. The ZBA determined that the proposed structure, consisting of an attached den and garage area, was an addition to the main building, not an "accessory" building within the meaning of section 300–3(B) of the Town Zoning Code which provided that an accessory structure which was defined as "a subordinate building, whether or not attached to the main building via a breezeway or connecting corridor, the use of which is customarily incidental to that of a main building on the same lot." Consequently, the ZBA found that the size limitations for "accessory" buildings set forth in section 300–14(D) of the Town Zoning Code were not applicable to the proposed structure. In reaching its determination, the ZBA considered record evidence that the proposed den area was to be used as conventional living space and not a connecting "breezeway" or "connecting corridor." Since the terms "breezeway" and "connecting corridor" were not defined in the ordinance, the ZBA used the Dictionary of Architecture and Construction and the Merriam–Webster Dictionary to define those terms. The ZBA determined that, according those words their ordinary meaning, the den area of the proposed structure, designed to be an enclosed, heated living space, not open to the outdoors, cannot reasonably be construed to constitute a "breezeway" or "connecting corridor." The court held that the evidence supported the ZBA's determination that the proposed structure was an addition to the main building.

C.   Construing Zoning Regulations Against the Municipality

a.   It is a general principal that zoning codes, being in derogation of the common law, must be strictly construed against the enacting municipality, and any ambiguities in a zoning ordinance must be resolved in favor of the property owner.

b.   Any ambiguity in the language used in a zoning regulation must be resolved in favor of the property owner, particularly where a contrary interpretation would subject the landowner's property to a lengthy and involved process contemplated by site plan approval.

c.   If the ZBA finds that the language in the Zoning Code is clear and unambiguous then the principle of interpretation must be construed in favor of the property owner is not applicable. If the ZBA does find that there is an ambiguity in the language of the Zoning Code, then such ambiguity must be resolved in favor of the property owner.

-9-

**Westchester Municipal Planning Federation Legal Night**
**Zoning Code Interpretations**

- *Bonded Concrete Inc. v. Zoning Bd. Of Appeals of Town of Saugerties*, 702 N.Y.S.2d 184 (3d Dep't 2000).

Bonded Concrete owned a plot of vacant land zoned industrial in the Town of Saugerties. It applied to the Town Building Inspector for a certification of occupancy to place and operate portable concrete batch equipment on this property to produce concrete. The production of concrete is a permitted use in the industrial district under the Town's Zoning Law. The Building Inspector found that site plan approval was not required under the Town's Zoning Law for the proposed use on this property and issued a certificate of occupancy. Neighboring property owners appealed to the ZBA and the ZBA reversed the Building Inspector's decision and rescinded the certificate of occupancy. The court found that the Zoning Code was ambiguous as to whether site plan approval was required for this proposed use. Zoning restrictions are in derogation of the common law and, as such, must be strictly construed against the municipality which adopt and enforce them. Any ambiguity in the language employed must be resolved in favor of the property owner. Where a particular provision in a zoning ordinance is ambiguous and its context convincingly demonstrates that the ambiguity may be reasonably resolved in the landowner's favor, the court will strictly construe it against the municipality, particularly where a contrary interpretation would subject the landowner's property to a lengthy and involved process contemplated by site plan approval. Accordingly, the court concluded that the ZBA's interpretation resolving the ambiguity against the landowner was not rational or reasonable.

## IV.    DEFERENCE TO ZONING BOARD'S INTERPRETATION

### A.    Interpretation of Zoning Provision

a.    The ZBA has the power to interpret the provisions of a local zoning ordinance, code, or zoning resolution An Article 78 proceeding can be brought to challenge a zoning or land use body's interpretation of a statute. In an Article 78 proceeding for review of a determination of the ZBA, the ZBA's interpretation of its own zoning ordinance is entitled to great deference, and it will not be overturned by the courts unless unreasonable or irrational.

b.    If the matter is only an interpretation of the zoning code, the ZBA will be accorded great discretion interpreting an ordinance that addresses an area of zoning where it is difficult or impractical for a legislative body to lay down a rule which is definitive and all encompassing.

- *Sanatonio v. Lustenberger*, 901 N.Y.S.2d 109 (2d Dep't 2010).

Homeowner commenced Article 78 proceeding challenging determination of village zoning board of appeals, denying homeowner's application to review the Building Inspector's interpretation of village code. The Zoning Board of Appeals of the Village of Irvington interpreted the provisions of the Town's Zoning Code to determine that the homeowner's use of her residence for professional hairdressing did not qualify it as a home occupation. Generally, zoning ordinances are in derogation of the common law and

-10-

A-115

### Westchester Municipal Planning Federation Legal Night
### Zoning Code Interpretations

must be strictly construed against the municipality; however, this rule is subject to the limitation that where it would be difficult or impractical for a legislative body to promulgate an ordinance which is both definitive and all-encompassing, a reasonable amount of discretion in the interpretation of the ordinance may be delegated to an administrative body or official. Under a zoning ordinance which authorizes interpretation of its requirements by the zoning board of appeals, specific application of a term of the ordinance to a particular property is governed by the board's interpretation, unless unreasonable or irrational. The court agreed with the ZBA and held that the proposed use of the residence for professional hairdressing was not authorized under the village code.

- *Stone Industries, Inc. v. Zoning Bd. of Appeals of Town of Ramapo*, 13 N.Y.S. 3d 92 (2d Dep't 2015)

  The ZBA denied the landowner's application for an interpretation of the Code of the Town of Ramapo and affirmed the Building Inspector's determination that the proposed asphalt facility was not permitted use. In a proceeding pursuant to CPLR article 78 to review a determination of a zoning board of appeals, judicial review is limited to ascertaining whether the ZBA's action was illegal, arbitrary and capricious, or an abuse of discretion. The court concluded that where a determination is made by a zoning board of appeals after a public hearing, the determination of the zoning board should be upheld if it has a rational basis supported by evidence in the record. Here, it was rational for the ZBA to find production of asphalt from recycled materials, including recycled asphalt, was prohibited where the Town Code prohibited the primary production of asphalt.

- *La Russo v. Neuringer*, 962 N.Y.S.2d 633 (2d Dep't 2013)

  Village residents filed an Article 78 proceeding to review a determination by Zoning Board of Appeals of the Village of Mamaroneck that a racing pigeon did not constitute a customary household pet. The ZBA determined that the landowner's proposed use of a coop in his backyard to keep and raise 40 or more racing pigeons, or "racing homers," did not qualify as keeping "a reasonable number of customary household pets" within the meaning of section 342–21(B)(7) of the Code. In reaching this determination, the ZBA considered record evidence that these pigeons would be specially bred, trained, and handled to compete in races, at least some of which may result in cash prizes. The court concluded that the evidence in the record supported the ZBA's determination.

B.   **Legal Interpretation**

a.   Although the courts ordinarily defer to a ZBA's interpretation of a local ordinance, when the issue presented is one of pure legal interpretation of the underlying statutory terms of the zoning law or ordinance, deference is not required.

  i.   If the question is "a pure legal interpretation of statutory terms," deference by the court to the ZBA is not required. Deference associated with an agency applying its special expertise in a particular field only applies when an agency is interpreting statutory terms. The ultimate responsibility of interpreting the law is that of the court.

-11-

**Westchester Municipal Planning Federation Legal Night**
**Zoning Code Interpretations**

particularly where an issue is one of first impression for the board and does not involve a long-standing practical construction of a statute.

* *Toys R Us v. Silva*, 89 N.Y.2d 411 (1994)

A landowner commenced an Article 78 proceeding to annul the Board of Standards and Appeals' (BSA) revocation of a building permit to maintain a nonconforming use. The BSA determined that the use of the building failed to preserve the nonconforming use status of the property. The Board of Standards and Appeals (BSA), comprised of five experts in land use and planning, is the ultimate administrative authority charged with enforcing the Zoning Resolution. Consequently, in questions relating to its expertise, the BSA's interpretation of the statute's terms must be given great weight and judicial deference, so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute. Its determination, moreover, must be sustained if it has a rational basis and is supported by substantial evidence. Where, however, the question is one of pure legal interpretation of statutory terms, deference to the BSA is not required. The Court of Appeals determined that the question regarding the standard for abandonment under the Zoning Resolution was a pure legal question that did not mandate deference to the BSA, instead the court made a determination as to whether the BSA's conclusion that Morgan abandoned a nonconforming warehouse use was supported by substantial evidence.

* *Bartolacci v. Village of Tarrytown Zoning Board of Appeals*, 41 N.Y.S. 3d 116 (2d Dep't 2016)

The Zoning Board of Appeals of the Village of Tarrytown determined that the village planning board had the authority to review the applicant's building permit application. The applicant commenced an Article 78 proceeding to challenge the ZBA's determination. In a proceeding pursuant to CPLR Article 78 to review a determination of a zoning board of appeals, a zoning board's interpretation of its zoning ordinance is entitled to great deference, and judicial review is generally limited to ascertaining whether the action was illegal, arbitrary and capricious, or an abuse of discretion. However, where the issue involves pure legal interpretation of statutory terms, deference to the zoning board of appeals is not required. In such circumstances, the judiciary is free to ascertain the proper interpretation from the statutory language and legislative intent. The court determined that the issue in this case was a question of legal interpretation. The court independently reviewed the law and found that the ZBA complied with applicable legal principles.

-12-

1

JUSTICE COURT: TOWN OF BEDFORD
COUNTY OF WESTCHESTER: STATE OF NEW YORK
------------------------------------------------x

THE TOWN OF BEDFORD,

                -against-

MELANIE HAMMER,

              Defendant.
------------------------------------------------x
                    321 Bedford Road
                    Bedford Hills, New York
                    September 17, 2024
                    9:30 A.M.

B E F O R E:    HONORABLE DAVID A. MENKEN

                TOWN JUSTICE

             P R O C E E D I N G S

                BRENNA MORENO
               Court Stenographer
                P.O. Box 220
          Stony Point, New York 10980
              (845)521-5743

APPEARANCES:

          KEANE & BEANE, P.C.
          445 Hamilton Avenue, Suite 1500
          White Plains, NY 10601
          Attorneys for Town of Bedford
          BY: ROBERT ZITT, ESQ.
              Of Counsel


          MELANIE HAMMER, ESQ.
          360 Court Street, Suite 3
          Brooklyn, NY 11231
          BY: MELANIE HAMMER, ESQ.
              Pro Se

3

THE COURT:  I'm going to call the first case, Melanie Hammer. Good morning, Ms. Hammer.

MS. HAMMER:  Good morning, Judge. Melanie Hammer, 360 Court Street, Brooklyn, New York. I'm proceeding pro se on this.

THE COURT:  Okay.

MR. ZITT:  Good morning, Judge. Robert Zitt, Z-I-T-T, by Keane and Beane, 445 Hamilton Avenue, White Plains, New York, on behalf of the Town.

THE COURT:  I have two files. The first one, I'll start, but someone, if I'm not correct. The first one had a Docket of 24050200 and I've read Judge Kimmel's decision granting Ms. Hammer's Motion to Dismiss. Is there any question or issue on that?

MS. HAMMER:  No, Your Honor. That case was dismissed.

THE COURT:  Okay.

MS. HAMMER:  Post 30.30, for facial insufficiency.

THE COURT:  Yes. Then I have another. I imagine the case was refiled, but I have another information, Docket No. 24090030. And my understanding is we're here on that?

4

MR. ZITT:  That's correct, Judge.

THE COURT:  Do you have a copy of the charges, Ms. Hammer?

MS. HAMMER:  Yes, Your Honor. The People have filed the exact same charges again in this case.

THE COURT:  Yes. All right. Nevertheless.

MS. HAMMER:  So I'm going to waive the reading of the rights.

THE COURT:  All right. Just give me a second.

MS. HAMMER:  I mean of the charges, not the rights thereunder, and I'm entering a plea of not guilty.

THE COURT:  Okay. I would imagine you are going to tell me more.

MS. HAMMER:  I'm actually -- unless Your Honor, sua sponte going to dismiss this, I'm not going to say anything. I want my COC.

THE COURT:  I did my research and I determined that I am not able to sua sponte dismiss this compliant. It has to be on motion and on written motion.

MS. HAMMER:  I am not asking for a motion schedule. I want to be very clear on that. I'm

5

ready for trial and I want my COC. So I would like this case put over for trial and COC.

MR. ZITT:  Judge, the Town has prepared discovery for Ms. Hammer as well as a Certificate of Compliance and Statement of Readiness. We intend to file that either by close of business today or by the end of the week.

MS. HAMMER:  Can I have it? You don't have it with you today?

MR. ZITT:  This is arraignment, Judge.

MS. HAMMER:  If he has it.

THE COURT:  I would imagine since he's not serving it that he doesn't have it, at least not ready for you.

MR. ZITT:  So Judge, discovery is roughly almost a thousand pages. I'm trying to prepare it in a way that wouldn't be burdensome to Ms. Hammer. That's going to be disclosed, as I said, either end of today or by the end of the week. The Town intends to file the Certificate of Compliance and Statement of Readiness.  We would also remind Ms. Hammer of her reciprocal discovery obligations under the CPL.

MS. HAMMER:  Yes. Okay.

6

THE COURT:  All right. Do we want to set another date?

MS. HAMMER:  A trial. A trial date.

THE COURT:  Mr. Zitt?

MR. ZITT:  I'm fine with that, Judge. Our Statement of Readiness and Certificate of Compliance is going to essentially ask the Court to advance it for the purposes of trial. So if the Court is amenable to an earlier trial date, I think that might benefit everyone.

THE COURT:  October 22, or November 19th, or December 10th?

MR. ZITT:  So, Judge, when these are filed with the Court, typically the request is made to advance it for the purposes of us stating ready. That doesn't depreciate the filing, in other words, when we file the Certificate of Compliance --

MS. HAMMER:  If you're making a 30.30 Argument now, that can't be made orally.  We can make a subsequent 30.30 Motion. But you are not going to direct this Judge about how to calculate 30.30 in this moment. Okay? That's not happening here today.

THE COURT:  Just let him finish talking

A-123

7

and then you'll have an opportunity so I understand everything.

MS. HAMMER:  I think he's trying to tell you that he's stopping the clock.

THE COURT:  You'll have your opportunity unlimited to respond.

MS. HAMMER:  Okay.

THE COURT:  What are you asking?

MR. ZITT:  Nothing, Judge.  We're going to provide Ms. Hammer with discovery and we're going to make the requisite filings. That's all.

MS. HAMMER:  People, what day are you requesting?

MR. ZITT:  Would you like me to answer that, Judge? I just didn't want there to be cross-talk.

THE COURT:  I don't know what to put on my notes.

MR. ZITT:  We're going to be filing discovery at close of business, along with the Certificate of Compliance and Statement of Readiness as Ms. Hammer has requested.

THE COURT:  Okay.

MS. HAMMER:  What day are you requesting?

8

THE COURT:  Are you requesting a trial date now?

MR. ZITT:  Yes. We can be prepared to try the case -- one second, Judge.

THE COURT:  What are you looking for as far as time for a trial? I'm trying to determine --

MR. ZITT:  We can be ready tomorrow, Judge.

THE COURT:  No. At the end of next week I'm going to be gone for three weeks, so I won't even be able to see any papers.

MR. ZITT:  Okay.

MS. HAMMER:  So let's do the trial today if they're ready.

THE COURT:  I can't do it today.

MR. ZITT:  Again, we haven't provided discovery, so.

MS. HAMMER:  So you're not ready today? You're not making that representation on the record?

THE COURT:  Ms. Hammer, talk to me instead of him.

MS. HAMMER:  Judge, if he's not ready today he shouldn't be making a representation

A-125

9

as an Officer of the Court that he's ready today.

MR. ZITT:  I haven't made that representation.

THE COURT:  I'm not going to do a trial today no matter who's ready. Just give me a second. Friday the 25th of October?

MR. ZITT:  That works for us, Judge.

THE COURT:  Ms. Hammer?

MS. HAMMER:  Yes.

THE COURT:  9:30. All right?

MR. ZITT:  Judge, one other thing. The People would be requesting at some point an additional inspection of the premises. The basis of the violations in this case and the one that preceded it was unlawful occupancy of an apartment dwelling on top of the second floor of a garage which is attached from the main premises. Substantial amount of work had been done at the premises including plumbing, electrical work. So occupancy is something that presents a safety concern to the town. So we would either request Ms. Hammer's consent for that inspection or we would be pursuing an administrative search warrant.

10

MS. HAMMER:  Sorry, Judge, I think the People just asked for a search warrant in a violation case. I've never in my career heard of that.

Let me just explain something to the People and the Court right now. I, as an Officer of the Court, represent that there is no one occupying that apartment right now. You have no basis for a warrant and that is a ridiculous, egregious -- I mean, I have already filed a Malicious Prosecutions Case against you. You have unlawfully refiled the same charges, which, obviously is ridiculous and I will have dismissed. There's no question about that, this is going to be dismissed. And now you are asking for a -- are you getting nervous about your personal liability?

THE COURT:  Ms. Hammer. Come on.

MS. HAMMER:  This is outrageous, it's egregious.

THE COURT:  We're not talking here about Mr. Zitt's personal liability --

MS. HAMMER:  No, we are. I filed 1983 Actions personally against Eric Gordon, and now I mean, I have never have seen such unethical

A-127

11

conduct, malicious prosecution. I have a problem in with the Grievance Committee, there's an Appeal pending. These people -- this is very concerning that the town --

THE COURT:  Well, then --

MS. HAMMER:  Hold on, Judge, I just want to make one more thing said. I am a tax payer in this town. This town is paying these attorneys that don't know how to draft a complaint, they don't know how to provide discovery, they don't know how to disclose conflicts of interest. They are, at the same time, they have been defending themselves as a co-defendant in cases where they stand to -- they are the guilty party and they have not disclosed conflicts to the town.

They are putting the town in harm's way. There's four ethical violations here. First of all, after I filed the Malicious Prosecution Complaint, of course there should be an Independent Prosecutor appointed because it doesn't look -- it's beyond the mere appearance of impropriety that they have filed a second -- I mean, that's unlawful that they have filed a second complaint with the same charges. That's

12

the first thing. And I will make a motion on that when I'm ready, but I'm not ready right now. I'm not asking for a motion schedule.

The second thing is how you can file it as the same parties that are subject to a Malicious Prosecutions 1983 Action which has been served with the Secretary of the State. I would never, as attorney, put myself in that kind of jeopardy. And I even gave them notice of this in the last Motion that they were violating the ethical rules by not appointing an Independent Prosecutor in this case. Okay.

So now we're up to conflict of interest and we're talking about the failure to appoint an Independent Prosecutor. I'm not just making arguments out of nowhere. This case is based on them circumventing my Constitutional rights. They're trying to do it again now, Judge.

30.30, my right to speedy trial from the same charges already ran and it was dismissed. They are trying to come before this Court and restart the clock like I'm not entitled to a speedy trial according to them. They're starting the speedy trial again. Do you understand that? They filed a case on June

13

11th, against me. They had to prosecute me within 30 days of that. They failed to do so.

They're trying to circumvent my right to a speedy trial under the Constitution and under CPL 30.30 by refiling the exact same charges to restart this. You don't get two bites of the apple from my speedy trial rights. You guys need to read the Constitution. You've had a lot of trouble with this over the course of this case. You just stood here and asked this Judge for a search warrant in a case that is a violation, not a crime --

THE COURT:  Ms. Hammer, let me just now have my say. I don't think he asked for anything. He said what he might do, but he didn't ask me for a search warrant.

MR. ZITT:  Judge, now that Ms. Hammer has made the representation that there's no occupancy, as an Officer of the Court, we have no interest of proceeding.

THE COURT:  Your claims, which I have no idea what you wrote --

MS. HAMMER:  Yes --

THE COURT:  Just let me finish. Now it's my turn. I don't know your 1983 claims. I read

14

your 30.30, etc. But what I'm going to do today is just the arraignment and setting a trial date. If you have motions to bring, I'd be happy to read them. All right. So I'm going to just adjourn this until trial, which is 9/25.

MS. HAMMER:  Okay. I just want to make one very short record. I just want to be clear --

THE COURT:  I said 9/25, I meant 10. I'm sorry. Go ahead.

MS. HAMMER:  -- that the People are not in my opinion ready for trial today because they asked this Court that -- I just want to make a record -- that they would intend to do a search of the premises. And I mean, that means they're still seeking discovery.

MR. ZITT:  Yes, Judge. We are not ready for trial today.

THE COURT:  Okay. That's fine.

MS. HAMMER:  That's just what I wanted.

THE COURT:  Thank you Ms. Hammer. See everybody another day.

MR. ZITT:  Thank you, Judge.

*****

15

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

C E R T I F I C A T I O N

I, BRENNA MORENO, a Court Stenographer, do
hereby certify that the foregoing proceedings
taken in the matter of THE TOWN OF BEDFORD
against

MELANIE HAMMER

Consisting of pages 1 through 15, which
was taken on the 17th day of September 2024,
before Hon. David A. Menken is a true and
accurate transcript.

_____

BRENNA MORENO

A-132

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:06 PM
INDEX NO. 71446/2023
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 11/29/2023

Case 7:25-cv-02618-CS    Document 1-1    Filed 03/27/25    Page 1 of 1

EXHIBIT A
ZONING BOARD OF APPEALS DECISION


The Town Violated New York Town Code 267(5) by not providing the decision in writing to intentionally avoid judicial review.


Available on the web the video decision is available at the following link:
https://mediahttp.iqm2.com/BedfordNY/1665_480.mp4

A-133

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:06 PM          INDEX NO. 71446/2023
NYSCEF DOC. NO. 4          Case 7.25-cv-02618-CS     Document 1-2    Filed 03/27/25    Page 1 of 1     RECEIVED NYSCEF: 11/29/2023



Town of Bedford
Building Department

LETTER OF BUILDING PERMIT DENIAL

PARCEL ID: 49.7-1-3                                                    09/22/2023

Owner Information:
Hammer, Melanie
146 Goldens Bridge Rd
Katonah, NY 10536

Applicant Information:
Hammer, Melanie
146 Goldens Bridge Rd
Katonah, NY 10536

Location: 146 Goldens Bridge Rd
Zoning District: R-1A
Permit Type: Building Permit Cottage/Accessory Apartment
Work Description: Legalize apartment in an accessory structure and attached deck.

Dear Ms. Hammer,

Regarding the application you filed on September 7, 2023 for a Building Permit to construct a new deck to an existing garage and to legalize a "garage apartment", the following facts are noted: The "garage apartment" would be considered a "Cottage" as defined in Town Zoning Code, Chapter 125, Article 1, Section 125-3. The Cottage was created through the installation of a bathroom, kitchen and creation of a living area without obtaining required approvals from the Town. The application seeks the legalization of a Cottage where a Cottage is not permitted in the Residential One-Acre Zoning District pursuant to Chapter 125, Article VIII, Section 125-79.1.A. In addition, a legal, main dwelling and a legal, pre-existing non-conforming cottage already exists in the Residential One-Acre Zoning District and no more than one cottage may be permitted on any property. Article VIII, Section 125-79.1.A(4). As a result, a use variance pursuant to Chapter 125, Article XII, Section 125-129.C(2)(a)

*Your application for a building permit is DENIED, your project does not meet the requirements of the Town of Bedford Zoning Ordinance. To proceed with your project, please submit a complete application to the Zoning Board of Appeals to address the deficiencies as described above.*

Al Ciraco, Building Inspector

425 Cherry Street, Bedford Hills, NY 10507 – 914.666.8040 – Building@BedfordNY.Gov

TOWN JUSTICE COURT: TOWN OF BEDFORD
STATE OF NEW YORK: COUNTY OF WESTCHESTER
-------------------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK,

                          **DECISION & ORDER**

       - against -

                         Docket No: 24-050200

MELANIE HAMMER,

             Defendant.

-------------------------------------------------------------------------X

       On June 11, 2024, a criminal proceeding was commenced in which the Defendant, Melanie Hammer, was arraigned on seven counts of violating the Town Code of the Town of Bedford.

       The Defendant filed a motion dated July 15, 2024, seeking dismissal of the charges pursuant to Criminal Procedure Law ("CPL") §§ 170.40; 100.40; 100.15; and 30.30(1)(d). On August 12, 2024, the Court received a letter from counsel for the Town of Bedford purporting to address the motion and specifically indicating that the Town intends "to withdraw the charges . . . thereby mooting the motion to dismiss." Counsel asked "that the charges against Defendant be deemed withdrawn."

                         \*   \*   \*

       One of the grounds for dismissal cited by the Defendant in her motion, is the facial insufficiency of the information. CPL §§ 100.15, 100.40. Facial sufficiency is a jurisdictional requirement to proceed with prosecution. People v Case, 42 NY2d 98 (1977). In their letter, the prosecution agreed with the Defendant that the accusatory instrument is "deficient", and declared their intent to "withdraw the instant accusatory instrument".

       The proper procedure would be for the prosecutor to move the Court to dismiss the information or to file a superseding information. CPL § 100.50; People v Hardy, 35 NY3d 466 (2020); People v Minott, 70 Misc3d 1217(A) (Crim Ct NY Co 2021). While the prosecution has done neither, in any case, there is also the issue of the Defendant's right to a speedy trial pursuant to CPL § 30.30.

       The time limitation on the prosecution of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a violation and none of which is a crime, is 30 days. CPL § 30.30(1)(d). "...The prosecution shall not be deemed ready for trial for purposes of [CPL §] 30.30 ... until it has filed a proper certificate [of compliance] pursuant to

subdivision one of this section." CPL § 245.50(3).

In the case at bar, the Defendant is charged with seven offenses/violations of the Town Code. None of the offenses is a crime. The 30.30 clock started running on the date of the arraignment (June 11, 2024) and no adjournments were requested/granted. The prosecution never filed a certificate of compliance indicating trial readiness. Of note, even if a superceding information had been filed, the prosecution's deadline to declare their readiness for trial would relate back to the date of the arraignment. As determined by the Court of Appeals, "there 'can be only one date which marks the commencement of [a criminal] action' for the purposes of CPL 30.30, 'the date on which the first accusatory paper is filed.'" People v Sinistaj, 67 NY2d 236 (1986) *citing* People v Lomax, 50 NY2d 351 (1980).

## CONCLUSION

As both sides agree, the accusatory information is facially insufficient and the Court finds that it is therefore in violation of CPL §§ 100.40 and 100.15. Further, in accordance with CPL § 30.30(1)(d), since no certificate of compliance was filed within 30 days of the arraignment date, the Court finds that the Defendant was deprived of her right to a speedy trial. It is therefore the order and determination of the Court that the Defendant's motion to dismiss pursuant to CPL §§ 100.40; 100.15; and 30.30(1)(d) is granted, and the present case is dismissed without prejudice.

Except to the extent set forth herein, the Defendant's motion is denied.

The foregoing determination notwithstanding, the Court recognizes that this dismissal does not remedy the situation of alleged ongoing violations of the Town Code, which, it is claimed, require remediation by the Defendant. The parties should be guided accordingly.

SO ORDERED.

Dated: August 28, 2024
Bedford, New York

_____
Hon. Jodi Kimmel
Town Justice

ENTERED: August 28 2024

_____
Amy LeFevre, Court Clerk

2

A-136

TO:    Keane & Beane, P.C.
          445 Hamilton Avenue, Suite 1500
          White Plains, NY 10601
          Attn: Robert C. Zitt, Esq.

          Melanie Hammer, Esq.
          *Defendant, Pro Se*
          360 Court Street, Suite 3
          Brooklyn, NY 11231

3

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:06 PM INDEX NO. 71446/2023
NYSCEF DOC. NO. 5 RECEIVED NYSCEF: 11/29/2023

Case 7:25-cv-02618-CS    Document 1-4    Filed 03/27/25    Page 1 of 1

EXHIBIT C

11/2/2023 Transcript of ZBA meeting

No transcript has been provided to date but the video of the meeting is available at
https://mediahttp.iqm2.com/BedfordNY/1665_480.mp4

STATE OF NEW YORK: COUNTY OF WESTCHESTER
JUSTICE COURT:  TOWN OF BEDFORD
_____x

PEOPLE OF THE STATE OF NEW YORK                                    DECISION AND ORDER
                                                                                            Case No. 24090030

              -against-

MELANIE HAMMER,

                                    Defendant
_____x

       A criminal proceeding was commenced against Defendant on August 29, 2024, by the filing of a Notice to Appear and Information by the Town of Bedford relating to offenses allegedly committed at 146 Goldens Bridge Road, in the Town of Bedford, New York, on or about April 27, 2024 to the present.

       The Information contained seven counts, all of which were alleged to be continuing violations commencing on April 27, 2023 and continuing to the date of the Information; they did not relate to one violation on a specific date.

       The People filed a Certificate of Compliance and Notice of Readiness on September 18, 2024.

       On the same date Defendant, an attorney acting pro se, filed a motion in this Court to "dismiss this case in the Interest of Justice under CPL 170.40 and CPL 40.20, inter alia" (Defendant's Affirmation at p. 2).

       To fully understand this matter it is necessary to recite salient background information.

       (a)     A criminal proceeding was commenced in the Town of Beford Justice Court on June 11, 2024, charging Defendant with essentially the same seven counts of violating the Town Code of the Town of Bedford on April 27, 2023.

       (b)     Defendant filed a motion to dismiss on July 15, 2024, seeking dismissal of the charges.

       (c)     On August 12, 2024, the People submitted correspondence to the Court indicating their intent to withdraw the accusatory instrument due to technical deficiencies in the Accusatory Instrument.

(d)      By Decision and Order dated August 28, 2024, the Court (by the Hon. Jodi Kimmel) dismissed the charges pursuant to CPL §§ 100.40, 100.15 and 30.30(1)(d), without prejudice. As noted in the Affirmation of Robert Zitt in Opposition, at Par. 10, "The Court also expressly recognized that the dismissal '[did] not remedy the situation of alleged ongoing violations of the Town Code.'"

(e)      The People thereupon filed a new Accusatory Instrument, relating to the same violations but including dates from April 27, 2023 to the filing of the new Instrument, prompting Defendant to file the instant motion to dismiss.

The new Accusatory Instrument is defective, and for that reason only Defendant's motion to dismiss is granted.

Facial insufficiency is a jurisdictional requirement to proceed with prosecution. *People v. Case*, 42 NY2d 98 (1977).

Criminal Procedure Law § 100.40(1) provides in its entirety:

An information, or a count thereof, is sufficient on its face when:

(a)      It substantially conforms to the requirements prescribed in section 100.15; and

(b)      The allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of the information; and

(c)      Non-hearsay allegations of the factual part of the information and/or of any supporting depositions establish, if true, every element of the offense charged and the defendant's commission thereof.

Criminal Procedure Law § 100.15 sets forth the form and content of an Accusatory Instrument.

The Accusatory Instrument filed on August 28, 2024 does not meet the requirements of CPL § 100.15. The Information cites sections of statutes which are alleged to have been violated but does not provide allegations regarding specific dates that occurred on any date other than April 27, 2023, which is the date already adjudicated by Judge Kimmel. The recitation of "Facts" by the Complainant, Angel Oya, the Town's Code Enforcement Officer, states specifically that the date he witnessed the violation was April 27, 2023. In addition, simple recitation of broad sections of statutes does not provide the Defendant or the Court with sufficient specificity a precise description of the violations alleged to have occurred.

2

The motion to dismiss is therefore granted only for the reason that the Accusatory Instrument is deficient.

As Judge Kimmel recognized in her August 28, 2024 decision, the granting of Defendant's motion to dismiss does not remedy the situation of alleged ongoing violations of the Town Code, which the Town claims required remediation by the Defendant. This matter is therefore not dismissed with prejudice.

This matter had been calendared for November 19, 2024. However, because Defendant's motion to dismiss is granted the matter is ordered off the calendar and will not be heard on November 19, 2024.

Dated: Bedford Hills, New York
      November 11, 2024

Hon. David A. Menken
Bedford Town Justice

Enter:

_____    _____
    Court Clerk                   Date

3

A-141

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:06 PM

NYSCEF DOC. NO. 6

INDEX NO. 71446/2023

RECEIVED NYSCEF: 11/29/2023

Case 7:25-cv-02618-CS    Document 1-6    Filed 03/27/25    Page 1 of 3



Town of Bedford
Building and Code Enforcement
425 Cherry St. Bedford Hills, NY 10507
Phone: 914-666-8040  Email: buildinginsp@bedfordny.gov

Alberto Ciraco, Building Inspector
John Winter, Asst. Building Inspector
Angel Oya, Code Enforcement Officer

Donna M. Monaco, Sr. Office Assist.
Kim Kowalski, Sr. Office Assist.
Michael Repp, Deputy Fire Inspector

**NOTICE OF VIOLATION**: 4/27/2023          **ADDRESS**: 146 Goldens Bridge Rd

Hammer, Melanie
146 Goldens Bridge Rd
Katonah, NY 10536
SBL: 49.7-1-3 Zoned: R-A1

Dear Hammer, Melanie

I am writing this letter to notify you of the Code Violations observed at 49.7-1-3 on April 27, 2023 and remains in place. Description (facts) of code violations witnessed along with Code sections will be listed below. Please be advised that you will have thirty (30) days from the date on this letter to take the necessary steps to cure these Code Violations. Failure to do so will result in the issuance of an appearance ticket with each subsequent day after the 30 days constituting a new count for each Code Violation. Should you have any questions or concerns please feel free to contact the Building Department.

One (1) Count of Violating the Code of the Town of Bedford *Chapter 59. Fire Prevention and Building Code, Uniform § 59-8. Building permit required.*
Fact: Witnessed an apartment with new walls has being built without a Building permit.

Two (2) Counts of Violating the Code of the Town of Bedford - *Chapter 89: Plumbing*
Fact: Witnessed a working bathroom and kitchen has being installed without a plumbing permit.

Three (1) Count of Violating the Code of the Town of Bedford of Bedford - *Chapter 52: Electrical Inspections*
Fact: Witnessed electrical service supplying electric to the illegal apartment without an electrical permit.

Four (1) Count of Violating the Code of the Town of Bedford *Chapter 52: Electrical Inspections*
Fact Witnessed that electrical work has being perform without permit.

Five (1) Count of Violating the Code of the Town of Bedford *Chapter 52: Electrical Inspections*
Fact: Witnessed Electrical connections and use without a Certificate of Compliance.

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:06 PM
NYSCEF DOC. NO. 6

INDEX NO. 71446/2023

RECEIVED NYSCEF: 11/29/2023

Case 7:25-cv-02618-CS     Document 1-6     Filed 03/27/25     Page 2 of 3



Town of Bedford
Building and Code Enforcement
425 Cherry St. Bedford Hills, NY 10507
Phone: 914-666-8040  Email: buildinginsp@bedfordny.gov

Alberto Ciraco, Building Inspector
John Winter, Asst. Building Inspector
Angel Oya, Code Enforcement Officer

Donna M. Monaco, Sr. Office Assist.
Kim Kowalski, Sr. Office Assist.
Michael Repp, Deputy Fire Inspector

**NOTICE OF VIOLATION:** 4/27/2023          **ADDRESS:** 146 Goldens Bridge Rd

Hammer, Melanie
146 Goldens Bridge Rd
Katonah, NY 10536
SBL: 49.7-1-3 Zoned:

Dear Hammer, Melanie
I am writing this letter to notify you of the Code Violations observed at 49.7-1-3 on April 19, 2023 and remains in place. Description (facts) of code violations witnessed along with Code sections will be listed below. Please be advised that you will have thirty (30) days from the date on this letter to take the necessary steps to cure these Code Violations. Failure to do so will result in the issuance of an appearance ticket with each subsequent day after the 30 days constituting a new count for each Code Violation. Should you have any questions or concerns please feel free to contact the Building Department.

**(1) Count of Violating the Code of the Town of Bedford Code**

*125-125(B) Building without a permit - 125-125 (B) No building or structure shall be erected, constructed, enlarged, altered, structurally altered, moved or excavation made therefor or work begun thereon until a building permit therefor has been issued by* ~need building permit~

Fact: 125-125 (B) No building or structure shall be erected, constructed, enlarged, altered, structurally altered, moved or excavation made therefor or work begun thereon until a building permit therefor has been issued by the Building Inspector.

Corrective Action Required: You must apply for building permit with the assistance of a New York State license professional.

Angel Oya
Code Enforcement Officer

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:06 PM INDEX NO. 71446/2023

NYSCEF DOC. NO. 6 RECEIVED NYSCEF: 11/29/2023

Case 7:25-cv-02618-CS    Document 1-6    Filed 03/27/25    Page 3 of 3

**Six (2) Counts of Violating the.** *International Fire Code Section 915.1. Carbon Monoxide detectors required.*
**Fact: Witnessed that the Carbon monoxide/ smoke detectors units were missing.**

**Seven (1) Counts of Violating the Code of the Town of Bedford.** *Chapter 125-12 Lots.*
**Fact: Witnessed the use of a Barn as rental not meeting the Town Code.**

Every building hereafter erected shall be located on a lot, as herein defined. There shall be not more than one main building and its accessory buildings on each minimum size lot, except for nonresidential buildings in districts where such uses are permitted. On one undivided parcel of land in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted; provided, however, that, in each such instance, all main and accessory buildings must conform to all lot requirements established hereunder the same as if such buildings were placed on two separate and independent parcels of land.

*and grandfathered in  125-11(4)*

**Corrective Action Required:** You shall either need to remove said apartment and all electrical & plumbing piping and devices or need to legalize said structures by completing & submitting a full Building permit application with 3-sets of drawings stamped and signed by a NYS registered design professional along with a survey showing compliance with all zoning table of dimensional requirements for a R zone district to the Building department for review. Once the permit is issued, a Westchester licensed electrician & plumber shall need to file their respective permit applications with the Building department under the Building permit number.

*All I need in an accessory apartment permit under 125-28 (14)*

Angel Oya
Code Enforcement Officer

A-144

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:06 PM
NYSCEF DOC. NO. 7

INDEX NO. 71446/2023
RECEIVED NYSCEF: 11/29/2023

Case 7:25-cv-02618-CS    Document 1-7    Filed 03/27/25    Page 1 of 1



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
Melanie Hammer,

                       Docket No.: 25-CV-02618(CS)

            Plaintiff,                     **DECLARATION OF**
                                           **GERALD S. SMITH**

      -against-

Town Of Bedford New York, Department of Building
Bedford new York, Zoning Board of Appeals Bedford
New York, Building Inspector Town of Bedford New
York (Albert Ciraco), Attorney for the Town of Bedford
York (Eric Gordon, Esq. & Robert Zitt, Esq.)

                Defendants.
-------------------------------------------------------------------X

      **GERALD S. SMITH, ESQ.,** an attorney duly admitted to practice law in the United States District Court for the Southern District of New York, hereby deposes and says subject to the penalties of perjury:

    1.     I am a member of the law firm of Silverman & Associates, attorneys for the Defendants, TOWN OF BEDFORD, BEDFORD DEPARTMENT OF BUILDINGS, BEDFORD ZONING BOARD OF APPEALS, ALBERTO CIRACO, ERIC GORDON, ESQ. AND ROBERT ZITT, ESQ. I am fully familiar with the facts and circumstances of this matter based on my review of the file maintained by my office in defense of this litigation.

    2.     This Declaration is submitted in support of the Defendants' Motion To Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking a dismissal, with prejudice, of the Plaintiff's claims against Defendants, and for such other and further relief as this Court deems just and proper.

    3.     As is more fully discussed in the Defendants' Memorandum of Law, the

Plaintiff's claims against Defendants must be dismissed as the Plaintiff has failed to plead facts sufficient to state causes of action.

4.      In support of Defendants' Motion, annexed hereto are the following:

A.      A copy of the Plaintiffs' Amended Complaint in this matter;

B.      A copy of the Decision issued by Justice Fufido dated February 9, 2024 dismissing Plaintiff's Article 78 Petition;

C.      A copy of an Order dated August 28, 2024 dismissing an accusatory information filed against Plaintiff;

D.      A copy of an Order dated November 12, 2024 dismissing an accusatory information filed against Plaintiff;

Dated: White Plains, New York
      July 11, 2025

Respectfully submitted,

**SILVERMAN & ASSOCIATES**

By: _____

Gerald S. Smith
*Attorneys for Defendants*
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
(914) 574-4510
gsmith@silvermanandassociatesny.com

for the Southern District of New York

_____

MELANIE HAMMER
   Plaintiff(s)/Petitioner(s)
               v.

Town of Bedford New York,
Department of Building Bedford New York,
Zoning Board of Appeals Bedford New York,
Building Inspector Town of Bedford New York,
(Albert Ciraco),
Attorney for The Town of Bedford New York
(Eric Gordon, Esq. and Robert Zitt, Esq.),

_____

Case No.25CV2618
FIRST  AMENDED
COMPLAINT FOR A
VIOLATION OF CIVIL RIGHTS
Request for a Jury Trial

PARTIES:

**Plaintiff:**

Melanie Hammer, Esq. pro se)
146 Goldens Bridge rd
Katonah, NY 10536
Melanie@hammeresq.com
718-757-7677


**Defendants:**

1. Town of Bedford New York hereafter "Town"
321 Bedford Rd.
Bedford Hills, NY 10507
914-666-453
OFFICIAL CAPACIT

2. Department of Buildings Bedford New York hereafter "DOB"
425 Cherry Street
Bedford Hills, NY 10507
914-666-8040
OFFICIAL CAPACITY

3. Zoning Board of Appeals Bedford New York, hereafter "ZBA"
425 Cherry Street
Bedford Hills, NY 10507
914-666-8040
OFFICIAL CAPACITY

4. Building Inspector Town of Bedford
Alberto Ciraco
425 Cherry Street
Bedford Hills, NY 10507
PERSONALLY AND OFFICAL CAPACITY

A-148

5. Attorney for the Town of Beford NY
Eric Gordon, Esq, & Robert Zitt, Esq.
445 Hamilton Ave #1500
White Plains NY 10601
PERSONALLY AND OFFICAL CAPACITY


6. Attorney for the Town of Beford NY
Robert Zitt, Esq.
445 Hamilton Ave #1500
White Plains NY 10601
PERSONALLY AND OFFICAL CAPACITY

Known collectively as "Defendants Known collectively as "Defendants

2

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), as this is a civil rights action brought under 42 U.S.C. § 1983 for violations of the United States Constitution.

2. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) because the events or omissions giving rise to these claims occurred in Westchester County, New York, which lies within this District.

3. Defendants are state and local government officials and entities who acted under color of state law and within the jurisdictional boundaries of this Court. **The U.S. Supreme Court held that local governments (municipalities) can be sued directly under 42 U.S.C. § 1983 when the alleged constitutional violation was caused by an official policy, custom, or practice of the municipality. <u>Monell v. Department of Social Services</u>**, 436 U.S. 658 (1978). IN the instant case the policy is published and there was an official resolution by the Town Board on this matter, described further below.

## UNCONTESTED FACTS

4. The subject property is 11.69 acres, located in Bedford, New York.

5. The property is zoned Residential One Acre ("R1A"), which, by definition, permits one residential structure per acre or "minimum lot size." This zoning designation is uncontested.

**6.** There have never been any community complaints regarding the safety of a nuisance involving the subject property.

7. The Town has never alleged a dangerous condition or community interest denying permits for this location.

8. The property contains three structures: a. A pre-existing, legal, non-conforming cottage (not at issue), b. A main residence, c. A detached garage/barn on its own acre, which is the subject of this dispute.

9. The garage/barn has a valid Certificate of Occupancy for a recreation room on its second floor and is on file since at least the year **2000 on the official property map filed with the Department of Buildings as a "residence structure".**

10.  **The apartment has an electrical permit on file with the Building Department.**

11.  **Water was pre-existing in the apartment, and it is legal to have water in the apartment.**

12. At some point, the recreation room was converted into an Accessory Dwelling Unit ("ADU") through the remodeling of a kitchen and bathroom.

13. There is no evidence in the record indicating proof that this remodel was made by the Plaintiff.

14. The Plaintiff retroactive remodeling permits were denied by "implication" to 125-79-1A COTTAGES, ECF doc 1-1 video link.

15.  Bedford Town Code 125-12 LOTS is not a valid basis to deny the permits at issue.

16. Bedford Town Code 125-12 LOTS charges were brought twice in Justice court and dismissed.

17. Town Attorney Eric Gordon admitted on video ECF 1-1 that he knew that 125-12 would be dismissed on 11/2/2023 *before* the two subsequent summonses were prosecuted by the town in justice court.  **These charges were therefore as a matter of law, brought without probable cause.**

## PROCEDURAL HISTORY

18. On April 27, 2023, a Notice of Violation (ECF Doc. 1-6) was issued to Plaintiff by a Building Inspector employed by the Town of Bedford Building Department.

19. The Notice was issued in response to a complaint made by Plaintiff's former tenants, Jeanine Scarpino and her husband, Brent Hampson, who are politically connected individuals.

20. Ms. Scarpino is the daughter of the Honorable Anthony Scarpino Jr., a former Westchester Supreme Court Justice and Westchester County District Attorney (circa 2009–2016). Mr. Hampson contacted the Bedford Building Department to complain about the cost of his own electric heating bill, which was monitored through a separate legal NYSEG electric meter.

21. In response to this tenant complaint, the Building Department dispatched an inspector to Plaintiff's property.

22. On April 27, 2023, a Notice of Violation was issued alleging, *inter alia,* that Plaintiff had remodeled a bathroom without obtaining a permit.

23. Plaintiff promptly attempted to comply with the Town's directives by seeking retroactive construction permits.

5

24. In good faith, Plaintiff submitted applications for retroactive permits on June 1, July 6, and September 27, 2023, including the required architectural drawings. (See Exhibits K, L, and O; ECF Docs. 1-14 & 1-15.)

25. On June 1, 2023, Building Inspector Albert Ciraco **orally** denied the application, **refusing to issue a written denial**. He cited **Bedford Town Code § 125-12 (LOTS)**, the provision originally referenced in the Notice of Violation.

26. Because **no written** denial was provided, **Plaintiff could not appeal to the Zoning Board of Appeals.** Plaintiff refiled the application with the Zoning Board on July 6, 2023, with no response.

27. On September 7, 2023, having still received **no written denial**, Plaintiff submitted a **third application** for the same retroactive permits.

28. On **September 22, 2023, the Building Department finally issued a written denial**. This time, however, the denial was based on **Bedford Town Code § 125-79.1A (COTTAGES)**—a provision **not cited in the original Notice of Violation**, which had charged a violation under § 125-12 (LOTS). (See ECF Doc. 1-6.)

29. The Building Department's shift in rationale effectively concedes that **§ 125-12 did not provide a lawful basis** for the earlier permit denial.

30. The **written permit denial** dated September 22, 2023, stated that the **"garage apartment" on Plaintiff's property was considered a "cottage."** ECF doc. 1-2.

31. The denial further stated that "cottages" are not permitted in "Residential One-Acre Zoning Districts" (R1A). ECF doc. 1-2.

32. The denial was expressly based on Bedford Town Code § 125-79.1A. ECF doc. 1-2.

6

33. However, **§ 125-79.1A applies only to Residential Two-Acre (R2A) and Residential Four-Acre (R4A)** zoning districts. It makes no mention of R1A zones and is facially **inapplicable to Plaintiff's property**. Further this denial is an de facto re-zoning making plaintiff's R1A useless and effectively re-zoning her to be a R12A. Meaning rather than having approximately 11 developable lots on. Her 11.69 the permit denial makes it impossible for her to have more than one dwelling and a grandfathered cottage. The neighboring properties are one acre lots and abutted by an actual subdivision.

34. The denial also directed Plaintiff to apply for a "use variance," which is appropriate only when seeking to change the use of a property (e.g., from residential to commercial). Plaintiff was not seeking any such change in use, but rather a retroactive construction permit for a residential bathroom remodel. The Town's reference to a "use variance" appears either to be an error or **a deliberate attempt to impose a higher and inappropriate standard to block Plaintiff's appeal** of the admittedly unlawful violation originally based on § 125-12. ECF doc. 1-2.

35. On November 2, 2023, (five months later) the Zoning Board finally agreed to hear the appeal.

36. **At the November 2, 2023, ZBA meeting there was a completed hearing and the board voted**

    a. **to uphold the building inspector's interpretation of BTC 125-79-1A as applying an R2A and R4A code to R1A zoning districts by "implication" and**

7

    b.  **affirmed the interpretation that the "apartment" was a "cottage".** ECF doc. 1-2.

37. At this meeting the **Building Inspector Albert Ciraco appeared on behalf of the Department of Buildings, Eric Gordon appeared as Town Counsel on behalf of the Town of Bedford New York and The Zoning Board** appeared on behalf of themselves.

38. During the **November 2, 2023, hearing, ZBA members Meredith Black and Town Attorney Eric Gordon admitted—on video—that although there was no specific code violation, they were denying the permit "by implication"** based on the classifying of the "apartment" as a "cottage." To make this implication (See ECF Doc. 1-1, video of 11/2/2023 meeting.) and **by applying the R2A and R4A code** section to the **R1A property.**

39. On 11/30/2023, The Plaintiff filed an article 78 proceeding seeking review of the Zoning Board of Appeals decision which upheld the Building Inspectors interpretation of BTC 125-79-1A as a valid basis for permit denial.

40. As this Honorable Court is aware, **Article 78 proceeding are extremely narrow and limited to reviewing only the issue of whether the ZBA acted arbitrarily and capriciously in upholding the building inspector's interpretation of 126-79-1A** on **11/2/2023** and whether the **procedure violated due process**. The case before this court is broader and the 11/2/2023 decision is merely on**e overt act in furtherance of a concerted policy** to deprive the plaintiff of her constitutionally protected property rights, this civil right action has never been reviewed.

8

41. On 11/30/2023 said an article 78 Petition was assigned to the Honorable Maurice Williams under Order of the Honorable Anne E. Minihan see index number 71446/2023 NYSCEEF doc 18.  ECF DOC 39-4

42. On 11/30/2023 the **Hon. Judge Maurice Williams filed a Judicial recusal based on a professional relationship with staff and Keane & Beane** Named defendants ECF DOC 39-5.

43. On 12/7/2023 this case was reassigned to the Honorable Robert J. Prisco.

44.  On the same date, **Hon. Robert J. Prisco filed a second recusal <u>(filed before his assignment)</u>** on this case **for conflict**. He was conflicted out because he was presiding over a trial where an associate at the Keane & Beane was being tried for (I believe) Conspiracy to Murder before his Honor. S ECF DOC 39-6.[1]

45. Also on December 7, 2023, the case was assigned to **the Hon. Judge Fufidio** ECF doc. 39-7[2]**.**

46. <u>AFTER</u> THE FILING OF THE ARTICLE 78 AND <u>EVEN AFTER</u> THE TWO JUDICAL RECUSALS AND FINAL ASSIGNMENT OF THE THIRD JUDGE FIFIDIO AT 8PM ON December 7, 2023, *seven days after Plaintiff filed the Article 78 Petition,* the Defendant Zoning Board of Appeals (ZBA) **HELD A SECOND HEARING AT WHICH PLAINTIFF WAS NOT PERMITTED TO PARTICIPATE OR BE HEARD.** (See ECF Doc. 1-16.) Plaintiff was deliberately

---

[1] The underlying assumption in this recusal is that since Keane & Beane is only a 27-member law firm, even though the named parties in this case are not part of the criminal trial, that the intimate size of the firm would give the appearance of impropriety.

[2] **The Hon. Judge Fufidio notably stepped aside for his fellow Honorable Judge (Anthony Scarpino Jr./potential witness and father of witnesses) at the Westchester Supreme Court to run on the Democratic Ticket for District Attorney. Honorable Anthony Scarpino Jr.'s daughter was the catalyst for this case.**

9

excluded from this proceeding in an email from Town Attorney Eric Gordon. (See ECF Doc. 1-18.)

47. **At this second hearing EX PARTE HEARING**, the ZBA, the Building Inspector for the Town of Bedford, and Town Attorney Robert Zitt (appearing on behalf of the Town) attempted to **retroactively *change the stated reason for the permit denial previously* issued on *after the fully voted rendered decision was complete on November 2, 2023***.  The issue was not re-opened, and **plaintiff was not given opportunity to respond**.

48. **This new and changed basis for the permit denial** exceeded the scope of the ZBA's purview as an appellate review board not a court of first impression.

49. This conduct evidences the **Defendants' awareness that the original November 2, 2023, vote was arbitrary and capricious**, thereby validating the basis of Plaintiff's Article 78 Petition.

50. Given the **timing** and nature of this second hearing, it is apparent that it had **been held in anticipation of the *previously* filed article 78 litigation**. Plaintiff submits that this constitutes an **implicit admission of wrongdoing** and a further violation of Plaintiff's due process rights.

51. During this second, ex parte meeting, held after the official ZBA vote, Defendants, including the ZBA, the Building Inspector, and Town Attorney Robert Zitt, **acted in concert to revise the rationale for the permit denial. This unauthorized post-hoc justification demonstrates a coordinated policy or practice by the Town of Bedford and the named Defendants, further evidencing municipal liability.**

52. On December 8, 2023, the Town of Bedford, through Town Counsel, the ZBA, and the Building Inspector, **jointly filed this revised resolution or *policy* with the Town Clerk of Bedford. (See Attachment 2 to this document in ECF doc. 39-2.)**

53. This filing was made **32 days after the ZBA vote**—well beyond the five-business-day **deadline mandated by New York State Town Law § 267-a (5).**

54. The delayed filing served to **frustrate Plaintiff's ability to properly pursue the Article 78 proceeding**, which requires the timely filed ZBA decision to be included as Attachment 1 under statutory procedure. It is like having a trial verdict and then waiting until the defendant is out of the room and rehearing the case to change the verdict from innocent to guilty.

55. The Defendant's attached the second ex parte hearing resolution to their motion and disregarding the Plaintiff appeal of the 11/2/2023 hearing and disingenuously referring to the intentionally altered ex parte decision of 12/7/2023.

56. On February **9, 2025, following multiple adjournments requested by the Town and other delays, the court issued an unusually harsh and facially biased decision after refusing to hear evidence, take testimony and refusing to make rulings on the record.**

57. That **February 9, 2025, decision explicitly relied, in part, on the December 7, 2023, hearing**, in error. Again, this hearing could not have been the basis of the appeal that had been filed eight days before the hearing.

58. Had the court reviewed the evidentiary record, including administrative orders of his administrative judge and recusals from his fellow judges, that predated the second

hearing, **the court could not have fairly or lawfully relied on the December 7, 2023, hearing in adjudicating the matter.**

59. As the court is aware, Article 78 review is strictly limited in scope to evaluating whether the administrative agency acted arbitrarily and capriciously *based on the record before it* **at the time of its decision**. **The reviewing court is not permitted to rely on post-decision justifications** or substitute its own reasoning to uphold an agency's action.

60. Accordingly, the second hearing held on December 7, 2023—which was neither part of the original record nor the basis of Plaintiff's Petition—could not lawfully serve as a basis for the Article 78 court's decision or play any role therein.

61. On March 18, 2024, Plaintiff filed a notice of appeal with the Appellate Division, Second Department, in connection with the appeal of the February 9, 2024, decision, under Docket No. 2024-02143.

62. The defendant's received notice that my appellate **brief** was filed via NYSCEF on 4/23/2024. See EFC doc.39-9.

63. On May 6, 2024, Robert Gordon Issued a Summons for Justice Court in retaliation for the Appeal filed approximately two weeks earlier.

64. On May 9, 2024, Plaintiff also received a request for a 50H hearing (indicating that the defendants had been previously aware of the Notice of Claim naming Eric Gordon Personally in the 42 USC 1983 action.

65. On May 31, 2024, Town Attorney Robert Zitt filed a request for an extension of time to file a responsive brief in the Appellate Division, Second Department, under Docket No. 2024-02143 (NYSCEF Doc. 10).

12

66. On June 11, 2024, Plaintiff filed an opposition to the extension request, citing personal hardship.

67. That same day, June 11, 2024, Eric Gordon, Attorney for the Town of Bedford, filed a summons in Bedford Justice Court, formally charging and arraignment the Plaintiff with the six alleged violations originally cited in the Notice of Violation.

68. On July 30, 2024, Plaintiff file a grievance against Robert Zitt and Eric Gordon with the Appellate Division 9th Department.

69. On August 21, 2024, Town Attorney Eric Gordon finally filed the Town's responsive appellate brief in the Second Department under Docket No. 2024-02143.

70. On August 29, 2024, the Justice Court summons was dismissed by the Honorable Judge Jodi Kimmel for facial insufficiency and failure to proceed within the required speedy trial period under CPL 30.30.

71. On September 9, 2024, Plaintiff filed another Notice of Claim on the Secretary of State adding additional violations Eric Gordon and other defendants, including this dismissed malicious prosecution. See proof of service of notice of claim 9/9/2024 ECF doc 1-20

72. **In response to the Plaintiff's Notice of Claim, on September 17, 2024, and despite full knowledge that the original charges had been dismissed on both speedy trial and evidentiary grounds, Town Attorney Robert Zitt, acting on behalf of the Town of Bedford and replacing Eric Gordon[3], <u>reinitiated prosecution by refiling</u>**

---

[3] Who was obviously aware that a grievance filed 7/30/2024 for bringing the first prosecution after being personally named in the Notice of Claim and therefore was replaced by his colleague Robert Zitt who was not yet named in the Notice of Claim.

**the same charges in a second summons in Bedford Justice Court, based on the original Building Department violations.**

73. On October 1, 2024**, the Town of Bedford held a public vote (without notice to the plaintiff) and passed a formal resolution to pursue litigation against the Plaintiff—despite the anticipated dismissal of the second prosecution**. The language of the resolution acknowledged the likely failure of the criminal charges ("even if successful"), evidencing that the resolution itself constitutes an express and official municipal policy. (See resolution ECF 39-2.) Rember they are resolving to sue me over a bathroom remodel following a dismissal of the charges in Justice court.

74. **On November 12, 2024**, the second prosecution was also dismissed, this time by the Honorable Judge Menken, for facial insufficiency. It had been refiled after a finding that the CPL 30.30 speedy trial period had already expired prior to the first dismissal on August 29, 2024, and because they were still unable to put forth prima facie showing of evidence.

75. On November 12, 2024, Robert Zitt Attorney for the Town of Bedford New York filed a notice of appeal from the second malicious prosecution.[4]

76. On December 10, 2024, Plaintiff filed a third Notice of Claim against the above-named defendants. The claim included:

    1. A course of malicious conduct,

    2. Two unlawful prosecutions and Brady violation, and

---

The second prosecution was malicious as a matter of law because it was brought in direct violation of **CPL § 40.20**, after the expiration of the **CPL § 30.30** speedy trial period (as previously determined by judicial ruling), and without probable cause. This lack of probable cause is evidenced by (i) a video-recorded admission by Town Attorney Eric Gordon and (ii) a prior judicial determination that the Town had failed to state a prima facie case.

3. the Town's express resolution to pursue retaliatory litigation without any evidentiary basis, as conclusively demonstrated by two Justice Court dismissals.

77. On January 21, 2025, the Appellate Division, Second Department, finally heard oral argument in the appellate matter that had been filed nearly a year earlier. Docket No. 2024-02143 remains pending, having been fully briefed and argued. The case is to be decided de novo so that the court can review the correct hearing dated 11/2/2024 and not the fake cover-up meeting disingenuously provided by the defendants to the court in the underlying article 78.

78. On March 27, 2025, Plaintiff filed the federal complaint with the Pro Se Department of the United States District Court for the Southern District **Manhattan Division** of New York, located at 500 Pearl Street, New York, NY.

79. On April 1, 2025, the case was initially assigned to Chief Judge Laura Taylor Swain, as indicated in the Notice of Case Assignment. ECF Docket Report no.4

80. That same day, April 1, 2025, the case was reassigned **sua sponte**, as reflected in the ECF Docket Report No. 4, dated April 1, 2025.

81. On April 3 and April 4, 2025, Plaintiff filed and served the Summons and Complaint on each of the above-named Defendants after obtaining a conformed copy of the complaint in person at the Manhattan Division of the SDNY, located at 500 Pearl Street, New York, NY.

82. On April 3, 2025, the case was reassigned to the Honorable Judge Cathy Seibel located in **White Plains Division** United States District Court Southern District of New York 300 Quarropas Street White Plains, NY 10601. To the date of this writing

15

the defendants have not filed any responsive pleadings.  Plaintiff is filing amended complaint after pre-motion conference dated 5/30/2025. **Plaintiff incorporates all exhibits filed as exhibits to the first complaint to the complaint herein**.

## MUNICIPAL LIABILITY UNDER *MONELL* v. DEPARTMENT OF SOCIAL SERVICES, 436 U.S. 658 (1978)

83. All of the defendants named in the caption engaged in a coordinated and sustained course of conduct intended to deprive Plaintiff of her lawful property and zoning rights, specifically the right to rent an accessory dwelling unit (ADU) on her 11.69-acre R1A-zoned property, as permitted under §125-12 and related provisions of the Bedford Town Code. This course of conduct reflects the existence of a municipal policy or custom within the meaning of *Monell*.

84. This action arises from a continuing and unlawful pattern of official conduct directed at the Plaintiff by Town officials, undertaken under color of law and driven by improper political motives, which has denied Plaintiff the use and enjoyment of her property and violated her constitutional rights under the First, Fifth, and Fourteenth Amendments.

85. **The coordinated acts described herein began on or about April 27, 2023, and continue to the present. These actions are not isolated but reflect a consistent pattern sufficient to establish an official policy, custom, or practice attributable to the Town of Bedford under *Monell*, 436 U.S. at 690–91. Especially because the Defendants actually filed resolutions on the matter ECF Doc. 39-2**

16

86. Under *Monell*, municipal liability may arise under 42 U.S.C. § 1983 when a constitutional violation is caused by (1) an officially adopted policy, (2) a persistent and widespread practice of municipal officials, or (3) a decision by a municipal policymaker. Liability may also arise where a municipality ratifies the unconstitutional conduct of its employees.

87. **In this case, multiple formal actions—including resolutions adopted by the Town Board—constitute express policy decisions that directly caused or contributed to the constitutional violations at issue. Additional informal customs and practices are evidenced by the coordinated actions of Town officials, as detailed below.**

88. The unlawful and retaliatory conduct intensified following Plaintiff's service of a Notice of Claim and filing of the Appeal. Since that time, procedural misconduct in the Bedford Justice Court, including *Brady* violations and the refusal to disclose redacted witness information, supports the inference that Town officials acted with knowledge of and deliberate indifference to Plaintiff's constitutional rights.

89. **Shortly after receiving the notice of Plaintiffs intent to file a civil rights action the defendant Town Counsel (named personally) initiated two prosecutions against the Plaintiff in town Justice Court. Also, after learning of the impending civil rights case, the Bedford Town Board passed a formal resolution on or about October 1, 2024, authorizing civil litigation against Plaintiff. This resolution was introduced by the Town Attorney and based on a Notice of Violation originally issued by the Building Inspector.**

90. The resolution expressly acknowledges the Town's continued efforts in a stated and written policy to prosecute Plaintiff, stating in relevant part:

"WHEREAS, the Town **has been attempting to prosecute violatio**ns against Mr. Hammer in the Town Justice Court regarding the illegal apartment. However, **even if ultimately successful** with respect to these violations, the Town Justice Court would not have the ability to issue injunctive relief to require the removal of the illegal residential apartment…" ECF 39-2

89. This resolution is direct evidence of an official policy to bypass the statutory enforcement scheme established by New York State for building and zoning infractions. Instead of pursuing lawful remedies—limited fines or, in some cases, brief incarceration—the Town sought extraordinary injunctive relief without the requisite legal basis or evidence of harm.

90. Under New York law, zoning and building violations are penalized by fines and, where applicable, short-term incarceration (up to 15 days per violation). These are the exclusive remedies unless an ongoing public nuisance or danger is shown—none of which has been alleged here. These remedies are sufficient, in that, continued violations cause increased fines and periods of potential incarceration.

91. **Despite alleging six separate violations, the Town has produced no evidence— either before the Justice Court or elsewhere—sufficient to establish even a** *prima facie* **case.**

92. **Two successive prosecutions were dismissed for failure to state a valid claim and for violations of CPL § 30.30 (speedy trial), further reinforcing the retaliatory nature of the enforcement.**

93. At no point have Defendants identified any safety concern, community complaint, or actual zoning infraction. The absence of such evidence further supports the inference that this enforcement campaign was politically and personally motivated.

18

A-165

94. **Taken together, the retaliatory course of conduct by all the named defendants when taken together, and especially in light of, passing the resolutions and undertaking to prosecute the defendant twice in Justice Court for the same offense—especially after Plaintiff lawfully exercised her rights by filing her appeal on or around 4/23/2024 (ECF doc 39-9), establishes a de facto and express municipal policy. This policy was aimed at suppressing Plaintiff's property rights and retaliating against her through improper legal means.**

95. Accordingly, the Town of Bedford and its officials are liable under *Monell* and 42 U.S.C. § 1983 for engaging in an official policy and practice of retaliation, selective enforcement, and abuse of process in violation of Plaintiff's constitutional rights.

### COMPLIANCE WITH NEW YORK'S GENERAL MUNICIPAL LAW

96. On or around February 16, 2024, Plaintiff served notice of her intent to bring a civil rights action. On September 9, 2024, the Town of Bedford, along with Robert Eric Gordon, Esq., were served with an official Notice of Claim at the Secretary of State's Office in Albany, NY.

97. On the same date, Eric Gordon, Esq. was also served at Keane & Beane, PC, 445 Hamilton Ave., White Plains, NY.

98. Also on September 9, 2024, Albert Ciraco and the Building Department were served at the Building Department, 325 Cherry Street, Bedford Hills, NY.

99. On December 13, 2024, the Town of Bedford and Robert Zitt, Esq. were served with an additional Notice of Claim at the Secretary of State's Office in Albany, NY on 12/10/2024.

100. On the same date, Robert Zitt, Esq. was personally served at Keane & Beane, PC.

19

**RELEVANT LOCAL CODES AND LAW**

101.    **Bedford Town Code §125-12 – Lots:** "Every *building hereafter erected* shall be located on a lot, as herein defined. There shall be not more than one main building and its accessory buildings *on each minimum size lot*, except for nonresidential buildings in districts where such uses are permitted. *On one undivided parcel of land* in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted; provided, however, that, in each such instance, all main and accessory buildings must conform to all lot requirements established hereunder the same as if such buildings were placed on two separate and independent parcels of land." **(This is the "phantom subdivision" section on which the town relies and allows homeowners to *theoretically* divide undivided parcels of land *based on the number of possible lots* given their zoning district.  Here theoretically 11 minimum lots on the 11.69 land zoned R1A).** This is done in the usual course of business in this town for newly erected structure, here it is being used unlawfully as a basis for permit denial.

102.    **Bedford Town Code §125-79A – Accessory Apartments:** "*It is the intention of this section to permit the creation*, subject to the standards listed below, **of accessory apartments in the Town for the purposes of maintaining a supply of small rental** or owner-occupied housing units designed to meet the needs of persons, both young and old, of moderate income and to permit the efficient use of the Town's housing

stock by providing economic support for owners of larger structures and incentives for maintenance of these structures."

103. **Bedford Town Code §125-79.1A – Cottages in R2A and R4A Zones:** "In the **R-2A and R-4A** Districts, the Planning Board *may grant* a special permit to create a cottage in an existing accessory building..."

104. **New York State Town Law §267-a (5): (a)** "Each order, requirement, decision, interpretation or determination of the administrative official charged with the enforcement of the zoning local law or ordinance *shall be filed in the office of such administrative official, within five business days* from the day it is rendered and shall be a public record."

105. **(b)** "*An appeal shall be taken within sixty days after the filing of any order*, requirement, decision, interpretation or determination of the administrative official, by filing with such administrative official and with the board of appeals a notice of appeal, specifying the grounds thereof and the relief sought."

**JOINT AND CONCERTED ACTION LIABILITY UNDER 42 U.S.C. § 1983**

106. Plaintiff alleges that each of the defendants named herein engaged—either directly or indirectly, individually or in concert—in a deliberate and coordinated course of conduct under color of state law designed to retaliate against, punish, and deprive Plaintiff of clearly established constitutional rights, including the right to due process, equal protection, and freedom from malicious prosecution and retaliatory

enforcement. This conduct arises from and relates to Plaintiff's lawful exercise of zoning rights and access to legal remedies, including the filing of an Article 78 petition, appeal, the filing of the notice of claim for the herein complaint and related protected activity.

107.   It is well established under federal law that:

108.   *"A defendant who does not personally violate a plaintiff's constitutional rights may still be held liable under § 1983 if he or she 'acted jointly with others in the planning or execution of a scheme to deprive a person of their constitutional rights.'* "See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Gordon v. County of Rockland*, 110 F.3d 886, 888 (2d Cir. 1997) [5]

109.   "A single act in furtherance of a broader unlawful agreement, pattern, or policy may give rise to liability for all participants, where that act was taken with knowledge of and in support of the overall objective." United States v. Cherry, 217 F.3d 811 (10th Cir. 2000)

110.   Here, the coordinated acts by Town officials—including the Building Inspector, Zoning Board of Appeals, and Town Attorneys Robert Zitt and Eric Gordon—reflect not isolated decisions, but a **deliberate policy, custom, and practice** of targeting Plaintiff through unlawful means, including:

111.   Fabricated or inferring code violations.

112.   Re-filing previously dismissed summonses.

---

[5] n Marshall v. Marshall, 523 F. Supp. 3d 802, *the court outlined the elements of a civil conspiracy under 42 USCS 1983, requiring proof that defendants acted jointly in concert, performed an overt act, and furthered a conspiracy that resulted in the deprivation of a constitutional right. The court emphasized that circumstantial evidence must reasonably infer a mutual understanding among the conspirators. The plaintiff alleged sufficient facts to establish a § 1983 violation, including claims that defendants conspired with a state officer to cause an unconstitutional eviction and deprivation of property*

22

113.    Withholding exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

114.    Conducting unlawful ex parte hearings and misinforming the court about the basis of the appeal.

115.    Retaliating for Plaintiff's filing of protected legal claims.

116.    Adopting formal municipal resolutions aimed at achieving illegal enforcement objectives outside statutory zoning remedies.

117.    Failing to provide relevant case law which completely undermined their case from an article authored by a member of their firm.

118.    This scheme persisted even after two Justice Court dismissals and included reassertion of the same unsubstantiated charges—acts which violated both **CPL §30.30 and §40.20**, and which were carried out with knowledge of their prior dismissal.

119.    Accordingly, all defendants are jointly and severally liable under 42 U.S.C. § 1983 for their roles—whether direct, supervisory, or contributory—in this coordinated plan. Even those who committed only a single act bear responsibility for the foreseeable constitutional harms caused by their participation in the larger scheme, in accordance with the standards set forth in *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), and its progeny.

## LEGAL BASES FOR RELIEF UNDER 42 U.S.C. § 1983

**COUNT ONE: DEPRIVATION OF PROPERTY RIGHTS UNDER 42 U.S.C. § 1983 (VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS**

**CLAUSE AND THE FIFTH AMENDMENT TAKINGS CLAUSE) (ILLEGAL <u>ISSUANCE OF NOTICE</u> OF VIOLATION UNDER BEDFORD TOWN CODE § 125-12) AS THE FIRST OVERT ACT IN FURTHERANCE.**

120.    The defendants (Albert Ciraco, Building Inspector for The Town of Bedford, New York, acting on behalf of the Department of Building, and for The Town of Bedford New York) acted in concert to unlawfully deprive the plaintiff of property rights secured by The Fourteenth and Fifth Amendments by **issuing a Notice of Violation in Contravention of Bedford Town Code §125-12 ("lots") on April 27, 2023.**

121.    As a matter of law, the apartment at issue does not violate this provision. This non-conclusory statement is supported by the fact that the Bedford Town Justice Court dismissed the related enforcement actions on two separate occasions, August 29, 2024, and November 12, 2024. This section explicitly does not apply to pre-existing structures. **This is statute was not the basis of the somewhat related limited article 78 review of a different code section.**

**Parties and Legal Basis**

122.    Plaintiff brings this cause of action under 42 U.S.C. § 1983 for deprivation of constitutionally protected property rights under the **Fourteenth Amendment** (due process) and the **Fifth Amendment** (Takings Clause), committed under color of state law.

123.    At all relevant times, Defendant **Albert Ciraco**, **Building Inspector for Building Department,** for the **Town of Bedford, New York**, acted in his official capacity and under color of law on behalf of the **Town's Department of Building and Town of**

24

**Bedford New York**, and *i*n concert with all the herein named defendants. in the first act in furtherance of the course of conduct described in the herein complain and following counts, which was **designed to deprive the Plaintiff of property right, free speech, due process and other constitution protections described herein**.

124.    Defendant Ciraco, acted in concert with other named Defendants, by unlawfully issuing a **Notice of Violation** on **April 27, 2023**, citing Plaintiff for an alleged zoning violation under **Bedford Town Code § 125-12,** *inter alia*. This action lacked both legal basis and factual foundation.

125.    **TIME:** On April 27, 2023, between the hours of 10:00 AM and 5:00 PM, at 146 Goldens Bridge Road, in the County of Westchester, New York, Albert Ciraco, Building Inspector for the Town of Bedford, New York, acting on behalf of the Department of Building for Bedford, Town of Bedford New York,  acted in concert with the other named defendants herein and engaged in the following conduct in **furtherance of the course of conduct described herein**, acting under color of law.

126.    **EVENTS:** Said Defendants acted in concert to issue an illegal notice of violation/summons. *Said notice of violation is without basis or probable cause as a matter of law, in that, said notice was twice* **dismissed in Bedford Justice Court on 8/24/2024 and 11/12/2024 for lack of evidentiary support/probable cause, The above-named defendants did not have enough evidence to draft a facially sufficient complaint even on second attempt.** Said defendants violated the Bedford Town Zoning Ordinance, Residential One Acre "R1A" Zoning District, Bedford Town Code §125-12 (Lots), See Count (7) of the Notice of Violation (EFC doc 1-6),

by issuing said notice of violation when Plaintiff was incompliance with these code sections.

127. (Note that the somewhat related article 78 proceeding in Westchester Supreme Court was limited to review in determining whether the of the Zoning Boards of Appeals acted arbitrarily and capriciously in **upholding the building inspector's interpretation of BTC 125-79-1a (as opposed to, here, issuing a summons under BTC 125-12)** as a basis for permit denial based on the 11/2/2024 hearing. **This code section is distinct as it applies to the *issuance* of the *notice of violation* in violations of law under *BTC 125-12* and that summons was illegal as a matter of law as determined by the Honorable Judge Kimmel and the Honorable Judge Minkin in the Bedford Justice Court on 8/24/2024 and 11/12/2024 respectively).**

128. **LAW:** Bedford Town Code §125-12 states: "Every building **hereafter erected** shall be located on a lot, as herein defined. There shall be no more than one main building and its accessory buildings on each *minimum size lot*, except for nonresidential buildings in districts where such uses are permitted. *On one undivided parcel* of land in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted." *(Emphasis added)*

129. **Defendants have not and cannot produce evidence that the structure in question is *newly erected*. In fact, it is uncontested that the structure in question is *pre-existing* and has been on file with the department of building for decades.**

130. **Contrary to the concerted acts by the Defendants' actions, Bedford Town Code §125-12 supports, rather than prohibits, the existence of the apartment at**

**issue**, as it is located on its own acre, (as proven and not a conclusory statement by exhibits) consistent with the minimum lot size requirement. See ECF DOC 1-7 EXHIBITS E and F[6], which show that the apartment is situated on a separate, legally recognized acre/lot. **Furthermore, §125-12 applies to new structures, specifically "hereafter erected" buildings**. It is uncontested that the structure in question is not new, but pre-existing, meaning this **Notice of Violation was legally invalid on its face. However, this proof is *unnecessary* since the violation has been dismissed *twice dismissed in justice court* as described above.**

131.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143 only through April 3, 2025); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

**COUNT TWO: VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS – <u>ARBITRARY DENIAL</u> OF BUILDING PERMIT IN VIOLATION OF R1A ZONING (42 U.S.C. § 1983 – AGAINST DEFENDANT ALBERT CIRACO, THE TOWN OF BEDFORD BUILDING DEPARTMENT, AND THE TOWN OF**

---

[6] ECF doc 1-7 shows the one-acre area for this pre-existing structure at issue. Note that this structure has been on file at least since 2000 with the Bedford Department of Buildings. Please also note that the structure is noted to be a "residential structure" on this map dated and stamped 2000. Meaning the permits for remodel were illegally denied.

27

**BEDFORD) AS THE SECOND ACT IN FURTHERANCE OF THE CONSTITUTIONAL VIOLATIONS HEREIN.**

132.   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

133.   On or about **June 1, 2023**, at 325 Cherry Street Bedford Ny in the County of Westchester New York, Plaintiff submitted a construction permit (ECF Doc 1-15) application for improvements on her 11.69-acre residential property located within a Residential One-Acre (R1A) zoning district in the Town of Bedford, New York.

134.   **Despite Plaintiff's undisputed zoning designation of R1A and her clear entitlement under Bedford Town Code, Defendant Albert Ciraco, acting under color of state law in his official capacity as Building Inspector for the Town of Bedford and on behalf of the Bedford Department of Buildings, unlawfully denied the permit.**

135.   The permit denial was not based on any legitimate zoning or safety concern, but instead on a misapplication of **Bedford Town Code §125-12, a section that governs subdivision standards for newly erected structures, not remodels and continued residential use on pre-existing structures**

136.   In doing so, Defendant Ciraco knowingly relied on an inapplicable and misinterpreted code provision to unlawfully deny Plaintiff the use of her property. **Defendant admitted, in the presence of a Deputy Building Inspector, that BTC §125-12 "was not the best choice" and that Plaintiff's property was in an R1A district.** Nevertheless, he denied the permit and refused to issue a written decision, demonstrating awareness that the denial lacked legal basis.

28

A-175

137.  **The refusal to issue a written denial further deprived Plaintiff of procedural due process by obstructing her ability to challenge the denial through lawful administrative or judicial means.**

138.  Defendants' actions were arbitrary and capricious, lacked any rational basis, and served no legitimate governmental interest, in violation of Plaintiff's substantive and procedural due process rights under the Fourteenth Amendment.

139.  This second step by defendant Ciraco in furtherance of the scheme to deny plaintiff her property rights, inter alia, when viewed with the totality of the actions by all of the defendants named herein shows practices, and policies of the Town of Bedford, and the actions taken by him, and the Building Department reflect a de facto municipal policy of denying permits for political or retaliatory reasons, or based on pretextual interpretations of the zoning code, in violation of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

140.  Plaintiff has suffered the following damages as a result of Defendants' unlawful actions: a. Payment of unnecessary and excessive permit application fees; b. Zoning Board of Appeals application fees. Loss of rental income in the amount of $2,400 per month for 22 months, totaling $52,800 to date; d. Time and labor expended in addressing and litigating the unlawful denial, valued at $550 per hour for approximately 230 hours, totaling $126,500 as of the April 3, filing of unamended complaint; e. Diminution in market value of Plaintiff's property estimated at $2,000,000, due to the effective and unlawful rezoning of the parcel from "R1A" to a more restrictive use akin to "R12A."

29

141. **This claim is distinct from the Article 78 proceeding referenced in Westchester Supreme Court Index No. 71446-2023 and Second Department Docket No. 2024-02143, which challenged a subsequent Zoning Board decision on different grounds. The claim asserted herein arises from the initial permit denial on June 1, 2023, based on an earlier misreading of BTC §125-12.**

142. **COUNT THREE: VIOLATION OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS — UNLAWFUL <u>REFUSAL TO ISSUE WRITTEN PERMIT DENIAL</u> TO OBSTRUCT TIMELY ZONING APPEAL (42 U.S.C. § 1983) THIRD OVERT ACT IN FURTHERANCE.**

143. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

144. On or about **June 1, 2023**, Defendant Albert Ciraco, acting in his official capacity as Building Inspector for the Town of Bedford, New York, and on behalf of the Department of Building and the Town of Bedford, unlawfully refused to issue a written denial of Plaintiff's construction permit applications.

145. This refusal occurred at the Bedford Department of Buildings, located at 425 Cherry Street, Bedford Hills, New York, during business hours between 9:00 AM and 5:00 PM, and was made under color of state law.

146. Defendant Ciraco denied the permits based on an erroneous interpretation of Bedford Town Code (BTC) §125-12, despite knowing that the property was lawfully zoned as R1A and that §125-12 ("LOTS") was inapplicable. Despite multiple requests, **Ciraco refused to provide the Plaintiff with a <u>written</u> denial**, thereby obstructing her ability to file a timely zoning appeal under applicable law.

147. **New York Town Law §267-a (5) requires that:**

> **"Each order, requirement, <u>decision, interpretation, or determination</u> of the <u>administrative official charged with the enforcement</u> of the zoning local law or ordinance <u>shall be filed in the office of such administrative official within five business</u> days from the day it is rendered and shall be a public record."**

148. Defendants' refusal to issue or file a written denial was unlawful, arbitrary, and made with deliberate indifference to Plaintiff's procedural due process rights under the Fifth and Fourteenth Amendments. Such conduct deprived Plaintiff of timely access to zoning appeal procedures, effectively foreclosing a statutorily guaranteed remedy**. And in this case causing a five-month delay to even get to the Zoning Appeal Board.**

149. This act was undertaken in furtherance of the broader course of retaliatory and obstructive conduct described herein, involving all named Defendants, and constituted part of a coordinated effort to deprive Plaintiff of constitutionally protected property rights.

150. Evidence of the Defendants' knowing violation of the law includes but is not limited to:

151. (a) Emails from Town officials confirming the refusal to issue a written denial (see ECF Doc 1, Exhibits I & J).

152. (b) Video evidence from the November 2, 2023, Zoning Board of Appeals meeting, during which Town Attorney Eric Gordon admitted that related charges would "likely be dismissed in Town Court" (see ECF Doc 1-1).

153. (c) The fact that the written denial was eventually date-stamped on September 22, 2023, approximately 5 months after the oral denial—clear evidence of intentional delay in violation of Town Law §267-a (5).

154.    As a direct and proximate result of Defendants' unconstitutional actions, Plaintiff suffered:

155.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

**COUNT FOUR: VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS — ARBITRARY AND UNLAWFUL DENIAL OF CONSTRUCTION PERMITS BASED ON A CODE SECTION INAPPLICABLE TO R1A ZONING (42 U.S.C. § 1983)**

156.    Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

157.    On or about **September 22, 2023**, **Defendants Albert Ciraco, in his capacity as Building Inspector for the Town of Bedford, the Department of Building, the Town of Bedford, and Town Attorney Eric Gordon**, both in his official and individual capacities, unlawfully denied Plaintiff's application for construction permits at her property located within a Residential One-Acre (R1A) zoning district, in another overt act in furtherance of the herein described scheme.

32

158. The denial occurred at the Bedford Department of Buildings, located at 425 Cherry Street, Bedford Hills, NY, within Westchester County, while Defendants were acting under color of law and within the scope of their official duties.

159. **The denial was based on an erroneous and inapplicable interpretation of Bedford Town Code § 125-79.1(A)—a provision that, on its face, applies only to properties within R2A and R4A zoning districts. Plaintiff's property is undisputedly located in an R1A district. This statutory language is explicit, and there is no legal basis for applying §125-79.1(A) to the Plaintiff's property.**

160. Despite the facial inapplicability of §125-79.1(A), Defendants asserted that the **permit denial was justified by "implication"** of the statute. However, municipal officials cannot "imply" zoning restrictions or fabricate violations where none exist. Such actions exceed their statutory authority and violate the Fifth and Fourteenth Amendments' guarantees of Due Process, and the Sixth Amendment's guarantee of notice of alleged legal violations.

161. **In issuing this denial, Defendants acted arbitrarily, capriciously, and with deliberate indifference to the Plaintiff's constitutional rights. They imposed a restriction that has no basis in the Town Code and constructed a pretextual denial to obstruct Plaintiff's legal right to develop her property consistent with R1A zoning.**

162. Defendants' knowledge of the statute's inapplicability is evidenced by their own admissions on video (see EXHIBIT H) and the language **of BTC §125-79.1(A) itself, which clearly limits its scope to R2A and R4A districts:**

163. *"**In the R-2A and R-4A Districts,** the Planning Board may grant a special permit to create a cottage in an existing accessory building…"*.

164. **This permit denial is distinct from and not precluded by the related Article 78 proceeding, which was limited in scope to reviewing administrative process and discretion, not constitutional claims or factual determinations.** The Article 78 court **did not conduct discovery, receive testimony, or address the facial legality of the Defendants' statutory interpretation. As such:**

165. (a) Issue preclusion does not apply because the administrative findings did not resolve constitutional questions.

166. (b) Plaintiff's constitutional claims were not and could not have been fully litigated in the Article 78 context.

167. (c) damages or redress are generally not available through an article 78 proceeding and not awards have been made here.

168. **Under well-settled federal law, federal courts retain jurisdiction over constitutional tort claims under 42 U.S.C. § 1983, even where there has been a parallel or prior Article 78 determination. See *Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000); *Patterson v. Coughlin*, 761 F.2d 886 (2d Cir. 1985).**

169. **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 &

Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and

(e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A." (e) Devaluation of the property by approximately $2,000,000 due to the improper denial of construction permits and the unlawful actions of the Defendants.

**COUNT FIVE: VIOLATION OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS — DELIBERATE DELAY IN INITIATING JUDICIAL PROCEEDINGS IN RETALIATION FOR PROTECTED CONDUCT** (42 U.S.C. § 1983)

170. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

171. Between approximately **April 27, 2023, and June 11, 2024**, **Defendant Eric Gordon**, the **Town Attorney for the Town of Bedford, New York**, acting under color of law and in coordination with **Albert Ciraco**, **the Department of Building**, and the **Town of Bedford**, **intentionally delayed** the filing of a summons related to a Notice of Violation in Bedford Town Justice Court. This prolonged delay—spanning over **fourteen (14) months**—deprived Plaintiff of her right to **timely judicial review** and constitutes a violation of her **procedural due process rights** under the **Fifth and Fourteenth Amendments** to the United States Constitution. IN fact, Plaintiff requested that the summons be served and consented to electronic service of the same prior to filing the article 78 or being granted the ZBA hearing to appeal the decision. **The defendants knew that the summons would be dismissed in Justice Court and therefore refused to issue the same to intentionally deny the Plaintiff the right to due process in the form of judicial review by the justice court.** The

35

summons was in fact dismissed on its face twice in summons court for lack of evidence, therefore, this delay factually caused the Plaintiff to suffer damages. Had this summons been issued promptly, there would have been no need for an appeal to the Zoning Board, since the apartment in question would no longer have a violation pending.

172.     Defendants did not file the criminal summons until **June 11, 2024**, despite having issued the Notice of Violation on or about **April 27, 2023**. This delay was not justified by law or administrative necessity. Rather, the decision to file was made only **after Plaintiff served a formal Notice of Claim**, in which **Eric Gordon was personally named** as a party, strongly suggesting a retaliatory motive for the sudden initiation of judicial action.

173.     Once filed, the criminal case was **dismissed twice by the Bedford Town Justice Court**, including on grounds that **BTC §125-12**—the statute used to justify the initial violation—**does not apply to Plaintiff's property** or to the conduct at issue. The same charges were re-filed on **September 17, 2024**, again improperly, before being dismissed again. The baseless and retaliatory nature of these proceedings, and the delayed judicial oversight, resulted in prolonged restrictions on Plaintiff's ability to rent her lawful residential unit.

174.     Defendants' **unjustified delay** in filing the summons caused tangible and serious harm to Plaintiff, including:

175.     **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property,

36

A-183

Case 7:25-cv-02618-CS Document 45-1 Filed 06/10/25 Page 37 of 79

calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

**COUNT SIX: VIOLATION OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS — ARBITRARY AND UNLAWFUL INTERPRETATION OF ZONING CODE BY ZONING BOARD OF APPEALS** (42 U.S.C. § 1983) ANOTHER OVERT ACT IN FURTHERANCE.

176.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

177.    On or about **November 2, 2023,** at approximately 8:00 PM, during a public hearing at 321 Bedford Road, Bedford Hills, NY**,** the **Zoning Board of Appeals of the Town of Bedford**, in coordination with **Eric Gordon** (Town Attorney), **Albert Ciraco** (Building Inspector), and the **Department of Building,** affirmed an unlawful interpretation of Bedford Town Code (BTC) §125-79.1A to deny Plaintiff's construction permit application. This interpretation was made not based on law, but on inference and implication, violating the Plaintiff's clearly established constitutional rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

178.    **The Defendants acted** arbitrarily and capriciously **by construing BTC §125-79.1A,** a provision that expressly applies only to R-2A and R-4A zones**, as a legal**

37

Case 7:25-cv-02618-CS Document 45 1 Filed 06/10/25 Page 38 of 79

**basis to deny Plaintiff's permit application for property located in a** Residential 1-Acre (R1A) zone**.** The denial was not supported by the text of the ordinance, any published interpretation, or lawful precedent. **Rather, the Board and its agents** fabricated a prohibition by negative inference**, ignoring the plain language of relevant and applicable code sections, including** BTC §§125-12 and 125-79.

179. Defendants, acting under color of state law, thereby **deprived Plaintiff of a protected property interest**—specifically, the right to obtain a construction permit **and use her property in accordance with the law—without any rational basis or lawful procedure**.

180. BTC §125-79 clearly articulates the legislative intent to encourage the development of accessory apartments to promote affordable housing and preserve the town's housing stock. It states, in relevant part:

> "**It is the intention of this section to permit the creation**, subject to the standards listed below, **of accessory apartments** in the Town for the purposes of maintaining a supply of small rental or owner-occupied housing units… and to permit the efficient use of the Town's housing stock…"

181. **Despite this express legislative policy and the inapplicability of BTC §125-79.1A to R1A districts, the Defendants** knowingly and willfully denied the Plaintiff's permits**, falsely asserting a violation by implication.** At the public meeting, video evidence (ECF doc 1-1/EXHIBIT H) captures the Defendants' admission that the denial was based not on any statute or enforceable regulation, but on a speculative inference. Such action constitutes **an abuse of power and is unconstitutional as a matter of law**.

182.    This denial, rendered in violation of Plaintiff's constitutional rights, resulted in tangible harm, including loss of lawful use of property**,** lost rental income**,** procedural delay**,** and irreparable reputational harm**,** for which Defendants are liable under **42 U.S.C. § 1983.**

183.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A." **Article 78 Petition - Does Not Preclude Federal Constitutional Review**

184.    It is important to note that the **Article 78 petition** filed by the Plaintiff does not preclude the **federal constitutional claims** presented here under **42 U.S.C. § 1983**. An **article 78** proceeding is **limited to a procedural review of agency decisions** and does not encompass a full examination of **constitutional violations**, particularly in cases involving **due process violations** under the **Fifth and Fourteenth Amendments**.

185.    The Article 78 review was restricted to the **propriety of the administrative action** and did not afford Plaintiff the opportunity to fully present or adjudicate the **broader constitutional issues** that are at the core of this case. As such, **federal**

39

A-186

**courts retain jurisdiction** to hear constitutional claims **regardless of the outcome of the Article 78 proceeding**. These federal claims involve **broader questions of constitutional law**—specifically the **due process rights of the Plaintiff**, the **arbitrary denial of property rights**, and the **unconstitutional interpretation of zoning laws**—issues that were not and could not have been fully addressed in the **Article 78 petition**.

186.   Furthermore, the **Article 78 proceeding** did not provide Plaintiff with a **full and fair opportunity to be heard**, as there was **no testimony**, **no hearing**, and **no discovery**. These **constitutional claims** involve **fundamental rights** that were not fully litigated in the Article 78 proceeding, and as such, **do not fall under the scope of issue preclusion**. Federal courts, therefore, are the appropriate venue to resolve these constitutional questions.

187.   **Additionally, much of the conduct described in this complaint needs to be taken together and addressed as the totality of the circumstance which show a pattern of retaliatory politically motivated actions against the Plaintiff. It would therefore be a great injustice to preclude this part of the defendants' scheme,**

188.   **COUNT SEVEN: <u>UNLAWFUL DEPRIVATION OF VESTED PROPERTY RIGHTS AND REGULATORY TAKING</u> IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS (OVERT ACT IN FURTHERANCE)** (42 U.S.C. § 1983)

189.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

190.    On or about **November 2, 2023**, at approximately 8:00 PM, during a public meeting at 321 Bedford Road, Bedford Hills, NY, **the Zoning Board of Appeals of the Town of Bedford, together with Eric Gordon (Town Attorney**), **Albert Ciraco (Building Inspector), The Zoning Board of Appeals and the Department of Building**s**,** affirmed the denial of Plaintiff's construction permit **(**see EXHIBIT B), effectively stripping Plaintiff of her vested property rights under the R1A zoning designation.

191.    Through their actions at the Zoning Board of Appeals meeting, Defendants unlawfully invalidated/stole Plaintiff's R1A zoning designation as though it were a more restrictive zone, akin to R12A. This re-interpretation was done without legal authority**,** without any formal legislative process, and without due process protections afforded to the Plaintiff. The Defendants, in misapplying Bedford Town Code §125-79.1A, which does not apply to R1A zones**,** denied the Plaintiff the lawful right to develop residential housing on a one-acre parcel, as clearly guaranteed under the R1A classification.

192.    **Defendant stated that plaintiff was "lucky she had one pre-existing cottage" and indicated that development "can't be done" thereby taking and depriving the Plaintiff of her legal R1A zoning rights. See proof, ECF 1-1 video of ZBA meeting.**

193.    By misinterpreting zoning codes **and** imposing a new restriction by inference, Defendants engaged in **an unlawful de facto rezoning** of the Plaintiff's property. This is a **regulatory taking**, occurring without **just compensation** and without **due process of law**, in direct violation of the **Takings Clause of the 5th**

41

**Amendment** and the **Due Process Clause of the 14th Amendment** of the **United States Constitution**.

194.     The 5th Amendment prohibits the government from taking private property for public use without just compensation. The 14th Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of law. Here, no existing code, ordinance, or statute prohibits the Plaintiff's proposed residential use. The denial of the permit, based solely on implication and a misapplication of law—was arbitrary **and** capricious. As a result, the Plaintiff was effectively stripped of her vested property rights **under** R1A zoning without either compensation or the **lawful process** required by the Constitution.

195.     This conduct constitutes a regulatory taking, as it interfered with Plaintiff's legitimate property rights and deprived Plaintiff of the full economic use and enjoyment of her property. As such, Defendants have violated Plaintiff's constitutional rights under the 5th and 14th Amendments, and Plaintiff is entitled to just compensation and redress for the unlawful deprivation of property rights.

196.     **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and

42

A-189

Case 7:25-cv-02618-CS Document 45-1 Filed 06/10/25 Page 43 of 79

(e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

197.     **T**his issue was not the subject of the Article 78 proceeding which only addressed whether the ZBA's permit denial based on 125-79-1a was arbitrary and capricious. This issue of de factor re-zoning and constitutional deprivation of rights has never been properly adjudicated and is properly before this Court which has jurisdiction over constitutional issues.

**COUNT EIGHT: VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A SPEEDY TRIAL BY UNREASONABLY DELAYING THE SCHEDULING OF HER ZONING APPEAL (VIOLATION OF DUE PROCESS AND SPEEDY TRIAL RIGHTS UNDER THE 5TH, 6TH, AND 14TH AMENDMENTS) (OVERT ACT IN FURTHERANCE)**

198.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

199.     **TIME FRAME**: On **June 1, 2023,** and again on **July 6, 2023,** Plaintiff timely filed a written ZBA appeal challenging a Notice of Violation dated April 27, 2023. Despite this, the **Defendants failed to schedule or hear the appeal for more than five (5) months—well beyond the statutory deadline**. The appeal was not heard until **November 2, 2023,** constituting a clear constitutional violation for which the Plaintiff suffered direct damages.

200.     **LOCATION:** The events occurred at 325 Cherry Street, Bedford Hills, New York, in the County of Westchester.

201.     **EVENT:** Despite Plaintiff's timely submission of her appeal, the Defendants, acting under color of law through the Town of Bedford Zoning Board of Appeals,

43

Case 7:25-cv-02618-CS Document 45-1 Filed 06/10/25 Page 44 of 79

deliberately delayed the hearing of Plaintiff's appeal for more than five months, far beyond the sixty (60) days permitted under New York State Town Law §267-a(5)(b). This extended delay not only violated Plaintiff's constitutional rights to due process under the 5th and 14th Amendments, but also her right to a speedy resolution of the appeal under the 6th Amendment to the United States Constitution.

202.   **LAW:**
a.   **New York State Town Law §267-a(5)(b)** requires that "**An appeal shall be taken within sixty days** after the filing of any order, requirement, decision, interpretation, or determination of the administrative official… The administrative official from whom the appeal is taken shall **forthwith transmit** to the board of appeals all the papers constituting the record upon which the action appealed from was taken."

b.   **Town Law §267-a (7)** further mandates that zoning boards **issue timely decisions** on appeals. The purpose of these procedural safeguards is to ensure that citizens have the **right to challenge governmental actions** in a timely manner, and to prevent the indefinite deprivation of that right.

c.   The failure to follow these statutory timelines constitutes a violation of **due process rights** and can result in substantial **economic harm** to the Plaintiff, as occurred in this case.

d.   The **five-month delay** rendered the **appeals process effectively meaningless** and deprived Plaintiff of her **lawful right to judicial review** within a reasonable, legally mandated timeframe.

203.   **CONSTITUTIONAL VIOLATION**: The Defendants' delay in hearing the zoning appeal violated Plaintiff's 5th, 6th, and 14th Amendment rights, as this delay not only deprived Plaintiff of timely access to judicial review but also inflicted financial harm by preventing Plaintiff from timely addressing the zoning violations in question.

204.   **DAMAGES:** As a result of the Defendants' coordinated unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

205.   **COUNT NINE: FAILURE TO TIMELY <u>FILE</u> ZONING BOARD DECISION IN VIOLATION OF NEW YORK TOWN LAW § 267-a (9)** (VIOLATION OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS; ACTIONABLE UNDER 42 U.S.C. § 1983)

206.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

207.   The Defendants violated Plaintiff's due process rights under the 5th and 14th Amendments to the United States Constitution by failing to timely file the Zoning

Board of Appeals (ZBA) decision, in direct contravention of New York State Town Law §267-a (9). This failure interfered with Plaintiff's right to judicial review and constitutes a per se due process violation for which Plaintiff is entitled to direct monetary damages.

208.    TIME AND LOCATION: On or about **November 2, 2023, the Zoning Board of Appeals (ZBA) for the Town of Bedford held a hearing and <u>rendered a decision</u>.** Despite this, the Town of Bedford, the Building Inspector, the Building Department, and the Town Attorney Eric Gordon, collectively failed to file the ZBA decision in accordance with state and local law. **The decision was not filed in the Town Clerk's Office, located at 321 Bedford Road, Bedford Hills, New York, within the statutorily mandated five (5) business days.** The decision was ultimately filed on December 8, 2023, more than 30 days late.

209.    EVENT: The Defendants, acting under color of law, knowingly and deliberately **failed to file the ZBA decision** from the November 2, 2023, meeting in a timely manner. **New York State Town Law §267-a (9)** mandates that: "The decision of the board of appeals on the appeal shall be filed in the office of the town clerk **within five business days** after the day such decision is rendered, and a copy thereof mailed to the applicant."

210.    **The decision should have been filed no later than November 7, 2023.** Instead, it was **not filed until December 8, 2023**, as evidenced by ECF Doc. 1- EXHIBIT W, the stamped and dated ZBA decision.

211.    IMPAIRMENT OF RIGHTS: **The deliberate delay in filing the decision significantly impaired Plaintiff's ability to pursue judicial review via an Article**

Case 7:25-cv-02618-CS Document 45-1 Filed 06/10/25 Page 47 of 79

**78 proceeding and/or a Section 1983 civil rights action**, both of which are subject to **strict filing deadlines**. In fact, Plaintiff was forced to initiate the Article 78 proceeding based solely on the video record of the ZBA meeting, as no written decision was available at the time of filing. **This delay is exactly what New York Town Law §267-a seeks to prevent.**

212.    Moreover, **the written decision that was ultimately filed did not accurately reflect the ruling rendered on November 2, 2023, as shown in the meeting transcript and video. This constitutes a knowing and intentional attempt by Defendants to undermine Plaintiff's legal rights and obstruct judicial review, as demonstrated by the 11/2/2023 ZBA meeting.**

213.    LAW: New York State Town Law §267-a (9) is not a mere procedural formality—it exists to safeguard procedural due process rights and protect citizens' ability to timely challenge government actions. The delay here was not an oversight; rather, Defendants intentionally withheld the filing in order to:

214.    Frustrate judicial oversight.

215.    Delay or block Plaintiff's right to bring an article 78 petition.

216.    Undermine Plaintiff's ability to file a federal civil rights action under 42 U.S.C. §1983.

217.    Such actions violate Plaintiff's rights under the 5th and 14th Amendments of the U.S. Constitution. The intentional failure to file the decision in a timely **manner deprived Plaintiff of fair notice, a meaningful opportunity to be heard, and access to judicial relief—all essential elements of procedural due process.**

218.    PROOF: **The ZBA decision was stamped as filed on December 8, 2023, well beyond the legally mandated deadline. See EXHIBIT W.**

219.    DAMAGES**:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

———

**CAUSE OF ACTION IV**

**42 U.S.C. § 1983 – MALICIOUS PROSECUTION AND RETALIATION IN VIOLATION OF THE FIRST AMENDMENT (OVERT ACT IN FURTHERANCE)**
(AGAINST DEFENDANT ERIC GORDON AND THE TOWN OF BEDFORD)

220.    Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

221.    This cause of action arises under the First and Fourth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

222.    Defendant Eric Gordon, acting under color of state law and in his official capacity as Town Attorney for the Town of Bedford, engaged in retaliatory and malicious conduct by initiating and pursuing a baseless quasi-criminal enforcement

48

proceeding against Plaintiff for the purpose of punishing her for the exercise of protected First Amendment rights, including her right to petition the government and access the courts.

223.    On or about April 27, 2023, the Town of Bedford issued Plaintiff a Notice of Violation. **However, no enforcement action was taken for more than a year. Then, on or around May 6, 2024**, **Defendant Gordon caused a summons served upon Plaintiff to compel her appearance in Justice Court for alleged violations punishable by imprisonment of up to six consecutive 15-day terms**, pursuant to local ordinances. (See ECF Doc. 39-10 proof that this **summons was issued on or around 5/6/2024)**

224.    This sudden enforcement action was taken **just days after Plaintiff filed first attempted filing of her appellate brief** in the Appellate Division, Second Department **on April 23, 2024,** in connection with her article 78 proceeding challenging unlawful zoning enforcement. (See ECF Doc. 39-9, NYSCEF proof of filing notification to Eric Gordon and Robert Zitt on 4/23/2024.) **This appeal specifically accused Mr. Gordon of failing to provide relevant case law to the court.**

225.    **The timing and sequence of events prove that the prosecution was <u>not</u> motivated by legitimate enforcement interests but rather by retaliatory animus toward Plaintiff's protected legal challenge and her stated intent to pursue a civil rights action.**

226.    Further demonstrating retaliatory motive, **on May 9, 2024, Defendants issued a** Notice of 50-H Hearing, **proving their knowledge of Plaintiff intent to bring a 42**

49

**USC 1983 action in which Eric Gordon himself was personally named**. **Despite this knowledge that Eric Cordon himself was named in a 1983 action, he acted as Town Attorney and personally arraigned Plaintiff in Bedford Justice Court on July 11, 2024.**

227. The abrupt and simultaneous commencement of quasi-criminal prosecution and discovery demands **constitute a pattern of retaliatory conduct designed to deter Plaintiff's pursuit of constitutionally protected redress.**

228. The summons and prosecution were commenced w**ithout probable cause**, as a matter of law, in that, (1) as the alleged violations had not been actively enforced or adjudicated for over a year (2) **proof of malice**, as shown by the retaliatory timing and absence of any intervening facts that would justify belated prosecution (3) **In retaliation for the exercise of Plaintiff's First Amendment rights**, including her appeal of administrative actions and her initiation of federal civil rights claims.

229. **Eric Gordon knew that there was no probable cause to support this violation summons especially count 6 which he admitted on video on 11/2/2024 would "likely be dismissed" in justice court**. He brought this charge despite knowledge that there was no probable cause. See ECF doc 1-1 **video of 11/2/2024 ZBA meeting** link.

230. The Case was arraigned on June 11, 2024, and **dismissed for lack of even *prima facie* showing of evidence** and speedy trial violations on August 29, 2024, by the Honorable Judge Jodi Kimmel. **Further proof that there was no probable cause to bring this prosecution in Justice Court.**

Case 7:25-cv-02618-CS Document 41 Filed 07/10/25 Page 51 of 79

231. TIME AND LOCATION: On or about **June 11, 2024**, at 321 Cherry Street, Bedford Hills, New York, in the County of Westchester, Defendant Eric Gordon, Esq., acting as Town Attorney for the Town of Bedford, initiated a criminal prosecution against the Plaintiff in Bedford Justice Court (Docket No. 24-050200).

232. EVENT: **This prosecution was filed by Mr. Gordon after he became aware that Plaintiff intended to file a civil rights action under 42 U.S.C. §1983, naming him personally** for violations arising from the facts alleged in Counts 1 through 9 of this Complaint. Mr. Gordon had actual knowledge of his potential personal liability as early as March 22, 2024.

233. LAW: Defendant Eric Gordon's actions violate the Fourteenth Amendment to the United States Constitution, which protects individuals from **unlawful prosecution without probable cause. And the First Amendment of the Constitution which protects the right to assert claims free of governmental retaliation.** Additionally, Defendant's conduct violates:

234. **New York Rules of Professional Conduct Rule 3.8(a),** which prohibits prosecutors from initiating charges that are not supported by probable cause.

235. **Disciplinary Rule 7-105(A),** which forbids attorneys from initiating or threatening criminal prosecution to gain an advantage in a civil matter.

236. **Prosecutorial Immunity Does Not Apply:** Eric Gordon is not entitled to absolute prosecutorial immunity because his conduct went beyond the scope of traditional prosecutorial functions. Specifically, the initiation of the prosecution was not based on an independent exercise of prosecutorial judgment, but was retaliatory, administrative in nature, and motivated by extrajudicial

considerations—namely, the Plaintiff's protected activity under the Constitution and her filing of a Notice of Claim. **This prosecution was not based on probable cause as a matter of law and Eric Gordon admitted the same on video ECF 1-1.**

237. Courts have held that **absolute immunity does not extend** to actions taken outside the role of an advocate, such as **when a municipal attorney engages** in investigative, administrative, or **retaliatory conduct**. See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.").

238. Furthermore, when a prosecutor instigates or furthers a prosecution based on retaliatory motives, and without probable cause, qualified immunity may also be unavailable, particularly when the right to be free from retaliatory prosecution is clearly established. See Hartman v. Moore, 547 U.S. 250 (2006); Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018).

239. DAMAGES: As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

52

240.   **COUNT ELEVEN: MALICIOUS PROSECUTION IN VIOLATION OF
THE FIRST & FOURTEENTH AMENDMENT (AGAINST ROBERT ZITT,
ESQ., ACTING IN CONCERT WITH THE ZONING BOARD OF APPEALS,
ERIC GORDON, THE TOWN OF BEDFORD, BUILDING INSPECTOR, AND
THE DEPARTMENT OF BUILDINGS) (OVERT ACT IN FURTHERANCE)
42 USC 1983.**

241.   Defendant Robert Zitt, Esq., acting under color of law, **maliciously filed
a second criminal prosecution against Plaintiff in Bedford Justice Court, in
concert with the other Defendants in another act in furtherance of the conduct
and scheme described herein, in violation of the First and Fourteenth
Amendment and Plaintiff's civil rights.** This second prosecution was filed
despite Defendant Robert Zitt, Esq. **knowing that the first summons for the exact
charges was dismissed for lack of evidentiary support**, and that the charges were
not even sufficient to draft a complaint. This occurred **after his firm was named as a
defendant in a civil rights action, after knowledge that a member of his firm
admitted on video that the charge of BTC 125-12 would be dismissed, and after
he became aware that the Plaintiff filed a grievance again him and Eric Gordon
personally on 7/30/24** [7] and therefore, without probable cause, and in **retaliation** for
Plaintiff asserting her **constitutional right to file a civil rights  action, appeal, and
aggrievance complaint. This constitutes a malicious prosecution. It is entirely
inappropriate for a prosecutor who in currently named in a grievance complaint
to file charges justice court that carry potential jail time**.

---

[7] see ECF 39-8 proof of complaint 7/30/2024 grievance complaint for the prior malicious
prosecution inter alia.

242.    TIME AND LOCATION: On or about **September 17, 2024,** at approximately 9:30 a.m., at Bedford Justice Court, located at 321 Cherry Street, Bedford Hills, New York, Defendant Robert Zitt, Esq., acting as Town Attorney, filed a second criminal prosecution against Plaintiff. This second prosecution charged the exact same charges as the first dismissed prosecution, therefore, **Robert Zitt, had actual knowledge, as a matter of law, by way of a Judicial Decision dated 8/29/2024 EFC Doc. 1-3) that, this case lacked probable cause.  He knew the same charges were dismissed for failure to make prima facie showing of evidentiary support and that the case was adjudicated to have violated the CPL 30.30 statutory speedy trial protections.  He knew or should have known that it is unlawful to bring two prosecutions for the same charges under CPL 40.20.**

243.    This second prosecution was **initiated after the first malicious prosecution** brought on June 11, 2024, by the same law firm, Keane & Beane, P.C., and **dismissed** by Judge Jodi Kimmel on August 29, 2024.

244.    The second prosecution was also **ultimately dismissed on November 12, 2024, by the Honorable Judge Menken. (See EXHIBIT 1C.)** proving that this second **prosecution also lacked probable cause as a matter of law**.

245.    EVENT / CONDUCT: Defendant Robert Zitt, Esq., acting in concert with Eric Gordon, Esq., and all other named defendants in this matter, **maliciously initiated a second prosecution for the same exact violations, despite the prior case's dismissal.  In retaliation for Plaintiffs constitutionally protected first amendment right to Speech in the form of appealing lawsuits and filing notices of claim and filing grievances against him personally.**

Case 7:25-cv-02618-CS Document 45-1 Filed 06/10/25 Page 55 of 79

246.    WHEREFORE, this second action: Lacked probable cause as a matter of law, was filed in retaliation for Plaintiff's ongoing legal efforts, including the anticipated or filed 42 U.S.C. §1983 civil rights claim (assertion of constitutional rights).

247.    **Was a continuation of a pattern of harassment and retaliation against Plaintiff, beginning on April 27, 2023, and continuing through the date of filing.**

248.    The collective actions of all of the above-named defendants violated New York **Criminal Procedure Law §40.20, which prohibits successive prosecutions for the same offense (Double Jeopardy protections).**

249.    This prosecution was also filed in violation of New York Rules of Professional Conduct Rule 3.8(a) and Disciplinary Rule 7-105(A), which expressly forbid prosecutors or attorneys from bringing criminal charges without probable cause or solely to obtain an advantage in a civil matter.

250.    Further, the law firm **Keane & Beane, P.C.,** where Defendant Eric Gordon is a partner, **was again responsible for prosecuting the matter, raising serious ethical concerns and demonstrating coordinated retaliatory conduct by municipal legal authorities and all named defendants.**

251.    PATTERN OF MALICIOUS CONDUCT:

**This second malicious prosecution demonstrates a deliberate and ongoing campaign by Defendants to chill Plaintiff's constitutional rights, obstruct judicial review, and retaliate for the filing or threat of filing civil rights litigation.**

252.    By filing duplicative and baseless charges, **Defendants attempted to abuse the criminal justice system to intimidate and burden** Plaintiff, causing severe

55

emotional, financial, and reputational harm and in an attempt to prevent her legally

protect right to bring the herein action.

253. **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has

suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning

Board of Appeals application fees, (c) Lost rental income from this property,

calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal

time and effort at a rate of $550 per hour, totaling approximately 230 hours,

amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 &

Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and

(e) Devaluation of the property by approximately $2,000,000 by effectively and

illegally rezoning the property from an "R1A" to an "R12A."

**COUNT TWELVE: VIOLATION OF SIXTH AMENDMENT RIGHT TO A
SPEEDY TRIAL DUE PROCESS FOURTHEENTH AMNEDMENT (AGAINST
ROBERT ZITT, ESQ., IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES
ACTING IN CONCERT WITH ALL NAMED DEFENDANTS)**

254. Defendant Robert Zitt, Esq.**,** acting under color of state law, willfully violated

the Plaintiff's Sixth Amendment right to a speedy trial **by initiating a second**

**criminal prosecution after the statutory** speedy trial period **had expired**

**under** New York Criminal Procedure Law § 30.30**.**

255. *Defendant Zitt acted with **actual knowledge** that the **speedy trial period** had*

*lapsed, as evidenced by a prior **judicial determination** explicitly dismissing the*

*earlier prosecution on (among other things) **speedy trial grounds**.* Despite this

binding decision, Defendant Zitt reinitiated prosecution **without new evidence or**

**legal basis**, thereby **subjecting the** Plaintiff **to renewed and baseless criminal**

**proceedings in violation of clearly established constitutional law**. This conduct constituted a **knowing and intentional malicious prosecution** as a matter of law. This was designed as an **act in furtherance of the coordinated efforts of all the defendants named herein to deprive the Plaintiff of her constitutionally protected rights to** free speech and was a direct retaliation.to litigation filed by the Plaintiff and caused significant legal and personal harm.

256.     TIME AND LOCATION: On **September 17, 2024**, at approximately 9:30 a.m.**, at** Bedford Justice Court**,** located at 321 Cherry Street, Bedford Hills, New York**, Defendant Robert Zitt, Esq**.**, acting as Town Attorney, on behalf of the Town of Bedford New York, file and Department of Building complaint based on a notice of violation issued by Albert Ciraco, the Building Inspector, thereby** initiated a **second criminal prosecution** against **Plaintiff.** This occurred **despite the expiration of** Plaintiff's statutory and constitutional right **to a speedy trial under** New York Criminal Procedure Law §30.30**,** which ran on or about July 11, 2024—approximately **two** months earlier**.**

257.     **CONDUCT:** Defendant Robert Zitt**,** in his capacity as Town Attorney and under color of state law, filed a second malicious prosecution despite the clear expiration of the speedy trial period applicable to the original charges. The renewed charges were based on the same exact violations previously dismissed on August 29, 2024.

258.     The second set of charges were identical to the first and filed after the CPL **§30.30** speedy trial clock had already run.

57

259. Defendant admitted on the record in open court that he intended to seek **a** search warrant**,** further indicating the absence of probable cause support and an abuse of power**.**

260. The repeated filing of charges for petty code violations—with no factual basis or supporting documentation—is legally baseless and nearly unprecedented in local justice courts. Especially if filed by members of a **Firm** that has been served with a **notice of claim**.[8]

261. **LAW:** The Sixth Amendment to the United States Constitution guarantees the right to a speedy and public trial**.** This constitutional right is implemented in New York by Criminal Procedure Law §30.30**,** which imposes specific time limits within which the prosecution must be ready for trial.

262. By initiating a second prosecution after the statutory speedy trial period had lapsed, Defendant violated Plaintiff's constitutional and statutory rights. Such actions amount to prosecutorial misconduct**,** abuse of process, and a violation of civil rights under 42 U.S.C. §1983**.**

263. **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and

---

[8] See the court reporters' minutes from ECF doc. 39-14

(e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

**COUNT THIRTEEN: BRADY VIOLATION / DUE PROCESS VIOLATION - 5TH AND 14TH AMENDMENTS, 373 U.S. 83 (1963) (AGAINST DEFENDANT ROBERT ZITT, ESQ. ACTING IN FURTHERANCE OF ALL OF THE DEFENDANTS' COURSE OF MALICIOUS CONDUCT) ACTIONABLE UNDER 42 USC 1983**

264. TIME AND LOCATION: **From September 17, 2024, through the present,** at 321 Cherry Street, Bedford Hills, New York**, in** Westchester County**, Defendant Robert Zitt, Esq.**, while acting under color of law as **Town Attorney**, for the **Town of Bedford New York, while prosecuting a Building Department** violations**, issued by the Department of Buildings** committed ongoing violations of Plaintiff's due process rights in the herein described overt act in furtherance of the conduct described in this complaint..

265. **CONDUCT: Defendant Robert Zitt, Esq.** willfully refused to disclose **material exculpatory evidence** ("Brady material") requested by Plaintiff. This refusal violates the holding in **Brady v. Maryland**, 373 U.S. 83 (1963), which mandates that **prosecutors must disclose evidence favorable to the accused** when it is material to guilt or punishment, regardless of the prosecution's intent.

266. Intentionally withheld Brady material includes, but is not limited to:

a. A portion of an **email chain** involving a politically connected tenant and the **Town's Department of Buildings**, which was the catalyst for initiating the prosecutions.

b. A **redacted email address or name** critical to Plaintiff's defense that the prosecution was politically motivated and not grounded in any violation of law.

c. Additional **Town communications** and **internal emails** relevant to the defense strategy and proof of a concerted effort by the named defendants.

267. Despite multiple requests, this material has never been produced, thereby obstructing **Plaintiff's ability to mount a defense** and denying her **constitutional right to due process**.

268. In addition, after failing to produce **Brady material**, **Defendant Zitt** undertook the nearly **unprecedented step** of filing a **Notice of Appeal** of the already twice-dismissed charges, further evidencing a **pattern of malicious intent** and **abuse of process**. This course of conduct was another act in furtherance of all of the above-named **agenda** and **constitutional violations** outlined herein.

269. And caused all the damages described elsewhere in this complaint.

**COUNT FOURTEEN: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT AND PROFESSIONAL RULE 3.8 – SPECIAL RESPONSIBILITIES OF A PROSECUTOR**
**(AGAINST DEFENDANT ROBERT ZITT, ESQ. IN FURTHERANCE OF THE COURSE OF MALICIOUS CONDUCT FOR ALL NAMED DEFENDANTS IN THE HEREIN CAPTION)**

270. **TIME AND LOCATION:** Between **June 11, 2024, and November 18, 2024**, at approximately 9:30 AM, at 321 Cherry Street, Bedford Hills, New York, in Westchester County.

60

A-207

271.    **CONDUCT:** Defendant **Robert Zitt, Esq**., acting as **Town Attorney** for the **Town of Bedford,** prosecuted a **Building Department Violation, Issued by the Building Inspector, for The Department of Buildings.** and therefore, under color of law, engaged in conduct that constitutes both malicious prosecution and an ethical violation of Rule 3.8 of the New York Rules of Professional Conduct, which imposes heightened responsibilities on prosecutors.

272.    Specifically, **Defendant Zitt knowingly initiated a second prosecution for charges that had previously been dismissed by the court on August 29, 2024, due to lack of evidence. Despite this, Zitt re-filed the same charges on September 17, 2024, attempting to circumvent CPL §§ 30.30 and 40.20, which bar re-prosecution of dismissed charges and double jeopardy violations.**

273.    Mr. Zitt's conduct demonstrates a knowing disregard for the legal standard of probable cause, and an intent to pursue baseless prosecution in retaliation, rather than to seek justice, in direct violation of his obligations under Rule 3.8.

274.    **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

### COUNT FIFTEEN: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT AND <u>DISCIPLINARY RULE 7-105(A) (IMPROPER USE OF CRIMINAL CHARGES TO GAIN ADVANTAGE IN CIVIL MATTERS)</u> (AGAINST ALL NAMED DEFENDANTS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)

275.    . DEFENDANTS, acting under color of state law and in concert with one another, engaged in malicious prosecution in violation of the Plaintiff's rights under the Fourth Amendment to the United States Constitution. Specifically, Defendants initiated and pursued criminal charges against the Plaintiff without probable cause and with the improper motive of gaining leverage in related civil or administrative matters.

276.    This **conduct also constitutes a violation of** Disciplinary Rule 7-105(A) **(now reflected in** Rule 3.4(e) **of the** New York Rules of Professional Conduct**), which prohibits attorneys from presenting, participating in, or threatening criminal charges solely to obtain an advantage in a civil dispute**.

277.    TIME: On or about **September 17, 2024**, at approximately 9:30 AM, at 321 Cherry Street, Bedford Hills, New York, in Westchester County.

278.    CONDUCT: Defendant Robert Zitt, Esq., while acting under color of law as Town Attorney**, filed a** second prosecution **against** Plaintiff **that was not only barred under** CPL § 40.20 **(Double Jeopardy), but also violated ethical standards under** Disciplinary Rule 7-105(A)**,** which prohibits lawyers from initiating or threatening criminal prosecution solely to obtain an advantage in a civil matter.

279.    This second prosecution was **filed in** direct response **to** Plaintiff's civil litigation **against Zitt's law firm colleagues and the** Town of Bedford**.** This retaliatory prosecution was **not supported by probable cause** and lacked any

Case 7:23-cv-02118-CS Document 145-1 Filed 06/10/25 Page 63 of 79

evidentiary foundation, serving no legitimate purpose other than to **intimidate** and **harass Plaintiff** amid ongoing civil proceedings.

280.    . This second prosecution constitutes **another overt act in furtherance of the unlawful course of conduct** by all of the **Defendants** to deprive the Plaintiff of her constitutional rights and to retaliate against her for her protected activities, including the filing of civil rights claims. The Defendants acted in concert and coordination in furtherance of this malicious and retaliatory agenda.

281.    **All named** Defendants **acted in concert and coordination in furtherance of this unlawful course of conduct.** The criminal charges were not supported by probable cause, were initiated in bad faith, and were ultimately dismissed in the Plaintiff's favor.

282.    As a direct result of the Defendants' actions, the **Plaintiff suffered** constitutional harm**,** reputational damage**,** legal costs**, and** emotional distress**, and is entitled to** compensatory and punitive damages**, as well as** declaratory and injunctive relief**.**

283.    . DAMAGES: As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

A-210

284.    . Robert Ziit, **filed of an appeal following two dismissed prosecution, absent probable cause and without evidence, constitutes additional proof of** bad faith, retaliatory intent**, and** malicious prosecution**, compounding the underlying constitutional violation and furthering the evidence of the coordinated efforts of all the defendants named in the herein-action.**

**COUNT SIXTEEN: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIRST & FOURTEENTH AMENDMENT (<u>FAILURE TO APPOINT A SPECIAL PROSECUTOR DESPITE CLEAR CONFLICTS OF INTEREST</u>) (AGAINST ALL NAMED DEFENDANTS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES)**

285.   ALL of the named DEFENDANTS, acting under color of law and in concert with all other Defendants named in the caption of this action, engaged in malicious prosecution in violation of the Plaintiff's rights under the Fourth Amendment to the United States Constitution. This was yet another overt act in furtherance of the concerted scheme or effort by the named defendants/ local government to deprive plaintiff of the constitutional rights described in the herein complaint.

286. **Despite the existence of clear and documented** conflicts of interest**—stemming from** prior notice of claim**,** adversarial positions**, and** retaliatory motives**—Defendants failed and refused to seek or appoint a neutral** special prosecutor**, as required under the law and** ethical rules **governing prosecutorial conduct. All other paragraphs are incorporated herein to show the dates and times of the filing of the appeal and notice of claim directly proceeding the filing of the two baseless (as a matter of law) prosecutions.**

64

A-211

287. This conduct constitutes a knowing and willful violation of the New York Rules of Professional Conduct, specifically:

- Rule 1.7(a)(2), which prohibits representation when a reasonable lawyer would conclude that there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own interests.

- Rule 1.0(f), defining "differing interests" to include every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest.

288. The refusal to appoint a special prosecutor, despite known conflicts, allowed biased officials to initiate and maintain a baseless criminal proceeding against the Plaintiff. This prosecution lacked probable cause and was driven by retaliatory and improper purposes, including an attempt to suppress the Plaintiff's exercise of constitutional rights and to gain leverage in related civil and zoning matters.

289. The Plaintiff suffered damages as a direct result of this malicious prosecution, including reputational harm, legal costs, emotional distress, and deprivation of constitutional protections. Plaintiff seeks compensatory and punitive damages, as well as appropriate injunctive and declaratory relief.

290. All named Defendants acted in concert and coordination in furtherance of this unlawful course of conduct. The criminal charges were not supported by probable cause, were initiated in bad faith, and were ultimately dismissed in the Plaintiff's favor.

65

**291. TIME AND LOCATION** Between June 11, 2024**,** and November 18, 2024, at approximately **9:30 a.m.**, at the **Bedford Justice Court**, located at **321 Cherry Street, Bedford Hills, New York**, in **Westchester County**.

**292. CONDUCT:** During this period, Robert Zitt, Esq.**, and** Eric Gordon, Esq.**,** while acting in their official capacity **as** Town Counsel **for the** Town of Bedford New York under **color of law**, failed to appoint a **neutral or special prosecutor** to **handle** Building Department **violations, issued by the** Building Inspector **for the** Town of Bedford New York the underlying prosecution, despite the existence of clear and disqualifying conflicts of interest.

293. Specifically, the **defendants had knowledge of potential 42 USC 1983 actions, pending Appeal, and grievance complaints pending against Eric Gordon and Robert Zitt.** Despite these conflicts[9], Mr. **Zitt and Mr. Gordon** proceeded to initiate and maintain a **criminal prosecution against Plaintiff**, without recusal or appointment of an independent authority, in direct violation of **ethical duties** and in furtherance of the **malicious scheme and course of conducted signed to chill Plaintiff constitutional right to bring these cases.**

294. This prosecution was in furtherance of the course of conduct furthered by all defendan**ts** named in this above-captioned case and described through this complaint.

---

[9] It is not possible that the defendants were unaware of these conflicts. They had filed a request for a 50H hearing on 5/9/2024 **ECF doc 39-11**. NYSCEF shows proof an email notification regarding the filing of the appeal was send to both Eric Gordon and Robert Zitt on 4/23/24 see **ECF 39-9**. The malicious prosecutions were initiate on 5/6/2024 see date on **39-10** SUMMONS.

295. **Although per se** ethical rule violations **by the defendants may not on their own be enough to support a malicious prosecution, when these actions are taken together in the context of this complaint, it is** strong evidence **of the same. It should be noted again that the point of a complaint is** not **to prove allegations beyond a reasonable doubt; it is merely to give the defendant notice as to the claims at issue.**

296. DAMAGES: **As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."**

**COUNT SEVENTEEN: <u>CONSPIRACY AND UNLAWFUL COURSE OF CONDUCT BY ALL DEFENDANTS</u>**
**(FIFTH AND FOURTEENTH AMENDMENTS – DUE PROCESS AND TAKINGS CLAUSE)**
**(SIXTH AMENDMENT – RIGHT TO FAIR AND IMPARTIAL PROCEEDINGS)**
**(UNDER COLOR OF LAW AND IN VIOLATION OF STATE LAW AND RULES OF PROFESSIONAL CONDUCT)**

297. **DEFENDANTS**, acting under color of law **and** in concert with one another, engaged in a sustained and unlawful course of conduct with the collective intent to deprive the Plaintiff of her constitutionally protected property rights, subject her to harassment, and degrade her standing and dignity as a property owner and citizen.

298. This coordinated conduct resulted in the violation of the Plaintiff's rights **under:** The Fifth and Fourteenth Amendments, including deprivation of property without due process and without just compensation, in violation of the Takings Clause**.** The Sixth Amendment, by denying Plaintiff her right to fair, impartial, and timely judicial proceedings. Relevant state laws **and** ethical obligations, including provisions of the New York Rules of Professional Conduct related to conflicts of interest, misuse of authority, and prosecutorial misconduct.

299. The Defendants' individual and collective actions were not isolated but formed an intentional pattern of retaliatory**,** discriminatory**,** and abusive behavior aimed at obstructing the Plaintiff's lawful use and enjoyment of her property.

300. As a direct result of this concerted misconduct, Plaintiff suffered significant harm, including deprivation of property rights, reputational damage, emotional distress, and ongoing legal and financial burdens. Plaintiff seeks **c**ompensatory and punitive damages**,** declaratory relief**,** and such other remedies as this Court deems just and proper.

301. **TIME AND LOCATION:** From April 27, 2023**,** through the present, at various locations and times as outlined in this Complaint, within Westchester County**,** New York**.**

302. **CONDUCT:** All named Defendants engaged in a deliberate and unlawful course of conduct intended to harass, intimidate, and deprive Plaintiff **o**f her lawful property rights, including rights associated with R1A zoning**.** This conduct included: The intentional denial of permits. The filing and refiling of baseless prosecutions**.** All other acts described in the herein complaint.

303. All of said actions were carried out under color of law and designed to coerce and demean Plaintiff. The actions by the **Town of Bedford, Building Department, Building Inspector, Town Counsels Robert Zitt** and **Eric Gordon** representing the **Town of Bedford New York** were **motivated by** political bias **and** retaliatory intent**, and aimed at discouraging** Plaintiff **from asserting her constitutionally protected rights** and **designed to strip plaintiff of her property rights. This pattern of behavior constitutes an unconstitutional deprivation of property rights in violation of the Fifth and Fourteenth, First, Sixth and Fourth Amendments**.

304. The Article 78 proceeding and subsequent Appeal exemplify this course of conduct. Specifically: Two unusual judicial recusals occurred. Decisions were made off the record, A hearing was precluded. The final written decision was not **only** legally erroneous but also unduly harsh**,** hostile, and unprofessional in tone.

305. Further, the cumulative actions of the **Defendants** effectively **"rezoned" Plaintiff's property** from **R1A** to **R12A**—a change unsupported by any local ordinance, public hearing, or legal authority—amounting to a **de facto governmental taking**.

306. **LEGAL VIOLATIONS:** This illegal course of conduct violated:

- **Town of Bedford Codes**.
- **New York State Town Law** and **Zoning Ordinance**.
- **U.S. Constitution**:
  - **Fifth Amendment** – Protection against governmental takings without just compensation.
  - **Fourteenth Amendment** – Right to due process.

69

A-216

- o **Sixth Amendment** – Right to fair proceedings.
- **Rules of Professional Conduct**:
  - o **Rule 1.7(a)(2)** – Conflict of Interest: Current Clients.
  - o **Rule 1.0(f)** – Differing Interests.
  - o **Disciplinary Rule 7-105(A)** – Prohibition on using criminal proceedings to gain advantage in civil matters.
  - o

307. **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A."

**COUNT EIGHTEEN: <u>MALICIOUS PROSECUTION</u> AND DEPRIVATION OF DUE PROCESS UNDER COLOR OF LAW FAILURE TO PROVIDE LEGAL <u>PRECEDENT TO THE COURT</u>**
**(VIOLATION OF 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT DUE PROCESS; <u>ETHICAL RULE 3.3 – CANDOR TOWARD THE TRIBUNAL</u>)**

308. **TIME AND LOCATION:** Between **November 29, 2023**, and the present, at all relevant times and locations as set forth in this Complaint, including proceedings before the **Supreme Court**, **County of Westchester**, and the **Appellate Division, Second Department**, in **Westchester County, New York**. **Defendants** acted in

concert to withhold and intentionally not disclose legal precedent, to

wit, **WESTCHESTER MUNICIPAL PLANNING FEDERATION 2017 LAND**

**USE LAW INSTITUTE "ZONING CODE INTERPRETATIONS"** by **Keane &**

**Beane PC (May 17, 2017)**, which is directly on point in this case and contains

binding case law that all the named defendants have acted in concert to conceal and

not disclose. This treatise has been disappeared from the internet after said conduct

has been indicated by the **Plaintiff**.

309. **CONDUCT: Robert Zitt, Esq.** and **Eric Gordon, Esq.**, acting in their official

capacities as **Town Counsel,** for the **Town of Bedford allegedly acting to enforce**

**Bedford Building Department** code violation **Issued by the Building Inspector**

and thereby under color of state law, knowingly and intentionally failed to disclose

controlling legal precedent directly relevant to **Plaintiff's case**—legal precedent

authored by their own law firm, which contradicted the legal arguments advanced in

their submissions to the court. **This legal precedent proves that the if there is any**

**ambiguity in the zoning law, the inference is always favoring the property**

**owner and disfavors the municipality. Defendant firm teaches a Continuing**

**legal Education class on the subject and argued in the alternative to the Courts**

**in this case.**

310. Despite possessing clear knowledge of this controlling authority, the **Defendants**:

- Omitted this precedent in pleadings and oral argument.

- Submitted written legal memoranda to both the trial court **and** Appellate

  Division that knowingly misrepresented the state of the law.

71

- Continued to pursue malicious prosecutions, despite actual knowledge that the law did not support such actions.

- This conduct constitutes a violation of **New York Rules of Professional Conduct Rule 3.3** (**Candor Toward the Tribunal**), which mandates that attorneys must not knowingly make false statements of law to a court or fail to disclose directly adverse authority not otherwise presented by opposing counsel.

311. As **officers of the court** who were acting as **Town Counsel** on behalf of the **Department of Building, The Town of Bedford and The Building Inspector**, attorneys Mr., **Zitt** and Mr. **Gordon** had a heightened duty to uphold the integrity of the judicial process, not to manipulate it to serve unlawful objectives or to harass and intimidate a litigant.

312. By knowingly presenting false representations of the law, failing to disclose directly adverse precedent, and pursuing baseless prosecutions to harass **Plaintiff**, **Defendants Zitt** and **Gordon**:

a. Violated **Plaintiff's** constitutional rights to due process and a fair adjudicative process, guaranteed by the **Fourteenth Amendment**.

b. Abused their roles as public officials acting under **color of state law**, thereby triggering liability under **42 U.S.C. § 1983**.

c. Deprived **Plaintiff** of liberty and property interests without due process, and in a manner that shocks the conscience and undermines fundamental fairness.

—

313. **DAMAGES:** As a result of the Defendants' unlawful actions, the Plaintiff has suffered the following damages: (a) Unnecessary permit application fees, (b) Zoning Board of Appeals application fees, (c) Lost rental income from this property, calculated at $2,400 monthly for 22 months (as of the date of this writing), (d) Legal time and effort at a rate of $550 per hour, totaling approximately 230 hours, amounting to $126,875.00 (see Westchester Supreme Court Case 71446-2023 & Matter of Melanie Hammer v. Town of Bedford New York et al. 2024-02143); and (e) Devaluation of the property by approximately $2,000,000 by effectively and illegally rezoning the property from an "R1A" to an "R12A.

## CONCLUSION:

314. In summary, the Defendants violated state and local laws and acted in concert to exceed the lawful bounds of their authority. While holding official governmental positions, they improperly assumed legislative powers by inventing legal standards and "inferring" criminal charges not grounded in any statute, ordinance, or written law. They issued violations, denied permits, and initiated two separate criminal prosecutions—each ultimately dismissed—all while acting **under color of law.**

315. The Defendants are not a legislative body and do not have the authority to create law by implication or inference. On video, they admitted to inferring a quasi-criminal charge not found in the relevant municipal code. Their conduct constitutes not only **malicious prosecution**, but also an **abuse of their governmental positions** and a concerted effort by all defendants to **deprive the Plaintiff of her property rights** without legal basis or due process.

316. Furthermore, the Defendants violated their ethical obligations, including **Rule 3.3 (Candor Toward the Tribunal)**, as well as their **Brady obligations** by failing to disclose legal precedent adverse to their arguments—precedent authored by their own law firm. Brady v. Maryland, 373 U.S. 83 (1963). Holding that suppression by the prosecution of evidence favorable to an accused who has requested it violates due process.

317. This unlawful and unethical course of conduct amounts to a constitutional violation of Plaintiff's rights under the **Fifth and Fourteenth Amendments** and actionable misconduct under **42 U.S.C. § 1983**.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

318. **Transfer Venue:** Order that this matter be heard in the **Southern District of New York, Manhattan Division**, in light of multiple judicial recusals in Westchester County and the close ties of opposing counsel to numerous municipalities in that district. Plaintiff's professional practice is located at **360 Court Street, Brooklyn, NY**, further supporting the appropriateness of venue in New York County.

319. **Issuance of a Writ of Mandamus** Compel Defendants to allow the lawful registration of Plaintiff's apartment with the Bedford Building Department, in accordance with governing laws and regulations.

74

320. **Issuance of a Writ of Prohibition** Enjoin Defendants from any further **retaliatory or punitive actions** against the Plaintiff arising from this lawsuit, including but not limited to:

   a.  Unlawful denial of permits

   b.  Arbitrary increases in property or school taxes

   c.  Additional prosecutions or enforcement actions

321. **Award Compensatory Damages:**

   a.  **Architectural fees**: $2,500

   b.  **Lost rental income**: $2,400/month, currently totaling approximately **$52,800**, to be updated at time of judgment

   c.  **Legal time and effort**: $550/hour for 230 hours = **$126,875**, excluding time spent on this motion and related re-filings after April 3, 2025.

   d.  **Filing fees associate with all of the related action**

   e.  **Service of process fees**

   f.  **Transcript fees**

   g.  **And any other relief for which receipts can be shown**

322. **Award Punitive Damages**

   a.  $100,000 to deter future abuse of authority and ensure accountability

**323. OR IN THE ALTERNATIVE:**

**324. 2,000,000** for the unlawful devaluation of Plaintiff's property from R1A zoning to a de facto R12A designation, resulting in the loss of approximately **four buildable lots** valued at $500,000 each

**325. In the alternative, Damages for Loss of Use**

 If rental use is ultimately prohibited, Plaintiff requests damages in the amount of **$28,800 per year**, compounded biennially to reflect typical rent increases, over a projected period of **20 years**. And/or,

**326.Additional Relief**

Any further relief that the Court may deem just, proper, and equitable under the circumstances.

WHEREFORE, Petitioner respectfully requests that the Court Grant Plaintiff motion in its'entirety and grant any further relief that the court may deem just and proper.

**/s/ Melanie Hammer**
MELANIE HAMMER, ESQ.
360 Court Street, Suite 3
Brooklyn, NY 11231
melanie@hammer-esq.com
718-757-7677

Katonah, NY 7/5/2025

**Verification and Declaration Pursuant to 28 U.S.C. § 1746**

I, the undersigned Plaintiff, declare under penalty of perjury that the factual allegations

contained in the foregoing complaint are true and correct **to the best of my knowledge,**

**information, and belief**, the sources of which include:

- My personal observations and conduct I personally witnessed by the Defendants.

- My review of relevant documents, records, and correspondence.

- My review and understanding of applicable law, including the United States

  Constitution, New York State statutes, local ordinances, and administrative codes.

Executed on this 22 day of May 2025.

/s/ Melanie Hammer
MELANIE HAMMER, ESQ.

360 Court Street, Suite 3
Brooklyn, NY 11231
melanie@hammer-esq.com
718-757-7677

77

**CERTIFICATION**

Pursuant to **Rule 11 of the Federal Rules of Civil Procedure**, Plaintiff certifies that to the best of her knowledge, information, and belief:

1. This Complaint is not being presented for any improper purpose, such as to harass or cause unnecessary delay or cost.

2. The legal contentions herein are warranted by existing law or by a good-faith argument for extension or modification of the law.

3. The factual assertions have evidentiary support or will likely have such support after discovery; and

4. This filing complies with all applicable rules of procedure.

/s/ Melanie Hammer
MELANIE HAMMER, ESQ.
360 Court Street, Suite 3
Brooklyn, NY 11231
melanie@hammer-esq.com
718-757-7677

Katonah, NY 6/5/2025

78

5.

**NOTICE OF PRO SE STATUS**

I further agree to promptly inform the Clerk's Office of any changes to my contact

address. I understand that failure to maintain a current address may result in dismissal of

this action.

/s/ Melanie Hammer
MELANIE HAMMER, ESQ.
360 Court Street, Suite 3

Brooklyn, NY 11231

melanie@hammer-esq.com

718-757-7677

Katonah, NY 6/5/2025

A-226

79

FILED: WESTCHESTER COUNTY CLERK 02/09/2024 04:43 PM
NYSCEF DOC. NO. 97
INDEX NO. 71446/2023
RECEIVED NYSCEF: 02/09/2024

Case 7:25-cv-02618-CS    Document 45-2    Filed 07/11/25    Page 1 of 9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------------------x
In the Matter of the Application of,
MELANIE HAMMER,

                                        **DECISION & ORDER**
                                        INDEX NO. 71446/2023

                               Petitioner,
        -against-

TOWN OF BEDFORD, NEW YORK, ZONING
BOARD OF APPEALS BEDFORD, NEW YORK,
DEPARTMENT OF BUILDING BEDFORD, NEW
YORK, BUILDING INSPECTOR TOWN OF
BEDFORD, NEW YORK, ATTORNEY FOR
TOWN OF BEDFORD, NEW YORK,
                             Respondents.

For a Judgment Pursuant under Article 78 of the Civil Practice
Laws and Rules
--------------------------------------------------------------------------x
FUFIDIO, J.

      This is a proceeding commenced by the Petitioner, a New York attorney acting *pro se*, who owns the property at issue located at 146 Goldens Bridge Road in Katonah, New York. The Petitioner, pursuant to CPLR Article 78, is challenging the decision made by the Town of Bedford's Zoning Board of Appeals (ZBA) which denied her a use variance, that if granted would have allowed her to legalize an apartment over an existing garage on the property that she had been renting to tenants. From what the Court can discern by reading between the lines of her Petition, the Petitioner essentially alleges that the ZBA acted arbitrarily and capriciously in denying her variance application and for not dismissing town code violations that were filed once the Respondents discovered that the dwelling she was renting to others was not in compliance with the zoning rules for the zone in which it is situated. Petitioner seeks, by way of relief (1) an order to compel the Respondents to allow her to legally file architectural drawings for the residence in issue, that she claims were maliciously, arbitrarily, capriciously and illegally denied, (2) an order compelling the Respondents to dismiss the building code violations levied against her because the Respondents acted maliciously, arbitrarily, capriciously and illegally in issuing said violation without code, statute, ordinance, or basis in law, (3) an Order directing the Respondents to pay damages in the amount of $14,400 to the Petitioner for loss of rental income because of the malicious, arbitrary, capricious and illegal restriction placed on Petitioner's zoning rights without basis in law, (4) an Order directing the Respondents to pay damages for additional lost rent in the amount of $2,400/month, (5) an Order for attorney's fees in the amount of $22,000 for the work she has done on her own case billed at $550/hour for 40 hours expended on the case already, (6) an Order for future attorney's fees billed at $550/hour for future work on

1

FILED: WESTCHESTER COUNTY CLERK 02/09/2024 04:43 PM INDEX NO. 71446/2023
NYSCEF DOC. NO. 97                                                      RECEIVED NYSCEF: 02/09/2024

Case 7:25-cv-02618-CS    Document 45-2    Filed 07/11/25    Page 2 of 9

her own case, (7) an Order that the Respondents pay $100,000 in punitive damages for, "town officials maliciously arbitrarily, capriciously, and illegally prohibiting a rental dwelling without competent evidence of code, statute, ordinance and without any evidence of harm to the community, (8) alternatively, the Petitioner seeks $2,000,000, "for illegally devaluing Petitioner's property arbitrarily, capriciously or for punitively, delaying, or unreasonably restricting or preventing Petitioner from filing her legal residential drawings, (9) a writ of prohibition preventing Respondents from rezoning her property in the future, and (10) "Order a writ of prohibition to stop Respondents from continuing to act punitively, arbitrarily or capriciously in this and future applications made by Petitioner. No new violation can be 'created' to prevent the permit application from being approved". The Court has considered ECF items 1-96 and upon them decides as follows:

The Petition as it is presented and its ensuing collateral litigation has complicated what, at its core, it is a relatively basic petition to nullify the Town of Bedford ZBA's decisions to deny the Petitioner's application for a use variance to enable her to use a building on her property as a residential rental. The Petitioner is the owner of the approximately 12 acre large property at 146 Goldens Bridge Road in Katonah, New York located in the R-1A zone on the town's zoning map which sets the minimum lot size at one acre. On the property is the main dwelling house, a pre-zoning code existing, non-conforming cottage, which, was grandfathered in to the property for residential use and there is also a garage which, up until sometime around 2014 had in it a legal recreation room. Sometime, likely in or about 2014, the recreation room was converted into an apartment that the Petitioner rented out for extra income. Sometime in 2023, one of her tenants had a problem with a staircase in the converted apartment he was renting and was unsuccessful in getting the Petitioner to address his concerns and as a result the tenant reached out to the Town of Bedford in order to find out if he had any recourse. In doing so he found out that the apartment was not a legal apartment and then the Town realized that the Petitioner had an illegal apartment on her property and thus set into motion the events which culminated in this action.

On April 27, 2023 the Petitioner was served with two Notices of Violation; one alleging nine town code violations relative to the illegal apartment for observations made by the building inspector on April 27, 2023 and another alleging one violation observed on April 19, 2023. She was told in the notice of violation that she had thirty days from the date of issue to cure the violations or else she would be issued an appearance ticket to appear in court to answer the violations (Town Law sec. 268; *People v Musante*, 141 Misc.2d 300 [Justice Ct. Village of Tuckahoe 1988]).[1] The notices also told her how she could cure the defects and the Court can infer from the subsequent activity leading to this matter that the defects were not cured, because in July the Petitioner seemingly began the process for a building permit allowing her to construct a "new deck at existing garage apartment + (sic) building permit for same"[2] and at another point on a permit application that was stamped received on July 10, 2023, the Petitioner was seeking permission to revert, ostensibly the illegal apartment, "back to recreation room + (sic) remove

---

[1] The Petitioner has also challenged the ZBA's denial of her application to dismiss the Notice of Violations. That decision by the ZBA was entirely rational. While the Court is unaware of the status of these Notices of Violation, they are subject to the rules of the Criminal Procedure Law (Town Law sec. 268; *People v Musante, supra*). The ZBA has no authority over those and the Petitioner's relief from those, if there is any, lies in the Town Court and the CPL. To the extent that she sought to cure the defects that are the subject of the notices by applying for a Building Permit, the ZBA's decision on that denial is addressed herein.

[2] This application was dated by architect Patrick M. Croke on July 6, 2023, but was not stamped as received by the Town until September 7, 2023.

2

A-228

FILED: WESTCHESTER COUNTY CLERK 02/09/2024 04:43 PM
NYSCEF DOC. NO. 97
INDEX NO. 71446/2023
RECEIVED NYSCEF: 02/09/2024

Case 7:25-cv-02618-CS     Document 45-2     Filed 07/11/25     Page 3 of 9

the deck". The Petitioner's September 7th permit application was denied in a letter from the Town Building Inspector which listed the reasons for such denial. Among those reasons are that the Town Code considers her garage apartment to be a "cottage" and that it was created by adding a bathroom, kitchen and living area to the existing recreation room without the necessary permission. In addition, cottages are specifically *not* permitted in the zone where her property is located and in general no more than one cottage is permitted in the zones where cottages are permitted and the Petitioner has one legal, pre-existing, non-conforming cottage on her property already. She was also advised that if she wanted to challenge this denial then she could apply to the Zoning Board of Appeals for a use variance to attempt to legalize the heretofore illegal apartment/cottage on her property. On October 4, 2023, the Petitioner filed her application for a variance in which she asked for permission to "appeal decision of Building Inspector's denial of Building Permit + (sic) deck" and makes reference to an attachment. In that attachment entitled "Attachment to Application ZBA Application" she requests a (1) variance for a customary home occupation permit under Town Code section 125.28; (2) an interpretation of the law/appeal department of buildings; (3) "request to comply with the rest of the violation and obtain permits for existing plumbing, wiring, partitions + (sic) deck" and (4) "appeal denial of deck permit". The Zoning Board of Appeals held a hearing on the Petitioner's application on November 2, 2023 and unanimously upheld the building inspector's denial of Petitioner's building permit and unanimously denied the Petitioner's variance application. The ZBA issued a resolution on the matter on December 8, 2023. It is ostensibly this resolution from which she has appealed to this Court, however, because the Petition is not entirely clear the Court will also address the decisions made in the hearing itself to the extent that they differ from those in the resolution.

I

Zoning Boards of Appeal were created to interpret, reflect and ensure the validity of zoning laws through the exercise of administrative discretion (*Tall Trees Construction Corp. v Zoning Bd. of Appeals of the Town of Huntington*, 97 NY2d 86 [2001]). In order to accomplish those goals, they are empowered to review and interpret local zoning laws in order to enforce them (*Frishman v Schmidt*, 61 NY2d 823 [1984]). Judicial review of a ZBA decision is limited to determining whether or not the decision is illegal, arbitrary and capricious or an abuse of discretion (*Pomponio v DeChance*, 216 AD3d 1165 [2nd Dept. 2023]). Such a decision is entitled to great deference and will only be upset if shown to be arbitrary and capricious, irrational or lacking substantial evidence (*Id.*). Indeed, if the decision is found to be rational then the courts are not permitted to substitute their judgment for that of the ZBA, even if it would have reached a different conclusion based upon the same set of evidence (*Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d 219 [2007]). The court's role in such a scenario is simply to determine whether or not the decision was rational and *not* to substitute its judgment for that of the agency, nor weigh the desirability or the determination, nor choose among various alternatives (*Id.*).

Addressing first, the decision to affirm the denial of the Petitioner's application for a building permit. The Court agrees with the Respondent that the Petitioner's fundamental lack of understanding of zoning laws, despite her being an attorney in New York, has led to this litigation. As stated above, the reasons for the building permit denial were that the Building Inspector considered the garage apartment to be a cottage and the ZBA's analysis flowed from this premise. The Petitioner's property, despite being approximately 12 acres, is located within

3

A-229

FILED: WESTCHESTER COUNTY CLERK 02/09/2024 04:43 PM
NYSCEF DOC. NO. 97

INDEX NO. 71446/2023
RECEIVED NYSCEF: 02/09/2024

Case 7:25-cv-02618-CS    Document 45-2    Filed 07/11/25    Page 4 of 9

the R-1A zone, which sets the minimum lot size for that zone at 1 acre (Bedford Town Code sec. 125-4). Accordingly, Petitioner's lot, despite the size of it relative to the minimum lot size, is to be used in accordance with the zone in which it is situated (Bedford Town Code sec. 125.10). Generally, "There shall be not more than one main building and its accessory building on each minimum size lot…," however, "On one undivided parcel of land in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted, provided, however, that in each such instance, all main and accessory buildings must conform to all lot requirements…as if such buildings were placed on two separate and independent parcels of land" (Bedford Town Code se. 125-12). An accessory building is defined as, "a building subordinate to the principal building on the lot and used for purposes customarily incidental to that of said principal building," an accessory apartment is defined as "a single dwelling unit which is incidental and subordinate to a principal one-family residence and located on the same lot therewith, where either unit is occupied by the owner of the premises," a principal building is, "a building in which is conducted the main or principal use of the lot on which said building is situated," and a cottage is, "a single dwelling unit within an accessory building which is incidental and subordinate to a principal one-family residence and located on the same lot therewith, where either unit is occupied by the owner of the premises." (Bedford Town Code sec. 125-3). In his building permit denial, the Building Inspector told the Petitioner that the apartment that was created in her garage was, in fact, a cottage rather than an accessory apartment because it was a "single dwelling unit within an accessory building" and it's creation, that is, the installation of a bathroom, kitchen and living area was done without the necessary approval from the Town and in any event, cottages are not permitted within the R-1A zone. The maintenance of a cottage on a property is subject to a special use permit. Special use permits, as opposed to variances, confer the authority to use land in a manner expressly permitted by the zoning code; variances are permission to use the land in a manner not expressly permitted by the zoning code (*Sunrise Plaza Associates, L.P. v Town Bd. of Town of Babylon*, 250 AD2d 690 [2nd Dept. 1998]). In other words, "The special permit uses for which conformance to additional standards is required by this chapter are *deemed to be permitted uses in their respective districts…*" (Bedford Town Code sec. 125-57, *emphasis added*). The only place in the Bedford Zoning Code that authorizes the use of cottages at all is under the special use permit section where is expressly states that "In the R-2A and R-4A Districts, the Planning Board may grant a special permit to create a cottage in an existing accessory building…" (Bedford Town Board sec. 125-79.1). The legal maxim *inclusion unius est exclusio alterius* supports the Town's interpretation that, because the Town Zoning Code includes only two Districts in which cottages are permitted and by special use permit at that, that the remaining districts are necessarily excluded by their omission from the code. And in any event, even in those two districts where cottages are permitted by special use permits, there can be only one cottage on any given lot in those districts. The Petitioner already has a legal pre-existing, non-conforming cottage on her property. Additionally, although the Zoning Code also allows accessory apartments in any of the residential districts, an accessory apartment is only allowed by way of special use permit and then, it may not be located in an accessory building, which clearly, the apartment in question, is. Accordingly, with respect to this issue, the Petitioner has not shown the ZBA's decision to be improper.

Turning towards the Petitioner's other argument, that the garage apartment should be permitted because the Petitioner's lot is more than twice the minimum lot size, thus capable of containing, "no more than two main buildings and their accessory buildings" as long as, "all

4

A-230

FILED: WESTCHESTER COUNTY CLERK 02/09/2024 04:43 PM
INDEX NO. 71446/2023
NYSCEF DOC. NO. 97 Case 7:25-cv-02618-CS   Document 45-2   Filed 07/11/25   Page 5 of 9 RECEIVED NYSCEF: 02/09/2024

main and accessory buildings must conform to all lot requirements...as if such buildings were placed on two separate and independent parcels of land" is likewise, unavailing. In the ZBA's December 8, 2023 resolution, one of the reasons for their denial was that the Petitioner did not include in her application, "a proposed plan and zoning table showing that *each of the buildings on the property* would conform with all the lot requirements as if the buildings were placed on two separate and independent parcels of land." Looking at her application (Document 42), she did provide a map showing a proposed plan for the building in question with the remarks on the survey that, "setbacks are to Garage with apartment". The Zoning Code is clear that *all main and accessory buildings must conform to the lot requirements* and it is a reasonable interpretation to mean that that requires a showing that each building is in compliance in relation to the rest of the buildings. Although the Petitioner has provided a document as an exhibit to *this* action (Document 7) which purports to show the garage apartment on a conforming lot, it was not part of the original application and thus the Court may not consider it and in any event, there is no indication as to what exactly it is. Even taking the Petitioner at her word, that Document 7 shows what she purports it to show and that she tried to append it into her application already on record at the November 2, 2023 ZBA hearing, it still does not demonstrate that the other two buildings on the property, the principal building and the pre-existing, non-conforming cottage are in conformity with the Zoning Code as they relate to the garage apartment. The ZBA's decision to deny her application because of that was not irrational in so far as they decided that the application did not demonstrate compliance with the Zoning Code requirements, nor, for that matter, does the survey that the Petitioner tried to introduce at the hearing and then attached as an exhibit to this action.

In so far as the Petitioner is complaining that the ZBA would not allow her to legally file architectural drawings, as best as the Court can tell, the Petitioner is referencing her attempt, in the middle of the ZBA hearing, to file the above mentioned plans (Document 7). Throughout this case the Petitioner has shown nothing but contempt for the rules of orderly procedure. Her attempt to file plans in the middle of the hearing is one such example. Bedford Town Code sec. 125-129 defines the ZBA's role as having the power to review, on appeal, the record of a decision rendered by an, "administrative officer or agency charged with enforcement of this chapter." Simply put, if the Petitioner had wanted those plans to have been considered by the ZBA, they should have been included as part of the original application. Or alternatively she could have reapplied rather than attempting to shoehorn them into a ZBA hearing in progress. The ZBA was not unreasonable for not accepting such impromptu exhibits that were not part of the original application. There is a procedure for applying for building permits and there is procedure for appealing the outcome of those permits. They are separate. Simply because the Building Inspector did look at them and opine on them during the ZBA hearing, and against the Petitioner, at that, does not mean that they were properly before the ZBA for them to consider.

Next, to the extent that the Petitioner sought a special use permit to in order to legalize the rental of her garage apartment as being a customary home occupation. The term *occupation* as it is used in this sense is not the act of occupying, as in possessing, rather it refers to a job that has customarily been associated with being performed within a home (*Simon v Board of Appeals on Zoning of the City of New Rochelle*, 208 AD2d 931 [2nd Dept. 1994]; *See also*; *Occupation*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/occupation. Accessed 2 Feb. 2024). In any event, the question of whether a special use permit should be issued for such a customary home occupation is not

5

A-231

FILED: WESTCHESTER COUNTY CLERK 02/09/2024 04:43 PM
NYSCEF DOC. NO. 97
INDEX NO. 71446/2023
RECEIVED NYSCEF: 02/09/2024

Case 7:25-cv-02618-CS    Document 45-2    Filed 07/11/25    Page 6 of 9

within the jurisdiction of the ZBA. Rather, the Planning Board is the agency with the authority to issue such a permit, so the ZBA denying the Petitioner a Customary Home Occupation permit was entirely rational because they don't have the authority to do so (Bedford Town Code 125-28[B]).

Turning now to the denial of the Petitioner's application for a use variance to allow her legalize her garage apartment. In order to grant a use variance, as opposed to an area variance, the ZBA must find upon an applicant's showing, that for each and every permitted use under the zoning regulations for the particular district where the property is located, (1) the applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence; (2) the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) the requested use variance, if granted, will not alter the essential character of the neighborhood; and (4) the alleged hardship has not been self-created (Town Law sec. 267-b(2)(b); Bedford Town Code sec. 125-129 [C][2][a]). An applicant for a use variance must make a showing of each element set forth (*Westbury Laundromat, Inc. v Mammina*, 62 AD3d 888 [2nd Dept. 2009]). Here, the ZBA found that the Petitioner did not make such a showing. At several points throughout the hearing the ZBA members, seemingly skeptical about whether the evidence the Petitioner set forth was sufficient for a use variance, asked the Petitioner if she wanted to adjourn the hearing so that she could supplement her application with more information. The Petitioner unequivocally refused the opportunity to do so and because she did not, the ZBA made a determination upon the Petitioner's application as it was submitted. Critically, among those determinations are that the Petitioner failed to show that, "she cannot realize a reasonable return by using the Property as a single family residence (which also has a pre-existing, non-conforming cottage which the Court understands is also being rented for income) without a second residential apartment and has not shown substantial, competent financial evidence with respect to this factor;" and that, "the alleged hardship has been self-created. While it is not clear from the record when the second floor of the garage was converted from a recreational use to a residential apartment use, based on first-hand knowledge of one of the…members, it was confirmed that the residential apartment did not exist in 2013/2014 when the Property was up for sale," and that "While it is not clear as to whether the Applicant did or did not personally create the alleged hardship, the residential apartment use over the garage was not legal even at the time the Applicant would have purchased the Property and the Applicant should have known that it was not legal to have a residential apartment use in the garage structure without appropriate approvals. Thus the hardship must be considered self-created." Upon the forgoing determinations made by the ZBA and a review of the evidence underpinning those determinations, the Court finds that there is a rational basis supporting the conclusions that the Petitioner was unable to satisfy the four required factors in order to receive a use variance. Accordingly, the ZBA's determination denying the Petitioner such a variance was entirely reasonable.

II

While this matter was *sub judice* the Petitioner filed three motions, the first, the Court will interpret as a motion to disqualify itself, the second was for a change of venue and the third was for an order of discovery. The Court notes that the Petitioner has been attempting to litigate

6

FILED: WESTCHESTER COUNTY CLERK 02/09/2024 04:43 PM
NYSCEF DOC. NO. 97

INDEX NO. 71446/2023
RECEIVED NYSCEF: 02/09/2024

Case 7:25-cv-02618-CS   Document 45-2   Filed 07/11/25   Page 7 of 9

her Petition via a letter writing campaign after the issue had been joined by the Respondents and the matter having been fully submitted.

On January 26, 2024 the Court received a letter filed in NYSCEF by the Petitioner. The letter itself is dated January 27, 2024 that asked the Court, *inter alia*, "an affirmative indication that there is not a conflict for this Court regarding the Hon. Anthony Scarpino, Jr. family's connection to this case." Her reasoning, the Court supposes, was that because the tenants of her illegal apartment who brought the matter to the Town of Bedford's attention are related to a former judge in the Westchester County Courthouse and was the former District Attorney for Westchester County, that somehow this Court would be inclined to let that influence its decision making process. The Petitioner was told that, "...the Court will not be giving you an affirmative indication that there is or is not a conflict of interest simply because your tenants are related to a former judge and District Attorney." She was then informed that, "Judges are presumed to be impartial; it is a central tenet to the justice system as a whole. Judiciary Law section 14 lists the scenarios in which a judge is disqualified from hearing a case." Finally the Court informed the Petitioner that none of the Judiciary Law section 14 disqualifiers applied in this case. The Petitioner added the Court's correspondence to the NYSCEF record of this case as Document 69. The Petitioner then filed a letter with the Court under a heading, "request for disclosure if judicial conflict exists" (Document 70). In this letter the Petitioner goes on a rant that at best can be described as a mischaracterization of the evidence that was submitted by her and by the Respondents in this action and at worst can be viewed as an airing of paranoid conspiracy theories that the Town and now the Court system has maliciously conspired against her because they are somehow doing the bidding of a former judge and District Attorney in, what the Court supposes the Petitioner views as some sort of revenge for what, the Court has no idea. In this letter the Petitioner alleges that the case does not pass the "sniff test". The Court will assume this letter is the Petitioner's motion for the Court's recusal and address it as such. As legal support for her recusal motion the Petitioner seemingly ignores statutes and case law for recusal or disqualification and instead relies upon 20 NYCRR 3000.8 which governs the recusal hearing officers of the New York State Tax Appeals Tribunal. The Court has already told the Petitioner that none of the Judiciary Law section 14 disqualifications apply and that absent one of those, the Judge is the "sole arbiter of the need for recusal and this 'discretionary decision is within the personal conscience of the court when the alleged appearance of impropriety arises from the inappropriate awareness of 'nonjudicial data'" (*Silber v Silber*, 84 AD3d 931 [2nd Dept. 2011]). Here, the Court is unaware of any "nonjudicial data" which would impair its impartiality. While the Court is certainly aware of who former Judge Anthony Scarpino is there is nothing in the Court's relationship with him that would in any way alter the Court's impartiality. Nor is the Petitioner able to point to anything other than loaded questioning and baseless conspiratorial allusion that there might be any way that simply knowing that the tenant who brought the Petitioner's illegal apartment to the Town's attention was, what is presumed to be the former Judge Scarpino's child, would somehow, someway have any bearing on the Court's decision making process or its ability to render an impartial decision.

Next, the Petitioner has moved, again, using her baseless conspiracy theories and loaded questioning as her reasons, for a change of venue to New York County. The thrust of her argument is that, "the relationship between the Westchester government, including the Supreme Court of Westchester and the Firm of Keane & Beane, creates a strong probability that Petitioner will not be able to obtain a fair trial" and "Here, the party that brought the initiating complaint to

FILED: WESTCHESTER COUNTY CLERK 02/09/2024 04:43 PM
NYSCEF DOC. NO. 97

INDEX NO. 71446/2023
RECEIVED NYSCEF: 02/09/2024

Case 7:25-cv-02618-CS     Document 45-2     Filed 07/11/25     Page 8 of 9

the Building Department is Hon. Anthony Scarpino's Son-in-Law, Brent Hampson. **The email proving** the same is NYSEF (sic) doc. 50. **There is a redacted name on that email**, which may or may not be the Hon. Anthony Scarpino's name. **Why is the name redacted? This document is a factual assertion which is in the record and was filed by the Respondent as NYSCEF doc. 50)**(sic)**(emphasis supplied by Petitioner)."** Petitioner goes on to conclude that based on former Judge Scarpino's, the Court notes inconsequential to non-existent, involvement in this case, that, "There is therefore a very good possibility of a relationship between the Judges presiding in the Supreme Court House and the relevant potential witnesses in this case." The Court agrees with the Respondents that, "The Petitioner's continued conduct and propagation of conspiracy theories…wild conjecture, innuendo and empty accusations do not warrant a change of venue." That is so because, the proponent of a change of venue application is, "required to come forward with facts demonstrating a strong possibility that an impartial trial of the action could not be obtained" (*Albanese v West Nassau Mental Health Ctr.*, 208 AD2d 665 [2nd Dept. 1994]). Further, "mere belief, suspicion or feeling are not sufficient grounds" for granting such a motion (*Id.*). Moreover, the, "mere fact that a party to an action is of some prominence or holds an official position in the county does not justify an inference that an impartial trial cannot be held in that county" (*Ingo v Casey*, 175 Misc. 805 (Sup. Ct. Westchester Co. 1940). The Petitioner's motion is devoid of any factual basis and instead relies upon belief, suspicion and her feeling that something is amiss; however, none of her assertions sufficiently demonstrates the existence of a *strong possibility* or even a remote possibility that an impartial trial cannot be obtained. Finally, as evidenced by this Decision and Order, there is no triable issue as to the ZBA's determinations; the underlying record is sufficient for the Court to see how their decision was made. Article 78 proceedings are not a forum for relitigating issues that were or should have been before the agency, however, if the Court finds it impossible to determine the matter from the submitted papers, then it may order a trial in order to determine whether the agency's determination is adequately supported (*Cotazino v New York State Adirondack Park Agency*, 214 AD3d 1137 [3rd Dept. 2023]). The Court, in this case, does not need to hear live testimony, or even oral argument, in order to make that determination. The parties have made their respective positions perfectly clear and the underlying record is more than adequate for the Court to make its determination. Accordingly the Court will not order a trial on the matter.

Finally, inasmuch as the Petitioner has moved for discovery in this case (*See*, Document 66) that is denied as well. The Petitioner submitted a letter to the Court, seeking leave to conduct discovery. The letter, in the Court's opinion, amounts to nothing more than a fishing expedition designed to indulge the aforementioned conspiracy theories involving former Judge and District Attorney Anthony Scarpino. That issue is nothing but collateral, because as the Court has explained above, the ZBA's decision rests on an adequate foundation. In all her missives, the Petitioner has yet to identify why a former Judge and District Attorney would carry any influence over a ZBA proceeding or even what motive he would have to thwart the Petitioner from legalizing an illegal apartment. As best the Court can tell, the Petitioner rented her illegal apartment to Judge Scarpino's daughter and son-in-law. *They*, as tenants, had an issue with the Petitioner's response to a broken stairway in the apartment and then on their own went to the Town to seek recourse. If anything, it seems like the Petitioner would be the one with the motive to seek retribution, seeing as her tenants were the ones that exposed the illegal apartment and according to her have caused her economic hardship. In any event, Courts have broad discretion over whether to direct discovery in an article 78 proceeding (*Id.*). The Court is, however, supposed to balance the needs of the party seeking discovery against such opposing interests as

8

A-234

FILED: WESTCHESTER COUNTY CLERK 02/09/2024 04:43 PM
NYSCEF DOC. NO. 97
INDEX NO. 71446/2023
RECEIVED NYSCEF: 02/09/2024

Case 7:25-cv-02618-CS    Document 45-2    Filed 07/11/25    Page 9 of 9

expediency and confidentiality (*Id.*). Here, the Court can see no legitimate need for the Petitioner to gain the kind of discovery she seeks only to propagate her baseless theories and in requesting it, she has only served to delay a decision of which she, herself, has repeatedly sought expediency, citing that delay is causing her vague economic hardship by her inability to rent the apartment.

It should go without saying that based on the forgoing Decision and Order, the Court will not be ordering any kind of damages, costs, or attorney's fees to the Petitioner. Each party is to bear their own costs in litigating this matter.

Accordingly, the Petition is DENIED for the reasons articulated above and the Respondent's Order to Show Cause which was signed by the Court (Document 84) is VACATED as moot.

The foregoing constitutes the opinion, decision and order of this court.

Dated:        White Plains, New York
              February   9  , 2024

                                        _____
                                        Honorable George E. Fufidio, A.J.S.C.

TO: New York Courts Electronic Filing System

9

A-235

9 of 9

TOWN JUSTICE COURT: TOWN OF BEDFORD
STATE OF NEW YORK: COUNTY OF WESTCHESTER
-------------------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK,

                                                     **DECISION & ORDER**

        - against -

                                            Docket No: 24-050200

MELANIE HAMMER,

                        Defendant.

-------------------------------------------------------------------------X

On June 11, 2024, a criminal proceeding was commenced in which the Defendant, Melanie Hammer, was arraigned on seven counts of violating the Town Code of the Town of Bedford.

The Defendant filed a motion dated July 15, 2024, seeking dismissal of the charges pursuant to Criminal Procedure Law ("CPL") §§ 170.40; 100.40; 100.15; and 30.30(1)(d). On August 12, 2024, the Court received a letter from counsel for the Town of Bedford purporting to address the motion and specifically indicating that the Town intends "to withdraw the charges . . . thereby mooting the motion to dismiss." Counsel asked "that the charges against Defendant be deemed withdrawn."

                          \*    \*    \*

One of the grounds for dismissal cited by the Defendant in her motion, is the facial insufficiency of the information. CPL §§ 100.15, 100.40. Facial sufficiency is a jurisdictional requirement to proceed with prosecution. People v Case, 42 NY2d 98 (1977). In their letter, the prosecution agreed with the Defendant that the accusatory instrument is "deficient", and declared their intent to "withdraw the instant accusatory instrument".

The proper procedure would be for the prosecutor to move the Court to dismiss the information or to file a superseding information. CPL § 100.50; People v Hardy, 35 NY3d 466 (2020); People v Minott, 70 Misc3d 1217(A) (Crim Ct NY Co 2021). While the prosecution has done neither, in any case, there is also the issue of the Defendant's right to a speedy trial pursuant to CPL § 30.30.

The time limitation on the prosecution of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a violation and none of which is a crime, is 30 days. CPL § 30.30(1)(d). "...The prosecution shall not be deemed ready for trial for purposes of [CPL §] 30.30 ... until it has filed a proper certificate [of compliance] pursuant to

subdivision one of this section." CPL § 245.50(3).

In the case at bar, the Defendant is charged with seven offenses/violations of the Town Code. None of the offenses is a crime. The 30.30 clock started running on the date of the arraignment (June 11, 2024) and no adjournments were requested/granted. The prosecution never filed a certificate of compliance indicating trial readiness. Of note, even if a superceding information had been filed, the prosecution's deadline to declare their readiness for trial would relate back to the date of the arraignment. As determined by the Court of Appeals, "there 'can be only one date which marks the commencement of [a criminal] action' for the purposes of CPL 30.30, 'the date on which the first accusatory paper is filed.'" People v Sinistaj, 67 NY2d 236 (1986) citing People v Lomax, 50 NY2d 351 (1980).

## CONCLUSION

As both sides agree, the accusatory information is facially insufficient and the Court finds that it is therefore in violation of CPL §§ 100.40 and 100.15. Further, in accordance with CPL § 30.30(1)(d), since no certificate of compliance was filed within 30 days of the arraignment date, the Court finds that the Defendant was deprived of her right to a speedy trial. It is therefore the order and determination of the Court that the Defendant's motion to dismiss pursuant to CPL §§ 100.40; 100.15; and 30.30(1)(d) is granted, and the present case is dismissed without prejudice.

Except to the extent set forth herein, the Defendant's motion is denied.

The foregoing determination notwithstanding, the Court recognizes that this dismissal does not remedy the situation of alleged ongoing violations of the Town Code, which, it is claimed, require remediation by the Defendant. The parties should be guided accordingly.

SO ORDERED.

Dated: August 28, 2024
Bedford, New York

ENTERED: August 28 2024

Hon. Jodi Kimmel
Town Justice

Amy LeFevre, Court Clerk

2

A-237

TO:    Keane & Beane, P.C.
       445 Hamilton Avenue, Suite 1500
       White Plains, NY 10601
       Attn: Robert C. Zitt, Esq.

       Melanie Hammer, Esq.
       *Defendant, Pro Se*
       360 Court Street, Suite 3
       Brooklyn, NY 11231

3

STATE OF NEW YORK: COUNTY OF WESTCHESTER
JUSTICE COURT:  TOWN OF BEDFORD

———————————————————————————x

PEOPLE OF THE STATE OF NEW YORK

        -against-

MELANIE HAMMER,

            Defendant

———————————————————————————x

DECISION AND ORDER
Case No. 24090030

A criminal proceeding was commenced against Defendant on August 29, 2024, by the filing of a Notice to Appear and Information by the Town of Bedford relating to offenses allegedly committed at 146 Goldens Bridge Road, in the Town of Bedford, New York, on or about April 27, 2024 to the present.

The Information contained seven counts, all of which were alleged to be continuing violations commencing on April 27, 2023 and continuing to the date of the Information; they did not relate to one violation on a specific date.

The People filed a Certificate of Compliance and Notice of Readiness on September 18, 2024.

On the same date Defendant, an attorney acting pro se, filed a motion in this Court to "dismiss this case in the Interest of Justice under CPL 170.40 and CPL 40.20, inter alia" (Defendant's Affirmation at p. 2).

To fully understand this matter it is necessary to recite salient background information.

(a)     A criminal proceeding was commenced in the Town of Beford Justice Court on June 11, 2024, charging Defendant with essentially the same seven counts of violating the Town Code of the Town of Bedford on April 27, 2023.

(b)     Defendant filed a motion to dismiss on July 15, 2024, seeking dismissal of the charges.

(c)     On August 12, 2024, the People submitted correspondence to the Court indicating their intent to withdraw the accusatory instrument due to technical deficiencies in the Accusatory Instrument.

(d)    By Decision and Order dated August 28, 2024, the Court (by the Hon. Jodi Kimmel) dismissed the charges pursuant to CPL §§ 100.40, 100.15 and 30.30(1)(d), without prejudice. As noted in the Affirmation of Robert Zitt in Opposition, at Par. 10, "The Court also expressly recognized that the dismissal '[did] not remedy the situation of alleged ongoing violations of the Town Code.'"

(e)    The People thereupon filed a new Accusatory Instrument, relating to the same violations but including dates from April 27, 2023 to the filing of the new Instrument, prompting Defendant to file the instant motion to dismiss.

The new Accusatory Instrument is defective, and for that reason only Defendant's motion to dismiss is granted.

Facial insufficiency is a jurisdictional requirement to proceed with prosecution. *People v. Case*, 42 NY2d 98 (1977).

Criminal Procedure Law § 100.40(1) provides in its entirety:

An information, or a count thereof, is sufficient on its face when:

(a)    It substantially conforms to the requirements prescribed in section 100.15; and

(b)    The allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of the information; and

(c)    Non-hearsay allegations of the factual part of the information and/or of any supporting depositions establish, if true, every element of the offense charged and the defendant's commission thereof.

Criminal Procedure Law § 100.15 sets forth the form and content of an Accusatory Instrument.

The Accusatory Instrument filed on August 28, 2024 does not meet the requirements of CPL § 100.15. The Information cites sections of statutes which are alleged to have been violated but does not provide allegations regarding specific dates that occurred on any date other than April 27, 2023, which is the date already adjudicated by Judge Kimmel. The recitation of "Facts" by the Complainant, Angel Oya, the Town's Code Enforcement Officer, states specifically that the date he witnessed the violation was April 27, 2023. In addition, simple recitation of broad sections of statutes does not provide the Defendant or the Court with sufficient specificity a precise description of the violations alleged to have occurred.

2

A-240

The motion to dismiss is therefore granted only for the reason that the Accusatory Instrument is deficient.

As Judge Kimmel recognized in her August 28, 2024 decision, the granting of Defendant's motion to dismiss does not remedy the situation of alleged ongoing violations of the Town Code, which the Town claims required remediation by the Defendant. This matter is therefore not dismissed with prejudice.

This matter had been calendared for November 19, 2024. However, because Defendant's motion to dismiss is granted the matter is ordered off the calendar and will not be heard on November 19, 2024.

Dated: Bedford Hills, New York
November 11, 2024

Hon. David A. Menken
Bedford Town Justice

Enter:

_____          ___11/12/2024___
Court Clerk                            Date

3

A-241

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
Melanie Hammer,

                                            Docket No.: 25-CV-02618(CS)

                Plaintiff,

        -against-

Town Of Bedford New York, Department of Building
Bedford new York, Zoning Board of Appeals Bedford
New York, Building Inspector Town of Bedford New
York (Albert Ciraco), Attorney for the Town of Bedford
York (Eric Gordon, Esq. & Robert Zitt, Esq.)

                Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Of Counsel*:  Gerald S. Smith

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**……………………………………………………..1

**FACTUAL BACKGROUND**…………………………………………………………1

    **The Plaintiff's Article 78 Petition**………………………………………………1
    **The Criminal Proceedings**……………………………………………………3

**STANDARD OF REVIEW**………………………………………………………...4

**ARGUMENT**

    **POINT I**

    **PLAINTIFF IS PRECLUDED FROM RELITIGATING ISSUES THAT
    FORM THE BASIS FOR MANY OF HER CAUSES OF ACTION**…..……………...6

        **A. The Issues That Form The Basis For Many Of Plaintiffs' Causes Of
        Action Have Been Litigated And Decided** ………………………………....6
        **B. Plaintiff Is Precluded From Relitigating The Issues Decided By
        The State Supreme Court** ………………………………………………...8
        **C. Plaintiff's First, Second, Fourth, Sixth, And Seventh Causes Of Action
        Must Therefore Be Dismissed** …………………………………………9

    **POINT II**

    **PLAINTIFF HAS FAILED TO STATE A CLAIM FOR THE DENIAL
    OF DUE PROCESS**………………………………………………………………10

        **A. Plaintiff Has Not Pled Facts Regarding A Property Interest**……………11
        **B. Plaintiff Has Not Pled Facts Suggesting She Was Deprived Of
        Due Process**…………………………………………………………….13
        **C. Plaintiff's Third Cause Of Action Should Be Dismissed**…………………14
        **D. Plaintiff's Fifth Cause Of Action Should Be Dismissed**…………………15
        **E. Plaintiff's Eighth Cause Of Action Should Be Dismissed**………………..16
        **F. Plaintiff's Ninth Cause Of Action Should Be Dismissed**…………………17

    **POINT III**

    **PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE TAKINGS
    CLAUSE**………………………………………………………………………...18

**POINT IV**

**PLAINTIFF'S CLAIMS BASED UPON THE CRIMINAL PROCEEDINGS
SHOULD BE DISMISSED**……………………………………………………………….20

 **A. Plaintiff's Claims Against Defendants Gordon And Zitt Are
  Precluded By Prosecutorial Immunity**……………………………………………20
 **B. Plaintiff Has Failed To State A Claim For Malicious Prosecution**……………...22
 **C. Plaintiff Has Failed To State A Claim Based Upon Alleged Brady And/Or
  Speedy Trial Violations**………………………………………………………….22

**POINT V**

**THE BEDFORD DEPARTMENT OF BUILDINGS IS NOT A SUEABLE ENTITY**…….24

**POINT VI**

**THE INDIVIDUAL DEFENDANT ALBERT CIRACO IS ENTITLED TO
QUALIFIED IMMUNITY**………………………………………………………………….24

**CONCLUSION**…………………………………………………………………………25

## TABLE OF AUTHORITIES

### *Cases*

*33 Seminary LLC v. The City of Binghamton*,
670 F. App'x 727 (2nd Cir. 2016)............................................................................25
*Ambrose v. City of New York*,
623 F.Supp.2d 454 (S.D.N.Y. 2009)........................................................................24
*Anemone v. Metro. Transp. Auth.*,
629 F.3d 97 (2nd Cir. 2011)....................................................................................14
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................4,5
*Barnett v. City of Yonkers*,
2018 WL 4680026 (S.D.N.Y. Sept. 28, 2018)........................................................23
*Barrows v. Burwell*,
777 F.3d 106 (2nd Cir. 2015)..................................................................................11
*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007)...............................................................................................4,5
*Bernard v. County of Suffolk*,
356 F.3d 495 (2nd Cir. 2004).............................................................................21,22
*Blount v. Moccia*,
2017 WL 5634680 (S.D.N.Y. Nov. 21, 2017).........................................................23
*Brady v. Town of Colchester*,
863 F.2d 205 (2nd Cir. 1988).............................................................................15,18
*Brandon v. City of N.Y.*,
705 F. Supp. 2d 261 (S.D.N.Y. 2010)......................................................................9
*Breen v. Garrison*,
169 F.3d 152 (2nd Cir. 1999)..................................................................................22
*Catania v. United Fed'n of Tchrs.*,
2025 WL 638625 (S.D.N.Y. Feb. 27, 2025)...........................................................13
*Chislett v. New York City Dep't of Educ.*,
723 F. Supp. 3d 285 (S.D.N.Y. 2024)....................................................................23
*Cine SK8, Inc. v. Town of Henrietta*,
507 F.3d 778 (2nd Cir. 2007)..................................................................................11
*Crown Castle Fiber LLC v. Town of Oyster Bay*,
2024 WL 1051171,n.1 (E.D.N.Y. Jan. 19, 2024)...................................................24
*D'Alessandro v. City of New York*,
713 F. App'x 1 (2d Cir. 2017)................................................................................22
*Davila v. Johnson*,
2015 WL 8968357, (S.D.N.Y. Dec. 15, 2015)........................................................23
*Davis v. Scherer*,
468 U.S. 183 (1984)................................................................................................15
*Dean v. Town of Hempstead*,
2024 WL 3849688 (E.D.N.Y. Aug. 16, 2024).........................................................19
*Dominguez v. Walsh*,
2025 WL 618868 (S.D.N.Y. Feb. 26, 2025)............................................................21

iii

*Franza v. Stanford*,
2018 WL 914782 (S.D.N.Y. Feb. 14, 2018)..................................................................8
*Hall v. City of White Plains*,
185 F. Supp. 2d 293 (S.D.N.Y. 2002)........................................................................24
*Harlen Assocs. V. Mineola*,
273 F.3d 494 (2nd Cir. 2001)....................................................................................12
*Harris v. Mills*,
572 F.3d 66 (2nd Cir. 2009)........................................................................................5
*Harrison v. County of Nassau*,
2016 WL 4083381 (E.D.N.Y. Aug. 1, 2016)............................................................22
*Hill v. City of New York*,
45 F.3d 653 (2nd Cir. 1995)................................................................................20,21
*Hudson v. Palmer*,
468 U.S. 517 (1986)...................................................................................................13
*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2nd Cir. 2007)........................................................................................5
*Kapps v. Wing*,
404 F.3d 105 (2nd Cir. 2005)....................................................................................11
*Lopez v. Heritage of Pride, Inc.*,
2019 WL 6529317 (S.D.N.Y. Dec. 3, 2019)..............................................................5
*Lucas v. South Carolina Coastal Council*,
505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)........................................18
*MacFawn v. Kresler*,
88 N.Y.2d 859 (1996)................................................................................................23
*Manganiello v. City of New York*,
612 F.3d 149 (2nd Cir. 2010)....................................................................................22
*McClean v. County of Westchester*,
2018 WL 6329420 (S.D.N.Y. Dec. 3, 2018)............................................................24
*McKithen v. Brown*,
481 F.3d 89 (2nd Cir. 2007)........................................................................................9
*Miller v. Wolpoff & Abramson, L.L.P.*,
321 F.3d 292 (2nd Cir. 2003)......................................................................................4
*Natale v. Town of Ridgefield*,
170 F.3d 258 (2nd Cir.1999)......................................................................................12
*Nnebe v. Daus*,
931 F.3d 66 (2nd Cir. 2019)......................................................................................10
*Ortiz v. Russo*,
2015 WL 1427247 (S.D.N.Y. Mar. 27, 2015)............................................................8
*Pollnow v. Glennon*,
757 F.2d 496 (2nd Cir. 1985)................................................................................15,16
*Radwan v. Manuel*,
55 F.4th 101 (2nd Cir. 2022)....................................................................................10
*Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*,
746 F.3d 538 (2nd Cir. 2014)....................................................................................10
*Ruotolo v. City of New York*,
514 F.3d 184 (2nd Cir. 2008)......................................................................................5

*Sadowski v. City of New York*,
732 F.2d 312 (2nd Cir. 1984)........................................................................................19
*Sag Harbor Port Assocs. v. Vill. of Sag Harbor*,
21 F. Supp. 2d 179 (E.D.N.Y. 1998)............................................................................19
*Savino v. City of New York*,
331 F.3d 63 (2nd Cir. 2003)..........................................................................................22
*Schenk v. Citibank/Citigroup/Citicorp*,
2010 U.S. Dist. LEXIS 130305 (S.D.N.Y. 2010)...........................................................6
*Shmueli v. City of New York*,
424 F.3d 231 (2nd Cir. 2005)........................................................................................21
*Simmons v. Casella*,
2024 WL 3202769 (E.D.N.Y. June 27, 2024)...............................................................25
*Swiatkowski v. Citibank*,
745 F. Supp. 2d 150 (E.D.N.Y. 2010).............................................................................8
*Tara Circle, Inc. v. Bifano*,
1997 WL 399683,n.3 (S.D.N.Y. July 15, 1997)............................................................12
*Terry Bilson v. City of New York*,
2025 WL 1184410 (S.D.N.Y. Apr. 23, 2025)................................................................13
*Tracy v. Freshwater*,
623 F.3d 90 (2nd Cir. 2010)........................................................................................5,8
*Vanderveer v. Zoning Bd. of Appeals Town of E. Hampton*,
2021 WL 3745741 (2d Cir. Aug. 25, 2021)..............................................................14,18
*Vasquez on behalf of J.V. v. N.Y.C. Dep't of Educ.*,
2024 WL 1332822 (S.D.N.Y. Mar. 28, 2024).................................................................9
*Yu v. Inc. Vill. of Oyster Bay Cove*,
579 F. Supp. 3d 391 (E.D.N.Y. 2022)...........................................................................19
*Zahra v. Town of Southold*,
48 F.3d 674 (2nd Cir. 1995).....................................................................................12,25

## **Statutes**

*U.S. Const., Amend. V*.................................................................................................18

## **Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................................4,5
FRCP 12(b)(6)........................................................................................*passim*

v

**PRELIMINARY STATEMENT**

The Defendants, Town of Bedford, Bedford Department of Buildings, Bedford Zoning Board of Appeals, Alberto Ciraco, Eric Gordon, Esq. and Robert Zitt, Esq., (collectively "Defendants"), by and through their attorneys, SILVERMAN & ASSOCIATES, respectfully submit this Memorandum of Law in support of their Motion to Dismiss, with prejudice, the Plaintiff's Amended Complaint for failing to state a claim under FRCP 12(b)(6), and for such other and further relief as this Court deems appropriate.

**FACTUAL BACKGROUND**

Since this is a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the underlying facts in Plaintiffs' Second Amended Complaint are all construed as true and, as a result, are of limited relevance to the arguments in this motion. Indeed, it is the facts absent from the Amended Complaint that bear upon the disposition of this motion. Therefore, Defendants respectfully refer the Court to the Plaintiff's Amended Complaint (the "Complaint" or "Cmplt."), a copy of which is attached at Exhibit A to the Declaration of Gerald S. Smith (the "Smith Dec."), for a full recitation of the alleged facts and will refer to specific assertions in the Complaint when appropriate. At the same time, however, this matter is inextricably linked with legal proceedings that preceded it, including the dismissal of Plaintiff's Article 78 Petition and the two criminal proceedings initiated against Plaintiff. As is set forth in this Memorandum, those proceedings have preclusive effects on many of Plaintiff's causes of action and what follows is a summary of them. In addition, documents relevant to the prior proceedings are attached as Exhibits to the Smith Dec.

**The Plaintiff's Article 78 Petition**

As Plaintiff alleges in her Complaint, a notice of violation was issued to her on or about April 27, 2023. This violation arose from Plaintiff's conversion of a space on her property to an

1

apartment, which she operated as a rental property (the "garage apartment"). (Cmplt. at par. 18).

Plaintiff subsequently filed several requests for permits and variances, all of which were denied.

(Cmplt. at Paras. 24-34). Plaintiff then filed an appeal with the Town Zoning Board of Appeals

("ZBA") in which she sought relief that included a dismissal of the April 27, 2023 violation

notice and the legalization of the garage apartment. That appeal was heard and denied by the

ZBA. (Id. at Par. 36). Plaintiff then filed an Article 78 Petition in State Supreme Court in which

she contested the ZBA decision and contended, among other things, that it was arbitrary and

capricious. (Cmplt. at Paras. 39-40). Plaintiff also sought a host of monetary damages in

connection with that Petition. After Plaintiff's Article 78 Petition was filed, the Town filed a

motion to dismiss the Petition and Plaintiff filed an opposition to that motion. On February 9,

2024, the Court issued a decision granting the motion to dismiss in its entirety. Among the

findings of the Court were the following:

- The litigation was the result of "Petitioner's fundamental lack of understanding of zoning laws."[1]
- The Plaintiff's property is located within the "R-1A Zone" as defined by the Town Code Section 125-4.
- The apartment at issue on Plaintiff's property was properly defined by the Town Building Inspector as a "cottage."
- As such, a special use permit was required for Plaintiff to maintain the cottage.
- Cottages are not permitted within the "R-1A Zone" in which the Plaintiff's property is located.
- Even within the Zones in which cottages are permitted, only one cottage is permitted per property, and Plaintiff already has a legal, pre-existing non-conforming cottage on her property.
- Although the Zoning Code also allows "accessory apartments" in any residential district by way of a special use permit, such an "accessory apartment' cannot be located in an

---

[1]    See February 9, 2024 Decision (the "Decision") at p. 3. A copy of that decision is attached at Exhibit B to the Smith Dec. Defendants submit that the Decision as well as all other documents cited in this Memorandum can properly be considered by this Court.

"accessory building" and the location of the cottage at issue on Plaintiff's property is located within an "accessory building" as defined by the Town Code.

- The Building Inspector properly considered the garage apartment to be a cottage and the ZBA's analysis flowed from that premise.
- The Building Inspector properly interpreted and applied the relevant portions of Section 125 of the Town Code including, but not limited to, Sections 125-3, 125-10, 125-12, 125-28, 125-57, 125-79.1, and 125-129.
- Plaintiff did not establish that the ZBA's decision was improper.
- Plaintiff's argument regarding the size of the lot was also "unavailing" and the ZBA's decision on that issue was proper.
- The ZBA was correct to deny Plaintiff's application for a "Customary Home Occupation Permit."
- The ZBA was correct to deny Plaintiff's application for a use variance to allow her to legalize the garage apartment because:
  o Plaintiff had failed, among other things, to demonstrate that "she cannot realize a reasonable return by using the property as a single family residence (which also has a pre-existing, non-conforming cottage which the Court understands is also being rented for income) without a second residential apartment and has not shown substantial, competent financial evidence with respect to this factor." [2]
  o Any hardship brought about by the garage apartment must be considered self-created.

**The Criminal Proceedings**

In connection with the determination that Plaintiff was not permitted to make the modifications to her property and/or use it as a rental property, as well as the belief that Plaintiff continued to utilize the property in violation of the Town Code, the Town initiated a criminal proceeding on or about June 11, 2024 based upon violations of the Town Code. Plaintiff filed a motion to dismiss those charges and, on August 28, 2024, that motion was granted upon a finding that the criminal complaint was insufficient. (Cmplt. at Par. 70). In its decision, the Court noted that the Town itself had agreed that the complaint was facially insufficient and had

---

[2]    See Decision at p. 6. In reaching this conclusion, the Court noted that the ZBA offered Plaintiff opportunities during the appeals process to supplement the record with additional evidence regarding the alleged financial impact and she declined to do so. Id.

3

agreed to withdraw it.[3]  The Court advised that this was proper, and that the Town should file a superseding Complaint.  Accordingly, the Court dismissed the matter without prejudice but noted that the decision made no findings regarding the underlying dispute or the merits of the charges. The following day, and in accordance with the Court's directive to file a superseding accusatory instrument, the Town filed a new complaint against Plaintiff and asserted the same seven charges regarding alleged violations of the Town Code.  The Plaintiff then moved to dismiss those charges and that motion was granted on or about November 11, 2024 (Cmplt. at Par. 74) in a decision which noted that the Court made no findings regarding the merits of the charges and that the dismissal, without prejudice, was based on procedural grounds.[4]

### STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) calls upon a court to gauge the facial sufficiency of that pleading using a standard which "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Under Fed. R. Civ. P. 8(a)(2), "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677–78 (quoting Fed. R. Civ. P. 8(a)(2)). This standard requires more than mere legal conclusions. See Id. at 679.

In deciding a Fed. R. Civ. P. 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party (*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2nd Cir. 2003)), however the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal

---

[3]     A copy of this Order is attached at Exhibit C to the Smith Dec.
[4]     A copy of this Order is attached at Exhibit D to the Smith Dec.

conclusions. *Iqbal*, 556 U.S. at 678.  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); see also *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2nd Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2nd Cir. 2007)(quoting *Twombly*, 550 U.S. at 570) (alterations omitted). Additionally, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility to entitlement to relief.'" Id.

Additionally, while Defendants recognize that the Court is obliged to "construe *pro se* pleadings liberally" (*Harris v. Mills*, 572 F.3d 66, 72 (2nd Cir. 2009), it is well settled that "the "special solicitude" in *pro se* cases has its limits" and that "*pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief" (*Lopez v. Heritage of Pride, Inc.*, 2019 WL 6529317, at *1 (S.D.N.Y. Dec. 3, 2019) and, as set forth above, must do so in a way that makes it plausible, and not merely possible, that the pleader is entitled to relief. *Twombly*, 550 U.S. at 555.  Moreover, Plaintiff in this instant matter is a practicing Attorney and is therefore not entitled to the same leeway.  See *Tracy v. Freshwater*, 623 F.3d 90, 102 (2nd Cir. 2010)("If Plaintiff is a licensed attorney, he may proceed *pro se*, but he is not entitled to the special solicitude given to *pro se* litigants.")

Finally, in evaluating the sufficiency of a Complaint pursuant to Fed. R. Civ. P. 12(b)(6), a court may review the factual allegations contained in the pleadings as well as documents

attached to the pleadings or incorporated by reference and documents plaintiff either possessed

or knew of and relied on in drafting the complaint. *Schenk v. Citibank/Citigroup/Citicorp*, 2010

U.S. Dist. LEXIS 130305, *2 (S.D.N.Y. 2010)(in considering motion to dismiss, court may

consider "any documents attached to that pleading or incorporate[ed] in it by reference, [and]

any documents that are integral to the plaintiff's allegations even if not explicitly incorporated by

reference").

**ARGUMENT**
**POINT I: PLAINTIFF IS PRECLUDED FROM RELITIGATING ISSUES THAT FORM THE BASIS FOR MANY OF HER CAUSES OF ACTION**

As Plaintiff points out in the Complaint, the mere fact that she has previously filed and

litigated claims against the Defendants in the context of an Article 78 Petition does not

necessarily mean she is estopped from pursuing claims against the same Defendants in another

venue, such as this lawsuit. However, Plaintiff is precluded from relitigating issues that were

necessarily determined in that prior action, and she may not use this Federal lawsuit as a vehicle

to, essentially, appeal or attack that prior decision. And because the State Court in the prior

action ruled against Plaintiff with regard to issues that form the basis for the Federal claims

Plaintiff is now asserting, she is unable to establish several of the prima facie elements of her

instant claims.[5] As a result, these claims must be dismissed.

A.     **The Issues That Form The Basis For Many Of Plaintiffs' Causes Of Action Have Been Litigated And Decided**

As is set forth above, the State Supreme Court, in dismissing Plaintiffs' Article 78

Petition, found that the initial application of the Town Code by the Building Inspector to

Plaintiff's property was correct and that the ZBA properly upheld those decisions and denied

---

[5]     The State Court Decision is currently on appeal to the Appellate Division, Second Department and the parties are awaiting a ruling by that Court.

6

Plaintiff's appeal.  Specifically, the State Supreme Court found that the Plaintiff's property was properly categorized as being located in the "R1-A" Zone and therefore subject to the limits and regulations applicable to that zoning district, including that cottages are not permitted.  (Decision at pp. 3-4).

Despite those conclusive findings, however, Plaintiff continues to assert that the Town Code was incorrectly applied to her property. For example, Plaintiff's first two Causes of Action are based upon the argument that the April 27, 2023 Notice of Violation was "in contravention of Bedford Town Code § 125-12" (Cmplt. at Par. 120) and that the denial of her permit application was based upon "a misapplication of Bedford Town Code § 125-12." (Id. at par. 135).  Similarly, Plaintiffs' Fourth Cause of Action is based upon the assertion that the Building Inspector improperly denied a construction permit in September 2023 due to his incorrect application of Section 125-79.1 of the Town Code.  (Cmplt. at Par. 159).  This exact issue, however, was addressed by the State Supreme Court which dismissed Plaintiff's argument and found that the Building Inspector and the ZBA had correctly interpreted and applied these sections of the Town Code. (Decision at pp. 3-6).  Additionally, Plaintiff's Sixth and Seventh Causes of Action are based upon the arguments that ZBA was incorrect when it denied her appeal in November 2023. (Cmplt. at Paras. 177-181).  This, however, is the primary argument that Plaintiff asserted in her Article 78 Petition and which was rejected by that Court.  (Decision at pp. 3-6).

Finally, by asserting the claim under the Takings and Due Process Clauses, Plaintiff is also alleging that her property has been deprived of its economic value and that the actions of the Defendants were arbitrary and lacking in any legal basis.  Those issues, however, were also addressed and adjudicated in the State Supreme Court decision, which held that Plaintiff had failed to demonstrate that she had been deprived of a reasonable return on her property due to the

7

denial of the permits and that the Defendants' actions with regard to Plaintiff's property were perfectly lawful and represented an accurate (and not arbitrary) application of the Town Code. Id.

> **B.    Plaintiff Is Precluded From Relitigating The Issues Decided By The State Supreme Court**

Collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit." *Franza v. Stanford,* 2018 WL 914782, at *7 (S.D.N.Y. Feb. 14, 2018)(quoting *Swiatkowski v. Citibank,* 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010); see also *Tracy v. Freshwater,* 623 F.3d 90, 99 (2nd Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party" (internal quotation marks omitted)). Federal Courts must give the same preclusive effect to state court judgments as would be given by Courts of the State itself, which means that New York Law governs the preclusive effect of a prior Article 78 judgment on a § 1983 action in federal court. (*Ortiz v. Russo,* 2015 WL 1427247, at *6 (S.D.N.Y. Mar. 27, 2015)). Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown,* 481 F.3d 89, 105 (2nd Cir. 2007)

In the instant case, the issues at the core of the majority of Plaintiff's Causes of Action are the Building Inspector's refusal to issue permits to legalize the garage apartment and the ZBA's denial of her appeal of the Building Inspector's determinations. These are the exact same issues that were also the basis for Plaintiff's prior Article 78 Petition, which was dismissed by

the State Supreme Court in a decision that directly addressed those issues in detail and rejected Plaintiff's arguments.  Pursuant to the doctrine of collateral estoppel, Plaintiff is now precluded from relitigating those issues.

### C.    Plaintiff's First, Second, Fourth, Sixth, And Seventh Causes Of Action Must Therefore Be Dismissed

Plaintiff's First, Second, Third, Sixth, and Seventh Causes of Action are all asserted pursuant to Section 1983 which requires the showing of an underlying Constitutional injury.[6] Plaintiff alleges that the underlying injuries which form the basis for these Causes of Action arise from the incorrect application of the Town Code and the incorrect denial of her appeal by the ZBA.  For example, Plaintiff's First, Second, and Fourth Causes of Action are all premised upon the assertion that the denials of the permits were incorrect and constituted unlawful takings of her property as well as the denial of due process.  Those permit denials, however, were challenged by Plaintiff in her prior Article 78 Petition and were validated through the State Supreme Court's affirmance of the ZBA's decision.  As such, Plaintiff cannot now claim that her Constitutional rights were violated by those permit denials and, in turn, can also not plead facts establishing an underlying Constitutional injury.  As such, these Causes of Action, asserted based upon Section 1983, should be dismissed.

Similarly, Plaintiff alleges in her Sixth and Seventh Causes of Action that the ZBA's decision, by virtue of being incorrect, resulted in the unlawful taking of her property.  Those claims, however, cannot be asserted unless Plaintiff can plausibly suggest that the Building Inspector's determination and the ZBA's decision affirming that determination was incorrect.  As stated above, that issue has already been fully litigated and adjudicated and Plaintiff's arguments

---

[6]    *Vasquez on behalf of J.V. v. N.Y.C. Dep't of Educ.,* 2024 WL 1332822, at *5 (S.D.N.Y. Mar. 28, 2024); see also *Brandon v. City of N.Y.,* 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

9

have been rejected.  Plaintiff cannot now use this forum as a means to seek an appeal of that prior decision.  As such, she is bound by it and precluded from questioning the lawfulness of the Building Inspector's and ZBA's decision.  This, in turn, eliminates Plaintiff's ability to plead facts necessary to support her Sixth and Seventh Causes of Action under Section 1983 because she cannot plead facts establishing an underlying Constitutional injury.

## POINT II: PLAINTIFF HAS FAILED TO STATE A CLAIM FOR THE DENIAL OF DUE PROCESS

Even if Plaintiff is not estopped from litigating issues that are essential to stating a due process claim, Plaintiff's Causes of Action based upon an alleged due process violation should nonetheless be dismissed.

A Section 1983 claim to enforce the right to procedural due process is "composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Radwan v. Manuel*, 55 F.4th 101, 123 (2nd Cir. 2022); *Nnebe v. Daus*, 931 F.3d 66, 80 (2nd Cir. 2019). To state a claim for the denial of substantive due process a plaintiff must allege that: (1) she had a valid property interest and (2) the "defendants infringed on that property right in an arbitrary or irrational manner." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2nd Cir. 2014) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2nd Cir. 2007))

In the instant case, Plaintiff has set forth allegations that implicate both procedural due process (see e.g. Cmplt,. at Par. 193) and substantive due process claims (see e.g. Cmplt. at Paras. 178-179).  The Complaint, however, fails to plead facts sufficient to state a cause of action with respect to either alleged due process violation.  First, Plaintiff has not pled facts sufficient to identify a property or liberty interest, which is fatal to both her procedural and substantive due process claims.  Second, Plaintiff has not pled facts sufficient to plausibly suggest that she was

10

denied due process or that the Defendants acted in an arbitrary or irrational manner. Indeed not only do the facts set forth in the Complaint directly refute both of those suggestions, they were directly addressed in the prior Article 78 proceeding and Plaintiff is now precluded from relitigating them.

###### A.        Plaintiff Has Not Pled Facts Regarding A Property Interest

In order to state a due process claim a plaintiff must plead facts sufficient to plausibly suggest the presence of a property or liberty interest, and this question ultimately comes down to whether the administrative framework in question mandates a certain outcome such that a plaintiff can claim an entitlement to it.  See e.g. *Barrows v. Burwell*, 777 F.3d 106, 113 (2nd Cir. 2015)(holding that, to determine whether an administrative framework yields a "legitimate claim of entitlement" to benefits, courts consider "whether the statutes and regulations governing the distribution of benefits 'meaningfully channel[ ] official discretion by mandating a defined administrative outcome'")(quoting *Kapps v. Wing*, 404 F.3d 105, 113 (2nd Cir. 2005)).  When the administrative framework affords discretion to municipal officials, however, a plaintiff will not be able to demonstrate a property or liberty interest such as is necessary for a due process claim. See *Harlen Assocs. V. Mineola*, 273 F.3d 494, 503–04 (2nd Cir. 2001)(holding that because "the [v]illage [b]oard is vested with significant discretion to deny applications even after proper filings have been made[,] [t]he presence of that discretion precludes any legitimate claim of entitlement by [the plaintiff].")

In the instant matter, the Plaintiff's Complaint is silent on the issue of why she was entitled to a particular outcome other than conclusory assertions that the denial of permits and requests for variances violated her due process rights.  At the same time, Section 59-4 of the Bedford Town Code states, in part, that the Building Inspector has the authority to

11

"[I]ssue building permits, certificates of occupancy, temporary certificates and operating permits, and to include therein such terms and conditions as the Building Inspector, or their duly authorized designee, *may deem appropriate*"  (Bedford Town Code 59-4(B)(emphasis added)). Courts in this Circuit have regularly held that legislative schemes which give discretion to an individual such as a Building Inspector or an entity such as a Zoning Appeals Board do not create constitutional property or liberty interests in the issuance of permits or variances.  This is because it is well settled that "the mere existence of procedures for obtaining a permit or certificate do not, in and of themselves, create constitutional "property interests." (*Zahra v. Town of Southold*, 48 F.3d 674, 681–82 (2nd Cir. 1995) and this is particularly true when the final determination is subject to the discretion of the individuals tasked with applying the law, such as in the Bedford Town Code.  See *Tara Circle, Inc. v. Bifano*, 1997 WL 399683, at *10 n.3 (S.D.N.Y. July 15, 1997) (noting that the plaintiffs lacked property interest in special permit where village board could authorize their issuance according to conditions and standards set forth in village code), aff'd, 173 F.3d 846 (2nd Cir. 1999); *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2nd Cir.1999)( "Thus, in order to establish a federally protectable property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case.")

The Plaintiff in this matter has not pled facts sufficient to plausibly suggest that the Town Code mandated the outcome desired by Plaintiff, and indeed any such suggestion was previously rejected by the State Supreme Court.  As a result, the Complaint fails to plead facts plausibly suggesting the existence of a protected liberty or property interest and, as such, Plaintiff has

12

failed to state a claim for a due process violation based upon the denial of permits and requests for variances.

**B.        Plaintiff Has Not Pled Facts Suggesting She Was Deprived Of Due Process**

Even if a property or liberty interest is identified within the allegations of the Complaint, which is not the case, Plaintiff's Causes of Action premised upon the alleged deprivation of due process should still be dismissed because Plaintiff has not pled, nor can she, that post-deprivation remedies were not available to her.  This is because it is well settled that "[a] government official's random and unauthorized act does not violate a person's right to procedural due process if a meaningful post-deprivation remedy is available" (*Hudson v. Palmer*, 468 U.S. 517, 533 (1986)) and those remedies provided by State Law, such as an Article 78 proceeding, constitute a sufficient post-deprivation remedy to preclude a due process claim.  See e.g, *Terry Bilson v. City of New York, et al.,* 2025 WL 1184410, at *4 (S.D.N.Y. Apr. 23, 2025)(" Thus, a claim under Section 1983 asserting that a government official has deprived a person of a property interest is not cognizable in a federal district court if state law provides an adequate remedy for the deprivation of that interest."); *Catania v. United Fed'n of Tchrs.,* 2025 WL 638625, at *13 (S.D.N.Y. Feb. 27, 2025), reconsideration denied, 2025 WL 1114449 (S.D.N.Y. Apr. 15, 2025)("The availability of "[a]n Article 78 proceeding provides the requisite post-deprivation process—even if [the plaintiff] failed to pursue it.")(citing *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2nd Cir. 2011)); *Vanderveer v. Zoning Bd. of Appeals,* 2020 WL 7042669, at *5 (E.D.N.Y. Dec. 1, 2020), aff'd sub nom. *Vanderveer v. Zoning Bd. of Appeals Town of E. Hampton*, 2021 WL 3745741 (2d Cir. Aug. 25, 2021)(dismissing due process claim where property owner received (1) an opportunity to present evidence to the Building Inspector as required in the Town Code, (2) a hearing before the ZBA where he and others had the

13

opportunity to speak and present evidence; and (3) an Article 78 hearing before the Suffolk County Supreme Court).

In the instant case, as in *Vanderveer*, Plaintiff acknowledges in the Complaint that she was able to consult with the Building Inspector, appeal his decision at a hearing before the ZBA where she presented evidence and arguments, and pursue an appeal of that decision via an Article 78 action before the State Supreme Court.  Consequently, Plaintiff cannot plead facts suggesting she has been denied due process of law given the existence of these post deprivation remedies.  Indeed, the facts pled in the Complaint demonstrate that she has been afforded more than sufficient process and therefore preclude her from asserting a viable due process claim, even if she was disappointed by the outcome of the prior Article 78 proceeding.

### C.     Plaintiff's Third Cause Of Action Should Be Dismissed

Plaintiff's Third Cause Of Action is based upon the allegation that Defendants violated Town Code Section § 267-a(5) and, as a result, Plaintiff's due process rights under the Fifth and Fourteenth Amendments, when the Zoning Board of Appeals allegedly failed to issue a written denial of her construction permits in a timely manner.  (Cmplt, at Par.  148).  This Cause of Action, like all of Plaintiff's Causes of Action, is asserted pursuant to Section 1983 thus requiring Plaintiff to plead facts identifying an underlying Constitutional violation.  No such Constitutional violation has been pled and, therefore, it should be dismissed.  Even accepting as true the allegation that the Zoning Board of Appeals' written denial was untimely, which it was not, the Complaint fails to plead facts plausibly suggesting an underlying Constitutional violation or deprivation of any Constitutional right.  Specifically, while Plaintiff makes conclusory allegations that her due process rights were violated, she also acknowledges in her Complaint that she was able to file an appeal of the denial with the ZBA and does not allege, nor can she,

14

that her appeal was, for example, dismissed for being untimely or that the allegedly untimely written denial of the permit had any impact on her ability to file an appeal that was heard by the ZBA. As such, Plaintiff has not pled facts plausibly suggesting that she "was deprived of an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." (*Brady v. Town of Colchester*, 863 F.2d 205, 211 (2nd Cir. 1988)(dismissing due process claim). At most, Plaintiff has alleged a violation of the New York Town Law; however it is well settled that violations of State and local laws do not constitute a sufficient basis for a claim under Section 1983.[7] As such, this Cause of Action should be dismissed.

### D.    Plaintiff's Fifth Cause Of Action Should Be Dismissed

Plaintiff's Fifth Cause of Action asserts that her due process rights were violated when Defendants Gordon, Ciraco (the Building Inspector), and the Town delayed filing the criminal summonses related to the violations previously found by Ciraco. (Cmplt, at Par. 171). This claim is based upon the argument that, because the dismissal of the two criminal instruments represented a repudiation of the Building Inspector and an exoneration of Plaintiff, the ZBA appeal would not have been necessary had they been issued sooner. (Id.) This argument, and this Cause of Action, are based upon a misrepresentation of the facts. First, and most importantly, the Courts which issued the orders dismissing the criminal summonses both specifically stated that the orders were not related to, and did not resolve, the underlying dispute regarding the alleged violations.[8] As such, there is no basis for Plaintiff to assert that those orders somehow rendered the permit denials and the findings of violation to be incorrect and/or

---

[7]      See *Davis v. Scherer*, 468 U.S. 183, 195 (1984) (an official's violation of a state statute or regulation does not, by itself, make the official liable under § 1983); *Pollnow v. Glennon*, 757 F.2d 496, 501 (2nd Cir. 1985) ("[A] violation of state law is not cognizable under § 1983.")

[8]      See Exhibits C and D to the Smith Dec.

15

unlawful.  Second, Plaintiff's argument is further belied by the fact that the permit denials were affirmed by the State Supreme Court, in a decision Plaintiff is precluded from challenging in this lawsuit, which was made <u>after the Town Justice Court dismissal orders had been issued</u>.  Third, to the extent Plaintiff is also suggesting that her due process rights were harmed in a manner separate from the ZBA appeal, there is no basis for such a claim because until the criminal instrument was actually filed there was no related due process that Plaintiff was prevented from availing herself of.  Finally, any allegation that her due process rights were violated because the Defendants were required to file the criminal instruments at an earlier time is deficient because relief was available pursuant to Article 78 through a mandamus proceeding to compel them to do so.

### E.    Plaintiff's Eighth Cause Of Action Should Be Dismissed

Plaintiff's Eighth Cause of Action is based upon the allegation that the ZBA failed to hear Plaintiff's appeal in a timely manner in violation of the Town Code.  (Cmplt. at Par. 201). This Cause of Action should be dismissed because Plaintiff has failed to plead facts identifying an underlying Constitutional injury. Plaintiff alleges that Section 267-a(5)(b) required that her appeal be heard within sixty days of the denial of her permits.  (Cmplt. at Par. 199).  The plain language of that statute, however, prescribes the time frame within when an appeal should be filed by the appellant, and does not mandate the time in which an appeal should be heard.  See *Bedford Town Code* § 267-a(5)(b).  This is also demonstrated by the fact that Section 267-a(7) specifically states that an appeal shall be heard within a "reasonable time."[9]  Even assuming *arguendo* that a violation of a local law such as the Town Code could constitute the basis for a

---

[9]    <u>See</u> Town Code Section 267-a(7).  Plaintiff's characterization of this statute in Paragraph 202(b) of the Complaint is not accurate.

16

claim under Section 1983, and it is well settled that it cannot, Plaintiff has not pled facts suggesting that Defendants actually did so.  This Cause of Action should therefore be dismissed.

### F.    **Plaintiff's Ninth Cause Of Action Should Be Dismissed**

Plaintiff's Ninth Cause of Action is based upon the allegation that Defendants violated her due process rights when they failed to comply with Section 267-a(9) and file the written decision of the ZBA in a timely manner (Cmplt. at Par. 207) which, Plaintiff alleges, "deprived [her] of fair notice, a meaningful opportunity to be heard, and access to judicial relief."  (Cmplt. at Pat. 217).  This allegation, however, is belied by the Plaintiff's own admissions in the Complaint as well as the judicial record.

First, Plaintiff acknowledges in the Complaint that she did file a timely Article 78 Petition which was heard by the State Supreme Court.  (See e.g. Cmplt, at Para. 39).  As such, Plaintiff cannot allege that she was denied fair notice, an opportunity to be heard, or access to judicial relief.  For example, Plaintiff does not allege that the untimely filing prevented her from filing a timely appeal or presenting evidence and arguments to the State Supreme Court in support of that appeal.  Plaintiff does allege that the alleged untimely filing forced her to file her appeal based upon only the decision issued at the ZBA during the public hearing (Cmplt, at Par. 211). However, it is undisputed that a copy of the written decision was provided to the State Supreme Court and it was considered by that Court.  (See Decision at p. 3).  Finally, while Plaintiff also alleges that the written decision differed from the decision issued at the actual ZBA hearing (Cmplt. at Par. 212), the decision issued by the State Supreme Court makes clear that it "address[ed] the decision made in the hearing itself to the extent they differ[ed] from those in the [written] decision."  (Decision at p. 3).  Accordingly, there is no basis in the Complaint for Plaintiff to allege that she was denied due process due to the allegedly untimely filing of a

17

written decision and so she therefore cannot establish a viable claim under Section 1983.  See e.g. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2nd Cir. 1988)(dismissing due process claim where Plaintiff failed to allege facts that "she was deprived of an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case.")

## POINT III: PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE TAKINGS CLAUSE

The Takings Clause of the Fifth Amendment provides that private property "shall [not] be taken for public use, without just compensation." *U.S. Const., Amend. V*.  Under the Takings Clause, the government must compensate a landowner if "it effects a 'permanent physical occupation' of his property, or if a regulatory action forces him to 'sacrifice all economically beneficial uses in the name of the common good.'" (*Vanderveer,* 2020 WL 7042669 at *2)(citing *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)).

In the instant case, Plaintiff does not allege a physical occupation of her property, but does allege in her Complaint that a taking of her property was affected when Defendants denied her permits and the ZBA upheld those denials, thus preventing her from legalizing the garage apartment and utilizing it as a rental property.  This allegation is not sufficient to state a takings claim because Plaintiff's allegations do not plausibly suggest that her property has been divested of all economically beneficial uses.  First, as has been set forth above, the issue of whether Defendants improperly denied the permits needed to legalize the garage apartment was already litigated by Plaintiff and adjudicated, and Plaintiff is precluded from relitigating it in this forum. (See POINT I, *Infra*).  Second, even if this Court considers the issue, the type of limitation that was placed on Plaintiff's property has been considered by Courts in this Circuit and found to not

18

constitute either a categorical or regulatory taking.  See e.g. *Yu v. Inc. Vill. of Oyster Bay Cove,* 579 F. Supp. 3d 391, 399–400 (E.D.N.Y. 2022)(dismissing claim based upon alleged categorical taking)("Moreover, the restrictions on plaintiffs' expansion of the driveway cannot alone constitute a taking. "[A]n ordinance prohibiting construction on the curtilage of a single-family dwelling does not cause a regulatory taking, because courts focus 'on the nature of the interference with rights in the parcel as a whole,' including the portions of the property not subject to restrictions.")(emphasis added)(internal citations omitted); *Sag Harbor Port Assocs. v. Vill. of Sag Harbor*, 21 F. Supp. 2d 179, 186 (E.D.N.Y. 1998), aff'd sub nom. *Sag Harbor Port Assocs., Inc. v. Vill. of Sag Harbor*, 182 F.3d 901 (2nd Cir. 1999)(dismissing claim based upon alleged categorical taking)("A demonstrated decrease in the value of one's property is insufficient to constitute a taking. Rather, a party must prove that the State has deprived it of 'all reasonable uses' of its land"); *Dean v. Town of Hempstead,* 2024 WL 3849688, at *25 (E.D.N.Y. Aug. 16, 2024)(dismissing claim based upon an alleged regulatory taking)("[M]ere diminution in the value of property, however serious, is insufficient to demonstrate a taking"); see also *Sadowski v. City of New York*, 732 F.2d 312, 317 (2nd Cir. 1984)("the prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred.")

In addition, Plaintiff argued in her Article 78 Petition that the economic value of her property was diminished and that argument was rejected by the Court.  (Decision at p. 6).  And even if estoppel does not prevent the Plaintiff from relitigating this issue, the Complaint fails to plead facts sufficient to demonstrate that the alleged limitation on her ability to derive value from her property was worse than the limitations which are described in the cases cited herein and were found by Courts in this Circuit to be insufficient to state a takings claim.

19

**POINT IV: PLAINTIFF'S CLAIMS BASED UPON THE CRIMINAL PROCEEDINGS SHOULD BE DISMISSED**

Plaintiff has asserted several Causes of Action based upon the two criminal proceedings that were initiated against her.  These Causes of Action should also be dismissed.

**A.  Plaintiff's Claims Against Defendants Gordon And Zitt Are Precluded By Prosecutorial Immunity**

Plaintiff's Causes Of Action Numbers "IV", 11, 12,13,14,15,16, and 18 are all asserted against Defendants Gordon and Zitt for actions taken in their capacities as Town Prosecutors.[10] These claims should be dismissed because it is well settled that "prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process'" (*Hill v. City of New York*, 45 F.3d 653, 660-661 (2nd Cir. 1995)(internal citations omitted) and that this protection covers such acts as "initiating a prosecution." Id. at 661. Finally, it is also well settled that a prosecutor's motives for actions that are within their role as an advocate are irrelevant to the granting of absolute immunity.  See e.g. *Bernard v. County of Suffolk*, 356 F.3d 495, 506 (2nd Cir. 2004)("once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused.")  In the instant case, the Complaint is clear that the actions allegedly taken by the Town Attorneys were taken in their capacities as advocates for the Town, and Plaintiff cannot overcome the immunity to which Counsel is entitled by suggesting retaliatory or other motives for those actions.

For example, Plaintiff alleges that Gordon and Zitt initiated prosecutions against her when they knew the charges to be meritless and in retaliation for her filing a Notice of Claim.  It

---

[10]     Plaintiff's Eighteenth Cause of Action, which is also asserted against all other Defendants, is cumulative and duplicative of the prior seventeen causes of action and should be dismissed for the same reasons set forth in this Memorandum with regard to those Causes of Action.

is well settled, however, that actions such as initiating a prosecution constitute the "quintessential prosecutorial functions" (*Dominguez v. Walsh*, 2025 WL 618868, at *7–8 (S.D.N.Y. Feb. 26, 2025); see also *Hill City of New York*, 45 F.3d 653, 661 (2nd Cir. 1995))(noting that absolute immunity covers such acts as "initiating a prosecution and presenting the case" in court proceedings (citations omitted)) and, as such, a prosecutor who engages in those activities are entitled to absolute immunity which "protects a prosecutor not only from liability but also from suit.") Moreover, it is also well settled that this immunity attaches regardless of the motivations of the prosecutor and even in instances where it is alleged, as it is in this matter, that the prosecution was initiated for retaliatory or vindictive purposes or when it is alleged that the charges were knowingly brought without merit. See e.g. *Dominguez,* 2025 WL 618868, at *6–7 ("Furthermore, a prosecutor's motives for actions that are deemed to be within his or her role as an advocate are irrelevant for purposes of absolute immunity.")(citing *Shmueli v. City of New York*, 424 F.3d 231, 237-38 (2nd Cir. 2005) (holding that absolute immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy"); *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2nd Cir. 2004), 356 F.3d at 503 (holding that "once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused" (citation omitted)); *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (summary order) ("[A] prosecutor still acts within the scope of [his] duties even if [ ]he engages in malicious prosecution."); see also *Harrison v. County of Nassau*, 2016 WL 4083381, at *4 (E.D.N.Y. Aug. 1, 2016) (noting absolute immunity applies "even where the prosecutor knowingly prosecutes an innocent person").

21

#### B.  **Plaintiff Has Failed To State A Claim For Malicious Prosecution**

In order to prevail on a Section 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of her rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under State Law. See *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2nd Cir. 2010) (citations omitted). In New York, this requires a plaintiff to establish, among other things, the initiation of a proceeding and a termination in her favor.  *Savino v. City of New York,* 331 F.3d 63, 72 (2nd Cir. 2003).  As the Plaintiff in this action indicates in the Complaint, both criminal instruments were dismissed without prejudice because they were deemed to be facially insufficient.[11]  This is fatal to Plaintiff's malicious prosecution claims because it is well settled that dismissals without prejudice due to facial insufficiency do not constitute a termination in favor of the criminal defendant.  See e.g. *Breen v. Garrison*, 169 F.3d 152, 153 (2nd Cir. 1999) (holding that, in New York, dismissal for facial insufficiency is "not a decision on the merits, an essential element of a cause of action for malicious prosecution"); *MacFawn v. Kresler*, 88 N.Y.2d 859, 860 (1996) (holding that a dismissal of the information without prejudice for facial insufficiency may not serve as the basis for a malicious prosecution claim).[12]

#### C.  **Plaintiff Has Failed To State A Claim Based Upon Alleged Brady And/Or Speedy Trial Violations**

Plaintiff also asserts Causes of Action based upon an alleged *Brady* violation as well as a violation of Plaintiff's right to a speedy trial.  (Cmplt. at Counts Twelve and Thirteen).  At the

---

11      See Cmplt. at Paras. 70, 74; see also Exhibits C and D to the Smith Dec.

12      Plaintiff's claim against Defendants Ciraco and the ZBA is further undermined by the lack of any facts in the Complaint suggesting their personal involvement in the prosecutions.  See e.g. *Chislett v. New York City Dep't of Educ.,* 723 F. Supp. 3d 285, 294 (S.D.N.Y. 2024)("If an individual defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant.")

22

outset, these claims should be dismissed against Defendant Gordon and Zitt because they are entitled to absolute immunity.  See e.g. *Blount v. Moccia,* 2017 WL 5634680, at *7 (S.D.N.Y. Nov. 21, 2017)(dismissing speedy trial and *Brady* claims)("Here, all of the alleged conduct of former D.A. Johnson and ADAs Marynes and Groppe falls "within the functions of a prosecutor" and is entitled to absolute immunity.")  Additionally, the claims should also be dismissed because the Complaint fails to plead any facts suggesting the personal involvement of the remaining Defendants, namely Defendants Ciraco and members of the ZBA.  Absent such allegations, these claims cannot be sustained under Section 1983.  See e.g. *Barnett v. City of Yonkers*, 2018 WL 4680026, at *11 (S.D.N.Y. Sept. 28, 2018)(dismissing claim under Section 1983 based upon speedy trial violation)("The absence of any facts [showing] a defendant's personal involvement in the violation of a plaintiff's Sixth Amendment right to a speedy trial, therefore, dooms any such claim.")(citations omitted); see also *Davila v. Johnson*, 2015 WL 8968357, at *10, (S.D.N.Y. Dec. 15, 2015) (dismissing § 1983 claim for violation of speedy trial rights where "[the p]etitioner [did] not allege that any of the remaining [r]espondents were personally involved in the violation of his speedy trial rights.")[13]

Finally, the Plaintiff's Cause of Action based upon an alleged *Brady* violation should be dismissed because, as is set forth above, neither of the criminal proceedings resulted in a conviction of Plaintiff.  See e.g. *McClean v. County of Westchester*, 2018 WL 6329420, *18 (S.D.N.Y. Dec. 3, 2018)("Courts have categorically rejected denial of a right to fair trial claims

---

[13]    Similarly, the Complaint also fails to plead facts plausibly suggesting the personal involvement of any of the remaining Defendants (after Gordon and Zitt) with regard to any of the Causes of Action related to the criminal proceedings and so they should all be dismissed for that reason.  Additionally, Plaintiff has failed to plead facts regarding how, for example, an alleged failure to appoint a special prosecutor (Cmplt. at "Count Sixteen") constitutes retaliation under the First Amendment.  Indeed, the Compliant fails to plead any plausible facts that such an obligation ever existed other than Plaintiff's own speculation and conclusory assertions.

23

based on *Brady* violations where the plaintiff was not convicted in the underlying criminal trial . . . Moreover, the fact that suppression of *Brady* material could prevent a defendant from securing an earlier favorable termination of his or her case is not considered as a potential source of 'prejudice' within the meaning of the *Brady* rule.")(quoting *Ambrose v. City of New York*, 623 F.Supp.2d 454, 472 (S.D.N.Y. 2009).

## POINT V: THE BEDFORD DEPARTMENT OF BUILDINGS IS NOT A SUABLE ENTITY

Plaintiff has named the Bedford Department of Buildings ("DOB") as a Defendant in this action.  The DOB, however, is merely an administrative arm of the Town of Bedford and, as such, is not a suable entity.  See e.g. *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)) ("Because [the] plaintiff has named the City of White Plains as a defendant, any claims against the [White Plains Department of Public Safety ("WPDPS")] are redundant. WPDPS does not have its own legal identity, and therefore the claims against it are dismissed."); *Crown Castle Fiber LLC v. Town of Oyster Bay*, 2024 WL 1051171, at *1 n.1 (E.D.N.Y. Jan. 19, 2024) (dismissing claims against the relevant town board and zoning board of appeals as redundant.")

## POINT VI: THE INDIVIDUAL DEFENDANT ALBERT CIRACO IS ENTITLED TO QUALIFIED IMMUNITY

The Plaintiff's Causes of Action against Defendant Ciraco all arise from his decisions to deny Plaintiff's permits.  Those decisions were affirmed by the State Supreme Court.  Plaintiff has therefore failed to plead facts suggesting that Ciraco's judgments regarding the permits violated "clearly established statutory or constitutional rights."  As such, Defendants submit that Ciraco is entitled to qualified immunity.  See e.g. *Zahra v. Town of Southold*, 48 F.3d 674, 687-8 (2nd Cir. 1995)("In our view, at the time the building permit was revoked, it was objectively

24

reasonable to conclude that Zahra was not in compliance with the plans approved by the Building Department. . . In sum, we conclude that Lessard and Horton were entitled to the defense of qualified immunity, since we find their actions at the time objectively reasonable."); see also *Simmons v. Casella*, 2024 WL 3202769, at \*4 (E.D.N.Y. June 27, 2024)("Courts have regularly found that building inspectors and code enforcement officers are entitled to qualified immunity."); *33 Seminary LLC v. The City of Binghamton,* 670 F. App'x 727 (2nd Cir. 2016)(" Thus, Defendants are entitled only to qualified immunity for their enforcement actions such as issuing stop work permits or denying permits applications.")

## CONCLUSION

For all the reasons set forth herein as well as in their initial Memorandum, the Defendants respectfully request that their motion be granted in its entirety and that Plaintiff's Amended Complaint be dismissed as a matter of law, with prejudice.

Dated:  White Plains, New York
         July 11, 2025

Respectfully submitted,

**SILVERMAN & ASSOCIATES**

By: _____

Gerald S. Smith
*Attorneys for Defendants*
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
(914) 574-4510
gsmith@silvermanandassociatesny.com

To:    **Via ECF**
       *All Counsel Of Record*

25

A-272