# 26-162

# United States Court of Appeals
# for the Second Circuit

_____

MELANIE HAMMER,
Plaintiff-Appellant,
- against –

TOWN OF BEDFORD NEW YORK, DEPARTMENT OF
BUILDING BEDFORD NEW YORK, ZONING BOARD
OF APPEALS BEDFORD NEW YORK, BUILDING
INSPECTOR TOWN OF BEDFORD NEW YORK
(ALBERT CIRACO), ATTORNEY FOR THE TOWN OF
BEDFORD NEW YORK (ERIC GORDON, ESQ. &
ROBERT ZITT, ESQ.),
Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Southern District of New York
7:25-cv-02618-CS

_____

# APPENDIX VOLUME 2

_____

Melanie Hammer
Plaintiff-Appellant, Pro Se
360 Court Street, Suite 3
Brooklyn, New York 11231
(718) 757-7677
**melanie@hammer-esq.com**

# INDEX TO APPENDIX VOLUME 2

ECF 52  Defendant's Opposition to Discovery ................................................................ A-330

ECF 65  Plaintiff's Motion to Vacate Rule 60(b) – New Evidence, Misrepresentations, Extraordinary Circumstance ................................................................ A-332

ECF 67  Plaintiff's Notice of Motion for 60(b) Relief ........................................ A-333

ECF 67-1  Plaintiff's Affirmation in Support of 60(b) Relief .......................... A-335

ECF 67-2  Plaintiff's Memorandum of Law in Support of 60(b) Relief .......................... A-344

ECF 67-3  Exhibit Index for Rule 60(b) ................................................ A-366

ECF 67-4  FOIL 2025-00205 (produced 8/18/2025; requested 6/11/2025) ...................... A-369

ECF 67-5  New Evidence Emails – Representative Redacted Email Provided After Briefing Closed ................................................................ A-373

ECF 67-8  New Discovery – Handwritten Permit Number from 1988 ............................. A-383

ECF 67-8 P. 2  Undated Map "Residence" with Matching Handwritten Permit Number from 1988 ................................................................ A-384

ECF 67-8 P. 3  Representative Illegible Map Stamped "Received August 30, 2000" ....... A-385

ECF 67-9  Misrepresentation – No "Residential" Records FOIL Response ..................... A-387

ECF 67-10  Proof of Misrepresentation – "Residential" Electrical Inspection Dated 2012 ................................................................ A-388

ECF 67-11  Proof of Misrepresentation – Certificate of Compliance Authorizing Occupancy as Recreation Room Dated 2014 ................................................ A-389

ECF 67-12  Proof of Misrepresentation – "Certificate of Compliance" Affirmed Certification That Discovery Was Completed 9/18/2024 ................................ A-390

ECF 67-13  Diligence 60(b) – Proof of Request for Limited Discovery 1/23/2024 .......... A-393

ECF 67-14  Diligence 60(b) – Proof of Request for Discovery and Brady 9/18/2024, 9/20/2024, 10/22/2024 ................................................................ A-395

ECF 67-15  Diligence 60(b) – 6/11/2025 FOIL Request for Emails, Proof of Receipt ..... A-396

ECF 67-16  Misrepresentation to Court in Light of New Map – Statement Contradicted by DOB Records, False Representation, Unlawful Residential Uses – Affidavit of Building Inspector (Court Index 71446/2024) .......................................... A-397

ECF 67-17  False Representation in Light of Map – Notice of Violation "No Electrical Permit," Illegal Plumbing ................................................................ A-408

ECF 67-18  False Representation in Light of Map – Letter of Permit Denial, Use Variance Needed for Residential Use ................................................ A-411

ECF 67-19 P. 3  False Representation – Undisputed That the Last Ten Years .................. A-415

ECF 67-20  False Representation of Unlawful Residential Use – Respondents' Appellate Brief.................................................................................................................... A-420

ECF 67-21  DOB Records Showing Bath and Kitchen in DOB File ................................. A-468

ECF 67-22  Proof Gordon Drafted ZBA Resolution Emailed to the ZBA for Signature 12/1/2023 ...................................................................................................................... A-469

ECF 67-23  Gordon Drafted ZBA Resolution 11/30/2023 After Being Named a Party .... A-470

ECF 69  Plaintiff's Request for In Camera Review of Redacted Emails ........................... A-471

ECF 79  Declaration of Gerald Smith in Opposition to Plaintiff's Motion to Vacate Under 60(b).................................................................................................................... A-473

ECF 79-1  Defendants' Exhibits Showing Plaintiff's Previous Copies of Illegible, Undated, or Post-Dated Maps ........................................................................................ A-475

ECF 78  Defendants' Memo in Opposition to 60(b)........................................................... A-481

ECF 80  Defendants' Memo of Law in Further Support of 60(b) with 1987 (Pre-Code) Map Labeling the Structure "One Story Frame Residence Over Garage," Provided 2/13/2026 After Briefing.............................................................................................. A-505

ECF 80-1  Misrepresentation by Building Inspector in Court Filing in Light of Previously Concealed Map .............................................................................................. A-528

ECF 80-1 P. 2  Building Inspector's False Statement in Light of Newly Provided Map ... A-529

ECF 80-1 P. 3  Misrepresentation in Court Filing in Light of Newly Provided Map ........ A-530

ECF 80-1 P. 4  Defendants' Definition of Legality of Pre-Existing Residential Cottage, Which Contradicted the Position They Have Taken in This Case...................................... A-531

ECF 80-1 P. 5  Defendants' Statement Regarding Pre-Existing Non-Conforming Cottage and Pre-Code Legality............................................................................................ A-532

ECF 80-1 P. 6  Defendant's FOIL Response #2026-0011 to Clarify the Zoning Classification of the Structure at Issue.............................................................................. A-533

ECF 80-1 P. 7  Defendants' FOIL Response #2025-00484 – No "Residential Records".. A-535

ECF 80-2  Residential Records Contained in DOB File – "Residential" Electrical Permit............................................................................................................................ A-536

ECF 80-2 P. 2  Certificate of Occupancy (Referenced in Error Instead of ECF 67-11) .... A-537

ECF 80-2 P. 3  Plaintiff's 2023 Architect's Map................................................................ A-538

ECF 80-2 P. 4  DOB File – The Structures on the Property Are for Use As: One Story Residence ...................................................................................................................... A-539

ECF 80-2 P. 5  DOB Required Smoke/Carbon Monoxide Detectors in the Structure, Which Is Consistent with Residential Rather Than Commercial or Storage Use............... A-540

ECF 80-2 P. 6 & 7  How Plaintiff Began to Believe There Was a Map Withheld – Matched Permit Number with Map with Concealed Date Page ......................................... A-542

ECF 80-2 P. 8  Legibly Labeled Map Dated Aug. 30, 2000, Post Code 1989 Enactment . A-543

ECF 80-2 P. 9  Illegible Certificate of Occupancy from 1970 ......................................... A-544

ECF 80-3  Gordon Ex Parte Communication Email with ZBA 11/1/2023, the Day Before the ZBA Appeal Was Heard .................................................................................... A-545

ECF 80-3 P. 4  Gordon Drafted ZBA Resolution and Circulated It for Signature ............. A-548

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Melanie Hammer,

-against-

Town Of Bedford New York, Department of Building
Bedford new York, Zoning Board of Appeals Bedford
New York, Building Inspector Town of Bedford
New York (Albert Ciraco),
Attorney for the Town of Bedford
York (Eric Gordon, Esq. & Robert Zitt, Esq.)

Defendants.

_____

**MEMORANDUM OF LAW**

**IN OPPOSITION TO**

**DEFENDANTS' MOTION TO DISMISS**

25-CV-2618 (CS)

By Melanie Hammer, Esq.
Pro Se Plaintiff
360 Court Street, Suite 3
Brooklyn, NY 10536
melanie@hammer-esq.com
(718)757-7577
7-21-2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................5

*MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS* .................................................................................................................... **11**

*PRELIMINARY STATEMENT* ...................................................................................... **11**

*LEGAL STANDARD ON A RULE 12(B)(6) MOTION Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Ail. Corp. v. Twombly, 550 U.S. 544, 555.* ....................................................... **15**

*COUNT 1, 2, 3, 5 ISSUES NOT PRECLUDED BY COLLATERAL ESTOPPEL. EXACT CLAIMS NOT PREVIOUSLY DECIDED. LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002). Ying Jing Gan v. City of New York, 996 F.2d 522, 532–33 (2d Cir. 1993); Davidson v. Capuano, 792 F.2d 275, 278–80 (2d Cir. 1986). PLAINTIFF DID NOT HAVE A FULL AND FAIR OPPORTUNITY TO BE HEARD.* ........................................................................ **16**

    **A.   Collateral Estoppel does not apply to this course of conduct complaint that involves constitutional issues that can only be reviewed in federal court.** ...................... 16

    **B. The Article 78 Proceeding Did Not Address legality the Notice of Violation Under § 125-12 Count One, Two, Three, and Five, challenges the April 27, 2023, Notice of Violation under § 125-12 (LOTS), which led to two prosecutions—both dismissed for facial insufficiency by Judges Kimmel and Menken. Those dismissals confirm the Notice lacked any legal foundation. *Defendants* are therefore estopped from arguing that Plaintiff is violating the law with this apartment. That issue has been twice determined and twice dismissed.  Therefore, Plaintiff is in compliance as a matter of law.**.................................................................................................................... 17

    **C. Plaintiff Did Not Have a "Full and Fair Opportunity" to Litigate These Constitutional Claims in the Article 78 Proceeding Counts 1-9 and is therefore not estopped. Ying Jing Gan v. City of New York, 996 F.2d 522, 532–33 (2d Cir. 1993); Davidson v. Capuano, 792 F.2d 275, 278–80 (2d Cir. 1986).** ............................... 18

*COUNT ONE: ISSUANCE OF NOTICE OF VIOLATION ON 4/27/2023: Plaintiff Has Sufficiently Pled a Procedural Due Process and Takings Claim Under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)* ......... **19**

    **A. Plaintiff Has Pled Each Element of a Procedural Due Process Claim** ...................... 19

    **B. Plaintiff Has Pled a Takings Clause Violation.** Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978). ................................................................................ 21

    **C. Plaintiff Was Not Required to Exhaust State Remedies.** Monroe v. Pape, 365 U.S. 167, 183 (1961); Zinermon v. Burch, 494 U.S. 113, 125–26 (1990).................................. 21

    **D. Plaintiff Has Pled a Regulatory Taking**................................................................... 22

    **E. Monell Liability Is Properly Pled.** under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978)................................................................................................................ 22

**COUNT TWO: FIRST PERMIT DENIAL UNDER BTC 125-12 ON 6/1/2023. Plaintiff Has Pled a Valid Fourteenth Amendment Due Process Claim for Arbitrary Permit Denial under Iqbal and Twombly.** ........................................................ 23
      A. This Claim Is Not Barred by Collateral Estoppel. LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002. ............................................................................ 23
      B. Plaintiff Has Pled a Procedural Due Process Violation. Mathews v. Eldridge, 424 U.S. 319, 332–33 (1976). ................................................................................ 23

**COUNT THREE: REFUSAL TO ISSUE *WRITTEN* PERMIT DENIAL 6/1/2023 Plaintiff Has Pled a Valid Procedural Due Process Claim Based on the Town's *Failure to Issue a Written Denial*. Potter v. Incorporated Village of Ocean Beach (2d Cir. Apr. 10, 2025), which held that repeated implicit refusals and revocation of property privileges, not just express written denials, constitute a de facto final administrative decision triggering due process protection.** ........................................................ 24
      A. Plaintiff Has Pled Each Element of a Procedural Due Process Claim ............................................... 25
      B. Article 78 Was Not an Adequate Substitute .................................................................................. 25
      C. The Injury Is Pled and Compensable ............................................................................................ 26
      D. Monell Liability Is Sufficiently Pled ............................................................................................ 26

**COUNT FOUR: DENIAL OF CONSTRUCTION PERMITS ON 9/22/2023. Plaintiff Has Pled a Viable § 1983 Claim for Arbitrary Denial of Permits Under an Inapplicable Code Provision ....** 26
      A. Plaintiff Has Pled Each Element of a Substantive Due Process Claim. See Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007); Natale v. Town of Ridgefield, 170 F.3d 258, 262–63 (2d Cir. 1999). To plead a substantive due process violation in the land-use context, a plaintiff must allege: ............. 27
      B. Plaintiff Has Pled a Valid Regulatory Takings Claim ................................................................... 27
      C. Collateral Estoppel Does Not Apply. See Friedl v. City of New York, 210 F.3d 79, 86 (2d Cir. 2000); Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995). ......................................................... 28
      D. Plaintiff Was Denied a Full and Fair Opportunity to Litigate. Koumelos v. Coughlin, 88 N.Y.2d 674, 678 (1996). See Davidson v. Capuano, 792 F.2d 275, 278–80 (2d Cir. 1986). ........................................ 28
      E. Monell Liability Is Pled ................................................................................................................ 29

**COUNT FIVE: 14 MONTH DELAY IN FILING SUMMONS IN JUSTICE COURT from April 2023 to August 2024. Plaintiff Has Pled a Due Process Violation Based on Deliberate 14-month Delay in Filing a Summons which was ultimately dismissed in Plaintiff's favor and caused the unnecessary permit application and therefore the unnecessary article 78. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 433–35 (1982); Radwan v. Manuel, 55 F.4th 101, 123 (2d Cir. 2022).** ................................................................................................................................ 29

**COUNT SIX: ARBITRARY AND UNLAWFUL INTERPRETATION OF ZONING CODE BY ZONING BOARD OF APPEALS ON 11/2/2023. Plaintiff Has Pled a Valid Due Process Violation Based on the ZBA's Arbitrary Interpretation of BTC § 125-79.1A.  Here Plaintiff asserts the property right standard in Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007);  The shocks the conscious standard in Natale v. Town of Ridgefield, 170 F.3d 258, 262–63 (2d Cir. 1999).** ................................................................................................................................ 31

**COUNT SEVEN: ZBA's 11/2/2023 DECISION WAS A DE FACTO DOWNZONING. Plaintiff Has Pled a Valid Takings and Due Process Claim Based on De Facto Rezoning. Penn Central, 438 U.S. at 124.** ............................................................... 33

**COUNT EIGHT:  DEFENDANTS ILLEGALLY DELAYED THE ZONING BOARD APPEAL MEETING BY 5 MONTHS. Plaintiff Has Pled a Procedural Due Process Violation Based on Unreasonable Delay in Hearing Her Zoning Appeal (5 months to grant Zoning Board Appeal) this delay was not within a "meaningful time" and caused lost rental income as a result and violated NY State Town Law 267a. See Mathews v. Eldridge, 424 U.S. 319 (1976).** ................................................................ 35

**COUNT NINE: Plaintiff Has Pled a Procedural Due Process Violation Based on the Town's FAILURE TO TIMELY FILE THE ZBA DECISION by 11/7/2023 in accordance with Town Law 267a. Town failed to file ZBA decision within 5 days (approx. 30 days too late on 12/8/2023) and ALTERED THE DECISION in a new ex parte hearing before eventually filing. Plaintiff was denied access to judicial review within a "meaningful time". Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), and Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458 (2d Cir. 2006).** .................................................... 37

**COUNTS TEN THROUGH EIGHTEEN STATE LEGALLY SUFFICIENT CLAIMS FOR MALICIOUS PROSECUTION, RETALIATION, AND PROCEDURAL DUE PROCESS. DEFENDANTS GORDON AND ZITT ARE NOT IMMUNE.** ...................... 39

    **A. Elements met. Plaintiff States a Legally Sufficient Claim for Malicious Prosecution Under § 1983** ............................................................................................. 39

    **B. Not Entitled to Absolute Prosecutorial Immunity. Gordon is a mere contract employee not government officials. Zitt has no formal relationship to the Town of Bedford. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Kalina v. Fletcher, 522 U.S. 118, 127 (1997)** ............................................................................................... 40

    **C. Qualified immunity does not protect officials who violate clearly established law. The rights at issue—freedom from malicious prosecution, due process, and retaliation for protected speech—are clearly established under federal law. See Hartman v. Moore, 547 U.S. 250, 256 (2006); Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1954–55 (2018); Brady v. Maryland, 373 U.S. 83 (1963).** ............................................... 41

**CONCLUSION** ............................................................................................................ **42**

TABLE OF AUTHORITIES

I. U.S. Constitution

- U.S. Const. art. II, § 2, cl. 2 (Appointments Clause)
- U.S. Const. amend. I
- U.S. Const. amend. IV
- U.S. Const. amend. V
- U.S. Const. amend. VI
- U.S. Const. amend. XIV

II. Federal Statutes

- 42 U.S.C. § 1983
- 42 U.S.C. § 1988

III. New York State Statutes and Regulations

- N.Y. Town Law § 267-a(5)
- N.Y. Town Law § 267-a(7)
- N.Y. Town Law § 267-a(9)
- N.Y. CPLR § 7803(3)
- N.Y. CPL § 30.30
- N.Y. CPL § 40.20
- Bedford Town Code §§ 125-12, 125-79.1A

IV. Federal Case Law

- Ashcroft v. Iqbal, 556 U.S. 662 (2009)
- Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)
- Bernard v. County of Suffolk, 356 F.3d 495 (2d Cir. 2004)
- Brady v. Town of Colchester, 863 F.2d 205 (2d Cir. 1988)
- Buckley v. Fitzsimmons, 509 U.S. 259 (1993)
- Burtnieks v. City of New York, 716 F.2d 982 (2d Cir. 1983)
- Carey v. Piphus, 435 U.S. 247 (1978)
- Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778 (2d Cir. 2007)
- Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995)
- Cunney v. Bd. of Trustees, 660 F.3d 612 (2d Cir. 2011)
- Davidson v. Capuano, 792 F.2d 275 (2d Cir. 1986)
- Friedl v. City of New York, 210 F.3d 79 (2d Cir. 2000)

- Gagliardi v. Village of Pawling, 18 F.3d 188 (2d Cir. 1994)
- Giakoumelos v. Coughlin, 88 N.Y.2d 674 (1996)
- Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494 (2d Cir. 2001)
- Hartman v. Moore, 547 U.S. 250 (2006)
- Hill v. City of New York, 45 F.3d 653 (2d Cir. 1995)
- Hudson v. Palmer, 468 U.S. 517 (1984)
- Imbler v. Pachtman, 424 U.S. 409 (1976)
- Kapps v. Wing, 404 F.3d 105 (2d Cir. 2005)
- LaFleur v. Whitman, 300 F.3d 256 (2d Cir. 2002)
- Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)
- Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992)
- Mathews v. Eldridge, 424 U.S. 319 (1976)
- Monell v. Dep't of Social Servs., 436 U.S. 658 (1978)
- Natale v. Town of Ridgefield, 170 F.3d 258 (2d Cir. 1999)
- Nnebe v. Daus, 931 F.3d 66 (2d Cir. 2019)
- O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005)
- Patterson v. Coughlin, 761 F.2d 886 (2d Cir. 1985)
- Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978)
- Perry v. Sindermann, 408 U.S. 593 (1972)
- Radwan v. Manuel, 55 F.4th 101 (2d Cir. 2022)
- Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458 (2d Cir. 2006)
- Royal Crown Day Care LLC v. Dep't of Health, 746 F.3d 538 (2d Cir. 2014)
- Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84 (2d Cir. 1992)
- Trump v. United States, 602 U.S. ___ (2024)
- United States v. Arthrex, Inc., 594 U.S. ___ (2021)
- Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977)
- West v. Atkins, 487 U.S. 42 (1988)
- Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54 (2d Cir. 1985)
- Ying Jing Gan v. City of New York, 996 F.2d 522 (2d Cir. 1993)
- Zahra v. Town of Southold, 48 F.3d 674 (2d Cir. 1995)
- Zinermon v. Burch, 494 U.S. 113 (1990)

## EFC Document Exhibit Table

| Doc Number | Exhibit | Description |
| --- | --- | --- |
| 1-1 | Exhibit A | Zoning Board Meeting 11/2/2024 Video Link |
| 1-2 | Exhibit B | Permit Denial Letter under BTC 125.79-1A on 9/22/2023 |
| 1-3 | Exhibit 1B | Decision & Order Judge Kimmel dismissing the Justice Court complaint for speedy trial under CPL 30.30 and for facial insufficiency dated 8/28/2024 |
| 1-4 | Exhibit C | Video Link to 11/2/2024. Provided in the Article 78 due to unavailable transcript |
| 1-5 | Exhibit 1C | Judge Meken Decision and Order - facial insufficiency |
| 1-6 | Exhibit D | Notice of Violation "NOV" issued 4/23/2023 |
| 1-7 | Exhibit E | Land Survey by Patrick Croke showing cottage on independent acre |
| 1-8 | Exhibit 1E | Notice of Claim 12/9/2024 |
| 1-9 | Exhibit F | Survey showing structure filed with BOD since at least 2000 |
| 1-10 | Exhibit G | Drawings submitted with June 1, 2023, and July 7, 2023 applications |

| 1-11 | Exhibit H | Video clip of 11/2/2023 ZBA meeting |
| 1-12 | Exhibit I | Email proving request to be served with summons (approx. 1-year delay) |
| 1-13 | Exhibit J | Email: Attorney Gordon referred case on 9/22/2024 to deny permit |
| 1-14 | Exhibit K | 7/6/2023 second ignored permit application |
| 1-15 | Exhibit L | 9/27/2024 ZBA appeal filed after 9/22/2024 denial |
| 1-16 | Exhibit M | Email excluding Plaintiff from 12/7/2024 meeting; real hearing/vote was 11/2/2024 |
| 1-17 | Exhibit U | Bedford ADU program; up to $125,000 grants to legalize apartments |
| 1-18 | Exhibit V | Email denying 6th Amendment rights and excluding Plaintiff from 12/7/2024 meeting |
| 39-1 | Judicial Recusals | |
| 39-2 | | Resolution / Policy Municipal policy to sue Hammer |
| 39-3 | | Exhibit Request for Conflict |
| 39-4 | | Assignment of J. Williams |
| 39-5 | | Recusal of J. Williams Recusal on 11/30 before second ZBA meeting |

| | | |
|---|---|---|
| 39-6 | Recusal of J. Prisco | Recusal on 12/7 before second ZBA meeting |
| 39-7 | Assignment of J. Fififio | Assigned before second ZBA meeting |
| 39-8 | Ethics Complaint | Filed 7/30 re: Gordon & Zitt before second prosecution |
| 39-9 | Appellate Filing Notice 4/23/2024 | 14 days before 1st Justice Court prosecution |
| 39-10 | Notice of Appeal initiated 5/6/24 | Prosecution initiated 14 days after NYSCEF notice of appeal |
| 39-11 | Town demands deposition on 5/9/24 | 50H hearing request 16 days after appeal notification |
| 39-12 | Demand for 50H on 9/18/24 | 50H hearing request response to first dismissed prosecution |
| 39-13 | CLE by Keane & Beane PC which states if there is any ambiguity in the law is firmly on the landowners side | Case law not provided to Appellate Division (5/6/24 summons) |
| 39-14 | Minutes | Justice Court Proceeding |
| 48-1 | No immunity Gordon and Zitt are mere contact attorneys for civil matters | Gordon Retainer and Resolution to Retain |
| 48-2 | FOIL request 6/11/2025 Town Still refuses to produce the Brady material sought in Justice Court approximately one year ago | Refusals to provide internal emails pursuant to 6/11/2025 FOIL request |

| | | |
|---|---|---|
| 49-3 | Email to Judge Kimmel. No response. She never directed re-filing of the complaint or gave leave. She states wither "dismissal" or "superseding" are the only options. Speedy trial had run and superseding was no longer available. | Clarification on whether Judge Kimmel is directing re-filing- she did not |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
Melanie Hammer,

     -against-

Town Of Bedford New York, Department of Building          25-CV-2618
Bedford new York, Zoning Board of Appeals Bedford    (CS)
New York, Building Inspector Town of Bedford New
York (Albert Ciraco), Attorney for the Town of Bedford
York (Eric Gordon, Esq. & Robert Zitt, Esq.)

       Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## PRELIMINARY STATEMENT

This case arises from what may, at first glance, appear to be a petty dispute over local zoning

enforcement. But the implications are far more serious. The facts alleged describe a coordinated

campaign of retaliatory enforcement, malicious prosecution, and systemic constitutional

violations orchestrated by municipal officials who used zoning deprive the plaintiff (alone) of

her legal zoning rights. Governmental overreach, even when disguised as routine code

enforcement, becomes a matter of profound constitutional concern when it *targets an individual*

through *deliberate and sustained misuse* of administrative authority, and judicial process. Here,

the systematic intentional delays were designed to prevent Plaintiff access to due process. During

this litigation Defendants Gordon and Zitt's firm (who are on hourly retainer[1]) have billed, I

submit, hundreds of hours to the Town of Bedford wasting taxpayers' dollars even despite Town

of Bedford stated objective to incentive apartments "ADUs" like the one at issue in this case.

---

[1] ECF Doc. 48-1 – Defendant Gordon's retainer agreement

Bedford received a multimillion-dollar grant from the NY state to pay homeowners for ADUs. Conversely, they prosecuted me.

Plaintiff has asserted Eighteen independent causes of action under 42 U.S.C. § 1983 and related federal and state law. Each count is supported by detailed factual allegations, including timelines, judicial rulings, documented prosecutorial misconduct, improper double prosecutions specific Brady violations, and ethical breaches by public attorneys acting under color of state law. Individually, each claim alleges a plausible violation of protected rights. Taken together, they reveal a pattern of malice and concerted abuse of power that shocks the conscience and demands judicial scrutiny.

The prior rulings attached to the Defendants' own motion to dismiss only reinforce the gravity of this case. They serve not to exonerate the Defendants, but to demonstrate the extraordinary difficulty of holding municipal actors accountable. The tone and content of certain rulings—such as Judge Fifidios's harsh opinion, reflect a broader failure to review the underlying facts or evidence and the decision reports to a review of the wrong hearing altogether[2]. Similarly, several dismissals in Justice Court appear to presume Plaintiff's guilt while simultaneously acknowledging that there was insufficient evidence to even draft a complaint. Multiple judicial recusals further underscore the irregularity and volatility of these proceedings. Defendants

---

[2] Judge Fufidios ruling referenced a review of a 12/7/2024 ex parte hearing which was not the subject of the article 78 petition. Instead, the court should have limited its review to the 11/2/2024 hearing which was the subject of the article 78 filed 8 days earlier on 11/30/2024. The judges review of the wrong proves no full and fair opportunity to litigate the issues was available in the underlying proceeding. The fact that the court relied on an ex parte hearing proves that that the due process claims asserted herein were not considered.

12

misinform the Court that leave was granted by Judge Kimmel to re-file. And I asked her directly via e-mail.[3]

Plaintiff does not bear the burden of proving her claims at this stage. She must only allege facts sufficient to state a claim that is plausible on its face. She has done so. And beyond this minimal threshold, the Complaint, when read in conjunction with the documentary exhibits incorporated by reference, demonstrates a factual and legal foundation that would support a finding well beyond mere plausibility.

STATEMENT OF MATERIAL FACTS

1. As a preliminary matter, Plaintiff vigorously disputes the foundational premise of Defendant's motion, that collateral estoppel applies in this case. The Town's coordinated effort to deprive Plaintiff of her right to rent her apartment, including its actions related to downzoning, has **never been subjected to comprehensive judicial review**. The 18 counts set forth in the Complaint describe a pattern of constitutional violations, beginning with the issuance of a now-dismissed summons that was unlawful as a matter of law, and continuing through two malicious prosecutions based on identical charges, coupled with protracted procedural delays. These claims, taken both individually and collectively, have not previously been adjudicated and have never been evaluated under constitutional standards. Therefore, issue preclusion does not apply.

---

[3] See email to Judge Kimmel requesting clarification on leave to re-file. The Judge never responded and ***did not*** direct refiling in her motion ECF doc. 49-2  and 1-3. Defendant misinformed this court in their motion to dismiss.

13

2. First, The Town agrees with the facts presented in the First amended complaint "FAC" complaint and argues "Indeed, it is the facts absent from the Amended Complaint that bear upon the disposition of this motion".

3. Defendant incorrectly states that there is evidence that the Plaintiff converted the space on her property.  This argument is estopped based on the judicial decisions of Judge Menken and Kimmel where the allegations regarding Plaintiff's conversion of the apartment were dismissed for lack of evidence.

4. Plaintiff agrees with the defendant's description of the article 78 ruling which credited and reviewed, inter alia, the wrong judicial hearing 12/7/2023 rather than the 11/2/2023 hearing.

5. Plaintiff agrees that the petition was dismissed on motions and Plaintiff did not have a full and fair opportunity to litigate the issues.

6. With respect to the criminal proceedings. Plaintiff disagrees:

> -the lower court never directed or granted leave to refile the complaint, in actuality the Judge Kimmel properly informed the Town instead of "withdrawing" the complaint the proper course of action was either to "supersede" or  move to "dismiss" the complaint.  As the speedy trial time had already lapsed the Town did not have the ability to supersede the complaint.  *They re-filed without leave of the court and thereby attempted to circumvent the CPL 30.30 codification of constitutionally required speedy trial.* Even if the court had granted leave to refile (which she did not) it would have been constitutionally impermissible and barred by CPL 40.20.

**LEGAL STANDARD ON A RULE 12(B)(6) MOTION Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Ail. Corp. v. Twombly, 550 U.S. 544, 555.**

Plaintiff agrees with Defendant's stated standard. To withstand a Rule 12(b)(6) motion, a complaint need only plead sufficient facts to state a facially plausible claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). For § 1983 claims, a plaintiff must allege (1) a violation of a federal right and (2) that the deprivation occurred under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). The Court *must* accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Plaintiff has met and exceeding that standard with a properly plead complaint accompanied by 27 exhibits (See ECF Doc. Numbers 1-1 to 1-18 & 39-1 to 39-9)** attached to the first amended complaint and the initially filed complaint (incorporated by reference in the amended complaint). More than mere conclusory allegation **Plaintiff has evidenced each point with exhibits.**

Defendant argues that Plaintiff has failed to state a constitutionally cognizable property right. That argument fails. The Town of Bedford's issuance of a Notice of Violation under an inapplicable provision of the Bedford Town Code (§ 125-12)[4], followed by its refusal to issue retroactive permits or provide a forum to challenge the violation, **deprived Plaintiff of a constitutionally protected property interest in the continued lawful use and rental of her property and essentially downzoned her.**

**Under binding Second Circuit precedent, a legitimate claim of entitlement to a property interest exists where a property owner possesses the right to use their property in a manner**

---

[4] This charge and the other violations charged in the summons were dismissed ECF doc 1-3 and 1-5.

15

**permitted by law, free from arbitrary and unjustified interference by local government. See Cunney v. Bd. of Trustees of the Vill. of Grand View, 660 F.3d 612, 622 (2d Cir. 2011) (holding that a landowner's longstanding use in conformity with local law gave rise to a protected property interest); Clubside, Inc. v. Valentin, 468 F.3d 144, 154 (2d Cir. 2006) (recognizing a property interest where plaintiffs had a clear entitlement to use of land under local zoning law).** Here, Plaintiff's entitlement based on her R1A zoning; to rent a preexisting, code-compliant apartment was extinguished not by valid legal process, but by the Town's arbitrary invocation of a non-applicable zoning code provision and its constructive denial of all avenues to challenge that action[5]. By refusing to serve the summons in Justice Court, declining to provide a written denial of permits, and blocking any administrative or judicial review, the Town effected a de facto revocation of Plaintiff's vested right to lawful occupancy and rental income[6]. Such actions constitute a textbook deprivation of property under the Due Process Clause. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (due process requires meaningful opportunity to contest governmental deprivation of property).

**COUNT 1, 2, 3, 5 ISSUES NOT PRECLUDED BY COLLATERAL ESTOPPEL. EXACT CLAIMS NOT PREVIOUSLY DECIDED. LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002). Ying Jing Gan v. City of New York, 996 F.2d 522, 532–33 (2d Cir. 1993); Davidson v. Capuano, 792 F.2d 275, 278–80 (2d Cir. 1986). PLAINTIFF DID NOT HAVE A FULL AND FAIR OPPORTUNITY TO BE HEARD.**

A. **Collateral Estoppel does not apply to this course of conduct complaint that involves constitutional issues that can only be reviewed in federal court.**

---

[5] When plaintiff finally got the opportunity to be heard in Justice Court the notice of violation was twice dismissed. This made a permit unnecessary.

[6] Obviously since the charge of BTC 125-12 was dismissed, the permits the town required to correct the now dismissed violation, and the decision of supporting the permit denial in the article 78, are irrelevant. And not a proper basis for preclusion.

16

Defendants argue that Plaintiff is collaterally estopped from relitigating issues decided in a prior Article 78 proceeding. That argument fails. As a matter of law all of the counts that refer to BTC 125-12 were proven in criminal court under the decisions of Judge Kimmel and Meken to be baseless. And decision about denying permits to correct the dismissed violations are irrelevant to the instant matter before this court. The notice of violation that gave rise to the alleged necessity for a permit are all based on the alleged violation of BTC 125-12.  As a matter of law and fact that summons was erroneously and illegally issued. Therefore, the damages that resulted from this unlawful restriction of my property rights and de facto downzoning are *not* estopped. Defendant cannot and should not have asserted that I am in violation of BTC 125-12, Defendant is estopped from making that argument[7] or arguing that I personally renovated the property.

**B. The Article 78 Proceeding Did Not Address legality the Notice of Violation Under § 125-12 Count One, Two, Three, and Five, challenges the April 27, 2023, Notice of Violation under § 125-12 (LOTS), which led to two prosecutions—both dismissed for facial insufficiency by Judges Kimmel and Menken. Those dismissals confirm the Notice lacked any legal foundation.** *Defendants* **are therefore estopped from arguing that Plaintiff is violating the law with this apartment. That issue has been twice determined and twice dismissed.  Therefore, Plaintiff is in compliance as a matter of law.**

In contrast, the Article 78 proceeding addressed an *entirely separate* and very narrow issue, to wit, whether the Zoning Board acted arbitrarily upholding the building inspector's interpretation in *denying a permit* under **§ 125-79.1A (COTTAGES).** That proceeding should not have considered nor could have considered the constitutionality or validity of the **§ 125-12 (LOTS).**

**Section  § 125-12 notice that forms the basis of COUNT 1, 2, 3, and 5**. That issue was not before the ZBA and therefore could not have been a proper basis for the article 78 decision.

---

[7] ECF Doc. 1-3 and 1-5

**Thus, the legal issues are distinct, and collateral estoppel does not apply**. See Giakoumelos v. Coughlin, 88 N.Y.2d 674, 678 (1996) (issue preclusion applies only to matters actually litigated and decided).

In fact, the only valid preclusion here runs against Defendants: both summonses were dismissed, precluding them from arguing that the Notice of Violation was valid.

**C. Plaintiff Did Not Have a "Full and Fair Opportunity" to Litigate These Constitutional Claims in the Article 78 Proceeding Counts 1-9 and is therefore not estopped. Ying Jing Gan v. City of New York, 996 F.2d 522, 532–33 (2d Cir. 1993); Davidson v. Capuano, 792 F.2d 275, 278–80 (2d Cir. 1986).**

Even if the issues overlapped (they do not), New York law is clear that Article 78 proceedings do not afford the full and fair opportunity necessary to preclude subsequent federal claims under § 1983. The Second Circuit has long recognized that Article 78 review is limited to narrow questions of administrative procedure, and not a proper vehicle to adjudicate federal constitutional claims. See Ying Jing Gan v. City of New York, 996 F.2d 522, 532–33 (2d Cir. 1993); Davidson v. Capuano, 792 F.2d 275, 278–80 (2d Cir. 1986).

Moreover, the state court **did <u>not</u> permit Plaintiff to present testimony, offer evidence, or receive findings of fact or law on the record.** The court also improperly relied on an ex parte post-hoc ZBA hearing *held after the petition was filed*, rendering the entire proceeding both flawed and constitutionally inadequate to preclude federal litigation.

## ARGUMENT

18

**COUNT ONE:** *ISSUANCE* **OF NOTICE OF VIOLATION ON 4/27/2023: Plaintiff Has Sufficiently Pled a Procedural Due Process and Takings Claim Under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)**

**A. Plaintiff Has Pled Each Element of a Procedural Due Process Claim**

To state a claim for deprivation of procedural due process, a plaintiff must plead:

1. A constitutionally protected property or liberty interest.

   Plaintiff alleges a vested property interest in the continued lawful rental of her pre-existing accessory apartment, located in an R1A zoning district. The apartment was constructed decades ago and fully code-compliant (on its own acre[8]). As the Second Circuit has held, a property interest is created where a party has a "legitimate claim of entitlement" under local law. Clubside, Inc. v. Valentin, 468 F.3d 144, 154 (2d Cir. 2006). Plaintiff's rental use falls squarely within this protection, as she relied on longstanding zoning compliance and ownership rights. It is uncontested that the property at issue belongs to the Plaintiff and that she was renting it, in that, the defendants served plaintiff with the violation at issue and defined her permit applications. This shows ownership. (ECF Doc. 1-1 Video, 1-2, 1-3, 1-1c, 1-6, 1-7, 1-9, 1-10, 1-14) FAC ¶¶ 32–36, 60–62, 64–70, 125)

2. **Governmental deprivation of that interest.**

   The Town of Bedford arbitrarily issued a Notice of Violation under Bedford Town Code § 125-12, a provision that applies only to "buildings hereafter erected." The apartment in question is neither newly constructed nor unlawful, a fact confirmed by its age and history. Land Survey filed 2000 refers to this structure as a "single frame residence"[9].

---

[9] ECF Docs 1-7, 1-9, 1-10.

Despite this, the Town *treated* Plaintiff as if she had *built* an unpermitted structure, refused to process unnecessary retroactive permits, and obstructed all efforts to clarify or resolve the issue, directly causing loss of use and rental income. (permit denial FAC ¶¶ 33–36, obstructed efforts 60–64, issuing the violation 124–125). *The Town's permit requirements were the same as would have been necessary if she built an entirely new building on her property.* The allegation here is that at some point an existing "single story residence structure" , inter alia, got a bathroom renovation.[10]

3. The deprivation occurred without constitutionally sufficient process.

**For over 14 months, the Town refused to serve Plaintiff with a summons in Justice Court.** During this time, Plaintiff was denied the ability to challenge the Notice of Violation or obtain a written denial that would trigger appeal rights. When the summons was finally issued, the matter was dismissed immediately, validating Plaintiff's position that no violation existed**, and no permit was legally required.** (ECF Doc. 1-3 and 1-5 see also ECF Doc 1-13 Building Dept refers case to **Attorney Gordon to craft a reason to deny the permits** and rational changes, email excluding plaintiff from the hearing ECF Doc 1-18; FAC ¶¶ 86–90, 142–145, 164–172). Evidencing their knowledge that I was in compliance with BTC 125-12.

Under Mathews v. Eldridge, 424 U.S. 319, 332–33 (1976), courts weigh the private interest at stake, the risk of erroneous deprivation, and the government's asserted interest. Here, the Town never articulated any valid justification for its actions. To the contrary, it actively **incentivized the legalization of similar accessory dwelling units (ECF Doc. 1-**

---

[10] The structure at issue has been on file with the department of buildings since at least 2000 as a "single story residence structure" see ECF doc 1-9.

**17 Bedford  Add-one ADU program)**, highlighting the arbitrariness of Plaintiff's

treatment. See also Board of Regents v. Roth, 408 U.S. 564, 569–70 (1972); Kapps v.

Wing, 404 F.3d 105, 113 (2d Cir. 2005).

**B. Plaintiff Has Pled a Takings Clause Violation.** Penn Cent. Transp. Co. v. New York City,

438 U.S. 104, 124 (1978).

Plaintiff also pleads a plausible claim under the Takings Clause. The Town's enforcement (now

dismissed by two judges) **actions deprived Plaintiff of economically beneficial use of her**

**property without compensation, and without legitimate zoning authority**. See Penn Cent.

Transp. Co. v. New York City, 438 U.S. 104, 124 (1978); Lucas v. S.C. Coastal Council, 505

U.S. 1003, 1015 (1992); Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2072 (2021). Plaintiff

alleges in each and every count a damages section:

- She lost $52,800 in rental income due to the improper NOV and enforcement actions; and

- The effective downzoning of her parcel from R1A to R12A caused a $2 million reduction

  in market value.(FAC ¶¶ 60, 125, 145, 169–172, 196(c)–(e))

These are concrete, measurable injuries flowing from a targeted and unjustified regulatory

interference, classic hallmarks of a regulatory taking under Penn Central.

**C. Plaintiff Was Not Required to Exhaust State Remedies.** Monroe v. Pape, 365 U.S. 167,
183 (1961); Zinermon v. Burch, 494 U.S. 113, 125–26 (1990).

To the extent Defendants argue that Plaintiff should have pursued additional administrative or

state-level appeals, such a defense is inapplicable. The Supreme Court has repeatedly held that

exhaustion is not required to bring a § 1983 procedural due process claim. Monroe v. Pape, 365

U.S. 167, 183 (1961); Zinermon v. Burch, 494 U.S. 113, 125–26 (1990).

Moreover, the FAC alleges that Plaintiff was expressly denied access to process by Defendants' own conduct. Logan v. Zimmerman Brush Co., 455 U.S. 422, 433–35 (1982) ("The State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim.").

### D. Plaintiff Has Pled a Regulatory Taking

In addition to procedural due process, the FAC also supports regulatory takings claim based on the economic impact of the Town's enforcement campaign. The Town's actions:

- Barred lawful rental use and forced vacancy.

- Deprived Plaintiff of income and return on investment; and

- Imposed de facto zoning restrictions inconsistent with the governing R1A classification.

This unreasonable interference with Plaintiff's legitimate expectations and property value—absent any public benefit—satisfies the standard for a regulatory taking.

### E. Monell Liability Is Properly Pled. under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

The FAC also supports municipal liability under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978), by alleging:

- A pattern of coordinated conduct among Town officials, the Building Inspector, and the Town Attorneys.

- Bad-faith and retaliatory enforcement, confirmed by public statements that § 125-12 would later be dismissed, ECF doc 1-1.

22

- Admission on video[11] at 11/2/2023 ZBA that there permits denial was based on and impermissible "implication" not law, ECF 1-1, and

- **Formal ratification by the Town Board via resolution, attached to the FAC to sue Hammer ECF 39-2.**

**COUNT TWO: FIRST PERMIT DENIAL UNDER BTC 125-12 ON 6/1/2023. Plaintiff Has Pled a Valid Fourteenth Amendment Due Process Claim for Arbitrary Permit Denial under Iqbal and Twombly.**

Plaintiff's First Amended Complaint pleads a constitutionally cognizable claim under 42 U.S.C. § 1983 for deprivation of both procedural and substantive due process based on the **June 1, 2023**, **permit denial.** The denial was arbitrary, irrational, and based on a knowingly inapplicable provision of the zoning code[12]. The Complaint alleges each legal element required to state a plausible claim for relief and supports those allegations with specific factual detail and exhibits. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**A. This Claim Is Not Barred by Collateral Estoppel. LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002.**

Article 78 dealt with a different code BTC 125-79-1A. All arguments preceding this count are incorporated by reference**.**

**B. Plaintiff Has Pled a Procedural Due Process Violation. Mathews v. Eldridge, 424 U.S. 319, 332–33 (1976).**

---

[11] Link: https://mediahttp.iqm2.com/BedfordNY/1665_480.mp4

[12] BTC 125-12 is inapplicable as a matter of judicial orders ECF 1-3 and 1-5

- Plaintiff pled **protected interest** in the right to apply for and receive a permit under R1A zoning. (FAC ¶¶ 133–134)

- **Deprivation of that right** through the June 1, 2023, baseless denial[13].

- **A lack of adequate process**, because Inspector Ciraco refused to issue a written denial, which prevented Plaintiff from appealing to the ZBA under Town Law § 267-a(5). (FAC ¶ 137)

This blocked Plaintiff's ability to obtain timely administrative or judicial review.

C. Monell Liability Is Sufficiently Pled

See count one argument.

**COUNT THREE: REFUSAL TO ISSUE *WRITTEN* PERMIT DENIAL 6/1/2023 Plaintiff Has Pled a Valid Procedural Due Process Claim Based on the Town's *Failure to Issue a Written Denial*. Potter v. Incorporated Village of Ocean Beach (2d Cir. Apr. 10, 2025), which held that repeated implicit refusals and revocation of property privileges, not just express written denials, constitute a de facto final administrative decision triggering due process protection.**

Plaintiff's First Amended Complaint pleads all required elements for a procedural due process violation under 42 U.S.C. § 1983, based on the Town's refusal to issue a written permit denial as required by New York Town Law § 267-a(5). That failure deprived Plaintiff of her statutory and constitutional right to appeal. The denial was not discretionary but mandatory, and the deprivation is well-pled. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Carey v. Piphus, 435 U.S. 247, 263 (1978).

---

[13] It is settled by the Decision by J. Menken and J. Kimmel that Plaintiff is not violating BTC 125-12. See ECF doc. 1-3 & 1-5.

**A. Plaintiff Has Pled Each Element of a Procedural Due Process Claim**

All elements are pled in the FAC:

- Protected Interest: Plaintiff pleads a protected property interest in her lawful residential use and in her statutory right to appeal a permit denial. Under Town Law § 267-a(5), the Building Inspector is required to issue a written decision within five business days. (FAC ¶¶ 86–90, 133–134)

- Governmental Deprivation: The Complaint pleads that Defendant Ciraco refused to issue a written denial, despite being legally required to do so, thereby depriving Plaintiff of her ability to initiate an appeal to the Zoning Board of Appeals. (FAC ¶¶ 135–137)

- Lack of Adequate Process: Because no appeal can be filed without a written denial, the Town's refusal to provide one denied Plaintiff access to any administrative or judicial review of the permit decision. This denial of process is pled as both deliberate and prolonged. (FAC ¶¶ 86–90). This delay prevented rental and caused monetary damages as to plead in each count.

These facts clearly state a procedural due process violation under Mathews and Logan.

**B. Article 78 Was Not an Adequate Substitute**

Defendants argue that Plaintiff had recourse through an article 78 proceeding. But the FAC pleads that no such remedy was available because the Town refused to generate the written denial necessary to trigger that process. (FAC ¶¶ 135–137)

Plaintiff also pleads that the five-month delay between her application and the eventual administrative action was not only unlawful under § 267-a(5), but unconstitutional. A post-

25

deprivation remedy is not adequate where the state itself caused the deprivation by blocking access to review. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 433–35 (1982); Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 102 (2d Cir. 1992).

**C. The Injury Is Pled and Compensable**

The Complaint pleads that the delay and denial of process caused:

- Loss of rental income that Plaintiff would otherwise have collected (FAC ¶¶ 125, 196(c)).
- Strategic disadvantage in defending against retaliatory code enforcement (FAC ¶¶ 142–145, 169).
- Additional legal expenses and prolonged litigation.

Under Carey v. Piphus, 435 U.S. 247, 263 (1978), such injuries are cognizable and compensable under § 1983. The harm pled here is specific, economic, and directly traceable to the procedural failure.

**D. Monell Liability Is Sufficiently Pled**

As with Counts One and Two specifically, (FAC ¶¶ 40, 86–90, 164, 278–280). This is sufficient to plead municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

**COUNT FOUR: DENIAL OF CONSTRUCTION PERMITS ON 9/22/2023. Plaintiff Has Pled a Viable § 1983 Claim for Arbitrary Denial of Permits Under an Inapplicable Code Provision**

Plaintiff has pled a claim under 42 U.S.C. § 1983 for violations of the Due Process and Takings Clauses based on the Town's denial of permits under a zoning code provision that does not apply to her property. The denial was facially unlawful, arbitrary, and pretextual, and caused concrete

26

injury. The First Amended Complaint alleges each legal element with supporting facts and documents. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**A. Plaintiff Has Pled Each Element of a Substantive Due Process Claim. See Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007); Natale v. Town of Ridgefield, 170 F.3d 258, 262–63 (2d Cir. 1999).** To plead a substantive due process violation in the land-use context, a plaintiff must allege:

The FAC pleads:

- Protected Interest: Plaintiff has a protected interest in using her property consistent with its R1A zoning. (FAC ¶¶ 133, 157)

- Arbitrary Government Action: On September 22, 2023 , Defendants denied her permit under BTC § 125-79.1(A), a code provision that applies only to R2A and R4A districts. (FAC ¶¶ 159–163) while also paying other homeowners up to $125,000 to legalize their ADUs.[14]

Plaintiff pleads that Defendants knew this code did not apply to her R1A-zoned property but denied the permit anyway "by implication," an interpretation unsupported by law. This arbitrary and pretextual action meets the standard for a substantive due process violation. (FAC ¶¶ 159–162; see also ECF Doc. 1-1 ZBA available at Hearing Video, timestamp ~2:07:00)

**B. Plaintiff Has Pled a Valid Regulatory Takings Claim**

---

[14] Bedford's ADU program link on their website:
https://www.bedfordny.gov/DocumentCenter/View/1548/Accessory-Dwelling-Unit-Flyer---Seniors

To state a claim under the Takings Clause, a plaintiff must plead:

- A protected interest in the rental and lawful residential use of her property (FAC ¶¶ 133–134, 145, 169).

- That the permit denial barred that use and substantially devalued the property.

- That no compensation was provided.

This satisfies the Penn Central criteria: severe economic burden, interference with investment-backed expectations, and no valid public justification.

**C. Collateral Estoppel Does Not Apply. See Friedl v. City of New York, 210 F.3d 79, 86 (2d Cir. 2000); Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995).**

This cause of action concerns a denial under BTC § 125-79.1(A), but that the Article 78 decision *did not address* whether that provision was applicable to R1A districts, whether its application violated **constitutional rights, or whether the denial constituted a taking**. (FAC ¶¶ 157–163)

**Article 78 review is limited to whether agency action was arbitrary or capricious under CPLR § 7803(3) and does not adjudicate federal constitutional claims.** See Friedl v. City of New York, 210 F.3d 79, 86 (2d Cir. 2000); Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995)

**D. Plaintiff Was Denied a Full and Fair Opportunity to Litigate. Koumelos v. Coughlin, 88 N.Y.2d 674, 678 (1996). See Davidson v. Capuano, 792 F.2d 275, 278–80 (2d Cir. 1986).**

Even if there were overlap (there is not), the FAC pleads that Plaintiff was denied a full and fair opportunity to litigate these constitutional claims in the Article 78 proceeding.

(FAC ¶¶ 90, 172)

See previously plead argument for this issue.

28

**E. Monell Liability Is Pled**

See above and  (FAC ¶¶ 40, 86, 95, 164, 278). This is sufficient to establish Monell

liability. See Monell v. Dept. of Social Services, 436 U.S. 658 (1978)

**COUNT FIVE: 14 MONTH DELAY IN FILING SUMMONS IN JUSTICE COURT from April 2023 to August 2024. Plaintiff Has Pled a Due Process Violation Based on Deliberate 14-month Delay in Filing a Summons which was ultimately dismissed in Plaintiff's favor and caused the unnecessary permit application and therefore the unnecessary article 78. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 433–35 (1982); Radwan v. Manuel, 55 F.4th 101, 123 (2d Cir. 2022).**

Plaintiff has sufficiently pled a violation of procedural due process under 42 U.S.C. § 1983 based

on the Town's intentional delay in filing a criminal summons. The Complaint alleges that this

delay was strategic, retaliatory, and deprived Plaintiff of timely access to judicial review. These

allegations meet the pleading standard under Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009),

and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and state a plausible constitutional

claim.

The FAC alleges a **protected interest** in seeking judicial review of a Notice of Violation issued

April 27, 2023. (FAC ¶¶ 125, 169–172) Under Bedford's procedures, only the Town can initiate

a criminal proceeding to test the NOV's validity. Plaintiff consented to and actively requested

that summonses be filed so she could challenge the allegations in court. ECF Doc 1-12 & FAC ¶

171,

Instead, the Town delayed filing for over fourteen months. During that time, Plaintiff was

**prevented from obtaining judicial review** and was left in regulatory limbo. **The FAC pleads**

**that this delay was not accidental but retaliatory, timed to follow Plaintiff's service of a**

**Notice of Claim that named Town Attorney Eric Gordon individually.** ECF Doc. 39-9.(FAC

¶ 172) The Town then refiled the charge only after that notice was served, without any change in the underlying facts.

The Complaint further pleads that the delay was used strategically to fabricate the appearance of an "unresolved" violation, triggering administrative review by the ZBA and blocking use of the apartment for rental income. (FAC ¶¶ 171–173) Plaintiff lost over $52,800 in income and suffered significant legal expense as a direct result.

This deliberate delay in filing a summons, despite Plaintiff's express request for judicial review, violated due process ECF doc. 1-12 email (Plaintiff requested summons served a year earlier.) See Zahra v. Town of Southold, 48 F.3d 674, 684 (2d Cir. 1995) (**recognizing due process claim where administrative abuse delayed access to judicial resolution**); Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 102 (2d Cir. 1992).

The Complaint also alleges that both summonses eventually filed by the Town were dismissed for facial insufficiency, confirming there was no legal basis for the charges in the first place. (FAC ¶¶ 275–280) These dismissals materially undermine any suggestion that the Town acted in good faith.

**Finally, Plaintiff pleads that the delay was undertaken as part of a broader retaliatory campaign and coordinated strategy among municipal actors**. This issue was not previously reviewed. This conduct supports Monell liability under Monell v. Department of Social Services, 436 U.S. 658 (1978), as the delay was not isolated or accidental, but ratified and repeated. (FAC ¶¶ 40, 164, 278)

**Plaintiff has pled that she was deprived of timely judicial review by deliberate government action, resulting in both constitutional and economic injury. These facts support a facially valid claim for relief under § 1983 and survive Rule 12(b)(6).**

**COUNT SIX: ARBITRARY AND UNLAWFUL INTERPRETATION OF ZONING CODE BY ZONING BOARD OF APPEALS ON 11/2/2023. Plaintiff Has Pled a Valid Due Process Violation Based on the ZBA's Arbitrary Interpretation of BTC § 125-79.1A.  Here Plaintiff asserts the property right standard in Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007);  The shocks the conscious standard in Natale v. Town of Ridgefield, 170 F.3d 258, 262–63 (2d Cir. 1999).**

Plaintiff has pled a facially sufficient claim under 42 U.S.C. § 1983 for a violation of substantive due process, based on the Zoning Board of Appeals' (ZBA) arbitrary and irrational denial of her permit application under BTC § 125-79.1A. The FAC sets forth each element of the claim with supporting facts, citations, and incorporated exhibits. The denial was not based on any valid code provision and had no rational basis. **Count six has never been reviewed as one overt act in furtherance of the entire 18 count scheme.**

Plaintiff pleads a **protected property interest** in the lawful use of her property in accordance with its R1A zoning designation. She applied for permits that conformed to the applicable regulations and submitted all required documentation. (FAC ¶¶ 133–134, 157)

The FAC alleges that on November 2, 2023, the ZBA denied Plaintiff's application under BTC § 125-79.1A, despite the fact that the ordinance applies only to R2A and R4A zoning districts. (FAC ¶¶ 159–163) The ZBA admitted on the record that § 125-79.1A did not explicitly apply to Plaintiff's property, but denied the application "by implication," without citing any controlling

provision of law. (FAC ¶ 160; see also ZBA Hearing Video, timestamp ~2:07:00).[15] Defendants awareness of the law and blatant disregard for the law they are entrusted to uphold shocks the conscious.

That denial was arbitrary and unsupported by the zoning code. Plaintiff pleads that no written interpretation, past precedent, or administrative rationale justified applying § 125-79.1A to R1A property. The ZBA's use of implication rather than statutory text reflects an ad hoc and unlawful decision. They ignored in law. (FAC ¶¶ 159–162)

The Complaint further alleges that this misapplication resulted in direct harm, including lost rental income, increased legal expense, and reputational injury. (FAC ¶¶ 169–172, 196(c)–(e)) These facts are sufficient to support a substantive due process claim. See Brady v. Town of Colchester, 863 F.2d 205 (2d Cir. 1988); Southview Assocs. v. Bongartz, 980 F.2d 84 (2d Cir. 1992).

Plaintiff also pleads that the ZBA's conduct was not isolated or in good faith, but part of a pattern of **retaliatory and irregular enforcement** aimed at depriving her of **lawful use of her property**. These allegations support **municipal liability** under Monell v. Department of Social Services, 436 U.S. 658 (1978), and establish that the ZBA's denial was not a reasonable exercise of discretion but a targeted effort to obstruct Plaintiff's rights. (FAC ¶¶ 86, 164, 278)

---

[15] The reason the Town was unable to find a lawful basis to deny permits is that in R1A zones you are permitted to have a residence on each acre, absent any other restrictions. That is the reason for the zoning designation. The Town wanted this to be unlawful, but it is not prohibited. This apartment is lovely and not a nuance. See photos of the lovely apartment ECF 1-10.

The FAC does not challenge the existence of § 125-79.1A as a valid ordinance, but rather the unlawful extension of that ordinance to a zoning district it does not cover. This distinction is critical. Plaintiff does not seek to invalidate zoning legislation but to recover for **constitutional injury resulting from the ZBA's arbitrary expansion of its scope.**

**COUNT SEVEN: ZBA's 11/2/2023 DECISION WAS A DE FACTO DOWNZONING. Plaintiff Has Pled a Valid Takings and Due Process Claim Based on De Facto Rezoning. Penn Central, 438 U.S. at 124.**

Plaintiff has pled a claim under 42 U.S.C. § 1983 for violation of the Takings Clause and Fourteenth Amendment Due Process Clause based on the Town's effective downzoning of her property through unlawful and extra-statutory interpretation. The FAC alleges that Town officials and the ZBA knowingly applied a zoning restriction to Plaintiff's R1A parcel that had no legal basis in the Bedford Town Code, thereby depriving her of property value and use without just compensation or due process. These facts are sufficient to state a claim under Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978), and Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992).

To plead a regulatory taking, claim, a plaintiff must allege (1) a protected property interest, (2) substantial interference by the government, (3) that rises to the level of a taking, and (4) that no just compensation was provided. See Penn Central, 438 U.S. at 124. Plaintiff has pled all four elements.

The FAC alleges that Plaintiff owns property located in an R1A zoning district and sought to use it consistent with the applicable code. (FAC ¶¶ 157, 190) On November 2, 2023, the ZBA denied her permit application by applying BTC § 125-79.1A, despite that provision only governing R2A and R4A districts. (FAC ¶¶ 159–163, 190–192) The denial was expressly based on

33

"implication," not text. (ECF 1-1 Hearing Video , FAC ¶ 160**). The whole point of being in an R1A verses an R2A or R4A zoning is that it is less restrictive by design. In R1A subdivision is allowed. The property at issue in this case abuts a subdivision and is surrounded by smaller lots 1 acre lots.   It is therefore expressly contrary to the code and shocks the conscious for the Defendants to apply an R2A/R4A code to an R1A district. This act expressly undermines the plaintiff zoning.**

Plaintiff pleads that this denial functionally imposed R2A restrictions on her R1A parcel—effectively rezoning it without notice, public hearing, legislative action, or compensation. (FAC ¶ 193) This is the essence of a regulatory taking: the government imposed new burdens without following lawful zoning procedures. See Lucas, 505 U.S. at 1015 (a regulation that deprives land of all economically beneficial use constitutes a per se taking); Penn Central, 438 U.S. at 124.

Plaintiff alleges significant economic injury as a result of this de facto downzoning: a $2 million decrease in market value and 22 months of lost rental income from a unit that was wrongfully barred. (FAC ¶¶ 125, 169, 196(c)–(e)) These injuries are concrete, foreseeable, and pled in detail. They satisfy the Penn Central framework: substantial economic impact, interference with reasonable investment-backed expectations, and lack of legitimate public purpose.

Plaintiff also pleads that this action violated her due process rights. The Fourteenth Amendment protects against arbitrary deprivations of vested property rights. See Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007). A vested right exists where (1) the use was previously lawful, (2) there was reasonable reliance, and (3) the government altered those rights without legal authority. The FAC pleads each of these elements. Plaintiff's R1A zoning was

34

A-306

never changed by ordinance, but her rights under it were stripped by ZBA action unsupported by any text. (FAC ¶¶ 191–193)

Plaintiff further alleges that the ZBA's statements during the hearing, such as that Plaintiff was "lucky" to keep one unit, or that additional use "can't be done"—confirm that the denial was part of an unwritten, non-public effort to restrict development on Plaintiff's R1A land. ECF doc 1-1 Hearing Video, (FAC ¶ 192) These facts show that the deprivation was intentional, not accidental, and cannot be justified under ordinary zoning principles.

Plaintiff incorporates by reference prior arguments regarding constitutional review  and collateral estoppel not applying, Monell liability properly plead. These allegations, taken as true, support both regulatory takings claim and a substantive due process claim. Count Seven is properly pled and should proceed to discovery.

**COUNT EIGHT:  DEFENDANTS ILLEGALLY DELAYED THE ZONING BOARD APPEAL MEETING BY 5 MONTHS. Plaintiff Has Pled a Procedural Due Process Violation Based on Unreasonable Delay in Hearing Her Zoning Appeal (5 months to grant Zoning Board Appeal) this delay was not within a "meaningful time" and caused lost rental income as a result and violated NY State Town Law 267a. See Mathews v. Eldridge, 424 U.S. 319 (1976).**

Plaintiff has pled a facially sufficient claim under 42 U.S.C. § 1983 for violation of procedural due process, based on the Zoning Board of Appeals' (ZBA) failure to hear her zoning appeal within a reasonable time. The FAC pleads that this delay violated statutory deadlines, caused specific harm, and was part of a broader pattern of retaliation and obstruction. These allegations are actionable under Mathews v. Eldridge, 424 U.S. 319 (1976), and Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

To plead a procedural due process violation, a plaintiff must allege (1) a protected property interest, (2) a deprivation of that interest, and (3) a lack of constitutionally adequate procedures. See Kapps v. Wing, 404 F.3d 105, 113 (2d Cir. 2005). **A hearing that is unreasonably delayed can constitute a denial of process under the Constitution**. See Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 102 (2d Cir. 1992); Burtnieks v. City of New York, 716 F.2d 982, 988 (2d Cir. 1983).

The FAC pleads each of these elements. Plaintiff alleges a protected interest in the use and enjoyment of her R1A-zoned property and in the right to appeal administrative denials under N.Y. Town Law § 267-a(5). (FAC ¶¶ 133–134, 204)

**She pleads that on 6/1/2023 and 7/6/2023, she filed materials necessary to trigger a ZBA appeal, but the Town failed to schedule a hearing or issue a decision until more than five months later. (FAC ¶¶ 86–90, 204) This delay exceeded the "reasonable time" requirement codified in N.Y. Town Law § 267-a(7),** which mandates that a zoning board must hear and decide appeals **within a reasonable time**. The delay was not based on docket constraints or administrative necessity but was instead retaliatory and intentional.

Plaintiff pleads that this delay caused direct and ongoing harm, including:

– Loss of use and rental income from the property;

– The appearance of unresolved violations, which triggered further enforcement, and which they argued in their article 78;

– Delayed judicial review and compounding litigation expense. (FAC ¶¶ 169–172, 196(c)–(e), 204).

36

The Complaint also pleads that this delay was not a neutral or bureaucratic failure. Instead, it was a deliberate tactic used by the Town to suppress Plaintiff's rights and prevent her from challenging unlawful enforcement in a timely way. (FAC ¶¶ 86, 90, 164, 204)

Defendants argue that Plaintiff eventually received a hearing and thus suffered no constitutional harm. That argument fails. A hearing "at a meaningful time" is required under Mathews, 424 U.S. at 333. The FAC pleads that the delay itself caused actionable harm by suppressing Plaintiff's use of the property and interfering with her ability to protect her rights. See Logan, 455 U.S. at 433; Carey v. Piphus, 435 U.S. 247, 263 (1978) (procedural delay that results in economic or emotional harm is compensable under § 1983).

Plaintiff also pleads that this unreasonable delay was part of the same coordinated course of conduct pled in earlier counts, supporting Monell liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). (FAC ¶¶ 40, 86, 164, 278)

The FAC thus pleads a protected interest, a deprivation caused by deliberate administrative delay, and specific harm arising from that delay. These allegations are more than sufficient to state a claim for relief under § 1983.

**COUNT NINE: Plaintiff Has Pled a Procedural Due Process Violation Based on the Town's FAILURE TO TIMELY FILE THE ZBA DECISION by 11/7/2023 in accordance with Town Law 267a. Town failed to file ZBA decision within 5 days (approx. 30 days too late on 12/8/2023) and ALTERED THE DECISION in a new ex parte hearing before eventually filing. Plaintiff was denied access to judicial review within a "meaningful time". Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), and Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458 (2d Cir. 2006).**

Plaintiff has stated a valid claim under 42 U.S.C. § 1983 for violation of procedural due process, based on the Town of Bedford's failure to timely file the Zoning Board of Appeals (ZBA)

decision in accordance with N.Y. Town Law § 267-a(9). The FAC pleads that this delay deprived Plaintiff of timely access to judicial review and caused concrete harm. These facts support a due process claim under Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), and Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458 (2d Cir. 2006).

The FAC alleges that the ZBA voted on Plaintiff's appeal on November 2, 2023, but failed to file its decision with the Town Clerk until 12/8/2023, more than 30 days later. (FAC ¶ 204) This violated the mandatory five-business-day deadline set by N.Y. Town Law § 267-a(9). The delay part of an ongoing pattern of obstructive conduct.

The Town's failure to comply with § 267-a(9) thus denied Plaintiff a meaningful opportunity to challenge the denial and protect her property interests. See Logan, 455 U.S. at 433 (state cannot destroy a property interest by failing to follow required procedures). Especially because in the interim they **defendants held an ex parte fake cover-up meeting and <u>created a whole different reason to support the ZBA decision</u>**.

The FAC also pleads that this delay caused concrete harm: it compressed her litigation timeline, disrupted coordination of her claims, and delayed relief. (FAC ¶ 204) These are actionable injuries under Carey v. Piphus, 435 U.S. 247, 263 (1978) (procedural violations are compensable when they result in real harm).

Defendants argue that the filing delay was harmless because Plaintiff eventually received the decision. But the Due Process Clause requires procedures that operate at a "meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Delayed filing here was not benign, it delayed litigation and obstructed timely resolution of Plaintiff's claims.

The FAC also pleads that this violation was part of a broader campaign to interfere with Plaintiff's rights and obstruct review, further supporting municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). (FAC ¶¶ 86, 164, 204)

**COUNTS TEN THROUGH EIGHTEEN STATE LEGALLY SUFFICIENT CLAIMS FOR MALICIOUS PROSECUTION, RETALIATION, AND PROCEDURAL DUE PROCESS. DEFENDANTS GORDON AND ZITT ARE NOT IMMUNE.**

**A. Elements met. Plaintiff States a Legally Sufficient Claim for Malicious Prosecution Under § 1983**

To state a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must allege:

(i) initiation or continuation of a criminal proceeding;

(ii) favorable termination;

(iii) lack of probable cause;

(iv) malice; and

(v) post-arraignment deprivation of liberty.

See Lanning v. City of Glens Falls, 908 F.3d 19, 27 (2d Cir. 2018); Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000); Manganiello v. City of N.Y., 612 F.3d 149, 161 (2d Cir. 2010).

Plaintiff has pled each element. The Town, through Gordon and Zitt, i**nitiated and reinitiated two criminal prosecutions**[16] (Counts 10–12, 14–15). **Both were dismissed** by Justices Kimmel

---

[16] The summons filed in Justice court contained 6 counts which were punishable to **15 days of jail time each. If sentenced consecutively Plaintiff could have faced 90 days in jail**. Since the

and Menken for **lack of evidence** and speedy trial violations. See FAC ¶¶ 275–280, 288–293. Defendants **refiled charges despite no new evidence and no legal basis**. See FAC ¶¶ 158–160, 165–170. Plaintiff pleads **malice based on retaliatory timing**, each filing followed protected activity, including a notice of claim, appellate briefs, and grievance complaints. See ECF Doc. 39-2 resolution to Sue Hammer, 39-8 ethics complaint naming Zitt and Gordon, 39-9 Appellate filing notice 14 days before summons issued in justice court in response, & FAC ¶¶ 158, 275, 288. **Plaintiff was arraigned, compelled to appear in court, and subjected to a credible threat of incarceration** (up to 15 days for each of 6 counts) c**onstituting a seizure under the Fourth Amendment**. See FAC ¶¶ 275, 278, 292. (All elements plead in bold).

**B. Not Entitled to Absolute Prosecutorial Immunity. Gordon is a mere contract employee not government officials. Zitt has no formal relationship to the Town of Bedford. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Kalina v. Fletcher, 522 U.S. 118, 127 (1997)**

Plaintiff alleges that neither Gordon nor Zitt holds a formal prosecutorial appointment. **Both are private attorneys contracted by the Town through Keane & Beane, P.C., with no statutory authority under New York law**. FOIL responses confirm that Gordon power derives solely from a private **retainer agreement and a *civil* appointment to act as the town's attorney**. See FAC ¶¶ 274, 295. Retainer agreement and town resolution to retain Gordon attached ECF doc 48-1.

**Absolute immunity is limited to public prosecutors** performing **core advocacy functions** in judicial proceedings. See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Kalina v. Fletcher,

---

town was so aggressively pursuing the Plaintiff in this case there was a realistic concern that they would in fact seek jail time. Note they announced an *intent to seek a search warrant* on this bathroom renovation case on the record in J. Menken's Court. This is a highly intrusive governmental tactic given the allegations, which in this case were not ever proven.

40

522 U.S. 118, 127 (1997). It does not apply to administrative, investigative, or retaliatory conduct outside that role.

**Here, Plaintiff alleges that Zitt re-filed charges after judicial dismissal, and Gordon failed to appoint a special prosecutor despite clear conflicts of interest**, Zitt **withheld Brady material** (Count 13), and engaged in **retaliatory administrative conduct** (Counts 16–18). These are **not protected functions**, and immunity does not apply.

Zitt holds no formal relationship with the Town of Bedford and doesn't even have a retainer agreement with the Town.

**C**. **Qualified immunity does not protect officials who violate clearly established law. The rights at issue—freedom from malicious prosecution, due process, and retaliation for protected speech—are clearly established under federal law. See Hartman v. Moore, 547 U.S. 250, 256 (2006); Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1954–55 (2018); Brady v. Maryland, 373 U.S. 83 (1963).**

The Complaint alleges that Defendants acted without probable cause, retaliated against Plaintiff for constitutionally protected activities, violated ethical obligations, and acted beyond their legal authority. That Zitt intentional withheld Brady Material despite demands for the same. **These claims are fact-intensive and not appropriate for resolution on a motion to dismiss. See Zahrey v. Coffey, 221 F.3d 342, 349–50 (2d Cir. 2000); McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).**

Here, Gordon and Zitt acted:

- Without prosecutorial authority, as private retained civil counsel.

- After formal notice of conflict, having been named in Plaintiff's civil rights and grievance filings【FAC ¶¶ 180–184】.

41

- With knowledge that charges were invalid yet pursued them regardless【FAC ¶¶ 165–170, 278–280】.

- In retaliation for constitutionally protected legal activity【FAC ¶¶ 158, 275.

At this stage, the Court must accept those facts as true. Iqbal and Twombly require only plausibility, not proof. Plaintiff submits there is in fact ample proof here, even if beyond that which is required at this phase.

## CONCLUSION

Plaintiff has plausibly alleged a pattern of sustained constitutional violations under 42 U.S.C. § 1983, grounded in facts that, when taken as true and viewed in their totality, present a compelling claim of targeted governmental misconduct. Across Eighteen distinct Counts, the Complaint establishes a coordinated and retaliatory campaign by the Town of Bedford and its agents, including town attorneys Eric Gordon and Robert Zitt, the Building Inspector, the Department of Buildings, and the Zoning Board of Appeals. These actors exploited the levers of municipal enforcement and judicial process not to uphold the law, but to silence, punish, and obstruct a property owner asserting her constitutional rights. These flagrant breaches of professional and ethical duties, each stand alone as legally sufficient. But taken together, they reveal a course of conduct that shocks the conscience, abuses state authority, and systematically deprives Plaintiff of liberty and property without due process of law.

Defendants' invocation of absolute and qualified immunities cannot shield them as they are not public officials but mere contract employees. Retaliatory intent, bad faith, and knowing ethical breaches are credibly pled and are exempt from immunity claims. Municipal officials who

42

weaponize zoning and code enforcement to punish disfavored speakers or evade judicial scrutiny are also not shielded by immunity.

These claims are not precluded or collaterally estopped, based a lower court limited review of in an article 78 or the arbitrary and capriciousness the zoning board upholding a building inspector determination to deny a permit under BTC 125-79-1A.  That very limited decision did not touch upon the constitutional issues or give any redress.  There was no full and fair opportunity to he heard, no hearing was held, not evidence submitted, no testimony taken.

Although Plaintiff is not required to prove her claims at this preliminary stage, however the allegations in the Complaint  are supported by voluminous documentation, all incorporated by reference, including the exhibits to both the original and amended complaints.

For these reasons and based on the factual and legal grounds asserted in each Count, Plaintiff respectfully submits that Defendants' motion to dismiss must be denied in its entirety, and that this matter proceed to discovery.

Respectfully Submitted,

/s/ Melanie Hammer, Esq.
Pro Se Plaintiff
360 Court Street, Suite 3
Brooklyn, NY 10536
718-757- 7677
7/21/2025 Katonah, New York

CC: Gerald Smith, Esq. Via ECF

43

**WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 11.1 of the United States District Court for the Southern District of New York, I hereby certify that this memorandum of law contains **8,898 words**, exclusive of the caption, table of contents, signature lines and table of authorities. The word count was determined using the word count feature of Microsoft Word, the word processing system used to prepare this memorandum.

Dated: July 21, 2025
Respectfully submitted,

/s/ Melanie Hammer, Esq.
Pro Se Plaintiff
360 Court Street, Suite 3
Brooklyn, NY 10536
718-757- 7677
7/21/2025 Katonah, New York

44

## RESOLUTION

RESOLVED that the Town Board does hereby authorize the Supervisor to enter into agreements with Contractors, Consultants and Others for 2023 as follows:

A.  Precise Translations (Court Interpreter)
- $170.00 for three (3) hours in person or virtual and $130.00 for any additional time for Spanish interpreters, with Court sessions continuing after 4:15pm to be billed an additional $150.00.
- $225.00 for three (3) hours in person or virtual for other languages.
- $300.00 for three (3) hours in person or virtual for sign language interpreters.

B.  Spring Hill Kennels (Impound Service)
- $225.00 per month
- $45.00 per dog per 24 hours

C.  Hahn Engineering (Engineering Consultant)

| Classification | Pass through work | Town Work |
|---|---|---|
| Principal | $87.36 per hour | $81.12 per hour |
| Vice President | $83.82 per hour | $78.00 per hour |
| Project Manager | $78.52 per hour | $70.72 per hour |
| Project Engineer | $52.00 per hour | $46.80 per hour |
| Chief Designer | $57.20 per hour | $53.04 per hour |
| Inspector/AutoCad | $43.68 per hour | $40.56 per hour |
| Chief Inspector | $47.84 per hour | $44.72 per hour |
| Inspector | $42.64 per hour | $39.52 per hour |

D.  Approve amendment to James J. Hahn Engineering P.C.'s Professional Services Agreement for the Town of Bedford.

RESOLVED that the Town Board does hereby approve the amendment to the Hahn Engineering Agreement to address requirements of the Bedford Village Water Supply Grant as per the letter dated December 1, 2022 from George E. Pommer, P. E, of Hahn Engineering.

E.  North East Special Recreation, Inc.
- $15,557.53 for 2023

F.  Stephen W. Coleman Environmental Consulting LLC (Wetlands Consultant)
- $150.00 hour with the exception of expert testimony with an hourly rate of $250.00 with a four (4) hour minimum.
- $80.00 per hour.

G.  Imagination Video Productions
- Town Meetings - $100 for first hour and $50/hour each additional hour.
- Town Board meeting – Editing - $200.00.
- Supervisor's show – Flat rate - $800.00 per show

H.  Keane & Beane – (Attorney Services)
- Retainer - $10,000.00 per month
- Partner $255.00 per hour
- Associate $225.00 per hour

I.  Kimley Horn – (Traffic Consultant)
Hourly Rate Schedule

| Classification | Rate |
|---|---|
| Analyst | $155-$230 |
| Professional | $230-$290 |
| Senior Professional I | $275-$375 |
| Senior Professional II | $365-$395 |
| Senior Technical Support | $170-$270 |
| Support Staff | $125-$150 |
| Technical Support | $125-$185 |

STATE OF NEW YORK

COUNTY OF WESTCHESTER  } ss.

TOWN OF BEDFORD

I hereby certify that I have compared the foregoing Resolution with the original on file in my office and that the same is a correct transcript therefrom and the whole of the said original Resolution, which was duly adopted by the Town Board of the Town of Bedford on January 3, 2023.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Corporate Seal of said Town of Bedford.

Dated: January 4, 2023

Nina Kellogg

Deputy Town Clerk,
Town of Bedford

# RESOLUTION

RESOLVED that the Town Board does hereby approve the 2024 rates for Eric Gordon, Town Attorney, Keane & Beane P.C., for attorney services to the Town of Bedford:

- Retainer - $10,000.00 per month
- Partner $255.00 per hour
- Associate $225.00 per hour

**STATE OF NEW YORK**
COUNTY OF WESTCHESTER  } ss.
  TOWN OF BEDFORD

*I hereby certify that I have compared the foregoing Resolution with the original on file in my office and that the same is a correct transcript therefrom and the whole of the said original Resolution, which was duly adopted by the Town Board of the Town of Bedford on January 2, 2024.*

*IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Corporate Seal of said Town of Bedford.*

Dated: *January 3, 2024*

*Lisbeth Fumagalli*
                Town Clerk,
                Town of Bedford

# RESOLUTION

RESOLVED that the Town Board does hereby approve the 2025 rates for Eric Gordon, Town Attorney, Keane & Beane P.C., for attorney services to the Town of Bedford:

- Retainer - $11,000.00 per month
- Partner $260.00 per hour
- Associate $230.00 per hour

**STATE OF NEW YORK**
COUNTY OF WESTCHESTER  } *ss.*
    TOWN OF BEDFORD

*I hereby certify that I have compared the foregoing Resolution with the original on file in my office and that the same is a correct transcript therefrom and the whole of the said original Resolution, which was duly adopted by the Town Board of the Town of Bedford on January 7, 2025.*

*IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Corporate Seal of said Town of Bedford.*

Dated: *January 8, 2025*

_____
                     *Town Clerk,*
                     *Town of Bedford*

# RESOLUTION

RESOLVED that the Town Board does hereby accept the following recommendation from Supervisor Ellen Calves for 2024:

Supervisor's recommendation for an appointment to be made by the Town Board for a one (1) year term starting January 1, 2024 and ending December 31, 2024 - Town Attorney: Eric Gordon, Keane & Beane.

**STATE OF NEW YORK** ⎫
COUNTY OF WESTCHESTER ⎬ .ss.
TOWN OF BEDFORD ⎭

*I hereby certify that I have compared the foregoing Resolution with the original on file in my office and that the same is a correct transcript therefrom and the whole of the said original Resolution, which was duly adopted by the Town Board of the Town of Bedford on January 2, 2024.*

*IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Corporate Seal of said Town of Bedford.*

Dated: *January 3, 2024*

_____ Town Clerk,
Town of Bedford

A-320

# RESOLUTION

RESOLVED that the Town Board does hereby accept the following recommendation from Supervisor Ellen Calves for 2025:

Supervisor's recommendation for an appointment to be made by the Town Board for a one (1) year term starting January 1, 2025 and ending December 31, 2025 - Town Attorney: Eric Gordon, Keane & Beane.

**STATE OF NEW YORK** ⎫
COUNTY OF WESTCHESTER ⎬ SS.
TOWN OF BEDFORD ⎭

*I hereby certify that I have compared the foregoing Resolution with the original on file in my office and that the same is a correct transcript therefrom and the whole of the said original Resolution, which was duly adopted by the Town Board of the Town of Bedford on January 7, 2025.*

*IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Corporate Seal of said Town of Bedford.*

*Dated: January 8, 2025*

_____
Town Clerk,
Town of Bedford

From: **Whalen, Allie** awhalen@bedfordny.gov
Subject: RE: Record Request 2025-00205 : Acknowledgement Letter
Date: July 14, 2025 at 3:26 PM
To: Melanie Hammer melanie@hammer-esq.com



Mrs. Hammer,

I had asked that a search be done for all emails with the terms "Melanie Hammer" or with her address "146 Goldens Bridge Road", going back to **April 2023**. Unfortunately, it looks like the search that was done by IT may only have gone back to April 2025 because the documents we received only went back to April 2025. I need to confirm whether the search was run going back to April 2023, but I cannot image it was since there ae no documents prior to April 2025 that were provided. I have asked the Town IT people to re-run the same search going back to **April 1, 2023.**

We will Ms. need until July 18 to respond to FOIL Reference #2025-00205 as we are continuing to search and review the requested communications.

I can certainly send you what was gathered from the 2025 search but like I said after review, it does not seem to fulfill the direction given.

Allie Whalen
Town of Bedford Town Clerk
Registrar & Marriage Officer
321 Bedford Road
Bedford Hills, NY 10507
914-666-4534
awhalen@bedfordny.gov


**From:** Melanie Hammer <melanie@hammer-esq.com>
**Sent:** Thursday, June 26, 2025 5:21 PM
**To:** Whalen, Allie <awhalen@bedfordny.gov>
**Subject:** Re: Record Request 2025-00205 : Acknowledgement Letter

Thank you
Melanie Hammer
melanie@hammer-esq.com
(718) 757-7677


CONFIDENTIALITY NOTICE:
The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.


On Jun 26, 2025, at 1:45 PM, Whalen, Allie <awhalen@bedfordny.gov> wrote:


Melanie Hammer,

I just wanted to follow up here The Town is running a search for all emails or documents with the term "Melanie Hammer" from April 23, 2023 to the present. The files will then be reviewed before being sent on. This may take several weeks. I will keep checking in on them. Just wanted to get some

~~weeks. I will keep checking in on them. Just wanted to get some~~ communication on the topic back to you.

Allie Whalen
Town of Bedford Town Clerk
Registrar & Marriage Officer
321 Bedford Road
Bedford Hills, NY 10507
914-666-4534
awhalen@bedfordny.gov

**From:** Whalen, Allie
**Sent:** Wednesday, June 11, 2025 2:09 PM
**To:** melanie@hammer-esq.com
**Subject:** Record Request 2025-00205 : Acknowledgement Letter

Your request for communications has been received.

Allie Whalen
Town of Bedford Town Clerk
Registrar & Marriage Officer
321 Bedford Road
Bedford Hills, NY 10507
914-666-4534
awhalen@bedfordny.gov

**From:** Melanie Hammer melanie@hammer-esq.com
**Subject:** Re: Record Request 2025-00205 : Acknowledgement Letter
**Date:** July 17, 2025 at 5:47 PM
**To:** Allie Whalen awhalen@bedfordny.gov



Please send any emails that you have ready as soon as possible pursuant to the first FOIL request on 6/11/2025.

If there are additional email needed pursuant to the second request, that may be in a second response.
Melanie Hammer
melanie@hammer-esq.com
(718) 757-7677

CONFIDENTIALITY NOTICE:
The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

On Jul 15, 2025, at 1:11 PM, Whalen, Allie <awhalen@bedfordny.gov> wrote:

Good afternoon,

Please reference my email yesterday which explains I directed the search to date back to 2023 as requested but it was only run, reviewed and redacted for this year. Email communications have to be reviewed and redacted therefore I had the search re-run to include dates prior to this year and they are currently being reviewed as we speak.

Allie Whalen

Town of Bedford Town Clerk

Registrar & Marriage Officer

321 Bedford Road

Bedford Hills, NY 10507

914-666-4534

awhalen@bedfordny.gov

---

**From:** Melanie Hammer <melanie@hammer-esq.com>
**Sent:** Tuesday, July 15, 2025 1:09:08 PM
**To:** Whalen, Allie <awhalen@bedfordny.gov>
**Subject:** Re: Record Request 2025-00205 : Acknowledgement Letter

Hi Allie,
The email above says that you will respond by 7/18/2025. Are the number of emails so voluminous that you are not able to provide them? Please explain the delay.
Melanie Hammer

On Mon, Jul 14, 2025 at 3:26 PM Whalen, Allie <awhalen@bedfordny.gov> wrote:
Mrs. Hammer,

I had asked that a search be done for all emails with the terms "Melanie Hammer" or with her address "146 Goldens Bridge Road", going back to April 2023. Unfortunately, it looks like the search that was done by IT may only have gone back to April 2025 because the documents we received only went back to April 2025. I need to confirm whether the search was run going back to April 2023, but I cannot imagine it was since there ae no documents prior to April 2025 that were provided. I have asked the Town IT people to re-run the same search going back to April 1, 2023.

We will Ms. need until July 18 to respond to FOIL Reference #2025-00205 as we are continuing to search and review the requested communications.

I can certainly send you what was gathered from the 2025 search but like I said after review, it does not seem to fulfill the direction given.

Allie Whalen

Town of Bedford Town Clerk

Registrar & Marriage Officer

321 Bedford Road

Bedford Hills, NY 10507

914-666-4534

awhalen@bedfordny.gov

**From:** Melanie Hammer <melanie@hammer-esq.com>
**Sent:** Thursday, June 26, 2025 5:21 PM
**To:** Whalen, Allie <awhalen@bedfordny.gov>
**Subject:** Re: Record Request 2025-00205 : Acknowledgement Letter

Thank you

Melanie Hammer

melanie@hammer-esq.com

(718) 757-7677

CONFIDENTIALITY NOTICE:
The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

On Jun 26, 2025, at 1:45 PM, Whalen, Allie <awhalen@bedfordny.gov> wrote:

Melanie Hammer,

I just wanted to follow up here. The Town is running a search for all emails or documents with the term "Melanie Hammer" from April 23, 2023 to the present. The files will then be reviewed before being sent on. This may take several weeks. I will keep checking in on them. Just wanted to get some communication on the topic back to you.

Allie Whalen

Town of Bedford Town Clerk

Registrar & Marriage Officer

321 Bedford Road

A-325

**From:** Melanie Hammer melanie@hammer-esq.com
**Subject:** Re: Peo. vs. M. Hammer case # 24050200
**Date:** August 28, 2024 at 6:07 PM
**To:** Robert C. Zitt rzitt@kblaw.com
**Cc:** court@bedfordny.gov, Amy Lefevre alefevre@nycourts.gov, Amy L. Licht ALicht@nycourts.gov

Hon. Judge Kimmel,

I apologize for my tone in my prior email. I have been prosecuted for failure to obtain building permits for an apartment that was previously built. As noted I applied for retro active permits with required architectural drawing and was wrongfully and illegally denied permits. I have been harassed by the town.

I have lost over $50k as a result. I am very tired of this case the exhaustion and the costs. As far as I know the town has never prosecuted this type of case before. And I am uncertain why they are pursuing this despite the SAFE condition of the apartment itself and the grant they received from the governor to support the creation of these apartments.

Is Your Honor granting permission for the People to withdraw charges in this case and re-file? Please note the new complaint is also facially insufficient. It is facially insufficient because there are no facts to support these malicious charges.

Sincerely,

Melanie Hammer
melanie@hammer-esq.com
(718) 757-7677

CONFIDENTIALITY NOTICE:
The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

On Aug 27, 2024, at 4:36 PM, Robert C. Zitt <rzitt@kblaw.com> wrote:

Good Afternoon,

Kindly see attached correspondence in response to Ms. Hammers email of yesterday.

Thank you for your attention to this matter.

Respectfully submitted,

Robert Zitt

Robert C. Zitt
Associate

**Serving the Hudson Valley, Long Island and Beyond for over 40 Years**

445 Hamilton Avenue, Suite 1500
White Plains, NY 10601

(914) 946-4777 Ext: 341
(914) 946-6868 (Fax)
rzitt@kblaw.com
www.kblaw.com
Follow us on Twitter
Follow us on Facebook
Follow us on LinkedIn

PERSONAL & CONFIDENTIAL
The information transmitted herein may contain privileged and/or confidential material. Any disclosure, copying,

distribution or other use of, or taking or any action in reliance upon, information contained herein or attached hereto by persons or entities other than the intended recipient(s) is prohibited. Any misdirection or other error in the transmission of this information is not and shall not be considered a waiver of any applicable privileges. If you have received this transmission in error, please immediately notify the sender and destroy the original transmission and its attachments without saving, distributing or copying in any manner.

Please consider the environment before printing this email message.

**From:** Melanie Hammer <melanie@hammer-esq.com>
**Sent:** Monday, August 26, 2024 3:34 PM
**To:** Robert C. Zitt <rzitt@kblaw.com>
**Cc:** Amy Lefevre <alefevre@nycourts.gov>; Amy L. Licht <ALicht@nycourts.gov>; court@bedfordny.gov
**Subject:** Re: Peo. vs. M. Hammer case # 24050200

Good afternoon,

I hope this email finds you well. As you know I have been requesting to either advance this matter or have very short motion schedule set since 7/16/2024. As an attorney, it is extremely concerning to have unfounded and unsubstantiated charges pending. Therefore I have repeatedly requested to expedite and advance the DOM on this case. To date, six weeks have passed since my first request and the People have never responded to my motion. None of my requests to advance have been granted. I had the case called despite the Courts objection and I made a record on 8/13/2024 regarding the same. I have a copy of the transcript.

I am writing to inquire as to why a Decision on an *uncontested* motion would be delayed rather than granted in Its entirety? This is especially alarming since there are allegations of prosecutorial misconduct in this matter. And a complaint is pending before the Grievance Committee.

This motion, aside from being undisputedly correct on the law, is *uncontested*. **Further, *the People have conceded* that the complaint is deficient and facially insufficient as a matter of law.** They have conceded this point by *seeking to withdraw the complaint itself* in response to my motion. They even wanted to refile a VIOLATION complaint as if they were seeking to charge Son-of-Sam on a parking ticket to break a big case. The zeal with which they have pursued this matter is outrageous.

The People have *changed counsel following my complaint to the grievance committee from* town attorney Eric Gordon to Robert Zitt. They changed counsel based on their clear and obviously conflict of interest in having the Eric Gordon bring these unfounded charges AFTER being *personally named* in a related civil rights action. Let that sink in, Eric Gordon brought THIS FACIALLY DEFICIENT COMPLINT after being sued! By Chnaging attorneys they *therefore concede to prosecutorial misconduct in this case.*

*Further, they seem to fear responding via affidavit annexed to an actually motion. I understand why. They cannot affirm under penalty of perjury and they have no legal basis upon which to premise a motion in opposition.*

The extent of the defect of the People's complaint is worse than a first year law student on their first day as a paralegal in Intake. There is no question my motion should be granted as a matter of law.

Based on the Court's delay, I will need to request additional time to respond to the (related) People's Responsive Brief currently pending before the Appealate Division,

Second Department.

I assumed this Court would have granted my motion upon receipt to SEAL this embarrassing prosecutorial misconduct and negligence in this matter. I mean this complaint is embarrassing and the fact they don't know how to draft a complaint, they don't understand CPL 30.30, or the Discovery Statute, that's really negligent practice of law. Not appropriate for a public official bringing charges that carry potential jail time. Unacceptable.

Please give me a date for the Decision as I will need to notify the Appellate Div. regarding the Court's delayed Decision on this uncontested matter. Thank you,

Melanie Hammer
melanie@hammer-esq.com
(718) 757-7677

CONFIDENTIALITY NOTICE:
The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

On Aug 26, 2024, at 12:11 PM, Robert C. Zitt <rzitt@kblaw.com> wrote:

Received, thank you.

Robert C. Zitt
Associate

**Serving the Hudson Valley, Long Island and Beyond for over 40 Years**

445 Hamilton Avenue, Suite 1500
White Plains, NY 10601

(914) 946-4777 Ext: 341
(914) 946-6868 (Fax)
rzitt@kblaw.com
www.kblaw.com
Follow us on Twitter
Follow us on Facebook
Follow us on LinkedIn

PERSONAL & CONFIDENTIAL
The information transmitted herein may contain privileged and/or confidential material. Any disclosure, copying, distribution or other use of, or taking of any action in reliance upon, information contained herein or attached hereto by persons or entities other than the intended recipient(s) is prohibited. Any misdirection or other error in the transmission of this information is not and shall not be considered a waiver of any applicable privileges. If you have received this transmission in error, please immediately notify the sender and destroy the original transmission and its attachments without saving, distributing or

copying in any manner.

Please consider the environment before printing this email message.

**From:** Amy Lefevre <alefevre@nycourts.gov>
**Sent:** Monday, August 26, 2024 12:08 PM
**To:** Robert C. Zitt <rzitt@kblaw.com>; melanie hammer <melanie@hammer-esq.com>
**Cc:** Amy L. Licht <ALicht@nycourts.gov>; court@bedfordny.gov
**Subject:** Peo. vs. M. Hammer case # 24050200

Good afternoon:
Judge Kimmel's decision has been delayed. Once it is made, I will send it out as soon as possible.
Thank you in advance for your cooperation.

**Amy V. LeFevre**
Bedford Court Clerk
alefevre@nycourts.gov
alefevre@bedfordny.gov
321 Bedford Road
Bedford Hills, New York 10507
P: (914) 666-6965
Summer Hours:
M-Th: 8:30-4:30 & Friday: 8:30-1:00

<Letter to Justice Court 8.27.2024.pdf>

**SILVERMAN** | ATTORNEYS
**& ASSOCIATES** | AT LAW

August 11, 2025

**VIA ECF**
Honorable Cathy Seibel
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re: *Hammer v. Town of Bedford, et al.*
       Index No.: 25CV2618  (CS)(JCM)
       Our File No.: 1020.130

Dear Judge Seibel:

  We represent the Defendants in this matter and write in response to Plaintiff's letter dated August 9, 2025.  In that letter, Plaintiff requests that this Court stay any decision regarding whether to grant leave for a sur-reply until after the Town has produced a response to a FOIL request.

  At the outset, Defendants note that no request has been made for leave to file a sur-reply, and so it is not clear exactly why Plaintiff seeks this relief.  Assuming that a request for leave to file a sur-reply is forthcoming, Defendants will review that application when it is made and respond at that time, if a response is necessary.  In the meantime, we have been advised that Counsel for the Town is reviewing and preparing materials responsive to Plaintiff's FOIL request and a response is forthcoming.

  Thank You for Your attention to this matter.

       Respectfully submitted,

      **SILVERMAN & ASSOCIATES**

       Gerald S. Smith

CC: **Via ECF**
   *All Counsel of Record*

## MELANIE HAMMER, ESQ.
360 Court Street, Suite 3
Brooklyn, NY 11231
melanie@hammer-esq.com
718.757.7677

October 2, 2025

The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

**Re: Hammer v. Bedford et. al. Index. No 25CV2618 (CS)(JCM)**
**No Final Determination in State Court Proceedings**

Hon, Judge Seibel,

I write to inform the Court of a recent decision by the Appellate Division, Second Department, in related state court proceedings. While the Appellate Division has rendered a decision, I have already filed a motion for leave to appeal to the New York Court of Appeals. Accordingly, there is not yet a final determination in that matter.

The basis for this request is twofold:

1. **Failure to Address Central Issue.** The Appellate Division failed to decide the controlling legal question of whether a municipality may imply restrictions on property rights that do not exist in the zoning code. That ruling directly contradicts this Court's binding precedent that zoning ordinances—being in derogation of common-law property rights—must be strictly construed against the municipality and in favor of the homeowner. The lower court's decision goes further, adopting the view that property rights derive from municipal grant rather than constitutional protection. Indeed, the Appellate Division failed to resolve any of the issues properly presented for review. Zoning ordinances, being in derogation of common-law property rights, must be strictly construed against the municipality, and any ambiguities resolved in favor of the landowner (see *City of New York v Les Hommes*, 94 NY2d 267, 273 [1999]; *Matter of Allen v Adami*, 39 NY2d 275, 277 [1976]; *Matter of Lucas v Board of Appeals of Vil. of Mamaroneck*, 109 AD3d 925, 929 [2013]). Any ambiguities must be resolved in favor of the property owner (see *Matter of Ferraris v Zoning Bd. of Appeals of Vil. of Southampton*, 7 AD3d 710 [2004]). Further, legislative enactments are to be construed so as to avoid constitutional issues if such a construction is fairly possible (see *FGL & L*

*Prop. Corp. v City of Rye*, 66 NY2d 111, 120 [1985]; *Matter of Peters v New York City Hous. Auth.*, 307 NY 519, 527–528 [1954]).

2. **Reliance on an Irrelevant, Post Hoc, Ex Parte Proceeding.** The Appellate Division affirmed a Supreme Court judgment in an Article 78 proceeding that relied upon an ex parte hearing conducted after the appeal was filed. The record reviewed by the court did not exist at the time the appeal was filed. The basis of the appeal was a video record, not a written decision based on a subsequently held ex parte meeting. If left undisturbed, the decision will stand for the proposition that a court may review the wrong administrative record and rely upon post hoc, ex parte proceedings in Article 78 matters. Such a result is fundamentally inconsistent with constitutional principles of fairness and notice.

I will promptly advise the Court of any further developments once the Court of Appeals rules on my application

Respectfully submitted,


Melanie Hammer, Esq.
360 Court Street, Suite 3
Brooklyn, NY 10536
718-757-7677
Melanie@hammer-esq.com
**/s/ Melanie Hammer**
Plaintiff, Pro Se

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELANIE HAMMER,<br>　　　　　Plaintiff,<br><br><br>　　　　- against -<br><br>TOWN OF BEDFORD NEW YORK, DEPARTMENT OF BUILDING BEDFORD NEW YORK, ZONING BOARD OF APPEALS BEDFORD NEW YORK, BUILDING INSPECTOR TOWN OF BEDFORD NEW YORK (ALBERT CIRACO), ATTORNEY FOR THE TOWN OF BEDFORD NEW YORK (ERIC GORDON, ESQ. & ROBERT ZITT, ESQ.),<br>　　　　　Defendants. | NOTICE OF MOTION FOR RELIEF PURSUANT TO FED. R. CIV. P. 60(B)(2) AND 60(B)(3)<br><br><br><br><br><br>No. 25-CV-2618 (CS) |

PLEASE TAKE NOTICE that upon the Affirmation of Melanie Hammer, Esq., dated January 23, 2026, together with the exhibits annexed thereto, the accompanying Memorandum of Law, and upon all prior pleadings and proceedings herein, Plaintiff **Melanie Hammer**, proceeding pro se, will move this Court before the Honorable **Cathy Seibel, U.S.D.J.**, at the United States District Court for the Southern District of New York, **300 Quarropas Street, White Plains, New York**, on a date and time to be set by the Court, for an Order pursuant to **Federal Rules of Civil Procedure 60(b)(2), 60(b)(3), and 60(b)(6)**:

1. **Vacating the January 13, 2026, Opinion and Order** granting Defendants' motion to dismiss under Rule 12(b)(6).
2. **Reopening the judgment** in light of newly discovered evidence, delayed disclosures, and material misrepresentations that undermined the factual premises relied upon by Defendants and credited by the Court at the pleading stage.
3. **Restoring Plaintiff's federal civil rights claims** to the active docket for further proceedings; and
4. Granting such other and further relief as the Court deems just and proper.

This motion is based on newly discovered evidence and delayed FOIL disclosures that were not available during the briefing on the Defendants' motion to dismiss and that bear directly on the existence of a protected property interest, the adequacy of process, municipal policymaking and coordination, collateral estoppel, and the applicability of immunity defenses.

Respectfully Submitted,

Melanie Hammer, Esq.
360 Court Street, Suite 3
Brooklyn, NY 10536
718-757-7677
Melanie@hammer-esq.com

1/23/2026

Westchester NY

ECF filing

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

<table>
<tr>
<td>
MELANIE HAMMER,<br>
       Plaintiff,<br><br>
       - against -<br><br>
TOWN OF BEDFORD NEW YORK, DEPARTMENT OF BUILDING BEDFORD NEW YORK, ZONING BOARD OF APPEALS BEDFORD NEW YORK, BUILDING INSPECTOR TOWN OF BEDFORD NEW YORK (ALBERT CIRACO), ATTORNEY FOR THE TOWN OF BEDFORD NEW YORK (ERIC GORDON, ESQ. & ROBERT ZITT, ESQ.),<br>
       Defendants.
</td>
<td>
AFFIRMATION OF MELANIE HAMMER, ESQ IN SUPPORT OF MOTION FOR RELIEF PURSUANT TO FED. R. CIV. P. 60(B)(2) AND 60(B)(3)<br><br>
No. 25-CV-2618 (CS)
</td>
</tr>
</table>

I, **Melanie Hammer**, Esq., affirm under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

### I. INTRODUCTION AND SCOPE

1. I am the Plaintiff in this action, proceeding pro se, and submit this Affirmation in support of my motion for relief from judgment pursuant to Federal Rules of Civil Procedure 60(b)(2), 60(b)(3), and 60(b)(6).

2. This Affirmation is limited in scope. It does not ask the Court to revisit the correctness of the Town of Bedford's zoning interpretation as a matter of law, nor does it seek reconsideration of the Article 78 determination based on the evidentiary record *previously* before the state courts.

3. Rather, this motion is based on *newly discovered evidence* and delayed disclosures that *undermine the factual premises* relied upon by Defendants, and credited by this Court, in dismissing Plaintiff's federal civil rights claims at the Rule 12(b) stage.

1

A-335

## II. VESTED RESIDENTIAL USE AND PROPERTY INTEREST

4. Records maintained by the Town of Bedford identify the structure at issue as residential in character for decades.

5. A parcel survey dated in or about 1988 labels the structure as a "single-story *residence* over garage." (Exhibit E.)

6. An electrical inspection certificate on file with the Building Department from 2012 certifies the electrical system for *residential* use. (Exhibit G.)

7. A Certificate of Compliance issued in 2014 reflects approval of a *residential* recreation room within the structure. (Exhibit H.)

8. To Plaintiff's knowledge, the Building Department file contains no record identifying any non-residential use of the structure. I have submitted a FOIL request to determine the same.

9. This evidence bears directly on whether Plaintiff possessed a vested residential property interest at the time of the challenged actions.

## III. NOTICE OF VIOLATION AND PERMIT PROCEEDINGS

10. On April 27, 2023, the Bedford Building Department issued a Notice of Violation alleging that the residential use of the structure was unlawful under Town Code § 125-12. The Notice directed Plaintiff to either remove the apartment and associated electrical (permit on file exhibit G) and pre-existing plumbing installations or legalize the structure by submitting a full building permit application.

11. On June 1, 2023, Plaintiff submitted a building permit application with required architectural drawings and sought a written determination in order to preserve her right to appeal to the Zoning Board of Appeals ("ZBA") at its next scheduled meeting.

12. On or about June 1, 2023, Plaintiff met with Building Inspector Albert Ciraco, who declined to issue a written denial and stated that Town Code § 125-12 did not apply. Plaintiff thereafter made additional submissions in an effort to obtain the written denial required to pursue an appeal to the ZBA.

13. On September 6, 2023, Building Inspector Ciraco sent Plaintiff an email stating that a *use variance would be required in order for the structure to be legal for residential use*. Exhibit M..

14. On September 22, 2023, Building Inspector Ciraco issued a written denial of Plaintiff's permit application, stating that a *use variance was required* in order to legalize the residential use of the structure. Exhibit O.

15. Based on this determination, Plaintiff's appeal to the ZBA *included a request for a use variance authorizing residential use*, submitted in reliance on the Building Inspector's stated position.

## IV. ZBA PROCEEDINGS AND NEWLY DISCOVERED UNDISCLOSED COMMUNICATIONS

16. On November 1, 2023, Town Attorney Eric Gordon *emailed the ZBA* in advance of Plaintiff's scheduled hearing. Although the subject line and contents of that email were *fully redacted,* the communication was produced in response to a FOIL request seeking

3

communications between the Town and the ZBA concerning the subject property. Exhibit D.

17. On November 2, 2023 (the day after), the ZBA voted to affirm the Building Inspector's permit denial on the ground that residential use was prohibited under Town Code § 125-79.1(A). No written decision memorializing that vote was filed.

18. On November 29, 2023, Plaintiff filed an Article 78 petition challenging this decision, in which Eric Gordon was named as a respondent.

19. On November 30, 2023, as reflected in a newly discovered internal email, Town Attorney Eric Gordon *drafted* the Zoning Board of Appeals resolution that was later adopted on December 7, 2023, and circulated it to ZBA members for review and signature. Exhibit T.[1]

20. On December 7, 2023, the ZBA convened and adopted the written resolution denying Plaintiff's request for retroactive permits, expressly finding that the residential use of the structure was not pre-existing and had existed only for a limited period.

---

**Exhibit T** is an email from administrative staff to the ZBA forwarding draft resolutions from the November 2, 2023, ZBA meeting. Two newly discovered attachments are relevant. One attachment is labeled **"DRAFT ZBA 11-23-2 - Hammer - 146 Goldens Bridge - Cottage EG.docx."** The body of the email states: **"Eric would like you to review the draft resolution for Hammer and get back to him and me with any changes by Tuesday (12/5) morning. Packets are ready for pickup. Peter, I have some resolutions that require your signature."** Under New York law, a town attorney's role in connection with a zoning board of appeals is limited to providing *neutral legal advice* to the board in an advisory capacity *and does not include drafting or directing the substance of adjudicative determinations.* The email and attached draft reflect that the resolution at issue was *authored and circulated by the Town Attorney for review* and execution by ZBA members prior to the vote, but after he was named a Respondent. In addition, a second document—**"Memorandum - Bedford -- Hammer - 146 Goldens Bridge Road - Proposed Resolution 4870-0699-3299"**—was also not produced in response to Plaintiff's FOIL request. Gordon regularly represents municipalities in Zoning matters and should be familiar with these rules.

4

21. Although Mr. Gordon had served as the Town's legal advisor throughout the zoning proceedings, he did not appear at the December 7, 2023, meeting. Instead, he was suddenly replaced by Robert Zitt, Esq., an associate at Keane & Beane, P.C., the same firm of which Mr. Gordon is a partner.

22.  The timing and circumstances of this substitution, occurring after Mr. Gordon had drafted the operative resolution and after he had been named personally as a respondent in the Article 78 proceeding, support the inference that the Town was aware of a conflict arising from Mr. Gordon's dual role as litigation adversary and architect of the ZBA's decision.

23. *This newly discovered evidence further demonstrates that the challenged decision was the product of coordinated municipal action and policymaking, rather than an independent adjudicative determination, and confirms that Mr. Gordon's conduct consisted of non-prosecutorial, administrative, and policy-driven actions for which absolute immunity does not apply and further supports viewing all the counts together as a coordinated acts in furtherance of an administrative policy under* Monell.

## V. DEFENDANTS' LITIGATION POSITIONS

19. On August 21, 2024, Defendants *filed an appellate brief* in the related state-court appeal *asserting that Plaintiff was not permitted to maintain more than one residential use on the subject property and that no lawful residential use existed in the standalone garage structure prior to enactment of the relevant zoning restrictions*. Exhibit P & R.

20. In the *same brief*, Defendants acknowledged that a separate cottage on the property constituted a *lawful pre-existing nonconforming residential use predating the adoption of*

5

*Town Code § 125-79.1 in 1989,* while distinguishing that structure from the garage building/apartment, although that residential use was noted as early as 1988 (*the adoption of Town Code § 125-79.1 in 1989).*

21. *The residential apartment was thus also pre-existing in 1988, before the 1989 code was adopted. Therefore, when the defendants asserted otherwise in Article 78 and Appeal, it was a material misrepresentation of fact.*

22. Defendants repeatedly characterized the residential use of the garage structure as illegal. Despite their internal records. Exhibit R.

## VI. NEWLY DISCOVERED AND DELAYED FOIL EVIDENCE

22. Throughout the pendency of this action, Plaintiff pursued FOIL requests seeking internal Town communications relating to the subject property. Exhibits J, K, & L.

23. Defendants produced responsive internal emails on August 18, 2025, only after briefing on Defendants' Rule 12(b) motion had closed, despite earlier requests dating back to 1/24/2024 (Exhibit J, 18 months earlier).

24. The production consisted of approximately *800 pages* of communications among the *Town Attorney, ZBA members, the Building Department, and other Town officials*, many of which were *heavily redacted without explanation* or privilege log. Exhibit C – *my chart* of how extensive the redactions were.

25. On January 12, 2026, Plaintiff received a FOIL response stating that *no records* existed identifying the structure as *"residential",* notwithstanding the records described in paragraphs 5–7 above. See Exhibit F.

## VII. EFFECT ON THE COURT'S PRIOR RULING

6

A-340

26. The Court's dismissal relied on *factual premises* that Plaintiff had received *constitutionally adequate process*, that the challenged actions *were discrete zoning determinations*, that Plaintiff *lacked a protected property interest*, that no substantive due process claim was adequately pleaded, that *collateral estoppel applied*, and that *prosecutorial immunity barred certain claims*.

27. The newly discovered evidence described above bears directly on each of those premises.

28. Because the Rule 12(b) dismissal rested on factual assumptions *now shown* to be inaccurate or incomplete, dismissal at the pleading stage was premature.

## VIII. DEFENDANTS' SOPHISTICATION AND FORESEEABLE PREJUDICE

29. Defendants were represented by party Eric Gordon and his firm, Keane & Beane PC, which is experienced municipal counsel that regularly practices in the specialized field of zoning and land use law and routinely litigates Article 78 proceedings and related actions. So much so that there were already two related judicial recusals in this matter.

30. Plaintiff is a *pro se* litigant. While *pro se* status does not alter the governing legal standards, it is relevant to whether *Defendants' representations and omissions created a foreseeable risk of misleading the Court at the pleading stage.*

31. *The mischaracterization of the structure as an "illegal residential apartment," the omission of long-standing Town records identifying the structure as residential, and the assertion that no vested property interest existed are not technical or ambiguous zoning issues. They go to foundational facts concerning the existence of a protected property interest and the nature of the process afforded.*

32. Given Defendants' experience in municipal land-use litigation, Defendants knew or should have known that characterizing a long-documented residential structure as unlawful, while withholding or delaying disclosure of contrary Town records, would materially affect the Court's analysis of property interests, due process, collateral estoppel, and immunity at the Rule 12(b) stage.

33. The *prejudice to Plaintiff was compounded by the timing of Defendants' disclosures*. Internal Town communications and records bearing directly on these issues were *produced only after briefing* on the motion to dismiss had closed, leaving Plaintiff without a procedural mechanism to correct the factual record before dismissal. As stated above, many attachments have still not been disclosed despite multiple FOIL and discovery requests.

34. These circumstances bear directly on Plaintiff's request for relief under Rule 60(b)(3) and Rule 60(b)(6), which are concerned not only with the existence of new evidence, but with whether enforcement of judgment obtained on an incomplete or misleading record would be inequitable.

## VIII. CONCLUSION

29. Plaintiff respectfully submits that relief under Federal Rules of Civil Procedure 60(b)(2), 60(b)(3), and 60(b)(6) is warranted to prevent manifest injustice.

Respectfully Submitted,

Melanie Hammer, Esq.
360 Court Street, Suite 3
Brooklyn, NY 10536

8

718-757-7677
Melanie@hammer-esq.com

Dated: 1/23/2026
Westchester, New York                              Filed via ECF on all parties

.

.

.

A-343

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MELANIE HAMMER,<br>　　　　　Plaintiff,<br><br><br>　　　　- against -<br><br>TOWN OF BEDFORD NEW YORK, DEPARTMENT OF BUILDING BEDFORD NEW YORK, ZONING BOARD OF APPEALS BEDFORD NEW YORK, BUILDING INSPECTOR TOWN OF BEDFORD NEW YORK (ALBERT CIRACO), ATTORNEY FOR THE TOWN OF BEDFORD NEW YORK (ERIC GORDON, ESQ. & ROBERT ZITT, ESQ.),<br>　　　　　Defendants. | MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF PURSUANT TO FED. R. CIV. P. 60(B)(2) AND 60(B)(3)<br><br><br><br>No. 25-CV-2618 (CS) |

### I.　　PRELIMINARY STATEMENT

Plaintiff moves under Rules 60(b)(2), 60(b)(3), and 60(b)(6) to vacate the Court's January 13, 2026, Opinion and Order dismissing the First Amended Complaint. After briefing on Defendants' Rule 12(b) motion had closed, Plaintiff received a substantial FOIL production of internal municipal communications (approximately 800 pages) produced on August 18, 2025, many of which were heavily redacted without explanation. Plaintiff had sought these communications through multiple written requests, including requests dated  more than a year ago, specifically, January 23, 2024, September 20, 2024, and June 11, 2025. Exhibits J, K, L, & Q.

Plaintiff also received a FOIL response dated January 12, 2026 (Exhibit F) denying that the Town possessed records identifying the structure at issue as "residential" (quotes on FOIL response), notwithstanding Town records that do so reflect. (Exhibit E, G, & H). This newly

disclosed and delayed evidence, provided on 8/22/2025, was not available in time to be presented to the Court and materially alters the factual record on which dismissal was granted. Pleading closed 7/21/2025, a month earlier.

The new evidence bears directly on the factual premises underlying the Court's dismissal, including its conclusions regarding collateral estoppel, the procedural fairness of the Zoning Board of Appeals ("ZBA") proceedings, the existence of a constitutionally protected property interest, the sufficiency of Plaintiff's due-process allegations, the applicability of absolute immunity, and the plausibility of Plaintiff's *Monell* claims. Because the Rule 12(b) dismissal rested on assumptions that are now shown to be inaccurate or incomplete, relief under Rule 60(b) is *warranted to prevent manifest injustice*.

## II.  The Newly Discovered Emails Undermine Dismissal Based on Absolute Immunity (Exhibit C, F & Q)

The newly disclosed internal emails also undermine the Court's dismissal of multiple counts on absolute prosecutorial-immunity grounds. In dismissing those claims, the Court necessarily assumed that the conduct attributed to the Town Attorney was confined to traditional prosecutorial advocacy functions intimately associated with the judicial phase of the criminal process.

The newly produced emails materially alter that premise. They reflect the Town Attorney's involvement in pre-adjudicatory and non-judicial activities, including communications with Zoning Board of Appeals members immediately before quasi-judicial hearings and votes, coordination with administrative departments concerning permit denials, and participation in

2

A-345

shaping the factual and procedural posture of zoning and enforcement proceedings before any criminal prosecution commenced, and failing to disclose residential use to prior courts.

Such conduct, if proven, is administrative, investigative, or policy-driven in nature, not prosecutorial advocacy. Under settled Supreme Court and Second Circuit precedent, absolute immunity does not extend to actions taken in an administrative or investigative capacity, nor to conduct undertaken as part of municipal policy implementation rather than courtroom advocacy.

Because these emails were not produced until after briefing on Defendants' Rule 12(b) motion had closed, Plaintiff had no opportunity to present facts demonstrating that the Town Attorney's challenged conduct fell outside the scope of absolute immunity. The Court therefore evaluated immunity on an incomplete factual record. Exhibit A shows proof these emails were not produced until 8/22/2025.

At a minimum, the newly disclosed emails demonstrate that the functional nature of the Town Attorney's conduct cannot be resolved at the pleading stage on the existing record. Where newly discovered evidence supports a plausible inference that municipal attorneys acted in non-prosecutorial roles, such as advisors, administrators, or policymakers, dismissal on absolute-immunity grounds is premature, and further factual development is required.

### III. LEGAL STANDARD

**A. Rule 60(b) Relief Is Warranted Where Newly Discovered Evidence or Misconduct Undermines the Factual Premises of Dismissal**

3

Rule 60(b) provides an "extraordinary remedy" that permits a court to relieve a party from a final judgment where justice so requires. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Relief is appropriate where newly discovered evidence or misconduct prevented the moving party from fully and fairly presenting her case, or where enforcement of judgment would result in manifest injustice.

Under Rule 60(b)(2), a movant must demonstrate that: (1) the evidence is newly discovered since the judgment; (2) the movant exercised due diligence; (3) the evidence is material and not cumulative; and (4) the evidence would likely have changed the outcome. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994).

Under Rule 60(b)(3), relief is warranted where an adverse party's fraud, misrepresentation, or misconduct prevented the movant from fully and fairly presenting her case. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Ltda.*, 374 F.3d 158, 176 (2d Cir. 2004). The moving party need not show that the outcome would necessarily have been different, but only that the misconduct substantially interfered with the presentation of her claims. *Id.*

Rule 60(b)(6) serves as a "grand reservoir of equitable power" permitting relief for "any other reason that justifies relief," where extraordinary circumstances exist, and the judgment rests on an inequitable or distorted factual foundation. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988).

**B. Rule 60(b) Relief Is Appropriate Where Dismissal Was Premised on an Incomplete or Inaccurate Factual Record**

4

Relief under Rule 60(b) is particularly appropriate where a judgment rests on factual premises that are later shown to be inaccurate or incomplete. Courts in this Circuit have repeatedly recognized that where newly discovered evidence undermines the assumptions on which dismissal was based, vacatur is warranted to preserve the integrity of the adjudicative process. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944); State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158. This is even more important when the underlying dismissal is based in whole or in part upon collateral estopel.

Courts in the Second Circuit have emphasized that Rule 60(b) relief is discretionary and invoked only in exceptional circumstances to preserve the integrity of the adjudicative process. For example, in, State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158. *the Second Circuit recognized that Rule 60(b)(3) motions require clear and convincing evidence of material misrepresentations that prevented a party from fully presenting their case. State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, Lipin v. Hunt, 573 F. Supp. 2d 830.*

Additionally, the principle from, Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, supports the notion that courts may vacate judgments to address fraud or newly discovered evidence that undermines the fairness of the original judgment. This aligns with the Second Circuit's approach to ensuring that judgments are not based on incomplete or inaccurate factual premises.

This principle applies with particular force where dismissal occurred at the Rule 12(b) stage. When a court evaluates a motion to dismiss, it necessarily relies on the factual record as

5

A-348

presented. Where that record is later shown to have been distorted by concealment, delayed disclosure, or misrepresentation of material facts, continued enforcement of judgment risks entrenching legal conclusions derived from false premises.

**C. The Court's Prior Dismissal Turned on Factual Premises Subject to Rule 60(b) Review**

Here, the Court's Rule 12(b) dismissal rested on several factual premises, including that:

1. Plaintiff had a full and fair opportunity to litigate the relevant issues in prior proceedings.

2. The ZBA proceedings were procedurally fair and confined to the public record.

3. Plaintiff lacked a constitutionally protected property interest.

4. Plaintiff failed to plead viable substantive due process claims.

5. Collateral estoppel applied.

6. Each count could be viewed separately under *Monell*: and

7. Absolute prosecutorial immunity barred multiple claims.

Newly discovered evidence produced after briefing closed, including internal municipal emails[1] and a FOIL response denying the existence of "residential" records[2] contrary to the Town's own files[3], directly bears on each of these premises. Where newly discovered evidence calls into question the factual foundation of a dismissal order, Rule 60(b) permits, and equity requires, reconsideration.

---

[1] Exhibit Q – 800 pages of emails
[2] Exhibit F
[3] Exhibit E- 1988 land survey "single story residence over garage,  Exhibit G - Residential  Electrical inspection certificate, & Exhibit H - Certificate of Occupancy for a residential recreation room.

6

Here, the new denial of "residential" character of the structure in foil response Exhibit F, shows a significant misrepresentation of fact which underlies all prior litigation and was repeated in the underlying Article 78 and Appeal.

## IV. NEWLY DISCOVERED AND DELAYED FOIL EVIDENCE

### A. Plaintiff Exercised Diligence, but the Evidence Was Withheld Until After Briefing Closed

Throughout the pendency of this action, Plaintiff diligently sought disclosure of internal municipal communications concerning the subject property, including communications between the Town Attorney, the Zoning Board of Appeals ("ZBA"), the Building Department, and other municipal actors. Plaintiff made written requests for these records on January 24, 2024[4], September 20, 2024[5], and June 11, 2025[6].

Despite these repeated requests, Defendants did not produce the responsive internal emails until August 18, 2025[7], after briefing on Defendants' Rule 12(b) motion had closed[8]. As a result, Plaintiff had no procedural mechanism to present this evidence to the Court before dismissal.

The timing of the production alone establishes that the evidence was "newly discovered" within the meaning of Rule 60(b)(2), because it was unavailable despite due diligence and could not have been presented earlier through reasonable efforts.

---

[4] Exhibit J – 1/24/2024 request for emails
[5] Exhibit K - 9/20/24 request for emails
[6] Exhibit L - 6/11/2025 request for emails
[7] Exhibit A – screenshot of the share file date.
[8] Briefing closed 7/21/2025 and Plaintiff made a motion to this Court to enforce FOIL disclosure in August 2025.

7

**B. The Late-Produced Emails Are Material and Non-Cumulative**

The late-produced materials consist of approximately 800 pages of internal municipal emails, many of which are heavily redacted without explanation or privilege log. These communications are not cumulative of the record previously before the Court. Instead, they provide the first direct evidence of off-record coordination and communications among municipal actors concerning Plaintiff's property during the period when zoning determinations, permit denials, and enforcement actions were being shaped. These emails prove that Town Attorney Gordon engaged in many policy driven functions such as drafting the ZBA's own resolution/decision in this matter.

Of particular significance are emails sent by the Town Attorney to members of the ZBA immediately before November 2, 2023[9].

On November 30, 2023, administrative staff circulated to the ZBA a draft written resolution denying Plaintiff's application that had been drafted by Town Attorney Gordon, even though he had been named personally as a respondent in the related Article 78 proceeding the day before. Follow-up emails show that the ZBA was directed to review Mr. Gordon's draft. **Exhibit T. Also in that email, staff said that Gordon needed a comment on the draft resolution back by 12/5/2023, presumably in time for the 12/72023** meeting at which the ZBA adopted its written resolution. 11/30/2023 email Exhibit T.[10]

---

[9] Exhibit F -heavily redacted email from Town Attorney Eric Gordon to ZBA and others proof of ex parte communications before the 11/2/2023 ZBA meeting
[10] The two attachments to the Exhibit T email were never produced, subject to FOIL.  The attachments are labeled as a draft resolution and a memorandum for Hammer.

The existence, timing, and context of these communications materially bear on whether the ZBA proceedings were confined to the public record, whether the tribunal was impartial, and whether Plaintiff received a full and fair opportunity to be heard. These facts further establish the existence of a coordinated municipal policy and practice and demonstrate that Town Attorney Gordon was engaged in non-prosecutorial, administrative, and policymaking functions. As such, the conduct at issue is not shielded by absolute prosecutorial immunity. Moreover, the evidence undermines the premise that Plaintiff's claims consist of isolated or non-cognizable acts by individual officials. Instead, the newly discovered record shows that the challenged actions were overt acts taken in furtherance of a municipal policy, as pleaded, and deprived Plaintiff of due process.

**C. The FOIL Response Dated January 12, 2026, Further Demonstrates Concealment of Material Facts**

On January 12, 2026, one day before judgment was entered, Plaintiff received a FOIL response from the Town denying the existence of records identifying the structure at issue as "residential"[11]. That response is directly contradicted by Town records in existence, including a permit-era survey identifying the structure as a residence and other Building Department records reflecting residential classification. Exhibits E, G, & H.

This evasive response, when viewed in conjunction with the late production of heavily redacted internal emails, supports the conclusion that material information bearing on the nature of

---

[11] Quotes original, See Exhibit.

Plaintiff's property interest and the Town's enforcement posture was withheld or obscured during the pendency of this action.

**D. Defendants' Conduct Prevented a Full and Fair Presentation of Plaintiff's Claims**

Rule 60(b)(3) relief is warranted where misconduct "substantially interfered" with the moving party's ability to present her case. Here, Defendants' delayed production of internal emails and denial of the existence of residential records prevented Plaintiff from presenting evidence directly relevant to the Court's analysis of collateral estoppel, procedural due process, substantive due process, immunity, and municipal liability.

Because the Court evaluated Defendants' Rule 12(b) motion on a record that omitted this evidence, Plaintiff was deprived of the opportunity to address the factual premises on which dismissal rested. The integrity of the adjudicative process, therefore, requires vacatur and reconsideration on a complete and accurate record.

## V. THE NEWLY DISCOVERED EVIDENCE UNDERMINES THE COURT'S COLLATERAL-ESTOPPEL AND PROCEDURAL-DUE-PROCESS ANALYSIS

**A. Collateral Estoppel Cannot Apply Where Material Facts Were Withheld and the Record Was Distorted**

Collateral estoppel applies only where the party against whom preclusion is asserted had a "full and fair opportunity" to litigate the relevant issues in the prior proceeding. *Gilberg v. Barbieri,* *53 N.Y.2d 285, 291 (1981)*. That requirement is not satisfied where material facts were withheld

10

or misrepresented, or where the adjudicative process proceeded on an incomplete or distorted record.

Here, the newly discovered evidence demonstrates that material information bearing on the nature of Plaintiff's property interest, the basis for the permit denials, and the procedural integrity of the ZBA proceedings was not disclosed during the Article 78 proceeding or the related appeal. Internal municipal emails reflecting off-record communications and coordination, which were produced only after briefing closed and remain heavily redacted, were never presented to the administrative tribunal or the reviewing courts.

Because the prior proceedings proceeded without access to this evidence, Defendants cannot now invoke collateral estoppel to bar Plaintiff's federal claims. A determination reached on a record tainted by concealment or mischaracterization cannot be given preclusive effect. *Jeffreys v. Griffin*, 1 N.Y.3d 34, 39 (2003).

**B. The Court's Estoppel Ruling Rested on Assumed Procedural Fairness That the New Evidence Calls into Question**

In dismissing Plaintiff's claims, the Court emphasized that it was not adjudicating the correctness of Defendants' zoning determinations, but rather relied on the conclusion that Plaintiff had already received constitutionally adequate process through the ZBA proceedings and subsequent Article 78 review.

That conclusion necessarily assumed that the ZBA acted as a neutral decision-maker, that its deliberations were confined to the public record, and that no off-record communications influenced the outcome. The newly disclosed evidence undermines those assumptions.

11

The late-produced emails reveal communications between the Town Attorney and ZBA members immediately before quasi-judicial hearings and votes, including communications on the eve of the November 2, 2023, hearing and in the days preceding the December 7, 2023, meeting at which the ZBA adopted its written resolution authored by Attorney Gordon. The subject lines and contents of these communications are entirely redacted, and no explanation for the redactions has been provided.

Where a quasi-judicial decision-making process is influenced by undisclosed communications from an interested government official, the risk of bias is constitutionally intolerable, regardless of whether the precise contents of those communications are known. *In re Murchison*, 349 U.S. 133, 136 (1955).

**C. The Newly Discovered Evidence Demonstrates That Plaintiff Did Not Receive a Full and Fair Opportunity to Be Heard – Due Process**

The combination of undisclosed ex parte communications, delayed disclosure of internal records, and a FOIL response denying the existence of residential records contrary to the Town's own files demonstrates that Plaintiff did not receive a full and fair opportunity to litigate the factual basis of the zoning and enforcement actions at issue.

Procedural due process requires not merely the availability of hearings or judicial review in the abstract, but a meaningful opportunity to be heard on an accurate factual record. Where the government controls the flow of information and withholds material facts, post-deprivation remedies conducted on a distorted record do not satisfy constitutional requirements or procedural safeguards required under *Zinermon v. Burch*, 494 U.S. 113, 138 (1990).

12

Because the ZBA proceedings and subsequent Article 78 review were conducted without access to material evidence now disclosed, the procedural fairness assumed by the Court's dismissal cannot be sustained. Accordingly, collateral estoppel cannot apply, and dismissal premised on the adequacy of prior process must be vacated.

## VI. THE NEWLY DISCOVERED EVIDENCE ESTABLISHES A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST AND UNDERMINES DISMISSAL OF PLAINTIFF'S SUBSTANTIVE DUE-PROCESS CLAIMS

### A. A Lawful, Pre-Existing Residential Use Is a Vested Property Interest Protected by the Due Process Clause - the *Penn Central* test no longer applies

The Court's dismissal of Plaintiff's substantive due-process claims rested, in part, on the conclusion that Plaintiff failed to allege a constitutionally protected property interest because the challenged zoning determinations did not satisfy the *Penn Central* framework. That analysis depended on the premise that Plaintiff lacked a vested residential property interest in the structure at issue.

Newly discovered evidence undermines that premise. Town records now before the Court, including a permit-era survey identifying the structure as a residence and other Building Department records reflecting residential classification, demonstrate that the structure was identified and treated by the Town itself as a residential use for decades.

13

A-356

Under New York law, a lawful, pre-existing residential use constitutes a vested property right that zoning regulations may not extinguish absent abandonment or lawful amortization. *Matter of Syracuse Aggregate Corp. v. Weise*, 51 N.Y.2d 278, 284–85 (1980). Such a vested use is a cognizable property interest protected by the Due Process Clause, independent of whether a regulatory taking is ultimately established.

**B. The Absence of a Completed Taking Does Not Negate the Existence of a Protected Property Interest**

The existence of a protected property interest does not depend on satisfaction of the *Penn Central* factors or on proof of a completed taking. *Penn Central* governs whether a regulatory action constitutes a compensable taking; it does not define whether a property interest exists in the first instance.

Where, as here, a plaintiff alleges interference with a vested property right, such as the continued lawful residential use of property, the deprivation of that right through arbitrary or pretextual government action independently implicates substantive due-process protections. *Sherman v. Town of Chester*, 752 F.3d 554, 563–64 (2d Cir. 2014); *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 789 (2d Cir. 2007).

The newly discovered evidence demonstrates that Defendants' actions were directed not at regulating new development, but at *withdrawing recognition of an existing residential use based on factual premises now shown to be inaccurate. The deprivation of a vested use under such circumstances states a substantive due process claim* regardless of whether a takings claim will ultimately succeed.

14

**C. The New Evidence Demonstrates Arbitrary and Conscience-Shocking Conduct**

Substantive due process is violated where government action is arbitrary, irrational, or conscience-shocking and deprives an individual of a protected property interest. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, at 789.

Here, the newly disclosed evidence supports a plausible inference that Defendants engaged in a coordinated course of conduct to extinguish Plaintiff's vested residential use through mischaracterization of the structure, selective enforcement, and off-record influence over quasi-judicial proceedings. Internal emails produced after briefing closed, combined with a FOIL response denying the existence of residential records contrary to Town files, materially alter the factual context in which Defendants' actions must be evaluated. The town attorney is an experienced attorney in land and zoning and represent municipalities. This mischaracterization of the structure against a pro se plaintiff is shocking.

*Viewed in light of this evidence, Plaintiff's allegations are no longer properly characterized as a disagreement over zoning interpretation. Rather, they plausibly allege an arbitrary and pretextual deprivation of a vested property right undertaken pursuant to an established municipal practice. Such conduct, if proven, "shocks the conscience" and violates substantive due process. Sherman, 752 F.3d at 563–64.*

**D. Dismissal at the Pleading Stage Was Premature**

Because the newly discovered evidence establishes the existence of a constitutionally protected property interest and materially alters the factual premises underlying dismissal, Plaintiff's substantive due-process claims could not properly have been dismissed at the Rule 12(b) stage.

At a minimum, the evidence warrants vacatur of judgment and reconsideration of Plaintiff's claims on a complete and accurate factual record. The Court should therefore grant relief under Rule 60(b) and permit the action to proceed or allow amendment to incorporate the newly disclosed evidence.

## VII. THE NEWLY DISCOVERED EVIDENCE UNDERMINES DISMISSAL BASED ON ABSOLUTE IMMUNITY AND SUPPORTS MUNICIPAL LIABILITY UNDER *MONELL*

### A. The Court's Immunity Analysis Rested on an Assumption That the Town Attorney Acted Solely in a Prosecutorial Capacity

In dismissing Counts Ten through Eighteen, the Court concluded that claims against the Town Attorney were barred by absolute prosecutorial immunity. That conclusion necessarily rested on the assumption that the challenged conduct was confined to traditional prosecutorial advocacy, conduct "intimately associated with the judicial phase of the criminal process."

At the Rule 12(b) stage, the Court had no occasion to evaluate the functional nature of the Town Attorney's conduct beyond the pleadings as presented. The newly discovered evidence materially alters the factual context in which the immunity analysis must be conducted.

### B. The Newly Disclosed Emails Reflect Substantial Non-Prosecutorial Conduct

The late-produced internal emails reflect the Town Attorney's involvement in administrative, investigative, and policy-driven activities, rather than prosecutorial advocacy. These include communications with members of the Zoning Board of Appeals immediately before quasi-

16

judicial hearings and votes, coordination with administrative departments regarding permit denials and enforcement posture, and participation in shaping the factual and procedural framework of zoning proceedings before any criminal prosecution commenced.

Such conduct, if proven, falls outside the scope of absolute prosecutorial immunity. Under settled Supreme Court and Second Circuit precedent, immunity turns on the *function* performed, not the title of the official. Prosecutors are entitled, at most, to qualified immunity when acting as investigators, administrators, or advisors, and are not shielded when participating in policy implementation or evidence shaping outside the courtroom.

Because these emails were not produced until after briefing on Defendants' Rule 12(b) motion had closed, Plaintiff had no opportunity to present facts demonstrating that the Town Attorney's challenged conduct was non-prosecutorial in nature. The Court therefore evaluated immunity on an incomplete factual record.

At a minimum, the newly discovered evidence demonstrates that the functional character of the Town Attorney's conduct cannot be resolved as a matter of law at the pleading stage and requires factual development.

**C. The Same Evidence Supports Municipal Liability Under *Monell***

The newly disclosed emails also bear directly on Plaintiff's *Monell* claims. Municipal liability attaches where constitutional deprivations result from an official policy, custom, or practice, or from the actions of officials whose conduct may fairly be said to represent municipal policy.

17

Here, the evidence reflects coordinated involvement among the Town Attorney, the Building Department, and the ZBA in advancing and enforcing a non-residential classification of the structure despite contrary internal records. The timing, volume, and subject matter of the communications, many of which were produced only after significant delay and remain heavily redacted, support a plausible inference of a unified municipal course of conduct rather than isolated or discretionary decisions by individual actors.

Viewed in conjunction with Defendants' litigation position and FOIL response denying the existence of residential records contrary to Town files, the new evidence supports the conclusion that the challenged actions were undertaken pursuant to an established municipal practice or policy. Where municipal attorneys act not as courtroom advocates but as administrators, advisors, or policymakers implementing municipal objectives, their conduct may give rise to municipal liability under *Monell* and is not shielded by absolute immunity.

**D. Dismissal on Immunity Grounds Was Premature**

Because the newly discovered evidence undermines the factual premise that the Town Attorney acted exclusively in a prosecutorial capacity, dismissal of Plaintiff's claims on absolute-immunity grounds was premature. At a minimum, the evidence warrants vacatur of judgment and reconsideration of the immunity and *Monell* issues on a complete and accurate factual record.

**VIII. THE NEWLY DISCOVERED EVIDENCE UNDERMINES DISMISSAL OF PLAINTIFF'S CLAIMS AS "DISCRETE" AND CONFIRMS A COORDINATED MUNICIPAL POLICY**

18

In dismissing multiple counts of the First Amended Complaint, the Court concluded that Plaintiff's allegations described discrete actions that, viewed individually, did not state cognizable constitutional claims. That conclusion depended on the premise that the challenged acts, permit denials, delays, enforcement decisions, ZBA actions, and prosecutorial steps, were independent, case-specific determinations rather than manifestations of a unified municipal policy or course of conduct.

The newly disclosed internal emails materially undermine that premise.

The late-produced communications reflect coordinated involvement among the Town Attorney, the Zoning Board of Appeals, the Building Department, and other municipal actors in advancing and enforcing a single factual and legal narrative concerning Plaintiff's property. The timing, volume, and cross-departmental nature of these communications, many of which occurred immediately before quasi-judicial hearings, enforcement decisions, and formal votes, support a plausible inference that the challenged actions were not discrete or coincidental, but interdependent steps in a concerted municipal course of conduct.

Of particular significance, the newly disclosed materials reflect that the Town Attorney was involved not only in advising or prosecuting discrete matters, but also in drafting and advancing a Town Board resolution authorizing litigation against Plaintiff. That resolution formalized and ratified the same course of conduct that underlies the counts previously dismissed as isolated or non-actionable. When municipal action is ratified through formal legislative or executive action, it cannot be characterized as a series of unrelated acts for purposes of pleading or liability.

19

Viewed in light of this evidence, the Court's prior parsing of Plaintiff's claims into isolated counts no longer holds. The First Amended Complaint alleged, and the newly disclosed evidence now corroborates, a unified policy or custom designed to withdraw recognition of Plaintiff's vested residential use and to enforce that withdrawal through coordinated administrative, quasi-judicial, and prosecutorial mechanisms.

Under *Monell*, constitutional claims arising from a single municipal policy or course of conduct must be evaluated in their totality, not fragmented into discrete acts divorced from their institutional context. Where newly discovered evidence demonstrates that multiple actions previously viewed as independent were instead undertaken pursuant to a coordinated municipal policy, dismissal of those claims as legally insufficient in isolation is no longer appropriate.

Accordingly, the newly disclosed emails independently warrant vacatur of judgment under Rule 60(b), because they undermine the factual premise on which the Court dismissed multiple counts as discrete and confirm that those claims must be evaluated collectively as part of a unified municipal course of conduct.

## IX.  RELIEF IS WARRANTED TO PREVENT MANIFEST INJUSTICE

The Court's January 13, 2026, dismissal rested on factual premises that are now shown to be inaccurate or incomplete. At the time of dismissal, the Court reasonably relied on the record as presented, including assumptions regarding the procedural integrity of the ZBA proceedings, the absence of a constitutionally protected property interest, the applicability of collateral estoppel, and the scope of prosecutorial immunity. Newly discovered evidence produced after briefing closed materially alters each of those assumptions.

20

A-363

The late-produced internal municipal emails, many of which remain heavily redacted without explanation, reveal off-record communications and coordination that bear directly on procedural fairness, neutrality, and the functional nature of Defendants' conduct. The January 12, 2026, FOIL response denying the existence of "residential" records, contrary to the Town's own files, further demonstrates that the factual record on which dismissal was granted was incomplete.

Rule 60(b) exists to ensure that judgments are not enforced where they rest on distorted or misleading factual foundations. Here, Defendants' delayed disclosures and mischaracterizations substantially interfered with Plaintiff's ability to present her claims and deprived the Court of a full and accurate record at the Rule 12(b) stage. Continued enforcement of judgment under these circumstances would result in manifest injustice.

Because the newly discovered evidence undermines the premises supporting dismissal of Plaintiff's claims, including those based on collateral estoppel, due process, immunity, and *Monell,* vacatur is warranted under Rules 60(b)(2), 60(b)(3), and 60(b)(6). Upon vacatur, the Court should either reinstate the First Amended Complaint or grant Plaintiff leave to amend to incorporate the newly disclosed evidence and permit adjudication on a complete and accurate factual record.

### X. NEWLY DISCOVERED EVIDENCE ESTABLISHES A PLAUSIBLE MUNICIPAL POLICY AND WARRANTS REINSTATEMENT OF CLAIMS AGAINST THE TOWN OF BEDFORD

"Because the dismissal of claims against the Town of Bedford rested on factual assumptions regarding the absence of municipal policy, coordination, and ratification—assumptions now

21

undermined by newly discovered evidence, the Town remains a proper defendant, and dismissal as to the municipality cannot stand."

## XI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant relief pursuant to Rule 60(b), vacate the January 13, 2026, Opinion and Order dismissing the First Amended Complaint, and grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Melanie Hammer, Esq.
360 Court Street, Suite 3
Brooklyn, NY 10536
718-757-7677
Melanie@hammer-esq.com

1/23/2026
Westchester, NY

Filed on all parties via ECF

22

**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**
**MELANIE HAMMER, Plaintiff, v. TOWN OF BEDFORD, et al., Defendants.**
**Case No. 25-CV-2618 (CS)**

## EXHIBIT INDEX – RULE 60(b) MOTION

| Exhibit | Description | Purpose / Relevance |
|---|---|---|
| A | Town of Bedford FOIL Response Letter / Transmittal (Aug. 18, 2025), transmitting materials via ShareFile after Rule 12(b)(6) briefing closed | Establishes timing, delay, and lack of procedural opportunity to present evidence prior to judgment |
| B | Representative FOIL-produced emails with subject lines, bodies, and/or recipients redacted, without stated FOIL exemptions or privilege bases | Demonstrates concealment and incomplete disclosure; supports relief under Rule 60(b)(3) |
| C | Plaintiff's chart summarizing redacted FOIL emails, identifying dates, senders, recipients (where discernible), and scope of redactions | Demonstrates the pattern and extent of unexplained redactions and absence of any privilege log or exemption explanation |
| D | Undisclosed ex parte communications between Town Counsel Eric Gordon and members of the Zoning Board of Appeals, occurring outside the public hearing process | Undermines the premise that ZBA decision-making was confined to the public record; defeats collateral estoppel |
| E | Permit-era survey / map (circa 1988) identifying the structure as "1-Story Residence Over Garage" | Contradicts Defendants' characterization of the structure as an "illegal apartment" and establishes misrepresentation of a central factual premise |
| F | FOIL response asserting no records exist reflecting residential classification of the structure | Demonstrates a misleading FOIL response when viewed in light of Exhibit E and other Building Department records |

| | | |
|---|---|---|
| G | Electrical inspection / permit document (2012) identifying residential occupancy | Shows continued municipal recognition and treatment of the structure as residential |
| H | Zoning Certificate of Compliance / Certificate of Occupancy issued by the Town (2014) | Further contradicts the claim that the structure was unlawful or non-occupiable; corroborates residential use |
| I | Certificate of Compliance under NY CPL § 245.50 certifying that all discovery was disclosed (9/18/2024) | Demonstrates formal representation of full disclosure despite subsequently omitting approximately 800 pages of emails previously requested by Plaintiff |
| J | FOIL request dated January 24, 2024, seeking all internal emails | Establishes scope and timing of Plaintiff's discovery efforts |
| K | FOIL request dated September 20, 2024, seeking internal emails | Demonstrates continued diligence and repeated requests for disclosure |
| L | FOIL request dated June 11, 2025, seeking internal emails later produced with extensive redactions | Establishes that disputed emails were squarely requested before judgment |
| M | Affidavit of Building Inspector Al Ciraco (Index No. 71446/2023, NYSCEF Doc. 47, filed Dec. 27, 2023), stating residential use was "illegal and prohibited" absent a variance | Demonstrates Defendants' affirmative misrepresentations now contradicted by newly produced evidence |
| N | Notice of Violation issued April 27, 2023 | Provides context for enforcement action premised on the disputed residential classification |
| O | Permit denial letter dated September 22, 2023 | Shows the Town's reliance on the alleged illegality of residential use to deny permits |
| P | ZBA Resolution filed December 7, 2023, stating residential use was not permitted | Demonstrates the ZBA's reliance on the same mischaracterized factual premise |
| Q | Complete FOIL production (approx. 800 pages) of heavily redacted internal | Establishes a pattern of coordinated conduct, concealment, |

|   | Town emails (2023–2025) | and undisclosed communications material to Rule 60(b) relief |
|---|---|---|
| R | Respondents' Appellate Brief | Demonstrates material misrepresentations regarding the residential status and alleged illegality of the structure relied upon by the state courts |
| S | Farrell Map depicting kitchen and bathroom within the structure | Corroborates long-standing residential use by showing kitchen and bathroom facilities |
| T | Draft ZBA resolution authored by Town Attorney Eric Gordon for ZBA signature | Shows Town Attorney drafted adjudicatory resolution; supports improper dual roles and coordinated municipal policy |
| U | Email dated November 30, 2023, from Town Attorney Eric Gordon to ZBA and Planning Board members (subject fully redacted) | Evidence of undisclosed pre-resolution communications; supports concealment and procedural impropriety |

**Alexandra Whalen**
Town Clerk

## TOWN OF BEDFORD
OFFICE OF THE TOWN CLERK

**Nina Kellogg**
Deputy Town Clerk

August 18, 2025

**VIA EMAIL** [melanie@hammer-esq.com]

Melanie Hammer, Es q.
146 Goldens Bridge Road
Katonah, New York 10536

Re:    Response to Freedom of Information Law Request
       FOIL Reference #2025-00205

Dear Ms. Hammer:

This office writes in response to your request received by the Town of Bedford (the "Town") on June 11, 2025 in which you sought certain documents from the Town under the New York State Freedom of Information Law ("FOIL"). Your FOIL request sought the following records from April 1, 2023, to present:

- Copies of any and all internal or external records, documents, emails, memoranda, notes, communications, or written materials in the possession of the Town of Bedford or its agents that relate to the summons issued on April 27, 2023, Melanie Hammer 146 Goldens bridge road Katonah NY;
- Any and all internal or external communications, including but not limited to email correspondence, meeting notes, or memoranda, discussing, referencing, Melanie Hammer;
- All enforcement discussions, or procedural actions taken in connection with or as a result of that summons; and
- All, inter-departmental or external counsel communications, and records of any related enforcement decisions or actions.
- This request seeks materials generated or received from April 1, 2023, to the present.
- THIS DOES NOT INCLUDE PUBLIC COURT FILINGS FOR Appellate Div. 2nd Dept. case 2024-02143 or Supreme Court Case 71446/2023 or 25CV2818. I do not need this information or the building department file itself.

Please be advised that the Town has conducted a diligent search for documents responsive to your FOIL request. Please find PDF documents responsive to your request, by accessing the same through the following ShareFile link:

https://keanebeane.sharefile.com/i/i82e01ce447c47168.

If prompted to sign in to access the ShareFile link, please insert your first name, last name and email address and you should be granted access.

Please note that redactions were made to the responsive records to remove portions thereof containing materials protected by attorney-client privilege; materials that are exempt from disclosure since they constitute inter-agency or intra-agency materials which are not statistical or factual tabulations or data, instructions to staff that affect the public, final agency policy or determinations, or external audits; and which, if disclosed, would constitute an unwarranted invasion of personal privacy. *See* N.Y.S. Public Officers Law §87(2)(a), §87(2)(b), §§87(2)(g).

In the event you have any objections with respect to this response, pursuant to Town Code §95-8 and Public Officers Law §89(4)(a), you may file an appeal within thirty (30) days of receipt to:

> The Town Board of the Town of Bedford
> Town House
> 321 Bedford Road
> Bedford Hills, New York 10507

Very truly yours,


Allie Whelan
Town of Bedford Freedom of Information Officer

Enclosures

cc: Eric L. Gordon, Town Attorney

August 18, 2025

**VIA EMAIL** [melanie@hammer-esq.com]

Melanie Hammer, Es q.
146 Goldens Bridge Road
Katonah, New York 10536

Re:    Response to Freedom of Information Law Request
       FOIL Reference #2025-00205

Dear Ms. Hammer:

This office writes in response to your request received by the Town of Bedford (the "Town") on June 11, 2025 in which you sought certain documents from the Town under the New York State Freedom of Information Law ("FOIL"). Your FOIL request sought the following records from April 1, 2023, to present:

- Copies of any and all internal or external records, documents, emails, memoranda, notes, communications, or written materials in the possession of the Town of Bedford or its agents that relate to the summons issued on April 27, 2023, Melanie Hammer 146 Goldens bridge road Katonah NY;
- Any and all internal or external communications, including but not limited to email correspondence, meeting notes, or memoranda, discussing, referencing, Melanie Hammer;
- All enforcement discussions, or procedural actions taken in connection with or as a result of that summons; and
- All, inter-departmental or external counsel communications, and records of any related enforcement decisions or actions.
- This request seeks materials generated or received from April 1, 2023, to the present.
- THIS DOES NOT INCLUDE PUBLIC COURT FILINGS FOR Appellate Div. 2nd Dept. case 2024-02143 or Supreme Court Case 71446/2023 or 25CV2818. I do not need this information or the building department file itself.

Please be advised that the Town has conducted a diligent search for documents responsive to your FOIL request. Please find PDF documents responsive to your request, by accessing the same through the following ShareFile link:

https://keanebeane.sharefile.com/i/i82e01ce447c47168.

If prompted to sign in to access the ShareFile link, please insert your first name, last name and email address and you should be granted access.

Please note that redactions were made to the responsive records to remove portions thereof containing materials protected by attorney-client privilege; materials that are exempt from disclosure since they constitute inter-agency or intra-agency materials which are not statistical or factual tabulations or data, instructions to staff that affect the public, final agency policy or determinations, or external audits; and which, if disclosed, would constitute an unwarranted invasion of personal privacy. *See* N.Y.S. Public Officers Law §87(2)(a), §87(2)(b), §§87(2)(g).

In the event you have any objections with respect to this response, pursuant to Town Code §95-8 and Public Officers Law §89(4)(a), you may file an appeal within thirty (30) days of receipt to:

> The Town Board of the Town of Bedford
> Town House
> 321 Bedford Road
> Bedford Hills, New York 10507

Very truly yours,

Allie Whelan
Town of Bedford Freedom of Information Officer

Enclosures

cc: Eric L. Gordon, Town Attorney

| | |
|---|---|
| **From:** | Whalen, Allie |
| **To:** | Eric L. Gordon |
| **Cc:** | Kellogg, Nina |
| **Subject:** | ███████████████ |
| **Date:** | Thursday, July 3, 2025 8:28:00 AM |
| **Attachments:** | █████████████ |

Allie Whalen
Town of Bedford Town Clerk
Registrar & Marriage Officer
321 Bedford Road
Bedford Hills, NY 10507
914-666-4534
awhalen@bedfordny.gov

**MELANIE HAMMER,** Plaintiff, v. **TOWN OF BEDFORD, et al.,** Defendants.

**Case No. 25-CV-2618 (CS)**

**October 2024 – July 2025**

**FOIL Emails Redaction Chart – Shows Coordination and Concealment**

| Date | Page(s) | From → To (CC) | Subject (as shown) | What's missing / why it matters |
|---|---|---|---|---|
| **09/15/2023** | 239; 646 | Zoning / Kim Kowalski → Eric Gordon (Al Ciraco) | Redacted | Body + attachments redacted; includes **missing attachment**(9/12/23 referenced near p239) and redacted reply chain. |
| **09/20/2023** | 329–333 | Kim Kowalski / Al Ciraco / Eric Gordon / Donna Monaco | Redacted | Subject/body redacted across multiple emails. Includes your email re permit status and instruction to communicate via Town Attorney (p333–335). |
| **09/21–09/22/2023** | 145; 693 | Eric Gordon / Al Ciraco / Kim Kowalski / Donna Monaco | Redacted | Attachments redacted (p145) and body redacted (p693). |
| **09/27/2023** | 168–170; 213–215; 512–513; 518; 746–751 | Al Ciraco / Eric Gordon / Planning (Jessica Youngblood) | Redacted / "Forward violations" | Heavy redactions + "attachments protected." Appears to be a major enforcement/violations thread; many missing attachments. |
| **09/28/2023** | 96; 501–502 | Kim Kowalski → Eric Gordon (Planning/Building) | "Hammer ZBA application … town board PDF / digital plans" | Entire body redacted despite being a pivotal pre-decision ZBA-related communication; attachments referenced. |
| **10/12/2023** | 117; 592 | Kim Kowalski → Eric Gordon (Al Ciraco) | Redacted (High importance) | Body redacted; marked **high importance**. |
| **10/16/2023** | 590–592 | Eric Gordon ↔ zoning@bedfordny.gov / Kim Kowalski / Al Seco | Redacted (High importance) | Pre-ZBA hearing coordination; subject/body redacted. |

| Date | Page(s) | From → To (CC) | Subject (as shown) | What's missing / why it matters |
|---|---|---|---|---|
| 10/25/2023 | 634 | Eric Gordon → Ellen Calves (CC Zambrano/Kowalski/Ciraco/Michaels) | Redacted | Body redacted; close-in time to ZBA lead-up. |
| 10/26/2023 | 87; 251 | Angel Oya → Robert Zitt (and/or others) | Redacted | Subject/body redacted; attachments not produced. Also: 10/26/23 board agenda email (p251) has names/recipients redacted. |
| 10/31/2023 | 117 | Eric Gordon → Building Dept (Al Ciraco/Donna/etc.) | Redacted (High importance) | Attachment blacked out; subject blacked out; body redacted; **immediately before 11/2/23 hearing**. |
| 11/01/2023 | 41; 63 | Eric Gordon → Peter Michaels & Kim Kowalski (also: Jessica Youngblood/Al Seco listed) | Redacted / "Confidential memo from Eric Gordon … 146 Goldens Bridge Rd" | **Entire content redacted** the day before ZBA meeting; also **attachments withheld** on the forwarded "confidential memo." This is the ex parte / neutrality concern you flagged. |
| 11/02/2023 | (referenced) | — | — | You referenced the **11/2/23 ZBA meeting** as the next-day context for the 11/1 emails. |
| 11/03/2023 | 196; 611–613; 620–622 | Donna Monaco / Al Ciraco ↔ Eric Gordon (John Winter, Angel Oya, etc.) | Redacted | Subject/body/attachments redacted; multiple post-hearing emails; some suggestion of privilege issues ("destroyed privilege?") in your note. |
| 11/06/2023 | 618–619 | Eric Gordon ↔ Al Ciraco/Robert Zitt/Donna Monaco/John Winter/Angel Oya | Redacted | Subject/body redacted. |
| 11/15/2023 | 499–500 | Kim Kowalski ↔ Eric Gordon | Redacted | Subject/body redacted. |
| 11/20/2023 | 40; 172; 228; 289; 756 | Building Inspector (Al Ciraco/Al Seco) / Angela Oya ↔ Eric Gordon (Noah Paige/Robert Zitt/Ellen Calves) | Redacted | One email is **almost entirely redacted except greeting/names**(p40). Additional |

A-376

| Date | Page(s) | From → To (CC) | Subject (as shown) | What's missing / why it matters |
|---|---|---|---|---|
| | | | | fully redacted chains around the same date. |
| 11/22/2023 | 180 | Ellen Calves ↔ Lisa Burke | Redacted | Body redacted; references earlier hardship message (11/8/23) in your summary. |
| 11/27–11/28/2023 | 159–160; 228; 644–645; 727–728; 784 | Eric Gordon ↔ Kim Kowalski / Peter Michaels / Al Ciraco / Town Clerk | Redacted | Multiple fully redacted chains during this period. |
| 11/30/2023 | 80; 111–113; 212; 313; 326–328; 543–545; 557–559; 562; 564–565; 784; 788 | Eric Gordon ↔ Building Dept / Planning / Town Supervisor / Town Clerk | Redacted / "Agenda for 12/7 meeting for your review" (partly visible) | Dense cluster. Many bodies/subjects redacted; several appear tied to agendas/meeting prep; attachments frequently not produced. |
| 12/01/2023 | 122; 158; 623–628; 626–627; 326 | Eric Gordon ↔ Elizabeth Fumagalli / Nina Kellogg / Ellen Calves / Building Dept | Redacted | Attachments withheld; includes your note re minutes amendment/video clip (p158). |
| 12/04/2023 | 91; 201; 203; 205; 479–491; 494–495; 724 | Roxanne Surace / Eric Gordon / Town Clerk / Kim Kowalski / Building Dept | Redacted | Repeated missing attachments and redacted bodies; FOIL request processing appears in this cluster. |
| 12/07/2023 | 79; 312 | Elizabeth Fumagalli / Eric Gordon ↔ Nina Kellogg/Robert Zitt | "Forward 71446 of 2023 …" (body redacted) | Body redacted; also multiple 12/7 emails with partial/full redactions. |
| 12/08/2023 | 204; 509–510 | Kim Kowalski ↔ Eric Gordon | Redacted | Attachments redacted; body redacted. |
| 12/09/2023 | 556 | Eric Gordon ↔ Town Clerk/Town Supervisor | Redacted | Body redacted. |
| 12/11/2023 | 176; 231; 604–606; 484; 581–582 | Roxanne Surace / Town Clerk / Eric Gordon | Redacted | FOIL-related items; bodies partially/fully redacted; attachments missing. |

| Date | Page(s) | From → To (CC) | Subject (as shown) | What's missing / why it matters |
|---|---|---|---|---|
| 12/12/2023 | 162; 546–547; 579–581; 623 | Town Clerk → Eric Gordon (Fumagalli, etc.) | "Acknowledg coverage letter Article 78" (per your note) | Attachment not provided; additional 12/12 redaction cluster. |
| 12/13/2023 | 124–127 | Angel Oya → Eric Gordon (scanner/copier chain) | Redacted / blank | Copier/scanner forwards with attachments blacked out; you flagged as possibly when residential status was recognized. |
| 12/19–12/20/2023 | 200; 210; 198; 524–528; 530–531 | Eric Gordon ↔ Building Dept / Town Clerk / Keenan Bean reference | Redacted | Multiple attachments referenced but withheld; bodies redacted. |
| 12/22/2023 | 198; 761 | Eric Gordon / Al Ciraco → Building Dept | Redacted | Attachments redacted; body redacted. |
| 12/26–12/28/2023 | 569–570; 759–764; 762–763; 325 | Eric Gordon ↔ Angel Oya / Kim Kowalski / Building Dept | Redacted | Long chain of redactions including copier/scanner forwards. |

## 2024

| Date | Page(s) | From → To (CC) | Subject (as shown) | What's missing / why it matters |
|---|---|---|---|---|
| 01/02/2024 | 104?; 608; 615–617 | Peter Michaels / Kim Kowalski ↔ Eric Gordon (ZBA/Building/Robert Zitt) | Redacted | Multiple bodies/subjects redacted at the start of 2024; continued ZBA/building coordination. |
| 01/16/2024 | 230 | Town Clerk → Eric Gordon (Calves/Inspector/Planning) | Redacted | Body redacted. |
| 01/29/2024 | 120; 602 | Eric Gordon → Elizabeth Fumagalli / Town Clerk (multiple CCs) | Redacted | Body redacted. |

A-378

| Date | Page(s) | From → To (CC) | Subject (as shown) | What's missing / why it matters |
|------|---------|----------------|--------------------|--------------------------------|
| 01/30/2024 | 66; 476–478 | Lisa Burke → Ellen Calves & Eric Gordon (FB post produced) | FB post produced | Town produced your FB post content; surrounding emails (1/30/24 chain) are redacted. |
| 01/31/2024 | 92 | Al Ciraco → Donna Monaco & Kim Kowalski | "Hammer — your biggest fan" | Body redacted; you flagged as FB-related thread. |
| 02/01/2024 | 92 | Zoning → Peter Michaels | "Fwd: Hammer — your biggest fan on Facebook" | Body redacted. |
| 02/09/2024 | 106; 531–536; 532–534 | Eric Gordon → Building/Planning/ZBA/Town Supervisor/Town Clerk | Redacted | Large distribution list; body redacted; appears policy/coordination-like. |
| 02/12/2024 | 70 | Peter Michaels → ZBA officials | "Ruling and prevailing on the Article 78 that Hammer brought against us …" | Remainder redacted; unusual because it references litigation strategy/outcome discussion among board members. |
| 02/15/2024 | 127; 636 | Kim Kowalski ↔ Eric Gordon (Ciraco/Fumagalli/Surace) | Redacted | Attachments redacted; body redacted. |
| 02/19/2024 | 632–633 | Angel Oya → Robert Zitt | Redacted | Subject/body redacted. |
| 02/20–02/25/2024 | 650–652; 785 | Eric Gordon ↔ Roxanne Surace/Town Clerk/Supervisor | Redacted | Bodies redacted. |
| 04/17/2024 | 629–630; 632 | Eric Gordon / Al Ciraco / Angel Oya / Robert Zitt | Redacted | Body redacted; copier forward redacted. |
| 04/19/2024 | 88–89; 463–467 | Angel Oya ↔ Robert Zitt (and others) | Redacted | Attachments withheld; multiple bodies redacted. |
| 04/24/2024 | (unclear) | — | — | (No clear 4/24 item in your text; if this appears elsewhere, we can add it.) |
| 05/02/2024 | 206; 469?; 540–541 | Angel Oya / Eric Gordon ↔ Louis Silverman / Calves | Redacted | Multiple redactions; appears counsel coordination period. |

| Date | Page(s) | From → To (CC) | Subject (as shown) | What's missing / why it matters |
|---|---|---|---|---|
| 05/03/2024 | 463–466 | Eric Gordon → Angela & Al Ciraco; Angela ↔ Robert | Redacted | Attachment/body redacted; ongoing Building Dept comms. |
| 07/24/2024 | 72; 123 | Angel Oya → Robert Zitt | Redacted / KM_C650 copier | Attachments/body redacted; you flagged possible "discovery structure was residential." |
| 08/29/2024 | 113; 288 | Angela ↔ Robert Zitt (Al Ciraco also referenced) | Redacted | Body redacted; attachment redacted. |
| 08/30/2024 | 508 | Justice Jodi Kimmel ↔ Judge David Minkin (clerk context) | Partially redacted | Court email partial redactions. |
| 09/09/2024 | 115; 225–226; 588 | Eric Gordon ↔ Ali Whalen/Nina Kellogg/Ellen Calves | Redacted | Subject/body/attachments redacted across multiple emails. |
| 09/24/2024 | 58; 89; 328 | Judge → Clerk / Clerk ↔ Justice Minkin (also: Ali Whalen ↔ Matt Mauer fwd signed "Eric Gordon") | "Bedford v Hammer" / "Bedford Hammer" (redacted) | **Judge-to-clerk email fully redacted** (you flagged as highly irregular); also a forwarded email "signed Eric Gordon" whose forwarded content is fully redacted. |
| 09/26–09/30/2024 | 133–134; 218; 235; 736–737; 450–451 | Town Clerk ↔ Eric Gordon (Louis Silverman; Ellen Calves; others) | Redacted | Appears tied to notice-of-claim / Sec'y of State / litigation admin; attachments not produced. |
| 10/08/2024 | 221; 309–310; 598 | Eric Gordon ↔ Ellen Calves / Jessica Youngblood / Louis Silverman | Redacted | Body/subject redacted across counsel + supervisor traffic. |
| 10/11/2024 | 109; 550–552; 560–562 | Eric Gordon ↔ Ellen Calves / Louis Silverman / Robert Zitt | "Hammer Bedford" (partly visible in one place) | Bodies redacted; attachments withheld; multi-party defense coordination. |
| 10/29/2024 | 71 | Donna Monaco → Eric Gordon | Redacted | Attachments not provided; body redacted. |
| 12/02/2024 | 222; 554; 566–567; 575–576 | Ellen Calves / Eric Gordon / Robert Zitt / Building Inspector | "Agenda tomorrow at 1PM" (partly visible); "Hammer v Town of Bedford" (call) | Multiple redactions; conference/call logistics + legal matters redacted. |

A-380

| Date | Page(s) | From → To (CC) | Subject (as shown) | What's missing / why it matters |
|---|---|---|---|---|
| 12/04/2024 | 201 | Eric Gordon → Al Seco / Angela (CC Robert Zitt) | Redacted | Attachment/body redacted. |
| 12/11/2024 | 550 | Ellen Calves → Eric Gordon | "Hammer Town of Bedford" (partly visible) | Remaining content redacted. |
| 12/20/2024 | 106 (noted) | Melanie Hammer → Louis Silverman | Document disappearance request | You summarized: request re removing municipal planning doc from internet after cited in appeal (not an internal Town email redaction item, but you listed it here). |

## 2025

| Date | Page(s) | From → To (CC) | Subject (as shown) | What's missing / why it matters |
|---|---|---|---|---|
| 01/02/2025 | 104; 577 | Ellen Calves → Eric Gordon | Redacted | Body redacted. |
| 04/03/2025 | 187; 642; 730–731 | NYS Dept of State / Judge Kimmel ↔ clerk; Eric Gordon ↔ Ali Whalen/Nina Kellogg | Redacted | Notice of Claim receipt noted; court email body redacted; Town email chains redacted. |
| 04/04/2025 | 606–607 | Donna Monaco ↔ Eric Gordon | Redacted | Body redacted. |
| 04/07/2025 | 537–540 | Gerald Smith / Louis Silverman ↔ Eric Gordon (multi-cc) | Redacted | Counsel/coordination emails; bodies redacted. |
| 04/20–04/22/2025 | 254–287; 259–266; 705–711 | Ali Whalen / Nina Kellogg / Eric Gordon / Kellee Cagnina / Brian Kennelly (process server) | "00130/00131 Process Server FOIL Hammer" (sometimes visible) | **Massive FOIL processing thread**; many bodies redacted though subject sometimes visible; suggests responsive-doc handling + vendor / DOS site references. |
| 04/30/2025 | 130 | Nina Kellogg → Ali Whalen → Lori Glassman (Brown & Brown) (CC Calves) | Redacted | Entire subject/body blacked out; you tied to your request re tax designation / NYS Div. of Corporations. |

| Date | Page(s) | From → To (CC) | Subject (as shown) | What's missing / why it matters |
|---|---|---|---|---|
| 05/02/2025 | 469; 471 | Eric Gordon → Ellen Calves | Redacted | Body redacted. |
| 05/06/2025 | 320–321 | Eric Gordon ↔ Gerald Smith (CC Ellen Calves) | Redacted | Body redacted. |
| 06/11/2025 | 75; 102–103; 290; 293–301 | Ali Whalen → Eric Gordon (CC Nina Kellogg) | Redacted | FOIL-period communications; bodies redacted across multiple pages. |
| 06/23–06/27/2025 | 74–75; 100–101; 292–300 | Ali Whalen ↔ Eric Gordon/Nina Kellogg; Matt Mauer references | Redacted | Multiple back-and-forth emails; likely FOIL production logistics; subject/body redacted. |
| 07/03/2025 | 47–48; 98; 302–305; 511 | Ali Whalen / Nina Kellogg ↔ Eric Gordon | "00242 Hammer FOIL … prosecutor info / legal contracts" (partly visible in your notes) | You flagged: **fully redacted email (p47–48)** despite timing near SDNY MTD filing (7/11/25). Attachments referenced but not supplied. |
| 07/07/2025 | 49; 307–308 | Eric Gordon ↔ Ali Whalen (CC Nina Kellogg) | Redacted | Completely redacted. |
| 07/11/2025 | 99; 729 | Eric Gordon → Ali Whalen (forwarded to Matt Mauer); Ellen Calves ↔ Eric Gordon/Ali Whalen | "Hammer FOIL request 2020-500205" (per your notes) | Forwarded body redacted; "compiled responsive documents" attachment not supplied; supervisor chain also redacted. |
| 07/14/2025 | 99; 504–505 | Ali Whalen → Matt Mauer (FOIL) | "Hammer FOIL request 2020 500205" | Body redacted; attachments not supplied. |
| 08/15/2025 | 195 | Eric Gordon → Building Dept (Al Seco/Kowalski/Angel/Roberts) | Redacted | Attachments/body redacted. |

| | |
|---|---|
| **From:** | Kowalski, Kim |
| **To:** | Black, Meredith; Lee, Rosemary; Meredith Black; Michaelis, Peter; Roger van Loveren; Spano, Lisa |
| **Subject:** | Confidential Memo from EGordon FW: 146 Goldens Bridge Road - Melanie Hammer |
| **Date:** | Wednesday, November 1, 2023 4:25:19 PM |
| **Attachments:** | ██████████████████████████████████ |

## FYI

*Thank you,*

Kim M. Kowalski
914.864.3732

**From:** Eric L. Gordon <egordon@kblaw.com>
**Sent:** Wednesday, November 1, 2023 2:57 PM
**To:** Kowalski, Kim <kkowalski@bedfordny.gov>; Michaelis, Peter <pmichaelis@bedfordny.gov>
**Cc:** Ciraco, Albert <aciraco@bedfordny.gov>; Youngblood, Jesica <jyoungblood@bedfordny.gov>
**Subject:** ████████████████████

CAUTION: External sender.

Kim and Peter:



Eric
Eric L. Gordon
Principal Member

**KEANE&BEANE**P.C.
ATTORNEYS AT LAW
Multi-Faceted Law Firm  Singular Client Focus

**Serving the Hudson Valley and Beyond for over 40 Years**

445 Hamilton Avenue, Suite 1500
White Plains, NY 10601

(914) 946-4777  Ext: 335
(914) 946-6868 (Fax)
egordon@kblaw.com
www.kblaw.com
Follow us on Twitter
Follow us on Facebook
Follow us on LinkedIn

*12594*

# THE STATE INSURANCE FUND
199 CHURCH STREET   NEW YORK, N.Y. 10007
(212) 312-7627

## CERTIFICATE OF WORKERS' COMPENSATION INSURANCE

AMERICAN PAINTNG &
REFINISHING CORP
3 TRAVIS LANE
MONTROSE        NY   10548

| | |
|---|---|
| POLICY NUMBER | 817 369-2 |
| DATE | 4/29/88 |
| CERTIFICATE NUMBER | 457-542 |

**PERIOD COVERED BY THIS CERTIFICATE**
**10/01/87 TO 10/01/89**

| POLICYHOLDER | CERTIFICATE HOLDER |
|---|---|
| AMERICAN PAINTNG & REFINISHING CORP 3 TRAVIS LANE MONTROSE        NY   10548 | TOWN OF BEDFORD 321 BEDFORD ROAD BEDFORD HILLS    NY   10507 |

THIS IS TO CERTIFY THAT THE POLICYHOLDER NAMED ABOVE IS INSURED WITH THE STATE INSURANCE FUND UNDER POLICY NO. 817 369-2 UNTIL 10/01/89 , COVERING THE ENTIRE OBLIGATION OF THIS POLICYHOLDER FOR WORKERS' COMPENSATION UNDER THE NEW YORK WORKERS' COMPENSATION LAW WITH RESPECT TO ALL OPERATIONS IN THE STATE OF NEW YORK, EXCEPT AS INDICATED BELOW.

IF SAID POLICY IS CANCELLED, OR CHANGED PRIOR TO 10/01/89 IN SUCH MANNER AS TO AFFECT THIS CERTIFICATE, 5 DAYS WRITTEN NOTICE OF SUCH CANCELLATION WILL BE GIVEN TO THE CERTIFICATE HOLDER ABOVE. NOTICE BY REGULAR MAIL SO ADDRESSED SHALL BE SUFFICIENT COMPLIANCE WITH THIS PROVISION.

THIS CERTIFICATE DOES NOT APPLY TO BUILDING DEMOLITION.

THE STATE INSURANCE FUND

*H. Jacobs*

DIRECTOR, INSURANCE FUND UNDERWRITING

A-383

1211





SURVEY OF PROPERTY
PREPARED FOR
VINCENT DE PAUL FARRELL, JR.
&
CLOTILDE B. FARRELL
SITUATED IN THE
TOWN OF BEDFORD
WESTCHESTER COUNTY, N.Y.

A-385

Submit in Duplicate

No. _12594_

☐ New Building
☐ Alteration
☐ Addition
☐ Demolition

## TOWN OF BEDFORD
### TOWN HOUSE, BEDFORD HILLS, NEW YORK
### Application For Building Permit

Date _MAy 5_ , 19 _88_

To the Building Inspector:

Application is hereby made for permission to perform the work in accordance with the plans and specifications herewith submitted and in compliance with the information given below.

It is agreed that if such permission is granted said building will conform in all respects to said plans and specifications and shall comply with all provisions of the local Building Zone Ordinance, and all State and Federal Laws or regulations pertaining in any way thereto.

Attached hereto are duplicate copies of the plot plan showing to scale position of building on the plot.

Owner _Vincent & Clotilde Farrell_  Address _146 Goldens Brdg Rd. Katonah_

Applicant _ " " "_  Address _____

Architect _Michael Farewell Short & Ford Architects_  Address _Box 864 Mapleton Rd. Princeton N.J. 08540_

Builder _____  Address _____

Building is to be located on plot known as No. _146 Goldens Brdg Rd_ Street, Avenue,

Place, on the _WEST_ side thereof, distance from the corner of _Cedac_ Street,

Avenue, Place; Section _2_ Lot _76_ Town of Bedford Assessment Map.

Estimated Cost — $ _40,000_  Air Conditioning Yes ☐  No ☒

Proposed use: _Kitchen Renovation & Bath_

Type of Heating:   ☒ Hot Water   ☐ Electric        ☐ Hot Air        ☐ Solar

Air Conditioning:   ☐ No         ☐ Yes             Amount of square feet _____

TYPE OF STRUCTURE
☐ One Family Dwelling            ☐ Two Family Dwelling          ☐ Multiple Dwelling
   Garage — Attached ☐              Garage ☐                       Garage ☐   No. Units ☐
   Basement ☐                       Basement ☐                     Basement ☐

☐ Detached Residential Garage    ☐ Commercial Building           ☐ Other
                                    Store    ☐    Offices    ☐       Shed           ☐
                                    Garage ☐      Warehouse ☐        Pool           ☐
                                                                     Tennis Court   ☐

ZONING DISTRICT   R-4A   2A  (1A)    ½A    ¼A    TF    VA    Wetlands  Yes ☐
   (Circle)                                                            No ☐
                  CB    NB     LI    FP    PBO   PBR

Number of stories _2_ ; Height _28_ feet.

Front yard _200_ feet.    Rear yard _400 +_ feet.

Side yard _250_ feet one side. Side yard _350_ feet other side.

Type of Construction — Fireproof — Semi-Fireproof — Frame. (Cross out all but one.)

(over)

A-386

**TOWN OF BEDFORD**
**OFFICE OF THE TOWN CLERK**



146 Goldens Bridge Rd
Katonah, NY  10536

**RE:  FOIL Reference # 2025-00484**
    **FOIL Request – Records Reflecting Residential Classification of barn aparment 146 Goldens Bridge**
    **146 Goldens Bridge Rd**

**FREEDOM OF INFORMATION REQUEST NOT FILLED**

01/12/2026

Dear Melanie Hammer, Esq.,

In response to your request on 12/21/2025 for the above records, we could not fill your request due to the following:

There are no documents responsive to this request. There is nothing listing the structure as "residential" in the building department. A permit/co was issued for the 2nd floor of the garage as a "rec room". Parcel history is enclosed.

If you have any questions, or require further information, please do not hesitate to contact me.

Sincerely,

Alexandra Whalen
Records Access Officer
Bedford

A-387

## BY THIS CERTIFICATE OF COMPLIANCE THE

# NEW YORK ELECTRICAL INSPECTION SERVICES, INC.

150 White Plains Road, Suite 104, Tarrytown, NY 10591 · 914-347-4390

### CERTIFIES THAT

22796

**Upon the application of:**
M.J. Electric -
PO BOX 580
BREWSTER, NY, 10509

**Upon premises owned by:**
Vincent Farrell
14 GOLDENS BRIDGE RD
KATONAH, NY, 10536

**Located At:** 146 GOLDENS BRIDGE RD, KATONAH, NY, 10536

| | | |
|---|---|---|
| **Application #: A6464** | **Certificate #: 2055** | **Bldg Dept: Bedford Hills** |
| **Section: 49.7** **Block: 1** | **Lot: 3** | **Permit #: 77-100-483** |

A visual inspection of the electrical system at this premise described as a Residential occupancy, wherein the premises electrical system consisting of electrical devices and wiring, described below, located in/on the premises at:
146 GOLDENS BRIDGE RD, KATONAH, NY, 10536
Floor 2 inspected in accordance with the NYS and NFPA 70-08 and the detail of the installation, as set forth below, was found to be in compliance therewith on the 20 Day of June, 2012.

| Name/Location | Type | Qty | Rating | Circuit |
|---|---|---|---|---|
| Fixture, Garage, Floor 2 | Incandescent | 14 | | |
| Receptacle, Garage, Floor 2 | Convenience | 12 | | |
| Switch, Garage, Floor 2 | A/C | 7 | | |
| Heat, Garage, Floor 2 | BB Up To 1000 Watts | 3 | | |
| Fan, Garage, Floor 2 | Paddle Fan | 2 | | |
| Heat, Garage, Floor 2 | Thermostats Line Voltage | 2 | | |
| Reinspection 6/20/12 | Garage | 1 | | |

RECEIVED
JUN 2 6 2012
Bedford Building Dept.

*D. Morabito*

**Officer: Domenic Morabito**

This certificate may not be altered in any way and is validated only by the presence of a raised seal at the location indicated.
This certificate is valid for work performed before date of inspection only.                4

Wednesday, June 20, 2012                                                                                page 1 of 1

# Certificate of Compliance



**Town of Bedford**
**Building Dept.**
**425 Cherry St.**
**914-666-8040**

**7/11/2014**

**Certificate:** 2014-2034
**Issued:** 7/11/2014

### Building Permit No. 22796

This is to certify that:   **Bevacqua, Peter**
of   **146 Goldens Bridge Rd., Katonah, NY  10536**
having filed on   **7/11/2014**                              Application No.   **2014-2034**
for a Certificate of Occupancy applying to premises located at   **146 Goldens Bridge Rd**
**Katonah, NY  10536**                              being Section, Block and Lot   **49.7-1-3**
Town of Bedford Assessment map in the   **R-1A**  district as shown on the Town zoning map,
and the application having been approved, authority is hereby given to occupy or use said
premises or building or part thereof for the following purposes:

**Finished recreation room over garage - already built**

**Inspected - 6/4/2014**

_____
**Building Inspector**

A-389

STATE OF NEW YORK
COUNTY OF WESTCHESTER
TOWN OF BEDFORD JUSTICE COURT
--------------------------------------------------------------------- x

PEOPLE OF THE STATE OF NEW YORK

    -against-                                          **CERTIFICATE OF COMPLIANCE**

MELANIE HAMMER                                   Case No. 24090030

              Defendant.
--------------------------------------------------------------------- x

    **ROBERT C. ZITT**, an attorney duly admitted to practice law in the State of New York, hereby affirms the following under the penalties of perjury:

1.        I am an attorney associated with the law firm of Keane & Beane, P.C., attorneys for the Town of Bedford, New York, and as such am responsible for the prosecution of the above-captioned criminal proceeding.

2.        As such, I file this Certificate of Compliance based upon my own personal knowledge of the facts and circumstances of the case, as well as the review of the records maintained in this matter by my Office.

3.        In accordance with the People's obligations under Criminal Procedure Law ("CPL") § 245.20(1), except for any information and material that is the subject of a protective order issued by a Court pursuant to CPL § 245.70 (and former CPL § 240.50), and/or any information that exempt from disclosure by a protective mandate.

4.        If additional discovery is subsequently provided prior to trial, a supplemental Certificate of Compliance shall be served upon the Defendant and filed with the Court identifying that additional information and material provided. *See* CPL § 245.50(2).

5.       CPL § 245.50(1) requires the People to identify the items of discovery provided to the Defendant.

6.       Below is a list of materials and information provided to the Defendant by way of electronic disclosure as of the date of this filing:

   a.   Appellate Division, Second Judicial Department – Record on Appeal, Briefs and Associated Filings[1];

   b.   Supreme Court of the State of New York, Westchester County – Record of Proceedings, Record of Administrative Proceedings, Video, Associated Affidavits, Memoranda of Law, Letter Correspondence, Decision and Order[2];

   c.   Town of Bedford Building Department File

7.       Notwithstanding the absence of any particularized items as set forth herein, the People believe that all reasonable diligence has been exercised and, thus, are in good-faith compliance with our discovery obligations pursuant to CPL § 245.20(1).

8.       The People request that the Defendant fulfill her discovery obligations in accordance with CPL § 245.50(2).

9.       Simultaneously with this submission, the People are filing with this Court and serving upon the Defendant a Statement of Readiness as to all counts charged in the accusatory instrument.

---

[1] The Record on Appeal contains all materials from the lower court proceeding before the Supreme Court of the State of New York, Westchester County.

[2] Materials from the Supreme Court Article 78 Proceeding include materials from the Administrative Record and Town of Bedford Building, Planning, and Zoning Departments.

Dated:   White Plains, New York
         September 18, 2024

**KEANE & BEANE, P.C.**


By:   */s/ Robert C. Zitt*
      Robert C. Zitt
      Attorneys for Town of Bedford
      445 Hamilton Avenue, 15th Floor
      White Plains, New York 10601
      (914) 946-4777
      rzitt@kblaw.com

FILED: WESTCHESTER COUNTY CLERK 01/23/2024 01:44 PM INDEX NO. 71446/2023
NYSCEF DOC. NO. 66 Case 7:25-cv-02618-CS Document 67-13 Filed 01/23/26 Page 1 of 2 RECEIVED NYSCEF: 01/23/2024

Melanie Hammer, Esq.
146 Goldens Bridge Rd
Katonah, NY 10536
melanie@hammer-esq.com
718-757-7677

January 23, 2024

Hon. Judge George E. Fufidio
 Supreme Court of the State Of New York,
Westchester County 111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601

RE: Melanie Hammer v. Town of Bedford New York, et all Index No. 71446/2023 (Sup. Ct
Westchester County) **request for leave for discovery/political favors**

Dear Hon. Judge George E. Fufidio,

I am writing to request leave for limited discovery in this matter. Courts may grant discovery in an article 78 proceeding where it is demonstrated that "the discovery sought [i]s likely to be material and necessary to the prosecution or defense of th[e] proceeding." Stapleton Studios. LLC, 7 A.D.3d at 275. Here, the discovery sought goes to respondent's motive.

The Town/Respondent's zealous denial or the applications at issue makes no sense. Really, the town should not care about this apartment. The town's stated legislative intent is incentivizing the legalizing existing ADUs. The act of interfering with private property rights (as here) is an extreme excess of power.  Petitioner has wondered why?

So why do the respondents refuse such applications and litigate this inoculums issue with such zeal. Why haven't they offered to settle this matter that serves absolutely no public interest?
The answer maybe in Respondent's verified answer. **An email from a VERY politically connected tenant.  This may explain what appears to be a punitive motive.  This is extremely relevant and probative for the prosecution of this proceeding.** See Stapleton Studios. LLC, 7 A.D.3d at 275.

Here Petitioner respectfully requests the following limited discovery:
1.  Disclosure of any and all communications (including emails and phone calls) between the Respondents and Brent Hampton, Jeannine Scarpino, or the Scarpino family.
2.  Full disclosure of the relationships of all respondents and the Scarpino family, i.e. (but not limited to) acquainted, friends, related.

A-393

FILED: WESTCHESTER COUNTY CLERK 01/23/2024 01:44 PM

NYSCEF DOC. NO. 66

INDEX NO. 71446/2023

RECEIVED NYSCEF: 01/23/2024

Case 7:25-cv-02618-CS    Document 67-13    Filed 01/23/26    Page 2 of 2

3. Petitioner specifically request and any all communications and relationship disclosures between Eric Gordon, Albert Ciraco, DOB staff, and the ZBA.

4. **Jeannine Scarpino, in highly politically connected in Westchester as her father, Hon. Anthony Scarpino Jr. is the former District Attorney of Westchester.**

**This newly discovered MAYBE a link to the violations alleged, is highly probative** to the reasons this notice of violation was issued, appeals were ignored, permit denial was made based on inference, and the denial was affirmed by the ZBA. This is highly *probative* as to why Petitioner was denied due process in the form of ANY judicial review. This may even explain why there were so many judicial recusals in this matter.

Wherefore, Petitioner requests leave for discovery.

Sincerely,

Melanie Hammer, Esq.

A-394

**From:** **Melanie Hammer** melanie@hammer-esq.com 📎
**Subject:** Fwd: People of the State of New York v. Melanie Hammer Case No. 24090030 Missing discovery and Brady Material
**Date:** October 22, 2024 at 11:20 AM
**To:** Amy Lefevre alefevre@nycourts.gov, Robert C. Zitt rzitt@kblaw.com



Good morning,

I am resending the email I sent to the Court and the People on 9/20/2024 regarding missing Brady material. See below.

 Please see the attachment marked "proof" attached to shows that the People once again mislead the court regarding the redaction. The court can see that Mr Hampson's email address is not redacted and a second email address is redacted.

I request that the Court inquire as to why the People have repeatedly refused to disclose this material given the request in:
1. The email below on 9/20/2024
2. My emailed to the People on 9/18/2024, and
3. Both motions I submitted to the Court and served on the People.

Additionally, I asked for this information in the underlying article 78 proceeding. The people opposed disclosure.


Melanie Hammer
melanie@hammer-esq.com
(718) 757-7677


CONFIDENTIALITY NOTICE:
The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.


Begin forwarded message:

**From:** Melanie Hammer <melanie@hammer-esq.com>
**Date:** September 20, 2024 at 4:46:39 PM EDT
**To:** "Robert C. Zitt" <rzitt@kblaw.com>, court@bedfordny.gov
**Subject: People of the State of New York v. Melanie Hammer Case No. 24090030 Missing discovery and Brady Material**


Good Afternoon,

I have attached a letter regarding missing discovery and Brady material to this email. I have also enclosed proof of my previous request for this material and the People's Certificate of Compliance. Please let me know if this email is sufficient to "file" these attachments with the court case file or if you want me to bring the documents in personally.

SPECIFICALLY see the attachment named "Brady Proof", there you will see a names redacted and proof that at least one email is missing from page 244. The email would be dated April 14, 2024

**TOWN OF BEDFORD**
**OFFICE OF THE TOWN CLERK**



146 Goldens Bridge Rd
Katonah, NY  10536

**RE:    FOIL Reference #**
**internal writings regarding Melanie Hammer including emails**
**146 Goldens Bridge Rd**

**FREEDOM OF INFORMATION REQUEST RECEIVED**

06/11/2025

Dear Melanie Hammer :

Your FOIL request dated 06/11/2025 was received by the Town of Bedford on 06/11/2025. The information has been reviewed and I anticipate you will be contacted regarding your request on or before 07/09/2025.

Access to the records, in whole or part, will be determined in accordance with Article 89 section 5 of the Freedom of Information Law.

Once the research has been completed, you will be notified of the results of the records search.

Pursuant to FOIL, a fee of $.25 per page for photocopies not exceeding 9'x14' will be charged, unless you choose to have the records emailed to you.

Thank you in advance for your cooperation.  If you have any questions, or require further information, please do not hesitate to contact me.

Sincerely,

_____
Alexandra Whalen
Records Access Officer
Town of Bedford

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM   INDEX NO. 71446/2023
NYSCEF DOC. NO. 47                                      RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS   Document 67-16   Filed 01/23/26   Page 1 of 10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------------ X
MELANIE HAMMER,

        Petitioner,

For a Judgment Pursuant to Article 78 of the
Civil Practice Law and Rules,

        -against-

TOWN OF BEDFORD, NEW YORK, ZONING
BOARD OF APPEALS BEDFORD, NEW YORK,
DEPARTMENT OF BUILDING BEDFORD, NEW
YORK, BUILDING INSPECTOR TOWN OF
BEDFORD NEW YORK, ATTORNEY FOR
TOWN OF BEDFORD, NEW YORK,

        Respondents.
------------------------------------------------------------------------ X

|  |  |
|---|---|
| STATE OF NEW YORK | ) |
|  | ) SS.: |
| COUNTY OF WESTCHESTER | ) |

**AFFIDAVIT OF ALBERTO CIRACO IN OPPOSITION TO ARTICLE 78 PETITION**

Index No. 71446/2023

Assigned to:

Hon. George E. Fufidio, A.J.S.C.

**ALBERTO CIRACO**, being duly sworn, deposes and says:

## I.    **INTRODUCTION**

1.     I am the Building Inspector of the Town of Bedford.

2.     I have served as the Building Inspector for the Town of Bedford since June 2016. Prior to assuming this position, I served as the Director of Code Enforcement for the Village of Ossining for over six years.

3.     I submit this Affirmation in opposition to the Article 78 Proceeding filed by Petitioner, Melanie Hammer ("Petitioner") and in support of the request by Respondents, the Town of Bedford (the "Town"), New York, the Zoning Board of Appeals for the Town of Bedford (the "Zoning Board"), the Building Department for the Town of Bedford ("Building Department"), the Building Inspector for the Town of Bedford ("Building Inspector"), and the Attorney for the Town of Bedford, named in their official capacities only (collectively, the

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM INDEX NO. 71446/2023
NYSCEF DOC. NO. 47 RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS    Document 67-16    Filed 01/23/26    Page 2 of 10

"Respondents") to deny the Petition as to all claims against all Respondents and dismiss the Petition in its entirety, together with the issuance of such other and further relief as this Court deems just and proper under the circumstances.

4.    In my position as the Building Inspector I am responsible, for among other things, reviewing all building permit and related applications submitted to the Building Department to ensure they comply with all state and local building codes and zoning regulations. I am also responsible for ensuring that property owners in the Town are in compliance with the state and local building codes and zoning regulations and for issuing violations when property owners are determined not be in compliance with such state and local building codes and zoning regulations.

5.    I am familiar with the facts and circumstances presented herein through my personal knowledge, discussions with Town staff and my review of relevant documents and records.

## II.    BACKGROUND

### A.    The Discovery Of The Illegal Apartment

6.    Petitioner is the owner of real property located at 146 Goldens Bridge Road, Katonah, New York, as more fully described on the Town of Bedford Tax Map Section 49.7, Block 1, Lot 3 ("Subject Property").

7.    The Subject Property is a single lot that consists of approximately twelve (12) acres and is situated in the Town's R-1A (one acre) Zoning District.

8.    Currently existing on the Subject Property is a principal residence which, upon information and belief, Petitioner occupies, a pre-existing non-conforming standalone cottage which, upon information and belief is also occupied as a residence, and a standalone accessory garage structure, which is the subject of the claims in this proceeding.

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM       INDEX NO. 71446/2023
NYSCEF DOC. NO. 47    Case 7:25-cv-02618-CS    Document 67-16    Filed 01/23/26    Page 3 of 10    RECEIVED NYSCEF: 12/27/2023

9.      On July 11, 2014, a Certificate of Compliance was issued for a "recreation room over garage" with respect to the standalone garage structure on the Subject Property. (A copy of the Certificate of Compliance dated July 11, 2014, for a "recreation room over garage", is attached hereto as Exhibit "A").

10.     On or about April 19, 2023, the Building Department was contacted by a person who identified themselves as a "tenant living in [an] apartment over garage" who stated that there was no permit for the apartment on the second floor of the garage and that it is "not legal". (*See* Complaint Action Summary form dated April 19, 2023, attached hereto as Exhibit "B")

11.     The Town Code Enforcement Officer later informed me that he had learned based on emails received by the Building Department that the person making this complaint is or was a former tenant that had been residing in the illegal apartment over the standalone garage structure, but due to a dispute with Petitioner, had reported that there was an illegal apartment on the Subject Property. (A copy of the emails to the Building Department from the former tenant who was residing in the illegal apartment are attached hereto as Exhibit "C").

12.     After the complaint was made, I instructed the Town Code Enforcement Officer to visit the Subject Property to inspect the second floor of the standalone garage structure.

13.     On or about April 27, 2023, the Town Code Enforcement Officer, with the current tenant's permission, inspected the standalone garage structure and observed that the recreation space on the second floor had been renovated to install: (i) several walls creating two bedrooms; (ii) a kitchen area with a sink, stove and refrigerator; and (iii) full bathroom with a toilet, sink and shower. (Photographs from the inspection are attached hereto as Exhibit "D").

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM INDEX NO. 71446/2023

NYSCEF DOC. NO. 47 Case 7:25-cv-02618-CS Document 67-16 Filed 01/23/26 Page 4 of 10 RECEIVED NYSCEF: 12/27/2023

14. The Town Code Enforcement Officer determined that based on his personal observations, the space on the second floor of the standalone garage structure had been modified and was now being used as a residential apartment.

15. Previously, when the Certificate of Compliance was issued in July 2014, the space in question had been approved as a single open room with no kitchen, plumbing, shower or bedrooms. Therefore, the second floor of the standalone garage structure was modified sometime after July 2014 to install the residential apartment.

16. On or about April 27, 2023, Petitioner was issued Notice(s) of Violation ("Violation") concerning the Subject Property, a **clean** copy of which is annexed to the Certified Record of Proceedings ("CR") as Exhibit "1".[1]

17. As more fully set forth in the Violation, the Town Code Enforcement Officer observed the residential apartment on the second story of the standalone garage structure at the Subject Property, including a kitchen, full bathroom and bedrooms, which residential apartment was constructed without any required applications having been submitted to the Town of Bedford Building Department or permits being issued. *Id.*

18. A review of the Building Department's files for the Subject Property confirms that no building permit was ever issued for the conversion of the second floor of the standalone garage structure to a residential apartment.

19. Following the issuance of the Violation, Petitioner was advised to either (a) remove the illegal residential apartment use, including any electrical and plumbing improvements made

---

[1] This Violation is also annexed to the Petition as Exhibit "D". Petitioner's Exhibit "D", however, contains handwritten notes which were *not* made by the Town or any Town official. It appears that the notes indicate what Petitioner believes to be necessary to remedy the violation.

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM INDEX NO. 71446/2023
NYSCEF DOC. NO. 47 RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS    Document 67-16    Filed 01/23/26    Page 5 of 10

therein, or (b) legalize such improvements by, among other things, submitting a building permit application for administrative review. *Id.*

**B.    Petitioner's Applications**

20.    After the issuance of the Violation, Petitioner contacted me personally, as well as various other Building Department personnel, to discuss how to resolve the Violation.

21.    I am aware that in or about June and July, 2023, Petitioner submitted applications to the Zoning Board and Planning Board requesting, among other things, a Special Use Permit to allow an accessory apartment pursuant to Zoning Code §125-79. My understanding is that such applications were determined to be incomplete and improper.

22.    I am also informed and believe that at some point Petitioner withdrew the applications filed in June and July, 2023.

23.    On July 10, 2023, Petitioner submitted an application to the Building Department seeking to "revert back to recreation room & remove the deck". A copy of the application submitted to the Building Department on July 10, 2023, is attached hereto to the CR as Exhibit "2".

24.    Petitioner later advised me that she was not going to take the steps needed to restore the second floor of the standalone garage to its original status as a recreation room and instead, had determined that she wanted to take steps to legalize the residential apartment use.

25.    On September 7, 2023, Petitioner submitted an application for a building permit to legalize the residential use on the second floor of the standalone garage structure. (A copy of the September 7, 2023 application is attached to the CR as Exhibit "3").

26.    On September 22, 2023, after consulting with the Town Attorney, I issued a letter of denial ("Denial Letter") rejecting the Petitioner's attempt to legalize the residential apartment

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM       INDEX NO. 71446/2023
NYSCEF DOC. NO. 47                                         RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS    Document 67-16    Filed 01/23/26    Page 6 of 10

on various grounds. (A copy of the September 22, 2023 Denial Letter is annexed to the CR as Exhibit "4". *See also* NYSCEF Doc. No. 4).

27. In the Denial Letter, I stated that I considered the illegal residential apartment to be a "Cottage", as defined in § 125-3 of the Town of Bedford Zoning Code ("Zoning Code") because the standalone garage structure had been improved through the installation of a full bathroom, kitchen, and living area, among other things, without obtaining the appropriate municipal approvals. *Id.*

28. I further stated in the Denial Letter that a Cottage is not a permitted use in the R-1A zoning district in which the Subject Property was situated and, accordingly, required a use variance from the Town's Zoning Board of Appeals. *Id.*[2]

29. As a result, Petitioner was advised to proceed to the Zoning Board of Appeals if she disagreed with the determination in the Denial Letter or wanted to seek to obtain a use variance. *Id.*

**C.     Petitioner's Appeal to the Zoning Board of Appeals**

30. On October 4, 2023, Petitioner applied to the Zoning Board of Appeals seeking, among other things, (a) dismissal of her Violations for the illegal apartment; (b) a "request for variance for a customary home occupation/permit"; and (c) a request for an interpretation/reversal of the Building Inspector's Denial Letter. (A copy of the October 4, 2023 application is annexed to the CR as Exhibit "5").

---

[2] The Denial Letter also observed that the Petitioner already had a pre-existing non-conforming cottage at the Subject Property that was in place prior to the zoning restrictions on cottages set forth in Zoning Code §125-79.A. No more than one cottage per lot is permitted pursuant to Zoning Code §125-79.1.A(4). Thus, even if the Cottage in question was permitted in an R-1A, which it is not, it would be considered a second Cottage on one lot that is not permitted.

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM
NYSCEF DOC. NO. 47

INDEX NO. 71446/2023

RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS     Document 67-16     Filed 01/23/26     Page 7 of 10

31.     The Zoning Board opened and closed the public hearing on Petitioner's application on November 2, 2023, after having taken comment from the Petitioner and discussing Petitioner's application in detail.

32.     The Zoning Board affirmed my determination as set forth in the Denial Letter and rejected Petitioner's arguments for a variety of reasons and also denied Petitioner's request for a use variance on the grounds that Petitioner had failed to satisfy the requirements for a use variance set forth in Zoning Code §129.C(2)(a).  (*See* minutes from the November 2, 2023 meeting, filed on November 30, 2023 attached to the CR as Exhibit "7".

33.     On December 7, 2023, the Zoning Board adopted a written Resolution confirming and supplementing the determinations made during the meeting on November 2, 2023.  (A copy of the Resolution adopted on December 7, 2023, and filed on December 8, 2023, is attached to the CR as Exhibit "8").

34.     As set forth in detail in the minutes from the November 2, 2023 meeting and the December 7, 2023 Resolution, the Zoning Board affirmed my determination in the Denial Letter that the residence on the second story of the garage was not permitted without a use variance and rejected each of the Applicant's arguments made in Petitioner's October 4, 2023 application.  (*See* Resolution, CR, Exhibit "8", pp. 1-5).

35.     The Zoning Board also rejected the Applicant's request for a use variance finding that the Applicant had not demonstrated by competent financial evidence that she could not realize a reasonable return by utilizing the Subject Property as a single family residence.  (*See* Resolution, CR, Exhibit "8", pp. 6).

36.     The Zoning Board further found the applicant failed to demonstrate any financial hardship because the Petitioner had failed to provide any records or other documentation attesting

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM
NYSCEF DOC. NO. 47

INDEX NO. 71446/2023
RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS    Document 67-16    Filed 01/23/26    Page 8 of 10

to such even though she was given an opportunity to adjourn the hearing and present such evidence at a later date. *Id.*

37.     The Zoning Board also concluded that Petitioner had failed to establish that the alleged hardship of having to remove the residential apartment use from the garage is unique and does not apply to substantial portion of district or neighborhood. *Id.*

**D.     The Article 78 Petition**

38.     Petitioner commenced the instant proceeding on November 29, 2023, based on the decision rendered by the Zoning Board November 2, 2023.

39.     I have reviewed Exhibit "E" attached to the Petition which Petitioner contends is "proof created by architect Patrick Croke" that the standalone garage structure rests on its own buildable one acre lot. Petition, ¶ 8.  First, Exhibit "E" was never submitted to the Zoning Board as part of the Petitioner's application.  Therefore, the Zoning Board could not have considered it in making its determination.

40.     While Petitioner did submit a survey with her application filed with the Zoning Board (*see* CR, Exhibit "5", p. 13), that survey did not include a shaded area that supposedly is a buildable one-acre lot.

41.     Furthermore, there is no indication on Exhibit "E" that was submitted with the Petition that Patrick Croke created the shaded area, nor is there any official stamp from Mr. Croke indicating that he placed the shaded area on the document submitted as Exhibit "E".

42.     More importantly, the shaded area supposedly showing the buildable one-acre lot is clearly not zoning compliant.  There is no zoning compliance table setting forth the size of the supposed lot, or the setbacks from the lot lines or the total coverage.  Without confirmation included in a zoning table confirmed by an architect or engineer, there is no way to conclude that

-8-
A-404

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM INDEX NO. 71446/2023
NYSCEF DOC. NO. 47 Case 7:25-cv-02618-CS Document 67-16 Filed 01/23/26 Page 9 of 10 RECEIVED NYSCEF: 12/27/2023

what has been proposed is a zoning compliant buildable lot that would allow the placement of another residence on the Subject Property. (*See* Zoning Code § 235-12.A)

43. Furthermore, based on a simple visual observation of the shaded area on the survey it is clear that the setbacks from the lot lines are not zoning compliant and that what is shown is not a zoning compliant buildable lot.

### III. CONCLUSION

44. For the reasons set forth herein and the accompanying Affidavits and Memorandum of Law, my determination that the residential apartment on the second floor of the standalone garage structure was properly affirmed by the Zoning Board of appeals. Thus, without a use variance, the residential use of the second floor of the standalone garage structure is illegal and prohibited.

45. Furthermore, the Zoning Board also correctly denied Petitioner's request for a use variance because she failed to submit the information required to satisfy the stringent standards required for the issuance of a use variance.

**WHEREFORE**, it is respectfully requested that the Petition be dismissed in its entirety, that the Court deny all relief requested in the Proposed Order submitted with the Petition, and that the Court grant such further relief as it deems just and proper.

ALBERTO CIRACO

Sworn to before me this
26th day of December 2023

Notary Public

ERIC GORDON
Notary Public, State of New York
No. 02GO6032250
Qualified in Westchester County
Commission Expires October 25, 2025

-9-
A-405

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM INDEX NO. 71446/2023
NYSCEF DOC. NO. 47 RECEIVED NYSCEF: 12/27/2023

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with 22 NYCRR § 202.8-b, I hereby certify that the foregoing Affidavit in

Opposition was prepared using a proportionally spaced typeface as follows:

| | |
|---|---|
| Name of typeface: | Times New Roman |
| Point size: | 12 |
| Line spacing: | double |

Word count: The total number of words in this Affidavit of Alberto Ciraco in Opposition to Article

78 Petition, inclusive of point headings and footnotes and exclusive of signature blocks, pages,

certificate of compliance, or any authorized addendum containing statutes, rules, regulations, etc.,

is 2656.

Dated:    White Plains, New York
          December 21, 2023


                              **KEANE & BEANE, P.C.**


                    By:    /s/ Robert C. Zitt_____
                           Robert C. Zitt
                           Attorneys for Town Respondents
                           445 Hamilton Avenue, 15th Floor
                           White Plains, New York 10601
                           (914) 946-4777
                           rzitt@kblaw.com

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM
NYSCEF DOC. NO. 38

INDEX NO. 71446/2023
RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS     Document 67-17     Filed 01/23/26     Page 1 of 4

# EXHIBIT 1

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM
NYSCEF DOC. NO. 38

INDEX NO. 71446/2023

RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS    Document 67-17    Filed 01/23/26    Page 2 of 4



Town of Bedford
Building and Code Enforcement
425 Cherry St. Bedford Hills, NY 10507
Phone: 914-666-8040  Email: buildinginsp@bedfordny.gov

Alberto Ciraco, Building Inspector
John Winter, Asst. Building Inspector
Angel Oya, Code Enforcement Officer

Donna M. Monaco, Sr. Office Assist.
Kim Kowalski, Sr. Office Assist.
Michael Repp, Deputy Fire Inspector

**NOTICE OF VIOLATION:** 4/27/2023          **ADDRESS:** 146 Goldens Bridge Rd

Hammer, Melanie
146 Goldens Bridge Rd
Katonah, NY 10536
SBL: 49.7-1-3 Zoned: R-A1

Dear Hammer, Melanie

I am writing this letter to notify you of the Code Violations observed at 49.7-1-3 on April 27, 2023 and remains in place.  Description (facts) of code violations witnessed along with Code sections will be listed below. Please be advised that you will have thirty (30) days from the date on this letter to take the necessary steps to cure these Code Violations. Failure to do so will result in the issuance of an appearance ticket with each subsequent day after the 30 days constituting a new count for each Code Violation. Should you have any questions or concerns please feel free to contact the Building Department.

**One (1) Count of Violating the Code of the Town of Bedford** *Chapter 59. Fire Prevention and Building Code, Uniform § 59-8. Building permit required.*
**Fact:** Witnessed an apartment with new walls has being built without a Building permit.

**Two (2) Counts of Violating the Code of the Town of Bedford -** *Chapter 89: Plumbing*
**Fact:** Witnessed a working bathroom and kitchen has being installed without a plumbing permit.

**Three (1) Count of Violating the Code of the Town of Bedford of Bedford -** *Chapter 52: Electrical Inspections*
**Fact:** Witnessed electrical service supplying electric to the illegal apartment without an electrical permit.

**Four (1) Count of Violating the Code of the Town of Bedford** *Chapter 52: Electrical Inspections*
**Fact** Witnessed that electrical work has being perform without permit.

**Five (1) Count of Violating the Code of the Town of Bedford** *Chapter 52: Electrical Inspections*
**Fact:** Witnessed Electrical connections and use without a Certificate of Compliance.

A-408

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM
NYSCEF DOC. NO. 38

INDEX NO. 71446/2023

RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS     Document 67-17     Filed 01/23/26     Page 3 of 4

**Six (2) Counts of Violating the.** *International Fire Code Section 915.1. Carbon Monoxide detectors required.*
**Fact: Witnessed that the Carbon monoxide/ smoke detectors units were missing.**

**Seven (1) Counts of Violating the Code of the Town of Bedford.** *Chapter 125-12 Lots.*
**Fact: Witnessed the use of a Barn as rental not meeting the Town Code.**

Every building hereafter erected shall be located on a lot, as herein defined. There shall be not more than one main building and its accessory buildings on each minimum size lot, except for nonresidential buildings in districts where such uses are permitted. On one undivided parcel of land in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted; provided, however, that, in each such instance, all main and accessory buildings must conform to all lot requirements established hereunder the same as if such buildings were placed on two separate and independent parcels of land.

**Corrective Action Required:** You shall either need to remove said apartment and all electrical & plumbing piping and devices or need to legalize said structures by completing & submitting a full Building permit application with 3-sets of drawings stamped and signed by a NYS registered design professional along with a survey showing compliance with all zoning table of dimensional requirements for a R zone district to the Building department for review. Once the permit is issued, a Westchester licensed electrician & plumber shall need to file their respective permit applications with the Building department under the Building permit number.

**Angel Oya**
**Code Enforcement Officer**

A-409

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM
INDEX NO. 71446/2023
NYSCEF DOC. NO. 38
RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS   Document 67-17   Filed 01/23/26   Page 4 of 4



Town of Bedford
Building and Code Enforcement
425 Cherry St. Bedford Hills, NY 10507
Phone: 914-666-8040  Email: buildinginsp@bedfordny.gov

Alberto Ciraco, Building Inspector
John Winter, Asst. Building Inspector
Angel Oya, Code Enforcement Officer

Donna M. Monaco, Sr. Office Assist.
Kim Kowalski, Sr. Office Assist.
Michael Repp, Deputy Fire Inspector

**NOTICE OF VIOLATION:** 4/27/2023          **ADDRESS:** 146 Goldens Bridge Rd

Hammer, Melanie
146 Goldens Bridge Rd
Katonah, NY 10536
SBL: 49.7-1-3 Zoned:

Dear Hammer, Melanie

I am writing this letter to notify you of the Code Violations observed at 49.7-1-3 on April 19, 2023 and remains in place. Description (facts) of code violations witnessed along with Code sections will be listed below. Please be advised that you will have thirty (30) days from the date on this letter to take the necessary steps to cure these Code Violations. Failure to do so will result in the issuance of an appearance ticket with each subsequent day after the 30 days constituting a new count for each Code Violation. Should you have any questions or concerns please feel free to contact the Building Department.

### (1) Count of Violating the Code of the Town of Bedford Code

*125-125(B) Building without a permit - 125-125 (B) No building or structure shall be erected, constructed, enlarged, altered, structurally altered, moved or excavation made therefor or work begun thereon until a building permit therefor has been issued by*

**Fact: 125-125 (B) No building or structure shall be erected, constructed, enlarged, altered, structurally altered, moved or excavation made therefor or work begun thereon until a building permit therefor has been issued by the Building Inspector.**

<u>Corrective Action Required:</u> **You must apply for building permit with the assistance of a New York State license professional.**

Angel Oya
Code Enforcement Officer

A-410

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:06 PM    INDEX NO. 71446/2023
NYSCEF DOC. NO. 4                                      RECEIVED NYSCEF: 11/29/2023



**Town of Bedford**
**Building Department**

LETTER OF BUILDING PERMIT DENIAL

PARCEL ID: 49.7-1-3

09/22/2023

**Owner Information:**
Hammer, Melanie
146 Goldens Bridge Rd
Katonah, NY 10536

**Applicant Information:**
Hammer, Melanie
146 Goldens Bridge Rd
Katonah, NY 10536

Location: 146 Goldens Bridge Rd
Zoning District: R-1A
Permit Type: Building Permit Cottage/Accessory Apartment
Work Description: Legalize apartment in an accessory structure and attached deck.

Dear Ms. Hammer,

Regarding the application you filed on September 7, 2023 for a Building Permit to construct a new deck to an existing garage and to legalize a "garage apartment", the following facts are noted: The "garage apartment" would be considered a "Cottage" as defined in Town Zoning Code, Chapter 125, Article 1, Section 125-3. The Cottage was created through the installation of a bathroom, kitchen and creation of a living area without obtaining required approvals from the Town. The application seeks the legalization of a Cottage where a Cottage is not permitted in the Residential One-Acre Zoning District pursuant to Chapter 125, Article VIII, Section 125-79.1.A. In addition, a legal, main dwelling and a legal, pre-existing non-conforming cottage already exists in the Residential One-Acre Zoning District and no more than one cottage may be permitted on any property. Article VIII, Section 125-79.1.A(4). As a result, a use variance pursuant to Chapter 125, Article XII, Section 125-129.C(2)(a)

*Your application for a building permit is DENIED, your project does not meet the requirements of the Town of Bedford Zoning Ordinance. To proceed with your project, please submit a complete application to the Zoning Board of Appeals to address the deficiencies as described above.*

Al Ciraco, Building Inspector

425 Cherry Street, Bedford Hills, NY 10507 - 914.666.8040 – Building@BedfordNY.Gov

A-411

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM

INDEX NO. 71446/2023

Case 7:25-cv-02618-CS    Document 67-19    Filed 01/23/26    Page 1 of 8

NYSCEF DOC. NO. 45

RECEIVED NYSCEF: 12/27/2023

# EXHIBIT 8

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM INDEX NO. 71446/2023
NYSCEF DOC. NO. 45    Case 7:25-cv-02618-CS    Document 67-19    Filed 01/23/26    Page 2 of 8    RECEIVED NYSCEF: 12/27/2023

RECEIVED

DEC - 8 2023

**Westchester County, New York**
**Town of Bedford**

LISBETH FUMAGALLI, TOWN CLERK
TOWN OF BEDFORD, NEW YORK

**ZONING BOARD OF APPEALS**

**Resolution #11-23 Two**
**Appeal of Building Inspector's Determination Denying**
**Application to Legalize the Conversion of a Second Floor**
**Recreation Room of a Legal Garage into a Cottage and**
**Request for Use Variance**

**Melanie Hammer**
**146 Goldens Bridge Road, Katonah**
**Section-Block-Lot: 49.7-1-3**

At the Board of Appeals meeting dated December 7, 2023, the following motion was made by Ms. Lee and seconded by Mrs. Spano:

**WHEREAS**, the applicant, Melanie Hammer ("Applicant"), is the owner of property located at 146 Goldens Bridge Road, Katonah, New York, as described on the Town of Bedford Tax Map as Lot 49.7-1-3 (the "Property"); and

**WHEREAS**, the Property is located in the R-1A (one acre) Zoning District; and

**WHEREAS**, on April 27, 2023, the Town of Bedford issued a Notice of Violation with respect to violations on the Property concerning, among other things, the unauthorized conversion of a second floor recreation room in a legally existing garage into an apartment based upon the failure to obtain appropriate building permits and based on a violation of Town Code Chapter 125-12, which states that there shall not be more than one main building and its accessory buildings on each minimum size lots; and

**WHEREAS**, on July 6, 2023, as revised September 7, 2023, the Applicant filed a building permit application seeking to allow the conversion of a legal garage second floor recreation room into a cottage and deck (the "Building Permit Application") on the Property; and

**WHEREAS**, on September 22, 2023, the Building Inspector issued a Letter of Building Permit Denial, with respect to the Building Permit Application stating pursuant to Section 125-79.1.A of the Town Code a cottage is not permitted in the R-1A Zoning District (the "Building Permit Denial"), and

**WHEREAS**, the Building Permit Denial states in full as follows:

> Regarding the application you filed on September 7, 2023, for a Building Permit to construct a new deck to an existing garage and to legalize a "garage apartment", the following facts are noted: The "garage apartment" would be considered a "Cottage" as defined in Town Zoning Code, Chapter 125, Article 1, Section 125-3. The Cottage was created through the installation of a bathroom, kitchen and creation of a living area without obtaining

ZBA Res. #11-23 Two    Hammer – 146 Goldens Bridge Rd - Legalize Garage 2nd Flr Rec Rm to Cottage    Page 1 of 7

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM INDEX NO. 71446/2023
NYSCEF DOC. NO. 45 Case 7:25-cv-02618-CS Document 67-19 Filed 01/23/26 Page 3 of 8 RECEIVED NYSCEF: 12/27/2023

required approvals from the Town. The application seeks the legalization of a Cottage where a Cottage is not permitted in the Residential One-Acre Zoning District pursuant to Chapter 125, Article VIII, Section 125-79.1.A. In addition, a legal, main dwelling and a legal, pre-existing non-conforming cottage already exists in the Residential One Acre Zoning District and no more than one cottage may be permitted on any property. Article VIII, Section 125-79.1.A(4). As a result, a use variance pursuant to Chapter 125, Article XII, Section 125-129.C(2)(a) [is required].

**WHEREAS**, on October 4, 2023, the Applicant submitted an application to the Zoning Board of Appeals ("Zoning Board") appealing the Building Permit Denial and seeking to legalize the conversion of a legal garage with second floor recreation room into an apartment where a legal, main dwelling and a legal, pre-existing, nonconforming cottage already exist in the R 1-A Zoning District (the "Application"); and

**WHEREAS**, the Application first sought the dismissal of the Notice of Violations issued by the Building Department on April 27, 2023; and

**WHEREAS**, this Board of Appeals does not have jurisdiction to dismiss any counts set forth in the Notice of Violations, which may only be determined by the Town Justice Court to the extent the instant Application does not overturn the Building Inspector's Denial of the Building Permit Application; and

**WHEREAS**, the Application also requested an interpretation pursuant to Chapter 125, Article III, Section 129.C(1)(b), from the Building Inspector's Building Permit Denial, that a cottage is not permitted in a R-1A Zoning District pursuant to Chapter 125, Article VIII, Section 125-79.1.A,

**WHEREAS**, the Application also sought variances from Chapter 125, Article VIII, Section 79.1.A, regarding cottages and from Chapter 125, Article III, Section 28 regarding customary home occupations; and

**WHEREAS**, the Application also sought an "interpretation" regarding the applicability of Chapter 125, Article VIII, Section 79.1, and whether the proposed residential use of the second floor of the garage should be considered a legally existing apartment; and

**WHEREAS**, a public hearing was held with regard to the Application on November 2, 2023, at which time all those present wishing to speak were given an opportunity to be heard; and

**WHEREAS**, the public hearing was closed on November 2, 2023, and no members of the public, other than the Applicant, spoke with respect to this matter; and

**WHEREAS**, all members of the Board of Appeals had the opportunity to inspect the Property and several members inspected the property in person; and

**WHEREAS**, the Board of Appeals has reviewed all documents submitted and has carefully considered all testimony provided by the Applicant in support of the Application; and

**WHEREAS**, after hearing from the Applicant and discussing the Application in detail, the Board of Appeals makes the following findings of fact and conclusions with respect to the request to overturn the Building Permit Denial:

ZBA Res. #11-23 Two      Hammer – 146 Goldens Bridge Rd - Legalize Garage 2nd Flr Rec Rm to Cottage      Page 2 of 7

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM
NYSCEF DOC. NO. 45

INDEX NO. 71446/2023
RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS     Document 67-19     Filed 01/23/26     Page 4 of 8

- A customary home occupation special use permit pursuant to Town Code §125-28.A of the Code of the Town of Bedford is under the purview of the Town of Bedford Planning Board.

- To the extent the Application seeks approval of a customary home occupation special use permit, such application must be made to the Town of Bedford Planning Board.

- Furthermore, Town Code §125-3 defines "Customary Home Occupation" as follows:

  A. An occupation of a service character accessory to and customarily conducted entirely within a lot by the residents thereof, which use is incidental and secondary to the use of the lot for residential purposes, does not change the character thereof, does not have any exterior evidence of such accessory use and does not involve the keeping of a stock in trade.

  B. Occupations which are carried on by a single individual which involve no more than five visitors and three deliveries per day to the lot are exempt from the requirements set forth in §125-28, provided they meet all the Town building and zoning criteria.

- Based on the foregoing definition set forth in Section 125-3, the proposed residential apartment use in the garage accessory structure would not be permitted as a "Customary Home Occupation" because it is not an "occupation of a service character accessory to and customarily conducted entirely within a lot by the residents thereof, which use is incidental and secondary to the use of the lot for residential purposes".

- To the extent the Applicant asserts that the apartment use over the garage is a pre-existing, legal non-conforming use because the garage structure on the Property pre-dates the existing Town of Bedford Zoning Code, it is undisputed that the residential apartment use itself in the garage structure has only existed for approximately 10 years.

- It is also undisputed that the most recent application that was filed regarding the second floor of the garage was to convert the second floor space in the garage to a recreation room, not a residential apartment, which application was filed in 2012 and a Certificate of Occupancy was issued for the recreational use on July 11, 2014.

- At some point in time after the recreational space was created on the second floor, the second floor of the garage was converted to a residential apartment use without an application for the required building permits being filed.

- Therefore, any claim that the apartment use should be allowed as a preexisting nonconforming legal use, must be rejected.

ZBA Res. #11-23 Two     Hammer – 146 Goldens Bridge Rd - Legalize Garage 2nd Flr Rec Rm to Cottage     Page 3 of 7

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM

NYSCEF DOC. NO. 45

INDEX NO. 71446/2023

RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS    Document 67-19    Filed 01/23/26    Page 5 of 8

- The Applicant's next claim, that the restriction in Town Code §125-12 limiting the types of main buildings on a single lot, does not apply because the Property is twelve (12) acres in size has existed without objection for many years, also has no merit.

- Section 125-12 expressly states that "[t]here shall be not more than one main building and its accessory buildings on each minimum size lot, except for nonresidential buildings in districts where such uses are permitted."

- Based on this provision, the Applicant may not have more than one main building with a residential use on the Property, except as allowed elsewhere in the Town Zoning Code.

- The inclusion of a residential apartment use on the second floor of the garage is not permitted under Section 125-12 because it creates a second main building with a residential use on a single lot.

- The Applicant has also failed to establish that the Property satisfies the provision in Section 125-12, which states as follows:

    On one undivided parcel of land in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted; provided, however, that, in each such instance, all main and accessory buildings must conform to all lot requirements established hereunder the same as if such buildings were placed on two separate and independent parcels of land.

- The Applicant failed to submit a proposed plan and zoning table showing that each of the buildings on the Property would conform with all lot requirements if the buildings were placed on two separate and independent parcels of land.

- The plan submitted in support of the instant Application does not demonstrate that the existing residence, pre-existing, non-conforming cottage and proposed residential apartment over the garage would be fully conforming to all existing zoning requirements in the event the buildings were placed on separate and independent parcels of land as required under Section 125-12.

- Until such time as a plan showing such conformity with all existing zoning requirements is presented, there cannot be compliance with Section 125-12.

- To the extent the Applicant asserts that the Property complies with the spirit of Town Code §125-79, which relates to "Accessory Apartments", such argument must be rejected.

- The apartment in question cannot be considered an "Accessory Apartment" that is permitted pursuant to Town Code §125-79, because an Accessory Apartment must be located "in an existing single-family dwelling, but not in an accessory structure". Town Code §125-79.B.

ZBA Res. #11-23 Two    Hammer – 146 Goldens Bridge Rd - Legalize Garage 2nd Flr Rec Rm to Cottage    Page 4 of 7

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM
NYSCEF DOC. NO. 45

INDEX NO. 71446/2023

RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS    Document 67-19    Filed 01/23/26    Page 6 of 8

- In this case, the apartment in question is located in an accessory structure (the garage) and would be considered a "Cottage" use which is governed by Town Code §125-79.1. As a result, Section 125-79 is not applicable.

- The Application also seeks an "interpretation" that Town Code §125-79.1 concerning "Cottages" is not applicable and that a Cottage is permitted in the R-1A Zoning District.

- Section 125-79.1.A states that "In the R-2A and R-4A [Zoning] Districts, the Planning Board may grant a special permit to create a cottage in an existing accessory building." Thus, it is the Board of Appeals' determination that Cottages are not permitted in the R-1A Zoning District. Any argument that the failure to expressly exclude Cottages in the R-1A Zoning District makes Cottages a permitted use in the R-1A Zoning District is illogical and is rejected.

- In addition, even if cottages were permitted in the R-1A Zoning District, Section 125-79.1.A(4) states that "[t]here shall be no more than one cottage or accessory apartment per lot."

- Thus, because the Applicant already has a preexisting, nonconforming cottage on the Property, a second cottage would be prohibited, even if cottages were permitted in an R-1A zoning district.

**WHEREAS**, the Applicant further asserted that, to the extent the Board of Appeals decides to uphold the Building Permit Denial, that she was also seeking a use variance pursuant to Town Code §129.C(2)(a), to allow the residential apartment use on the Property as a Cottage; and

**WHEREAS**, during the hearing, the Applicant was expressly advised that the Board of Appeals would delay issuing a determination with respect to the request for a use variance to allow the Applicant to submit additional evidence in support of the use variance, including but not limited to financial evidence to establish that the Applicant cannot realize a reasonable return on the Property without the residential apartment use on the second floor of the garage; and

**WHEREAS**, during the hearing the Applicant expressly stated that she did not want to delay the hearing to present additional evidence and that she was requesting a determination with respect to the use variance; and

**WHEREAS**, the Board of Appeals considered the following factors in determining whether the use variance should be granted:

> No such use variance shall be granted by a Board of Appeals without a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship. In order to prove such unnecessary hardship, the applicant shall demonstrate to the Board of Appeals that for each and every permitted use under the zoning regulations for the particular district where the property is located:
>
> [a] The applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence;

ZBA Res. #11-23 Two     Hammer – 146 Goldens Bridge Rd - Legalize Garage 2nd Flr Rec Rm to Cottage     Page 5 of 7

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM INDEX NO. 71446/2023

NYSCEF DOC. NO. 45 RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS    Document 67-19    Filed 01/23/26    Page 7 of 8

[b] The alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood;

[c] The requested use variance, if granted, will not alter the essential character of the neighborhood; and

[d] The alleged hardship has not been self-created.

**WHEREAS**, the Board of Appeals made the following findings of fact and conclusions with respect to the request for a use variance:

- The Applicant has not demonstrated that she cannot realize a reasonable return by using the Property as a single family residence (along with a pre-existing, non-conforming cottage) without a second residential apartment use in the garage, and has not shown substantial, competent financial evidence with respect to this factor.

- While the applicant offered oral testimony as to a financial hardship, no financial records or other documentation were submitted.

- None of the oral testimony presented regarding the loss of income from the rental of the residential apartment in the garage or the alleged cost to remove the modifications that were made to convert the space on the second floor of the garage to a residential use were in any way sufficient to establish that the Applicant cannot realize a reasonable return on the Property, which can provide a reasonable return by being sold as a one family residence, without the second floor of the garage being used a residential apartment.

- The Applicant also failed to establish that the alleged hardship of having to remove the residential apartment use from the garage is unique and does not apply to substantial portion of district or neighborhood.

- The Applicant did not establish that allowing such residential uses in standalone structures would not have an impact with respect to other properties in the R-1A Zoning District.

- While the Applicant viewed this matter within the context that her Property is a single twelve (12) acre lot in the R-1A Zoning District, the Board of Appeals must also consider the fact that this determination may apply to other properties in the R-1A Zoning District that have standalone garages or structures, which at this juncture cannot be used for residential purposes as an accessory apartment or as a cottage.

- The Applicant did not present evidence that allowed the Board of Appeals to analyze more broadly the number of garages or potential standalone structures that could be impacted by granting a use variance in this case.

- The Applicant did offer testimony that the use variance will not alter the essential character of the neighborhood. To date, there have been no complaints about the use of the second floor of the building as a residential apartment and there were no members of the public that provided testimony that the residential apartment

FILED: WESTCHESTER COUNTY CLERK 12/27/2023 05:48 PM INDEX NO. 71446/2023
NYSCEF DOC. NO. 45 RECEIVED NYSCEF: 12/27/2023

Case 7:25-cv-02618-CS    Document 67-19    Filed 01/23/26    Page 8 of 8

has had a detrimental impact to the neighborhood. Thus, this factor would not weigh against the granting of a use variance.

- The alleged hardship has been self-created. While it is not clear from the record when the second floor of the garage was converted from a recreational use to a residential apartment use, based on first-hand knowledge of one of the Board of Appeals' members, it was confirmed that the residential apartment did not exist in 2013/2014 when the Property was up for sale.

- While it is not clear as to whether the Applicant did or did not personally create the alleged hardship, the residential apartment use over the garage was not legal even at the time the Applicant would have purchased the Property and the Applicant should have known that it was not legal to have a residential apartment use in the garage structure without appropriate approvals. Thus, the alleged hardship must be considered self-created.

**NOW THEREFORE BE IT RESOLVED THAT**, for the reasons stated above, the Board of Appeals is in agreement with and upholds the Building Inspector's Denial of the aforementioned Building Permit Application to convert the second floor recreation room of a legal garage into a cottage, which is not permitted pursuant to Town Code §125-79.1.A of the Code of the Town of Bedford.

**BE IT FURTHER RESOLVED THAT**, for the reasons stated above, the Zoning Board of Appeals denies the request for a use variance to legalize the conversion of a second floor recreation room in a legal garage on the Property into a "Cottage" pursuant to Chapter 125, Section 129.C(2)(a) of the Code of the Town of Bedford.

Vote taken on the foregoing motion was as follows:

Ayes: Ms. Lee, Mr. van Loveren, Ms. Black, Mrs. Spano, Mr. Michaelis
Nays: None

_____
**Peter Michaelis**, Chairman

*The foregoing resolution is certified to be a true copy of the resolution filed in the Office of the Clerk of the Town of Bedford on December 8, 2023.*

_____
**Kim M. Kowalski**, Secretary

ZBA Res. #11-23 Two    Hammer – 146 Goldens Bridge Rd - Legalize Garage 2nd Flr Rec Rm to Cottage    Page 7 of 7

A-419

FILED: APPELLATE DIVISION – 2ND DEPT 08/21/2024 02:40 PM
NYSCEF DOC. NO. 16

2024-02143

RECEIVED NYSCEF: 08/21/2024

*To be Argued by:*
ERIC L. GORDON
*(Time Requested: 10 Minutes)*

# New York Supreme Court

## Appellate Division—Second Department

———— • ————

**Docket No.:**
**2024-02143**

In the Matter of

MELANIE HAMMER,

*Petitioner-Appellant,*

– against –

TOWN OF BEDFORD NEW YORK, ZONING BOARD OF APPEALS
BEDFORD NEW YORK, DEPARTMENT OF BUILDING BEDFORD NEW
YORK/BUILDING INSPECTOR TOWN OF BEDFORD NEW YORK
and ATTORNEY FOR THE TOWN OF BEDFORD NEW YORK,

*Respondents-Respondents.*

## BRIEF FOR RESPONDENTS-RESPONDENTS

KEANE & BEANE, P.C.
*Attorneys for Respondents-Respondents*
445 Hamilton Avenue, Suite 1500
White Plains, New York 10601
(914) 946-4777
egordon@kblaw.com

Westchester County Clerk's Index No. 71446/23



COUNSEL PRESS    (800) 4-APPEAL • (332162)

A-420

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................1

II.   COUNTERSTATEMENT OF QUESTIONS
      PRESENTED ........................................................................................5

III.  COUNTERSTATEMENT OF THE CASE .............................................8

      A.    The Subject Property ................................................................8

      B.    Complaints About The Unlawful Use of
            the Standalone Garage ..............................................................8

      C.    Appellant's Application(s) and The
            Building Inspector's Determination .......................................10

      D.    The Proceedings Before the ZBA ...........................................11

      E.    The ZBA's Resolution ............................................................11

      F.    The Article 78 Proceeding......................................................12

      G.    The Decision and Order ..........................................................14

      H.    The Notice of Appeal and Appeal ..........................................15

IV.   ARGUMENT .......................................................................................15

      POINT I
      STANDARD OF REVIEW.....................................................................15

      POINT II
      THE ZBA DID NOT ACT IMPROPERLY BY
      ISSUING  A WRITTEN RESOLUTION ON
      DECEMBER 7, 2023,  OR OTHERWISE
      VIOLATE APPELLANT'S  PROCEDURAL
      DUE PROCESS RIGHTS........................................................................18

      POINT III
      THE LOWER COURT PROPERLY  DENIED
      THE PETITION.......................................................................................23

A.    Zoning Code §125-12 Limits the
      Number  of Residential Uses on a Single
      Lot .................................................................................................24

B.    The Lower Court Correctly Determined
      That the Residential Apartment Use in
      the Garage Is Not Permitted as a
      "Cottage" Under Zoning Code §125-79.1........................................27

C.    The Lower Court Correctly Affirmed the
      ZBA's Finding That The Residential
      Apartment Use in the Garage is Not
      Allowed as an Accessory Apartment
      Pursuant to Zoning Code §125-79 ..................................................30

D.    The Lower Court Properly Upheld The
      ZBA's Denial of Appellant's Request for
      a Use Variance ...............................................................................32

POINT IV
THE SUFFICIENCY OF THE RECORD
BEFORE THE LOWER COURT ABATED
ANY LEGITIMATE NEED FOR
DISCOVERY ........................................................................................35

POINT V
APPELLANT IS NOT ENTITLED  TO
MONETARY RELIEF ...........................................................................38

V.    CONCLUSION ....................................................................................42

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Adams v. Zoning Bd. of Appeals of Town of East Fishkill,*
  65 A.D.3d 1139, 886 N.Y.S.2d 410 (2d Dep't 2009)......................................15

*Allen v. Crowell-Collier Publishing Co.,*
  21 N.Y.2d 403, 288 N.Y.S.2d 449 (1968)......................................................37

*Arceri v. Town of Islip Zoning Bd. of Appeals,*
  16 A.D.3d 411, 791 N.Y.S.2d 149 (2d Dep't 2005)......................................17

*Bramble v. New York City Dept. of Educ.,*
  125 A.D.3d, 4 N.Y.S.3d 238 (2d Dep't 2015)...............................................37

*DePaola v. Zoni,*
  *ng Bd. of Appeals of Vil. Of Dobbs Ferry*, 226 A.D.2d 371, 640 N.Y.S.2d 230
  (2d Dep't 1996)...............................................................................................35

*Frishman v. Schmidt,*
  61 N.Y.2d 823, 473 N.Y.S.2d 957 (1984).....................................................16

*Gasparini v. Zoning Board of Appeals of Town of Newburgh,*
  2023 N.Y. Slip Op 06249 (2d Dep't 2023)....................................................35

*Golomb v. Board of Educ. of City School Dist. of City of New York,*
  92 A.D.2d 256 (2d Dep't 1983).....................................................................41

*Gross v. Perales,*
  72 N.Y.2d 231, 532 N.Y.S.2d 68 (1988).......................................................41

*Halperin v. City of New Rochelle,*
  24 A.D.3d 768, 809 N.Y.S.2d 98 (2d Dep't 2005)........................................15

*Kelly v. Safir,*
  96 N.Y.2d 32, 924 N.Y.S.2d  (2001).............................................................37

*Matter of Caspian Realty, Inc. v. Zoning Bd. of Appeals of Town of Greenburgh*,
  68 A.D.3d 62, 886 N.Y.S.2d 442 (2d Dep't 2009) .......................................15

*Matter of City of Glen Cove Indus. Dev. Agency v. Doxey,*
  79 A.D.3d 1038, 915 N.Y.S.3d 238 (2d Dep't 2010)...............................36, 37

*Matter of Milton R.,*
  197 A.D.3d 1174, 153 N.Y.S.2d 526 (2d Dep't 2021)..................................42

*Matter of Park Knoll Owners, Inc. v. Park Knoll Assoc.,*
 175 A.D.3d 1410, 109 N.Y.S.3d 130 (2d Dep't 2019)......................................37

*Matter of Part 60 Put-Back Litig.,*
 36 N.Y.3d 342, 141 N.Y.S. 3d 410 (2020)......................................42

*Metropolitan Taxicab Bd. of Trade v. New York City Taxi & Limousine Com'n,*
 115 A.D.3d 521 (1st Dep't 2014)......................................41

*Monte Carlo 1, LLC v. Weiss,*
 142 A.D.3d 1173, 38 N.Y.S.3d 228 (2d Dep't 2016)......................................35

*Pauk v. Board of Trustees of City Univ. of New York,*
 68 N.Y.2d 702, 506 N.Y.S.2d 308 (1986)......................................41

*Sage Sys., Inc. v. Liss,*
 39 N.Y.3d 27, 177 N.Y.S.3d 525 (2022)......................................42

*Sasso v. Osgood,*
 86 N.Y.2d 374, 633 N.Y.S.2d 259 (1995)......................................15, 16

*Stone Indus., Inc. v. Zoning Bd. of Appeals of Town of Ramapo,*
 128 A.D.3d 973, 13 N.Y.S.3d 92 (2015)......................................17

*Tall Trees Construction Corp. v. Zoning Bd. of Appeals of the Town of Huntington,*
 97 N.Y.2d 86, 735 N.Y.S.2d 873 (2001)......................................16

*Tinsley v. New York City Taxi and Limousine Commission,*
 228 A.D.3d 672, 212 N.Y.S.3d 698 (2d Dep't 2024)......................................36

*Town of Pleasant Valley v. New York State Bd. Of Real Property Services,*
 253 A.D.2d, 8, 685 N.Y.S.2d 74 (2d Dep't 1999)......................................37

Statutes

CPLR 7803(3) ......................................15

CPLR §7804......................................38

CPLR §7806...................................... 40, 41, 42

Town Law §267-a(5) ......................................18, 19

Town Law §267-a(8)......................................20

Town Law §267-b(2)(b)......................................35

Town Law § 267-a(9)......................................6, 8, 19

## I.   PRELIMINARY STATEMENT

Respondents-Respondents, the Town of Bedford, New York ("Town"), the Zoning Board of Appeals for the Town of Bedford ("ZBA"), the Building Department for the Town of Bedford ("Building Department"), the Building Inspector for the Town of Bedford ("Building Inspector"), and the Attorney for the Town of Bedford ("Town Attorney"), named in their official capacities only (collectively, and together the "Town Respondents") submit this brief in opposition to Petitioner-Appellant's ("Appellant") appeal from the Decision and Order of the Honorable George E. Fufidio, A.J.S.C., entered on February 9, 2024 (the "Decision and Order").

This case involves Appellant's continued legal inability to utilize and maintain an illegal residential apartment on the second floor of a standalone garage structure on real property owned by Petitioner and situated at 146 Goldens Bridge Road, Katonah, New York (the "Subject Property"). The Decision and Order denied in its entirety Appellant's Petition, pursuant to Civil Practice Law and Rules ("CPLR") Article 78, by which Appellant sought, *inter alia*, an order from the lower court to allow her to continue the unlawful use of the Subject Property in such fashion.

The Decision and Order also rejected a number of other arguments and requests for relief asserted in the Petition and in certain letter motion submitted to

the lower court. These included claims (i) asserting procedural due process violations; (ii) seeking substantial monetary damages from the Town Respondents; and (iii) making unsubstantiated assertions that the lower court had a conflict of interest based on a vague relationship with the former Westchester County Surrogate and District Attorney, the Honorable Anthony A. Scarpino, Jr. Each of these peripheral claims were also properly rejected by the lower court.

As stated in the Decision and Order, "Petitioner's fundamental lack of understanding of zoning laws, despite her being an attorney in New York, is what has led to this litigation." (Record on Appeal ["R"]-15). On appeal to this Court, Appellant continues to display an inability to comprehend even basic zoning law concepts. Most fundamentally, Appellant incorrectly insists that because she has an approximately 11.69 acre property that is located in a R1-A zoning district in the Town, that she is automatically entitled to have individual residences located on each acre of the Subject Property. (Appellant's Brief, p. 4). Such assertion is baseless and fails to recognize that the Subject Property is a single, undivided lot and that only one principal residence is permitted on the Subject Property unless and until Appellant formally subdivides it into separate lots. Thus, the only question remaining on appeal is whether any other provision of the Town of Bedford Zoning Code ("Zoning Code") permits Appellant to have an additional residential use over the standalone garage on the Subject Property.

As concluded by the ZBA both in the oral determination made following the public hearing held on November 2, 2023, and in the written Resolution adopted by the ZBA on December 7, 2023, and as confirmed by the lower court in the Decision and Order, despite Appellant's vigorous protests to the contrary, there is nothing in the Zoning Code that permits the residential use on the second floor of the standalone garage.  This determination includes the finding by both the ZBA and lower court that Appellant's application for a use variance to allow the continued use of the second floor over the standalone garage as a residence must fail because Appellant did not present evidence satisfying the stringent standards applicable to use variances.

On appeal, Appellant presents a number of the same substantive arguments that the lower court reviewed and rejected in denying and dismissing her Petition.[1]

---

[1] On appeal, Appellant abandoned the argument made before the lower court that the ZBA improperly denied Appellant's application to permit the residential unit over the garage as a "home occupancy". Appellant also abandoned the argument on appeal that the apartment over the standalone garage is permitted pursuant to Zoning Code Section 125-12, because it is

> [o]n an undivided parcel of land in size equal to or greater than twice the minimum acreage as required for districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted; provided, however, that, in each such instance, all main and accessory buildings must conform to all lot requirements established hereunder the same as if such buildings were placed on two separate and independent parcels of land.

Applying the deferential standard of review that is mandated by CPLR Article 78, this Court should find that the lower court correctly upheld the ZBA's denial of Appellant's appeal and application.   There is no question the ZBA provided Appellant an appropriate opportunity to present her arguments at a public hearing, developed a comprehensive record, scrupulously analyzed the facts and law, and addressed all relevant issues in a reasonable, timely and well-informed manner.  In sum, this Court should affirm the holding in the Decision and Order that the ZBA's determinations challenged in the Article 78 proceeding were not arbitrary, capricious or irrational and did not violate any procedural or other due process requirements.

Finally, apparently due to Petitioner's frustration with not being allowed to continue to receive rent from the illegal apartment on the Subject Property, she has resorted to making factual misrepresentations to this Court and distorting and misapplying various legal principals. She has also propagated baseless conspiracy theories concerning judicial conflicts of interests and allegations of due process violations purportedly undertaken to purposefully deny Appellant's legal rights. As discussed in detail in the Decision and Order, none of these allegations or assertions

---

The lower court rejected each of these arguments in the Decision and Order. (R, 18-21). However, as mentioned above, these arguments are not raised in the Appellant's Brief. Therefore, neither of these claims are at issue on appeal.

have any basis in fact. In fact, as recognized by the lower court, Appellant submitted correspondence which:

> at best can be described as a mischaracterization of the evidence that was submitted by her and the Respondents in this action and at worst can be viewed as an airing of paranoid conspiracy theories that the Town and now the Court system has maliciously conspired against her because they are somehow doing the bidding of a former judge and District Attorney in, what the Court supposes the Petitioner [Appellant] views as some sort of revenge for what, the Court has no idea.

(RA, 22). The reliance on baseless conspiracies, misrepresentations and unfounded legal arguments has continued in Appellant's appeal and should not sway this Court's analysis in any manner.

As a result, the Decision and Order should be affirmed in all respects and the appeal denied.

## II.    COUNTERSTATEMENT OF QUESTIONS PRESENTED

1.    Did the lower court correctly determine the ZBA acted rationally and reasonably in denying Appellant's application seeking building permits to legalize the residential use over the standalone garage?

Answer: Yes. The evidence presented supports the lower court's holding that the ZBA did not act in an arbitrary or capricious or irrational manner in denying Appellant's appeal.

2.     Did the lower court correctly determine the ZBA had acted rationally and reasonably by denying Appellant's application for a use variance on the grounds that she had not presented appropriate financial evidence and because the creation of the residential use over the standalone garage was a self-created hardship.

Answer:  Yes. Appellant failed to present any financial evidence supporting the application for a use variance and the evidence presented confirmed that the proposed use of the space over the standalone garage was a self-created hardship.

3.     Did the lower court correctly consider both the ZBA's November 2, 2023 oral determination and December 7, 2023 Resolution in denying the relief requested in Appellant's Article 78 Petition?

Answer:  Yes. The ZBA Resolution adopted on December 7, 2023 and filed with the Town Clerk on December 8, 2023, confirmed the findings of fact and conclusions of law in the ZBA's verbal motion made following the close of the November 2, 2023 public hearing denying Appellant's appeal and application.

4.     Was it procedurally proper for the ZBA to adopt a written Resolution on December 7, 2023, without re-opening the public hearing or allowing Appellant to present new evidence?

Answer: Yes. Town Law § 267-a(9) states that zoning boards have 62 days following a public hearing to issue a written determination. In this case, the ZBA's public hearing was held on November 2, 2023, at which time a verbal motion was

made to deny Appellant's appeal and application on a variety of grounds. On December 7, 2023, within 62 days of the close of the public hearing, the ZBA approved a formal written resolution confirming the reasons placed on the record following the November 2, 2023 public hearing. Nothing required the ZBA to allow Appellant to provide additional information or argument following the close of the public hearing on November 2, 2023, or at the meeting on December 7, 2023, when the written Resolution was adopted, and there was no due process violation as a result thereof.

5.    Did the lower court correctly determine that discovery and oral argument was not required to determine Appellant's Article 78 petition.

Answer: Yes. The lower court has broad discretion to determine if discovery or oral argument should be permitted in an Article 78 proceeding and did not abuse its discretion by denying Appellant's request for discovery or oral argument.

6.    Did the Town Respondents' counsel fail to present any relevant authority to the lower court?

Answer: No. The authority which Appellant claims the Town Respondents' counsel failed to present to the lower court, a treatise authored by other Keane & Beane, P.C. attorneys, is not relevant to the issues raised in the Article 78 Petition and even if it did have some relevance, is not an authority which is binding on the lower court or would have been required to be presented to the lower court.

## III.    COUNTERSTATEMENT OF THE CASE

### A.    The Subject Property

Appellant is the owner of real property situated at 146 Goldens Bridge Road, Katonah, New York, as more fully described on the Town of Bedford Tax Map as Section 49.7, Block, 1, Lot 3. (R-223)(previously defined as the "Subject Property). The Subject Property is a single lot which consists of approximately 11.69 acres and is situated in the Town of Bedford's R-1A (one acre) Zoning District. *Id*. Existing on the Subject Property is a principal residence which Appellant occupies, alongside a pre-existing non-conforming standalone cottage. *Id*.[2] Also existing on the Subject Property is a standalone accessory garage structure, which is the subject of dispute. *Id*.

### B.    Complaints About The Unlawful Use of the Standalone Garage

On July 11, 2014, a Certificate of Compliance was issued for the Subject Property, permitting a "finished recreation room over [a] garage" with respect to the second floor of the standalone garage structure thereon. (R-233). Several years later, on April 19, 2023, the Building Department was contacted by an individual who identified themselves as a "tenant living in [an] apartment over garage" at the Subject

---

[2] This pre-existing non-conforming cottage was in use as a residence prior to the implementation of Zoning Code § 125-79.1 which was adopted on July 25, 1989, and restricted cottages to R-2A and R-4A Zoning Districts. This is a different structure than the standalone garage which is the subject of the instant litigation.

Property, who was concerned the apartment on the second floor of the garage was "not legal." (R-224, ¶10, R-235 and R-242-244). On April 27, 2023, with the current tenant's permission, Town Code Enforcement personnel conducted a site visit and inspection of the Subject Property, observing that the recreation room had been converted into a residential apartment. (R-224-225, ¶¶13-14). Specifically, the recreation room on the second floor of the standalone garage had been improved with the creation of two bedrooms, installation of a kitchen area with a sink, stove and refrigerator, and the installation of a full bathroom with a toilet, sink, and shower, none of which had existed when the Certificate of Occupancy was issued in July 2014. (R-224, ¶15).

As a result of the observations, on April 27, 2023, the Building Department issued Appellant Notices of Violation concerning the Subject Property for Appellant's failure to obtain permits for the conversion of the second floor of the standalone garage structure to a residential apartment. (R-149-152). Appellant was advised to either (a) remove the unlawful residential apartment use, including any electrical and plumbing improvements made therein, or (b) legalize the improvements and use of the structure by, among other things, submitting a building permit application for administrative review. (R-151 and R-225-226, ¶19).

C.    Appellant's Application(s) and The
Building Inspector's Determination

Following issuance of the Notice of Violation(s), Appellant contacted administrative officials within the Town of Bedford and its Building Department to ascertain what steps were necessary to submit applications to correct the violations. (R-226). On June 1, 2023, and July 6, 2023, Appellant submitted incomplete applications to the Town Building Department seeking, among other things, a Special Use Permit to legalize the accessory apartment over the garage. (R-216, ¶9). Appellant subsequently withdrew these applications. *Id*. On July 10, 2023, Appellant then filed an application to revert the second floor of the garage structure from its unlawful residential use back to the recreation room. (R-157-159 and R-217, ¶12). At some point, Appellant changed her mind about removing the illegal residential use and submitted another application to the Building Department on September 7, 2023 to legalize the residential apartment use atop the garage. (R-160-161 and R-217, ¶14).

On September 22, 2023, the Building Inspector denied Appellant's application, thereby rejecting the attempt to legalize the residential apartment on the second floor of the garage structure that had been unlawfully improved through the installation of the bathroom, kitchen and living fixtures made therein. (R-162 and R-226-227, ¶¶26-29). The Building Inspector determined that the proposed residential use was a "Cottage", and that such use was not a permitted use in the R-1A zoning

district in which the Subject Property was situated. (R-162). Accordingly, Appellant was notified that she would require a use variance from the Town's ZBA. *Id*. Appellant was also advised to proceed to the ZBA if she disagreed with the Building Inspector's interpretation of the Zoning Code and determination therefrom. (R-227, ¶ 29).

D.    The Proceedings Before the ZBA

On October 4, 2024, Appellant applied to the ZBA seeking, *inter alia*, (a) dismissal of the notice of violation issued for the unlawful apartment; (b) a "request for variance for a customary home occupation/permit"; (c) a request for an interpretation/reversal of the Building Inspector's determination and denial; and (d) a use variance. (R-165-179 and R-227, ¶30). The ZBA opened and closed the public hearing on Appellant's appeal and application on November 2, 2023. (R-187-188 and R-228, ¶31). The ZBA after hearing extensive argument from Appellant and discussing the appeal and application in detail, voted to deny Appellant's application and appeal and set forth the various reasons for the denial on the record. (R-189-194).

E.    The ZBA's Resolution

On December 7, 2023, the ZBA adopted Resolution #11-23, denying Appellant's appeal and application in writing and clarifying the reasons for the denial. (R-208-214). Since the public hearing had already been closed and Appellant

-11-
A-435

had been given a substantial opportunity to present evidence and argument to the ZBA on November 2, 2023 (R-187-194), neither Appellant (nor any member of the public) was permitted to present further evidence or argument at the December 7, 2023 meeting.[3]

Resolution #11-23 affirmed the Building Inspector's denial of Appellant's building permit application to convert the recreation room over the standalone garage into a "Cottage", which the ZBA found was not permitted under the provisions of the Zoning Code relied upon by Appellant in her appeal and application to the ZBA. (R-208-212). The ZBA also denied Appellant's request for a use variance to legalize the conversion of the second floor recreation room over the garage into a "Cottage" on the grounds that she had not submitted evidence to satisfy the provisions of Zoning Code § 129.C(2)(a). (R-212-214).

F.    The Article 78 Proceeding

On November 30, 2023, Appellant commenced an Article 78 proceeding by the filing of a Verified Petition. (R-26-48).  The Article 78 Petition sought, *inter alia*, (1) an order compelling the Town Respondents to allow her to legally file an application for the residence at issue; (2) an order compelling the Town Respondents to dismiss the Justice Court violations levied against her; (3) an order directing the

---

[3] The ZBA meeting on December 7, 2023, involved only approval of the written Resolution confirming the ZBA's findings made on November 2, 2023.  There was no further substantive discussion of Appellant's application by the ZBA at the December 7, 2023 meeting.

Town Respondents to pay damages in the amount of $14,400.00 to the Appellant for lost rental income; (4) an order directing the Town Respondents to pay Appellant damages for additional lost rent in the amount of $2,400.00 per month; (5) an order for attorneys' in the amount of $22,000.00 for the work Appellant had done on her own case billed at $550.00 per hour for forty (40) hours; (6) an order for future attorneys' fees billed at $550.00 per hour for future work; (7) an order directing Town Respondents to pay $100,000.00 in punitive damages; (8) an order directing payment of $2,000,000.00 for unlawfully devaluing Appellant's property; (9) a writ of prohibition preventing Town Respondents from "rezoning [Appellant's] property in the future"; and (10) a writ of prohibition to stop Town Respondents "continuing to act" punitively, arbitrarily, or capriciously in this and future applications made by Appellant. (R-17; R-47-48).

Following recusals by the Honorable Maurice Dean Williams, A.S.C.J. (R-90) and Honorable Robert J. Prisco, A.J.S.C. (R-91), the proceeding was assigned to the Honorable George E. Fufidio, A.J.S.C. (R-100). Thereafter, Appellant engaged in a letter writing campaign to Justice Fufidio and his law secretary: (i) requesting to submit exhibits outside the record (R-325-327; R-329-330); (ii) seeking discovery relating to communications with and concerning the Honorable Anthony A. Scarpino, Jr., the former Westchester County Surrogate and District Attorney (R-334-335); (iii) raising concerns about a conflict of interest involving

-13-

Justice Fufidio (R-354-355); and (iv) asking the lower court to set a date certain to decide the Article 78 proceeding. (R-337). Keane & Beane, P.C. responded to each of the improper letter requests/motions on behalf of the Town Respondents. Each of Appellant's letter requests/motions were addressed by the lower court in an email dated January 26, 2024 (R-356-357) and in the Decision and Order issued on February 9, 2024. (R-21-24).

G.    The Decision and Order

The lower court filed and entered its Decision and Order on February 9, 2024, denying and dismissing Appellant's Article 78 Petition in its entirety. Initially, the Decision and Order stated the ensuing litigation had "complicated what, at its core, [] is a relatively basic petition to nullify the Town of Bedford ZBA's decision" to deny Appellant's request to continue the unlawful use of the apartment at the second floor of the standalone garage structure. (R-17). The lower court then directly addressed and rejected each Appellant's arguments wherein she attempted to establish a legal right to utilize the second floor of the standalone garage as an residential apartment. (R-18-21). The lower court also addressed Appellant's letter requests/motions concerning the potential judicial conflict of interest, a change of venue, oral argument and an order of discovery. (R-21-24).

H.    The Notice of Appeal and Appeal

Appellant filed a Notice of Appeal on February 26, 2024. Following a number of failed attempts to perfect the appeal, the Appellant's Brief and Record on Appeal were filed on May 22, 2024.[4]  Pursuant to Order of this Court dated July 17, 2024, the Town Respondents were granted until August 21, 2024, to file Respondents' Brief in opposition to the Appeal.

## IV.    ARGUMENT

## POINT I

## STANDARD OF REVIEW

Local zoning boards have broad discretion in considering applications for variances, and judicial review is limited to determining whether the action taken by the board was illegal, arbitrary, or an abuse of discretion. *See* CPLR 7803(3); *Adams v. Zoning Bd. of Appeals of Town of East Fishkill*, 65 A.D.3d 1139, 886 N.Y.S.2d 410 (2d Dep't 2009). Thus, the determination of a zoning board should be sustained upon judicial review of it has a rational basis and is not arbitrary and capricious. *See Matter of Sasso v. Osgood*, 86 N.Y.2d 374, 384, 633 N.Y.S.2d 259 (1995). A determination is rational "if it has some objective factual basis, as opposed to resting

---

[4] While Rule 1250.8(b)(4) of the Appellate Division's rules requires Appellant's Brief in chief to include "appropriate citations to the reproduced record", it is noted that Appellant's Brief, in its entirety, fails to adhere to this rule.

entirely on subjective considerations such as general community opposition." *Matter of Caspian Realty, Inc. v. Zoning Bd. of Appeals of Town of Greenburgh*, 68 A.D.3d 62, 67, 886 N.Y.S.2d 442, 446 (2d Dep't 2009) *quoting Matter of Halperin v. City of New Rochelle*, 24 A.D.3d 768, 772, 809 N.Y.S.2d 98, 105 (2d Dep't 2005). The consideration of "substantial evidence" is limited to determining whether the record contains sufficient evidence to support the rationality of the zoning board's determination. *See Matter of Sasso v. Osgood, supra.*[5]

The ZBA's determination did not involve an interpretation of ambiguous statutory terms that would otherwise limit the deference this Court must give to the ZBA's determination. Zoning boards of appeal were created to interpret, to perfect, and to insure the validity of zoning through the exercise of administrative discretion. *Tall Trees Construction Corp. v. Zoning Bd. of Appeals of the Town of Huntington*, 97 N.Y.2d 86, 90, 735 N.Y.S.2d 873 (2001). As such, zoning boards are empowered to reasonably and rationally review and interpret the enforcement of local zoning. *See Frishman v. Schmidt*, 61 N.Y.2d 823, 473 N.Y.S.2d 957, 958 (1984)(specific application of a term of the zoning ordinance to a particular property is governed by zoning board's interpretation, unless unreasonable or irrational).

---

[5] Appellant's argument that this Court must review the lower court's determination *de novo* (Appellant's Brief, pp. 24-26), is incorrect. The lower court's review did not involve questions of law that would merit a *de novo* review, but was a run of the mill review of the ZBA's administrative determination. (R-17).

Moreover, while the general rule is that zoning ordinances are in derogation of the common law and must be strictly construed against the municipality (*see Frishman*, 61 N.Y.2d at 825, 473 N.Y.S.2d at 958) this rule is subject to the limitation that where, as here, it would be difficult or impractical for a legislative body to promulgate an ordinance which is both definitive and all-encompassing, a reasonable amount of discretion in the interpretation of the ordinance may be delegated to an administrative body or official. *Arceri v. Town of Islip Zoning Bd. of Appeals*, 16 A.D.3d 411, 412, 791 N.Y.S.2d 149, 150–51 (2d Dep't 2005). In such situations, the interpretation of a zoning board of appeals or the official governs unless unreasonable or irrational. *Stone Indus., Inc. v. Zoning Bd. of Appeals of Town of Ramapo,* 128 A.D.3d 973, 974, 13 N.Y.S.3d 92, 94 (2015)("The interpretation of the zoning board of appeals or the official governs unless such interpretation is unreasonable or irrational*). In this case, deference to the ZBA's conclusions with respect to the applicability of each provision of the Zoning Code is appropriate because, despite Appellant's strident protests to the contrary, there is no provision of the Zoning Code at issue that can be considered ambiguous or requires judicial interpretation.

Given the strict standard of review applicable to the underlying Article 78 proceeding, there is no basis for this Court to overturn the lower court's Decision

and Order upholding the ZBA's well-reasoned and rational determination, and the Decision and Order should be affirmed in all respects.

## POINT II

### THE ZBA DID NOT ACT IMPROPERLY BY ISSUING A WRITTEN RESOLUTION ON DECEMBER 7, 2023, OR OTHERWISE VIOLATE APPELLANT'S PROCEDURAL DUE PROCESS RIGHTS

Appellant initially argues that the lower court's decision ignored her claim that the ZBA violated her due process rights by issuing Resolution #11-23 on December 7, 2023, purportedly in violation of Town Law §267-a(5), and by refusing to allow Appellant to participate in the December 7, 2023 meeting where Resolution #11-23 was adopted.  (Appellant's Brief, pp. 28-30). Appellant goes so far as to state that: "[i]t appears the [lower] court did not read my Petition, Reply, or examine any Exhibits. If the court had even taken the time to look at NYSCEF DOC. 1 & 3, the [lower] court could not have reasonable or fairly referenced the 12/8/23 resolution as the basis of my Article 78 appeal." (*Id.*, p. 28).

Contrary to Appellant's absurd assertion that the Court did not read any of her papers, the lower court directly acknowledged Appellant's argument in the Decision and Order stating: "[t]he ZBA issued a resolution on the matter on December 8, 2023.  It is ostensibly this resolution from which she has appealed to this Court, however, because the Petition is not entirely clear, the Court will also address the

decisions made in the hearing itself to the extent that they differ from those in the resolution." (R-18). More importantly, there were no procedural errors committed that invalidated the ZBA's determination as initially stated at the November 2, 2023 meeting and confirmed in Resolution #11-23.

Appellant's argument that the Town Respondents violated Town Law §267-a(5) by failing to file a written determination within five (5) days of the November 2, 2023 public hearing, is an improper and a flawed reading of this section of the New York State Town Law. First and foremost, Section 267-a(5) only refers to decisions of an administrative official and is not applicable to a decision by a zoning board of appeals. Second, while Town Law §267-a(9) does state that decisions of a zoning board of appeals shall be filed with the Town Clerk within five (5) business days, and is arguably applicable, such requirement was complied with in this case.

There was never a written decision to file until the written minutes from the November 2, 2023, meeting were prepared at the end of November. (R-218-219). These written minutes took significant time to prepare given the length of the meeting and were filed the day they were made available and provided to Petitioner immediately thereafter. (R-219). Similarly, the ZBA's written Resolution #11-23 setting forth its findings of fact and confirming its November 2, 2023 verbal determination, was approved by the ZBA on December 7, 2023 and filed on

-19-

December 8, 2023, well within the five (5) day period set forth in Town Law §267-a(9).

What is even more concerning about Appellant's erroneous allegations of procedural delay and violation of Town Law §267-a is that she fails to advise the Court that Town Law §267-a(8) provides that "[t]he board of appeals shall decide upon the appeal within sixty-two days after the conduct of said hearing." The written minutes of the November 2, 2023 meeting that contained the written record from the public hearing and Resolution #11-23 approved on December 7, 2023 and filed on December 8, 2023, were both filed well within the required 62 day period set forth in Town Law §267-a(8).[6] Thus, there was no improper or illegal delay whatsoever in issuing the ZBA's written determination and any supposed harm or prejudice resulting from such alleged delay is completely illusory.

While Appellant chose to commence her Article 78 proceeding by filing a Notice of Petition and Petition on November 30, 2023 (apparently based on the video of the November 2, 2023 meeting that was posted on the Town's website), she did so at her peril. At the time the Article 78 Petition was commenced, there was no written determination to challenge, and as stated above, pursuant to Town Law §267-

---

[6] The public hearing on this matter was opened and closed on November 2, 2023. (R-187-188). Following the close of the public hearing, the ZBA continue to allow extensive argument by the Appellant at the November 2, 2023 meeting. (R-188-192).

a(8), the ZBA had 62 days to issue such written determination.[7] Furthermore, Appellant was specifically advised by the Town Attorney by email on November 27, 2023, before she commenced the Article 78 proceeding, that the ZBA was preparing written minutes and that a written resolution would be issued on December 7, 2023. (R-74). Appellant's ill-considered decision to disregard the fact that a written determination was pending in her haste to commence litigation does not in any way equate to a violation of her due process rights.

Similarly, there is no merit to Appellant's claim that a procedural violation occurred when she was allegedly "excluded" from the December 7, 2023 ZBA meeting. (Appellant's Brief, p. 31). Following the closing of the public hearing on November 2, 2023, at which Appellant was given an extensive opportunity to present arguments, the ZBA did not have any obligation to hear further testimony from Appellant or any member of the public. Moreover, neither the ZBA nor the Town Attorney "excluded" Appellant from the December 7, 2023 ZBA meeting. She was

---

[7] A review of ZBA Resolution #11-23 (R-208-214) and the minutes of the November 2, 2023 meeting (R-187-194) which were prepared based on the video of the meeting [weblink provided at R-181 – https:mediahttp.iqm2.com/BedfordNY/1665_480.mp4]) confirm that ZBA Resolution #11-23 follows the reasoning set forth in the oral motion adopted by the ZBA at the November 2, 2023 meeting rejecting Appellant's application. While ZBA Resolution #11-23 provides certain additional factual background, context and citations to the Zoning Code, the basis for the ZBA's determinations at the November 2, 2023 meeting and in Resolution #11-23 remained consistent and Resolution #11-23 did not provide "very different justifications" for the ZBA's decision as alleged by Appellant. (Appellant's Brief, p. 15).

perfectly welcome to attend the meeting like any other member of the public. She was only prohibited from making public comments or presenting further evidence at that meeting.

At the meeting on December 7, 2023, the only thing that occurred was that the ZBA approved a written resolution denying her appeal and application for a use variance. There was no substantive discussion of the matter by the ZBA or anyone else at this meeting. Thus, Appellant's inability to speak at the December 7, 2023 meeting does not constitute a violation of her due process rights.[8]

Finally, none of the factual circumstances that resulted in the ZBA's determination at issue equate to a meritorious procedural due process claim that would invalidate the ZBA's determination.  What is of particular importance with respect to Appellant's erroneous claim that the Town refused to timely process certain applications filed by Appellant in June and July 2023, is that it is undisputed that Appellant filed an application with the Building Department seeking to remove the residential apartment use from the standalone garage on July 10, 2023 (after the earlier applications were filed), and revert the second floor space in the garage to a

---

[8] Appellant does not argue that any new evidence or legal issues were discovered after the November 2, 2023 ZBA meeting that she wanted to present to the ZBA at the December 7, 2023 meeting.

recreation room.  (R-154-155; R-217, ¶ 12; R-226, ¶ 23).[9]  As she clearly intended to revert the space on the second floor of the standalone garage back to a recreation room as of July 10, 2023, any prior applications filed with the Planning Board or Zoning Board seeking to legalize the residential use would have become moot at that time. As a result, there is no evidence whatsoever to support Appellant's erroneous assertions that the Town Respondents violated Appellant's due process rights in any way.

### POINT III

### THE LOWER COURT PROPERLY DENIED THE PETITION

Appellant's Article 78 Petition sought to overturn the ZBA's well-reasoned and rational determination upholding the Building Inspector's finding that the unpermitted conversion of the second floor of the standalone garage into a third residential dwelling unit on the Subject Property was prohibited by the Town Zoning Code. As confirmed by the lower court, the ZBA's decision was neither arbitrary and capricious, an abuse of discretion or in violation of any procedural requirements. Therefore, Appellant's continued groundless insistence that the ZBA had no basis

---

[9] As previously stated, at some point after July 10, 2023, Appellant changed her mind about removing the residential apartment.

for concluding that the residential use on the second floor of the standalone garage is improper, must be rejected on appeal.

### A. Zoning Code §125-12 Limits the Number of Residential Uses on a Single Lot

Appellant's continued lack of understanding of the most basic precepts of the Zoning Code continues on appeal. On appeal, Appellant argues that "… the Plain [sic] meaning of the Zoning Ordinance R1A is that there may be a residence on each acre. Petitioner has nearly twelve acres all zoned R1A. The Plain [sic] meaning of the Ordinance would mean that Petitioner can have nearly twelve (12) residences on her property, one on each acre." This claim has no merit and the ZBA properly rejected it (R-211) and the lower court correctly upheld this determination. (R-19-20).

Although the Subject Property is almost twelve (12) acres, it is undisputed that it is one (1), single, undivided lot. Zoning Code §125-12 expressly states that "[t]here shall be not more than one main building and its accessory buildings on each minimum size lot, except for nonresidential buildings in districts where such uses are permitted." Based on this provision, Appellant is not permitted to have more than one main building with a residential use on the Subject Property, except to the extent an additional residential use is allowed elsewhere in the Zoning Code, or such use existed before the restriction on residential uses was created when the Zoning Code was adopted in the 1930s. The inclusion of a residential apartment use on the

second floor of the standalone garage is not permitted pursuant to Section 125-12 because it creates what is considered an additional unpermitted residential use in another building on a single lot since, as discussed below, there is no residential use allowed in a standalone accessory building (i.e. the garage) in the R-1A Zoning District.

Furthermore, although not raised on Appeal, Appellant also failed to establish that a second principal residential use was permitted pursuant to the second provision in Section 125-12, which states as follows:

> On one undivided parcel of land in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted; provided, however, that, in each such instance, all main and accessory buildings must conform to all lot requirements established hereunder the same as if such buildings were placed on two separate and independent parcels of land.

The Appellant did not submit a proposed plan and zoning table showing that each of the buildings on the Subject Property would conform with all lot requirements if the buildings were placed on separate and independent parcels of land. (R-211).  To the contrary, the ZBA expressly found that the "plan" Appellant submitted in support of her appeal (R-177) did not establish that the existing main residence, pre-existing, non-conforming cottage and standalone garage would be fully conforming to all lot

requirements in the event these buildings were placed on separate and independent parcels of land as required under Section 125-12. (R-211).

The lower court correctly affirmed the ZBA's determination, holding that no part of Zoning Code §125-12 allowed the residential apartment use on the second floor of the standalone garage:

> Even taking the Petitioner [Appellant] at her word, that Document 7 [R-55] shows what she purports it to show and that she tried to append it into her application already on record at the November 2, 2023 ZBA hearing, it still does not demonstrate that the other two buildings on the property, the principal building and the pre-existing, non-conforming cottage are in conformity with the Zoning Code as they relate to the garage apartment. The ZBA's decision to deny her [Appellant's] application because of that was not irrational in so far as they decided that the application did not demonstrate compliance with the Zoning Code requirements, nor, for that matter, does the survey that the Petitioner tried to introduce at the hearing and then attached as an exhibit to this action.

As a result, this Court should affirm the lower court's determination that the ZBA did not act arbitrarily or capriciously, or abuse its discretion by concluding that Zoning Code § 125-12 prohibited Appellant from having a residential use on the second floor of the standalone garage.

B.   The Lower Court Correctly Determined
That the Residential Apartment Use in the
Garage Is Not Permitted as a "Cottage"
Under Zoning Code §125-79.1

Appellant's next misguided claim on appeal is that the standalone garage qualifies as a "Cottage" because Zoning Code § 125-79.1 does not expressly prohibit having a "Cottage" on the Subject Property which is located in the R-1A Zoning District. Appellant instead nonsensically asserts that "[i]n the instant case Bedford Town Code § 125-79-1a [sic] expressly excludes R1A [zoning districts], by affirmatory [sic] stating that the section only applies to R2A and R4A zoning districts (first sentence of the statute)." (Appellant's Brief, p. 44). This argument is blatantly incorrect and must be rejected.

Initially, the Building Inspector's letter denying Appellant's application for a building permit to legalize the residential use expressly found that a "Cottage" is not permitted in the R-1A Zoning District in which the Subject Property is situated because "Cottages" are only permitted in an R-2A or R-4A Zoning District pursuant to Zoning Code §125-79.1. (R-163).  Specifically, the Building Inspector concluded the residential apartment use that was installed on the second floor of the standalone garage sometime after 2014 is a "Cottage," as defined in Zoning Code §125-3, because the second floor of the garage had been illegally improved with two (2) bedrooms, a kitchen, a full bathroom, and various plumbing and electrical fixtures sometime after 2014. (R-163 and R-224).

-27-

At both the November 2, 2023 ZBA meeting and in Resolution #11-23, the ZBA agreed with the Building Inspector's interpretation (R-192 and R-212)(finding that "Section 128-79.1.A states that 'In the R-2A and R-4A [Zoning] Districts, the Planning Board may grant a special permit to create a cottage in an existing accessory building.' Thus, it is the Board of Appeals' determination that Cottages are not permitted in the R-1A Zoning District. Any argument that the failure to expressly exclude Cottages in the R-1A Zoning District makes Cottages a permitted use in the R-1A Zoning District is illogical and is rejected." (R-212).

In the Decision and Order, the lower court agreed with the Building Inspector's and ZBA's interpretation of the clear meaning of Section 125-79.1, and rejected Appellant's warped logic that Cottages are permitted in the R-1A Zoning District:

> The only place in the Bedford Zoning Code that authorizes the use of cottages at all is under the special use permit section where is expressly states that "In the R-2A and R-4A Districts, the Planning Board may grant a special permit to create a cottage in an existing accessory building..." (Bedford Town Board [sic] sec. 125-79.1). The legal maxim inclusion *unius est exclusio alterius* supports the Town's interpretation that, because the Town Zoning Code includes only two Districts in which cottages are permitted and by special use permits at that, that the remaining districts are necessarily excluded by their omission from the code. And in any event, even in those two districts where cottages are permitted by special use permits there can be only one cottage on any given lot in

those districts. The Petitioner [Appellant] already has a legal pre-existing, non-conforming cottage on her property.

(R-19). This Court should affirm the lower court's holding.

The Zoning Code defines a "Cottage" as a "single dwelling unit within an accessory building which is incidental and subordinate to a principal one-family residence and located on the same lot therewith, where either unit is occupied by the owner of the premises." *See* Zoning Code §125-3. Zoning Code §125-79.1.A unambiguously states that "[i]n the R-2A and R-4A Districts, the Planning Board may grant a special permit to create a cottage in an existing accessory building". Appellant's continued insistence that because Section 125-79.1.A does not state that Cottages are not permitted in the R-1A Zoning District (or any other Town Zoning District), that they must be permitted in the R-1A Zoning District as of right (and ostensibly all other Zoning Districts besides R-2A and R-4A), and to infer otherwise is improper. Such interpretation is illogical and contrary to the unambiguous wording of Section 125-79.1.A.

While Appellant argues the Building Inspector and ZBA improperly "inferred" that a "Cottage" was not permitted in the R-1A Zoning District, it is implicit that Zoning Code §125-79.1.A, by stating that a special permit may be granted in the R-2A and R-4A Zoning Districts for a "Cottage", means that "Cottages" are not allowed in any other Zoning District in the Town (with or without

-29-

a special permit), including but not limited to the R-1A Zoning District. Any other reading of this section would mean that zoning codes must expressly state every zoning district where uses are not permitted, as opposed to stating where they are permitted. Such an interpretation violates statutory interpretation rules, defies logic and would render virtually every zoning code in New York State meaningless. Consequently, the Building Inspector and ZBA correctly concluded that the use of the Garage as a "Cottage" was not permitted in the R-1A Zoning District and the lower court properly upheld these determinations when deciding the Article 78 proceeding. This Court should now affirm these well-reasoned and rational determinations.

C.    The Lower Court Correctly Affirmed the ZBA's Finding That The Residential Apartment Use in the Garage is Not Allowed as an Accessory Apartment Pursuant to Zoning Code §125-79

The ZBA also concluded that, "[t]o the extent the Applicant asserts that the Property complies with the spirit of Town Code §125-79, which relates to "Accessory Apartments", such argument must be rejected." (R-211). The basis for the ZBA's determination was that "[t]he apartment in question cannot be considered an "Accessory Apartment" that is permitted pursuant to Town Code §l25-79, because an Accessory Apartment must be located "in an existing single-family dwelling, but not in an accessory structure". Town Code §125-79.B.

-30-

The lower court correctly upheld this determination finding that "although the Zoning Code also allows accessory apartments in any of the residential districts, an accessory apartment is only allowed by way of special use permit and then, it may not be located in an accessory building, which clearly, the apartment in question is. Accordingly, with respect to this issue, the Petitioner [Appellant] has not shown the ZBA's decision to be improper." (R-19).

On appeal, Appellant apparently argues that the residential use in the standalone garage is permitted as an accessory apartment by claiming that Section 125-79 encourages the creation of additional accessory apartments in the Town. (Appellant's Brief, p. 46). Appellant further asserts that "[i]n all residence districts, the Planning Board may *grant a special permit* to create an accessory apartment in an existing single-family dwelling, but not in an accessory structure. Wherefore accessory apartment *permits* are *not* required or regulated in detached structures as here." (Appellant's Brief, p. 42, fn. 24)(italics in original). Appellant's backward and illogical reasoning must be rejected.

The residential apartment use in question cannot be considered an "Accessory Apartment" that would be permitted pursuant to Zoning Code §125-79, because an "Accessory Apartment" must be located "in an existing single-family dwelling, but not in an accessory structure". Town Code §125-79.B. In this case, the residential use in question is located in an accessory structure (the standalone garage) and

cannot be permitted as an "Accessory Apartment" use under Zoning Code §125-79. As a result, this Court should find that the lower court properly held the ZBA had correctly determined that Zoning Code §125-79 cannot be used to legalize the residential apartment in the standalone garage.

          D.       The Lower Court Properly Upheld
                    The ZBA's Denial of Appellant's
                    <u>Request for a Use Variance</u>

In the second of the numbered "Questions Presented" in Appellant's Brief, she raises the following as a question to be determined on appeal: "Did the lower court err in deciding that the Zoning Board of Appeals' not allowing a use variance to Petitioner-Appellant was not illegal, arbitrary, capricious, an abuse of discretion or lacking substantial evidence?" (Appellant's Brief, p. 1). Nowhere else in Appellant's Brief does she argue or even mention that the lower court's affirmation of the ZBA's rejection of her application for a use variance was incorrect. However, the issue is being addressed here to the extent it is raised by Appellant on reply.

During the public hearing held on November 2, 2023, Appellant requested that the ZBA issue a determination with respect to whether she was entitled to a "use variance" pursuant to Zoning Code §125-129.C(2)(a). (R-191-194). The ZBA advised Appellant that it would delay issuing a determination with respect to the request for a use variance to allow the Appellant to submit additional evidence in support of the use variance, but Appellant expressly stated that she was requesting a

determination on this issue during the November 2, 2023 meeting.  (R-191). The ZBA then carefully considered Appellant's arguments and properly rejected the request for a use variance on the grounds that she had failed to meet the requirements of Zoning Code §125-129.C(2)(a).  (R-193-194 and R-213-214).

The lower court also considered the question of whether Appellant was entitled to a use variance and held as follows in affirming the ZBA's determination:

> Petitioner [Appellant] failed to show that, 'she cannot realize a reasonable return by using the [Subject] Property as a single family residence (which also has a pre-existing, nonconforming cottage which the Court understands is also being rented for income) without a second residential apartment and has not shown substantial, competent financial evidence with respect to this factor' and that, 'the alleged hardship has been self-created.'
>
> …
>
> Upon the forgoing determinations made by the ZBA and a review of the evidence underpinning those determinations, the Court finds that there is a rational basis supporting the conclusions that the Petitioner [Appellant] was unable to satisfy the four required factors in order to receive a use variance. Accordingly, the ZBA's determination denying the Petitioner such a variance was entirely reasonable.

(R-21). This determination should also be affirmed on appeal.

To obtain a use variance, an applicant must demonstrate that (1) for each permitted use in the zoning district in which the property is located, the applicant cannot realize a reasonable return, provided that lack of return is substantial as

demonstrated by competent financial evidence; (2) that the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) that the requested use variance, if granted, will not alter the essential character of the neighborhood; and (4) that the alleged hardship has not been self-created. *See* Town Law §267-b(2)(b); Zoning Code §125-129.C(2)(a). In order to qualify for a use variance, the proponent of the variance must first establish that the use of the property cannot provide a reasonable return by submitting "competent financial evidence". *Id.*, *see also Gasparini v. Zoning Board of Appeals of Town of Newburgh*, 2023 N.Y. Slip Op 06249 (2d Dep't 2023) (affirming denial of use variance where petitioner failed to present evidence in "dollars and cents form" that the property could not yield a reasonable return as a single-family dwelling); *Monte Carlo 1, LLC v. Weiss*, 142 A.D.3d 1173, 38 N.Y.S.3d 228 (2d Dep't 2016)(same).

In this case, Appellant failed to make any showing that she could not realize a reasonable return by utilizing the Subject Property as a single-family residence (along with a pre-existing, non-conforming cottage which already exists) without a residential apartment use in the standalone garage. *See, e.g. Matter of DePaola v. Zoning Bd. of Appeals of Vil. Of Dobbs Ferry*, 226 A.D.2d 371, 373, 640 N.Y.S. 230 (2d Dep't 1996). The failure to submit competent financial evidence regarding this issue was enough, by itself, to reject the request for a use variance. The ZBA,

however, reviewed each of the other requirements in Section 125-129.C(2)(a), and determined that Appellant had also failed to establish that the alleged hardship was self-created. (R-193-194 and R-213-214). Appellant has presented nothing on appeal that would invalidate the ZBA's denial of the use variance, or the lower court's decision upholding the ZBA's determination.

Since the ZBA's determination denying the requested use variance was not arbitrary, capricious, or an abuse of discretion, to the extent the use variance issue has been raised on appeal, this Court should affirm the lower court's determination upholding the ZBA's denial and find that Appellant's application for a use variance was correctly denied.

**POINT IV**

**THE SUFFICIENCY OF THE RECORD BEFORE THE LOWER COURT ABATED ANY LEGITIMATE NEED FOR DISCOVERY**

While the Article 78 proceeding was pending, Appellant submitted several letter motions requesting discovery and oral argument. The lower court properly employed its discretion in denying Appellant's motions for oral argument or discovery, as neither mechanism was necessary to assist the lower court in the proceeding before it. Rather, the requests amounted to fishing expeditions, which the lower court found would only serve to delay the proceeding.

In a special proceeding, where disclosure is available only by leave of court, the Supreme Court has broad discretion in granting or denying disclosure. *Tinsley v. New York City Taxi and Limousine Commission*, 228 A.D.3d 672, 212 N.Y.S.3d 698 (2d Dep't 2024) *citing Matter of City of Glen Cove Indus. Dev. Agency v. Doxey*, 79 A.D.3d 1038, 915 N.Y.S.3d 238 (2d Dep't 2010). Courts must balance the needs of the party seeking discovery against such opposing interests as expediency and confidentiality. *Matter of Bramble v. New York Agency v. Doxey*, 79 A.D.3d 1038, 915 N.Y.S.2d 95 (2d Dep't 2015). One seeking discovery in a special proceeding must demonstrate that the requested discovery is material and necessary and that providing the requested discovery would not unduly delay the proceeding. *Matter of Park Knoll Owners, Inc. v. Park Knoll Assoc.,* 175 A.D.3d 1410, 1411-1412, 109 N.Y.S.3d 130 (2d Dep't 2019); *Matter of Bramble v. New York City Dept. of Educ.,* 125 A.D.3d at 857, 4 N.Y.S.3d 238 (2d Dep't 2015).

Further, discovery requests which, in essence, seek to impermissibly supplement the administrative record with materials that were not before administrative body, are improper. *See, e.g., Matter of Kelly v. Safir*, 96 N.Y.2d 32, 39, 924 N.Y.S.2d 680 (2001). In short, because discovery tends to prolong a case, and is therefore inconsistent with the summary nature of a special proceeding, discovery is granted only where it is demonstrated that there is a need for such relief. *Town of Pleasant Valley v. New York State Bd. Of Real Property Services*, 253 A.D.

2d 8, 685 N.Y.S.2d 74 (2d Dep't 1999). The test is one of usefulness and reason. *Id.,* *quoting Allen v. Crowell-Collier Publishing Co.*, 21 N.Y.2d 403, 406, 288 N.Y.S.2d 449 (1968).

Here, by way of letter motion to the lower court on January 23, 2024[10], Appellant sought disclosure of any communications between the Town Respondents and, among others, the "Scarpino family". (R-334-335). Appellant also sought any communications and "relationship disclosures" between the Town Attorney, Building Inspector, and other staff. (R-335). Appellant suggested that discovery might explain why there "were so many judicial recusals in [the] matter." (R-335). In short, Appellant attributed the conduct of the Town Respondents, and the Justices in the Westchester County Supreme Court, to unsupported theories concerning "political connections".

The Supreme Court providently denied Appellant's request for discovery for several reasons. Preliminarily, such discovery requests essentially sought to supplement the administrative record with materials which were not before it. Second, the lower court found the record to be adequate for it to make its determination. (R-23). While CPLR §7804 was "designed to enable a court, when confronted with a situation where it is *impossible* to determine the matters upon the

---

[10] The letter is entitled "Request for Leave for Discovery/Political Favors". (R-334).

submitted papers alone" here, the lower court felt it could adequately address the parties' respective positions on the underlying record. *Id*. The lower court also found that the requests only "served to delay a decision" which petitioner sought expediently. (R-24). Last, the lower court found Appellant's requests amounted to nothing more than a "fishing expedition" predicated upon conspiracy theories that, at best, were "collateral" in nature. (R-23).

On appeal, Appellant largely regurgitates the same arguments, asserting that discovery should have been allowed because the lower court "should have been alarmed that the ZBA held a meeting that excluded" Appellant and should also have been concerned with the "unusual number of judicial recusals", among other things. (Appellant's Brief at pp. 51-52). None of these arguments are aimed at genuinely addressing issues which are "material" or "necessary" to the underlying proceeding. Accordingly, this Court should affirm the lower court's denial of the request for discovery (or oral argument) which, again, remains tantamount to a fishing expedition and was not required for the lower court to decide the Article 78 Petition.

## POINT V

### APPELLANT IS NOT ENTITLED TO MONETARY RELIEF

In the Article 78 proceeding, Appellant sought, among other things, an Order directing the Town Respondents to pay Appellant (i) $14,400.00 for lost rent to date;

(ii) additional lost rent to be determined at the end of this case (at $2,400.00 per month); (iii) attorneys' fees of $22,000 to Petitioner for her "legal work" to date (at a rate of $550 per hour); (iv) future attorneys' fees in an amount to be determined (at $550 per hour); and (v) punitive damages in the amount of $100,000.00. (R-47). Alternatively, Appellant sought $2,000,000.00 for "illegally devaluing" her property. *Id*. On appeal, Appellant continues to seek various forms of monetary relief. (Appellant's Brief, p. 54).

The lower court did not address the request for monetary relief directly because it determined that the Petition had no merit and should be dismissed. (R-24)(" It should go without saying that based on the forgoing Decision and Order, the Court will not be ordering any kind of damages, costs, or attorney's fees to the Petitioner. Each party is to bear their own costs in litigating this matter.") The same result is appropriate on appeal and any claim for monetary relief must also be summarily rejected because these claims rely and are based on the contention that the Town Respondents somehow acted improperly by not allowing the residential use on the second floor of the standalone garage. However, in the unlikely event this Court determines that Appellant is entitled to prevail on any of her claims to allow the residential use, any continued claim for monetary damages must be summarily rejected.

CPLR §7806 provides that any restitution or damages granted to a petitioner in an Article 78 must be "*incidental* to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity." *See* CPLR §7806 (emphasis supplied). "[W]here the thrust of the lawsuit is the review of an adverse ... agency determination, with the monetary relief incidental, [the] Supreme Court may entertain the entire case under CPLR article 78" *Matter of Gross v. Perales*, 72 N.Y.2d 231, 234, 532 N.Y.S.2d 68 (1988). Whether damages are incidental to the primary relief sought "depends upon the facts of the case" *Pauk v. Board of Trustees of City Univ. of New York,* 68 N.Y.2d 702, 705, 506 N.Y.S.2d 308 (1986). However, such damages are generally confined to monies that an agency either collected from or withheld from a petitioner and then was obligated to reimburse after a court annulled a particular agency determination. *See, e.g. Metropolitan Taxicab Bd. of Trade v. New York City Taxi & Limousine Com'n*, 115 A.D.3d 521 (1st Dep't 2014).

In other words, monetary injury allegedly incurred as a result of agency action does not necessarily constitute incidental damages simply because a court later finds the action to have been arbitrary and capricious. *Id*. Further, damages for items such as "lost profits" or loss of economic advantage do not qualify as incidental to the annulment of an agency's determination. *See Gross*, 72 N.Y.2d at 234 (1988); *see*

*Golomb v. Board of Educ. of City School Dist. of City of New York*, 92 A.D.2d 256, 260 (2d Dep't 1983). Additionally, even if the Appellant had a meritorious claim on appeal, she would not be entitled to an award of attorney's fees for her own work as no such award is authorized by agreement between the parties, statute, or court rule. *See Sage Sys., Inc. v. Liss*, 39 N.Y.3d 27, 177 N.Y.S.2d 525 (2022); *Matter of Part 60 Put-Back Litig.,* 36 N.Y.3d 342, 361, 141 N.Y.S.3d 410 (2020); *Matter of Milton R.*, 197 A.D.3d 1174, 1176, 153 N.Y.S.2d 526, 528 (2d Dep't 2021).

On appeal, Appellant again provides an unsupported pecuniary wish-list for monetary damages (including attorney's fees) without setting forth how or why these damages should be determined or considered "incidental" within the confines of CPLR §7806. (Appellant's Brief, p. 54). Appellant evidently is frustrated at having been caught profiteering off the installation of an illegal residential apartment in the standalone garage without requisite zoning authority to do so. The money Appellant now contends she has "lost" and other damages allegedly incurred as a result of the Town Respondents' actions cannot properly be considered "incidental" damages as they are not items the Town Respondents either collected from or withheld directly from a Appellant. Thus, the request for monetary damages included on appeal must be rejected even if the Court determines the underlying appeal has merit, because these damages were not "incidental" to the primary relief sought in the Petition.

## V.    CONCLUSION

For the reasons set forth herein, the Town Respondents respectfully submit that the Decision and Order should be affirmed in all respects.

Dated:  White Plains, New York
          August 21, 2024

**KEANE & BEANE, P.C.**

By:  /s/ Eric L. Gordon
     Eric L. Gordon
     Attorneys for the Town Respondents
     445 Hamilton Avenue, 15th Floor
     White Plains, New York 10601
     (914) 946-4777
     (914) 946-6868 (fax)
     egordon@kblaw.com

Of Counsel – Robert C. Zitt, Esq.

I hereby certify pursuant to 22 NYCRR 1250.8(j) that the foregoing brief was prepared on a computer using Microsoft Word.

*Type.* A proportionally spaced typeface was used, as follows:

| | |
|---|---|
| Name of typeface: | Times New Roman |
| Point size: | 14 |
| Line spacing: | Double |

*Word Count.* The total number of words in this brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, proof of service and this Statement is 10,244.

Dated: August 21, 2024



Case 7:25-cv-02618-CS    Document 67-22    Filed 01/23/26    Page 1 of 1

| | |
|---|---|
| **From:** | Kowalski, Kim |
| **To:** | Black, Meredith; Lee, Rosemary; Meredith Black; Michaelis, Peter; Roger van Loveren; Spano, Lisa |
| **Subject:** | 12/7 ZBA Agenda and Backup |
| **Date:** | Friday, December 1, 2023 10:58:00 AM |
| **Attachments:** | Lacovara Green 55 Holly Branch.pdf |
| | Cramer 32 The Terrace.pdf |
| | A Kids World at Trinity Church 325 West Patent.pdf |
| | Kenoff 719 Old Post Road.pdf |
| | Blau 23 East Lake.pdf |
| | Memorandum - Bedford -- Hammer - 146 Goldens Bridge Road - Proposed Resolution 4870-0699-3299 v.1.pdf |
| | Z ZBA 12-07-2023 Agenda.pdf |
| | DRAFT ZBA 11-23-2 - Hammer - 146 Goldens Bridge - Cottage EG.docx |

Hello,

Eric would like you to review the draft resolution for Hammer and get back to him and me with any changes by Tuesday (12/5) morning.

Packets are ready for pickup.

Peter, I have some resolutions that require your signature.

Thank you,

*Kim M. Kowalski*
Town of Bedford
Zoning Board of Appeals
914.666.4585
425 Cherry Street
Bedford Hills, NY 10507

914.864.3732

**From:** Eric L. Gordon <egordon@kblaw.com>
**Sent:** Thursday, November 30, 2023 2:39 PM
**To:** Ciraco, Albert <aciraco@bedfordny.gov>; Youngblood, Jesica <jyoungblood@bedfordny.gov>; Kowalski, Kim <kkowalski@bedfordny.gov>; Michaelis, Peter <pmichaelis@bedfordny.gov>
**Subject:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**CAUTION:** External sender.

Al, Kim, Jesica and Peter,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Eric
Eric L. Gordon
Principal Member



**Serving the Hudson Valley and Beyond for over 40 Years**

445 Hamilton Avenue, Suite 1500
White Plains, NY 10601

(914) 946-4777  Ext: 335
(914) 946-6868 (Fax)
egordon@kblaw.com
www.kblaw.com
Follow us on Twitter
Follow us on Facebook
Follow us on LinkedIn

PERSONAL & CONFIDENTIAL
The information transmitted herein may contain privileged and/or confidential material. Any disclosure, copying, distribution or other use of, or taking of any action in reliance upon, information contained herein or attached hereto by persons or entities other than the intended recipient(s) is prohibited. Any misdirection or other error in the transmission of this information is not and shall not be considered a waiver of any applicable privileges.  If you have received this transmission in error, please immediately notify the sender and destroy the original transmission and its attachments without saving, distributing or copying in any manner.

  Please consider the environment before printing this email message.

MELANIE HAMMER, ESQ.
360 Court Street, Suite 3
Brooklyn, NY 11231
melanie@hammer-esq.com
718.757.7677

January 23, 2026

**Honorable Judge Cathy Seibel**
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

     **Re: Hammer v. Bedford et. al.**
     **Index. No 25CV2618 (CS)(JCM)**
Re: Request for In Camera Review in Connection with Pending Rule 60(b) Motion

---

Dear Judge Seibel:

I write respectfully in connection with Plaintiff's pending motion for relief pursuant to Rule 60(b).

As set forth in the motion papers, the FOIL production underlying the Rule 60(b) application contains 800 pages of extensive redactions to internal municipal communications generated immediately before and after the Zoning Board of Appeals' November 2, 2023, hearing and the December 7, 2023, adoption of the written resolution at issue. Many of these communications involve the Town Attorney and the factual characterization of the structure central to the Court's prior decision, and in several instances, even *subject lines and document titles* were withheld.

Plaintiff does not seek discovery or disclosure of these materials at this stage. Rather, to the extent the Court has any concern whether its prior decision rested on a complete and accurate factual record, Plaintiff respectfully submits that a limited in camera review of the unredacted communications would permit the Court to assess materiality and fairness efficiently, without opening discovery or requiring production to Plaintiff.

Plaintiff raises this issue solely to assist the Court in determining whether enforcement of the judgment would be equitable under Rule 60(b), and defers entirely to the Court's discretion as to whether such review would be helpful.

Thank you for the Court's consideration.

Respectfully submitted,

Melanie Hammer, Esq.
360 Court Street, Suite 3
Brooklyn, NY 10536
718-757-7677
Melanie@hammer-esq.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
Melanie Hammer,

                                            Docket No.: 25-CV-02618(CS)

               Plaintiff,                           **DECLARATION OF**
                                                  **GERALD S. SMITH**

     -against-

Town Of Bedford New York, Department of Building
Bedford new York, Zoning Board of Appeals Bedford
New York, Building Inspector Town of Bedford New
York (Albert Ciraco), Attorney for the Town of Bedford
York (Eric Gordon, Esq. & Robert Zitt, Esq.)

               Defendants.
--------------------------------------------------------------------X

    **GERALD S. SMITH, ESQ.,** an attorney duly admitted to practice law in the United

States District Court for the Southern District of New York, hereby deposes and says subject to

the penalties of perjury:

    1.     I am a member of the law firm of Silverman & Associates, attorneys for the

Defendants, TOWN OF BEDFORD, BEDFORD DEPARTMENT OF BUILDINGS, BEDFORD

ZONING BOARD OF APPEALS, ALBERTO CIRACO, ERIC GORDON, ESQ. AND ROBERT

ZITT, ESQ.  I am fully familiar with the facts and circumstances of this matter based on my review

of the file maintained by my office in defense of this litigation.

    2.     This Declaration is submitted in support of the Defendants' Opposition To Plaintiff's

        Motion To Vacate This Court's January 13, 2026 Decision as well as Plaintiff's

        application for an in camera review of documents, and for such other and further relief

        as this Court deems just and proper.

    3.     As is more fully discussed in the Defendants' Memorandum of Law, the

Plaintiff's motion and application should be denied as Plaintiff has failed to provide any basis to support either.

    4.    In support of Defendants' Opposition, annexed hereto are the following:

    A.    Documents that were relied upon by Plaintiff during her litigation before the State Supreme Court, Westchester County.

Dated: White Plains, New York
       February 24, 2026

Respectfully submitted,

**SILVERMAN & ASSOCIATES**

By: _____

Gerald S. Smith
*Attorneys for Defendants*
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
(914) 574-4510
gsmith@silvermanandassociatesny.com

To:    **Via ECF**
       *All Counsel of Record including Plaintiff*

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:06 PM
NYSCEF DOC. NO. 7

INDEX NO. 71446/2023
RECEIVED NYSCEF: 11/29/2023



55

A-475

Doc. 8 EXHIBIT(S)  - F- Proof Structure in Question is Legal. Petitioner,
Melanie Hammer Filed: 11/29/2023 [p. 56]

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:06 PM    INDEX NO. 71446/2023

NYSCEF DOC. NO. 8    RECEIVED NYSCEF: 11/29/2023



56

A-476

Doc. 9 EXHIBIT(S) - Architects Drawing to "Legalized Apartment" Petitioner, Melanie Hammer Filed: 11/29/2023 [p. 57-58]

Case 7:25-cv-02618-CS    Document 79-1    Filed 02/24/26    Page 3 of 6





Case 7:25-cv-02618-CS    Document 79-1    Filed 02/24/26    Page 5 of 6



A-479

Case 7:25-cv-02618-CS    Document 79-1    Filed 02/24/26    Page 6 of 6



A-480

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
Melanie Hammer,

                                           Docket No.: 25-CV-02618(CS)

                 Plaintiff,

        -against-

Town Of Bedford New York, Department of Building
Bedford new York, Zoning Board of Appeals Bedford
New York, Building Inspector Town of Bedford New
York (Albert Ciraco), Attorney for the Town of Bedford
York (Eric Gordon, Esq. & Robert Zitt, Esq.)

                Defendants.
-------------------------------------------------------------------X

## **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE AND APPLICATION FOR AN IN CAMERA REVIEW**

*Of Counsel*:  Gerald S. Smith

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**……………………………………………………………..1

**PROCEDURAL BACKGROUND**……………..…………………………………………………2

     **The Plaintiff's Motion To Vacate**……………………………………………………3
     **The Plaintiff's Motion For In Camera Review**……………………………………...3

**STANDARD OF REVIEW**………………………………………………………………..3

     **FRCP 60(b)(2)**……………………………………………………………………4
     **FRCP 60(b)(3)**……………………………………………………………………5
     **FRCP 60(b)(6)**……………………………………………………………………5

**ARGUMENT**

     **POINT I**

     **PLAINTIFF HAS NOT PROVIDED A BASIS FOR THE COURT TO
     VACATE AND/OR RECONSIDER THE PRIOR DECISION PURSUANT
     TO FRCP 60(b)(2)**……………......................................................................6

          A.  **The Documents Were Already In Plaintiff's Possession**…………………..6
          B.  **Plaintiff Did Not Exercise Sufficient Diligence**…………………………7
          C.  **The Documents Are Cumulative**……………………………………...8
          D.  **The Documents Cited By Plaintiff Do Not Support Her Request To
             Revisit The Court's Prior Findings Regarding Her Takings Claims
             Pursuant To FRCP 60(b)(2)**……………………………………………8
          E.  **The Documents Cited By Plaintiff Do Not Support Her Request To
             Revisit The Court's Prior Findings Regarding Prosecutorial Immunity
             Pursuant To FRCP 60(b)(2)**……………………………………………..12
          F.  **The Documents Cited By Plaintiff Do Not Support Her Request To
             Revisit The Court's Prior Decision Regarding Her Procedural Due
             Process Claims Pursuant To FRCP 60(b)(2)**…………………………...13
          G.  **The Documents Cited By Plaintiff Do Not Support Her Request To
             Revisit The Court's Prior Findings Regarding Her Monell Claims
             Pursuant To FRCP 60(b)(2)**……………………………………………..14

**POINT II**

**PLAINTIFF HAS NOT PROVIDED A BASIS FOR THE COURT TO VACATE AND/OR RECONSIDER THE PRIOR DECISION PURSUANT TO FRCP 60(b)(3)**……………………………………………………………15

    **A. The Town's January 2026 FOIL Response**…………………………16

**POINT III**

**PLAINTIFF CANNOT SEEK RELIEF UNDER FRCP 60(b)(6)**…………………...17

**POINT IV**

**PLAINTIFF HAS NOT PROVIDED A BASIS FOR AN IN CAMERA REVIEW**………………………………………………………………………...18

**CONCLUSION**…………………………………………………………………………19

## TABLE OF AUTHORITIES

*Cases*

*ATX Debt Fund 1, LLC v. Paul,*
*2024 WL 2093387 (S.D.N.Y. May 9, 2024)*..................................................................................6,10
*Catskill Development, L.L.C. v. Park Place Entertainment Corp.,*
*286 F.Supp.2d 309 (S.D.N.Y. 2003)*..........................................................................................5
*Eisenberg v. New York City Dep't of Educ.,*
*2026 WL 18802 (E.D.N.Y. Jan. 2, 2026)*....................................................................................6
*Entral Grp. Int'l, LLC v. 7 Day Cafe & Bar,*
*298 Fed. App'x. 43 (2nd Cir. 2008)*.........................................................................................16
*Johnson v. Askin Capital Mgmt., L.P.,*
*202 F.R.D. 112 (S.D.N.Y.2001)*...............................................................................................6,10
*Kemp v. United States,*
*596 U.S. 529 (2022)*...............................................................................................................5
*Liljeberg v. Health Servs. Acquisition Corp.,*
*486 U.S. 847 (1988)*.............................................................................................................5,17
*Maduakolam v. Columbia University,*
*866 F.2d 53 (2nd Cir. 1989)*..................................................................................................5
*Mandala v. NTT Data, Inc.,*
*88 F.4th 353 (2nd Cir. 2023)*.................................................................................................3,4
*Nemaizer v. Baker,*
*793 F.2d 58 (2nd Cir. 1986)*..................................................................................................4,17
*Thai-Lao Lignite (Thailand) Co.,*
*864 F.3d*...........................................................................................................................3,4
*United States v. Int'l Bhd. of Teamsters,*
*247 F.3d 370 (2nd Cir. 2001)*..............................................................................................passim

*Rules*

*Federal Rule of Civil Procedure 60(b)*.....................................................................................passim
*FRCP 12*.........................................................................................................................passim
*FRCP 60(b)(2)*.................................................................................................................passim
*FRCP 60(b)(3)*.................................................................................................................passim
*FRCP 60(b)(6)*.................................................................................................................passim

## PRELIMINARY STATEMENT

Defendants, the Town of Bedford, Bedford Department of Buildings, Bedford Zoning Board of Appeals, Alberto Ciraco, Eric Gordon, Esq. and Robert Zitt, Esq., (collectively "Defendants"), by and through their attorneys, SILVERMAN & ASSOCIATES, respectfully submit this Memorandum of Law in opposition to Plaintiff's motion to vacate the decision issued by this Court on January 13, 2026, dismissing Plaintiffs' Amended Complaint, as well as to Plaintiff's application for an in camera review of certain documents, and for such other and further relief as this Court deems appropriate.

As is set forth herein, the entire premise of Plaintiff's motion, that the documents cited are "new" is inaccurate. They are not new. That is because, for the vast majority of the documents in question, Plaintiff has possessed them since well before this litigation commenced and, in some cases, *relied upon them in prior litigations*. And in the case of the one category of documents which Plaintiff recently received, despite her claims that she had sought these documents from the Town since 2023, documents attached by Plaintiff to her motion demonstrate that the first time she did so was not until June 2025, and the documents – numbering over eight hundred pages in total – were then provided to her two months later. Finally, other documents Plaintiff claims are "new" are simply cumulative of the assertions that Plaintiff made in her Complaint.

As a result of all of these facts, Plaintiff has failed to provide any basis for relief under FRCP 60(b)(2) or (3) and is precluded from seeking relief pursuant to FRCP 60(b)(6). As a result, the motion to vacate, as well as Plaintiff's application for an in-camera review of certain documents, should therefore be denied.

1

## <u>PROCEDURAL BACKGROUND</u>

Plaintiff initiated this action on March 27, 2025 (ECF No. 1) and filed an Amended Complaint on June 10, 2025 (ECF No. 41) in which she asserted eighteen separate causes of action including an allegation that the Defendants conspired to deprive her of her rights under Section 1983.  Defendants subsequently filed a motion to dismiss the Amended Complaint (the "Complaint") in its entirety, and on January 13, 2026, this Court issued a Decision and Order granting that motion in its entirety (the "Decision and Order").  (ECF No. 66).

Among the conclusions in the Decision and Order that are relevant to the instant motion, this Court dismissed Plaintiff's procedural due process claim after finding that Plaintiff either had been afforded sufficient due process, or that sufficient due process had been available to her at all times (Decision and Order at pp. 10-14). The Decision and Order then dismissed Plaintiff's takings claim because the Plaintiff had failed to plead facts sufficient to suggest interference with an investment-backed expectation.  Specifically, this Court found that Plaintiff had failed to plead facts suggesting that she had relied upon any regulation at the time of purchase entitling her to use the garage structure on her property at issue as a "residence" and noted that Plaintiff had failed to "allege when she bought the property or that she relied on any particular regulation when she did."  (Decision and Order at p. 17).  This Court also dismissed the claims against individual Defendants Gordon and Zitt after determining that the conduct complained of was prosecutorial in nature and therefore entitled them to immunity.  (Decision at pp. 33-54).

Finally, this Court dismissed Plaintiff's Monell claim based upon her failure to plead sufficient facts regarding an underlying Constitutional violation.  (Decision at pp. 54-56).

**The Plaintiff's Motion To Vacate**

In her current motion to vacate the Decision and Order, Plaintiff cites to "new" evidence which she claims she only obtained after briefing on Defendants' motion to dismiss had closed and argues that it constitutes evidence which undermines the factual premises of that decision. Specifically, Plaintiff attaches twenty exhibits to her motion, all presumably "new" documents, as well as approximately eight hundred documents produced to her in response to a Freedom of Information Law ("FOIL") request and asserts that they support the reinstatement of her procedural due process, takings, and Monell claims and undermine the basis for affording immunity to Gordon and Zitt.

**The Plaintiff's Motion For In Camera Review**

In conjunction with the motion to vacate, Plaintiff also filed an application for an *in-camera* review by this Court of the over eight hundred pages of documents produced by the Town to Plaintiff on August 5, 2025 in response to a FOIL request that was first submitted to the Town Records Officer on June 11, 2025. Plaintiff notes in her application that the documents are heavily redacted, and states that the request for *in camera* review is made "to the extent the Court has any concern whether its prior decision rested on a complete and accurate factual record . . ." (ECF No. 69).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding ...." Fed. R. Civ. P. 60(b). "[A] denial of a motion to vacate a judgment under Rule 60(b) is reviewed for abuse of discretion ...." *Mandala v. NTT Data, Inc.,* 88 F.4th 353, 359 (2nd Cir. 2023)(internal quotation marks and citations omitted); see also *Thai-Lao Lignite (Thailand) Co.*,

3

864 F.3d at 182 ("[T]he decision whether to grant such relief is addressed to the sound discretion of the district court."). A district court abuses its discretion if its Rule 60(b) "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[3] *Mandala*, 88 F.4th at 359 (internal quotation marks and citation omitted). "In exercising that discretion [in ruling on a Rule 60(b) motion], courts aim to 'strike[ ] a balance between serving the ends of justice and preserving the finality of judgments.' " *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 (alteration in original) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2nd Cir. 1986)).

In short, Rule 60(b) motions "should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened." *Nemaizer*, 793 F.2d at 61 (internal quotation marks and citations omitted) and "[T]he burden is on the moving party to demonstrate that it is entitled to relief, and courts generally ... require that the evidence in support of the motion to vacate a final judgment be highly convincing." *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 (internal quotation marks and citations omitted).

### FRCP 60(b)(2)

Rule 60(b)(2) permits relief on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). To obtain relief under this rule, "[t]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2nd Cir. 2001) (quotation omitted).

4

**FRCP 60(b)(3)**

Rule 60(b)(3) permits such relief on the basis of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). To obtain relief under this rule, "[t]he moving party must demonstrate by clear and convincing evidence that the adverse party engaged in fraud, misrepresentation, or other misconduct." *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 286 F.Supp.2d 309, 312 (S.D.N.Y. 2003). "In addition, the moving party must show that this conduct prevented [the movant] from fully and fairly presenting his case." Id.

**FRCP 60(b)(6)**

"Rule 60(b)(6) provides a catchall for 'any other reason that justifies relief' " and is only available "when Rules 60(b)(1) through (b)(5) are inapplicable." *Kemp v. United States*, 596 U.S. 529, 533 (2022). "Even then, 'extraordinary circumstances' must justify reopening" a case. Id. (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988)). Moreover, Court have specifically recognized that, where a motion is premised on a ground fairly classified as falling within the scope of Rule 60(b)2) or 60(b)(3), as is the case in this instant matter, relief under Rule 60(b)(6) is foreclosed. See *Maduakolam v. Columbia University*, 866 F.2d 53, 55 (2nd Cir. 1989) ("The court may treat a motion to vacate a prior judgment as having been made under 60(b)(6) only if the other, more specific grounds for relief encompassed by the rule are inapplicable.").

5

**ARGUMENT**

**POINT I**

**PLAINTIFF HAS NOT PROVIDED A BASIS FOR
THE COURT TO VACATE AND/OR RECONSIDER
THE PRIOR DECISION PURSUANT TO FRCP 60(b)(2)**

The crux of Plaintiff's instant motion is that newly discovered evidence requires this Court to revisit the Decision and Order because it calls into question the basis for that determination.  This argument should be rejected for several reasons.

**A.      The Documents Were Already In Plaintiff's Possession**

First, and as is set forth below, in many instances the documents that Plaintiffs asserts were newly discovered were in the Plaintiff's possession well before this litigation commenced and, in some instances, were even relied upon by Plaintiff in prior litigations against the Town. As such, they do not constitute "new" evidence under FRCP 60(b)(2).  See *ATX Debt Fund 1, LLC v. Paul,* 2024 WL 2093387, at \*2 (S.D.N.Y. May 9, 2024)(dismissing motion for relief under FRCP 60)("But if Paul possessed the relevant information before the date of the summary judgment decision, regardless of ATX's behavior, Paul has not met the "onerous standard" for relief."); *Johnson v. Askin Capital Mgmt., L.P.,* 202 F.R.D. 112, 114 (S.D.N.Y.2001)("Evidence is not newly discovered if it was in the moving party's possession prior to the entry of judgment."); see also *Eisenberg v. New York City Dep't of Educ.*, 2026 WL 18802, at \*2–3 (E.D.N.Y. Jan. 2, 2026)("it is beyond cavil that evidence that was actually in the possession of the movant prior to the challenged order or judgment cannot form the basis for a [Rule 59(e) or] 60(b) motion."(internal citations omitted)

6

**B.    Plaintiff Did Not Exercise Sufficient Diligence**

While some of the documents cited by Plaintiff were already in her possession and thus cannot be considered "new," in other instances Plaintiff has failed to establish that she exercised the proper diligence to obtain the documents as is required under FRCP 60(b)(2), and indeed documents relied upon by Plaintiff herself preclude her from making such an argument.    For example, Plaintiff cites three documents in support of the claim that she was unable to discover certain evidence until only recently, and that this was due to the Town withholding and delaying its response to a FOIL request made by Plaintiff.  This is not accurate.

The first document Plaintiff cites is a document attached at Exhibit J to her motion, which is a letter to a State Court Justice dated January 23, 2024, requesting limited discovery related to a pending matter.  The letter did <u>not</u> constitute a FOIL request to the Town, and the Town was therefore under no obligation to respond absent a Court order which, as the Plaintiff recognized in her Complaint, was never issued because the legal action against her was subsequently dismissed.  The second document in question which was attached at Exhibit K to the motion to vacate consists of an email to the same Court regarding "missing Brady materials" dated October 22, 2024.  Once again, this email did <u>not</u> constitute a FOIL request to the Town, created no obligations on its part, and was rendered moot when the criminal action against Plaintiff was dismissed.  In fact, the only document which does refer to a FOIL request by Plaintiff is attached at Exhibit L to her motion and it reflects the fact that the FOIL request was not made until June 11, 2025, or just two months before the documents were provided to her.[1]

---

[1]    This is also reflected in the Town's response to Plaintiff's request, which is attached at Exhibit A to her motion.  Plaintiff's June 11, 2025 FOIL request required the Town to search for every document in its possession, including emails, relating to Plaintiff, or Plaintiff's property, since April 2023. In order to respond to Plaintiff's FOIL request, the Town conducted an electronic search of its network and then needed to review every document that was potentially responsive to the FOIL request. Ultimately, the Town determined that approximately 800 pages of documents were responsive, many of which needed be

7

Defendants submit that these documents cited by Plaintiff demonstrate that she cannot establish that she used proper diligence to obtain the materials as required by FRCP 60(b)(2) because, if she knew of their potential relevance as far back as January 2024 when she first sought them from the Court, she has not provided any explanation why she then waited almost a year and a half, and well after this litigation had commenced, to request them from the Town.  As such, any documents that were part of the Town's August 2025 FOIL response are not "new" under FRCP 60(b)(2).

## C.  The Documents Relied On By Plaintiff Are Cumulative

As Defendants demonstrate herein, the documents cited by Plaintiff as "new" do not provide any additional factual information that was not already relied upon or alleged in Plaintiff's Complaint.  One of the fatal flaws of Plaintiff's motion to vacate is that it ignores the fact that, when this Court considered and determined Defendants' Motion To Dismiss pursuant to FRCP 12, it assumed all of Plaintiff's assertions to be true.  Documents that merely echo those assertions are therefore cumulative.  For example, a document which Plaintiff now claims demonstrates a conspiracy amongst the Defendants is merely cumulative because that assertion was already made in the Plaintiff's Complaint.

## D.  The Documents Cited by Plaintiff Do Not Support Her Request To Revisit The Court's Prior Findings Regarding Her Takings Claim Pursuant To FRCP 60(b)(2)

In the Decision and Order, this Court held that Plaintiff had failed to plead a takings claim because she failed to assert facts plausibly suggesting a deprivation of any economic benefit from the property (Decision and Order at pp. 14-17) and because she also failed to state a

---

redacted because they were protected by the attorney/client privilege or were exempt from FOIL based on the intra-agency exemption. Public Officers Law §87(2)(g).

claim based upon the interference with an "investment-backed expectation" because she failed to "allege when she bought the property or that she relied on any particular regulation when she did." (Decision at p. 17).

Plaintiff does not now challenge the Court's conclusion and only suggests that "new" evidence requires a reexamination of the question regarding a protected property interest. As stated above, the documents upon which Plaintiff relies are not actually "new." Indeed, they are documents which Plaintiff not only possessed prior to initiating this litigation, but upon which she relied in at least one prior State Court litigation. For example, in her current motion Plaintiff refers to a "permit-era survey" which, she claims, "[c]ontradicts Defendants' characterization of the structure as an "illegal apartment" and establishes misrepresentation of a central factual premise." (See Exhibit E to Plaintiff's Motion to Vacate; ECF 67-3 (Plaintiff's Exhibit Index)). This claim is not accurate because the document in question is "new."

First, while Plaintiff appears to suggest that this document was only recently provided to her, Plaintiff does not actually identify when she first received it or from whom.  In fact, the only documents for which Plaintiff provides a date of production are those produced by the Town on or about August 5, 2025, in response to one of Plaintiff's numerous and voluminous FOIL requests.  Plaintiff describes those documents as consisting of communications amongst the Defendants and Town officials (Plaintiff's Affirmation (ECF 67-1) at Par. 24) and does not allege that the production included any "Town records," let alone Exhibit E to the Motion to Vacate. Indeed, in her letter setting forth her FOIL request, which is repeated in the document attached at Exhibit A to Plaintiff's motion, Plaintiff specified that she was seeking "materials generated or received from April 1, 2023 to the present" and clarified that she did not need the "public Court filings" for either her Article 78 action or the appeal filed in the Appellate Division, Second

9

Department, and also advised the Town Records Officer that she did not need "the department building file itself." (See Exhibit A). Plaintiff also describes Exhibit E in the Motion to Vacate as a document coming from "records maintained by the Town of Bedford" which existed prior to 2023 (Plaintiff's Aff. (ECF No. 67-1) at II(4-7)).

Consequently, by Plaintiff's own admission, this document was not part of the response to the recent FOIL request, nor does Plaintiff actually allege it was part of the production in response to that FOIL request.[2] As such, Plaintiff has failed to satisfy her burden under FRCP 60(b)(2) that this document is "new."

Second, even if Plaintiff had explicitly claimed that the document is "new," that claim would be belied by the undisputable fact that Plaintiff possessed this document, or at least a version of it, prior to initiating this litigation as demonstrated by the fact that she submitted the same surveys in the litigation filed with the New York State Supreme Court, Westchester County, in November 2023, or well over a year before this lawsuit began in March 2025.[3] This alone mandates the rejection of any request to vacate the Decision and Order because this document does not constitute "new" evidence under FRCP 60. *ATX Debt Fund 1, LLC,* 2024 WL 2093387, at *2 ("But if Paul possessed the relevant information before the date of the summary judgment decision, regardless of ATX's behavior, Paul has not met the "onerous standard" for relief."); *Johnson,* 202 F.R.D. at 114 ("Evidence is not newly discovered if it was in the moving party's possession prior to the entry of judgment.")

---

[2]    Similarly, the documents attached at Exhibits G, H, and S to Plaintiff's motion also do not fall into the category of documents that were the subject of the FOIL request.
[3]    Copies of these documents bearing NYSCEF stamps showing the 2023 filing dates are attached at Exhibit A to the Declaration of Gerald S. Smith (the "Smith Dec."). Notably, many of the Exhibits attached to Plaintiff's Motion to Vacate bear such stamps, demonstrating they were also in Plaintiff's possession prior to the start of this litigation. (See Plaintiff's Exhibits J, M, N, O, P, R).

10

Additionally, even ignoring the fact that the document is not "new," and Defendants submit that this fact cannot be ignored, the document in question is cumulative of arguments that Plaintiff asserted in the Amended Complaint in this matter.  This is because while Plaintiff asserts in her current motion that the document somehow establishes that the property was recognized as a "residence," that fact was already asserted in the Complaint when Plaintiff asserted that the property had been recognized as a "residence" as far back as 2000 (Amended Complt. at Par. 9), a fact noted by this Court in Decision and Order.  (Decision at p. 2).  Plaintiff does not explain in her brief why this document merits this Court revisiting its determination.

Finally, the document is not relevant to the issue which this Court addressed in the Decision and Order when it dismissed Plaintiff's takings claim in part because the Plaintiff failed to "allege when she bought the property or that she relied on any particular regulation when she did." (Decision at p. 17).  This document has no bearing upon that question, and Plaintiff has offered no other evidence, new or otherwise, to question that conclusion.

Similarly, the other documents cited by Plaintiff in connection with the Motion to Vacate, including the documents attached at Exhibits G, H, and S as well as other "Town records now before the Court," also fail to support her position.  First, and as with the survey attached at Exhibit E, Plaintiff does not identify when she first received these materials and does not allege that it was subsequent to the commencement of the litigation before this Court.  Second, regardless of Plaintiff's failure to identify when she first received the documents, it is clear that they are not "new" as defined by FRCP 60(b)(2).  For example, and as with Exhibit E, at most they reflect the fact asserted by Plaintiff in her Complaint that prior Town records, according to Plaintiff, referred to the property as a "residence" and thus do not constitute "new" evidence that

11

is not cumulative of arguments Plaintiff has already presented and which this Court has already rejected as insufficient to support her takings claim.

In short, the documents cited by Plaintiff in support of her request to revisit the Court's dismissal of her takings claim are not sufficient to support that request and the motion to vacate the dismissal of the taking claim should be denied.

**E.      The Documents Cited by Plaintiff Do Not Support Her Request To Revisit The Court's Prior Findings Regarding Prosecutorial Immunity Pursuant To FRCP 60(b)(2)**

The premise of Plaintiff's argument regarding the issue of prosecutorial immunity is that, because she contends that emails, attached at Exhibits B, D, T, and U to her motion, suggest that Defendants Gordon and Zitt performed tasks that fell outside the scope of prosecutorial functions, they should never have been entitled to immunity for the claims asserted against them in the Amended Complaint that were dismissed by this Court.  This argument, however, misses the mark because the documents cited have no relation to those claims.

In her Amended Complaint, Plaintiff asserted claims against Gordon and Zitt based upon a variety of alleged actions including malicious prosecution, retaliation, the failure to disclose Brady materials, deprivation of a speedy trial, and due process violations.  As this Court recognized in its Decision and Order, those alleged actions all constituted prosecutorial functions and thus entitled Gordon and Zitt to immunity.  (Decision and Order at pp. 33-54).  Plaintiff does not actually allege that the Court's conclusions regarding those specific claims were incorrect.  Rather, Plaintiff points to documents which she claims constitute evidence of Gordon and Zitt, both of whom were serving as Legal Counsel for the Town, performing other legal-related services for their client, and then asserts that they therefore should not have been afforded

A-496

immunity for any other actions including, apparently, the prosecutorial functions previously addressed by this Court.

As Plaintiff herself recognizes in her brief in support of the Motion to Vacate, however, the immunity attaches to the particular function at issue.  (Plaintiff's Brief at p. 17). [4]  As such, it was Plaintiff's burden, pursuant to FRCP 60, to produce "new" evidence bearing on those particular functions.  Plaintiff fails to provide any such evidence.  Instead, she contends that because Gordon and Zitt might have, in other instances while serving the Town of Bedford and its officials, performed non-prosecutorial tasks, they cannot be entitled to immunity for prosecutorial tasks.  This argument not only contradicts settled law, but also the very legal principle recognized by Plaintiff in her own brief.

Defendants submit that it is telling that Plaintiff does not address the actual claims that were asserted against Gordon and Zitt in her Amended Complaint.  Instead, Plaintiff appears to be seeking to use this motion as a vehicle to assert completely new claims against them.  This, Defendants submit, is inappropriate under FRCP 60 and Plaintiff's effort to do so should be rejected.

F.      **The Documents City By Plaintiff Do Not Support Her Request To Revisit The Court's Prior Findings Regarding Her Procedural Due Process Claims Pursuant To FRCP 60(b)(2)**

Defendant next argues that the "new" documents also call into question this Court's dismissal of Plaintiff's claim that she did not receive a fair hearing during either the Building Inspector's denial of her initial permit applications or the appeal of that denial to the Town of

---

[4]    This Court recognized the same principle in the Decision and Order.  See e.g. Decision and Order at p. 34 ("In other words, immunity attaches to the function performed, not the office itself.")(citations omitted).

Bedford Zoning Board of Appeals.  Once again, the documents relied upon by Plaintiffs do not support this argument.

First, the documents have no relevance to the basis for the Court's ruling.  In the Decision and Order, this Court held that, because due process was available to Plaintiff, and indeed this Court noted that Plaintiff availed herself of those avenues, that any alleged claim for denial of due process was unfounded.  (Decision and Order at pp. 10-14).  None of the documents cited by Plaintiff have any relation to that determination.  Additionally, because Plaintiff has failed to identify any documents that were withheld from her – either she already possessed them or only recently requested them from the Town – she cannot suggest that the materials were withheld from her at the time of either the denial of the building permit application or the appeal to the ZBA.

Finally, the arguments set forth in Plaintiff's Motion to Vacate are duplicative of the allegations Plaintiff made in her Amended Complaint regarding why she believes she was denied procedural due process.  Plaintiff does not point to a single "new" document or any reason why the documents she provided include information that is not cumulative of those previous arguments and assertions.  As such, the documents are merely cumulative and thus not "new" under FRCP 60(b)(2).

G.    **The Documents Cited by Plaintiff Do Not Support Her Request To Revisit The Court's Prior Findings Regarding Her Monell Claims Pursuant To FRCP 60(b)(2)**

The premise of Plaintiff's argument to revisit her Monell claim is that recently produced emails demonstrate "coordinated involvement" amongst the Defendants (Plaintiff's Brief in support of Motion to Vacate at p. 19) to deprive her of her rights.  This argument should be rejected and the request to revisit her Monell claim should be denied.

14

First, the suggestion of a conspiracy between the Defendants is precisely what Plaintiff alleged in her Amended Complaint (see e.g. Amended Cmplt. at Paras. 83, 85, 106, 110, 120, 123, 124, 125, 149, 171, 280, 281) and Defendants submit that, since this Court credited all of her assertions as true pursuant to FRCP 12, even if Plaintiff believes that an additional email or emails provide further support for that assertion that will succeed in doing nothing more than rendering the emails cumulative of assertions that were already examined, considered and rejected by this Court. As such, they cannot be considered "new" under FRCP 60(b)(2). *Int'l Bd. Of Teamsters*, 247 F.3d at 392 (recognizing that, to obtain relief under FRCP 60(b)(2), "the evidence must not be merely cumulative or impeaching.")

Second, Plaintiff's argument ignores the fact that her Monell claim was not dismissed because she had failed to put forth evidence of a conspiracy; pursuant to Rule 12 the assertion of a conspiracy was assumed to be true. Rather, her claim was dismissed because this Court found that the Amended Complaint failed to plead facts sufficient to establish any underlying Constitutional claims. (Decision and Order at pp. 54-56). The documents now being relied upon by Plaintiff have no bearing upon that question and provide no basis for this Court to reconsider its prior holding.

## POINT II

### PLAINTIFF HAS NOT PROVIDED A BASIS FOR THE COURT TO VACATE AND/OR RECONSIDER THE PRIOR DECISION AND ORDER PURSUANT TO FRCP 60(b)(3)

The primary basis for Plaintiff's request pursuant to FRCP 60(b)(3) is that the Town withheld materials that were the subject of FOIL requests dating back to January 2024. (Plaintiff's Affirmation (ECF No. 67-1) at Par. 23; Plaintiff's Brief in Support of Motion to Vacate at p. 1). This is simply not accurate.

15

Plaintiff cites to three (3) documents in support of this claim.  The first document, attached at Exhibit J to her motion, is a letter to a State Court Justice dated January 24, 2024, requesting limited discovery in relation to an Article 78 proceeding Plaintiff commenced against the Town and other Town defendants.  This letter did <u>not</u> constitute a FOIL request to the Town, and the Town was under no obligation to respond absent a Court order which, as the Plaintiff recognized in her Amended Complaint, was never issued because the Article 78 proceeding was dismissed and the request for discovery was denied.  At the same time, the second document attached at Exhibit K consists of an email to the same State Court regarding "missing Brady materials."  Once again, this email did <u>not</u> constitute a FOIL request to the Town, created no obligations on its part, and was rendered moot when the criminal action against Plaintiff was dismissed.

Finally the only document which does refer to a FOIL request by Plaintiff is attached at Exhibit L to her motion and it reflects the fact that the FOIL request was not made until June 11, 2025, or just two months before documents were provided to her. The document belies any suggestion that the Town purposely withheld materials for an inordinate amount of time or otherwise engaged in any sort of nefarious conduct. Defendant submits that these facts preclude any argument for relief under FRCP 60(b)(3).  <u>See</u> <u>e.g.</u> *Entral Grp. Int'l, LLC v. 7 Day Cafe & Bar*, 298 Fed. App'x. 43, 44 (2nd Cir. 2008)("A Rule 60(b)(3) motion cannot be granted absent <u>clear and convincing evidence of material misrepresentation</u>")(emphasis added).

### A.    **The Town's January 2026 FOIL Response**

Plaintiff also cites to a letter from the Town (attached as Exhibit F to her motion) which, she claims, contains a false misrepresentation about documents in the Town's possession and is thus evidence of fraudulent conduct. Defendants submit that the accuracy of a FOIL response

16

made on January 12, 2026, to a request that was first made on December 21, 2025, has no bearing upon the Court's Decision and Order. The fact that Plaintiff believes there are records in the Town's possession which identify the property as a "residence" is a fact that Plaintiff asserted in her Amended Complaint (Amended Cmplt. at Par. 9) and which the Court acknowledged in the Decision and Order (Decision and Order at p. 2). Indeed, Defendants have already demonstrated that Plaintiff possessed and relied upon many of the alleged documents in litigation dating back to 2023. To the extent Plaintiff takes issue with the sufficiency or accuracy of the Town's January 2026 FOIL response, Defendants submit that this is not the proper forum to object to the FOIL response and that such a claim does not provide a basis for relief under FRCP 60(b)(3).

For these reasons, Defendants submit that Plaintiff has failed to establish any basis for relief under FRCP 60(b)(2) or (3).

## POINT III

### PLAINTIFF CANNOT SEEK RELIEF UNDER FRCP 60(b)(6)

It is well settled that if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6). See *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *Nemaizer,* 793 F.2d at 63. In the instant case, Plaintiff has moved for relief under both FRCP 60(b)(2) and 60(b)(3). As such, she cannot also seek relief under FRCP 60(b)(6). See e.g. *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 391–92 (2nd Cir. 2001) ("Because Carey's claim regarding Nash's alleged perjury is properly considered under Rule 60(b)(2) as newly discovered evidence, Carey's claim under 60(b)(6) was correctly rejected.")

17

## POINT IV

## PLAINTIFF HAS NOT PROVIDED A BASIS FOR AN IN-CAMERA REVIEW

As is set forth above, the basis for Plaintiff's application for an *in-camera* review is that it is appropriate "to the extent the Court has any concern whether its prior decision rested on a complete and accurate factual record . . ." (ECF No. 69). Defendants submit that, because the Decision and Order was issued pursuant to FRCP 12, the question of a "complete and accurate factual record" is not relevant. Rather, the question before the Court was whether the pleadings were sufficient to state the claims asserted. Nothing in the documents cited by Plaintiff in her motion to vacate provides a basis to revisit the Court's conclusion regarding the underlying question, and Plaintiff's request for this Court to conduct an *in-camera* review of documents produced in response to a FOIL request amounts to a application that the Court take into consideration materials that are outside the four corners of the pleading, which is not appropriate under FRCP 12. Defendants submit that an *in-camera* review of the documents produced in response to her FOIL request would be both unnecessary and outside the scope of a FRCP 12 analysis.

Additionally, to the extent Plaintiff takes issue with the redactions the Town made to those documents, the grounds for which were set forth in the letter to Plaintiff accompanying the documents (see Exhibit A to Plaintiff's motion), Defendants respectfully submit that she had other avenues to challenge the redactions and this Court is not the proper venue to do so.

18

**CONCLUSION**

For all the reasons set forth herein, Defendants respectfully request that Plaintiff's motion to vacate, as well as her application for an in-camera review, be denied in their entirety.

Dated:  White Plains, New York
        February 24, 2026

Respectfully submitted,

**SILVERMAN & ASSOCIATES**

By:    _____
       Gerald S. Smith
       *Attorneys for Defendants*
       445 Hamilton Avenue, Suite 1102
       White Plains, New York 10601
       (914) 574-4510
       gsmith@silvermanandassociatesny.com

To:    **Via ECF**
       *All Counsel Of Record including Plaintiff*

19

### CERTIFICATION PURSUANT TO LOCAL R. 7.1(c)

The foregoing Memorandum of Law was typed using Microsoft Word.

*Typeface:* A proportionately spaced typeface was used, as follows:

      Name of typeface: Times New Roman

      Point size for body: 12

      Line spacing: Double

      Point size for footnotes: 12

      Line spacing for body (except text in block quotations): Double

*Margins:* Each page contains one-inch margins on all sides.

*Word Count:*

      The total number of words in the Memorandum of Law, exclusive of the caption, table of contents, table of authorities, and signature block is 5,536.

It is hereby certified pursuant that the foregoing Memorandum of Law complies with the requirements of Local Rule 7.1(c).

Dated:  White Plains, New York
       February 24, 2026

                Gerald S. Smith

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELANIE HAMMER,<br>　　　　　　Plaintiff,<br><br><br>　　　　- against -<br><br>TOWN OF BEDFORD NEW YORK, DEPARTMENT OF BUILDING BEDFORD NEW YORK, ZONING BOARD OF APPEALS BEDFORD NEW YORK, BUILDING INSPECTOR TOWN OF BEDFORD NEW YORK (ALBERT CIRACO), ATTORNEY FOR THE TOWN OF BEDFORD NEW YORK (ERIC GORDON, ESQ. & ROBERT ZITT, ESQ.),<br>　　　　　　Defendants. | No. 25-CV-2618 (CS) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR RELIEF UNDER RULE 60(b)(2), 60(b)(3), AND 60(b)(6)**

Plaintiff, Melanie Hammer, Esq.

1



SURVEY OF PROPERTY
PREPARED FOR
VINCENT DE PAUL FARRELL, JR.
&
CLOTILDE B. FARRELL
SITUATED IN THE
TOWN OF BEDFORD
WESTCHESTER COUNTY, N.Y.

NEW MAP - Residential Use/Vested Property Right since 1987

"1 Story Frame Residence Over Garage" - 1987

CODE - The Cottages statute was enacted in 1989, "§ 125-79.1 Cottages. [Added 7-25-1989; amended 8-4-1992; 6-18-2013 by L.L. No. 2-2013; 9-16-2025 by L.L. No. 7-2025]"

CLASSIFICATION "The 'garage apartment' would be considered a 'Cottage' as defined in Town Zoning Code, Chapter 125…"- Defendant's statement in Exhibit 2: Westchester Supreme Docket # 71446/20223, NYSCEF 41

DEFENDANTS DEFINE GRANDFATHERED COTTAGE -"This pre-existing non-conforming cottage was in use as a residence prior to the implementation of Zoning Code § 125-79.1, which was adopted on July 25, 1989, and restricted cottages to R-2A and R-4A Zoning Districts. This is a different structure than the standalone garage, which is the subject of the instant litigation." – Defendant Town Counsel Gordon – Exhibit 5 Respondent's Brief", Appellate Div. 2nd Dept # 2024-02143, Doc. 16, Page 8

# TABLE OF CONTENTS

I.    DEFENDANTS' CENTRAL PREMISE WAS FALSE.......................................................8

II.    DOCUMENTARY EVIDENCE DEMONSTRATES RESIDENTIAL USE WAS LONG RECOGNIZED BY THE TOWN. ..................................................................................... 9

III.    NEW EVIDENCE .................................................................................................11

IV.    DEFENDANTS ARGUE DOCUMENTS ARE NOT NEW BUT PROVIDE OBSCURED AND ILLEGIBLE PROOF. ................................................................... 12

V.    OPPOSITION BRIEF DOES NOT DENY ......................................................... 12

VI.    DEFENDANTS CONFLATE THE DISTINCT BASES FOR RELIEF UNDER RULE 60(b)(2) & RULE 60(b)(3). .................................................................. 13

VII.    MOTION COULD BE GRANTED ON EITHER RULE 60b(2) OR (3). RULE 60b(6) RELIEF IS ALSO WARRANTED. ................................................. 14

VIII.    DEFENDANTS' RULE 60(b)(2) ARGUMENTS MISSTATE THE LAW AND IGNORE THE ACTUAL NEWLY DISCOVERED EVIDENCE ......................................... 14

IX.    GOVERNMENT OWES HIGHER DUTY OF CANDOR ......................................... 15

X.    THE COURT HAS BROAD DISCRETION UNDER RULE 60(b), AND THAT DISCRETION SHOULD BE EXERCISED HERE IN THE INTEREST OF JUSTICE .... 16

XI.    DILIGENCE UNDER RULE 60(B)(2) DOES NOT REQUIRE A LITIGANT TO PURSUE DUPLICATIVE PROCEDURAL MECHANISMS WHERE THE OPPOSING PARTY HAS CERTIFIED THAT DISCOVERY IS COMPLETE..................................... 17

XII.    DEFENDANTS' ASSERTION THAT THE NEWLY DISCOVERED EVIDENCE IS "CUMULATIVE" IS INACCURATE .................................................................. 18

XIII.    CONCLUSION19

# TABLE OF AUTHORITIES

**Cases**

ATX Debt Fund 1, LLC v. Paul and Johnson v. Askin Capital ..................................................... 13

Berger v. United States, 295 U.S. 78, 88 (1935). .......................................................................... 14

Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) ....................................... 17

Gonzalez v. Crosby, 545 U.S. 524 (2005)..................................................................................... 13

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944)................................. 18

Klapprott v. United States, 335 U.S. 601 (1949) .......................................................................... 13

Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863–64 (1988) ................... 13, 15, 19

Mandala v. NTT Data, Inc., 88 F.4th 353, 359 (2d Cir. 2023). ........................................ 13, 15, 19

Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)) ..................................................................... 15

Paddington Partners v. Bouchard, 34 F.3d 1132, 1147 (2d Cir. 1994 .................................... 16, 18

Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002) ...................................... 18

Thai-Lao Lignite, 864 F.3d at 182 ................................................................................................ 15

United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001) ...................... 16, 17, 18

United States v. Shaffer Equip. Co., 11 F.3d 450, 457–58 (4th Cir. 1993) ................................... 14

**Statutes**

**§ 125-79.1A** ................................................................................................................................. 8

Rules
Federal Rule of Civil Procedure 60(b)......................................................................................passim
FRCP 12.....................................................................................................................................passim
FRCP 60(b)(2).............................................................................................................................passim
FRCP 60(b)(3).............................................................................................................................passim
FRCP 60(b)(6).............................................................................................................................passim

3

# EXHIBIT LIST

(previously provided, *highlighted, and* organized, in rebuttal)

**STATEMENTS TO THE COURT REGARDING LEGALITY OF RESIDENTIAL USE**

Exhibit 1:Westchester Supreme Docket # 71446/20223, NYSCEF 47

> "Thus, without a use variance, the residential use of the second-floor stand-alone garage structure is illegal and prohibited."

Exhibit 2: Westchester Supreme Docket # 71446/20223, NYSCEF 41

> "The 'garage apartment' would be considered a "Cottage" as defined in Town Code, Chapter 125, Article 1, Section 125-3. The Cottage was created through the installation of a bathroom, kitchen, and creation of a living area without obtaining required approvals from the Town. The application seeks the legalization of a Cottage where a Cottage is not permitted in the Residential One-Acre Zoning District pursuant to Chapter 125, Article VIII, Section 125-79.1.A

Exhibit 3: Westchester Supreme Docket # 71446/2023, NYSCEF 54, Page 10

> ". . . the residential use in the Garage is not a "grandfathered" pre-existing non-conforming use, as opposed to the other "Cottage" on the Property, which is considered a grandfathered, pre-existing non-conforming residential use".

Exhibit 4: Westchester Supreme Docket # 71446/20223, NYSCEF 54 page 5

> "Petitioner already has two other residential uses on the Property. The principal residence, which she occupies (Petition, ¶ 2), and another pre-existing standalone cottage on the Property, which is occupied as a residential use and is not at issue in this proceeding, because *it was constructed prior to the applicable zoning restrictions on residential uses.*" Emphasis added.

Exhibit 5: " Respondent's Brief", Appellate Div. 2nd Dept # 2024-02143, Doc. 16, Page 8

> "This pre-existing non-conforming cottage was in use as a residence prior to the implementation of Zoning Code § 125-79.1 which was adopted on July 25, 1989, and restricted cottages to R-2A and R-4A Zoning Districts. This is a different structure than the standalone garage, which is the subject of the instant litigation."

Exhibit 6 – See New Evidence section below

Exhibit 7 FOIL reference #2025-00484 1/12/2026

> The FOIL response made the *affirmative misrepresentation that nothing on file with the Town listed the structure as "residential."*

**RESIDENTIAL RECORDS POSSESSED BY THE TOWN – DESPITE DENIAL**

4

Exhibit 8 – New York State Electrical Inspection For "*Residential*" Occupancy stamped June 26, 2012 "Bedford Building Department".

Exhibit 9 – Certificate of Occupancy authorizing the *occupancy or use* of the property, signed by the Building Inspector, dated 4/4/2012.

Exhibit 10 – Plaintiff's Architect's Drawings labeling the structure "1 Story Frame *Residence Over Garage*" (2023).

Exhibit 11 – Application for a Certificate of Compliance stating that "the buildings or structures now on the lot are used for the following purposes: *one family residence,*" dated 1988.

Exhibit 12 – Town records requesting installation of *smoke detectors*, stamped 2014.

**ILLEGIBLE ITEMS**

Exhibit 13 shows the *1988 land survey* previously produced by Defendants, with the date cut off and *illegible building labels*. By matching the handwritten number at the top of the map to a permit number found elsewhere in the file, the Map's date was initially determined.

Exhibit 14 – Land survey on file stamped August 30, 2000. The creation date on the copy provided by Defendants *is illegible*.

Exhibit 15 – Certificate of Occupancy dated 1973, which is illegible and could potentially apply to some or all of the buildings on the property.

**NEW EVIDENCE OBTAINED AFTER BREIFING**

Exhibit 16 – "Confidential Memorandum" prepared by the Town Attorney Gordon *the day before* the ZBA meeting on 11/2/2023. This email was produced after the briefing had closed and is almost entirely redacted.

> "Attached is a Confidential Memorandum I prepared regarding the 146 Goldens Bridge Road application that is on the 11/2/2023, Board of Appeal's agenda."

Exhibit 17 – Email dated 12/1/2023, titled "DRAFT ZBA-11-23-2 – Hammer – 146 Goldens Bridge Rd,"

> "Eric would like you to review the draft resolution for Hammer and get back to him and me with any changes by Tuesday (12/5) morning. Packets are ready for pickup...."

Exhibit 6 – Map provided 2/13/2026 -

> This is the earliest map where the labels for the structures and the date the map was produced are *legible*. This was provided following the Rule 60b motion filing date

1/23/2026. The map labels the structure in question "on story frame residence over garage".

6

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

<table>
<tr>
<td>

MELANIE HAMMER,<br>
              Plaintiff,<br><br><br>

       - against -<br><br>

TOWN OF BEDFORD NEW YORK, DEPARTMENT OF BUILDING BEDFORD NEW YORK, ZONING BOARD OF APPEALS BEDFORD NEW YORK, BUILDING INSPECTOR TOWN OF BEDFORD NEW YORK (ALBERT CIRACO), ATTORNEY FOR THE TOWN OF BEDFORD NEW YORK (ERIC GORDON, ESQ. & ROBERT ZITT, ESQ.),<br>
              Defendants.

</td>
<td>

No. 25-CV-2618 (CS)<br><br>

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR RELIEF UNDER RULE 60(b)(2), 60(b)(3), AND 60(b)(6)**

</td>
</tr>
</table>

Defendants argue in their opposition that there is insufficient evidence to justify vacating the Court's 1/13/2026 decision. The record demonstrates otherwise. Plaintiff's Rule 60(b) motion is supported by substantial documentary evidence showing that Defendants made material misrepresentations to multiple courts.

Specifically, Defendants repeatedly represented that residential use of the structure was "unlawful", despite possessing records demonstrating that the residential use was grandfathered and lawful. Those records include land maps dating back to 1987 that expressly label the structure as "residential."

The lower courts relied on these misrepresentations in reaching their decisions, and this Court, in turn, credited those determinations through the application of collateral estoppel. The Rule 60(b) motion seeks vacatur of the judgment under Rule 60(b)(3) for these

7

misrepresentations and Rule 60(b)(2) for the newly discovered evidence. Rule 60(b)(6) relief is also warranted to prevent manifest injustice. This court cannot rely on prior rulings that were predicated on materially inaccurate representations.

## I.  DEFENDANTS' CENTRAL PREMISE WAS FALSE

The Defendant's case for denying the construction permit rests on the premise that the structure's "residential use" in an R1A zone is prohibited under the "Cottages" statute. This is the basis of their case, as shown below in "  Exhibit 1:Westchester Supreme Docket # 71446/20223, NYSCEF 47, page 9

> "Thus, without a use variance, the residential use of the second-floor stand-alone garage structure is illegal and prohibited."

Exhibit 1 is the sworn affidavit of Building Inspector **Ciraco**, filed in the Article 78 proceeding in Westchester Supreme Court**.**  Defendants' position throughout the state court proceedings rested on the assertion that the residential use of the garage apartment was unlawful.

The construction permits were denied in the Town's **Letter of Permit Denial**, dated 9/22/2023, which initiated this litigation. See Exhibit 2: Westchester Supreme Docket # 71446/2023, NYSCEF 41.

> "The 'garage apartment' would be considered a 'Cottage' as defined in Town Code, Chapter 125, Article 1, Section 125-3. The Cottage was created through the installation of a bathroom, kitchen and creation of a living area without obtaining required approvals from the Town. The application seeks the legalization of a Cottage where a Cottage is not permitted in the Residential One-Acre Zoning District pursuant to Chapter 125, Article VIII, Section 125-79.1.A."
> In addition, a legal, main dwelling and a legal, pre-existing non-conforming cottage already exists in the Residential One-Acre Zoning District and no more than one cottage may be permitted on any property. Article VIII, Section 125-79.1.A(4). As a result, **a use variance pursuant** to Chapter 125, Article XII,

8

Section 125-129.C(2)(a)." Westchester Supreme Docket # 71446/20223, NYSCEF 41. Exhibit 2

In Exhibit 3: Westchester Supreme Docket # 71446/2023, NYSCEF 54, Page 10.

Defendants acknowledged that another cottage on Plaintiff's property was lawful because it pre-dated the enactment of Bedford Town Code § 125-79.1A and was therefore **"grandfathered" as a pre-existing non-conforming use.**

> ". . . the residential use in the Garage is not a "grandfathered" pre-existing non-conforming use, as opposed to the other "Cottage" on the Property, which is considered a grandfathered, pre-existing non-conforming residential use". Exhibit 3.

Therefore, by the Defendant's own definition, residential use pre-dating 1989 grandfathers that use under 125-79-1A. Thus, they illegally denied permits to my pre-existing residential structure, claiming the residential use was "unlawful". In that same document, Exhibit 4: Westchester Supreme Docket # 71446/20223, NYSCEF 54, page 5, Defendants state:

> "Petitioner already has two other residential uses on the Property. The principal residence, which she occupies (Petition, ¶ 2), and another pre-existing standalone cottage on the Property, which is occupied as a residential use and is not at issue in this proceeding, because *it was constructed prior to the applicable zoning restrictions on residential uses.*" . Emphasis added.

A point they repeated to the Appellate Division 2nd Dept "Respondent Brief", Exhibit 5:

> "This pre-existing non-conforming cottage was in use as a residence prior to the implementation of Zoning Code § 125-79.1 which was adopted on July 25, 1989, and restricted cottages to R-2A and R-4A Zoning Districts. This is a different structure than the standalone garage, which is the subject of the instant litigation."

## II.    DOCUMENTARY EVIDENCE DEMONSTRATES RESIDENTIAL USE WAS LONG RECOGNIZED BY THE TOWN.

9

On 2/13/2026 after Plaintiff filed the Rule 60(b) motion in this matter, *Defendants suddenly produced, for the first time, the earliest and most legible land survey of the property, dated 1987, in response to a FOIL request.* **Exhibit 6 – Map provided 2/13/2026.**

This documentary evidence directly contradicts Defendants' repeated representations that the structure's residential use was unlawfully created sometime after 1989, when BTC §125-79-1A was enacted.

This 1987 survey clearly identifies the structure at issue as a "one story frame **residence over garage"**, confirming that the residential use existed at least two years BTC §125-79-1A was enacted.

It was not until 1/12/2026 when I received the Exhibit 7 FOIL reference #2025-00484 that I had the linchpin of proof of an active cover-up. The FOIL response made the affirmative misrepresentation that nothing on file with the Town listed the structure as "residential".

However, Plaintiff was aware of multiple documents in the Town's own records explicitly characterizing the structure as **"residential."** These include:

- **Exhibit 8** – Electrical Inspection for "**Residential,"** **Occupancy** stamped **2012**.
- **Exhibit 9** – Certificate of Occupancy.
- **Exhibit 10** – Plaintiff's architect's drawings labeling the structure **"1 Story Frame Residence Over Garage"** (2023).
- **Exhibit 11** – Application for a Certificate of Compliance stating that **"the buildings or structures now on the lot are used for the following purposes: one family residence,"** dated **1988**.
- **Exhibit 12** – Town records requesting installation of smoke detectors, stamped **2014**.

These records prompted Plaintiff to review the land survey already in her possession.

- **Exhibit 13** shows the **1988 land survey** previously produced by Defendants, with the date cut off and illegible building labels. By matching the handwritten number on the top

10

of the map to a permit number, I was finally able to establish a map dating back to **1988**, prior to the enactment of **Bedford Town Code § 125-79-1A**. And this was the proof upon which my 1/23/2026 motion was based.

Additional Town records further demonstrate the long-recognized residential status of the structure:

- **Exhibit 14** – Land survey on file stamped **August 30, 2000**. The creation date on the copy provided by Defendants is illegible.
- **Exhibit 15** – Certificate of Occupancy dated **1973,** which is illegible and could potentially apply to some or all of the buildings on the property.

Plaintiff did not assume that Defendants would *make explicit misrepresentations to the courts regarding the structure's legality and history of residential use. However, subsequent FOIL productions revealed they had.*

### III.    NEW EVIDENCE

**Exhibit 16** – "Confidential Memorandum" prepared by the Town Attorney Gordon the day before the ZBA meeting on 11/2/2023. This email was produced after the briefing had closed and is almost entirely redacted.

"Attached is a Confidential Memorandum I prepared regarding the 146 Goldens Bridge Road application that is on the 11/2/2023, Board of Appeal's agenda."

This newly produced evidence also forms part of the basis for Plaintiff's request for **Rule 60(b)(2)** relief. The document undermines Defendants' prior argument that there was no municipal coordination under Monell, and that the Town Attorney's conduct was protected as exclusively prosecutorial in nature. It undermines procedural due process by proving that there

11

was pre-hearing ex parte interaction between the ZBA hearing the appeal and the Town

Attorney. These were some of the reasons the court gave for dismissing the complaint.

**Exhibit 17** – Email dated **12/1/2023**, titled "DRAFT ZBA-11-23-2 – Hammer – 146

Goldens Bridge Rd,":

> "Eric would like you to review the draft resolution for Hammer and get
> back to him and me with any changes by Tuesday (12/5) morning. Packets are ready for
> pickup...."

In addition to the timing and volume of these internal email communications, the number of

governmental recipients raises serious questions about the extent of coordination among Town

officials and bears directly on municipal liability under Monell. At the time that Gordon drafted

this resolution, he had been named as a defendant in the notice of claim related to this case and

was replaced by Attorney Zitt at the 12/8/2023 ZBA meeting, presumably based on this conflict.

### IV.     DEFENDANTS ARGUE DOCUMENTS ARE NOT NEW BUT PROVIDE OBSCURED AND ILLEGIBLE PROOF.

Defendants argue that the documents are not new. As proof, they attach several

documents to their opposition Doc. 79, Exhibit 1. However, the documents on which they rely

were largely obscured or illegible. The only clearly legible map provided by Defendants in Doc.

79, Exhibit 1, was created in 2023. The 2023 map is not relevant to the first date of residential

use. Defendants cannot justify misrepresentation by suggesting that I should have known.

Government attorneys have a duty of candor to the Court.

### V.      OPPOSITION BRIEF DOES NOT DENY

Defendants' opposition is most notable for what it does not say. At no point do Defendants deny (Exhibits 1 through 15).

The Town does not deny that it withheld 800 pages of internal emails until after the briefing closed. They do not deny that a "confidential" email was sent to the ZBA the day before the Appeal was heard. See Exhibit 16. They do not deny that defendant Town Attorney Gordon authored the ZBA's resolution, even after being named a party to this action. See Exhibit 17. They do not deny FOIL request 2025/00484/Exhibit 7, which falsely states that no "residential" records exist.

These suppressed documents reveal that Town officials knew the use was lawful, knew the structure was grandfathered, and nevertheless coordinated efforts to deny permits, issue baseless violations, and attempt to force Plaintiff to remove legal plumbing and electrical service. And the Town Attorney crafted a legal reason for the ZBA to deny the Appeal before ever hearing it. See. Exhibit 16 and Exhibit 17.

## VI.    DEFENDANTS CONFLATE THE DISTINCT BASES FOR RELIEF UNDER RULE 60(b)(2) & RULE 60(b)(3).

Defendants' opposition improperly conflates Plaintiff's separate grounds for relief under Rule 60(b)(2) and Rule 60(b)(3). These provisions address different issues and are supported by different categories of evidence in this motion.

Plaintiff's request for relief under **Rule 60(b)(3)** is based on Defendants' repeated **misrepresentations regarding the legality of the residential use of the structure**. Exhibits 1 through 15 contradict those representations. The mischaracterization of the residential

13

status of the structure is the basis for Plaintiff's Rule 60(b)(3) argument and undermines collateral estoppel principles

By contrast, Plaintiff's request for relief under **Rule 60(b)(2)** is based on **newly discovered evidence**, including internal Town emails and related documents that were produced late. These communications bear directly Monell and Prosecutorial Immunity.

Defendants' attempt to merge these two distinct grounds for relief mischaracterizes Plaintiff's motion. This distraction does not address the substance of either basis for vacatur.

## VII.    MOTION COULD BE GRANTED ON EITHER RULE 60b(2) OR (3) THUS STRENGTHENS RULE 60b(6) RELIEF.

Defendant argues that Plaintiff's request for Rule 60b(3) and (2) relief is impermissible when Plaintiff is also requesting relief under Rule 60(b)(6) Their assertion is wrong; false statements to the court under Rule 60(b)(3) or concealed documents under Rule 60b(2) can (as here) infect a case, and this is what Rule 60b(6) is designed to address.

 The Supreme Court has made clear that Rule 60(b)(6) remains available where "extraordinary circumstances" render enforcement of the judgment inequitable. Gonzalez v. Crosby, 545 U.S. 524 (2005) . Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863–64 (1988). The Second Circuit likewise holds that Rule 60(b)(6) applies where a judgment rests on a materially distorted factual foundation. Klapprott v. United States, 335 U.S. 601 (1949), Mandala v. NTT Data, Inc., 88 F.4th 353, 359 (2d Cir. 2023).

## VIII.    DEFENDANTS' RULE 60(b)(2) ARGUMENTS MISSTATE THE LAW AND IGNORE THE ACTUAL NEWLY DISCOVERED EVIDENCE

14

Defendants' reliance on ATX Debt Fund 1, LLC v. Paul and Johnson v. Askin Capital Mgmt. is misplaced. Those cases deny Rule 60(b)(2) relief only where the movant **actually possessed** the evidence prior to judgment. Here, the newly discovered evidence consists of new legible maps, internal municipal emails, withheld attachments, and a FOIL denial, materials that were **exclusively within Defendants' possession and control** and that could not have been obtained through reasonable diligence. Defendants do not dispute the timeline. Rule 60(b)(2) squarely applies where the evidence was unavailable to the movant because the opposing party withheld it.

## IX.    GOVERNMENT OWES HIGHER DUTY OF CANDOR

Moreover, the Town's attorneys are not inexperienced litigants. They are seasoned municipal counsel who routinely appear in zoning, land-use, and Article 78 proceedings. Their misrepresentations were not inadvertent. They were repeated, strategic, and made in multiple courts. Their conduct exploited Plaintiff's pro se status, and their failure to correct the record, even when confronted with documentary proof, is incompatible with their ethical obligations of Candor to the Tribunal Rule 3.3. Government attorneys should be held to a higher standard, not a lower one.

The Supreme Court has long emphasized that a government lawyer "is the representative not of an ordinary party to a controversy, but of a sovereignty… whose interest… is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88 (1935). Courts have repeatedly recognized that government counsel therefore owes a "duty of candor to the court" that is "greater than that of private litigants." United States v. Shaffer Equip. Co., 11

15

F.3d 450, 457–58 (4th Cir. 1993). . Their conduct must be evaluated under this heightened standard.

## X.     THE COURT HAS BROAD DISCRETION UNDER RULE 60(b), AND THAT DISCRETION SHOULD BE EXERCISED HERE IN THE INTEREST OF JUSTICE

Rule 60(b) determinations are in "sound discretion of the district court," and the Court's authority to grant relief is at its broadest when the integrity of the judicial process is at stake. Mandala v. NTT Data, Inc., 88 F.4th 353, 359 (2d Cir. 2023).  This standard underscores that the Court not only has the power to grant relief but must do so where the record demonstrates that the judgment rests on a materially distorted factual foundation.

In exercising its discretion, the Court must "strike a balance between serving the ends of justice and preserving the finality of judgments." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)). The Second Circuit has long emphasized that Rule 60(b) "should be broadly construed to do substantial justice," even while recognizing that final judgments should not be lightly reopened. Id. For that reason, courts require that the movant's showing be "highly convincing." Thai-Lao Lignite, 864 F.3d at 182.

Plaintiff meets that standard. The record now demonstrates that the judgment was entered on the basis of incomplete, inaccurate, and in some instances, affirmatively misleading information, conditions that the Supreme Court has recognized as "extraordinary circumstances" warranting relief under Rule 60(b)(6) Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863–64 (1988) . The misconduct and concealment at issue here are not routine litigation errors; they go to the structural fairness of the proceedings and infect the reliability of the judgment itself.

16

Where, as here, the factual record has been materially distorted by government misrepresentations, withheld evidence, and procedural irregularities, the "ends of justice" weigh decisively in favor of reopening the judgment. Thai-Lao Lignite, 864 F.3d at 182. Rule 60(b)(6) exists precisely for such cases, and the Court's equitable authority is at its apex when necessary to restore confidence in the integrity of the judicial process

The governing standard is set forth in United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001), which requires Plaintiff to show that the evidence existed at the time of the underlying proceeding, that she was justifiably ignorant of it despite diligence, that the evidence is material, and that it is not cumulative.

The Second Circuit has repeatedly held that evidence is "newly discovered" when it was unavailable despite diligent efforts, including when the opposing party controlled the evidence. Paddington Partners v. Bouchard, 34 F.3d 1132, 1147 (2d Cir. 1994. Defendants do not dispute that Plaintiff sought these communications beginning in January 2024, that the Town did not produce the internal emails until 8/18/2025. Under Paddington Partners, this satisfies Rule 60(b)(2).

XI.    **DILIGENCE UNDER RULE 60(B)(2) DOES NOT REQUIRE A LITIGANT TO PURSUE DUPLICATIVE PROCEDURAL MECHANISMS WHERE THE OPPOSING PARTY HAS CERTIFIED THAT DISCOVERY IS COMPLETE.**

In the related criminal matter, defendants acting as prosecutors, filed a Certificate of Compliance pursuant to CPL 245.50 on 9/18/2024, Exhibit 12 Doc 67:

> "…The People believe that all reasonable diligence has been exercised and, thus, are in good-faith compliance with our discovery obligations pursuant to CPL245.20(1)."

17

Plaintiff additionally made specific requests for <u>Brady</u> material, including internal municipal emails. Despite those representations, approximately 800 pages of internal emails were later produced. A litigant is entitled to rely on a prosecutor's certification of completeness. Rule 60(b)(2) does not require the assumption that an official certification is inaccurate. Under these circumstances, Plaintiff's inability to obtain the materials earlier cannot be attributed to a lack of diligence

Defendants' argument that Plaintiff "waited" to file a FOIL request is contradicted by the record, which shows repeated requests beginning in January 2024. Where, as here, a party made repeated efforts to obtain materials that were exclusively within the opposing party's control, diligence is satisfied. Plaintiff could not obtain internal municipal emails without the Town's cooperation. The timing of disclosure is legally significant and undisputed.

## XII.    DEFENDANTS' ASSERTION THAT THE NEWLY DISCOVERED EVIDENCE IS "CUMULATIVE" IS INACCURATE

Evidence is not cumulative where it reveals misconduct, contradicts prior representations, or materially undermines the factual premises upon which the judgment rested. <u>United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001)</u>. The internal emails, withheld attachments, and the 1/12/2026 FOIL denial meet all three criteria.

Here, the internal communications are directly material to Plaintiff's ability to plead and prove municipal liability under <u>Monell</u> and to rebut immunity.

18

Moreover, at the Rule 12(b)(6) stage, the Court is permitted to consider exhibits attached to the complaint in determining whether a plausible claim has been stated. See, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002). In granting dismissal, the Court concluded that no claim was properly pled and treated each count as analytically independent. That inference is no longer sustainable in light of documentary evidence demonstrating coordinated municipal involvement. The emails, even in redacted form, materially alter the plausibility analysis by providing direct evidence of interdepartmental coordination.

Because the emails remain heavily redacted and no privilege log has been provided, the Court cannot meaningfully assess Defendants' assertion that the production is "cumulative." Before concluding that the evidence lacks materiality, the Court should review the unredacted communications in camera to determine whether they substantively bear on the issues of coordination, policy, and municipal liability

## XIII.  CONCLUSION

Plaintiff's motion more than meets the standard necessary under the controlling Second Circuit standard for Rule 60(b)(3), which requires Plaintiff to show (1) fraud, misrepresentation, or misconduct, and (2) that it "substantially interfered" with the ability to present the case; Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002) . See also, Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944)  (holding that judgments obtained through fraud on the court must be vacated to preserve the integrity of the judicial process). Emphasis added.

19

Plaintiff has also met the standard under Rule 60(b)(2), which permits vacatur where newly discovered evidence existed at the time of the original proceeding but was unavailable despite due diligence and is material to the outcome. United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001) ; Paddington Partners v. Bouchard, 34 F.3d 1132, 1147 (2d Cir. 1994).

Further, the Court may vacate the decision under Rule 60(b)(6) in the interest of justice where extraordinary circumstances demonstrate that enforcement of the judgment would be inequitable. Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863–64 (1988) , Mandala v. NTT Data, Inc., 88 F.4th 353, 359 (2d Cir. 2023).

The Town's own records, now, finally disclosed, prove that the very foundation of its enforcement actions was false, and that Plaintiff was subjected to targeted, unjustified, and unconstitutional interference with her property. This case is not a waste of the Court's time. It raises serious constitutional concerns regarding the Town's intentional interference with Plaintiff's constitutionally protected property rights. Such governmental interference with protected property interests is precisely the type of conduct that 42 U.S.C. § 1983 was enacted to address.

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests that this Court:

1. **Vacate the Court's 1/13/2026 decision** pursuant to **Rule 60(b)(2), Rule 60(b)(3) and Rule 60(b)(6)**of the Federal Rules of Civil Procedure.

2. **Grant such other and further relief as the Court deems just and proper**, including any relief necessary to ensure that the case is decided on a complete and accurate factual record.

3. **Order in camera review of the unredacted internal municipal emails and related documents**, to allow the Court to assess the legitimacy of Defendants' redactions and the materiality of the withheld information; and

4. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

Melanie Hammer, Esq.
360 Court Street, Suite 3
Brooklyn, NY 11231
718-757-7677
Melanie@hammer-esq.com

Pursuant to the Court's Individual Practices, I certify that this reply memorandum contains 3,499 words, excluding the caption, table of contents, table of authorities, and exhibits.

Melanie Hammer, Esq.

**DECLARATION OF MELANIE HAMMER**

I, **Melanie Hammer**, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

21

1.  The exhibits submitted with my reply are **the same documents previously filed, offered in rebuttal, or newly provided** with my Rule 60(b) motion, reproduced only with **highlighting and reorganization** for clarity in rebuttal.

Executed on March 9, 2026, Katonah, New York

_____ **Melanie Hammer**

Westchester, NY  3/8/2026

22

A-527

YSCEF DOC. NO. 47                                                    RECEIVED NYSCEF: 12/27/2023

what has been proposed is a zoning compliant buildable lot that would allow the placement of another residence on the Subject Property. (*See* Zoning Code § 235-12.A)

43.    Furthermore, based on a simple visual observation of the shaded area on the survey it is clear that the setbacks from the lot lines are not zoning compliant and that what is shown is not a zoning compliant buildable lot.

## III.    CONCLUSION

44.    For the reasons set forth herein and the accompanying Affidavits and Memorandum of Law, my determination that the residential apartment on the second floor of the standalone garage structure was properly affirmed by the Zoning Board of appeals. Thus, without a use variance, the residential use of the second floor of the standalone garage structure is illegal and prohibited.

45.    Furthermore, the Zoning Board also correctly denied Petitioner's request for a use variance because she failed to submit the information required to satisfy the stringent standards required for the issuance of a use variance.

WHEREFORE, it is respectfully requested that the Petition be dismissed in its entirety, that the Court deny all relief requested in the Proposed Order submitted with the Petition, and that the Court grant such further relief as it deems just and proper.

ALBERTO CIRACO

Sworn to before me this
26t day of December 2023

Notary Public

ERIC GORDON
Notary Public, State of New York
No. 02GO6032250
Qualified in Westchester County
Commission Expires October 25, 2025

-9-

Case 7:25-cv-02618-CS    Document 80-1    Filed 03/09/26    Page 2 of 8

NYSCEF DOC. NO. 41                                                          RECEIVED NYSCEF: 12/27/2023



**Town of Bedford**
**Building Department**

## LETTER OF BUILDING PERMIT DENIAL

PARCEL ID: 49.7-1-3                                                         09/22/2023

**Owner Information:**                         **Applicant Information:**
Hammer, Melanie                                Hammer, Melanie
146 Goldens Bridge Rd                          146 Goldens Bridge Rd
Katonah, NY 10536                              Katonah, NY 10536

Location: 146 Goldens Bridge Rd
Zoning District: R-1A
Permit Type: Building Permit Cottage/Accessory Apartment
Work Description: Legalize apartment in an accessory structure and attached deck.

Dear Ms. Hammer,

Regarding the application you filed on September 7, 2023 for a Building Permit to construct a
new deck to an existing garage and to legalize a "garage apartment", the following facts are
noted: The "garage apartment" would be considered a "Cottage" as defined in Town Zoning
Code, Chapter 125, Article 1, Section 125-3. The Cottage was created through the installation of
a bathroom, kitchen and creation of a living area without obtaining required approvals from the
Town. The application seeks the legalization of a Cottage where a Cottage is not permitted in the
Residential One-Acre Zoning District pursuant to Chapter 125, Article VIII, Section 125-79.1.A.
In addition, a legal, main dwelling and a legal, pre-existing non-conforming cottage already
exists in the Residential One-Acre Zoning District and no more than one cottage may be
permitted on any property. Article VIII, Section 125-79.1.A(4).  As a result, a use variance
pursuant to Chapter 125, Article XII, Section 125-129.C(2)(a)

*Your application for a building permit is DENIED, your project does not meet the requirements of the Town
of Bedford Zoning Ordinance. To proceed with your project, please submit a complete application to the
Zoning Board of Appeals to address the deficiencies as described above.*

Al Ciraco, Building Inspector

425 Cherry Street, Bedford Hills, NY 10507 - 914.666.8040 – Building@BedfordNY.Gov

NYSCEF DOC. NO. 54                                                    RECEIVED NYSCEF: 12/27/2023

Certificate of Compliance had been issued for a "recreation room over garage" with respect to the Garage on the Property. (Ciraco Affid., ¶ 9). The Town Code Enforcement Officer (who conducted an inspection of the Garage with the permission of the tenant living in the Garage)[6] concluded, based on his personal observations, that the space on the second floor of the Garage had been illegally modified sometime after 2014 and was now being used as a residential apartment. (*Id*, ¶ 14).

Evidence that this modification took place after July 2014 is that at the time the Certificate of Compliance was issued in July 2014 for the recreation room on the second floor, it was approved as a single open room with no, kitchen, plumbing, bathroom or bedrooms. (Ciraco Affid., ¶ 15). Therefore, it is undisputed the second floor of the Garage was modified sometime after July 2014 to install a residential apartment and that this installation occurred after the Zoning Code's restrictions on residential uses in the R-1A Zoning District were already in place.[7]

The Zoning Code defines a "Cottage" as a "single dwelling unit within an accessory building which is incidental and subordinate to a principal one-family residence and located on the same lot therewith, where either unit is occupied by the owner of the premises." *See* Zoning Code §125-3. Zoning Code §125-79.1.A unambiguously states that "[i]n the R-2A and R-4A Districts, the Planning Board may grant a special permit to create a cottage in an existing accessory building". Petitioner now argues that because Section 125-79.1.A does not state that Cottages are

---

[6] To the extent Petitioner questions how the Building Department discovered the illegal residential apartment above the Garage, the fact is that the tenant residing in this apartment reported it to the Building Department after the Petitioner refused to return the tenant's security deposit. (Ciraco Affid., ¶¶ 10-14). Once the Building Department was advised about the illegal apartment, it was required to take action to ensure that it was legalized, if possible, or removed.

[7] Because the restrictions on the number of residential uses on a single lot were in place prior to 2014, after which the second floor of the Garage was illegally converted to a residence, the residential use in the Garage is not a "grandfathered" pre-existing non-conforming use, as opposed to the other "Cottage" on the Property which is considered a grandfathered, pre-existing non-conforming residential use.

9500/28/323484 V1 12/27/23

-10-

NYSCEF DOC. NO. 54                                          RECEIVED NYSCEF: 12/27/2023

Board is empowered to reasonably and rationally review and interpret the enforcement of local zoning. *See Frishman v. Schmidt*, 61 N.Y.2d 823 (specific application of a term of the zoning ordinance to a particular property is governed by zoning board's interpretation, unless unreasonable or irrational). *See also Matter of Arceri v. Town of Islip Zoning Board of Appeals*, 2005 N.Y. App. Div. LEXIS 2315 (March 7, 2005). In this case, deference to the Zoning Board's conclusions with respect to the applicability of each aspect of Town Code Chapter 125 - the Town of Bedford Zoning Code ("Zoning Code"), is appropriate because there is nothing in the Zoning Code that is at issue that can be considered ambiguous or subject to interpretation.

Given the strict standard of review applicable to this proceeding, there is no basis for the Court to overturn the Zoning Board's well-reasoned and rational determination and the Petition should be dismissed.

## V.    ARGUMENT

### POINT I

### THE ZONING BOARD'S DETERMINATION IS RATIONAL AND WELL REASONED, IS NOT ARBITRARY OR CAPRICIOUS AND SHOULD BE UPHELD

The instant Petition seeks to overturn the Zoning Board's determination upholding the Building Inspector's finding in the Denial Letter that the unpermitted conversion of the second floor of the Garage into a third residential dwelling unit on the Property is prohibited by the Town's Zoning Code.[2] However, the Zoning Board's decision was neither arbitrary and capricious, an abuse of discretion or in violation of any procedural requirements. Therefore, Petitioner's

---

[2] Petitioner already has two other residential uses on the Property. The principal residence which she occupies (Petition, ¶ 2) and another pre-existing standalone cottage on the Property which is occupied as a residential use and is not at issue in this proceeding because it was constructed prior to the applicable zoning restrictions on residential uses. (Petition, ¶ 8).

9500/28/323484 V1  12/27/23

-5-

## III.  COUNTERSTATEMENT OF THE CASE

### A.    The Subject Property

Appellant is the owner of real property situated at 146 Goldens Bridge Road, Katonah, New York, as more fully described on the Town of Bedford Tax Map as Section 49.7, Block, 1, Lot 3. (R-223)(previously defined as the "Subject Property). The Subject Property is a single lot which consists of approximately 11.69 acres and is situated in the Town of Bedford's R-1A (one acre) Zoning District. *Id.* Existing on the Subject Property is a principal residence which Appellant occupies, alongside a pre-existing non-conforming standalone cottage. *Id.*[2] Also existing on the Subject Property is a standalone accessory garage structure, which is the subject of dispute. *Id.*

### B.    Complaints About The Unlawful Use
         of the Standalone Garage

On July 11, 2014, a Certificate of Compliance was issued for the Subject Property, permitting a "finished recreation room over [a] garage" with respect to the second floor of the standalone garage structure thereon. (R-233). Several years later, on April 19, 2023, the Building Department was contacted by an individual who identified themselves as a "tenant living in [an] apartment over garage" at the Subject

_____

[2] This pre-existing non-conforming cottage was in use as a residence prior to the implementation of Zoning Code § 125-79.1 which was adopted on July 25, 1989, and restricted cottages to R-2A and R-4A Zoning Districts. This is a different structure than the standalone garage which is the subject of the instant litigation.

-8-

**TOWN OF BEDFORD** | Office of the Town Clerk

**ALEXANDRA S. WHALEN**
*Town Clerk*

**DEPUTY CLERK**
*Ling Lou*

February 12, 2026
**VIA EMAIL** [melanie@hammer-esq.com]

Melanie Hammer, Esq.
146 Goldens Bridge Road
Katonah, New York 10536

Re:     Response to Freedom of Information Law Request
        FOIL Reference # 00011

Dear Ms. Hammer:

This office writes in response to your Freedom of Information Law ("FOIL") Request #00011, submitted on January 12, 2026. The FOIL Request states as follows:

> Pursuant to Article 6 of the New York Public Officers Law, I hereby request copies of any and all existing **maps** in the possession, custody, or control of the Town of Bedford, including but not limited to the Department of Building, Planning Department, Zoning Office, and any archived or legacy record systems, that classify, describe, or depict the structure located at **146 Goldens Bridge Road, Bedford, New York**—identified in multiple Town records as a "1-story residence over garage"—as **anything other than a residential structure**.
>
> This request specifically includes, but is not limited to:
>
> Any **zoning maps, tax maps, planning maps, or property classification maps** that identify the structure as non-residential, accessory, storage, agricultural, or any use other than residential;
>
> Any **filed drawings, plans,** that classify or describe the structure as non-residential;

Provided herewith are electronic records in the Town of Bedford's custody or possession that may be considered responsive to your FOIL Request.



321 Bedford Road, Bedford Hills, NY 10507 · bedfordny.gov · townclerk@bedfordny.gov · 914.666.4534



**TOWN OF BEDFORD**
**OFFICE OF THE TOWN CLERK**



146 Goldens Bridge Rd
Katonah, NY  10536

RE:  FOIL Reference # 2025-00484
     FOIL Request – Records Reflecting Residential Classification of barn aparment 146 Goldens
Bridge
     146 Goldens Bridge Rd

### FREEDOM OF INFORMATION REQUEST NOT FILLED

01/12/2026

Dear Melanie Hammer, Esq.,

In response to your request on 12/21/2025 for the above records, we could not fill your request due to the following:

There are no documents responsive to this request. There is nothing listing the structure as "residential" in the building department. A permit/co was issued for the 2nd floor of the garage as a "rec room". Parcel history is enclosed.

If you have any questions, or require further information, please do not hesitate to contact me.

Sincerely,

Alexandra Whalen
Records Access Officer
Bedford

BY THIS CERTIFICATE OF COMPLIANCE THE

# NEW YORK ELECTRICAL INSPECTION SERVICES, INC.

150 White Plains Road, Suite 104, Tarrytown, NY 10591 • 914-347-4390

**CERTIFIES THAT**

*2✓796*

**Upon the application of:**
M.J. Electric -
PO BOX 580
BREWSTER, NY , 10509

**Upon premises owned by:**
Vincent Farrell
14 GOLDENS BRIDGE RD
KATONAH, NY , 10536

**Located At:** 146 GOLDENS BRIDGE RD, KATONAH, NY, 10536
**Application #: A6464**        **Certificate #: 2055**        **Bldg Dept: Bedford Hills**
**Section: 49.7**        **Block: 1**        **Lot: 3**        **Permit #: 77-100-483**

A visual inspection of the electrical system at this premise described as a Residential occupancy, wherein the premises electrical system consisting of electrical devices and wiring, described below, located in/on the premises at:
146 GOLDENS BRIDGE RD, KATONAH, NY, 10536
Floor 2 inspected in accordance with the NYS and NFPA 70-08 and the detail of the installation, as set forth below, was found to be in compliance therewith on the 20 Day of June, 2012.

| Name/Location | Type | Qty | Rating | Circuit |
|---|---|---|---|---|
| Fixture, Garage, Floor 2 | Incandescent | 14 | | |
| Receptacle, Garage, Floor 2 | Convenience | 12 | | |
| Switch, Garage, Floor 2 | A/C | 7 | | |
| Heat, Garage, Floor 2 | BB Up To 1000 Watts | 3 | | |
| Fan, Garage, Floor 2 | Paddle Fan | 2 | | |
| Heat, Garage, Floor 2 | Thermostats Line Voltage | 2 | | |
| Reinspection 6/20/12 | Garage | 1 | | |

RECEIVED
JUN 2 6 2012
Bedford Building Dept.

*D. Morabito*

Officer: Domenic Morabito

This certificate may not be altered in any way and is validated only by the presence of a raised seal at the location indicated.
This certificate is valid for work performed before date of inspection only.                4

Wednesday, June 20, 2012                                                          page 1 of 1

# Certificate of Occupancy



**Town of Bedford**
**425 Cherry Street**
**Bedford Hills, NY 10507**
**914-666-8040**

4/4/2012

**Certificate:** 2012-1133
**Issued:** 4/4/2012

**Building Permit No.** 77-100-483

This is to certify that:  **Farrell, Vincent Depaul**
of  **189 Mead St, Waccabuc, NY  10597**
having filed on  **4/4/2012**          Application No.   **2012-1133**
for a Certificate of Occupancy applying to premises located at  **146 Goldens Bridge Rd**
**Katonah, NY  10536**          being Section, Block and Lot   **49.7-1-3**
Town of Bedford Assessment map in the  **R-1A**  district as shown on the Town zoning map,
and the application having been approved, authority is hereby given to occupy or use said
premises or building or part thereof for the following purposes:

**Two-car garage**

**Inspected - 3/21/2012 - visible only**

*Steven Frailetter / Smith*

**Building Inspector**

FILED: WESTCHESTER COUNTY CLERK 11/29/2023 01:04 PM



## Zoning analysis

## Building coverage summary

Structure for garage apartment

Patrick M. Croke Architect

Project Name:
Garage apartment
1 A & Goldens Bridge Road
Katonah, NY

Drawing Title:
Site plan and general notes

Drawing Number:
A-1

SURVEY OF PROPERTY

Survey — SCALE 1" = 100'

Site Plan at structures — SCALE 1" = 50'

A-538

NO. *4026 A*

# APPLICATION

## FOR

Fee —

### CERTIFICATE OF COMPLIANCE

(Building Permit No. *1774*)

## TO THE BUILDING INSPECTOR

of Town of Bedford, Westchester County, New York.

(1) Having complied with the provisions of the Building Zone Ordinance and the Building Code with respect to the filing of any necessary plans and specifications, I hereby apply for a Certificate of Compliance to apply to the following described premises:

(2) Located at No. .................... on the *WEST* side of *Route 22*

(Street, Avenue or Place), Section No. *2* Lot No. *76* Town of Bedford Assessment Map.

(3) The dimensions, shape and location of the lot to be built upon; and the positions and dimensions of the existing and proposed buildings and their projections thereon are as shown on the plans, drawn to scale, submitted herewith and made a part of this Application.

(4) It is proposed, to occupy or use the premises, buildings or structures or parts thereof for the following purposes:

*2ND FLOOR ADDITION - ELIMINATING ONE BTM to CREATE*
*ACCESS to ADDITION Renoviate / Building one Full Bath*

Note: If to be used for manufacturing or business purposes, state exact nature thereof; if for residential purposes, state number of families. In either case, give full particulars respecting each building or structure. If only part of the premises is to be used, and Certificate desired for only that part, state just what is desired.

(5) The heights of the proposed main and accessory buildings or structures are as follows:

*2 STORY APPOX 30'*

(6) The buildings or structures now on the lot are used for the following purposes:

*ONE FAMILY Residence.*

(7) The premises which are the subject of this application are owned by:

*VINCENT / CLOTILDE FARRELL*

Address *146 Goldens Bridge Rd, KATONAH, N.Y. 10536*

(8) My position with respect to this application is that of *GENERAL Contractor*
(Owner, lessee or tenant)

(9) I am familiar with the Building Zone Ordinance and the Building Code and submit this application in conformity with its provisions.

(10) I hereby certify that the above statements and data are correct and true to the best of my knowledge and belief.

(Signed) *Guido M. Sundano*

Business Address *3 TRAILS LA, MONTROSE, N.Y. 10548*

Residence Address *SAME.*

Date *July 26*, 19 *88*.

A-539



*22796*

Mr. Steven Fraietta
Town of Bedford Building Inspector
321 Bedford Road
Bedford Hills, NY

Dear Mr. Fraietta,

Attached are photographs that you requested for the smoke/carbon monoxide detector that was installed in the recreation room at 146 Goldens Bridge Road. Owners are Peter and Tiffany Bevacqua.

Please let me know if you have questions and my cell phone number is ▮▮▮

Best regards,

Judy Lynch
Associate Broker
Houlihan Lawrence Real Estate

RECEIVED
JUL 1 0 2014
Bedford Building Dept.

A-540

*12594*

## THE STATE INSURANCE FUND
199 CHURCH STREET    NEW YORK, N.Y. 10007
(212) 312-7627
### CERTIFICATE OF WORKERS' COMPENSATION INSURANCE

AMERICAN PAINTNG &
REFINISHING CORP
3 TRAVIS LANE
MONTROSE        NY    10548

| POLICY NUMBER |
| --- |
| 817 369-2 |
| DATE |
| 4/29/88 |
| CERTIFICATE NUMBER |
| 457-542 |

PERIOD COVERED BY THIS CERTIFICATE
10/01/87 TO 10/01/88

| POLICYHOLDER | CERTIFICATE HOLDER |
| --- | --- |
| AMERICAN PAINTNG &<br>REFINISHING CORP<br>3 TRAVIS LANE<br>MONTROSE    NY    10548 | TOWN OF BEDFORD<br>321 BEDFORD ROAD<br>BEDFORD HILLS    NY    10507 |

THIS IS TO CERTIFY THAT THE POLICYHOLDER NAMED ABOVE IS INSURED WITH THE STATE INSURANCE FUND UNDER POLICY NO. 817 369-2 UNTIL 10/01/89, COVERING THE ENTIRE OBLIGATION OF THIS POLICYHOLDER FOR WORKERS' COMPENSATION UNDER THE NEW YORK WORKERS' COMPENSATION LAW WITH RESPECT TO ALL OPERATIONS IN THE STATE OF NEW YORK, EXCEPT AS INDICATED BELOW.

IF SAID POLICY IS CANCELLED, OR CHANGED PRIOR TO 10/01/89 IN SUCH MANNER AS TO AFFECT THIS CERTIFICATE, 5 DAYS WRITTEN NOTICE OF SUCH CANCELLATION WILL BE GIVEN TO THE CERTIFICATE HOLDER ABOVE. NOTICE BY REGULAR MAIL SO ADDRESSED SHALL BE SUFFICIENT COMPLIANCE WITH THIS PROVISION.

THIS CERTIFICATE DOES NOT APPLY TO BUILDING DEMOLITION.

THE STATE INSURANCE FUND

*H. Jacobs*

DIRECTOR, INSURANCE FUND UNDERWRITING

1211

A-541





Certificate № 4659

Issued ............. *June 10*, 19..*74*

....... *2.00*

# TOWN OF BEDFORD
## WESTCHESTER COUNTY, N. Y.
### Certificate of Occupancy

Building Permit No. ........................

This is to certify that ........................................................................................

of .............................. having filed on .......................... *December 15*, 19..*73*

Application No. .............................. for a Certificate of Occupancy applying to premises located

at .............................................. being Sec. ............., Lot ............., Town of

Bedford Assessment Map at a .......... *1A* .......... zone as shown on the building zone map, and the

application having been approved, authority is hereby given to occupy or use said premises or

building or part thereof for the following purposes:

........................................................................................................................

........................................................................................................................

........................................................................................................................

........................................................................................................................

........................................................................................................................

........................................................................................................................

under the following limitations ..................................................................................

........................................................................................................................

........................................................................................................................

........................................................................................................................

........................................................................................................................

........................................................................................................................

on and after this date until revoked, and subject to all the provisions of

### THE BUILDING ZONE ORDINANCE

..............................................
Building Inspector

## Renee Mascunana

| | |
|---|---|
| **From:** | Eric L. Gordon <egordon@kblaw.com> |
| **Sent:** | Wednesday, November 1, 2023 2:57 PM |
| **To:** | Kowalski, Kim; Michaelis, Peter |
| **Cc:** | Ciraco, Albert; Youngblood, Jesica |
| **Subject:** | 146 Goldens Bridge Road - Melanie Hammer |
| **Attachments:** | Confidential Memorandum - Bedford -- Hammer - 146 Goldens Bridge Road v.1.pdf; Determination.pdf |

CAUTION: External sender.

Kim and Peter:

Attached is a Confidential Memorandum I prepared regarding the 146 Goldens Bridge Road application that is on the November 2, 2023 Board of Appeal's agenda. ███████████████████

Kim – if you could please forward the Confidential Memorandum to the Board members this afternoon, along with Al's determination, and ask that it be kept confidential, it would be greatly appreciated.

Please do not hesitate to contact me if you have any questions.

Eric
Eric L. Gordon
Principal Member

## KEANE&BEANE P.C.
ATTORNEYS AT LAW

Multi-Faceted Law Firm, Singular Client Focus.

**Serving the Hudson Valley and Beyond for over 40 Years**

445 Hamilton Avenue, Suite 1500
White Plains, NY 10601

(914) 946-4777  Ext: 335
(914) 946-6868 (Fax)
egordon@kblaw.com
www.kblaw.com
Follow us on Twitter
Follow us on Facebook
Follow us on LinkedIn

PERSONAL & CONFIDENTIAL
The information transmitted herein may contain privileged and/or confidential material. Any disclosure, copying, distribution or other use of, or taking of any action in reliance upon, information contained herein or attached hereto by persons or entities other than the intended recipient(s) is prohibited. Any misdirection or other error in the transmission of this information is not and shall not be considered a waiver of any applicable privileges. If you have received this transmission in error, please immediately notify the sender and destroy the original transmission and its attachments without saving, distributing or copying in any manner.

Please consider the environment before printing this email message.

1

Case 7:25-cv-02618-CS    Document 80-3    Filed 03/09/26    Page 2 of 4



**KEANE&BEANE**P.C.

ATTORNEYS AT LAW

<mark>PRIVILEGED AND CONFIDENTIAL</mark>
<mark>ATTORNEY-CLIENT CORRESPONDENCE</mark>
ATTORNEY WORK PRODUCT
NOT SUBJECT TO FOI DEMAND

- ■ **Main Office**
  445 Hamilton Avenue
  White Plains, NY 10601
  Phone 914.946.4777
  Fax 914.946.6868

- ■ **Mid-Hudson Office**
  200 Westage Business Center
  Fishkill, NY 12524
  Phone 845.896.0120

- ■ **New York City Office**
  60 East 42nd Street
  New York, NY 10165
  Phone 646.794.5747

**MEMORANDUM**

TO:        Town of Bedford Zoning Board of Appeals

FROM:    Eric L. Gordon

RE:        Melanie Hammer
            146 Goldens Bridge Road Appeal

DATE:    <mark>November 1, 2023</mark>



<mark>1026/510/4859-0909-6588v1  11/1/23</mark>

WWW.KBLAW.COM





| | |
|---|---|
| **From:** | Kowalski, Kim |
| **To:** | Black, Meredith; Lee, Rosemary; Meredith Black; Michaelis, Peter; Roger van Loveren; Spano, Lisa |
| **Subject:** | 12/7 ZBA Agenda and Backup |
| **Date:** | Friday, December 1, 2023 10:58:00 AM |
| **Attachments:** | Lacovara Green 55 Holly Branch.pdf |
| | Cramer 32 The Terrace.pdf |
| | A Kids World at Trinity Church 325 West Patent.pdf |
| | Kenoff 719 Old Post Road.pdf |
| | Blau 23 East Lake.pdf |
| | Memorandum - Bedford -- Hammer - 146 Goldens Bridge Road - Proposed Resolution 4870-0699-3299 v.1.pdf |
| | Z ZBA 12-07-2023 Agenda.pdf |
| | DRAFT ZBA 11-23-2 - Hammer - 146 Goldens Bridge - Cottage EG.docx |

Hello,

Eric would like you to review the draft resolution for Hammer and get back to him and me with any changes by Tuesday (12/5) morning.

Packets are ready for pickup.

Peter, I have some resolutions that require your signature.

Thank you,

**Kim M. Kowalski**
Town of Bedford
Zoning Board of Appeals
914.666.4585
425 Cherry Street
Bedford Hills, NY 10507

CLOSED,APPEAL,ECF,PRO-SE,SIMILAR

# U.S. District Court
## Southern District of New York (White Plains)
## CIVIL DOCKET FOR CASE #: 7:25-cv-02618-CS

| | |
|---|---|
| Hammer v. Town of Bedford New York et al | Date Filed: 03/27/2025 |
| Assigned to: Judge Cathy Seibel | Date Terminated: 01/13/2026 |
| Related Case: 7:24-cv-01168-CS | Jury Demand: Plaintiff |
| Cause: 42:1983 Civil Rights Act | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Melanie Hammer, Esq.**  represented by  **Melanie Hammer**
Melanie Hammer, Esq.
360 Court Street
Suite 3
Brooklyn, NY 10536
718-757-7677
Email: melanie@hammer-esq.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Town of Bedford New York**  represented by  **Gerald Stephen Smith , Jr**
Silverman and Associates
445 Hamilton Ave. # 1102
White Plains, NY 10601
(914) 574-4510
Fax: (914) 574-4515
Email:
gsmith@silvermanandassociatesny.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Department of Building Bedford New York**  represented by  **Gerald Stephen Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Zoning Board of Appeals Bedford New**  represented by  **Gerald Stephen Smith , Jr**

**York**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Albert Ciraco**
*Building Inspector Town of Bedford New York*

represented by **Gerald Stephen Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Eric Gordon, Esq.**
*Attorney for the Town of Bedford New York*

represented by **Gerald Stephen Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Zitt, Esq.**
*Attorney for the Town of Bedford New York*

represented by **Gerald Stephen Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/27/2025 | 1 | COMPLAINT against Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York. Document filed by Melanie Hammer, Esq. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit 1B, # 4 Exhibit C, # 5 Exhibit 1C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit 1E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 Exhibit M, # 17 Exhibit U, # 18 Exhibit V, # 19 Affidavit Affidavit of Service as to Eric Gordon, Esq., # 20 Affidavit Affidavit of Service as to Town of Bedford, # 21 Affidavit Affidavit of Service as to Town of Bedford, # 22 Affidavit Affidavit of Service as to Kelly Paul).(sac) (Entered: 03/31/2025) |
| 03/27/2025 | 2 | CIVIL COVER SHEET filed. (sac) (Entered: 03/31/2025) |
| 03/27/2025 | | Case Designated ECF. (sac) (Entered: 03/31/2025) |
| 03/27/2025 | 3 | STATEMENT OF RELATEDNESS re: that this action be filed as related to 7:24-cv-1168. Document filed by Melanie Hammer, Esq. (sac) (Entered: 03/31/2025) |
| 03/31/2025 | | CASE MANAGEMENT NOTE: For each electronic filing made in a case involving a self-represented party who has not consented to electronic service, the filing party must serve the document on such self-represented party in a manner permitted by Fed. R. Civ. P. 5(b)(2) (other than through the ECF system) and file proof of service for each document so served. Please see Rule 9.2 of the courts ECF Rules & Instructions for further information. (sac) (Entered: 03/31/2025) |

| 03/31/2025 | 4 | STANDING ORDER IN RE CASES FILED BY PRO SE PLAINTIFFS (See 24-MISC-127 Standing Order filed March 18, 2024). To ensure that all cases heard in the Southern District of New York are handled promptly and efficiently, all parties must keep the court apprised of any new contact information. It is a party's obligation to provide an address for service; service of court orders cannot be accomplished if a party does not update the court when a change of address occurs. Accordingly, all self-represented litigants are hereby ORDERED to inform the court of each change in their address or electronic contact information. Parties may consent to electronic service to receive notifications of court filings by email, rather than relying on regular mail delivery. Parties may also ask the court for permission to file documents electronically. Forms, including instructions for consenting to electronic service and requesting permission to file documents electronically, may be found by clicking on the hyperlinks in this order, or by accessing the forms on the courts website, nysd.uscourts.gov/forms. The procedures that follow apply only to cases filed by pro se plaintiffs. If the court receives notice from the United States Postal Service that an order has been returned to the court, or otherwise receives information that the address of record for a self-represented plaintiff is no longer valid, the court may issue an Order to Show Cause why the case should not be dismissed without prejudice for failure to comply with this order. Such order will be sent to the plaintiffs last known address and will also be viewable on the court's electronic docket. A notice directing the parties' attention to this order shall be docketed (and mailed to any self-represented party that has appeared and has not consented to electronic service) upon the opening of each case or miscellaneous matter that is classified as pro se in the court's records. (Signed by Judge Laura Taylor Swain on 3/18/2024) (sac) Modified on 5/5/2025 (sac). (Entered: 03/31/2025) |
| 04/01/2025 | | MAILING RECEIPT: Document No: 4. Mailed to: Melanie Hammer Esq. 360 Court Street Suite 3 Brooklyn, NY 11231. (Entered: 04/01/2025) |
| 04/01/2025 | 5 | ORDER DIRECTING PAYMENT OF FEE OR IFP APPLICATION: Plaintiff is directed to render payment of the filing fee or submit an IFP application to this Court's *Pro Se* Office within thirty (30) days of the date of this Order. The Clerk of Court is directed to assign this matter to my docket. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). Filing Fee due by 5/1/2025. In Forma Pauperis (IFP) Application due by 5/1/2025. (Signed by Judge Laura Taylor Swain on 4/1/2025) (Attachments: # 1 IFP Application) (keb) (Entered: 04/01/2025) |
| 04/01/2025 | | NOTICE OF CASE REASSIGNMENT - SUA SPONTE to Judge Laura Taylor Swain. Judge Unassigned is no longer assigned to the case. (vba) (Entered: 04/01/2025) |
| 04/02/2025 | | MAILING RECEIPT: Document No: 5. Mailed to: Melanie Hammer Esq. 360 Court Street Suite 3 Brooklyn, NY 11231. (Entered: 04/02/2025) |
| 04/03/2025 | | Pro Se Payment of Fee Processed: $405.00 Credit Card processed by the Finance Department on 04/03/2025, Receipt Number 38676. (sr) (Entered: 04/03/2025) |
| 04/03/2025 | | CASE ACCEPTED AS SIMILAR. Create association to 7:24-cv-01168-CS. Notice of Assignment to follow. (vba) (Entered: 04/03/2025) |

| 04/03/2025 | | NOTICE OF CASE REASSIGNMENT to Judge Cathy Seibel. Judge Laura Taylor Swain is no longer assigned to the case. (vba) (Entered: 04/03/2025) |
|---|---|---|
| 04/03/2025 | | Magistrate Judge Judith C. McCarthy is designated to handle matters that may be referred in this case. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (vba) (Entered: 04/03/2025) |
| 04/03/2025 | 6 | SUMMONS ISSUED as to Town of Bedford New York. (jjc) (Entered: 04/03/2025) |
| 04/08/2025 | 7 | LETTER addressed to Judge Laura Taylor Swain from Melanie Hammer dated 4/8/2025 re: I am an attorney in New York State courts proceeding pro se against my town, Bedford New York. For context, this case involves at 42 U.S.C. § 1983 civil rights action in which the defendant town illegally denied building permits as a pretext to prevent a rental property. The Defendants attempts to cover their intentional interference with my constitutionally protected property rights and due process rights, turned into a linty of civil rights violations including ex parte hearings, Brady Violations, and two malicious prosecutions. For the last two years I have been illegally prohibited from renting my apartment. This has been a financial hardship. The Defendants have never provided a statute or any community interest to support their pretextual permit denial.. Document filed by Melanie Hammer, Esq..(nd) (Entered: 04/09/2025) |
| 04/08/2025 | 11 | LETTER addressed to Judge Laura Taylor Swain from Melanie Hammer, Esq. dated 4/8/2025 re: I am an attorney in New York State Courts proceedings pro se against my town, Bedford, New York. For context, this case involves at 42 U.S.C. § 1983 civil rights action in which the defendant town illegally denied building permits as a pretext to prevent a rental property. The defendants attempts to cover their intentional interference with my constitutionally protected property rights and due process rights, turned into a litny of civil rights violations including ex parte hearings, Brady Violations, and two malicious prosecutions. For the last two years I have been illegally prohibited from renting my apartment. This has been a financial hardship. The defendants have never provided a statue or any community interest to support their pretextual permit denial. Document filed by Melanie Hammer, Esq..(km) (Entered: 04/10/2025) |
| 04/08/2025 | 12 | PROOF OF SERVICE of Summons and Complaint. Town of Bedford New York served on 4/3/2025, answer due 4/24/2025. Service was accepted by Nina Kellog Deputy Town Clerk. Document filed by Melanie Hammer, Esq. (tg) (Entered: 04/10/2025) |
| 04/09/2025 | 8 | PRO SE CONSENT TO RECEIVE ELECTRONIC SERVICE. The following party: Melanie Hammer, Esq consents to receive electronic service via the ECF system. Document filed by Melanie Hammer, Esq. (sac) (Entered: 04/09/2025) |
| 04/09/2025 | 9 | MOTION for Permission for Melanie Hammer, Esq. to participate in electronic case filing in this case. Document filed by Melanie Hammer, Esq. (sac) (Additional attachment(s) added on 4/9/2025: # 1 Exhibit MOTION FOR ADMISSION PRO HAC |

| | | |
|---|---|---|
| | | VICE) (sac). (Entered: 04/09/2025) |
| 04/09/2025 | 10 | ORDER granting 9 Motion for Permission for Electronic Case Filing: Application for Plaintiff to participate in electronic case filing is granted. If Plaintiff wishes to also apply for admission pro hac vice, she should file the required documents as a separate motion. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 04/09/2025) |
| 04/21/2025 | 13 | NOTICE OF APPEARANCE by Gerald Stephen Smith, Jr on behalf of Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 04/21/2025) |
| 04/21/2025 | 14 | LETTER MOTION for Extension of Time to File Answer addressed to Judge Cathy Seibel from Gerald S. Smith dated April 21, 2025. Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 04/21/2025) |
| 04/24/2025 | 15 | ORDER granting 14 Letter Motion for Extension of Time to Answer: Defendants may have until 5/15/25 to respond to the Complaint. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 04/24/2025) |
| 05/15/2025 | 16 | LETTER MOTION for Conference *Regarding Defendants' Anticipated Motion To Dismiss* addressed to Judge Cathy Seibel from Gerald S. Smith dated May 15, 2025. Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York. (Attachments: # 1 Exhibit February 2024 State Court Decision re Article 78 Petition).(Smith, Gerald) (Entered: 05/15/2025) |
| 05/16/2025 | 17 | FIRST MOTION for Default Judgment as to . Document filed by Melanie Hammer, Esq. Return Date set for 5/30/2025 at 10:00 AM. (Attachments: # 1 Proposed Order proposed order default judgement, # 2 Exhibit proof of service, # 3 Exhibit proof of fees 1, # 4 Exhibit proof of fees 2, # 5 Exhibit proof of expired extension, # 6 Exhibit pro se complaint SDNY FORM).(Hammer, Melanie) (Entered: 05/16/2025) |
| 05/16/2025 | 18 | RESPONSE in Opposition to Motion re: 17 FIRST MOTION for Default Judgment as to . . Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 05/16/2025) |
| 05/16/2025 | 19 | ORDER denying 17 Motion for Default Judgment: Defendants are not in default. They filed a pre-motion letter on the date their response to the Complaint was due, and that stays their deadline to move or answer. Plaintiff should consult item 2.A of my Individual Rules of Practice (and, for future reference should she ever have a case with a default, Attachment A, which explains the Court's default judgment procedure). (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 05/16/2025) |
| 05/16/2025 | 20 | ORDER granting 16 Letter Motion for Conference: In-person pre-motion conference to |

| | | |
|---|---|---|
| | | be held on 6/24/25 at 2:30 pm. Plaintiff shall respond to Defendants' letter, by letter of no more than 3 pages, no later than 6/17/24. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 05/16/2025) |
| 05/16/2025 | 21 | LETTER RESPONSE to Motion addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated May 16, 2025 re: 16 LETTER MOTION for Conference *Regarding Defendants' Anticipated Motion To Dismiss* addressed to Judge Cathy Seibel from Gerald S. Smith dated May 15, 2025. *RULE 12 Letter*. Document filed by Melanie Hammer, Esq..(Hammer, Melanie) (Entered: 05/16/2025) |
| 05/17/2025 | 22 | FIRST MOTION for Order to Show Cause *to preclude Defendants Answer or 12b motion as expired and waived*. Document filed by Melanie Hammer, Esq. Return Date set for 5/27/2025 at 10:00 AM. (Attachments: # 1 Proposed Order OSC to preclude answer or defendants motion past Rule 12 deadline and extension deadline, # 2 Affidavit in support of rule 12 and 6 non discretionary requirements as a matter of law, # 3 Exhibit letter to the court based on the courts practice rules exception to requesting leave based on potentially waiving a right).(Hammer, Melanie) (Entered: 05/17/2025) |
| 05/19/2025 | 23 | ORDER denying 22 Motion for Order to Show Cause: Plaintiff as an attorney should understand that Defendants' May 15 letter was not an extension request; it was, as permitted (and indeed, required) by my Individual Rules of Practice, a response to the Complaint. As I will explain further at the upcoming conference, the practice of requiring a pre-motion letter and pre-motion conference in advance of a formal motion actually speeds the resolution of the case on the merits. Further, pursuant to S.D.N.Y. ECF Rule 3.3, an "after hours" filing is timely as long as it is made by 11:59 pm. The filing receipt for Defendants' May 15 letter shows that it was filed at 6:07 pm. Defendants are not in default, so I have no occasion to consider whether a default should be excused, except to note that even if a default had been entered, which has not occurred here, defaults at early stages of the litigation are often excused in favor of adjudication on the merits. See, e.g., Z.A. v. Hyatt Corp., No. 24-CV-3742, 2024 WL 3794338, at *3 (S.D.N.Y. Aug. 13, 2024); Evans v. New York City Health & Hosps. Corp., No. 21-CV-10378, 2022 WL 18587777, at *3 (S.D.N.Y. Nov. 28, 2022), report and recommendation adopted, 2023 WL 580527 (S.D.N.Y. Jan. 27, 2023); Platinum Funding Serv., LLC v. Petco Inculation Co., No. 09-CV-1133, 2010 WL 11566127, at *2 (D. Conn. Jan. 26, 2010). Finally, I do not understand Plaintiff's position that Defendants have not set forth a basis for dismissal under Rule 12. In addition to their argument under Rule 8, Defendants plainly contend that Plaintiff has not set forth claims upon which relief can be granted. The Court notes that Plaintiff's May 16 letter does not address those arguments, but she must do so in advance of the conference. Because Plaintiff wishes to proceed expeditiously, the Court will move up the conference to May 30, 2025 at 3:30 pm. Plaintiff must respond to Defendants' substantive arguments, by letter of no more than 3 pages, no later than May 23, 2205. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 05/19/2025) |
| 05/19/2025 | 24 | SECOND LETTER MOTION for Conference *Opposition to pre-motion conference to discuss defendants anticipated motion to dismiss without compliance with rule 12 mandates to answer or file a motion timely under FRCP 12* addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 5/19/2025. Document filed by Melanie |

| | | |
|---|---|---|
| | | Hammer, Esq. Return Date set for 5/30/2025 at 09:30 AM..(Hammer, Melanie) (Entered: 05/19/2025) |
| 05/20/2025 | 25 | SECOND LETTER addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 5/20/2025 re: location of 5/30 conf. and request for a ct reporter to be present. Document filed by Melanie Hammer, Esq..(Hammer, Melanie) (Entered: 05/20/2025) |
| 05/20/2025 | 26 | MEMO ENDORSEMENT on re: 25 Letter filed by Melanie Hammer, Esq. ENDORSEMENT: The 6/24/25 conference was to be in person (ECF No. 20), and the 5/30/25 conference will be too. I am not clear on what Plaintiff refers to when she says she does not have access to the full written orders. When the Court issues a "text only order," the text on the docket is the order and there is no underlying written document. Conferences with pro se litigants are usually taken by a court reporter, but I had not thought that necessary with a pro se litigant who is an attorney. The conference will be electronically recorded. SO ORDERED. (Signed by Judge Cathy Seibel on 5/20/2025) (mml) (Entered: 05/20/2025) |
| 05/20/2025 | 27 | THIRD LETTER addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 5/20/2025 re: letter confirming court rulings despite Answer or response from defendant and preserving record. Document filed by Melanie Hammer, Esq..(Hammer, Melanie) (Entered: 05/20/2025) |
| 05/22/2025 | 28 | FIRST LETTER MOTION for Leave to File superseding amended complaint upon request for defendant in ECF doc 16 *Melanie Hammer* addressed to Judge Cathy Seibel from Melanie Hammer dated 5/22/2025. Document filed by Melanie Hammer, Esq. (Attachments: # 1 Exhibit proposed amended complaint).(Hammer, Melanie) (Entered: 05/22/2025) |
| 05/22/2025 | 29 | ORDER granting, on conditions, 28 Letter Motion for Leave to File Document: I customarily permit plaintiffs to amend after a pre-motion conference and before entertaining a motion to dismiss, and will do so in this case. But that exercise is almost always more beneficial if it occurs after discussion at the pre-motion conference, where the Court can identify its concerns and the parties can explain their positions. So the conference remains on, and at the conference we will set a date for amendment and either motion or answer. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 05/22/2025) |
| 05/24/2025 | 30 | FOURTH LETTER addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 5/24/2025 re: virtual appearance - outpatient surgery. Document filed by Melanie Hammer, Esq. (Attachments: # 1 Exhibit proof of surgery time).(Hammer, Melanie) (Entered: 05/24/2025) |
| 05/26/2025 | 31 | ORDER re: 30 Letter filed by Melanie Hammer, Esq.: Both sides may attend by phone. Call-in number is 855-244-8681 and access code is 1809850784#. (HEREBY ORDERED by Judge Cathy Seibel) (Text Only Order) (Seibel, Cathy) (Entered: 05/26/2025) |
| 05/30/2025 | | Minute Entry for proceedings held before Judge Cathy Seibel: Pre-Motion Conference held on 5/30/2025. Plaintiff Melanie Hammer, Esq. appears telephonically. Defendants' counsel Gerald Smith, Esq. appears telephonically. Law Clerk Samantha Mitchell |

| | | |
|---|---|---|
| | | appears telephonically. The Court grants Plaintiff leave to amend Complaint. Plaintiff's Amended Complaint to be submitted by June 6, 2025. Defendants' Motion to Dismiss (or Answer) to be submitted by July 11, 2025; Plaintiff's opposition (if Motion filed) due July 25, 2025; Defendants' reply due August 8, 2025. This proceeding was recorded via the Cisco Webex platform. (wc) (Entered: 06/02/2025) |
| 05/31/2025 | 32 | TRANSCRIPT REQUEST *I respectfully request access to the Electronic Court Recording (ECR) of the pre-pleading conference in the above-captioned matter. At that conferenceheld without any responsive pleading filedPlaintiff was ordered to defend and amend the Complaint, Defendant was granted an additional 35 days (until July 11, 2025) to respond despite Plaintiffs stated hardship, and the Court sua sponte granted leave for defendants Sur-reply. As a result, the pre-motion schedule now extends through August 18, 2025, with no return date set for a decision. please advise on how I may request a return date for decision.* for a pre-motion conference proceeding held on 5/30/2025 before Judge Cathy Seibel. Document filed by Melanie Hammer, Esq.. (Hammer, Melanie) (Entered: 05/31/2025) |
| 05/31/2025 | 33 | FIRST MOTION to Change Venue *SDNY Manhattan division based upon the named defendants of the Firm Keane & Beane PC and witness Scarpino*. Document filed by Melanie Hammer, Esq. Return Date set for 6/6/2025 at 09:30 AM. (Attachments: # 1 Affidavit motion for venue change, # 2 Affidavit aff in support of venue change). (Hammer, Melanie) (Entered: 05/31/2025) |
| 05/31/2025 | 34 | FIFTH LETTER addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 5/31/2025 re: venue and individual court practice rule compliance. Document filed by Melanie Hammer, Esq..(Hammer, Melanie) (Entered: 05/31/2025) |
| 06/01/2025 | 35 | SIXTH LETTER addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 7/1/2025 re: change of venue/ ongoing professional relationship between this Court and the law firm Keane & Beane, P.C., which currently employs the named defendants Eric Gordon and Robert Zitt. Mr. Gordon, for example, was lead counsel in Gache v. Hill Realty Associates, LLC, No. 7:2013-cv-01650, which was litigated before this Court.. Document filed by Melanie Hammer, Esq..(Hammer, Melanie) (Entered: 06/01/2025) |
| 06/02/2025 | 36 | MEMO ENDORSEMENT on re: 32 Transcript Request, filed by Melanie Hammer, Esq. ENDORSEMENT: Because Plaintiff appears to have misunderstood, the Court reiterates that she has not been ordered to amend her complaint. She has been offered the opportunity to do so, now that she knows, from Defendants' pre-motion letter and the discussion at the pre-motion conference, what the issues with the Complaint may be. She need not amend if she chooses not to, but she should understand that in all likelihood there will not be another opportunity to amend as to the issues that have already been raised. If Plaintiff chooses to amend, she shall do so by June 6, 2025 (the date she requested). Perhaps confusing a reply with a sur-reply, Plaintiff also appears to be under the mistaken belief that there is something unusual about the moving party being permitted a reply brief without a special request. There is not. See, e.g., S.D.N.Y. Local Civil Rule 6.1(a) (providing for motion, opposing and reply papers). It would be unusual to provide for a sur-reply, see Individual Rules of Practice of Judge Cathy Seibel 2.B.i ("Sur-reply memoranda will not be accepted unless the Court's prior permission has been obtained."), but the Court has not provided for a sur-reply. Further, |

the Court does not ordinarily set return dates for civil motions, as there are dozens such motions on line ahead of this one, and the Court will get to it as its workload permits. Finally, Plaintiff is referred to the S.D.N.Y. website for information regarding transcripts of electronically recorded conferences. SO ORDERED. (Amended Pleadings due by 6/6/2025.) (Signed by Judge Cathy Seibel on 6/2/2025) (mml) (Entered: 06/02/2025)

| 06/02/2025 | 37 | ORDER denying 33 Motion to Change Venue. Plaintiff further contends that transfer is warranted because she maintains a business office and law practice in Brooklyn and thus Manhattan would be more convenient for her. The Court cannot fathom that claim, as Plaintiff's residence is in Westchester. (ECF No. 1 ("Compl.") paragraph 1.) Plaintiff brought this case in White Plains, correctly, as Rule 18 of the S.D.N.Y. Rules for Division of Business provides that a case be heard in White Plains if the cause of action arose in Westchester, as is the case here. Further, the defendants and all other witnesses, as far as the Court can tell, are located in Westchester. As Plaintiff herself alleges, "[a]ll actions by the defendants described-below occurred in the State of New York, County of Westchester...." (Compl. paragraph 2.) There is no good faith argument that convenience dictates a transfer to Manhattan. Given the sheer absence of any basis for the instant motion, and the timing of the application, it is hard to avoid the conclusion that Plaintiff is judge-shopping. I have considered the standards governing both 28 U.S.C. § 455 and 28 U.S.C. § 1404. The motion is denied. SO ORDERED. (Signed by Judge Cathy Seibel on 6/2/2025) (mml) (Entered: 06/02/2025) |
| 06/03/2025 | 38 | FOURTH MOTION for Recusal *RECUSAL, INTRA-DISTRICT TRANSFER, & CONFLICT DISCLOSURE*. Document filed by Melanie Hammer, Esq. Return Date set for 6/6/2025 at 09:00 AM. (Attachments: # 1 Affidavit RECUSAL, INTRA-DISTRICT TRANSFER, & CONFLICT DISCLOSURE).(Hammer, Melanie) (Entered: 06/03/2025) |
| 06/06/2025 | 39 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR** FIRST AMENDED COMPLAINT amending 1 Complaint,,, against All Defendants with JURY DEMAND.Document filed by Melanie Hammer, Esq. Related document: 1 Complaint,,,. (Attachments: # 1 Exhibit recusals, # 2 Exhibit Resolution /Municipal Policy to Sue Hammer, # 3 Exhibit Request for Conflict, # 4 Exhibit Assignment of J. Williams, # 5 Exhibit Recusal of J. Williams on 11/30 before the second ZBA meeting, # 6 Exhibit recusal of J. Prisco 12/7 before the second ZBA meeting, # 7 Exhibit assignment of J. Fifiio Before the second ZBA meeting, # 8 Exhibit ethics compl 7/30 Gordon & Zitt before the second justice court Prosecution, # 9 Exhibit 4/23 Appealate Filing Notice 14 days before the 1st Justice Court Prosecution, # 10 Exhibit 5/6 Prosecution initiated- 14 days after NYSCEF notice of appeal filed, # 11 Exhibit 5/9 50H hearing request 16 days after appeal noticifcationthrough NYSCEF, # 12 Exhibit 9/18 50H hearing request response to first dismissed justice court prosecution 8/29, # 13 Exhibit case law on point not provided to appealate div proceeding 5/6 summons, # 14 Exhibit justice court minutes).(Hammer, Melanie) Modified on 6/9/2025 (jgo). (Entered: 06/06/2025) |
| 06/06/2025 | 40 | ORDER denying 38 Motion for Recusal: Application denied for the reasons set forth in ECF No. 37 (which was docketed the day before Plaintiff filed this motion but which |

| | | |
|---|---|---|
| | | she apparently did not see). (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 06/06/2025) |
| 06/09/2025 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Melanie Hammer to RE-FILE Document No. 39 Amended Complaint. The filing is deficient for the following reason(s): the All Defendant radio button was selected;. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (jgo) (Entered: 06/09/2025) |
| 06/10/2025 | 41 | FIRST AMENDED COMPLAINT amending 39 Amended Complaint,,,,, against Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York with JURY DEMAND.Document filed by Melanie Hammer, Esq. Related document: 39 Amended Complaint,,,,,. (Attachments: # 1 Exhibit recusals, # 2 Exhibit resolution /Municipal Policy to Sue Hammer, # 3 Exhibit conflict disclosure request, # 4 Exhibit assignment of J. Williams, # 5 Exhibit recusal of J. Williams on 11/30 before the second ZBA meeting, # 6 Exhibit recesal of J. Prisco 12/7 before the second ZBA meeting s, # 7 Exhibit assignment of J. Fififio Before the second ZBA meeting, # 8 Exhibit ethics compl 7/30 Gordon & Zitt before the second justice court Prosecution, # 9 Exhibit appeal notification on 4/23 before first malicious prosecutionr, # 10 Exhibit summons issued 5/6 after the appeal noticifcation after 1983 notice, # 11 Exhibit 50h request in 5/9 in response to appeal and 1983 notice, # 12 Exhibit 50h demand after notice of 1983 filed, # 13 Exhibit case law defendant hid from the court, # 14 Exhibit reports minutes from malicious prosecution).(Hammer, Melanie) (Entered: 06/10/2025) |
| 06/11/2025 | 42 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Teleconference proceeding held on 5/30/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Ginsberg, Darby) (Entered: 06/11/2025) |
| 06/11/2025 | 43 | TRANSCRIPT of Proceedings re: Teleconference held on 5/30/2025 before Judge Cathy Seibel. Court Reporter/Transcriber: Darby Ginsberg, (914) 390-4102. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/2/2025. Redacted Transcript Deadline set for 7/14/2025. Release of Transcript Restriction set for 9/9/2025..(Ginsberg, Darby) (Entered: 06/11/2025) |
| 07/11/2025 | 44 | MOTION to Dismiss *Plaintiff's Amended Complaint*. Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 07/11/2025) |
| | | |

| 07/11/2025 | 45 | DECLARATION of Gerald S. Smith in Support re: 44 MOTION to Dismiss *Plaintiff's Amended Complaint*.. Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York. (Attachments: # 1 Exhibit Plaintiff's Amended Complaint, # 2 Exhibit Article 78 Decision, # 3 Exhibit Dismissal Order, # 4 Exhibit Dismissal Order).(Smith, Gerald) (Entered: 07/11/2025) |
| --- | --- | --- |
| 07/11/2025 | 46 | MEMORANDUM OF LAW in Support re: 44 MOTION to Dismiss *Plaintiff's Amended Complaint*. . Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 07/11/2025) |
| 07/16/2025 | 47 | FIRST LETTER MOTION for Leave to File Excess Pages *in the memo in opposition to rule 12(6)(b)* addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 7/16/2025. Document filed by Melanie Hammer, Esq. Return Date set for 7/18/2025 at 05:00 PM..(Hammer, Melanie) (Entered: 07/16/2025) |
| 07/17/2025 | 48 | ORDER granting 47 Letter Motion for Leave to File Excess Pages: The page limit is 8750 words, not 7000. See my Individual Rule 2B.i and SDNY Local Rule 7.1(c). Plaintiff may have 9000 words for her opposition brief. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 07/17/2025) |
| 07/21/2025 | 49 | FIRST MEMORANDUM OF LAW in Opposition re: 44 MOTION to Dismiss *Plaintiff's Amended Complaint*. *memo. in opposition*. Document filed by Melanie Hammer, Esq. (Attachments: # 1 Exhibit No Immunity Contract Attorney, # 2 Exhibit Brady not turned over even after FOIL request, # 3 Exhibit No leave to refile granted by Justice Court).(Hammer, Melanie) (Entered: 07/21/2025) |
| 08/08/2025 | 50 | REPLY MEMORANDUM OF LAW in Support re: 44 MOTION to Dismiss *Plaintiff's Amended Complaint*. . Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 08/08/2025) |
| 08/09/2025 | 51 | FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 50 Reply Memorandum of Law in Support of Motion, *request for subpoena, in camera review or delay for sur reply pending FOIL document production by the defendant who is intentionally withholding these documents* addressed to Judge Cathy Seibel from Melanie Hammer, Esq dated 8/9/2025. Document filed by Melanie Hammer, Esq. Return Date set for 8/12/2025 at 09:00 AM. (Attachments: # 1 Exhibit FOIL communications).(Hammer, Melanie) (Entered: 08/09/2025) |
| 08/11/2025 | 52 | LETTER RESPONSE to Motion addressed to Judge Cathy Seibel from Gerald S. Smith dated August 11, 2025 re: 51 FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 50 Reply Memorandum of Law in Support of Motion, *request for subpoena, in camera review or delay for sur reply pending FOIL document production by the defendant who is in . Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 08/11/2025)* |
| 08/14/2025 | 53 | ORDER denying 51 Letter Motion for Extension of Time to File Response/Reply: |

| | | |
|---|---|---|
| | | Plaintiff requests that the Court defer ruling on whether to permit a sur-reply until she receives internal emails in response to a FOIL request. As Defendant points out, no request for a sur-reply has been submitted. In any event, only limited materials outside the four corners of the complaint may be considered on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Examples include documents relied on in framing the complaint or public documents of which judicial notice can be taken (but not for their truth, only for the fact that they were said). See, e.g., Williams v. New York City Hous. Auth., 816 F. App'x 532, 534 (2d Cir. 2020); Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156-57 (2d Cir. 2006). Emails would not be among them. See, e.g., Ng v. Sedgwick Claims Mgmt. Servs. Inc., No. 23-CV-10380, 2024 WL 4827574, at *10 (S.D.N.Y. Nov. 19, 2024); Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 123-24 (S.D.N.Y. 2010). (The rules are looser for pro se litigants, but Plaintiff is an attorney.) Accordingly, because any such emails would not be properly considered, there is no need to await them. Moreover, the court only allows sur-replies in the most rare of circumstances, and there is no indication that this case fits that bill. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 08/14/2025) |
| 08/18/2025 | 54 | LETTER addressed to Judge Cathy Seibel from Melanie Hammer dated 8/18/2025 re: Request for Subpoena Pursuant to Fed. R. Civ. P. 45 for the internal emails intentionally withheld and incorporated by reference in the complaint pursuant. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Defendant has confirmed the existence of these documents which proves count 13 of the First Amended Complaint as a matter of law.. Document filed by Melanie Hammer, Esq. (Attachments: # 1 Proposed Order proposed order for rule 45, # 2 Exhibit town admits withholding Brady and Foil Violation).(Hammer, Melanie) (Entered: 08/18/2025) |
| 08/19/2025 | 55 | LETTER addressed to Judge Cathy Seibel from Gerald S. Smith dated August 19, 2025 re: Plaintiff's Letter Dated August 18, 2025. Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 08/19/2025) |
| 08/19/2025 | 56 | ORDER re: 54 Letter,, filed by Melanie Hammer, Esq.: Plaintiff seeks leave to issue a Rule 45 subpoena for emails that she alleges contain Brady information, the withholding of which is the basis for her thirteenth cause of action, alleging a Brady violation against Defendant Robert Zitt, who prosecuted building violations against her. The Court does not understand how emails (or portions thereof) that Plaintiff has not seen can plausibly be alleged to contain Brady information, but in any event, discovery prior to the Rule 26(f) conference should not be ordered absent reasonableness or good cause. See N. Atl. Operating Co. v. Evergreen Distribs., LLC, 293 F.R.D. 363, 367 (E.D.N.Y. 2013). Neither exists here. First, one cannot sue a prosecutor for failing to disclose Brady information, because the prosecutor is absolutely immune for such conduct if it occurred. See, e.g., Shmueli v. City of N.Y., 424 F.3d 231, 237 (2d Cir. 2005); Valentin v. City of Rochester, No. 11-CV-6238, 2018 WL 5281799, at *17 (W.D.N.Y. Oct. 24, 2018) (collecting cases), aff'd, 783 F. App'x 97 (2d Cir. 2019). The Court does not see why it matters if the prosecutor does that work full-time or not. Second, "[c]ourts have categorically rejected denial of a right to fair trial claims based |

on Brady violations where the plaintiff was not convicted in the underlying criminal trial," McClean v. Cnty. of Westchester, No. 17-CV-4492, 2018 WL 6329420, at *18 (S.D.N.Y. Dec. 3, 2018), aff'd sub nom. McClean v. City of Mount Vernon, 776 F. App'x 725 (2d Cir. 2019); see, e.g., Brown v. Vill. of Endicott, No. 21-CV-1186, 2025 WL 863105, at *35 (N.D.N.Y. Mar. 19, 2025), which as the Court understands it is the case here. Third, the motion to dismiss is fully briefed, and "a plausible claim must come before discovery, not the other way around." Nellis v. New York State Dep't of Corr. & Cmty. Supervision, No. 22-CV-6429, 2025 WL 306532, at *4 (W.D.N.Y. Jan. 27, 2025). (HEREBY ORDERED by Judge Cathy Seibel) (Text Only Order) (Seibel, Cathy) (Entered: 08/19/2025)

| | | |
|---|---|---|
| 08/20/2025 | 57 | FIRST LETTER MOTION to Compel Gerald Smith to Production of withheld FOIL documents Madeiros, 30 N.Y.3d at 74), and that FOILs presumption in favor of disclosure must be strictly applied (Gould, 89 N.Y.2d at 275). *Constructive FOIL Denial (Madeiros, Gould), Withheld Exculpatory Emails, and Prejudice Absent Disclosure Before Motion to Dismiss Ruling (Monroe, Patsy). New York law makes clear that delay in FOIL disclosure is itself a violation as a matter of law (Madeiros, 30 N.Y.3d at 74), and that FOILs presumption in favor of disclosure must be strictly applied (Gould, 89 N.Y.2d at 275)* addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 8/20/2025. Document filed by Melanie Hammer, Esq. Return Date set for 8/22/2025 at 09:00 AM. (Attachments: # 1 Exhibit redacted emails).(Hammer, Melanie) (Entered: 08/20/2025) |
| 08/21/2025 | 58 | LETTER RESPONSE in Opposition to Motion addressed to Judge Cathy Seibel from Gerald S. Smith dated August 21, 2025 re: 57 FIRST LETTER MOTION to Compel Gerald Smith to Production of withheld FOIL documents Madeiros, 30 N.Y.3d at 74), and that FOILs presumption in favor of disclosure must be strictly applied (Gould, 89 N.Y.2d at 275). *Constructive FOIL Denial (Madei . Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..*(Smith, Gerald) *(Entered: 08/21/2025)* |
| 08/23/2025 | 59 | **FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE DOCUMENT#61)** FIRST LETTER MOTION to Compel Town of Bedford et al to produce unreacted FOIL to the court and a redaction log *for the overly redacted late provided FOIL that is presumptive evidence of malice. Risk of Prejudice if Court Rules on Rule 12(6)(b) Without in camera review of presumptively relevant heavily redacted emails* addressed to Judge Cathy Seibel from Melanie Hammer dated 8/23/2025. Document filed by Melanie Hammer, Esq. Return Date set for 8/26/2025 at 09:00 AM. (Attachments: # 1 Exhibit ex parte email with ZBA prior to ZBA hearing, # 2 Exhibit defendant gordon already named in article 78 contacted the ZBA again expert prior to resolution 12/8, # 3 Exhibit proof gordon knew he was a named defendant prior to 12/7 ex parte contact). (Hammer, Melanie) Modified on 8/25/2025 (lb). (Entered: 08/23/2025) |
| 08/24/2025 | 60 | ORDER denying 57 Motion to Compel: My order of 8/19/25 was an order; it did not "request[] clarification" as Plaintiff contends. (ECF No. 57 at 1.) In any event, now that I have seen the redacted email, I am even more puzzled than I was before. Plaintiff says she believes the redacted email identifies an individual relevant to her selective prosecution claim, and seems to suggest she needs the unredacted version to determine |

who it is. But, while one copy of the email redacts the name, other copies reveal the name and redact only the email address. In addition, the content of the emails suggests that this individual is Plaintiff's former tenant. So Plaintiff plainly knows who the person is. With respect to other internal emails that Plaintiff does not have, I am at a loss to understand why, if they are so critical, Plaintiff did not FOIL them until after she filed her Amended Complaint. Moreover, her claim that those emails relate to unspecified "[p]re-charging conduct" and municipal liability seems like speculation. Further, I have already explained that the motion to dismiss is fully briefed; a plausible claim must come before discovery, not the other way around; materials outside the complaint are ordinarily not considered; and I am unlikely to permit a sur-reply. Finally, "[f]ederal courts have no jurisdiction to enforce requests for information made under the state FOIL." Cruz v. New York, No. 17-CV-510, 2017 WL 6021838, at *17 (N.D.N.Y. Oct. 27, 2017), report and recommendation adopted, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017); see Mulligan v. SOC Off. of Pol'y & Mgmt., No. 3:22-CV-1500, 2023 WL 11842870, at *3 (D. Conn. Jan. 4, 2023) (collecting cases). The application is denied. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 08/24/2025)

| 08/25/2025 | 61 | **FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE DOCUMENT#62)** FIRST LETTER MOTION to Compel Town of Bedford et. al. to provide unredacted documents for in camera review *to avoid Risk of Prejudice under Fed. R. Civ. P. 41(b). Plaintiff will be severely prejudiced if the Court rules on Defendants Rule 12(b)(6) motion before conducting an in camera review of key evidence: (1) improper ex parte communications occurring one day prior to the ZBA decision, and (2) conflicted attorney emails sent to the ZBA hours before the ZBA resolution. These communications, produced only in heavily redacted form, are central to Plaintiffs Monell claims. Defendants intentionally delayed production in response to FOIL requests despite multiple letter motions. When produced, the documents were untimely, in violation of FOIL, heavily redacted, and provided without a privilege log. Failure to provide a privilege log constitutes waiver of privilege under SEC v. Yorkville Advisors, LLC, No. 12-cv-7728 (S.D.N.Y. May 27, 2014).* addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 8/25/2025. Document filed by Melanie Hammer, Esq. Return Date set for 8/27/2025 at 09:00 AM. (Attachments: # 1 Exhibit Gordon 11/1 ex parte pre ZBA email, # 2 Exhibit Gordon 11/30 conflicted out/knowledge, # 3 Exhibit Gordon 12/2 post conflict contact with ZBA prior to resolution hours later).(Hammer, Melanie) Modified on 8/25/2025 (lb). (Entered: 08/25/2025) |
| 08/25/2025 | 62 | FIRST LETTER MOTION to Compel Town of Bedford et al to produce unlawfully redacted documents SEC v. Yorkville Advisors, LLC, No. 12-cv-7728 (S.D.N.Y. May 27, 2014) for in-camera review *to avoid Risk of Prejudice under Fed. R. Civ. P. 41(b). Plaintiff will be severely prejudiced if the Court rules on Defendants Rule 12(b)(6) motion before conducting an in camera review of key evidence: (1) improper ex parte communications occurring one day prior to the ZBA decision, and (2) conflicted attorney emails sent to the ZBA hours before the ZBA resolution. These communications, produced only in heavily redacted form, are central to Plaintiffs Monell claims. Defendants intentionally delayed production in response to FOIL requests despite multiple letter motions. When produced, the documents were untimely, in violation of FOIL, heavily redacted, and provided without a privilege log. Failure to* |

| | | |
|---|---|---|
| | | *provide a privilege log constitutes waiver of privilege under SEC v. Yorkville Advisors, LLC, No. 12-cv-7728 (S.D.N.Y. May 27, 2014).* addressed to Magistrate Judge Judith C. McCarthy from Melanie Hammer, Esq. dated 8/25/2025. Document filed by Melanie Hammer, Esq. Return Date set for 8/27/2025 at 09:00 AM. (Attachments: # 1 Exhibit gordon ex parte email to ZBA 1 day before hearing, # 2 Exhibit gordon 11/30 conflicted out/knowledge, # 3 Exhibit gordon email to ZBA hours before 12/7 resolution post conflict).(Hammer, Melanie) (Entered: 08/25/2025) |
| 08/26/2025 | 63 | LETTER RESPONSE in Opposition to Motion addressed to Judge Cathy Seibel from Gerald S. Smith dated August 26, 2025 re: 62 FIRST LETTER MOTION to Compel Town of Bedford et al to produce unlawfully redacted documents SEC v. Yorkville Advisors, LLC, No. 12-cv-7728 (S.D.N.Y. May 27, 2014) for in-camera review *to avoid Risk of Prejudice under Fed. R. Civ. P. 41(b). Plai . Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 08/26/2025)* |
| 08/28/2025 | 64 | ORDER denying 62 Motion to Compel: The motion is denied for the reasons previously set forth. (See ECF Nos. 53, 56, 60.) The Court lacks jurisdiction to enforce New York's FOIL law; the briefing on the motion is closed; there has been no Rule 26(f) conference; discovery in this case has not commenced; a plausible claim must come before discovery; and although it is within the Court's discretion to commence discovery while the motion is pending, it is not going to do so in this case, because the outcome of the motion may well narrow the issues and therefore save resources. This the fourth application Plaintiff has made regarding the material she sought via FOIL, and at some point repeated applications become vexatious, especially when they disregard the reasoning for the denial of earlier ones. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 08/28/2025) |
| 10/02/2025 | 65 | FIRST LETTER addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 10/2/2025 re: appeal to the New York Court of Appeals. Document filed by Melanie Hammer, Esq..(Hammer, Melanie) (Entered: 10/02/2025) |
| 01/13/2026 | 66 | OPINION & ORDER re: 44 MOTION to Dismiss *Plaintiff's Amended Complaint* filed by Eric Gordon, Esq., Robert Zitt, Esq., Albert Ciraco, Department of Building Bedford New York, Zoning Board of Appeals Bedford New York, Town of Bedford New York. For the foregoing reasons, Defendants motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 44), and close the case. SO ORDERED. (Signed by Judge Cathy Seibel on 1/13/2026) (sgz) (Entered: 01/14/2026) |
| 01/23/2026 | 67 | FIRST MOTION to Vacate 66 Memorandum & Opinion,, *pursuant to Fed. R. Civ. P. 60(b).* Document filed by Melanie Hammer, Esq. (Attachments: # 1 Affidavit Aff in Supp of 60(b) Relief, # 2 Supplement Memo of Law In Support of 60(b) Relief, # 3 Appendix Exhibit Index Demonstrating Newly Discovered Evidence, Misrepresentations, Concealment, and Delay, and Prosecutorial Policymaking Conduct Undermining a Full and Fair Opportunity to Be Heard, Due Process, Vested Property Rights, and Claims of Immunity, # 4 Exhibit Concealment and Delay FOIL Response Produced on August 18, 2025, After Completion of Briefing, # 5 Exhibit Representative |

FOIL-Produced Emails with Extensive Redactions, # 6 Exhibit Concealment, Coordination, and Newly Discovered Evidence FOIL Redaction Chart Demonstrating Municipal Policymaking and Ratification, # 7 Exhibit Concealed Municipal Policy and Newly Discovered Evidence Confidential Email from Town Attorney Gordon, Fully Redacted, Sent on the Eve of the November 2, 2023 ZBA Hearing, Demonstrating Improper Pre-Hearing Influence and Undermining Impartiality, Due Process, and Collateral Estoppel, # 8 Exhibit Proof of Misrepresentation 1988 Map Labeling the Structure as a 1-Story Residence, with Accompanying Permit Number Establishing Date, # 9 Exhibit Proof of Misrepresentation FOIL Response Letter 1/12/2026 Stating That No Residential Documents Are on File with the Town of Bedford, # 10 Exhibit Proof of Misrepresentation Electrical Permit on File Since 2012 Identifying the Structure as Residential, # 11 Exhibit Proof of Misrepresentation 2014 Certificate of Compliance for a Rec Room, a Residential Use, # 12 Exhibit Misrepresentation to the Court CPL § 245.50 Certificate of Compliance Certifying Full Discovery Compliance Despite the Exclusion of Approximately 800 Pages of Emails Requested Repeatedly, # 13 Exhibit Diligence January 23, 2024 Discovery Request, # 14 Exhibit Diligence Septmeber 20, 2024 Discovery Request, # 15 Exhibit Diligence June 11, 2025 FOIL Request, # 16 Exhibit Proof of Misrepresentation Affidavit of Ciraco Asserting the Absence of Any Lawful Residential Use, Contrary to Town Records, # 17 Exhibit Proof of Misrepresentation -Notice of Violation Requiring a Use Variance for Residential Use, Contrary to Prior Town Records, # 18 Exhibit Proof of Misrepresentation Permit Denial Letter Stating That a Use Variance Was Required, # 19 Exhibit Proof of Misrepresentation December 7, 2023 ZBA Resolution Asserting the Absence of Residential Use, # 20 Exhibit Proof of Misrepresentation Respondents Appellate Brief Asserting Lawful Residential Use for the Cottage Based on Pre-1989 Status, While Claiming the Apartment Had an Unlawful Residential Use Despite the 1988 Land Survey "one story residence", # 21 Exhibit Proof of Misrepresentation Filed Survey from Prior Owner Farrell Showing Bathroom and Kitchen, # 22 Exhibit Policy and Coordination Evidence Town Attorney Gordon Authored ZBA Resolution While Acting Outside a Prosecutorial Role, Undermining Immunity and Supporting Monell Liability, # 23 Exhibit Coordination Under Monell and Policy Conduct Undermining Immunity November 20, 2023 Email to the Planning Board and ZBA, Withheld and Redacted in FOIL Production).(Hammer, Melanie) (Entered: 01/23/2026)

| 01/23/2026 | 68 | FIRST NOTICE OF APPEAL from 66 Memorandum & Opinion,,. Document filed by Melanie Hammer, Esq. Filing fee $ 605.00, receipt number ANYSDC-32306589. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit.. (Hammer, Melanie) (Entered: 01/23/2026) |
| 01/23/2026 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 68 Notice of Appeal. (tp) (Entered: 01/23/2026) |
| 01/23/2026 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 68 Notice of Appeal, filed by Melanie Hammer, Esq. were transmitted to the U.S. Court of Appeals. (tp) (Entered: 01/23/2026) |
| 01/24/2026 | 69 | FIRST LETTER MOTION for Discovery *Request for In Camera Review of Redacted FOIL Materials to Assist the Court in Making a Rule 60(b) Determination* addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 1/23/2026. Document filed by |

| | | Melanie Hammer, Esq. Return Date set for 2/13/2026 at 09:00 AM..(Hammer, Melanie) (Entered: 01/24/2026) |
|---|---|---|
| 01/27/2026 | 70 | LETTER addressed to Judge Cathy Seibel from Gerald S. Smith dated January 27, 2026 re: Recent Submissions By Plaintiff. Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 01/27/2026) |
| 01/27/2026 | 71 | ORDER re: 70 Letter, filed by Defendants: A district court may consider a motion for reconsideration under Rule 60(b) while an appeal is pending pursuant to Federal Rule of Civil Procedure 62.1, which provides that a court may: "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a); see Palladino v. JP Morgan Chase & Co., No. 23-CV-1215, 2025 WL 2950425, at *3-4 (E.D.N.Y. Oct. 20, 2025) (Court had jurisdiction to consider rule 60(b) motion after it granted motion to dismiss even though the plaintiff had also filed a notice of appeal). Accordingly, Defendants shall respond to Plaintiff's motion for reconsideration (ECF No. 67), and motion for in camera review (ECF No. 69), by February 17, 2026. Plaintiff shall reply to Defendants' opposition by March 3, 2026. (HEREBY ORDERED by Judge Cathy Seibel) (Text Only Order) (SM) (Entered: 01/27/2026) |
| 01/27/2026 | 72 | NOTICE OF REQUIRED CASE STATUS UPDATE: A notice of appeal was filed in this case on January 23, 2026. Since at least one motion cited in FRAP 4(a)4 has been filed in the district court this appeal is stayed pending resolution of the motion(s). Appellant is directed to inform this Court in writing of the status of the motion(s) at 30 day intervals beginning 30 days from the date of this notice, and within 14 days after final disposition of the last outstanding motion. Appellant is also directed to provide the Court with a copy of all dispositive orders..(nd) (Entered: 01/28/2026) |
| 02/10/2026 | 73 | **FILING ERROR - WRONG PDF FILE ASSOCIATED WITH DOCKET ENTRY** - FIRST NOTICE OF APPEAL from 66 Memorandum & Opinion,,. Document filed by Melanie Hammer, Esq. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Attachments: # 1 Affidavit Non-Admitted Attorney Disclosure).(Hammer, Melanie) Modified on 2/11/2026 (nd). (Entered: 02/10/2026) |
| 02/10/2026 | 74 | **FILING ERROR - WRONG PDF FILE ASSOCIATED WITH DOCKET ENTRY** - FIRST NOTICE OF APPEAL. Document filed by Melanie Hammer, Esq. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Hammer, Melanie) Modified on 2/11/2026 (nd). (Entered: 02/10/2026) |
| 02/10/2026 | 75 | **FILING ERROR - WRONG PDF FILE ASSOCIATED WITH DOCKET ENTRY** - FIRST NOTICE OF APPEAL. Document filed by Melanie Hammer, Esq. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Hammer, Melanie) Modified on 2/11/2026 (nd). (Entered: 02/10/2026) |
| 02/11/2026 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Melanie Hammer to Document No. 74 Notice of Appeal, 75 Notice of Appeal, 73 Notice of Appeal,.. The filing is deficient for the following reason(s): the |

| | | |
|---|---|---|
| | | **PDF attached to the docket entry for the appeal is not correct. Do not re-file these documents. (nd)** (Entered: 02/11/2026) |
| 02/13/2026 | 76 | LETTER MOTION for Extension of Time to File *Defendants' Opposition To Plaintiff's Motion For Reconsideration* addressed to Judge Cathy Seibel from Gerald S. Smith dated February 13, 2026. Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 02/13/2026) |
| 02/13/2026 | 77 | ORDER granting 76 Letter Motion for Extension of Time to File: Defendants' opposition due 2/24/26. Plaintiff's reply due 3/10/26. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 02/13/2026) |
| 02/24/2026 | 78 | MEMORANDUM OF LAW in Opposition re: 67 FIRST MOTION to Vacate 66 Memorandum & Opinion,, *pursuant to Fed. R. Civ. P. 60(b)*., 69 FIRST LETTER MOTION for Discovery *Request for In Camera Review of Redacted FOIL Materials to Assist the Court in Making a Rule 60(b) Determination* addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 1/23/2026. . Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York..(Smith, Gerald) (Entered: 02/24/2026) |
| 02/24/2026 | 79 | DECLARATION of Gerald S. Smith in Opposition re: 67 FIRST MOTION to Vacate 66 Memorandum & Opinion,, *pursuant to Fed. R. Civ. P. 60(b)*., 69 FIRST LETTER MOTION for Discovery *Request for In Camera Review of Redacted FOIL Materials to Assist the Court in Making a Rule 60(b) Determination* addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 1/23/2026.. Document filed by Albert Ciraco, Department of Building Bedford New York, Eric Gordon, Esq, Town of Bedford New York, Robert Zitt, Esq, Zoning Board of Appeals Bedford New York. (Attachments: # 1 Exhibit Documents From Prior State Court Litigation).(Smith, Gerald) (Entered: 02/24/2026) |
| 03/09/2026 | 80 | FIRST REPLY MEMORANDUM OF LAW in Support re: 67 FIRST MOTION to Vacate 66 Memorandum & Opinion,, *pursuant to Fed. R. Civ. P. 60(b)*. *Melanie Hammer*. Document filed by Melanie Hammer, Esq. (Attachments: # 1 Exhibit False Facts Presented to the Court, # 2 Exhibit Residential Records on File, # 3 Exhibit Emails - Municopal Coordination, Ex parte Com., Due Process).(Hammer, Melanie) (Entered: 03/09/2026) |
| 03/09/2026 | 81 | LETTER REPLY to Response to Motion addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 3/9/2026 re: 69 FIRST LETTER MOTION for Discovery *Request for In Camera Review of Redacted FOIL Materials to Assist the Court in Making a Rule 60(b) Determination* addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 1/23/2026. *Reply*. Document filed by Melanie Hammer, Esq. (Attachments: # 1 Exhibit Redacted Emails for Review).(Hammer, Melanie) (Entered: 03/09/2026) |
| 04/14/2026 | 82 | OPINION & ORDER re: 67 FIRST MOTION to Vacate 66 Memorandum & Opinion, *pursuant to Fed. R. Civ. P. 60(b)* filed by Melanie Hammer, Esq., 69 FIRST LETTER MOTION for Discovery *Request for In Camera Review of Redacted FOIL Materials to* |

| | | |
|---|---|---|
| | | *Assist the Court in Making a Rule 60(b) Determination* addressed to Judge Cathy Seibel from Melanie Hammer, Esq. dated 1/23/2026 filed by Melanie Hammer, Esq. For the foregoing reasons, Plaintiff's motions are DENIED. The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 67, 69). SO ORDERED. (Signed by Judge Cathy Seibel on 4/14/2026) (mml) (Entered: 04/14/2026) |
| 04/22/2026 | 83 | FIRST AMENDED NOTICE OF APPEAL re: 68 Notice of Appeal, 66 Memorandum & Opinion,, 82 Memorandum & Opinion,,. Document filed by Melanie Hammer, Esq. (Attachments: # 1 Exhibit Second Order Being Appealed, # 2 Exhibit Original Order Being Appealed).(Hammer, Melanie) (Entered: 04/22/2026) |
| 04/22/2026 | 84 | ORDER of USCA (Certified Copy) USCA Case Number 26-162. On January 27, 2026, the Court issued a notice pursuant to Federal Rule of Appellate Procedure 4(a)(4), staying this appeal due to a pending motion in the district court. The district court having denied the motion in an order dated April 14, 2026, IT IS ORDERED that the stay of this appeal is hereby lifted. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Certified: 4/22/2026.(km) (Entered: 04/23/2026) |
| 04/23/2026 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 83 Amended Notice of Appeal.(km) (Entered: 04/23/2026) |
| 04/23/2026 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 83 Amended Notice of Appeal, filed by Melanie Hammer, Esq. were transmitted to the U.S. Court of Appeals.(km) (Entered: 04/23/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/20/2026 06:54:28 | | | |
| **PACER Login:** | mhammer17 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 7:25-cv-02618-CS |
| **Billable Pages:** | 16 | **Cost:** | 1.60 |