# 26-162

## United States Court of Appeals for the Second Circuit

———————————

MELANIE HAMMER,
Plaintiff-Appellant,
- against –

TOWN OF BEDFORD NEW YORK, DEPARTMENT OF
BUILDING BEDFORD NEW YORK, ZONING BOARD
OF APPEALS BEDFORD NEW YORK, BUILDING
INSPECTOR TOWN OF BEDFORD NEW YORK
(ALBERT CIRACO), ATTORNEY FOR THE TOWN OF
BEDFORD NEW YORK (ERIC GORDON, ESQ. &
ROBERT ZITT, ESQ.),
Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Southern District of New York
7:25-cv-02618-CS

————————————————

## SPECIAL APPENDIX

————————————————

Melanie Hammer
Plaintiff-Appellant, Pro Se
360 Court Street, Suite 3
Brooklyn, New York 11231
(718) 757-7677
**melanie@hammer-esq.com**

# SPECIAL APPENDIX

ECF 66  Judge Seibel's Opinion & Order – Defendant's Motion for Dismissal Under Rule 12(b) ................................................................... SPA-1

ECF 82  Judge Seibel's Opinion & Order – Defendant's Motion for Dismissal Under Rule 60(b) ................................................................... SPA-59

Docket Report – Civil Docket for Case #: 7:25-cv-02618-CS ................................... SPA-93

Bedford Town Table of Permitted Uses for R-1 Zones Marked with "P" and Separated from Commercial, Manufacturing, or Storage Use...................................... SPA-115

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
MELANIE HAMMER,

                              Plaintiff,

      - against -

TOWN OF BEDFORD NEW YORK, DEPARTMENT OF
BUILDING BEDFORD NEW YORK, ZONING BOARD
OF APPEALS BEDFORD NEW YORK, BUILDING
INSPECTOR TOWN OF BEDFORD NEW YORK
(ALBERT CIRACO), ATTORNEY FOR THE TOWN OF
BEDFORD NEW YORK (ERIC GORDON, ESQ. &
ROBERT ZITT, ESQ.),

                              Defendants.
-------------------------------------------------------------------------x

**OPINION & ORDER**

No. 25-CV-2618 (CS)

Appearances:

Melanie Hammer
Brooklyn, New York
*Pro Se Plaintiff*

Gerald S. Smith
Silverman & Associates
White Plains, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint.  (ECF

No. 44.)  For the following reasons, Defendants' motion is GRANTED.

I.      **BACKGROUND**

      For purposes of the motion, I accept as true the facts, but not the conclusions, set forth in

Plaintiff's Amended Complaint.  (*See* ECF No. 41 ("AC").)

A.    **Facts**

Plaintiff, Melanie Hammer, owns an 11.69 acre property in the Town of Bedford, New York (the "Town"), in an area zoned Residential One Acre ("R1A").  (AC ¶¶ 4-5; *see id.* ¶ 21.) In addition to a main house, the property includes a pre-existing, legal, non-conforming cottage and a detached garage "on its own acre." (*Id.* ¶ 8.)  The garage has a Certificate of Occupancy for a recreation room on the second floor and since at least 2000 has been listed on a property map filed with the Town's Department of Buildings as a "residence structure."  (*Id.* ¶ 9.)  "At some point," a bathroom and kitchen were installed in the recreation room, thereby converting it into an accessory dwelling unit ("ADU").  (*Id.* ¶ 12.)  On an unstated date, the Town's Building Department dispatched an inspector to Plaintiff's property in response to a complaint made by Plaintiff's former tenants, who Plaintiff alleges to be "politically connected" because they are related to a former Westchester County official.  (*Id.* ¶¶ 18-21.)  On April 27, 2023, the Building Inspector, Defendant Albert Ciraco, issued Plaintiff a Notice of Violation citing Bedford Town Code § 125-12, entitled "Lots," alleging that Plaintiff had remodeled a bathroom on the property without obtaining a permit.  (*Id.* ¶¶ 18, 22, 28.)

On June 1, 2023, Plaintiff submitted an application for retroactive construction permits. (*Id.* ¶¶ 23-24.)  That same day, Ciraco orally denied Plaintiff's application, again citing Bedford Town Code § 125-12.  (*Id.* ¶ 25.)  Ciraco did not issue a written denial, and thus Plaintiff could not appeal his decision to the Zoning Board of Appeals ("ZBA").  (*Id.* ¶¶ 25-26.)  On July 6, 2023, Plaintiff refiled her application with the ZBA.  (*Id.* ¶ 26.)  Because Plaintiff had not yet received a written denial, she refiled her application a third time on September 7, 2023.  (*Id.* ¶ 27.)  On September 22, 2023, the Department of Buildings issued a written denial of her application based on Bedford Town Code § 125-79.1A, entitled "Cottages." (*Id.* ¶ 28.)  The

2

denial stated that the "garage apartment" on Plaintiff's property was considered a "cottage," which is not permitted in R1A Zoning Districts. (*Id.* ¶¶ 30-31.) The denial also directed Plaintiff to apply for a use variance. (*Id.* ¶ 34.)

At the November 2, 2023 ZBA meeting at which Plaintiff's appeal was heard, Defendant Ciraco appeared on behalf of the Department of Buildings and Defendant Eric Gordon appeared as Town Counsel on behalf of the Town of Bedford. (*Id.* ¶¶ 35, 37.) At the hearing, the ZBA voted to uphold the Building Inspector's interpretation of Town Code § 125-79.1A as applying to a R1A Zoning District "by 'implication,'" and affirmed his view that the apartment constituted a cottage. (*Id.* ¶ 36.)[1]

On November 30, 2023, Plaintiff filed an Article 78 Petition, seeking review of the ZBA decision. (*Id.* ¶ 39.) Two judges to whom it was assigned recused themselves, and on December 7, 2023, it was reassigned to Acting Supreme Court Justice George Fufidio. (*Id.* ¶¶ 41-45.) Also on December 7, 2023, the ZBA met and issued a written denial that changed the rationale for the decision in some unspecified way. (*Id.* ¶¶ 46-48, 51-53, 55.) Plaintiff describes the December 7, 2023 ZBA meeting as "**A SECOND HEARING AT WHICH PLAINTIFF WAS NOT PERMITTED TO PARTICIPATE OR BE HEARD**," (*id.* ¶ 46 (emphasis in original) (citing ECF No. 1-16)), but her basis for that allegation is an email from Defendant Gordon that makes

---

[1] Town Code § 125-79.1A provides, "In the R-2A and R-4A Districts, the Planning Board may grant a special permit to create a cottage in an existing accessory building, provided that . . ." and lists several requirements. The "implication" to which Plaintiff objects is the implication that because the special permit may be issued for cottages on property in the R-2A and R-4A Districts, it may not be issued for property in other Districts. The principle of *expressio unius est exclusio alterius* – "that is, mention of one impliedly excludes others," *Brennan-Centrella v. Ritz-Craft Corp. of Pa.*, 942 F.3d 106, 111 (2d Cir. 2019) – is well recognized in the law, but the correctness, or not, of Ciraco's and the ZBA's interpretation does not drive the outcome here. (Unless otherwise indicated, case quotations omit all internal quotation marks, citations, alterations and footnotes.)

clear that the meeting was not a hearing.  It explains that at the December 7 meeting, the ZBA would consider and vote on a formal written resolution setting forth its findings of facts and conclusions, without hearing any further public discussion.  (ECF No. 1-16.)[2]  In any event, on December 8, 2023, the Town, the ZBA and the Building Inspector jointly filed a revised resolution with the Town Clerk.  (AC ¶ 52.)[3]

On February 9, 2024, Judge Fufidio issued a decision denying Plaintiff's Petition, finding that the Town's denial of the variance to legalize the garage apartment was not arbitrary and capricious.  (*Id.* ¶ 56; *see* ECF No. 45-2.)[4]  Following this decision, on February 16, 2024, Plaintiff served notice of her intent to bring a civil rights action against Defendants.  (AC ¶ 96.) Plaintiff also filed a notice of appeal with the Appellate Division, Second Department on March 18, 2024.  (*Id.* ¶ 61.)  Defendants received notice of Plaintiff's appellate brief on April 23, 2024. (*Id.* ¶ 62.)

---

[2] "If the documents referenced in the complaint contradict the facts alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations." *Olin Corp. v. E.I. Dupont De Nemours & Corp.*, No. 05-CV-100, 2006 WL 839415, at *1 (W.D.N.Y. Mar. 27, 2006); *see Emps.' Ret. Sys. of Gov't of Virgin Islands v. Morgan Stanley & Co.*, 814 F. Supp. 2d 344, 353 (S.D.N.Y. 2011) (collecting cases).  But whether or not the meeting constituted a hearing does not affect the outcome here.

[3] The AC states that the revised resolution can be found as Attachment 2 to the AC, or ECF No. 39-2, but that document is a resolution from 2024 that authorizes the commencement of litigation against Plaintiff.

[4] Although the AC states that the decision was issued on February 9, 2025, (AC ¶ 56), the decision itself, attached to Defendants' memorandum of law in support of its motion, and of which I make take judicial notice, *see Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order) (Article 78 petition and state court decision are public records appropriate for judicial notice), shows that the decision was rendered on February 9, 2024, (*see* ECF No. 45-2).

On May 6, 2024, Defendant "Robert Gordon"[5] issued a summons for Plaintiff to appear in Town Justice Court, (*id.* ¶ 63), and on June 11, 2024, Gordon filed the summons in Bedford Justice Court formally charging Plaintiff with six violations that had been cited in the Notice of Violation, (*id.* ¶ 67). That summons was dismissed on August 29, 2024 by Bedford Town Justice Jodi Kimmel for facial insufficiency and failure to proceed within the required speedy trial period under Criminal Procedure Law § 30.30. (*Id.* ¶ 70; ECF No. 1-3.)[6] Meanwhile, on July 30, 2024, Plaintiff filed a grievance against Zitt and Gordon with the "Appellate Division, 9th Department." (AC ¶ 68.)[7]

On September 9, 2024, Plaintiff filed a Notice of Claim on the Secretary of State alleging additional violations by Gordon and others. (*Id.* ¶ 71.) On September 17, 2024, Zitt refiled in Bedford Justice Court a second summons bringing the same charges against Plaintiff. (*Id.* ¶ 72.)[8] On October 1, 2024, the Town Board held a public vote and passed a formal resolution to pursue litigation against Plaintiff. (*Id.* ¶ 73.) On November 12, 2024, Town Justice Menken dismissed the second summons for facial insufficiency, as it contained no allegations regarding violations

---

[5] It is not clear if Plaintiff meant to refer to Defendant Robert Zitt or Defendant Eric Gordon.

[6] A court may take judicial notice of state court decisions on a motion to dismiss, for the fact of what they contain, but not for the truth of the matters asserted. *See, e.g.*, *Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651, 2021 WL 3425378, at *5 (E.D.N.Y. Aug. 4, 2021) (collecting cases).

[7] There are only four Appellate Divisions in New York. Plaintiff may have meant to refer to the Appellate Term for the Ninth Judicial District.

[8] Bedford Town Justice David A. Menken's decision dismissing the accusatory instrument states that the criminal proceeding was commenced against Plaintiff on August 29, 2024 by the filing of a Notice to Appear and Information by the Town of Bedford, (ECF No. 1-5), which would have been before Plaintiff filed her Notice of Claim. I may consider Judge Menken's decision because Plaintiff incorporated into her AC the exhibits to her original Complaint. (*See* AC ¶ 82.) But this discrepancy does not affect the outcome in any event.

on dates other than April 27, 2023, a date already addressed by Judge Kimmel's order.  (*Id.* ¶ 74; ECF No. 1-5.)  Zitt filed a notice of appeal that same day.  (AC ¶ 75.)

On December 10, 2024, Plaintiff filed another Notice of Claim against Defendants, alleging a course of malicious conduct, two unlawful prosecutions, *Brady* violations and pursuit of litigation against Plaintiff without an evidentiary basis.  (*Id.* ¶ 76; ECF No. 1-8.)

On January 21, 2025, the Appellate Division, Second Department heard oral argument on Plaintiff's appeal from the decision on her Article 78 Petition.  (AC ¶ 77.)  The Second Department recently rendered its decision, affirming Judge Fufidio's decision.  (*See* ECF No. 65.)  Plaintiff has since filed a motion for leave to appeal to the New York Court of Appeals. (*Id.*)

### B.    Procedural History

Plaintiff filed her initial complaint on March 27, 2025.  (ECF No. 1.)  On May 15, 2025, Defendants filed a pre-motion letter in anticipation of their motion to dismiss.  (ECF No. 16.)  At the pre-motion conference on May 30, 2025, the Court granted Plaintiff leave to amend and set a briefing schedule on Defendants' proposed motion to dismiss.  (*See* Minute Entry dated May 30, 2025.)

On June 10, 2025, Plaintiff filed her AC, asserting eighteen causes of action and alleging a conspiracy to deprive Plaintiff of her constitutional rights under Section 1983.  (ECF No. 41.) The instant motion followed.  (ECF No. 44.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

6

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Rule 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).[9]

---

[9] Plaintiff is an attorney representing herself, which means "[she] is not entitled to the special solicitude and latitude courts traditionally afford to *pro se* litigants."  *Anthes v. Nelson*, 763 F. App'x 57, 60 n.2 (2d Cir. 2019) (summary order); *see Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing [her]self ordinarily receives no such [special] solicitude at all.").

SPA-7

B.    **Documents Properly Considered**

"Documents outside of the pleadings are not generally considered in the context of a motion to dismiss." *Noel v. Wal-Mart Stores, E. LP*, 764 F. App'x 17, 19 (2d Cir. 2019) (summary order).  But, in addition to considering the facts alleged in the complaint, a district court may consider

> documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.  For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint[;] mere notice or possession is not enough.  And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *see Solano v. New York*, No. 20-CV-1378, 2021 WL 4134793, at *3 (N.D.N.Y. Sept. 10, 2021); *170 Mercer LLC v. Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y. Mar. 25, 2021).  A court may also consider "matters of which judicial notice may be taken."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

Both parties have submitted extraneous documents for consideration.  I discuss whether I may consider those documents as necessary throughout this opinion.

III.    **DISCUSSION**

A.    **Department of Buildings**

As an initial matter, Defendants argue that the Department of Buildings, Bedford New York must be dismissed because it is not an entity that is subject to suit.  (ECF No. 46 ("Ds' Mem.") at 24.)  Plaintiff did not address this argument in her opposition and has therefore abandoned her claims against the Department of Buildings.  *See Sullivan v. City of N.Y.*, No. 14-

8

CV-1334, 2015 WL 5025296, at *4 (S.D.N.Y. Aug. 25, 2015) (attorney proceeding *pro se*

abandoned claims against certain defendants where he failed to respond to those defendants'

motion to dismiss but continued to pursue claims against other defendants), *aff'd*, 690 F. App'x

63 (2d Cir. 2017) (summary order); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,

No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss

stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address

the defendant's arguments in support of dismissing that claim."); *Reid v. Ingerman Smith LLP*,

876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) ("This Court may, and generally will, deem a claim

abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be

dismissed.").

Even if she had not abandoned her claims, the Court would still dismiss the claims

against the Department of Buildings, because, as an administrative arm of the Town of Bedford,

it is not a suable entity. *See, e.g.*, *Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp.

3d 5, 26 (S.D.N.Y. 2022) ("[A]gencies of a municipality are not suable entities because they are

merely administrative arms of a municipality, and do not have a legal identity separate and apart

from the municipality."); *Cent. UTA of Monsey v. Vill. of Airmont, N.Y.*, No. 18-CV-11103, 2020

WL 377706, at *24 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against Building Department

because it was an administrative arm of the Village and not a suable entity); *Guichard v. Town of*

*Brookhaven*, 26 F. Supp. 3d 219, 226 (E.D.N.Y. 2014) (dismissing § 1983 claim against waste

management department where plaintiff did not challenge defendants' contention that

9

department was not legal entity separate and apart from town and it was clear to court that department was administrative arm of town).[10]

### B.    Count One

Plaintiff challenges Building Inspector Ciraco's issuance of a Notice of Violation based on Bedford Town Code § 125-12, alleging that his actions, along with those of other Defendants, violated her procedural due process rights under the Fourteenth Amendment and amounted to a taking under the Fifth Amendment.  (AC ¶¶ 120-31.)[11]

#### 1.    Procedural Due Process

"A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process."  *Harper v. Vill. of Hillburn*, No. 25-CV-342, 2025 WL 2653673, at *7 (S.D.N.Y. Sept. 16, 2025).

First, Defendants argue that Plaintiff cannot plead facts establishing a deprivation of property because the Article 78 proceeding validated the Defendants' permit denials.  (Ds' Mem. at 9.)  Plaintiff not only argues that she can show a protected property interest in the lawful use of her property and thus a constitutional injury, but also that Defendants are in fact estopped

---

[10] A zoning board of appeals is also an agency of the municipality, *see, e.g.*, *Crown Castle Fiber LLC v. Town of Oyster Bay*, No. 21-CV-6305, 2024 WL 1051171, 1 n.1 (E.D.N.Y. Jan. 19, 2024) (recommending dismissal of zoning board of appeals as agency of municipality and thus non-suable entity), *report and recommendation adopted*, 2024 WL 1090305 (E.D.N.Y. Mar. 13, 2024); *Verizon Wireless of E. LP v. Town of Wappinger*, No. 20-CV-8600, 2022 WL 282552, at *1 n.2 (S.D.N.Y. Jan. 31, 2022) (proper defendant in case was town, not town's agencies or boards), but Defendants curiously did not move to dismiss the claims against the ZBA on this basis.  In any event, as will be explained below, Plaintiff fails to state a claim against the ZBA.

[11] Although the AC names only Defendant Ciraco in this claim, Plaintiff apparently intended to assert it against the Town as well.  (*See* ECF No. 49 ("P's Opp.") at 22.)  I address the Town's liability below.  *See supra* Section III.L.

from arguing that she was in violation of Bedford Town Code § 125-12.  (*See, e.g.*, P's Opp. at 17, 24 n.13.)  She contends that "[a]s a matter of law all of the counts that refer to BTC 125-12 were proven in criminal court under the decisions of Judge Kimmel and Me[n]ken to be baseless."  (*Id.* at 17.)  This contention is frivolous.  That the instruments were facially insufficient, or that the prosecution was not ready for trial in the required time frame, does not rule out that Plaintiff was in fact, in the real world, in violation of § 125-12.  Even an outright acquittal does not preclude a finding of civil liability.  *See, e.g.*, *von Bulow by Auersperg v. von Bulow*, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("[T]here is ample precedent for civil proceedings based upon alleged criminal acts, even though the defendant has been acquitted of those acts in prior criminal proceedings."), *on reargument*, No. 85-CV-5553, 1986 WL 7781 (S.D.N.Y. July 8, 1986); *see also Cross v. Potter*, No. 09-CV-1293, 2010 WL 5314151, at *6 (N.D.N.Y. Dec. 20, 2010) ("It is possible for the preponderance of the evidence standard to be satisfied even if the higher beyond a reasonable doubt standard is not.  Because of this difference in the standards, evidence of acquittals generally are inadmissible at civil trials concerning the same incident.").  Indeed, not only did neither judge in dismissing the charges imply that there was insufficient evidence of a violation, but both went out of their way to note that their dismissals were without prejudice and did not preclude a finding that Plaintiff was in violation.  (*See* ECF No. 1-3 at 2 ("The foregoing determination [(dismissal without prejudice)] notwithstanding, the Court recognizes that this dismissal does not remedy the situation of alleged ongoing violations of the Town Code, which, it is claimed, require remediation by the Defendant.  The parties should be guided accordingly."); ECF No. 1-5 at 3 ("As Judge Kimmel recognized in her August 28, 2024 decision, the granting of Defendant's motion to dismiss does

11

not remedy the situation of alleged ongoing violations of the Town Code, which the Town claims required remediation by the Defendant.  This matter is therefore not dismissed with prejudice.").)

In any event, even assuming Plaintiff sufficiently pleaded a protected property interest in the form of the continued use and rental of her property and that the Town's interpretation of § 125-12 was incorrect, (P's Opp. at 15, 19-20), Plaintiff's procedural due process claim fails because she received adequate process.  "[P]rocedural due process requires that the Town provide an opportunity to be heard in a meaningful manner at a meaningful time . . . ." *Vanderveer v. Zoning Bd. of Appeals*, No. 19-CV-3833, 2020 WL 7042669, at *5 (E.D.N.Y. Dec. 1, 2020), *aff'd sub nom. Vanderveer v. Zoning Bd. of Appeals Town of E. Hampton*, No. 20-4252, 2021 WL 3745741 (2d Cir. Aug. 25, 2021).  Here, Plaintiff had the opportunity to dispute the April 27, 2023 Notice of Violation in the Town Justice Court.  (AC ¶¶ 70, 126.)  And she also received a hearing before the ZBA at which she had the opportunity to speak and present evidence, and pursued both an Article 78 proceeding before the Westchester County Supreme Court in which she was able to brief the relevant issues, including the Notice of Violation, (*see* ECF No. 45-2 at 1, 2 n.1), and an appeal to the Appellate Division in which she once again briefed the issues and argued before the Second Department.  (AC ¶¶ 36, 39, 61-62, 69, 71.) This constitutes a sufficient post-deprivation remedy to preclude her due process claim.  *See Underhill Land, LLC v. Town of Catskill*, No. 24-CV-1527, 2025 WL 2793756, at *6 (N.D.N.Y. Oct. 1, 2025) (procedural due process claim barred because Article 78 adjudication of Town's decisions to deny certificates and issue stop work orders provided plaintiff with process), *appeal filed*, No. 25-2740 (2d Cir. Oct. 29, 2025); *Ariz. Hudson Valley LLC v. Allen*, No. 22-CV-1306, 2023 WL 3936640, at *5 (N.D.N.Y. June 9, 2023) ("In the land-use context, courts in this Circuit have repeatedly held that the availability of an Article 78 proceeding in state court is a

12

post-deprivation remedy that satisfies procedural due process."); *Vanderveer*, 2020 WL 7042669, at *5-7 (due process claim without merit where plaintiff had hearing before ZBA and Article 78 hearing before state court); *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) ("[W]here . . . a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy.").

Additionally, even though there was a delay between the issuance of the Notice of Violation and the issuance of the summons, (P's Opp. at 20), that delay does not suffice to show that she did not receive adequate process. *See Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (no procedural due process violation where plaintiff, who was served with appearance ticket to appear in village justice court a year after notice of violation issued, was afforded notice and opportunity for trial and appeal and had avenues to challenge deprivation of property through Article 78 proceeding). Plaintiff has not plausibly alleged any prejudice that resulted from the delay. *See DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 791 (2d Cir. 1999) (showing of actual prejudice essential element of due process claim of unconstitutional preaccusation delay). Although Plaintiff argues that had the summonses been issued sooner, the ZBA appeal would not have been necessary because the Town Justice Court would have dismissed the instruments, (AC ¶ 171), those dismissals, as already explained, do not imply, let alone prove, that Plaintiff was not in violation of the Town Code. Thus, it is not plausible that the ZBA appeal would not have been necessary had the summonses been issued earlier. And Plaintiff does not allege any other prejudice, such as the destruction of evidence or loss of witnesses during the delay. *See DeMichele*, 167 F.3d at 791 (plaintiff did not show actual prejudice where he did not show deprivation of evidence); *United States v. Delacruz*, 970 F.

13

Supp. 2d 199, 202 (S.D.N.Y. 2013) ("[S]ubstantial prejudice is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness.").

Further, according to the AC, it was Gordon (or perhaps Zitt) who issued this summons. (AC ¶¶ 63, 67.) The AC does not plausibly allege that Ciraco was personally involved in the decision to issue the summons or the issuance of the summons itself. And, as will be explained in more detail below, "a claim that the [Town Attorneys] took too long to commence prosecution is precisely the sort of action – the decision whether or not to prosecute – that is protected by absolute immunity." *Willis v. Rochester Police Dep't*, No. 15-CV-6284, 2018 WL 4637378, at *10 (W.D.N.Y. Sept. 27, 2018).

"While Plaintiff[] may express [her] dissatisfaction with the outcome of [her] interactions with Defendants, procedural due process guarantees only a process, not a specific outcome." *Patrick v. Success Acad. Charter Schs., Inc.*, 354 F. Supp. 3d 185, 203 (E.D.N.Y. 2018); *see Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 88 (2d Cir. 2000) ("It is black-letter law that due process guarantees a fair *hearing, not* a legally correct *outcome*.") (emphasis in original) (collecting cases). Accordingly, Plaintiff has failed to state a plausible claim for a violation of procedural due process, and that portion of Count One is dismissed.

### 2. Takings Claim

Plaintiff also brings a takings claim against Ciraco and the Town. (AC ¶ 122.) "To state a takings claim under Section 1983, a plaintiff must show (1) a property interest (2) that has been taken under color of state law (3) without just compensation." *O'Shea v. City of Kingston*, No. 22-CV-666, 2023 WL 4105492, at *4 (N.D.N.Y. June 21, 2023).

Plaintiff alleges that the Town's enforcement actions deprived Plaintiff of economically beneficial use of her property and $52,800 in rental income, and effectively downzoned her

14

parcel, causing a $2 million reduction in market value without compensation or legitimate

authority.  (P's Opp. at 21.)  This claim is of a non-categorical regulatory taking, because

Plaintiff does not allege the complete elimination of value or a total loss.  *See Sherman v. Town*

*of Chester*, 752 F.3d 554, 564 (2d Cir. 2014) ("This case concerns a regulatory taking, which

occurs when the government acts in a regulatory capacity."); *Lewis v. City of N.Y.*, 762 F. Supp.

3d 290, 304 (S.D.N.Y. 2025) ("[G]overnment action that does not entail a physical occupation,

but merely affects the use and value of private property is considered under the framework of

regulatory takings."); *Dean v. Town of Hempstead*, No. 14-CV-4951, 2024 WL 3849688, at *23

(E.D.N.Y. Aug. 16, 2024) ("[A]nything less than a complete elimination of value, or a total loss,

is a non-categorical taking.").

> In determining whether a use restriction effects a taking, [courts] apply the
> balancing test set out in *Penn Central Transp. Co. v. City of New York,* 438 U.S.
> 104 (1978).  *Penn Central* instructs courts to engage in a flexible, ad hoc, factual
> inquiry focused on several factors that have particular significance.  Three of
> them are: (1) the economic impact of the regulation on the claimant, (2) the extent
> to which the regulation has interfered with distinct investment-backed
> expectations, and (3) the character of the governmental action.

*335-7 LLC v. City of N.Y.*, No. 21-823, 2023 WL 2291511, at *2 (2d Cir. Mar. 1, 2023).

Turning to the first factor, "[m]ere diminution in the value of property, however serious,

is insufficient to demonstrate a taking under the first *Penn Central* factor."  *Dean*, 2024 WL

3849688, at *25; *see S. Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*, 624 F. Supp. 3d

261, 275 (E.D.N.Y. 2022) ("[A] reduction in the value of property is not necessarily equated

with a taking.").  Thus, that Plaintiff's property has suffered diminution in value does not

establish a taking.  *See Massari v. Paulryerse*, No. 23-CV-446, 2025 WL 1788088, at *11

(W.D.N.Y. Feb. 4, 2025) (dismissing takings claim even where complaint alleged defendants'

actions resulted in significant reduction in fair market value of property), *report and*

15

*recommendation adopted sub nom. Massari v. Ryerse*, No. 23-CV-446, 2025 WL 1785752 (W.D.N.Y. June 27, 2025).

"In addition, the prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred." *Dean*, 2024 WL 3849688, at *25; *see Kabrovski v. City of Rochester*, 149 F. Supp. 3d 413, 425 (W.D.N.Y. 2015). Thus, Plaintiff's inability to rent a portion of the property also does not in and of itself amount to a taking. *See Martin v. Town of Simsbury*, 505 F. Supp. 3d 116, 131 (D. Conn. 2020) (inability to build single-family residence on property did not alone create taking because other economically beneficial uses of property existed), *aff'd*, No. 20-4266, 2022 WL 244084 (2d Cir. Jan. 27, 2022). "Rather, in determining the economic impact of a regulation, courts often consider whether the challenged action prevented the plaintiff from making *any* economic use of his property." *Dean*, 2024 WL 3849688, at *25 (emphasis added). When considering this question, courts analyze "the parcel as a whole, including the portions of the property not subject to restriction." *Yu v. Inc. Vill. of Oyster Bay Cove*, 579 F. Supp. 3d 391, 400 (E.D.N.Y. 2022); *see DC3, LLC v. Town of Geneva*, 783 F. Supp. 2d 418, 422 (W.D.N.Y. 2011) ("Determination of whether the property has been completely devalued requires analysis of the property as a whole: it does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated."). Here, Plaintiff does not allege that she cannot make any economic use of her property, and, even if she did, it would not be plausible, given that she has a pre-existing cottage on the property that she likely could rent. Plaintiff also has the main house, which she can still use as a residence or sell for someone else to use. *See S. Nassau Bldg. Corp.*, 624 F. Supp. 3d at 276 (first *Penn Central* factor weighed in favor of Town where property remained marketable because plaintiff could sell it despite diminution in value); *Yu*, 579 F. Supp.

16

3d at 399 (no taking where regulatory action did not effectively deprive plaintiff of any economic use of property because property could still be used as residence).  Thus, the first factor weighs in favor of Defendants.

The second factor – whether a regulatory action "has upset plaintiff's investment-backed economic expectations by altering its rights as to a constitutionally protected property interest." *S. Nassau Bldg. Corp.*, 624 F. Supp. 3d at 276 – also favors Defendants.  Plaintiff did not have a constitutionally protected property interest in the zoning classification of her parcel, because "under New York law . . . a landowner has no vested interest in the existing classification of his property." *See id.* at 277.  Further, the investment-backed expectations must exist at the time Plaintiff purchased the property, as she must demonstrate she bought the property in reliance on a state of affairs that did not include the challenged regulatory regime.  *Id.* at 276; *see La. Mgmt. Co. v. City of Saratoga Springs*, No. 24-CV-1017, 2025 WL 915753, at *10 (N.D.N.Y. Mar. 26, 2025) ("The critical time for considering investment-backed expectations is the time a property is acquired, not the time the challenged regulation is enacted.").  But Plaintiff does not allege when she bought the property or that she relied on any particular regulations when she did so. *See Lewis*, 762 F. Supp. 3d at 305 n.5 (plaintiff failed to state non-categorical taking in part because complaint did not allege that plaintiff purchased property with expectation that he could always use property as it was); *Ruotolo v. Town of New Paltz*, No. 22-CV-169, 2023 WL 2500655, at *21 (N.D.N.Y. Mar. 14, 2023) (plaintiff failed to adequately allege takings claim against town where he failed to allege he purchased properties in reliance on a state of affairs that did not include the challenged regulatory regime), *appeal dismissed by* 2023 WL 6890838 (2d Cir. Sept. 27, 2023).

17

"Because Plaintiff cannot prevail on a regulatory takings claim without plausibly alleging the first two *Penn Central* factors, Plaintiff fails to adequately plead a Section 1983 Takings Clause claim against [Defendants]." *Ruotolo*, 2023 WL 2500655, at *21.[12]  Accordingly, the takings claim in Count One is also dismissed.

## C.    Count Two

Plaintiff alleges that Defendants Ciraco and the Town violated her procedural and substantive due process rights by arbitrarily denying her a building permit based on a misapplication of Town Code § 125-12.  (AC ¶¶ 132-41; *see* P's Opp. at 23.)  Defendants argue that the issues that form the basis of this claim are precluded by the Article 78 decision, and that Plaintiff fails to state a claim for procedural due process because she does not have a protected property interest.  (D's Mem. at 6-13.)  Plaintiff argues that this issue is distinct from that decided in the Article 78 proceeding in which she challenged a subsequent ZBA decision on different grounds, (AC ¶ 141), and that she has a protected interest in the right to apply for and receive a permit, (P's Opp. at 24).

### 1.    Procedural Due Process

Beginning with Defendants' argument that Plaintiff does not have a protected property interest, "[w]hen an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claim is the well-developed property interest analysis." *Potter v. Inc. Vill. of Ocean Beach*, No. 23-CV-6456, 2024 WL 3344041, at *4 (E.D.N.Y. July 9, 2024), *aff'd*, No. 24-2033, 2025 WL 1077405 (2d

---

[12] And "[e]ven if Plaintiff had sufficiently [pleaded] a taking under the Constitution, it is doubtful [s]he could assert such a claim against the individual defendant[] [Ciraco]," as "only governmental entities, and not individuals, can be liable for takings violations." *Massari*, 2025 WL 1788088, at 11 n.12.

18

Cir. Apr. 10, 2025). The focus of the analysis is on "whether the applicant has a clear entitlement to the approval sought from the government official or administrative body." *Id.* A legitimate claim of entitlement exists where

> absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted. Otherwise the application would amount to a mere unilateral expectancy not rising to the level of a property right guaranteed against deprivation by the Fourteenth Amendment.

*Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985). "This test focuses on the amount of discretion committed to the issuing authority, not the estimated probability that the authority would act favorably in a particular case." *Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir. 1995); *see RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989) (same). Thus, "where the deciding authority has the ability to exercise discretion in considering the merits of an application, there is simply no interest for process to protect." *Harper*, 2025 WL 2653673, at *7. And "the fact that [a] permit could have been denied on non-arbitrary grounds defeats the federal due process claim." *Walz*, 46 F.3d at 168; *see RRI Realty Corp.*, 870 F.2d at 918 ("[T]he opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest.").[13]

Here, Defendants argue that Ciraco had discretion to issue building permits under Bedford Town Code § 59-4(B), and therefore Plaintiff does not have a protected property interest in the permit. (Ds' Mem. at 11-12.) Bedford Town Code § 59-4(A) states, "[T]he Building

---

[13] Some of the Second Circuit case law on this point, including *Walz* and *RRI Realty Corp.*, apply this framework in the context of a substantive due process claim, but the same framework applies to procedural due process claims, like the one asserted here. *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) (plaintiffs unable to state actionable claim for deprivation of procedural due process in absence of property interest where defendants had discretion in determining whether to grant or deny building permits and variances); *Harper*, 2025 WL 2653673, at *7 (applying legal entitlement test to procedural due process claim).

19

Inspector, or their duly authorized designee, shall exercise the following powers and duties:  To receive, review, and approve or deny applications for building permits."  Bedford Town Code § 59-4(B) states that the Building Inspector has the authority to "issue building permits, certificates of occupancy, temporary certificates and operating permits, and to include therein such terms and conditions as the Building Inspector, or their duly authorized designee, may deem appropriate."  But Town Code § 59-8(E) provides that the Building Inspector shall examine building permit applications to determine whether the proposed work is in compliance with the applicable requirements of the Uniform Code and all local laws and regulations, and "shall issue a building permit" if the proposed work is in compliance.  Bedford Town Code § 59-8(E).  This last provision limits the Building Inspector's discretion once he has made a determination of compliance or non-compliance.  *See Walz*, 46 F.3d at 168 (finding discretion circumscribed where local law specified that permit shall be issued upon compliance with local law requirements); *Cunney v. Bd. of Trs. of Vill. of Grand View*, 56 F. Supp. 3d 470, 496 (S.D.N.Y. 2014) (zoning law limited building inspector's discretion where it provided he "shall issue" a certificate after finding compliance); *cf. Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 369 (S.D.N.Y. 2011) (permissive language like "may" indicates discretion as opposed to language providing inspector "shall" take particular action).

But the Town Code does grant the Building Inspector some discretion, as it does not define how he must determine whether the proposed work is in compliance with all applicable requirements and laws.  *See* Bedford Town Code § 59-8(C), (E); *see also Cunney*, 56 F. Supp. 3d at 497 (building inspector had discretion to make determination of conformity or non-conformity under village laws where laws did not define how inspector was to make determination or whether he must find building was constructed in accordance with laws in any specific context).

20

"Courts in this Circuit have found similar levels of discretion sufficient to deny a claim of entitlement to a permit where the agency is tasked with determining an application's compliance with applicable laws and regulations – even where, upon a showing of compliance, the issuance of the permit is mandatory." *Marom v. Town of Greenburgh*, No. 18-CV-7637, 2020 WL 978514, at *11 (S.D.N.Y. Feb. 28, 2020); *see Cunney*, 56 F. Supp. 3d at 497, 499 (degree of discretion accorded to building inspector to determine whether house was built in accordance with plan sufficient to defeat plaintiff's property interest in certificate); *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 97-98 (W.D.N.Y. 2009) (granting motion to dismiss where substantially similar town code granted building inspector discretion to determine whether application conformed with requirements). Thus, Plaintiff cannot show a legal entitlement to the permit and has no protected property interest.

Additionally, as explained with respect to Count One, Plaintiff's procedural due process claim also fails because she received adequate process. Even if Plaintiff had sufficiently alleged a property interest, Plaintiff received a hearing before the ZBA at which she had the opportunity to speak and present evidence, an Article 78 proceeding before the Westchester County Supreme Court in which she was able to brief the relevant issues, and an appeal to the Appellate Division in which she once again briefed the issues and argued before the Second Department, (AC ¶¶ 36, 39, 62, 69, 71), all of which constitutes a sufficient post-deprivation remedy to preclude her due process claim, *see Underhill Land, LLC*, 2025 WL 2793756, at *6; *Vanderveer*, 2020 WL 7042669, at *6; *Ahmed*, 7 F. Supp. 3d at 254.[14]

---

[14] Plaintiff suggests her claim attacks Ciraco's reliance on § 125-12, whereas the Article 78 proceeding attacked the ZBA's final decision that relied on other grounds. (AC ¶ 141.) As noted below, *see infra* pages 23-24, the Article 78 proceeding addressed both provisions. But even it had not, if the ZBA's final decision relied on other grounds, it is hard to see how Plaintiff

21

### 2.        Substantive Due Process

Plaintiff likewise fails to plausibly plead that Defendants violated her substantive due process rights, for two reasons.  First, as explained above, Plaintiff fails to state a property interest in the permit because Ciraco had discretion to deny it.  *See, e.g.*, *RRI Realty Corp.*, 870 F.2d at 914, 919-20 (applying legal entitlement test to substantive due process claim); *Marom*, 2020 WL 978514, at *11 (to prevail on substantive due process claim, plaintiff must demonstrate valid property interest).  Second, Plaintiff is precluded by the Article 78 proceedings from relitigating the other element of her substantive due process claim.

"Collateral estoppel, also known as issue preclusion, provides that when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit."  *Franza v. Stanford*, No. 16-CV-7635, 2018 WL 914782, at *7 (S.D.N.Y. Feb. 14, 2018).  Federal courts are "bound to give the same preclusive effect to state court judgments as they are afforded by the courts of the State of New York."  *Sacher v. Vill. of Old Brookville*, 967 F. Supp. 2d 663, 669 (E.D.N.Y. 2013); *see VDARE Found., Inc. v. James*, 162, F.4th 77, 83 (2d Cir. 2025).  Under New York law, "[c]ollateral estoppel will preclude a court from deciding an issue where (1) the issue in question was actually

---

could have been injured by any earlier reliance on § 125-12, even if it was incorrect.  Moreover, even if there was some harm, Plaintiff "was free to bring an Article 78 mandamus proceeding in New York State court" attacking that earlier reliance, and "[h]aving failed to avail h[er]self of that remedy, [she] cannot now be heard to complain of a denial of procedural due process." *Nenninger v. Vill. of Port Jefferson*, 509 F. App'x 36, 39 n.2 (2d Cir. 2013) (summary order); *see Segal v. City of N.Y.*, 459 F.3d 207, 218 n.10 (2d Cir. 2006) ("[W]here, as here, the plaintiff had available *adequate* process, she cannot be said to have been deprived of due process simply because she failed to avail herself of the opportunity.") (emphasis in original); *Corsini v. City of N.Y.*, No. 20-CV-5459, 2023 WL 4420113, at *8 (E.D.N.Y. July 10, 2023) ("[T]he Second Circuit frequently affirms the dismissal of procedural due process claims brought by plaintiffs who had an Article 78 proceeding available to them."), *aff'd*, No. 23-1065-CV, 2024 WL 2270130 (2d Cir. May 20, 2024).

and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Franza*, 2018 WL 914782, at \*7. This doctrine applies in Section 1983 cases. *See Sacher*, 967 F. Supp. 2d at 669.

Plaintiff argues issue preclusion does not apply because her claims were not actually and necessarily decided in a prior proceeding. (P's Opp. at 17-18, 23.) But while the same *claims* were not decided, the *issues* that underlie them were. To make out a substantive due process claim, Plaintiff would have to plausibly plead that "the defendants infringed on the property right in an arbitrary or irrational manner." *Marom*, 2020 WL 978514, at \*11. Indeed, that is what Plaintiff alleges here. (AC ¶ 161; P's Opp. at 26.) But that is also what Judge Fufidio decided: that the ZBA did not act arbitrarily or irrationally in denying Plaintiff's variance application. (ECF No. 45-2 at 5 ("The ZBA's decision to deny her application . . . was not irrational."); *see id.* at 1 ("Petitioner essentially alleges that the ZBA acted arbitrarily and capriciously in denying her variance application and for not dismissing town code violations . . . .").) The Appellate Division, Second Department then affirmed that decision on appeal, finding that "the ZBA's interpretation of the relevant provisions of the Code of the Town of Bedford was neither unreasonable nor irrational." *See Matter of Hammer v. Town of Bedford New York*, 240 N.Y.S.3d 204, 206 (N.Y. App. Div. 2d Dep't Oct. 1, 2025). It does not matter that the Article 78 court did not determine whether the denial violated her constitutional rights. (*See* P's Opp. at 28.) It decided the issue of whether the ZBA acted arbitrarily, and that issue is a necessary component of her constitutional claim now before me. *See Underhill Land, LLC*, 2025 WL 2793756, at \*6 (Article 78 court decided core issue necessary to resolve substantive due process claim – whether town's actions had rational basis – and thus claim barred by collateral estoppel).

23

Although Plaintiff argues the Article 78 court "dealt with a different code BTC 125-79-1A," (P's

Opp. at 23), it quite plainly addressed multiple sections of the Town Code, including § 125-12,

(*see* ECF No. 45-2 at 4-5).  Thus, Plaintiff's argument is without merit, and this issue was

necessarily decided.

Plaintiff further argues that she did not have the opportunity to fairly and fully litigate the

issues because the court did not permit her to present testimony, offer evidence, or receive

findings of fact or law on the record, (P's Opp. at 18), but this is not plausible.  "[T]he lack of a

full hearing . . . is not dispositive." *Thomas v. Venditto*, 925 F. Supp. 2d 352, 361 (E.D.N.Y.

2013); *cf. VDARE*, 162 F.4th at 86 (procedural differences including lack of full evidentiary

hearing irrelevant for claim preclusion purposes).  And Plaintiff's statement that she did not get

to offer evidence is disingenuous, as a review of the docket reveals that Plaintiff submitted

thirteen exhibits with the Article 78 Petition itself, *see Hammer v. Town of Bedford New York*,

Index No. 71446/2023, Dkt. Nos. 3-15, and then submitted supplemental exhibits, *id.* at Dkt.

Nos. 29, 56, and at least nine letters, some of which discussed the exhibits and represented that

they were to be considered as part of her reply brief, *see, e.g.*, *id.* at Dkt. Nos. 61 at 2, 63.[15]

Judge Fufidio made it clear that he considered all of Plaintiff's submissions in his ruling.  (*See*

ECF No. 45-2 at 2 (noting court considered ECF items 1-96).)

---

[15] The Court may take judicial notice of the filings in the Article 78 proceeding as well as the Appellate Division's decision cited above.  *See Glob. Leadership Found. v. City of N.Y.*, No. 22-2095, 2023 WL 3144043, at *1 n.1 (2d Cir. Apr. 28, 2023) (taking judicial notice of publicly available docket for plaintiff's Article 78 petition); *Robbins v. Candy Digit. Inc.*, No. 23-CV-10619, 2025 WL 2391039, at *2 n.1 (S.D.N.Y. Aug. 18, 2025) (taking judicial notice of plaintiff's filings and decisions before different body); *Pepin v. N.Y.C. Dep't of Educ.*, No. 14-CV-9657, 2016 WL 915298, at *1 n.1 (S.D.N.Y. Mar. 4, 2016) (taking judicial notice of documents filed in connection with Article 78 petition), *aff'd*, 671 F. App'x 18 (2d Cir. 2016); *Cerny v. Rayburn*, 972 F. Supp. 2d 308, 319-20 (E.D.N.Y. 2013) (referring to plaintiff's filings in another action to determine whether plaintiff fully and fairly litigated issues).

Additionally, the briefing before the Article 78 court included Plaintiff's reply to the Town's opposition papers, which reply was filed after the December 8, 2023 resolution was issued. Thus, although Plaintiff alleges that she lacked a full and fair opportunity to litigate because Judge Fufidio improperly considered the December 8 resolution that came after she had filed her Article 78 Petition, (P's Opp. at 18), to the extent that the Town's explanations in the resolution differed from the reasons provided at the November hearing, Plaintiff had the opportunity to address that issue in her reply, and to attack it in her appeal to the Second Department. And the Article 78 court noted in its decision that it "address[ed] the decisions made in the [November 2] hearing itself to the extent that they differ from those in the [December 8] resolution." (ECF No. 45-2 at 3.)

Further, Plaintiff advanced in both her Petition and reply the same issues present here: that the ZBA decision effectively rezoned her property, did not comply with Town Code § 125-12, was arbitrary and capricious, was improperly founded on an inference, and erroneously relied on § 125-79.1A. *See* Article 78 Petition, *Hammer v. Town of Bedford New York*, Index No. 71446/2023, Dkt. No. 1; Petitioner's Reply, *Hammer v. Town of Bedford New York*, Index No. 71446/2023, Dkt. No. 59; *see also Bristol v. Town of Camden*, No. 22-CV-845, 2024 WL 2722383, at *4 (N.D.N.Y. May 28, 2024) (plaintiff had a full and fair opportunity to litigate claims regarding zoning decision in Article 78 proceeding where petition described facts at issue similar to allegations in federal action). Plaintiff then had the opportunity to brief the issues (including those relating to the December 8 resolution) again and argue before the Appellate Division. (AC ¶¶ 62, 69, 77.) Thus, it is not plausible that Plaintiff did not have a full and fair opportunity to litigate the relevant issues. *See Marentette v. City of Canandaigua*, 351 F. Supp. 3d 410, 421-22 (W.D.N.Y. 2019) (rejecting argument plaintiff deprived of full and fair

25

opportunity to litigate claims raised in Article 78 proceedings where plaintiff submitted petition that was fully briefed and argued before Fourth Department) (collecting cases), *appeal dismissed*, 799 F. App'x 48 (2d Cir. 2020); *Franza*, 2018 WL 914782, at *9 (not plausible that plaintiff denied full and fair opportunity to litigate where plaintiff submitted petition with full briefing and reply to opposition papers); *Fortunatus v. Clinton County*, 937 F. Supp. 2d 320, 332 (N.D.N.Y. 2013) (submission of lengthy petition, sworn affidavits, exhibits, and memorandum of law in support of claims substantiated full opportunity to litigate).

Further, Judge Fufidio's decision reflects that in rendering his decision, he examined all items filed, which, the Court notes, included the briefing, Plaintiff's and the Town's exhibits, and Plaintiff's additional letters. (*See* ECF No. 45-2 at 2.) Judge Fufidio then issued a detailed written opinion. (*See generally id.*) Thus, the combination of the proceedings before the Article 78 court and the Appellate Division provided Plaintiff a full and fair opportunity to present her claims. *See Bristol*, 2024 WL 2722383, at *4 (plaintiff had a full and fair opportunity to litigate claims regarding zoning decision in Article 78 proceeding where judge's decision reflected that court examined full record and issued detailed opinion); *Featherstone v. Cornell Univ.*, No. 17-CV-565, 2017 WL 4736738, at *3 (N.D.N.Y. Oct. 19, 2017) (combination of proceedings provided Plaintiff full and fair opportunity to litigate). As such, Plaintiff is precluded from re-arguing the issues before the Article 78 court, including whether the Defendants arbitrarily denied her a building permit.

Because she cannot argue that Defendants denied her a building permit arbitrarily, Plaintiff cannot make out a claim for violation of substantive due process, and that claim is dismissed. Accordingly, Count Two is dismissed.

26

### D.    Count Three

Plaintiff alleges that her Fourteenth Amendment due process rights were violated by Defendant Ciraco's delay in issuing a written permit denial, which also violated New York Town Law § 267-a(5).  (AC ¶¶ 143-55.)  Defendants argue that this cause of action should be dismissed because a violation of state law is not cognizable under § 1983 and Plaintiff has failed to plausibly plead facts suggesting she was deprived of due process.  (Ds' Mem. at 14-15.)  First, Defendants are correct that a violation of Town Law § 267-a(5) alone does not make an official liable under § 1983.  *See Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("[A] violation of state law is not cognizable under § 1983."); *Reich v. City of N.Y.*, No. 19-CV-6491, 2021 WL 6423983, at *3 (E.D.N.Y. Oct. 5, 2021) (to prevail on section 1983 claim, plaintiff must plead violation of federal law; violations of state law not actionable), *report and recommendation adopted*, 2021 WL 5783382 (E.D.N.Y. Dec. 7, 2021).  But Plaintiff also alleges that the state law violation obstructed her ability to file a timely zoning appeal and deprived her of timely access to appellate procedures, which violated her constitutional rights.  (AC ¶¶ 146, 148; P's Opp. at 25-26.)

As already explained, to succeed on a claim for procedural due process, Plaintiff must plead a protected property interest.  Plaintiff argues that she has done so in the form of the use of her property and her statutory right to appeal a permit denial.  (P's Opp. at 25.)  The right to appeal, however, is not a property interest protected by the Fourteenth Amendment.  *See N.Y. State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 164 (2d Cir. 2001) ("Process is not an end in itself.  Its constitutional purpose is to protect a *substantive interest* to which the individual has a legitimate claim of entitlement.") (emphasis in original); *Fusco v. State of Connecticut*, 815 F.2d 201, 205-06 (2d Cir. 1987) ("The opportunity granted abutting landowners and aggrieved

27

persons to appeal decisions of planning and zoning commissions and zoning boards of appeal is purely procedural and does not give rise to an independent interest protected by the fourteenth amendment."); *see also Montgomery v. Carter County, Tennessee,* 226 F.3d 758, 768 (6th Cir. 2000) ("What the Due Process clauses of the Fifth and Fourteenth Amendments protect is life, liberty, and property, not the procedures designed to protect life, liberty, and property.").

And even assuming that Plaintiff had a protected interest in the use of her property, as already explained she fails to state a procedural due process claim because she received adequate process.  She also had relief available to her to address the delay specifically, as she could have sought mandamus in an Article 78 proceeding to compel Ciraco to act.  *See C.C.S.com USA, Inc. v. Gerhauser*, 518 F. App'x 1, 3-4 (2d Cir. 2013) (summary order) (plaintiff could not demonstrate denial of due process in town's delay in granting correction to certificate of occupancy where plaintiff never pursued Article 78 hearing to compel town's decision); *Nenninger*, 509 F. App'x at 39 n.2 ("To the extent [plaintiff] argues that a failure to rule on his application – complete or incomplete – denied him procedural due process, the claim fails in any event because [plaintiff] was free to bring an Article 78 mandamus proceeding in New York State court."); *N.Y. State Nat'l Org. for Women*, 261 F.3d at 168-69 (no procedural due process violation arising from delay in processing administrative complaints because Article 78 process could have been invoked before prejudice arose); *Orange Lake Assocs. v. Kirkpatrick*, 21 F.3d 1214, 1224 (2d Cir. 1994) (suggesting plaintiff could have sought judicial review by way of Article 78 action to address delay); *see also Tall Trees Const. Corp. v. Zoning Bd. of Appeals of Town of Huntington*, 97 N.Y.2d 86, 89-90 (2001) (explaining that after zoning board failed to vote on plaintiff's application after repeated requests for compliance, plaintiff commenced Article 78 contempt proceeding against board); *River Park, Inc. v. City of Highland Park*, 23

28

F.3d 164, 167 (7th Cir. 1994) (plaintiff had ample means to contest runaround it was receiving from city including by writ of certiorari).  Thus, the delay cannot sustain Plaintiff's procedural due process claim.

Accordingly, Count Three is dismissed.

### E.    <u>Count Four</u>

Plaintiff alleges that Defendants violated her rights under the Fifth, Sixth, and Fourteenth Amendments by denying her application for construction permits under Bedford Town Code § 125-79.1(A) based on an allegedly erroneous and arbitrary interpretation of that provision.  The Court is not sure what claim Plaintiff could conceivably assert under the Sixth Amendment here, but her substantive due process claim fails because, as previously explained, she is precluded from rearguing the issues underlying that claim, including whether Defendants acted arbitrarily.

In her brief, Plaintiff argues that she has stated a takings claim under Count Four, (*see* P's Opp. at 27-28), even though no such allegation appears in the AC.  In any event, she would fail to state a takings claim for the reasons explained with respect to Count One.  *See supra* Section III.B.2.  Accordingly, Count Four is dismissed in its entirety.

### F.    <u>Count Five</u>

Plaintiff alleges a procedural due process violation based on Defendants' fourteen-month delay between issuing the Notice of Violation and filing a summons in the Town Justice Court. (P's Opp. at 29.)  The Court is not clear on why Plaintiff seeks a ruling that would encourage municipalities to resort to criminal penalties sooner.  In any event, as already discussed with respect to Count One, Plaintiff fails to state a claim for such a violation because she received process in the form of the criminal proceedings in the Town Justice Court and the Article 78 proceeding, in which she contested the Notices of Violation, (ECF No. 45-2 at 1), and because

she has failed to plausibly allege prejudice that resulted from the delay. *See Lepper v. Vill. of Babylon*, No. 18-CV-7011, 2022 WL 939719, at *20 (E.D.N.Y. Mar. 29, 2022) (no due process violation where plaintiff was sent notice of violation, had opportunity to submit permit application, and had opportunity to contest tickets in Village Justice Court and appeal the Justice Court's decision), *aff'd sub nom. Lepper v. Scordino*, No. 22-1064, 2023 WL 4004220 (2d Cir. June 15, 2023); *Dellutri*, 895 F. Supp. 2d at 575 (no procedural due process violation where plaintiff, who was served with appearance ticket to appear in village justice court a year after notice of violation issued, was afforded notice and opportunity for trial and appeal and had avenues to challenge deprivation of property through Article 78 proceeding).

Accordingly, Count Five is dismissed.

### G.    Count Six

Plaintiff alleges a substantive due process violation based on the ZBA's allegedly "arbitrary and irrational denial of her permit application under BTC § 125-79.1A." (P's Opp. at 31.) This claim must be dismissed for the same reason as explained with respect to Counts Two and Four: Plaintiff is precluded by the Article 78 proceedings from arguing that the ZBA's denial of her permit was arbitrary or irrational. Additionally, although the ZBA is not the proper defendant here, it is worth noting that the ZBA also has discretion to grant or deny permits and to make any such order or decision as "in its opinion" ought to be made, *see* Bedford Town Code § 125-129, and thus Plaintiff cannot plausibly allege a legal entitlement to the permit.

Accordingly, Count Six is dismissed.

### H.    Count Seven

Plaintiff next alleges a substantive due process violation and unlawful taking based on the ZBA's November 2, 2023 decision that amounted to "de facto downzoning." (P's Opp. at 33;

AC ¶ 188.)  As already explained with respect to Counts Two, Four, and Six, Plaintiff fails to state a substantive due process claim based on the denial of permits because the Article 78 court and Appellate Division already determined that the ZBA did not act arbitrarily or irrationally in denying the permits.  Although Plaintiff argues that this claim is distinct because the issue of *de facto* re-zoning was not the subject of the Article 78 proceeding, (AC ¶ 197), the re-zoning Plaintiff alleges is the result of the permit denial, (P's Opp. at 34 ("[T]his [permit] denial functionally imposed R2A restrictions on her R1A parcel – effectively rezoning it . . . .")).  Thus, Count Seven is not distinct from Counts Two, Four, or Six, and the substantive due process claim must be dismissed.

Further, as noted, Plaintiff did not have a constitutionally protected property interest in the zoning classification of her property, because "under New York law . . . , a landowner has no vested interest in the existing classification of his property."  *S. Nassau Bldg. Corp.*, 624 F. Supp. 3d at 277; *DC3, LLC*, 783 F. Supp. 2d at 422 ("[P]roperty owners do not possess a cognizable property interest in the zoning designation of their property.").  Therefore, for that reason, and for the reasons explained above with respect to Count One, Plaintiff fails to state a claim under the Takings Clause.

Accordingly, Count Seven is dismissed.

## I.      **Count Eight**

Plaintiff alleges that the five-month delay in the ZBA hearing her appeal violated procedural due process, as the appeal was not within a meaningful time, caused lost rental income, and violated N.Y. State Town Law § 267a.  (P's Opp. at 35-37.)  Defendants argue that they did not violate Town Law § 267a, which only requires an appeal to be heard within a

31

reasonable time, and even if they did, that would not suffice to state a claim under § 1983.  (Ds'

Mem. at 16-17.)

As already explained, that the delay may have violated a provision of the Town Law does

not alone suffice to state a claim under § 1983.  *See Pollnow*, 757 F.2d at 501 ("[A] violation of

state law is not cognizable under § 1983."); *Reich*, 2021 WL 6423983, at *3 (to prevail on

section 1983 claim, plaintiff must plead violation of federal law; violations of state law are not

actionable).  Additionally, as discussed, Plaintiff had remedies available to her under state law to

address the delay in receiving a hearing.  *See Barzee v. Tyler*, No. 21-CV-902, 2022 WL

1406606, at *8 (N.D.N.Y. May 3, 2022) (Article 78 is adequate remedy in cases involving

prolonged delays in governmental decision-making), *report and recommendation adopted*, 2022

WL 2079084 (N.D.N.Y. June 9, 2022); *DeMartino v. N.Y. State Dep't of Lab.*, 167 F. Supp. 3d

342, 366-67 (E.D.N.Y. 2016) (mandamus proceedings available to remedy delay and compel

review as required by state law), *aff'd in part and dismissed in part*, 712 F. App'x 24 (2d Cir.

2017) (summary order); *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d. 332, 345 (E.D.N.Y.

2009) (state court in Article 78 proceeding can order a hearing).  And "the Second Circuit . . .

has consistently determined that the availability of mandamus relief and Article 78 proceedings

counsel against the finding of a due process violation."  *DeMartino*, 167 F. Supp. 3d at 367.

Accordingly, Count Eight is dismissed.

**J.      Count Nine**

Plaintiff alleges that the ZBA's failure to timely file the ZBA decision within five days of

the November 2, 2023 hearing violated Town Law § 267a and deprived her of procedural due

process because the Town altered its reasoning before filing the written decision and denied her

access to judicial review within a meaningful time.  (P's Opp. at 37.)  Defendants argue that

Plaintiff was not deprived of a meaningful opportunity to be heard because she was able to file a timely Article 78 petition, and that even if the written resolution differed from the decision at the hearing, the Article 78 court considered both. (Ds' Mem. at 17-18.)

Defendants are correct. Plaintiff cannot plausibly allege that the ZBA's delay in issuing a written decision denied her access to judicial review within a meaningful time, because Plaintiff timely filed an Article 78 Petition following the November 2 hearing. (AC ¶ 39.) Thus, there was no delay in Plaintiff receiving judicial review. Additionally, although Plaintiff filed the Petition before the ZBA issued the written resolution, to the extent the decision made at the hearing differed from the written decision, (*id.* ¶ 212), Plaintiff had the opportunity to brief those issues in her reply, and the Article 78 court addressed both decisions, (ECF No. 45-2 at 3), as discussed. And, again, Plaintiff had the opportunity to address the issues raised at the hearing and in the written resolution on appeal to the Second Department. Thus, the delay between the hearing and the written decision did not deprive Plaintiff of meaningful review.

Accordingly, Count Nine is dismissed.

### K.    Counts Ten Through Eighteen

#### 1.    Absolute Immunity Generally

Counts Ten[16] through Eighteen include as Defendants Town Attorneys Eric Gordon, Robert Zitt or both, based on their participation in the criminal proceedings against Plaintiff. They argue that they are entitled to absolute prosecutorial immunity and therefore all of those counts must be dismissed. (Ds' Mem. at 20-21.) Plaintiff argues they are not entitled to absolute

---

[16] In the AC, Plaintiff asserts a cause of action labeled "Cause of Action IV" for malicious prosecution under § 1983. (AC at 48.) The Court assumes this label was in error, as chronologically this cause of action should be Count Ten. The Court will refer to the claim asserted in paragraphs 220-239 as Count Ten.

33

immunity because the attorneys are not public prosecutors, as Gordon is a contract employee and

Zitt has no formal relationship to the Town. (P's Opp. at 40-41.) Plaintiff also argues that the

Defendants' actions are not protected functions to which immunity applies. (*Id.* at 41.)

> It is by now well established that a state prosecuting attorney who acted within the
> scope of his duties in initiating and pursuing a criminal prosecution is immune
> from a civil suit for damages under § 1983. The rationale for conferring absolute
> immunity in such circumstances is that the public trust of the prosecutor's office
> would suffer if he were constrained in making every decision by the consequences
> in terms of his own potential liability in a suit for damages. . . . [A] defense of
> absolute immunity from a claim for damages must be upheld against a § 1983
> claim that the prosecutor commenced and continued a prosecution that was within
> his jurisdiction but did so for purposes of retaliation, or for purely political
> reasons.

*Shmueli v. City of N.Y.*, 424 F.3d 231, 236-37 (2d Cir. 2005).

"Courts take a functional approach when evaluating a state prosecuting attorney's ability

to invoke absolute immunity." *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 254 (E.D.N.Y.

2015), *reconsideration denied*, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), and *aff'd*, 678 F.

App'x 17 (2d Cir. 2017) (summary order). In other words, immunity attaches to the function

performed, not the office itself. *See Warney v. Monroe County*, 587 F.3d 113, 121 (2d Cir.

2009); *Ying Jing Gan v. City of N.Y.,* 996 F.2d 522, 530 (2d Cir. 1993). Accordingly, "[t]o

establish immunity, the ultimate question is whether the prosecutors have carried their burden of

establishing that they were functioning as advocates when they engaged in the challenged

conduct." *Norton*, 97 F. Supp. 3d at 254. The conduct must be of the kind "intimately

associated with the judicial phase of the criminal process." *Ying Jing Gan*, 996 F.2d at 530.

This includes "conduct preliminary to the initiation of a prosecution, such as whether to present a

case to a grand jury, whether to file an information, whether and when to prosecute, whether to

dismiss an indictment against particular defendants, which witnesses to call, and what other

evidence to present." *Norton*, 97 F. Supp. 3d at 254. It does not include, however, "those acts a

34

prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Stokes v. Wayne County*, No. 23-CV-6482, 2024 WL 4262276, at \*10 (W.D.N.Y. Sept. 23, 2024).

But even an attorney engaging in "prosecutorial activities intimately associated with the judicial phase of the criminal process loses the absolute immunity he would otherwise enjoy . . . if he acts without any colorable claim of authority." *Shmueli*, 424 F.3d at 237. As mentioned, Plaintiff argues that Defendants Gordon and Zitt are not protected by absolute immunity because they did not have a formal relationship with the Town or had only a contractual relationship with the Town, and thus did not have statutory authority under New York law. (P's Opp. at 40-41.) The Court construes this argument as one that the Defendants lacked a colorable claim of authority and thus acted without jurisdiction.

First, there are no facts in the AC that render it plausible that Gordon and Zitt were acting without any colorable claim of authority. In the AC, Plaintiff alleges only in conclusory fashion that Gordon went beyond the scope of traditional prosecutorial functions, engaged in administrative and investigatory conduct, and was motivated by extrajudicial considerations. (AC ¶¶ 236-38.) Plaintiff alleges essentially the same as to Zitt. (*Id.* ¶¶ 245-46.) Not only are there no facts rendering those conclusions plausible, but Plaintiff challenges whether Defendants were engaging in prosecutorial (as opposed to administrative) functions and challenges their motivations; she does not allege that they acted without authority. (*See generally* AC.) To the extent that Plaintiff argues that Defendants acted without authority *because* they allegedly initiated prosecutions against her without probable cause and for improper reasons, Plaintiff is incorrect. An official loses absolute immunity "where the defect is jurisdictional – that is, where the prosecutor acted well outside the scope of authority, rather than where the defect relates, as

35

here, to the prosecutor's motivation or the reasonableness of his official action." *Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022). Accordingly, "even in the absence of probable cause, as long as a prosecutor acts with colorable authority, absolute immunity shields his performance of advocative functions regardless of motivation." *Id.* at 866; *see Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ("The appropriate inquiry, thus, is not whether authorized acts are performed with a good or bad *motive*, but whether the *acts* at issue are beyond the prosecutor's authority.") (emphasis in original).

There are no facts that render it plausible that either Gordon or Zitt acted without authority. First, Plaintiff's allegation in her opposition brief that the Defendants "acted beyond their legal authority," (P's Opp. at 41), is conclusory, does not appear in the AC, and does not negate Gordon's or Zitt's entitlement to absolute immunity. *See Verbeek v. Teller*, 158 F. Supp. 2d 267, 281 (E.D.N.Y. 2001) (conclusory allegations that village counsel acted outside authority, that charges were fabricated, and that there was agreement between counsel and another to fabricate charges did not negate entitlement to immunity). Second, throughout the AC, Plaintiff contradicts that assertion, as she alleges that Defendants initiated the prosecutions against her in their role as Town Counsel, (*see, e.g.*, AC ¶¶ 226 ("[Gordon] acted as Town Attorney and personally arraigned Plaintiff in Bedford Justice Court."), 242 ("[Zitt], acting as Town Attorney, filed a second criminal prosecution against Plaintiff.")), and that Gordon and Zitt were acting in concert with and/or on behalf of the Town, (*id.* ¶¶ 231 (Gordon, "acting as Town Attorney for the Town of Bedford, initiated a criminal prosecution against the Plaintiff"), 256 (alleging Zitt was acting on behalf of the Town)).

36

Plaintiff contends that Gordon and Zitt are not public prosecutors, as the Town retained their law firm's services by contract.[17]  First, she alleges the opposite in the AC.  (AC ¶ 312 (Zitt and Gordon "[a]bused their roles as public officials acting under **color of state law**") (emphasis in original)).  Second, that they were not full-time prosecutors does not mean they are not entitled to absolute immunity.  As noted, immunity attaches to the function performed, not the office, and absolute immunity protects "officials performing certain functions analogous to those of a prosecutor, including local executive officers and government attorneys, whether the enforcement proceedings they prosecute [are] civil or criminal in nature."  *Weinberg v. Vill. of Clayton, New York*, No. 17-CV-21, 2018 WL 4214363, at *9 (N.D.N.Y. Mar. 21, 2018); *see Murphy v. City of Elmira*, No. 18-CV-6572, 2023 WL 5938777, at *6 (W.D.N.Y. Sept. 12, 2023) (town attorney absolutely immune from all claims against him premised on prosecution of violations of property maintenance code), *reconsideration denied*, 2023 WL 8351889 (W.D.N.Y. Dec. 2, 2023), and *reconsideration denied*, 2024 WL 242494 (W.D.N.Y. Jan. 23, 2024); *Lepper*, 2022 WL 939719, at *27 (rejecting argument that absolute immunity does not extend to individuals serving as village attorneys prosecuting violation of village zoning code); *Norton*, 97 F. Supp. 3d at 262 (town attorneys enjoyed absolute immunity for prosecuting plaintiff for town code violations).[18]  Thus, as Town Counsel, Gordon and Zitt enjoy absolute immunity for prosecutorial actions.

---

[17] No such allegation appears in the AC, but I infer from the AC's allegations regarding Zitt's and Gordon's law firm, (*see* AC ¶¶ 97, 100, 243, 250), that it is the case.

[18] The Town resolution that Plaintiff attached to her opposition as Exhibit 1 does not aid her, as it shows that Gordon's and Zitt's law firm was retained to provide "Attorney Services," which fairly includes prosecuting Town Code violations.  (*See* ECF No. 49-1.)

Finally, to the extent that Plaintiff argues that Gordon and Zitt lacked statutory authority to initiate the prosecutions against her, that argument is also without merit. (*See* P's Opp. at 40-41.) "In considering whether a given prosecution was clearly beyond the scope of [an official's] jurisdiction, or whether instead there was at least a colorable claim of authority, [courts] inquire whether any relevant criminal statute exists that may have authorized prosecution for the charged conduct." *Anilao*, 27 F.4th at 864. Bedford Town Code § 125-128 provides for penalties for violations of any provision of "this Chapter" – that is, Chapter 125, entitled "Zoning" – or any rule or regulation made under the authority conferred by the chapter. *See* Bedford Town Code § 125-128. Specifically, § 125-128(A)(1) provides that anyone who

> erect[s], construct[s], alter[s], enlarge[s], convert[s] or move[s] any building or structure or any part thereof without a building permit or in violation of any statement or plans submitted and approved . . . or who shall use any building, structure or land in violation of this chapter or any rule or regulation made under the authority conferred by this chapter, or in violation of the provisions of any building permit or certificate of occupancy . . . [and] fails to abate said violation . . . shall be liable for a fine not exceeding $500 and/or imprisonment not to exceed 15 days for conviction of a first offense . . . .

*Id.* The Town Code goes on to explain that anyone convicted of having an illegal accessory apartment will be guilty of an unclassified misdemeanor pursuant to the Penal Law. *See id.* § 125-128(A)(2). Thus, the Town Code contemplates criminal prosecution for Plaintiff's alleged conduct, as she acknowledges in her AC. (AC ¶ 223 ("Defendant Gordon caused a summons served upon Plaintiff to compel her appearance in Justice Court for alleged violations punishable by imprisonment of up to six consecutive 15-day terms, pursuant to local ordinances."); *id.* ¶ 90 ("Under New York law, zoning and building violations are penalized by fines and, where applicable, short-term incarceration.").) Accordingly, it is not plausible that Gordon and Zitt lacked a colorable claim of authority or acted in the absence of all jurisdiction. *See Murphy*, 2023 WL 8351889, at *3 (city attorneys did not act in clear absence of all jurisdiction where

38

SPA-38

New York law authorized imposition of fines and term of imprisonment for violations of

building code with which plaintiff was charged); *Weinberg*, 2018 WL 4214363, at \*9 (village

attorneys did not act without any colorable claim of authority where village code specified

remedies for violations were not exclusive, and state law provided penalties for violations of any

lawful order of a local government).

Therefore, Gordon and Zitt are entitled to absolute immunity so long as they were

engaging in prosecutorial functions. I address below whether the conduct alleged in each count

constitutes a prosecutorial function.

### 2.    Counts Ten & Eleven

In Count Ten, Plaintiff asserts claims for malicious prosecution under the Fourth

Amendment and First Amendment retaliation against Gordon and the Town. As to Gordon,

Plaintiff alleges that he violated her rights by "initiating and pursuing a baseless quasi-criminal

enforcement proceeding against Plaintiff for the purpose of punishing her for the exercise of

protected First Amendment rights . . . ." (AC ¶ 222.) She also alleges Gordon caused a

summons to be served upon Plaintiff to compel her appearance in the Town Justice Court, (*id.* ¶

223), personally arraigned Plaintiff in the Justice Court, (*id.* ¶ 226), and issued discovery

demands, (*id.* ¶ 227). This alleged conduct is prosecutorial in nature, as it is intimately

associated with the judicial phase of the criminal process. *See Santulli v. Russello*, 519 F. App'x

706, 711 (2d Cir. 2013) (summary order) ("[T]he issuance of summonses is part of the

prosecutorial function, having effectively initiated prosecutions for the violations alleged."); *Ying*

*Jing Gan*, 996 F.2d at 530 (absolute immunity applies to decision whether to initiate prosecution

and performance of litigation-related duties); *Abdullah v. City of N.Y.*, No. 21-CV-823, 2021 WL

810232, at \*3 (E.D.N.Y. Mar. 3, 2021) ("Because the prosecutor's conduct in arraigning plaintiff

39

is intimately associated with the judicial phase of the criminal process, it is protected by absolute immunity."); *Norton*, 97 F. Supp. 3d at 262 (instituting and continuing criminal prosecutions are clear prosecutorial functions absolutely immune from suit).  Plaintiff alleges in conclusory fashion that Gordon's conduct was "investigative" and "administrative" (AC ¶¶ 236-37), but her "labeling of the prosecutor's actions . . . does not make it so."  *Watson v. Grady*, No. 09-CV-3055, 2010 WL 3835047, at *16 (S.D.N.Y. Sept. 30, 2010); *see Crews v. County of Nassau*, No. 06-CV-2610, 2007 WL 4591325, at *15 n.15 (E.D.N.Y. Dec. 27, 2007) ("[P]laintiff[']s] labeling various actions 'investigative' or 'administrative' in the complaint is of no moment.").  And as discussed, even if Gordon's actions were undertaken for a retaliatory purpose, or he initiated the prosecution in the absence of probable cause, that does not negate his entitlement to absolute immunity.  *See Anilao*, 27 F.4th at 866 ("[E]ven in the absence of probable cause, as long as a prosecutor acts with colorable authority, absolute immunity shields his performance of advocative functions regardless of motivation."); *Bernard*, 356 F.3d at 504 ("Certainly, racially invidious or partisan prosecutions, pursued without probable cause, are reprehensible, but such motives do not necessarily remove conduct from the protection of absolute immunity.").

Similarly, in Count 11, Plaintiff asserts a claim of malicious prosecution against Zitt. Plaintiff brings this claim under the Fourteenth Amendment, but "the Fourteenth Amendment itself is not a sufficient Constitutional ground for a malicious prosecution claim."  *Moore v. Town of Webster*, No. 24-CV-6062, 2025 WL 1549029, at *7 (W.D.N.Y. May 30, 2025) (collecting cases); *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 114 (2d Cir. 1995) (explaining that "the Fourteenth Amendment right to substantive due process will not support a federal claim

40

for malicious prosecution," but plaintiff may assert a federal claim for malicious prosecution under Fourth Amendment).  Thus, Count 11 is dismissed.

Plaintiff would have fared no better had she brought her malicious prosecution against Zitt under the Fourth Amendment.  She alleges that he "filed a second criminal prosecution against Plaintiff in Bedford Justice Court" in retaliation for her exercise of her First Amendment right, and despite knowing that he lacked probable cause, and that the prosecution violated the Double Jeopardy Clause.  (AC ¶¶ 241, 245, 248.)  As explained, these alleged actions are prosecutorial functions, and therefore Zitt is entitled to absolute immunity.  *See Anilao*, 27 F.4th at 866 (absolute immunity attached to prosecutorial functions regardless of motivation); *Norton*, 97 F. Supp. 3d at 262 (instituting and continuing criminal prosecutions clear prosecutorial functions absolutely immune from suit); *Lepper*, 2022 WL 939719, at *28 (village attorney absolutely immune from plaintiff's Double Jeopardy claim); *Anilao v. Spota*, 774 F. Supp. 2d 457, 480 (E.D.N.Y. 2011) (defendants shielded from liability for decision to prosecute in retaliation for exercise of First Amendment rights), *aff'd*, 27 F.4th 855 (2d Cir. 2022).

Moreover, even if Defendants were not immune, Plaintiff fails to state a claim for malicious prosecution.  To plausibly allege a claim under § 1983 for malicious prosecution, a plaintiff must allege:  "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Norton*, 97 F. Supp. 3d at 262-63.  Defendants argue that dismissals without prejudice due to facial insufficiency do not suffice to show that the criminal proceedings terminated in Plaintiff's favor.  (Ds' Mem. at 22.)

41

Defendants are incorrect.  Although the Second Circuit had previously held that a dismissal without prejudice for facial insufficiency does not constitute a favorable decision on the merits, *see Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999); *see also Russell v. The J. News*, 672 F. App'x 76, 78-79 (2d Cir. 2016) (summary order) (relying on *Breen*), the Supreme Court has rejected the principle behind that proposition, holding that a plaintiff asserting a malicious prosecution claim need only show that the proceeding ended without a conviction, and that an affirmative indication of innocence is not required, *see Thompson v. Clark*, 596 U.S. 36, 49 (2022); *see also Santiago v. City of Rome*, No. 24-CV-704, 2025 WL 553347, at *6 (N.D.N.Y. Feb. 16, 2025) (explaining impact of *Thompson* on malicious prosecution claims under § 1983).  Allegations that charges were dismissed for facial insufficiency "easily meet *Thompson*'s low bar" for the favorable termination element.  *Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 235 (W.D.N.Y. June 30, 2022); *see Massari v. Ryerse*, No. 23-CV-446, 2024 WL 2116827, at *11 (W.D.N.Y. Mar. 28, 2024), *report and recommendation adopted*, 2024 WL 2114005 (W.D.N.Y. May 10, 2024).  Thus, Plaintiff has sufficiently pleaded the second element of her malicious prosecution claims.

Nevertheless, Plaintiff must also allege that Defendants' conduct "resulted in a constitutionally cognizable, post-arraignment deprivation of liberty implicating [her] Fourth Amendment rights."  *Norton*, 97 F. Supp. 3d at 263; *see Bernshtein v. City of N.Y.,* 496 F. App'x 140, 142 (2d Cir. 2012) (summary order) (same); *Mozdziak v. Romeo*, No. 24-CV-8579, 2025 WL 3484828, at *4 (S.D.N.Y. Dec. 4, 2025) ("A plaintiff asserting a Fourth Amendment malicious prosecution claim under Section 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'").  "[T]he issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a

42

Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010).  But "a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013).  In other words, "the requirement that a plaintiff appear in court, post-arraignment, in connection with criminal proceedings, does constitute a Fourth Amendment seizure." *MacPherson v. Town of Southampton*, No. 07-CV-3497, 2013 WL 6058202, at *5 (E.D.N.Y. Nov. 14, 2023).  Thus, applying *Swartz*, "[c]ourts have found a liberty deprivation, for example, where arrestees were arraigned and were subsequently required to make one other court appearance." *Price v. City of N.Y.*, No. 15-CV-5871, 2018 WL 3117507, at *8 (S.D.N.Y. June 25, 2018) (collecting cases); *Holley v. City of N.Y.*, No. 23-CV-1838, 2024 WL 3519795, at *6 (S.D.N.Y. Jan. 29, 2024) (plaintiffs stated claim for malicious prosecution where they alleged they were required to and did appear in court on multiple occasions before the charges were dropped), *report and recommendation adopted as modified by* 2024 WL 1116107 (S.D.N.Y. Mar. 14, 2024); *Hanson v. New York City*, No. 15-CV-1447, 2018 WL 1513632, at *17 (E.D.N.Y. Mar. 27, 2018) (plaintiff may establish a deprivation of liberty when she is "detained before arraignment, required to be available to reappear before the state court at any time and therefore limited in [her] travel after being released from custody, and makes at least one post-arraignment appearance before a state court"); *Gogol v. City of N.Y.*, No. 15-CV-5703, 2017 WL 3449352, at *12 (S.D.N.Y. Aug. 10, 2017) (denying summary judgment where plaintiff had one post-arraignment court appearance and was subject to travel restriction); *cf. Downing v. Town of Cicero*, No. 24-CV-643, 2025 WL 641570, at *13 (N.D.N.Y. Feb. 27, 2025)

43

(no seizure where plaintiff did not allege he was required to attend or did attend court during period between arraignment and when charges were dismissed months later).[19]

Here, Plaintiff does not allege more than one court appearance, stating only "**Defendant Gordon caused a summons served upon Plaintiff to compel her appearance in Justice Court**," (AC ¶ 223 (emphasis in original)), and that she was arraigned on June 11, 2024 in the first prosecution, (*id.* ¶¶ 226, 230), and on September 17, 2024 in the second, (*see* ECF No. 41-14 at 5:11).  These allegations fall short of alleging a post-arraignment deprivation of liberty akin to a seizure under the Fourth Amendment.  *See MacPherson*, 2013 WL 6058202, at *6 (plaintiff failed to allege post-arraignment seizure where complaint was "bereft of allegations that [plaintiff] was required to appear in court after his arraignment or that he did in fact appear in court after his arraignment as a result of the criminal charges").

> Further, to the extent such facts are relevant, [s]he does not allege that [s]he was placed into physical custody at any time . . . , either before or after h[er] arraignment.  Nor does [s]he allege that [s]he was subjected to any other restrictions following either the issuance of the criminal summons or h[er] arraignment, such as on h[er] ability to travel freely.  Given that Plaintiff has not alleged that [s]he was restricted in any manner beyond being required to attend the arraignment, [s]he has not alleged a sufficiently unreasonable deprivation of h[er] liberty to state a claim for malicious prosecution pursuant to Section 1983.

*Downing*, 2025 WL 641570, at *13.

Additionally, I find Plaintiff has failed to plausibly plead a lack of probable cause, and thus her claim fails on that basis as well.  Plaintiff does not allege that the apartment does not exist, that it is not actually on the second floor of a detached garage, that it does not have a

---

[19] The "case law from this Circuit is somewhat unclear with respect to the approach courts should take when considering this final element" of a malicious prosecution claim. *Oxman v. Downs*, 999 F. Supp. 2d 404, 413-14 (E.D.N.Y. 2014) (explaining conflicting case law in Second Circuit with respect to seizure element).  Nevertheless, it appears to this Court that requiring at least one post-arraignment court appearance is the approach taken by the majority of courts in this Circuit.

SPA-44

kitchen and bathroom, or that the Town issued a permit or variance allowing the recreation room

to be converted into an apartment; rather, she admits those facts in the AC.  (AC ¶¶ 8, 12, 14.)  In

other words, Plaintiff's disagreement is with the Town's reading of the Town Code as not

allowing the apartment in the district where her property is situated.  (*See, e.g.*, *id.* ¶¶ 126-130.)

Although this issue is not necessarily precluded by Judge Fufidio's and the Appellate Division's

findings that the Town's interpretation of the Town Code was reasonable, I agree with Judge

Fufidio's substantive analysis of the relevant provisions of the Town Code.  Accordingly, for the

reasons set forth in his decision, and in the Appellate Division's decision affirming it, "a

reasonable person in the Defendants' position could have easily interpreted the Town Code in a

similar fashion and, thus, would believe that the issuing and prosecution of the [Notices of

Violation] was warranted."  *Oxman*, 999 F. Supp. 2d at 415 (finding as a matter of law on motion

to dismiss that defendants had probable cause to pursue prosecution of plaintiff for violating

town code); *Parkash v. Town of Southeast*, No. 10-CV-8098, 2011 WL 5142669, at *4

(S.D.N.Y. Sept. 30, 2011) (facts pleaded in amended complaint support inference that

appearance tickets and informations issued based on probable cause as plaintiffs did not argue

they ceased violative use), *aff'd*, 468 F. App'x 80 (2d Cir. 2012) (summary order).

Although Plaintiff argues that the dismissal of the prosecutions proves that there was no

probable cause, (AC ¶ 230), that is incorrect, *see Lepper*, 2022 WL 939719, at *22 ("The fact

that the tickets were ultimately dismissed because they failed to include sufficient factual

allegations does change the fact that Defendants possessed probable [cause] to pursue this

prosecution."); *Paulin v. Figlia*, 916 F. Supp. 2d 524, 531 (S.D.N.Y. 2013) ("Eventual dismissal

of the charges does not affect whether there was probable cause at the time of arrest."); *Johnson*

*v. City of Mount Vernon*, No. 10-CV-7006, 2012 WL 4466618, at *4 (S.D.N.Y. Sept. 18, 2012)

("The fact that charges are later dismissed does not affect whether there was probable cause at the time of arrest."). Similarly, although Plaintiff argues that Gordon's statement that the charges would likely be dismissed shows there was no probable cause, (AC ¶ 229), she does not allege that he stated that the reason for dismissal would be lack of probable cause. Further, the Court has reviewed the video from the November 2, 2024 ZBA meeting on which Plaintiff relies, (ECF No. 1-1; *see* AC ¶ 229), and only heard Gordon say, with reference to one of the violations, that Plaintiff "may be right that the court - that gets dismissed," (ECF No. 1-1 at 2:03:33). Thus, Plaintiff fails to plausibly plead a lack of probable cause.

The existence of probable cause to prosecute also defeats Plaintiff's First Amendment retaliation claim. *See Chepilko v. Henry*, 722 F. Supp. 3d 329, 346 (S.D.N.Y. 2024) ("The existence of probable cause will defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive."), *appeal dismissed*, No. 24-1059 (2d Cir. Feb. 4, 2025).

Accordingly, Counts Ten and Eleven are dismissed as to Defendants Gordon and Zitt.

### 3. Count Twelve

Next, Plaintiff alleges that Zitt violated her Sixth Amendment right to a speedy trial and her Fourteenth Amendment due process rights by filing a second criminal prosecution against her after the statutory speedy trial period for the first had expired.[20] (AC ¶ 254.) Defendant Zitt is again entitled to absolute immunity for his actions, as Plaintiff's claim stems from his decision to initiate a prosecution, which, as discussed, is a core prosecutorial function. *See Norton*, 97 F.

---

[20] Plaintiff asserts this claim against Zitt in his official and individual capacities, (AC at 56), but any claim against Zitt, or any other individual defendant, in his official capacity is "a redundant method of stating a claim against the Town itself," *Rini v. Zwirn*, 886 F. Supp. 270, 282 (E.D.N.Y. 1995).

Supp. 3d at 262.  "This is true, even if [Defendant] violated plaintiff's . . . right to a speedy trial in the process." *Pittman v. Edwards*, No. 20-CV-319, 2020 WL 4194479, at *4 (N.D.N.Y. June 22, 2020), *report and recommendation adopted*, 2020 WL 4192547 (N.D.N.Y. July 21, 2020); *see Blount v. Moccia*, 16-CV-4505, 2017 WL 5634680, at *8 (S.D.N.Y. Nov. 21, 2017) (dismissing Sixth Amendment speedy trial claim because steps taken to prosecute plaintiff's case entitled to absolute immunity); *Lewis v. Johnson*, No. 04-CV-3784, 2005 WL 2158806, at *2-3 (S.D.N.Y. Sept. 1, 2005) (defendant entitled to absolute immunity where plaintiff alleged prosecutor's acts deprived him of constitutional right to speedy trial because decision to initiate prosecution is clearly act for which attorney entitled to absolute immunity).

Furthermore, the claim is based entirely on Zitt's filing of the second summons on September 17, 2024, after the time for trial on the first summons under New York Criminal Procedure Law § 30.30 had run on July 11, 2024.  (*See* AC ¶¶ 254-62).  But "a violation of § 30.30 cannot be the basis of a § 1983 claim," because its limitation is statutory, not constitutional.  *Jackson v. Marshall*, No. 04-CV-3915, 2008 WL 800745, at *4 (S.D.N.Y. Mar. 25, 2008).  Finally, any constitutional speedy trial claim is baseless.  The first summons was issued on May 6, 2024 and the second was dismissed on November 12, 2024.  (*See* ECF No. 41-10; ECF No. 1-5.)  Even if that entire time were unwarranted delay, and even if it was all attributable to Zitt – neither of which is alleged – a "six-month period is simply too short to raise a substantial Sixth Amendment issue." *United States v. Watson*, 599 F.2d 1149, 1157 (2d Cir. 1979), *opinion amended on reh'g*, 690 F.2d 15 (2d Cir. 1979), and *opinion modified on reh'g sub nom. United States v. Muse*, 633 F.2d 1041 (2d Cir. 1980); *see Kelly v. Lape*, No. 04-CV-218, 2007 WL 405856, at *3 (N.D.N.Y. Feb. 1, 2007) (ten-month delay from arrest to conviction

47

"considerably shorter than those in other cases where no Sixth Amendment speedy trial violation has been found").

Accordingly, Count Twelve is dismissed.

### 4.      Count Thirteen

Plaintiff alleges in Count Thirteen that Defendant Zitt violated her due process rights under the Fourteenth Amendment by failing to disclose *Brady* material requested by Plaintiff during her criminal proceedings.  (AC ¶¶ 264-69.)  Defendants argue that, to the extent this claim is raised against Defendants other than Zitt, the claim must be dismissed for failure to plead facts suggesting personal involvement.  (Ds' Mem. at 23.)  Defendants also argue that Gordon and Zitt are entitled to absolute immunity, and the claim must be dismissed because neither criminal proceeding resulted in a conviction of Plaintiff.  (*Id.* at 23-24.)

First, as to Zitt, against whom the claim is expressly asserted, "a prosecutor is absolutely immune from liability under § 1983 for [*Brady*] violations," *McClean v. County of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *9 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019) (summary order), because deciding what evidence to turn over is a prosecutorial function, *see Hill v. City of N.Y.*, 45 F.3d 653, 662 (2d Cir. 1995) (failure to turn over *Brady* material protected as discretionary advocacy function); *Kweller v. County of Broome*, No. 24-CV-1328, 2025 WL 2719897, at *13 (N.D.N.Y. Sept. 24, 2025) (failure to identify and disclose exculpatory evidence is advocacy function to which absolute immunity ordinarily attaches), *reconsideration denied*, 2025 WL 3280745 (N.D.N.Y. Nov. 25, 2025); *Lepper*, 2022 WL 939719, at *28 (village attorney protected by absolute immunity on *Brady* claim); *McClean*, 2018 WL 6329420, at *9 (plaintiff cannot obtain damages

48

under § 1983 for *Brady* violation because prosecutor absolutely immune for such violations). Thus, Zitt is entitled to absolute immunity for the alleged failure to disclose *Brady* material.

Even if Zitt were not absolutely immune, the government has a "*Brady* obligation only where non-disclosure of a particular piece of evidence would deprive a defendant of a fair trial." *See Ambrose v. City of N.Y.*, 623 F. Supp. 2d 454, 467 (S.D.N.Y. 2009). To demonstrate that deprivation, a plaintiff must show that the government suppressed evidence, the evidence at issue is favorable to the defendant, and the failure to disclose the evidence resulted in prejudice. *See id.*; *Rindgen v. County of Broome*, No. 24-CV-1325, 2025 WL 2772080, at *30 (N.D.N.Y. Sept. 29, 2025). Putting aside that the allegedly withheld material, (*see* AC ¶ 266), seems to relate to Plaintiff's beliefs regarding a conspiracy against her, as opposed to whether or not she was not guilty of the charged zoning violations, "[c]ourts have categorically rejected denial of a right to fair trial claims based on *Brady* violations where the plaintiff was not convicted in the underlying criminal trial." *McClean*, 2018 WL 6329420, at *18; *see Rindgen*, 2025 WL 2772080, at *31 (no § 1983 fair trial claim for alleged *Brady* violation where plaintiff was acquitted); *Ambrose*, 623 F. Supp. 2d at 471 ("[T]he verdict acquitting Plaintiff of the criminal charges against him negates any violation of his *Brady* rights and extinguishes any Section 1983 due process claim that might arise from Defendants' alleged suppression of exculpatory evidence."). Relatedly, the only timing requirement for disclosure of *Brady* material is that it "must be disclosed in time for its effective use at trial," *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001), and "[t]here is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial," *id.* at 144. Here, Plaintiff was not convicted, nor did she have a trial in either case, because both sets of charges were dismissed before trial. (AC ¶¶ 70, 74.) Thus, Plaintiff cannot show either that Zitt, in prosecuting Plaintiff,

49

had an obligation to disclose the alleged *Brady* material, or that Plaintiff was prejudiced by the failure to disclose it. *See Brown v. Vill. of Endicott*, No. 21-CV-1186, 2025 WL 863105, at *35 (N.D.N.Y. Mar. 19, 2025) (dismissing plaintiff's § 1983 Brady claim where indictment was dismissed and, as a result, "the purpose of *Brady's* requirements was not triggered").[21]

Accordingly, Count Thirteen is dismissed.

### 5.      Counts Fourteen, Fifteen & Sixteen

Count Fourteen asserts a claim for malicious prosecution against Zitt for his actions in initiating a second prosecution against Plaintiff without probable cause. (AC ¶¶ 270-74.) Similarly, Count Fifteen purports to assert a claim for malicious prosecution against all named defendants in their individual and official capacities, but the only conduct alleged to have violated Plaintiff's rights was Zitt's initiating the second prosecution against Plaintiff. (*See id.* ¶ 278.) Both claims are duplicative of the claim asserted in Count Eleven, which I have already dismissed. Additionally, Count Sixteen purports to assert a claim for malicious prosecution against all named defendants, but the conduct alleged to have violated Plaintiff's rights is that of Defendants Gordon and Zitt in initiating two prosecutions against Plaintiff and failing to appoint a neutral special prosecutor. (*See id.* ¶¶ 285-96.) Thus, this claim is duplicative of Counts Ten and Eleven.

---

[21] In addition, to the extent Plaintiff asserts this claim against the remaining Defendants, it must be dismissed as Plaintiff has failed to plead their personal involvement. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). "Therefore, to state a claim under Section 1983 against government officials, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the constitution." *Johnson v. City of Newburgh*, 690 F. Supp. 3d 224, 238 (S.D.N.Y. 2023). Plaintiff only alleges in her AC that Defendant Zitt refused to disclose the material. She does not allege any facts that render it plausible that any of the other Defendants were personally involved.

To the extent that Plaintiff believes that these claims are distinct because she also alleges that Zitt's conduct violated New York Rule of Professional Conduct 3.8 and Disciplinary Rule 7-105(A), and that Zitt's and Gordon's failure to appoint a special prosecutor violated other ethical rules, such allegations are "irrelevant" because "it is the nature of the act and not the impropriety of the act that matters" when determining the applicability of absolute immunity,[22] *see Napolitano v. Saltzman*, 315 F. App'x 351, 352 (2d Cir. 2009) (summary order), and because such violations are not actionable under § 1983, *see Hendricks v. Utica Pub. Defs.*, No. 23-CV-431, 2023 WL 3344236, at *3 (N.D.N.Y. May 10, 2023) ("[V]iolations of attorney rules of professional conduct or state ethical rules or guidelines for attorneys do not form a basis of a constitutional claim . . . ."), *report and recommendation adopted*, 2023 WL 6356645 (N.D.N.Y. Sept. 29, 2023); *see also White v. Renzi*, No. 22-CV-370, 2022 WL 3646825, at *12 (N.D.N.Y. Aug. 24, 2022) (dismissing claim under ethical rules and regulations because they do not create any private rights of action), *aff'd*, 2023 WL 6205957 (2d Cir. Sept. 25, 2023) (summary order).[23]

---

[22] Although Plaintiff argues that the failure to appoint a special prosecutor is not a protected function to which immunity applies, (P's Opp. at 41), Plaintiff cites no authority for that proposition and does not explain why the conduct is administrative rather than prosecutorial. It seems to the Court that the decision whether to appoint a special prosecutor is a prosecutorial function protected by absolute immunity. *See Roper v. Hynes*, No. 05-CV-7664, 2006 WL 2773032, at *6 (S.D.N.Y. Sept. 27, 2006) ("Absolute prosecutorial immunity therefore bars [Plaintiff's] claims against [defendant district attorney] to the extent they involve conduct associated with the decision to prosecute, such as issuing a subpoena and appointing a Special Prosecutor.").

[23] Although Count Sixteen alleges a violation of Plaintiff's First Amendment rights, Plaintiff did not address Defendants' argument with respect to the First Amendment claim in her opposition, and thus she has abandoned that claim. *See Romeo & Juliette Laser Hair Removal, Inc.*, 2014 WL 4723299, at *7. In any event, she does not allege facts rendering it plausible that the failure to appoint a special prosecutor violated her rights. Although Plaintiff alleges that the appointment of a special prosecutor was "**required under the law and** ethical rules **governing prosecutorial conduct**," (AC ¶ 286) (emphasis in original), she points only to ethical rules, (*id.*

Further, although Counts Fifteen and Sixteen are asserted against all Defendants, Plaintiff failed to plead personal involvement of any Defendant other than Zitt and Gordon.  Although Plaintiff alleges that all the "Defendants acted in concert and coordination in furtherance of this malicious and retaliatory agenda," (AC ¶ 280), Plaintiff does not allege any specific conduct, and these conclusory allegations do not suffice to state a claim against the other Defendants.  And, in any case, for the reasons explained above, Plaintiff's malicious prosecution claim fails on the merits.

Accordingly, Counts Fourteen, Fifteen, and Sixteen are dismissed.

### 6. Count Seventeen

Plaintiff asserts a claim for civil conspiracy against all Defendants, alleging that they "engaged in a sustained and unlawful course of conduct with the collective intent to deprive the Plaintiff of her constitutionally protected property rights, subject her to harassment, and degrade her standing and dignity as a property owner and citizen." (AC ¶ 297.)  To support her claim, Plaintiff alleges Defendants intentionally denied her permits and filed and refiled baseless prosecutions against her.  (*Id.* ¶ 302.)

"To prove a § 1983 conspiracy, a plaintiff must show:  (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 363 (S.D.N.Y. 2017).  Additionally, "[a] § 1983 conspiracy claim must be based on an underlying violation of one or more constitutional rights."

---

¶ 287).  She provides no authority for the proposition that there is a constitutional obligation to appoint a special prosecutor when the defendant creates a conflict by filing notices of claim or grievances against the prosecutor.

*One Barberry Real Est. Holding, LLC v. Maturo*, No. 17-CV-985, 2021 WL 4430599, at \*21 (D. Conn. Sept. 27, 2021).  Because Plaintiff has failed to state a claim on all underlying substantive violations, the civil conspiracy claim also fails.  *See Bell v. Smith*, No. 17-CV-1357, 2018 WL 11219949, at \*2 (N.D.N.Y. June 21, 2018) ("Because the amended complaint fails to state an underlying claim for relief under Section 1983, [plaintiff] cannot proceed with a claim for conspiracy to violate his constitutional rights."); *DeStefano v. Duncanson*, No. 08-CV-3419, 2011 WL 651452, at \*4 (S.D.N.Y. Feb. 10, 2011) ("Having dismissed Plaintiff's § 1983 substantive claim, his related conspiracy claim must also be dismissed."); *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at \*24 (N.D.N.Y. Feb. 3, 2009) (no conspiracy claim where all defendants were immune from suit and there was no constitutional violation because there was probable cause), *reconsideration denied*, 2009 WL 2567781 (N.D.N.Y. Aug. 17, 2009).

Accordingly, Count Seventeen is dismissed.

### 7.    **Count Eighteen**

Plaintiff also asserts a claim for malicious prosecution and violation of her due process rights based on Zitt's and Gordon's failure to disclose "controlling legal precedent directly relevant to Plaintiff's case . . . which contradicted the legal arguments advanced in their submissions to the court."  (AC ¶ 309.)  Plaintiff alleges this conduct violated New York Rule of Professional Conduct 3.3.  (*Id.* ¶ 310.)

As explained, a violation of an ethical rule is not actionable under § 1983 and cannot alone support Plaintiff's due process claim.  *See Hendricks*, 2023 WL 3344236, at \*3 ("[V]iolations of attorney rules of professional conduct or state ethical rules or guidelines for attorneys do not form a basis of a constitutional claim . . . .").  Plaintiff did not provide any case law establishing that the failure to provide legal precedent to the court otherwise constitutes a

due process violation, and the Court has found none.  Moreover, the "precedent" to which

Plaintiff refers is a 2017 continuing legal education document produced by Gordon's and Zitt's

law firm, (AC ¶¶ 308-09; ECF No. 41-13), which hardly constitutes "precedent" even under the

ethical rules.  To the extent that Plaintiff argues this "precedent" shows that the prosecutions that

Gordon and Zitt pursued against her were baseless, (AC ¶¶ 310, 312), Gordon and Zitt are, as

discussed, absolutely immune for their conduct in pursuing the prosecutions against Plaintiff, and

Plaintiff fails to state a claim for malicious prosecution.

Accordingly, Count Eighteen is dismissed.

**L.      Municipal Liability under *Monell***

Finally, Plaintiff asserts several claims against the Town explicitly, alleges that the Town

was acting in concert with the other Defendants on many of her other claims, and asserts claims

against town officials in their official capacities, which are construed as claims against the Town.

*See Kendrick v. Town of Winchester/City of Winsted*, 11 F. Supp. 2d 212, 215 (D. Conn. 1998)

("[I]n official capacity suits, the real party in interest is the government entity or municipality,

and not the officer himself.").

"Congress did not intend municipalities to be held liable [under § 1983] unless action

pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v.*

*Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).  Under *Monell*, to state a claim

against a municipality under § 1983 based on the acts of a public official, "a plaintiff is required

to prove:  (1) actions taken under color of law; (2) deprivation of a constitutional or statutory

right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the

constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*,

436 U.S. at 690-91).  To satisfy the fifth element, a plaintiff may assert:

54

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at \*15 (S.D.N.Y. Jan. 24, 2013), *aff'd*,

751 F.3d 78 (2d Cir. 2014).

Any immunity that would cover the individual defendants, like the absolute immunity

applicable to Gordon and Zitt, does not shield the Town from suit. *See Lore v. City of Syracuse*,

670 F.3d 127, 164 (2d Cir. 2012) ("'[M]unicipalities have no immunity from damages for

liability flowing from their constitutional violations.'") (quoting *Owen v. City of Indep., Mo.*, 445

U.S. 622, 657 (1980)). Thus, even though I dismissed the claims asserted against Gordon and

Zitt on the basis of absolute immunity, that alone does not extinguish the claims against the

Town. *See Garcia v. Bloomberg*, No. 11-CV-6957, 2015 WL 5444122, at \*2 (S.D.N.Y. Sept.

10, 2015) ("A plaintiff may assert municipal liability claims under *Monell* even if individual

municipal actors are entitled to qualified immunity."), *aff'd*, 662 F. App'x 50 (2d Cir. 2016)

(summary order).

But there can be no *Monell* liability where the underlying constitutional claims do not

survive. *See Yousef v. County of Westchester*, No. 19-CV-1737, 2020 WL 2037177, at \*10

(S.D.N.Y. Apr. 28, 2020); *see also Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013)

("Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort

in violation of federal law committed by the municipal actors."). Here, as explained above, not

only are the Town's officials immune from suit for their actions, but Plaintiff has also failed to

state a claim for any constitutional violation for other reasons. Therefore, because no underlying

constitutional claims survive on the merits, there is no underlying claim against the Town for which it could be liable, and Plaintiff's *Monell* claim fails. *See Mastromonaco v. County of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) ("It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation.") (summary order); *Rakchi v. City of N.Y.*, No. 24-CV-1312, 2025 WL 2711237, at *4 (E.D.N.Y. Sept. 22, 2025) (no *Monell* claims premised upon substantive due process violation where court found plaintiff failed to state claim for such violation); *Oquendo v. City of N.Y.*, 492 F. Supp. 3d 20, 32 (E.D.N.Y. 2020) (dismissing plaintiff's *Monell* claim on motion to dismiss where there was no constitutional violation); *Yousef*, 2020 WL 2037177, at *10 (no need to address *Monell* liability because underlying claim did not survive).[24]

Accordingly, all claims against the Town are dismissed.

## IV.    LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended her complaint once, (ECF No. 41), after having the benefit of Defendants' pre-motion letter, (ECF No. 16), and the discussion at the pre-motion conference, (*see* Minute Entry dated May 30, 2025). In general, a plaintiff's failure to fix deficiencies in the

---

[24] Additionally, because I dismissed Plaintiff's claims on other grounds, I need not address Defendants' qualified immunity argument as to Defendant Ciraco. (*See* Ds' Mem. at 24-25.)

previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *see also Baines v. Nature's Bounty (NY), Inc.*, No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of discretion in denying leave to amend where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 n.2 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this decision. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [she] fails to specify . . . how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication

57

as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendants'] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V.      CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 44), and close the case.

**SO ORDERED.**

Dated:   January 13, 2026
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

58

SPA-58

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
MELANIE HAMMER,

                                   Plaintiff,

        - against -

TOWN OF BEDFORD NEW YORK, DEPARTMENT
OF BUILDING BEDFORD NEW YORK, ZONING
BOARD OF APPEALS BEDFORD NEW YORK,
BUILDING INSPECTOR TOWN OF BEDFORD NEW
YORK (ALBERT CIRACO), ATTORNEY FOR THE
TOWN OF BEDFORD NEW YORK (ERIC GORDON,
ESQ. & ROBERT ZITT, ESQ.),

                                   Defendants.
-----------------------------------------------------------------------x

**OPINION & ORDER**

No. 25-CV-2618 (CS)

Appearances:

Melanie Hammer
Brooklyn, New York
*Pro Se Plaintiff*

Gerald S. Smith
Silverman & Associates
White Plains, New York
*Counsel for Defendants*

Seibel, J.

        Before the Court are Plaintiff's motions to vacate pursuant to Federal Rule of Civil

Procedure 60(b), (ECF No. 67), and for *in camera* review, (ECF No. 69).  For the following

reasons, Plaintiff's motions are DENIED.[1]

---

[1] On January 23, 2026, the same day she filed her motion to vacate, Plaintiff also filed a
notice of appeal.  (*See* ECF No. 68.)  A district court may consider a motion under Rule 60(b)
while an appeal is pending pursuant to Federal Rule of Civil Procedure 62.1, which provides that
a court may:  "(1) defer considering the motion; (2) deny the motion; or (3) state either that it
would grant the motion if the court of appeals remands for that purpose or that the motion raises

## I.    BACKGROUND

The Court assumes familiarity with the facts and procedural history of the case, as set forth in its January 13, 2026 Opinion & Order on Defendants' motion to dismiss.  *See Hammer v. Town of Bedford*, No. 25-CV-2618, 2026 WL 100793 (S.D.N.Y. Jan. 13, 2026) (the "Opinion").  In short, on March 27, 2025, Plaintiff Melanie Hammer filed suit against the Town of Bedford, New York (the "Town"); the Town's Department of Buildings; the Town's Zoning Board of Appeals ("ZBA"); the Town's Building Inspector, Albert Ciraco; and Town Attorneys Eric Gordon and Robert Zitt, alleging a conspiracy among Defendants to deprive Plaintiff of her constitutional rights under 42 U.S.C. § 1983.  (ECF No. 1.)  Specifically, Plaintiff alleged that Defendants conspired to deprive her of her property rights in a residential apartment built above a garage on her property in the Town (the "Structure"), and that they did so by issuing Notices of Violations, denying her applications for construction permits, denying her request for a use variance, erroneously interpreting the Town Code, and initiating criminal proceedings against her in Town Court, among other things.  (*See generally* ECF Nos. 1, 41.)

On January 13, 2026, I granted Defendants' motion to dismiss Plaintiff's Amended Complaint, (ECF No. 41 ("AC")).  *See generally Hammer*, 2026 WL 100793.  On January 23, 2026, Plaintiff filed her motion seeking relief from judgment under Federal Rules of Civil Procedure ("FRCP") 60(b)(2), 60(b)(3), and 60(b)(6).  (ECF No. 67.)  The following day,

---

a substantial issue."  Fed. R. Civ. P. 62.1(a); *see* Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment – but before it disposes of any motion listed in Rule 4(a)(4)(A) [which includes a motion under Rule 60] – the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."); *Palladino v. JP Morgan Chase & Co.*, 807 F. Supp. 3d 163, 170-71 (E.D.N.Y. 2025) (court had jurisdiction to deny Rule 60(b) motion after it granted motion to dismiss even though the plaintiff had also filed a notice of appeal at same time).  Accordingly, I have jurisdiction to consider and deny Plaintiff's motions.

SPA-60

Plaintiff filed a motion for *in camera* review of the redactions within an 800-page Freedom of Information Law ("FOIL") production she received from the Town, in case the Court was concerned "whether its prior decision rested on a complete and accurate factual record."  (ECF No. 69.)

## II.    LEGAL STANDARD

"Rule 60 concerns relief from a final judgment, order or proceeding . . . ."  *Shekhem El v. Hiller*, No. 24-CV-730, 2026 WL 579193, at *1 (S.D.N.Y. Feb. 27, 2026).[2]  Rule 60(b) provides, in pertinent part, that a court may, in its discretion, provide such relief "'for the following reasons:  (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)' or '(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.'"  *TAL Props. of Pomona, LLC v. Village of Pomona*, No. 17-CV-2928, 2019 WL 3287983, at *5 (S.D.N.Y. July 22, 2019) (quoting Fed. R. Civ. P. 60(b)).  The Rule also permits courts to relieve a party for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Rule 60(b)(2) and 60(b)(3) motions must be made "no more than a year after the entry of the judgment or order or the date of the proceeding," and all motions under Rule 60(b) "must be made within a reasonable time."  Fed. R. Civ. P. 60(c)(1).

"Rule 60 is intended to preserve 'a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time.'"  *Lewis v. Newburgh Hous. Auth.*, No. 11-CV-3194, 2022 WL 17177967, at *4 (S.D.N.Y. Nov. 23, 2022) (quoting *Am. Tissue, Inc. v. Arthur Andersen L.L.P.*, No. 02-CV-7751, 2005 WL 712201, at *2 (S.D.N.Y. Mar.

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, alterations and footnotes.

28, 2005)). In striking this balance, "'a motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances.'" *Blinkoff v. City of Torrington*, No. 21-CV-1516, 2025 WL 2532707, at *1 (D. Conn. Sept. 3, 2025) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001)), *appeal filed*, No. 25-2345 (2d Cir. Sept. 29, 2025). The party seeking relief from the prior judgment has the burden of proof, *see Int'l Bhd. of Teamsters*, 247 F.3d at 391, and the standard that party must meet is onerous, *see Waske v. Lehman Bros. Holdings Inc.*, No. 20-CV-5083, 2023 WL 348135, at *1 (S.D.N.Y. Jan. 19, 2023). Rule 60 "is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Edwards v. Rochester Inst. of Tech.*, No. 10-CV-6553, 2018 WL 3017094, at *1 (W.D.N.Y. June 18, 2018) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012)).

## III.   DISCUSSION

### A.   Rule 60(b)(2)

Plaintiff argues that newly discovered evidence undermines several bases for the Court's dismissal of the AC. (*See* ECF No. 67-2 ("P's Mem.") at 2-3, 6-22.) Specifically, Plaintiff argues that newly discovered evidence: (1) undermines the Court's finding that the Town's attorneys were entitled to absolute immunity, (*id.* at 2-3, 8-9, 16-17); (2) undermines the Court's finding that Plaintiff had a full and fair opportunity to litigate the issues in the prior proceedings and thus that collateral estoppel applied and Plaintiff received due process, (*id.* at 10-13); (3) establishes that she had a constitutionally protected property interest and thus undermines the Court's dismissal of Plaintiff's due process and takings claims, (*id.* at 13-16); and (4) supports municipal liability under *Monell*, (*id.* at 17-22).

4

"Rule 60(b)(2) authorizes a court to relieve parties from judgments in the face of newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." *Castro v. Bank of N.Y. Mellon*, 852 F. App'x 25, 29 (2d Cir. 2021) (summary order).

> According to Rule 60(b)(2), a movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Shekhem El*, 2026 WL 579193, at *2; *see Castro*, 852 F. App'x at 29.

### 1.    Absolute Immunity

I begin with Plaintiff's argument that newly discovered emails undermine the Court's finding of absolute immunity. Plaintiff argues that emails produced via FOIL after the completion of briefing on the motion to dismiss demonstrate that the Town Attorneys acted in an administrative and investigative capacity, because these emails show, among other things, that Defendant Gordon drafted the ZBA's resolution and that he and Defendant Zitt "participat[ed] in shaping the factual and procedural framework of zoning proceedings before any criminal prosecution commenced." (P's Mem. at 8-9, 16-17.) Defendants argue that the documents Plaintiff cites have no relation to the claims that the Court dismissed on absolute immunity grounds. (ECF No. 78 ("Ds' Opp.") at 12-13.)

I agree with Defendants. The Court dismissed on absolute immunity grounds Counts Ten through Sixteen in Plaintiff's AC. Counts Ten, Eleven, Fourteen, Fifteen, and Sixteen all asserted malicious prosecution claims against Gordon and Zitt. (*See* AC at 48-56, 60-67.) As explained in the Opinion, Plaintiff based her malicious prosecution claims on allegations that Defendants initiated prosecutions against her in Town Justice Court despite the lack of probable

5

cause, caused a summons to be served upon her, and personally arraigned her. *See Hammer*, 2026 WL 100793, at \*18-19, 23-24. (*See* AC ¶¶ 222-23, 226-27, 241, 245, 248, 270-74, 278, 285-96.) Similarly, Count Twelve alleged that Zitt violated Plaintiff's Sixth Amendment right to a speedy trial and her Fourteenth Amendment due process rights by filing a second criminal prosecution against her after the statutory speedy trial period for the first prosecution had expired, (AC ¶ 254), and Count Thirteen alleged he violated her due process rights by failing to disclose *Brady* material during the criminal proceedings, (*id.* ¶¶ 264-69). Thus, Plaintiff did not base her malicious prosecution, speedy trial or *Brady* claims on conduct that occurred outside of the criminal proceedings in Town Justice Court. Accordingly, even if the newly discovered emails show that Gordon and Zitt engaged in non-prosecutorial functions in other instances in their capacity as Town Attorneys, including conduct before the ZBA prior to initiating the prosecutions against Plaintiff, this would not change the Court's determination that absolute immunity attached to the conduct of which Plaintiff complained in her AC, which consisted solely of prosecutorial functions.

Additionally, Plaintiff's argument ignores the fact that the Court supplied alternative grounds on which it dismissed Counts Ten through Sixteen, which grounds would not be affected by the emails. In the Opinion, the Court explained that even if the Defendants were not entitled to absolute immunity for their actions, (1) Plaintiff had failed to state a claim for malicious prosecution because she had not plausibly alleged that Defendants' conduct resulted in a constitutionally cognizable, post-arraignment deprivation of liberty implicating her Fourth Amendment rights or that Defendants lacked probable cause, *see Hammer*, 2026 WL 100793, at \*19-21; (2) any constitutional speedy trial claim was baseless because a six-month period is too short to raise a substantial Sixth Amendment issue, *id.* at \*21-22; and (3) any *Brady* claim was

6

meritless because Plaintiff never went to trial and was not convicted, *id.* at *22-23. Even if Gordon and Zitt were not entitled to absolute immunity, the emails would not alter my conclusions as to the merits of these claims.

Similarly, to the extent that Plaintiff seeks to use this evidence to assert her claims against Zitt and Gordon on new grounds, that is impermissible, *Edwards*, 2018 WL 3017094, at *1 (Rule 60 not a vehicle for presenting case on new theories), and, in any event, these claims would still fail. Plaintiff highlights that Gordon drafted and circulated the ZBA resolution that denied Plaintiff's application for a use variance, (P's Mem. at 8), but such conduct would hardly qualify as malicious prosecution. To state a claim for malicious prosecution under § 1983, a plaintiff must plausibly allege the following elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 263 (E.D.N.Y. Mar. 31, 2015), *reconsideration denied*, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), *aff'd*, 678 F. App'x 17 (2d Cir. 2017) (summary order). Although Plaintiff suggests that a ZBA hearing is a "quasi-judicial hearing," (P's Mem. at 2), she does not seriously contend that such a hearing is a criminal proceeding or that drafting a resolution denying a variance application constitutes initiating a criminal proceeding. Nor could she seriously contend that the speedy trial clause or the *Brady* decision apply to ZBA proceedings or that those proceedings terminated in her favor. Thus, even if Plaintiff could change theories at this stage, no viable malicious prosecution claim could be brought based on the attorneys' assistance to the ZBA.

Thus, because the emails would not have changed the outcome on Counts Ten through Sixteen, they do not warrant relief under Rule 60(b)(2).

SPA-65

## 2. Full and Fair Opportunity to Litigate

Plaintiff also argues that newly discovered evidence in the form of building and property records calls into question the Court's finding that Plaintiff received a full and fair opportunity to litigate her claims, such that collateral estoppel applied to bar them. This is so, she contends, because the residential characterization of the Structure in the records was not disclosed in the prior proceedings, (P's Mem. at 11), and that characterization is material because it pre-dated the enactment of the Town Code, such that her residential use of the Structure should have been considered a lawful pre-existing, non-conforming use, (ECF No. 80 ("P's Reply") at 8-9). Plaintiff also argues that new evidence of "off-record communications" between the Town Attorney and ZBA undermines the Court's conclusion that the ZBA proceedings and subsequent Article 78 proceedings were fair and constituted a meaningful opportunity to be heard. (P's Mem. at 11-12.) Defendant argues that the documents have no relevance to the Court's ruling on Plaintiff's procedural due process claims, that Plaintiff already possessed the documents or only recently requested them from the Town, and that the arguments are duplicative of the allegations in her AC. (Ds' Opp. at 14.)

### a. Documents Regarding Residential Use

Beginning with Plaintiff's argument that the Town failed to disclose evidence showing that it had previously characterized the Structure at issue as "residential," Plaintiff's Rule 60(b)(2) motion fails because this evidence is not "new," could have been obtained with due diligence, does not show that the Town regarded the Structure as residential, and does not authorize that use. Plaintiff points to the following documents: (1) a survey/map of Plaintiff's property from October 29, 1987 that describes the Structure as a "1 story frame residence over garage," (ECF No. 80-1 at 7); (2) an electrical inspection certification dated June 26, 2012 that

8

describes the Structure as "Residential occupancy," (ECF No. 67-10); (3) a Certificate of Occupancy for a "Two-car garage" dated April 4, 2012, (ECF No. 80-2 at 2); (4) a survey/map of Plaintiff's property prepared by her architect, dated May 30, 2023, that incorporates the survey/map described in item (1) above, (*id.* at 3); (5) an application for a certificate of compliance dated July 26, 1988, that describes the buildings on the lot as "one family residence[s]," (*id.* at 4); (6) a letter to the Town Building Inspector dated July 10, 2014 regarding a smoke/carbon monoxide detector in the "recreation room," (*id.* at 5); (7) a Certificate of Workers' Compensation Insurance dated April 29, 1988, attaching a portion of the same survey/map described in item (1) and an application for a building permit from May 5, 1988, (ECF No. 67-8; ECF No. 80-2 at 6-7); (8) the same survey/map of Plaintiff's property stamped as received in the Town Building Department on August 30, 2000, (ECF No. 67-8 at 3; ECF No. 80-2 at 8); (9) an illegible Certificate of Occupancy dated 1973, (ECF No. 80-2 at 9), (10) a Certificate of Occupancy from July 11, 2014 for a "Finished recreation room over garage – already built," (ECF No. 67-11); and (11) sketches of the Structure bearing a Building Department "received" stamp dated June 26, 2012 and on which someone at some time handwrote "kitchen" and "bathroom" on the "game room floor plan," (ECF No. 67-21). (*See* ECF No. 67-1 ¶¶ 4-9.) Plaintiff does not state when she came into possession of any of these documents, except for item (1), which contains one version of the survey/map, is attached to her

9

reply as Exhibit 6, (ECF No. 80-1 at 7),[3] and was produced on February 12, 2026[4] in response to her FOIL request made on January 12, 2026. (*See* P's Reply at 10.)

As for the other documents, she has not shown that they are new, and there is every reason to believe they are not. In arguing that the Town falsely stated in a January 12, 2026 FOIL response that "[t]here is nothing listing the [S]tructure as 'residential' in the building department," (ECF Nos. 67-9, 80-1 at 8), Plaintiff states that she was then already "aware of multiple documents in the Town's own records explicitly characterizing the Structure as 'residential,'" including what she describes in her reply as Exhibits 8-12, (ECF No. 80-2 at 1-5), which are items (2) through (6) above. (P's Reply at 10). She further states that these records prompted her to "review the land survey already in her possession," apparently referring to the survey she provides as Exhibit E in her initial brief and Exhibit 13 in her reply, (ECF Nos. 67-8, 80-2 at 7), which is item (7) above and which she notes was "previously produced by Defendants." (P's Reply at 10.) She does not say when Defendants produced this survey. She also does not state when she came into possession of the documents she lists in her reply as Exhibits 14 and 15, which are items (8) and (9) above, (ECF No. 80-2 at 8-9). (P's Reply at 12.) Nor does she provide any information about Exhibit H, which is item (10) above, (ECF No. 67-

---

[3] In her opening brief, Plaintiff refers to the attached exhibits by letter, but she did not include those letters on the exhibits themselves or include exhibit slips dividing the exhibits in the e-filed version or the electronic courtesy copy she supplied to the Court via email. Similarly, in her reply brief, Plaintiff refers to the attached exhibits by exhibit number, but she did not separately file her exhibits, include exhibit slips dividing the exhibits, or include exhibit numbers on the exhibits themselves. It is thus not always clear to which exhibit she is referring at any given time. Nevertheless, the Court has done its best to determine to which exhibit Plaintiff means to refer, and cites to each exhibit by its Electronic Court Filing ("ECF") number and the page numbers automatically generated by the ECF system.

[4] Plaintiff states that the map was produced on February 13, 2026, (P's Reply at 5, 10), but the FOIL response itself is dated February 12, 2026, (ECF No. 80-1 at 6). The difference is immaterial.

10

11), or Exhibit S, which is item (11) above, (ECF No. 67-21).  Given that it seems from Plaintiff's own statements that she was already in possession of these documents before judgment was entered on January 13, 2026, and without showing when she received them, Plaintiff cannot meet her high burden on a Rule 60(b) motion to show that the evidence is newly discovered.

Plaintiff seems to suggest she received these records in response to a FOIL request. Having previously listed Defendants' various statements to state courts about the illegality of the garage apartment and the need for a use variance, (P's Reply at 4), she states that "subsequent FOIL productions revealed [that Defendants] had" "ma[de] explicit misrepresentations to the courts regarding the [S]tructure's legality and history of residential use," (*id*. at 11).  She does not say when after the state court litigation she made these requests – that case ended when the Second Department issued its opinion on Plaintiff's appeal in October 2025, *see Hammer v. Town of Bedford*, 240 N.Y.S.3d 204 (2025) – but has provided documentation showing she made FOIL requests in June 2025, December 2025 and January 2026, (*see* ECF Nos. 67-4, 67-15, 80-1 at 8, 80-1 at 6).  To the extent that Plaintiff suggests she received these records in response to her June 2025 FOIL request, (*see* P's Mem. at 1-2; ECF No. 67-1 ¶ 33), that request sought materials generated or received from April 1, 2023 to the present and specifically stated that it was not seeking public court filings or the building department file itself, (ECF No. 67-4).  Thus, it is unlikely that she would have received any of the above-listed eleven documents (except perhaps item (4), the 2023 survey/map which she surely already had, as it was prepared by her own architect) in response to that request.  Plaintiff submitted another FOIL request on December 21, 2025, in which she requested records reflecting the residential classification of the property. (ECF No. 80-1 at 8.)  But she could not have received these records in response to that request

11

because the Town represented that there were "no documents responsive to this request."  (*Id.*)

She then again requested documents relating to the Structure in January 2026.  (ECF No. 80-1 at

6.)  In that request, Plaintiff stated that her property was "identified in multiple Town records as

a '1-story residence over garage,'" (*id.*), and thus she must have had those records before that

date.

     In short, even if these records were obtained in response to a FOIL request, Plaintiff did

not seek building and property records from the Town via FOIL until December 21, 2025, which

was more than nine months after Plaintiff commenced this litigation, more than six months after

Plaintiff filed her AC, and more than four months after the briefing on the motion to dismiss

closed.  Plaintiff offers no reason why she did not seek these specific records sooner, and her

failure to do so prevents her from arguing she exercised due diligence and was justifiably

ignorant.  *See Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1180-81

(10th Cir. 1983) (*en banc*) (60(b)(2) movant had not exercised due diligence because the new

evidence could have been discovered earlier had plaintiff promptly filed formal Freedom of

Information Act requests); *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, No. 06-CV-5033, 2012

WL 3577995, at *3 (S.D.N.Y. Aug. 16, 2012) (documents obtained via a FOIA request could not

be considered new where they were readily discoverable with reasonable diligence), *aff'd sub*

*nom. Colucci v. Beth Israel Med. Ctr.*, 531 F. App'x 118 (2d Cir. 2013); *United States v. All*

*Right, Title & Int. In Prop. & Premises Known As 710 Main St.*, 753 F. Supp. 121, 127

(S.D.N.Y. 1990) (denying rule 60(b)(2) motion because government failed to show it could not

have found evidence earlier had it exercised due diligence where evidence had been in

possession of municipality as public document since before case was filed).  In other words,

because the building and property records on which Plaintiff now relies are public records, they

cannot be considered newly discovered evidence. *See Ramos v. Matke Realty, Ltd.*, No. 98-CV-3582, 1999 WL 61437, at *3 (S.D.N.Y. Feb. 4, 1999) (records of lead paint violations in plaintiff's building could not be considered newly discovered evidence because "[e]vidence that is contained in the public records at the time of the initial judgment cannot be considered newly discovered evidence"); *Int'l Ctr. for Tech. Assessment v. Leavitt*, 468 F. Supp. 2d 200, 207 (D.D.C. 2007) ("Publicly available information cannot constitute newly discovered evidence.").

Plaintiff argues she sought records from the Town as early as January 2024, (P's Reply at 18), but that attempt was not a FOIL request. Rather, it was a discovery request made to the court in her Article 78 proceeding, to which Defendants had no duty to respond absent a court order. (ECF No. 67-13; *see* ECF No. 45-2 at 8-9 (denying Plaintiff's request for discovery).) Further, at that time, Plaintiff only requested communications between the respondents, and between respondents and her former tenant and the tenant's family. (ECF No. 67-13.) She did not request building or property records. (*Id.*) Her requests in September and October 2024 were emails to the court in her criminal case and seem to relate to material redacted from the prosecution's discovery. (ECF No. 67-14; *see* ECF No. 67-3 at 2 (describing request from September as "seeking internal emails").)[5] Both the Article 78 and criminal cases were dismissed without the court ordering Defendants to respond to Plaintiff's discovery requests. (*See* ECF No. 45-2 at 8-9; ECF No. 1-5.) Thus, from these dismissals, Plaintiff would have been aware that she would not receive the discovery she sought in those proceedings and that she

---

[5] Even though Plaintiff requested *Brady* material in her criminal case, the Town was, as explained in the Opinion, under no obligation to produce such material at that stage of the case, *see Hammer*, 2026 WL 100793, at *22; *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001) (only timing requirement for disclosure of *Brady* material is disclosure in time for effective use at trial), and it is possible – even likely – that the Town did not produce the emails in response to her request because they do not constitute *Brady* material.

would need to seek it through other means. Considering that the Article 78 judge issued his decision denying her discovery request on February 9, 2024, (ECF No. 45-2 at 9), and her criminal case was dismissed the second time on November 11, 2024, (ECF No. 1-5 at 3), Plaintiff had ample time before she filed this action in March 2025 and amended in June 2025 to seek the records via a FOIL request. Thus, Plaintiff's efforts in her other cases do not demonstrate her due diligence in attempting to obtain the records she now claims are newly discovered.

Moreover, Plaintiff's Exhibit I, (ECF No. 67-12), on which Plaintiff relies for her argument that the Town withheld material, (*see* ECF No. 67-3 at 2; P's Reply at 17-18), shows that on or before September 18, 2024, the Town Attorney produced in the criminal case, among other things, the "Town of Bedford Building Department File." It thus appears that Plaintiff was in possession of the documents at issue months before she filed this lawsuit, and that they are not at all new.

Further, even if they were new, the records do not show that the Town, rather than third parties, characterized the Structure as residential. The FOIL response says that "[t]here is nothing listing the [S]tructure as 'residential' in the building department." (ECF Nos. 67-9, 80-1 at 8.) Some of the documents to which Plaintiff points as contradicting that statement may have been found in Building Department files – Plaintiff does not make clear which ones, but some are stamped "received" by that Department, (*see, e.g.*, ECF No. 80-2 at 8) – but none of them constitute a determination by the Building Department. In item (1) above, (ECF No. 80-1 at 7), it is the surveyor who describes the Structure as having a "residence over garage," and that same survey is incorporated in items (4), (7) and (8), (ECF Nos. 80-2 at 3, 80-2 at 6-7, 67-8 at 3, 80-2 at 8). In item (2), (ECF No. 67-10), it is a private electrical inspector who describes the premises

14

as "Residential occupancy." The Court is baffled by Plaintiff's reliance on items (3), (ECF No. 80-2 at 2), and (10), (ECF No. 67-11), which are indeed determinations by the Building Department, but give authority to occupy or use the "[t]wo-car garage" and "[f]inished recreation room over garage," not an apartment. Item (5), (ECF No. 80-2 at 4), is an application by a prior owner. The Court is also baffled by Plaintiff's reliance on item (6), (*id.* at 5), which says the smoke/carbon monoxide detector was "installed in the recreation room." Item (9), (*id.* at 9), has no content, and item (11), (ECF No. 67-21), has no even arguable relevance in the absence of information about when and by whom the handwritten notations were affixed, which Plaintiff does not provide.[6] None of these documents suggest that the Building Department approved the use of the space over Plaintiff's garage as a residence, and thus it is far from clear that the January 12, 2026 FOIL response is false. But even if it is, by Plaintiff's own account she already knew of the allegedly contradictory documents, and it is in any event hard to imagine how a false statement in January 2026, responding to a FOIL request from December 2025, could have any effect on a motion to dismiss that was fully briefed in August 2025 and addressed an Amended Complaint filed in June 2025.

Finally, even if the documents were newly discovered, and even if Plaintiff were correct that they show that the use of the space above the garage as an apartment was a pre-Town Code, permit-era, lawful non-conforming use that was grandfathered in because it was "recognized" by the Town, (P's Reply at 7, 10-13; *see* P's Mem. at 13-14), it appears that that use ceased to be legal in 2014, as set forth in Part III.B below.

---

[6] For example, if a building department employee made the notations as part of the Town's dispute with Plaintiff beginning in or about 2023, (*see* AC ¶¶ 18-22), they would hardly reflect any "characterization" of the Structure, let alone the Town's.

15

In short, the building department documents to which Plaintiff points provide no reason to disturb the Court's prior ruling under Rule 60(b)(2).

### b.    Alleged "Off-Record" Communications

Turning to Plaintiff's second argument, Plaintiff's contention that the emails between the ZBA and its attorney constitute *ex parte* communications, (P's Mem. at 8 n.9; *see* P's Reply at 11-12), is preposterous.  *Ex parte* communications are defined as "contacts between the adjudicator and an interested party, of which the other party is unaware."  *See William Jefferson & Co. v. Bd. of Assessment & Appeals No. 3 ex rel. Orange Cnty.*, 695 F.3d 960, 966 (9th Cir. 2012) (citing Black's Law Dictionary 657 (9th ed. 2009)).  Here, Gordon was not counsel to a party appearing before the ZBA; rather, as Town Attorney, Gordon was the ZBA's attorney and legal advisor.  Thus, emails between Gordon and the ZBA do not constitute improper *ex parte* communications.  *See William Jefferson & Co.*, 695 F.3d at 966 (communications between board and counsel for county were not *ex parte* where counsel did not represent any party to plaintiff's appeal but rather was board's legal advisor).  Consequently, these communications would not support a procedural due process claim.  *See id.*

Plaintiff's suggestion that Gordon was an interested party who communicated with the adjudicator, the ZBA, (P's Mem. at 12), is nonsensical.  Plaintiff alleges that Gordon sent the ZBA a draft of the written resolution denying Plaintiff's application on November 30, 2023, the day after Plaintiff named him as a respondent in her Article 78 petition.  (P's Mem. at 8.)[7]  She seems to suggest that Gordon became an interested party by virtue of her suing him, and thus that his communications with the ZBA were improper after that point.  If that were so, anybody could

---

[7] Although Plaintiff alleges Gordon sent the draft resolution on November 30, 2023, (P's Mem. at 8), the email is actually dated December 1, 2023.  (*See* ECF No. 67-22.)  But again, the difference is immaterial.

16

force an opposing party to fire the lawyer of their choice just by naming that lawyer in a lawsuit. In any event, Plaintiff suing Gordon may have made him an interested party in the Article 78 proceeding, but not in any adjudication being considered by the ZBA. The Article 78 petition did not alter Gordon's role as counsel to the ZBA, nor did it render his communications with his own client *ex parte*. Additionally, the ZBA had already denied Plaintiff's application at the hearing on November 2, 2023, (AC ¶¶ 36, 38), which necessarily occurred before she could file her Article 78 petition, (*see id.* ¶ 39). The Court does not see how drafting a written version of a decision already rendered would be improper or suggests a retaliatory motive (even assuming Gordon was aware that Plaintiff had named him in the petition filed two days before). Further, Plaintiff argues that Gordon's drafting the resolution was improper because it necessarily meant that deliberations were not "confined to the public record." (P's Mem. at 11.) By Plaintiff's logic, every communication between judges and their law clerks while drafting an opinion, or every discussion among the members of a Court of Appeals or the Supreme Court, would render the proceedings unfair and violative of due process if those communications did not also include the parties. That is plainly absurd.

Similarly, although Plaintiff claims that Gordon, by sending the ZBA a memorandum on Plaintiff's application before the November 2 hearing, "crafted a legal reason for the ZBA to deny the Appeal before ever hearing it," (P's Reply at 13), this is pure speculation that cannot satisfy Plaintiff's burden on a Rule 60(b)(2) motion, *see Berg v. Polis*, No. 96-CV-396, 1997 WL 573418, at *2 (N.D. Cal. Sept. 5, 1997) ("Litigation by hunch and speculation is not sufficient under Federal Rule of Civil Procedure 60(b)."). One of the emails shows that Gordon sent the ZBA a confidential memorandum the day before it met on Plaintiff's application, (ECF No. 80-3 at 1), but she has not suggested how or why doing so would be improper. She has provided no

17

case law to support the notion that a Town Attorney cannot provide his client with legal advice and analysis on applications pending before it.  In short, contrary to Plaintiff's belief, any communications between Gordon and the ZBA prior to or after the ZBA hearing do not materially bear on whether the proceedings were fair or whether the ZBA was impartial.

Accordingly, these emails would not change the outcome on Plaintiff's due process claims, nor do they reflect in the slightest on the fairness of the Article 78 proceeding, and thus they do not warrant relief under Rule 60(b)(2).[8]

### 3.    Protected Property Interest

Plaintiff next argues that newly discovered evidence establishes that she has a protected property interest in the apartment above the garage because Town records, including some that pre-date the enactment of the Town Code, describe the Structure as a residence, and therefore the apartment constitutes a lawful, pre-existing, non-conforming use.  (*See* P's Mem. at 13-16.) Defendants argue that the evidence to which Plaintiff refers is not newly discovered because Plaintiff had a version of the 1987 survey before she commenced this litigation.  (Ds' Opp. at 1, 6, 9-10.)  Defendants also argue the documents are cumulative, (*id.* at 8, 11), and are not relevant

---

[8] To the extent that Plaintiff argues that the allegedly false January 12, 2026 FOIL response in which the Town stated that the building department did not have any records that listed the Structure as "residential," (ECF No. 67-9), constitutes newly discovered evidence that warrants relief on her due process claims, (P's Mem. at 12, 15; *see* P's Reply at 15), Plaintiff is incorrect.  The Court dismissed Plaintiff's procedural and substantive due process claims after finding that Plaintiff received constitutionally adequate procedural due process before the ZBA and the Article 78 courts, and was provided a full and fair opportunity to litigate her claims, such that collateral estoppel barred her substantive due process claim. *See Hammer*, 2026 WL 100793, at *9-12.  The FOIL denial, which occurred years after those proceedings, cannot constitute evidence that those proceedings were unfair, and as such does not bear on her due process claims.  Thus, this evidence cannot satisfy the standard under Rule 60(b)(2) because it would not have changed the outcome on those claims.

SPA-76

to the issue that the Court addressed in the Opinion when dismissing the takings claim, (*id.* at 11-12).

As explained above, Plaintiff rests her argument with respect to her protected property interest on several "new" documents, but these documents likely were provided to her in 2024, and in any event Plaintiff has not shown that they are new or could not have been discovered had Plaintiff diligently sought them via a FOIL request.

With respect to the survey/map that described the Structure as "residential" dating back to 1987, Plaintiff argues that she could not determine that it was created in 1987 until she received the map referred to as Exhibit 6 from the Town on February 12, 2026, (ECF No. 80-1 at 6-7) – item (1) above – because this version was the only one in which both the label "residential" and the date were legible, (P's Reply at 5; *see id.* at 10). She further argues that because she did not receive this version until after judgment had been entered, this evidence is newly discovered, (*id.* at 10-11, 15), despite the fact that she had other versions of the map in her possession in 2023, (ECF No. 79-1). But there are two problems with this argument.

First, as discussed above, Plaintiff did not exercise due diligence in attempting to obtain this evidence because she did not submit a FOIL request for these types of records (property or building records) until December 2025. (ECF No 67-9.) *See Malandris*, 703 F.2d at 1180-81 (60(b)(2) movant had not exercised due diligence because the new evidence could have been discovered earlier had plaintiff promptly filed formal Freedom of Information Act requests); *Colucci*, 2012 WL 3577995, at *3 (documents plaintiff eventually received through FOIA were readily discoverable in the public record with reasonable diligence and thus could not be considered new); *All Right*, 753 F. Supp. at 127 (denying rule 60(b)(2) motion where government failed to show it could not have found evidence earlier had it exercised due diligence

19

where evidence had been in possession of municipality as public document since before case was filed); *see also Ramos*, 1999 WL 61437, at *3 ("Evidence that is contained in the public records at the time of the initial judgment cannot be considered newly discovered evidence.").

Second, Plaintiff must have known the date of the map/survey before receiving the latest, "legible" version of the survey because she made the instant motion before she received it. Despite her claim that receiving the map on February 12, 2026 made her realize, "after [she] filed the Rule 60(b) motion," (P's Reply at 10), that her apartment had been described as a residence before the enactment of the Town Code, in Plaintiff's brief filed January 23, 2026 Plaintiff argued that newly discovered evidence, "including a permit-era survey identifying the structure as a residence and other Building Department records reflecting residential classification, demonstrate[s] that the structure was identified and treated by the Town itself as a residential use for decades," and therefore that the apartment constituted a lawful, pre-existing residential use in which she had a vested property right, (P's Mem. at 13). This statement, made before she received the more legible version of the survey, (ECF No. 80-1 at 7), belies any argument that she did not know from the records she already had in her possession that the survey/map had described the Structure as a residence.

Indeed, there can be no dispute that in 2023, well before Plaintiff filed her complaint in this case, she had in her possession at least two versions of that survey/map from which she could easily have pieced together that the document dated back to 1987. (*See* ECF No. 79-1 at 1-3.) Plaintiff submitted in the Article 78 litigation the surveys at ECF No. 80-2 at 7 and ECF No. 80-2 at 8. (*See id.*) I agree with Plaintiff that the writing on the portion of the survey at ECF No. 80-2 at 8 that depicts the Structure was illegible, but the date was not. The date on this survey is not cut off, and states the survey was conducted on October 29, 1987, and the map was

20

completed in November 1987.  (*See* ECF No. 80-2 at 8.)  And, although the date is cut off on the

other version of the map Plaintiff had in her possession, the writing "residence over garage" on

the Structure was legible.  (ECF No. 80-2 at 7.)  The maps are clearly of Plaintiff's property,

which she must have known because she filed them both in 2023 as "[p]roof [that the] [s]tructure

in [q]uestion is [l]egal."  (*See* ECF No. 79-1 at 1-3.)  Thus, with the exercise of due diligence,

Plaintiff could have compared the two maps and determined that the map from 1987 described

the Structure as a one-story frame residence over the garage.[9]  Therefore, even though she did

not receive the most legible version of the survey/map until after judgment was entered, it does

not constitute "newly discovered evidence" and does not warrant relief.  And even if she did not

receive the other records on which she relies until after judgment was entered – which she has

not come close to showing – she could have discovered that the survey dated back to 1987 had

she exercised due diligence, and thus the evidence as a whole is not new.  *See Travelers Cas. &*

*Sur. Co. v. Crow & Sutton Assocs.*, 228 F.R.D. 125, 129 (N.D.N.Y. 2005) ("Evidence is

not newly discovered if it was in the moving party's possession prior to the entry of judgment."),

*aff'd sub nom. Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs., Inc.*, 172 F. App'x 382 (2d

Cir. 2006).

---

[9] Plaintiff states she determined the date of the map by matching a number written on a version of the survey/map that was "previously produced by Defendants" to an unspecified permit number.  (*See* P's Reply at 10-11.)  She may be describing as a "permit" the 1988 Certificate of Workers' Compensation Insurance – item (7) above – which has the same number written on it as the survey/map and seems to have been produced with it.  (*See* ECF No. 80-2 at 6-7).  If so, it was apparent from this "previously produced" document that the map dated from at least 1988.  And even if the permit number to which Plaintiff refers is something else, she does not explain why she did not seek it from the Town before filing her AC and does not explain why she could not have determined the date of the survey/map from the versions she possessed in 2023.

SPA-79

Accordingly, because Plaintiff has not shown and cannot show that the evidence upon which she relies is newly discovered or that she was justifiably ignorant of it despite due diligence, the records describing the garage Structure as "residential" do not warrant relief from the Court's decision regarding her due process or takings claims under Rule 60(b)(2).[10]

### 4.      Municipal Liability

Finally, Plaintiff argues that the newly discovered evidence of the emails among Defendants demonstrates coordinated action against her by Town officials and suggests that their actions were taken pursuant to an established municipal practice or policy, which undermines the Court's decision on her *Monell* claim.  (P's Mem. at 17-18, 20-22.)  Defendants argue that Plaintiff's argument ignores the Court's basis for dismissing her *Monell* claim, and that these emails are cumulative of the allegations made in Plaintiff's AC that the Court assumed as true for the purposes of the motion.  (Ds' Opp. at 14-15.)

Defendants are correct in that I did not dismiss Plaintiff's *Monell* claim because she had not plausibly pleaded a municipal practice or policy, but rather because she had not plausibly pleaded any underlying constitutional violation, and therefore there could be no *Monell* claim. *Hammer*, 2026 WL 100793, at *25-26; *see Mastromonaco v. County of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) ("It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation.") (summary order); *Yousef v. County of Westchester*, No. 19-CV-1737, 2020 WL 2037177, at *10 (S.D.N.Y. Apr. 28, 2020) (court did not need to address *Monell* liability because underlying constitutional

---

[10] Moreover, as discussed in Part III.B below, it appears that any pre-existing non-conforming use ceased to be legal in 2014.  If so, even if these documents showed that the Town described the Structure as residential before the enactment of the Town Code and even if they were newly discovered, Plaintiff could not satisfy the standard under Rule 60(b)(2) because the documents would not have changed the outcome on her due process and takings claims.

22

claims did not survive).  As explained above, the emails and other documents would not change

the outcome on Plaintiff's other constitutional claims, and consequently they would not change

my decision on her *Monell* claim either.[11]  Therefore, Plaintiff has not met her burden to show

that this evidence warrants relief under Rule 60(b)(2).

## B. Rule 60(b)(3)

Plaintiff argues that the Court should grant her relief from judgment under Rule 60(b)(3)

because Defendants misrepresented the residential nature and legality of her apartment to the

court in the Article 78 proceeding, to this Court, and in response to her FOIL requests.  (P's

Reply at 13-14; P's Mem. at 2, 9-10.)  Defendants argue that the FOIL response from January

12, 2026 claiming that there were no records describing the property as "residential" has no

bearing on the Opinion, and that the Town did not withhold materials that were the subject of

Plaintiff's FOIL requests.  (Ds' Opp. at 15-17.)

"Rule 60(b)(3) permits a court to relieve parties from judgments when the moving party

shows fraud, misrepresentation, or misconduct by an opposing party."  *Castro*, 852 F. App'x at

29.  "To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of

prevented the moving party from fully and fairly presenting [her] case."  *Shekhem El*, 2026 WL

579193, at *2.  "Generally, a Rule 60(b)(3) motion cannot be granted absent clear and

convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate

the merits."  *Castro*, 852 F. App'x at 29-30.

---

[11] These emails can also hardly be considered proof of anything because they are largely redacted.  Plaintiff merely speculates as to what the emails might show, but speculation about newly discovered evidence is insufficient to satisfy a movant's burden on a Rule 60(b)(2) motion.  *See Berg*, 1997 WL 573418, at *2 ("Litigation by hunch and speculation is not sufficient under Federal Rule of Civil Procedure 60(b).").

23

The movant need only show that the non-movant's misconduct "substantially interfered" with the movant's ability to present her case, not that the outcome would have been different absent the misconduct. *See Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 316 (S.D.N.Y. 2003). "Substantial interference is established if a party shows that the concealment precluded inquiry into a plausible theory of liability, denied it access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." *Thomas v. City of N.Y.*, 293 F.R.D. 498, 504 (S.D.N.Y. 2013), *aff'd sub nom. Thomas v. McAullife*, 691 F. App'x 671 (2d Cir. 2017) (summary order).

Plaintiff cannot show that any alleged misrepresentation about the prior residential nature of the Structure substantially interfered with her ability to prepare this case and defend against the motion to dismiss fully and fairly. As mentioned above, Plaintiff could have obtained the property records from the Town via FOIL request before filing her AC, and "a party who itself has access to such information cannot establish fraud under Rule 60(b)(3) because it cannot establish that its opponent's misrepresentation or failure to disclose prevented it from fully and fairly presenting its case." *In re Old Carco LLC*, 423 B.R. 40, 50 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 10-CV-2493, 2010 WL 3566908 (S.D.N.Y. Sept. 14, 2010), *aff'd sub nom. Mauro Motors Inc. v. Old Carco LLC*, 420 F. App'x 89 (2d Cir. 2011) (summary order); *see Up State Tower Co., LLC v. Town of Southport*, 468 F. Supp. 3d 583, 595 (W.D.N.Y. 2020) (denying Rule 60(b)(3) motion where "Plaintiffs have offered no explanation as to how this publicly available information was 'concealed' from them, why they were prevented from bringing it to the Court's attention prior to the issuance of the [decision and order], or why Defendants were obligated to do so when Plaintiffs also had access to the information"); *Tolkin v. Pergament*, No. 11-CV-3467, 2012 WL 1132475, at *8 (E.D.N.Y. Mar. 31, 2012) (denial of 60(b)(3) motion appropriate

24

where information "could have been discovered by [plaintiff] independently prior to [the] settlement"); *Brinklys v. Duke*, No. 14-CV-1211, 2017 WL 3521744, at *8 (M.D. Fla. Aug. 16, 2017) (plaintiffs who alleged defendants withheld and cherry-picked newly discovered evidence failed to meet burden on 60(b)(3) motion because evidence was available to plaintiffs before entry of judgment, and,"[a] party cannot successfully bring a Rule 60(b)(3) motion where the pursuit of the truth was not hampered by anything except the movant's own reluctance to undertake an assiduous investigation"), *aff'd sub nom. Brinklys v. Johnson*, 752 F. App'x 828 (11th Cir. 2018).  Additionally, concealment obviously did not preclude her inquiry into this theory of liability, because she later sought these documents despite the alleged misrepresentations.

To the extent that Plaintiff argues that misrepresentations hampered her ability to present her case in the underlying Article 78 proceeding, (P's Reply at 7; *see also id.* at 4 (listing as alleged misrepresentations statements made in state court proceedings regarding legality of residential use)), that is not the proper basis for a Rule 60(b)(3) motion.  "In order to obtain relief pursuant to Rule 60(b)(3), a party must show that its adversary committed fraud in obtaining the judgment entered by the court, and it may not rely on allegations of fraud concerning an underlying proceeding."  *Wahmann v. Kaur*, No. 15-CV-4326, 2016 WL 8711357, at *2 (E.D.N.Y. May 20, 2016); *see Clovis v. Herald Co.*, No. 89-CV-703, 1993 WL 56017, at *2 n.1 (N.D.N.Y. Mar. 1, 1993) (only issue on 60(b)(3) motion was whether defendants acted fraudulently with respect to judgment entered by district court, not whether defendants fraudulently obtained state court judgment).  Moreover, Plaintiff could have sought these documents via FOIL before or during her Article 78 proceeding, too.  Although she claims she sought them through discovery requests, as discussed those requests concerned only the internal

25

emails, and Defendants had no obligation to produce them absent a court order.  In any event,

because Plaintiff could have sought the records relating to the history of the property by way of a

FOIL request at any time, she cannot argue Defendants' failure to disclose them prevented her

from fully and fairly presenting her case.

Further, concealment of evidence for purposes of Rule 60(b)(3) must have precluded

inquiry into a *plausible* theory of liability, or denied access to evidence that would have been

probative on an important issue.  *See Adidas Am., Inc. v. Thom Browne, Inc.*, 742 F. Supp. 3d

352, 365 (S.D.N.Y. 2024) ("Rule 60(b)(3) may be satisfied where the concealment precluded

inquiry into a plausible theory of liability . . . ."); *Thomas*, 293 F.R.D. at 504 ("[E]ven

misconduct or concealment of evidence does not substantially interfere with the moving party's

presentation of their case if the evidence turns out to be cumulative, insignificant, or of marginal

relevance.").  Here, Plaintiff's theory that the residential use of the Structure was grandfathered

in does not appear to be plausible, and the evidence would not have been probative on that issue.

Although records that pre-date the enactment of the Town Code describe the Structure as having

a residential use, Plaintiff concedes the Structure was later converted into a recreation room.

(ECF No. 67-11 (July 11, 2014 certificate of compliance authorizing occupancy of "[f]inished

recreation room over garage – already built"); AC ¶ 9 ("garage/barn has a valid Certificate of

Occupancy for a recreation room on its second floor")).  The Town Code states that a pre-

existing, non-conforming use loses that designation if the non-conforming use ceases for a period

of more than six months or is changed to a conforming use, and that future use of the property

must then be in conformity with the Code.  *See* Bedford Town Code § 125-11(C)(4).  Thus,

when the Certificate of Compliance granting permission to use the space as a recreation room

was issued on July 11, 2014, (ECF No. 67-11; *see* ECF No. 67-19 at 4), it appears that the

26

Structure changed from a non-conforming use to a conforming use.[12]  Therefore, even if the records at issue reflected a decision by the Town (which they do not), and even if they showed that in the pre-Code era the space above the garage constituted a lawful, pre-existing, non-conforming residential use, once that use was changed to a recreation room in the post-Code era, it appears that Plaintiff was not permitted to revert the use to a residential one not in conformity with the Code.  Accordingly, not only does Plaintiff's newest theory of liability not seem to be plausible, but the Town's representations in litigation in 2023 and 2024 that the residential use of the Structure was not a pre-existing, nonconforming use, (*see, e.g.*, ECF No. 80-1 at 3), do not seem to have been misrepresentations at all.  Thus, these statements do not satisfy Plaintiff's high burden under Rule 60(b)(3).

Plaintiff also argues that the FOIL response in which the Town stated that the Building Department did not have any records listing the Structure as "residential" was a misrepresentation.  (P's Reply at 11.)  That is far from clear, *see* pages 14-15 above, but even it were, any such misrepresentation would not be material, *see Shekhem El*, 2026 WL 579193, at *2 ("To be entitled to relief under [Rule 60(b)(3)], the moving party must present clear and convincing evidence of material misrepresentations.").  First, as just explained, that Town records may have described the Structure as a residence before the Town Code was enacted does

---

[12] Plaintiff repeatedly argues that the July 11, 2014 Certificate of Compliance reflects approval of the space above the garage as a residence.  (*See, e.g.*, ECF No. 67-1 ¶ 7; P's Mem. at 1, 9.)  Plaintiff either failed to read or willfully mischaracterized the document, as it states that the owner is authorized to occupy or use the premises as a "[f]inished recreation room over garage," (ECF No. 67-11), not as an apartment or residence.  She also describes a prior Certificate of Occupancy dated April 4, 2012 as demonstrating the Structure's residential use because it "authoriz[ed] the *occupancy or use* of the property."  (P's Reply at 5 (emphasis in original); *see id.* at 10.)  But again Plaintiff either failed to read or willfully mischaracterized the document, as it states that the owner is authorized to occupy or use the premises as a "[t]wo-car garage."  (ECF No. 80-2 at 2.)  Thus, these certificates do not show that the Structure was authorized for residential use at the time they were issued.

SPA-85

not mean Plaintiff was entitled to use it as such after it had been converted into a recreation room.  Second, this misrepresentation would not have prevented Plaintiff from presenting her case because it occurred on January 12, 2026, which was after the briefing on the motion to dismiss closed.  (P's Reply at 11; ECF No. 80-1 at 8.)  It also did not prevent Plaintiff from discovering records that described the Structure as residential, because Plaintiff concedes she already knew of such records when she received this response.  (P's Reply at 10-11.)  Accordingly, the January 12, 2026 FOIL response does not warrant relief under Rule 60(b)(3).

Finally, to the extent that Plaintiff suggests that Defendants' delay in providing her with Town records and internal communications warrants relief, (P's Mem. at 21), a failure to disclose or produce requested materials in discovery can constitute misconduct under Rule 60(b)(3), and such a failure does not need to be motivated by nefarious intent to warrant vacatur; even accidental omissions may be sufficient, *see Catskill Dev.*, 286 F. Supp. 2d at 314-15.  But there was no failure to provide discovery here, as this case was dismissed before any discovery occurred.  Plaintiff is thus left to argue that conduct occurring outside the scope of litigation should be treated like a discovery violation.  She provides no authority for that position and the Court has found none.  Further, as discussed at length, Plaintiff first requested the property and building records demonstrating the prior residential character of the Structure on December 21, 2025.  (*See* ECF No 67-9.)  Thus, any delay in receiving such records is the responsibility of Plaintiff, not Defendants.

Accordingly, none of the evidence that Plaintiff has presented satisfies her burden to present clear and convincing evidence of a material misrepresentation.  As such, Plaintiff's Rule 60(b)(3) motion is denied.

28

**C.    Rule 60(b)(6)**

Plaintiff argues that the Court may also vacate the decision under Rule 60(b)(6) in the interest of justice.  (P's Reply at 20.)  Defendants argue that Plaintiff cannot seek relief under this rule because she has moved for relief under both Rules 60(b)(2) and 60(b)(3).  (Ds' Opp. at 17.)

Rule 60(b)(6) is a catchall provision that allows a court to provide relief from judgment for any other reason that justifies relief, but "if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)."  *In re Pinnock*, 833 F. App'x 498, 502 (2d Cir. 2020) (summary order).  In other words, "Rule 60(b)(6) allows a court to relieve parties from judgments for any other reason that justifies relief when the grounds enumerated in Rules 60(b)(1)-(5) are not present."  *Castro*, 852 F. App'x at 30; *see BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025) ("Rule 60(b)(6) provides only grounds for relief not already covered by the preceding five paragraphs.").  "Although [Plaintiff] failed to carry [her] burden under Rules [60(b)(2)] or (3), [her] reasons for seeking relief from the judgment fell within those more specific clauses, thereby disqualifying [her] from obtaining relief under Rule 60(b)(6)."  *Castro*, 852 F. App'x at 30.  And even if Rule 60(b)(6) were available to Plaintiff, it "should only be applied in extraordinary circumstances."  *BLOM Bank SAL*, 605 U.S. at 212.  Essentially for the reasons explained above, there are none here.  At bottom, the motion is based on Plaintiff's own lack of diligence and misleading description of documents, and nothing she has presented shows that the motion to dismiss was incorrectly decided.

Accordingly, Plaintiff's Rule 60(b)(6) motion is denied.

29

D.      **Motion for *In Camera* Review**

Plaintiff asks the Court to "review the unredacted communications [produced in response to her FOIL request] *in camera* to determine whether they substantively bear on the issues of coordination, policy, and municipal liability." (P's Reply at 19.)[13]  Plaintiff first stated that she "does not seek discovery or disclosure of these materials at this stage," but only seeks an *in camera* review "to the extent the Court has any concern whether its prior decision rested on a complete and accurate factual record." (ECF No. 69 at 1.)  Plaintiff later requested, however, that the Court order the unredacted production of at least Exhibits 16 and 17, which are docketed at ECF No. 80-3 at 1-3 and 80-3 at 4. (ECF No. 81 at 7.)  Defendants argue Plaintiff has not provided a basis for *in camera* review because nothing in the documents cited by Plaintiff provides a basis to revisit the Court's conclusions and her application amounts to a request that the Court consider materials outside the four corners of the AC on a motion to dismiss. (ECF No. 78 at 18.)  In reply, Plaintiff argues that the Town has not justified the extensive redactions in its FOIL production and that the redacted internal emails are material to the Court's prior findings that the underlying proceedings were full and fair, that Plaintiff did not have a vested property right, that Plaintiff was afforded due process, that the Town Attorneys were entitled to absolute immunity, and that there was no *Monell* liability. (*See* ECF No. 81 at 1-2.)  In short, Plaintiff reiterates the arguments made on her Rule 60(b) motion.

---

[13] Plaintiff's request concerns an 800-page FOIL production, (ECF No. 67-1 ¶ 24), that Plaintiff purports to attach as Exhibit Q to her memorandum in support of her Rule 60(b) motion to vacate the judgment, (*see* P's Mem. at 6 n.1; ECF No. 67-3 at 2).  But there is no Exhibit Q. Plaintiff did submit a summary chart, (ECF No. 67-6), and a few of the redacted emails, (ECF Nos. 67-5, 67-7, 67-23, 80-3).

SPA-88

As an initial matter, Plaintiff's request amounts to a challenge to the sufficiency of the FOIL response, which this Court has no authority to entertain.  *See Jackson v. Wilcox*, No. 23-CV-130, 2023 WL 2756489, at *5 (N.D.N.Y. Apr. 3, 2023) ("[C]ourts have repeatedly held that federal courts lack jurisdiction to review FOIL claims . . . ."), *report and recommendation adopted*, 2023 WL 4230351 (N.D.N.Y. June 28, 2023); *Cammarata v. City Univ. of N.Y.*, No. 17-CV-6456, 2019 WL 3859401, at *9 (E.D.N.Y. Aug. 15, 2019) ("Federal courts . . . do not have jurisdiction to enforce state laws granting public access to official state records."); *Posr v. City of N.Y.*, No. 10-CV-2551, 2013 WL 2419142, at *14 (S.D.N.Y. June 4, 2013) ("Under New York state law, if an agency or government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y. C.P.L.R. Article 78."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014) (summary order).

In any event, as explained with respect to Plaintiff's Rule 60(b)(2) motion, the emails would not change the outcome on the motion to dismiss.  Although Plaintiff argues that the emails "must be reviewed *in camera* because they are central to the Court's evaluation of the *Monell* coordination and immunity issues that formed the basis for the Rule 12(b)(6) dismissal," (ECF No. 81 at 4), that is not the case.  The Court dismissed the claims against the Town Attorneys not just because they were absolutely immune, but also because Plaintiff failed to state a claim against them.  Similarly, the Court dismissed Plaintiff's *Monell* claim not because she failed to allege a policy or widespread practice, but rather because she failed to state any underlying constitutional violation.  Thus, even if the emails showed that the Town Attorneys engaged in non-prosecutorial functions or that they coordinated with other Town officials, those facts would not change the Court's ruling.

31

Similarly, although Plaintiff argues that the communications "are directly relevant to prosecutorial immunity, procedural due process, whether Plaintiff had a full and fair opportunity to be heard for purposes of collateral estoppel, and whether coordinated municipal action existed under *Monell*," (ECF No. 81 at 6), as already explained, even if the emails show that the Town Attorneys communicated with the ZBA prior to the hearing and drafted the resolution, that would not demonstrate that Plaintiff did not have a full and fair opportunity to be heard or did not receive procedural due process, (*see supra* Section III.A.2.b). Likewise, Plaintiff continues to argue that the Court relied on Defendants' prior representations that the residential use of the Structure was illegal, a premise that Plaintiff claims was "inaccurate." (ECF No. 81 at 4.) Plaintiff does not point to any respect in which the Court relied on any such representations,[14] and in any event that premise does not appear to have been inaccurate, based on the other evidence provided. (*See supra* Section III.B.) Thus, any such misrepresentation was immaterial to the Court's decision. This argument also does not seem to be relevant to whether the Court should review the redacted emails, as Plaintiff relied on other documents, not the emails, to demonstrate the early residential description of the Structure.

In short, even if the emails contain what Plaintiff speculates they might, they would not provide a basis for relief under Rule 60(b). Thus, the Court does not need to review these emails to decide the motion.

Further, Plaintiff's suggestion that *in camera* review might be appropriate to determine whether the Court's "prior decision rested on a complete and accurate factual record," (ECF No.

---

[14] The closest the Court came to any analysis of the Town Code was on page 20 of the Opinion, and that was based on my independent agreement with Judge Fufidio's analysis – not on Defendants' representations as to the illegality of the Structure. *See Hammer*, 2026 WL 100793, at *20.

32

69 at 1), misconstrues the nature of a motion to dismiss, which is decided based on the face of the pleading and limited other incorporated or integral documents, not on a "factual record." *See, e.g.*, *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *Harrison v. City of N.Y.*, No. 15-CV-4141, 2017 WL 4162340, at *4 (S.D.N.Y. Sept. 19, 2017); *Callahan v. Credit Suisse (USA), Inc.*, No. 10-CV-4599, 2011 WL 4001001, at *1 n.1 (S.D.N.Y. Aug. 18, 2011). As such, although Plaintiff argues that "the Court's dismissal may rest on an incomplete record" because "the content of the redacted emails remains unknown," (ECF No. 81 at 3), that does not warrant *in camera* review, *cf. Mehne v. Rochester Psychiatric Ctr.*, No. 22-CV-6110, 2022 WL 17488633, at *5 (W.D.N.Y. Dec. 7, 2022) (plaintiffs could not avoid dismissal by claiming discovery would provide basis for claim where they had only unsupported speculation). A plausible claim must come before discovery, *J.V. v. Lake*, No. 23-CV-3419, 2024 WL 3236823, at *4 (S.D.N.Y. June 28, 2024), and thus whether the "record" is complete is irrelevant to determining whether Plaintiff has stated a plausible claim on which relief can be granted, *see McAlpin v. Am. Hardwoods Indus., LLC*, No. 15-CV-162, 2016 WL 1084139, at *2 (N.D. Miss. Mar. 17, 2016) ("A motion to dismiss pursuant to Rule 12(b)(6) is decided solely on the pleadings; thus, the degree of discovery conducted is irrelevant to a Rule 12(b)(6) motion."), *on reconsideration sub nom. McCalpin v. Am. Hardwoods Indus., LLC*, No. 15-CV-162, 2016 WL 3180106 (N.D. Miss. June 2, 2016); *Dock v. Rush*, No. 09-CV-0606, 2010 WL 11674098, at *3 (M.D. Pa. Apr. 21, 2010) ("[F]actual development is irrelevant to the disposition of a motion under 12(b)(6).").

Accordingly, Plaintiff's motion for *in camera* review is denied.

33

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motions are DENIED.  The Clerk of Court is

respectfully directed to terminate the pending motions, (ECF Nos. 67, 69).

**SO ORDERED.**

Dated:  April 14, 2026
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

34

# ADDENDUM

Pursuant to Federal Rule of Appellate Procedure 28(f) and Second Circuit Local Rule 32.1(c), the following statutory provisions and case law are relevant to the determination of the issues presented in this appeal and are set out verbatim below.

# BEDFORD TOWN CODE

## § 125-79 Accessory Apartments in Existing Single-Family Residences

[Amended 5-1984; 7-1989; 8-1992; 6-2013 by L.L. No. 2-2013; 9-2025 by L.L. No. 6-2025]

**A.** It is the intention of this section to permit the creation, subject to the standards listed below, of accessory apartments in the Town for the purposes of maintaining a supply of small rental or owner-occupied housing units designed to meet the needs of persons, both young and old, of moderate income and to permit the efficient use of the Town's housing stock by providing economic support for owners of larger structures and incentives for maintenance of these structures. To achieve these goals and to promote the other objectives of the Zoning Ordinance to serve the health and welfare of the Town's people, the regulations below have been created.

## § 125-79.1 Cottages

[**Added 7-1989**; amended 8-1992; 6-2013 by L.L. No. 2-2013; 9-2025 by L.L. No. 7-2025]

**A.** In the R-2A and R-4A Districts, the Planning Board may grant a special permit to create a cottage in an existing accessory building, provided that:

## § 125-12 Lots

**A.** Every building **hereafter erected** shall be located on a lot, as herein defined. There shall be not more than one main building and its accessory buildings on each minimum size lot, except for nonresidential buildings in districts where such uses are permitted. On one undivided parcel of land in size equal to or greater than twice the minimum acreage as required for the districts established hereunder, no more than two main buildings and their accessory buildings shall be permitted; provided, however, that, in each such instance, all main and accessory buildings must conform to all lot requirements established hereunder the same as if such buildings were placed on two separate and independent parcels of land.

## § 125-11 Nonconforming Uses and Structures

**C. Nonconforming use of structures.** The **nonconforming use of a building or structure may be continued**, provided that:

**(1)** Such building or structure shall not be enlarged or extended unless the use therein is changed to a conforming use.

**(2)** Such nonconforming building or structure shall not be structurally altered or reconstructed, except for such alteration, maintenance and repair work as is required to keep said building or structure in a safe condition.

**(3)** Such nonconforming use shall be changed only to a conforming use.

**(4) If such nonconforming use of a building or structure ceases for any reason for a continuous period of more than six months or is changed to a conforming use, then any future use of such building or structure and the land on which it is located shall be in conformity with all provisions of this chapter for the district in which it is located**.

**(5)** Any such nonconforming building or structure damaged or destroyed by any means to an extent greater than 50% of its fair market value, as determined by the Town Assessor, shall be permitted to be reconstructed only if the future use of the building or structure and the land on which it is located is in conformity with this chapter. Any such nonconforming building or structure damaged to an extent less than 50% of said fair market value may be rebuilt, provided that:

**(a) The resumption of the nonconforming use takes place within one year of the time of its interruption.**

**(b)** The cost of such reconstruction or structural alteration is less than 50% of said fair market value.

**(c)** The reconstruction or structural alteration is commenced within six months of the date of such damage and completed within 18 months of the date of such damage.

**(d)** Where such rebuilding can reasonably be accomplished so as to result in greater conformity with this chapter, then the rebuilding shall be so done.

# ZONING CODE DEFINITIONS

**USE:** The specific purpose for which land or a building is designated, arranged or intended or for which it is or may be occupied or maintained. The term "permitted use" or its equivalent shall not be deemed to include any nonconforming use.

SPA-94

# RELEVANT CASE LAW

**Matter of Allen v Adami, 39 N.Y.2d 275, 277.**

"Ambiguities in zoning must be interpreted in its favor as the landowner. To be sure, zoning restrictions, being in derogation of common-law property rights, should be strictly construed and any ambiguity resolved in favor of the property owner" (see, Matter of Allen v Adami, 39 N.Y.2d 275, 277).

## Toys "R" Us v. Silva, 654 N.Y.S.2d 100 (N.Y. 1996)

"Generally, abandonment of a nonconforming use requires both an intent to relinquish and some overt act or failure to act, indicating that the owner neither claims nor retains any interest in the subject matter of the abandonment."

## Matter of Marzella v Munroe, 69 N.Y.2d 967 at 968.

"In doing so, we explained that '[a]bandonment does not occur unless there has been a complete cessation of the nonconforming use.'"

## Town of Islip v P.B.S. Marina, 133 AD2d 81.

"… the relevant zoning ordinance contained absolute terms, providing that 'discontinuance of any non [-]conforming use for a period of one year or more terminates such non-conforming use.' ".

"It has been said in New York that a zoning ordinance must be 'strictly construed' in favor of the property owner".

## Nonconforming Use Principles

"A use of property that is no longer authorized due to rezoning, but lawfully existed prior to the enactment of the existing zoning ordinance, is a nonconforming use (see, 1 Anderson's American Law of Zoning § 6.01, at 481-482 [Young 4th ed]; see also, Zoning Resolution § 12-10).

Due to constitutional and fairness concerns regarding the undue financial hardship that immediate elimination of nonconforming uses would cause to property owners, however, courts and municipal legislators have adopted a 'grudging tolerance' of such uses (Matter of Pelham Esplanade v Board of Trustees, 77 N.Y.2d 66, 71)."

ZONING

*125 Attachment 2*

**Town of Bedford**
**SCHEDULE OF USE REGULATIONS – PRINCIPAL USES**
**[Amended 6-14-1983; 9-17-1985; 10-29-1985; 7-20-1999; 7-14-2009 by L.L. No. 5-2009; 10-5-2010 by L.L. No. 5-2010; 9-17-2015 by L.L. No. 12-2015]**

P = Permitted principal use

| Uses | R-4A; R-2A; R-1A | R-½A; R-¼A | TF | MF; VA | RO | PB-O | PB-R | NB | CB | RB | LI | EL | PB-O(K) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Single-family dwelling | P | P | P | P | | | | P | P | P | P | | P |
| Two-family dwelling[1] | P[1] | P[1] | P | P | | | | P | P | P | P | | |
| Townhouse dwelling[1] | P[1] | P[1] | P[1] | P | | | | P | P | P | P | | |
| Multifamily dwelling[1] | P[1] | P[1] | P[1] | P | | | | P | P | P | P | | |
| Crop farming | P | P | P | P | P[2] | P | P | P | P | P | P | | P |
| Public school | P | P | P | P | P[2] | P | P | P | P | P | P | | P |
| Municipal use | P | P | P | P | P[2] | P | P | P | P | P | P | | P |
| Business and professional offices, including executive, administrative, editorial, educational, engineering, financial and statistical purposes | | | | | P[2] | P | P | P | P | P | P | | |
| Medical office | | | | | | P | P | P | P | P | P | | |
| Bank | | | | | | | P | P | P | P | P | | |
| Laboratory for research and development | | | | | P[2] | | | | | | P | | |
| Retail sales | | | | | | | P | P | P | P | P | | |
| Personal services | | | | | | | P | P | P | P | P | | |
| Restaurant, except fast-food; delicatessen | | | | | | | | P | P | P | P | | |
| Fast-food restaurant | | | | | | | | | | P | | | |
| Drive-through facility | | | | | | | | | | P | P | | |
| Motion-picture or other theater | | | | | | | P | P | P | P | | | |
| Funeral home | | | | | | | | P | P | P | | | |
| Wholesale business, storage or warehouse | | | | | | | | | | | P | | |
| Manufacturing, fabricating, assembling or finishing of products | | | | | | | | | | | P | | |
| Outdoor storage of commercial and industrial vehicles and construction equipment; printing plants | | | | | | | | | | | P | | |
| Railroad station or bus passenger shelter | P | P | P | P | P[2] | P | P | P | P | | P | | |

:1

03 - 01 - 2016

BEDFORD CODE

| Uses | R-4A; R-2A; R-1A | R-½A; R-¼A | TF | MF; VA | RO | PB-O | PB-R | NB | CB | RB | LI | EL | PB-O(K) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Any use permitted in and subject to the regulations of the most restrictive residence district which abuts the perimeter of a Research Office District. For the purposes of this use, property across a public street from a Research Office District shall be considered as abutting the perimeter of the district | | | | | P | | | | | | | | |
| Housing for the elderly | | | | | | | | | | | | P | |
| Child day-care center | | | | | P | P | P | P | P | | P | | |
| Café | | | | | | | P | P | P | P | | | |

**NOTES:**

[1] Use permitted in all residential districts if approved as a conservation subdivision under § 281 of the Town Law (see Bedford Land Subdivision Regulations) or as a conservation development (see Article VI of this chapter).

[2] Within any Research Office or RO District as indicated on the Official Zoning Map, no land, building or structure shall be used and no building or structure shall be erected, altered, arranged or designed to be used, in whole or in part, for any use or purpose permitted by this chapter unless the Planning Board shall find the nature of such use shall not cause or result in dissemination of dust, smoke, observable gas or fumes, odor, vibration, flashing or excessive light or noise beyond the boundaries of the site of the building or buildings in which such use is located; physical hazard due to fire, explosion, noxious fumes, radiation or similar cause; a harmful discharge of waste materials; electrical interference beyond the boundaries of the site; or unusual traffic hazards or congestion due to the type or number of vehicles required or public nuisance due to the use of low flying planes.

**03 - 01 - 2016**

SPA-97

# RESOLUTION

Resolution April 8 2026

A Resolution Determining
Freedom of Information Law Appeal

**WHEREAS,** by letter dated March 19, 2026, Melanie Hammer, filed an appeal pursuant to the Freedom of Information Law (the "FOIL Appeal") with respect to responses to town (2) Freedom of Information Law ("FOIL") requests submitted by Melanie Hammer; and

**WHEREAS,** the first FOIL request was submitted on December 21, 2025, and sought the following records:

> GRANDFATHERED USE "SINGLE FRAME RESIDENCE/RESIDENTIAL STRUCTURE"
>
> THE BARN APARTMENT HAS GRANDFATHERED RESIDENTIAL USE REFLECTED ON MAPS
>
> Pursuant to Article 6 of the New York Public Officers Law (FOIL), I hereby request copies of any and all existing records in the possession, custody, or control of the Town of Bedford, including but not limited to the Department of Building, Planning Department, and any archived municipal records, that reflect, describe, or classify the structure located at 146 Goldens Bridge Road, Bedford, New York, as a residential structure.
>
> This request specifically includes, but is not limited to, the following records:
>
> Any zoning maps, planning maps, tax maps, or property classification maps that identify or label the structure as a "single frame residence," "single-family residence," "residential structure," or similar designation;
>
> Any Department of Building records, filed drawings, historical plans, permits, or property records that describe or classify the structure as residential; and

**WHEREAS**, a response to this FOIL request was provided on January 12, 2026 stating that "[t]here are no documents responsive to this request. There is nothing listing the structure as

STATE OF NEW YORK ⎫
COUNTY OF WESTCHESTER ⎬ *ss.*
   TOWN OF BEDFORD ⎭

*I hereby certify that I have compared the foregoing Resolution with the original on file in my office and that the same is a correct transcript therefrom and the whole of the said original Resolution, which was duly adopted by the Town Board of the Town of Bedford on April 7, 2026.*

> *IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Corporate Seal of said Town of Bedford.*

*Dated: April 8, 2026*        _____*Town Clerk, Town of Bedford*

# RESOLUTION

"residential" in the building department. A permit/co was issued for the 2nd floor of the garage as a "rec room". Parcel history is enclosed."

**WHEREAS**, the second FOIL request was dated January 12, 2026, and sought the following records:

> Pursuant to Article 6 of the New York Public Officers Law, I hereby request copies of any and all existing maps in the possession, custody, or control of the Town of Bedford, including but not limited to the Department of Building, Planning Department, Zoning Office, and any archived or legacy record systems, that classify, describe, or depict the structure located at 146 Goldens Bridge Road, Bedford, New York— identified in multiple Town records as a "1-story residence over garage"— as anything other than a residential structure.

> This request specifically includes, but is not limited to:

> Any zoning maps, tax maps, planning maps, or property classification maps that identify the structure as non-residential, accessory, storage, agricultural, or any use other than residential;

> Any filed drawings, plans, that classify or describe the structure as non-residential; and

**WHEREAS**, a response to this FOIL request was provided by the Town of Bedford Records Officer on February 12, 2026, providing certain documents; and

**WHEREAS**, pursuant to Town Code §95-8(C), the Town of Bedford Town Board is the body designated to hear appeals for denial of access to records under the FOIL; and

**WHEREAS**, the Town Board has reviewed and discussed the merits of the FOIL Appeal with the Town Attorney in executive session and considered the basis for the denial of the original FOIL requests and whether the FOIL appeal should be granted or denied.

**NOW THEREFORE, IT IS HEREBY RESOLVED**, that the Town Board has determined that the appeal was not timely filed within thirty (30) days as required by Public Officers Law §89(4)(a); and

**IT IS HEREBY FURTHER RESOLVED**, that the February 25, 2026, email from the Records Officer was not a supplemental response and the FOIL Appeal remains untimely; and

**STATE OF NEW YORK**

COUNTY OF WESTCHESTER } *ss.*
  TOWN OF BEDFORD

*I hereby certify that I have compared the foregoing Resolution with the original on file in my office and that the same is a correct transcript therefrom and the whole of the said original Resolution, which was duly adopted by the Town Board of the Town of Bedford on April 7, 2026.*

                       *IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Corporate Seal of said Town of Bedford.*

*Dated:  April 8, 2026*                        _____*Town Clerk, Town of Bedford*

# RESOLUTION

**IT IS HEREVY FURTHER RESOLVED**, that even if the Town Board were to find that the FOIL Appeal was timely, which it was not, it should also be denied on the merits for following reasons:

1. With respect to the first FOIL response provided on January 12, 2026, the Town Board confirms that there are no documents in the Town's possession that classify the space over the garage as "residential". While certain surveys in the Building Department's files identify a "1 STORY FRAME RESIDENCE OVER GARAGE", those surveys were prepared by third-parties, these are not "zoning maps, planning maps, tax maps, or property classification maps"; and

2. With respect to the second FOIL response provided on February 12, 2026, documents that classify, describe or depict the area over the garage as non-residential were properly provided.

**IT IS FURTHER RESOLVED**, that the Town Board has been advised that a diligent search has been conducted of all records in the Town of Bedford's possession, including Building Department and Planning Department files and all documents response to the referenced FOIL requests have been provided.

**STATE OF NEW YORK** ⎫
COUNTY OF WESTCHESTER ⎬ *ss.*
  TOWN OF BEDFORD ⎭

*I hereby certify that I have compared the foregoing Resolution with the original on file in my office and that the same is a correct transcript therefrom and the whole of the said original Resolution, which was duly adopted by the Town Board of the Town of Bedford on April 7, 2026.*

*IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Corporate Seal of said Town of Bedford.*

*Dated: April 8, 2026*

_____*Town Clerk, Town of Bedford*

SPA-100